**E-FILED**
Wednesday, 23 July, 2008  03:48:00 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| **MELISSA GARDNER,** | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 08-1007 |
| | ) | |
| **vs.** | ) | Honorable Judge McDade |
| | ) | |
| **AMERITECH SICKNESS AND** | ) | Magistrate Judge Cudmore |
| **ACCIDENT DISABILITY PLAN;** | ) | |
| **AMERITECH LONG TERM** | ) | |
| **DISABILITY PLAN,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### ADMINISTRATIVE RECORD

Michael R. Phillips
Dionne R. Hayden
Attorneys for Defendant
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601
(312) 849-8100
(312) 849-3690 (fax)
mphillips@mcguirewoods.com
dhayden@mcguirewoods.com

## <u>CERTIFICATE OF SERVICE</u>

I, Michael R. Phillips, an attorney, hereby certify that on this 23rd day of July 2008, I

electronically filed the foregoing ***Administrative Record*** with the Clerk of the Court using the

ECF system which will send notification of such filing to all counsel of record.

s/ Michael R. Phillips

**E-FILED**
Wednesday, 23 July, 2008  03:52:01 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MELISSA GARDNER, | ) |
| | ) |
| Plaintiffs, | ) Civil Action No.: 08-1007 |
| | ) |
| vs. | ) Honorable Judge McDade |
| | ) |
| AMERITECH SICKNESS AND | ) Magistrate Judge Cudmore |
| ACCIDENT DISABILITY PLAN; | ) |
| AMERITECH LONG TERM | ) |
| DISABILITY PLAN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### DECLARATION OF SUSAN HAGESTAD

Susan Hagestad, having been duly sworn, on oath deposes and states that if she were called to testify in the above-captioned matter, she would be competent to testify to the following facts based upon her personal knowledge, and that these facts are true and correct:

1.      I am employed by Sedgwick Claims Management Services, Inc. ("Sedgwick") as the Appeal Manager for its AT&T Integrated Disability Service Center Quality Review Unit ("IDSC").

2.      In that position, I am responsible for, among other things, reviewing decisions of the IDSC's Appeal Specialist to deny claims for benefits under the Ameritech Long Term Disability Plan (the "Plan").

3.      Melissa Gardner applied for benefits under the LTD Plan.

4.      All documents, records and other information submitted to or considered by Sedgwick in the course of making a benefit determination regarding Plaintiff's claim for benefits under the LTD Plan and all documents, records and other information generated by Sedgwick in the course of making a benefit determination regarding Plaintiff's claim for

1

R-0001

benefits under the LTD Plan, without regard to whether to such document, record or other information was relied upon in making the benefit determination are attached hereto as Exhibit A.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _30_ day of June, 2008 at _Dallas, TX_____.

_Susan Hagestad_
SUSAN HAGESTAD

6323487_3

2



# AMERITECH
## SICKNESS AND ACCIDENT DISABILITY
## BENEFIT PLAN (SADBP)
### (AS AMENDED AND RESTATED EFFECTIVE AS OF JUNE 1, 1996)

R-0003

# TABLE OF CONTENTS

<u>SECTION</u>                                                        <u>PAGE</u>

1.  **General**                                                     1

    History and Purpose

2.  **Definitions**                                                 2

3.  **Sickness Disability Benefits**                               3

    Participation
    Benefit Periods
    Beginning of Benefit Periods
    Successive Periods of Disability
    No Duplicate Payments
    Source of Payments

4.  **Accident Disability Benefits**                              5

    Participation
    Benefit Periods
    Change in Disability Classification
    Determining Benefit Periods
    Relationship of Injury to Employment
    Loss of Bodily Member
    Payment of Expenses
    Source of Payments

5.  **General Provisions**                                         9

    Rights to Benefits
    Assignment or Alienation
    Determination of Eligibility
    Leave of Absence
    Notice of Sickness or Injury
    Claims
    Examination by Physician
    Request to Travel
    Payment of Benefits

R-0004

# TABLE OF CONTENTS

SECTION                                                              PAGE

      Lump Sum Settlements
      Subsequent Periods of Disability
      No Duplicate Payments
      Amounts Accrued Prior to Death
      Pension During Disability
      Claims Release
      Payments Under Law
      Amendment and Termination
      Participant Rights
      Successors
      Notice
      Applicable Laws
      Gender and Number
      Plan Not Contract of Employment
      Judgment or Settlement
      Subrogation
      Plan Year and Expenses

6. Plan Administration                                               16

      Plan Administration
      Committee Responsibilities

Appendix A                                                          18

R-0005



# AMERITECH

# SICKNESS AND ACCIDENT DISABILITY BENEFIT PLAN

## (AS AMENDED AND RESTATED EFFECTIVE AS OF JUNE 1, 1996)

# SECTION 1

## GENERAL

### 1.1. History and Purpose

Effective as of January 1, 1984, the Ameritech Sickness and Accident Disability Plan (the "Plan") was established by Ameritech Corporation, a Delaware corporation (the "Company"), for employees of the Company. Similar plans were adopted at that same time by certain of the Company's subsidiaries and affiliates for their employees. Effective as of January 1, 1995, all such subsidiary and affiliate plans were merged into the Plan. The purpose of the Plan is to provide short term disability benefits, as defined, for employees of the Company and of any subsidiary, affiliate or business unit of the Company which adopt the Plan (a "Participating Company"). The following provisions constitute an amendment, restatement and continuation of the Plan, effective as of June 1, 1996.

R-0006

# SECTION 2

## DEFINITIONS

**2.1.** "Base Pay" shall mean an Eligible Employee's basic pay rate at commencement of the Disability (not including compensation for overtime), as determined from the payroll records of the Company or Participating Company which employs the Eligible Employee. Differentials and/or average commissions may be included in base pay for purposes of the Plan if the policy of the Company or a Participating Company so provides.

**2.2.** "Committee" shall mean the Ameritech Employees' Benefit Committee. "Committee" shall also mean, where appropriate, any applicable subcommittee or any duly authorized delegate of the Company, a Participating Company or the Committee as the case may be. Such duly authorized delegate may be an individual or organization within the Company, the Participating Company or the Committee or may be an unrelated third party individual or organization.

**2.3.** "Company" shall mean Ameritech Corporation.

**2.4.** "Disability" or "Disabled" during the period of 52 weeks immediately following the Waiting Period shall mean a sickness or injury, supported by objective medical documentation, that prevents the Eligible Employee from performing the duties of his/her last Company or Participating Company-assigned job with or without reasonable accommodation (as determined by the Company or its delegate) or any other job assigned by the Company or Participating Company for which the Eligible Employee is qualified with or without reasonable accommodation (as determined by the Company or its delegate). For the purposes of this Plan, disabilities associated with pregnancy shall be considered disabilities due to sickness.

**2.5.** "Effective Date" shall mean January 1, 1984.

**2.6.** "Eligible Employee" shall mean an individual who on or after the effective date of this Plan is a regular full time or part time employee of the Company or a Participating Company. An individual who is represented by a collective bargaining agent is not an Eligible Employee unless such individual's participation in this Plan is provided for by agreement between the Company or a Participating Company and such agent. Part-time employees of Ameritech Mobile Communications, Inc., Ameritech Paging Services, Inc., Metrocom Communications, Inc., and CyberTel Corporation must be scheduled to work 25 hours or more per week to be considered Eligible Employees.

R-0007

**2.7.** "Participating Company" shall mean any subsidiary, affiliate or business unit of the Company which has adopted the Plan.

**2.8.** "Plan" shall mean this Ameritech Sickness and Accident Disability Benefit Plan, the terms and conditions of which are set forth herein. The words "Accident Disability Benefit Plan" and "Sickness Disability Benefit Plan" shall mean those parts of the Plan which deal respectively with such benefits.

**2.9.** "Waiting Period" shall mean the seven (7) calendar days of absence for which disability benefits under local departmental discretion are payable and for which no benefits are payable under this Plan.

# SECTION 3

## SICKNESS DISABILITY BENEFITS

### 3.1. Participation

(a) All Eligible Employees whose term of employment is six or more months of net credited service as shown by the records of the Company or the Participating Company which employs them, shall become participants in the Sickness Disability Benefit Plan and be eligible to receive benefits under the Plan on account of Disability by reason of sickness or off-the-job injury. Such benefits are hereinafter referred to as Sickness Disability Benefits. Such benefits shall terminate when Disability ceases and shall in no case extend beyond the periods hereinafter mentioned. For the purposes of the Plan, sickness shall include injury other than accidental injury arising out of and in the course of employment by the Company or a Participating Company.

(b) Individuals who are on leave of absence (or who are reemployed by the Company or a Participating Company in accordance with the terms of a settlement, award or order involving a grievance, arbitration or litigation relating to a prior termination from employment and which provides for the immediate crediting of a period of prior service with the Company or a Participating Company) shall become covered on the date they return to work if they are then otherwise Eligible Employees or on such later date as they become Eligible Employees. Individuals on an Anticipated Disability Leave of Absence under the Anticipated Disability Program shall be covered when their certified Disability begins if they are otherwise eligible.

-3-

R-0008

(c) Except as otherwise provided in Paragraph 5.14, eligibility to begin receiving benefits under this Plan shall cease on the date employment with the Company or a Participating Company is terminated. Termination of employment shall include retirement, layoff or leave of absence.

## 3.2.  Benefit Periods

Sickness Disability Benefits shall be as follows:

> (a)   If term of employment is 6 months to 2 years — half pay 52 weeks.
>
> (b)   If term of employment is 2 to 5 years — full pay 4 weeks; half pay 48 weeks.
>
> (c)   If term of employment is 5 to 15 years — full pay 13 weeks; half pay 39 weeks.
>
> (d)   If term of employment is 15 to 20 years — full pay 26 weeks; half pay 26 weeks.
>
> (e)   If term of employment is 20 to 25 years — full pay 39 weeks; half pay 13 weeks.
>
> (f)   If term of employment is 25 years or more — full pay 52 weeks.

Note:  Term of employment is determined by net credited service as shown on the records of the Company or Participating Company.

Periods of "full pay" and "half pay" for purposes of this Paragraph 3.2. shall be based on the Eligible Employee's term of employment on the first calendar day of absence after the Waiting Period.  Sickness Disability Benefits shall be computed based on the number of hours per week constituting the Eligible Employee's current work schedule, not including overtime, and the Eligible Employee's Base Pay.

Note:  For benefit periods applicable to Eligible Employees who are members of IBEW Locals Nos. 336 and 399, see Appendix A.

## 3.3.  Beginning of Benefit Periods

Sickness Disability Benefits shall begin on the first calendar day of absence on account of Disability after the Waiting Period; provided, however, that if an Eligible Employee is again absent

R-0009

on account of sickness within two weeks after the termination of the first benefit period, any Sickness Disability Benefits on account of such further sickness shall begin on the first day of absence instead of on the eighth day.

### 3.4. Successive Periods of Disability

Successive periods of sickness Disability shall be counted together as one period in computing the period during which the Eligible Employee shall be entitled to Sickness Disability Benefits, except that any sickness occurring after an Eligible Employee has been continuously at work for 13 weeks (excluding vacation, leave of absence and incidental absence time) shall be considered a new sickness and not as part of any Disability which preceded such period of 13 weeks.

### 3.5. No Duplicate Payments

Eligible Employees shall not be entitled to receive Sickness Disability Benefits for time for which any wages are paid them by the Company or a Participating Company.

### 3.6. Source of Payments

All Sickness Disability Benefits authorized under the Plan shall be a charge to the operating expense accounts of the employing Company or a Participating Company when and as paid.

## SECTION 4

## ACCIDENT DISABILITY BENEFITS

### 4.1 Participation

(a) All Eligible Employees shall be participants in the Accident Disability Benefit Plan and are eligible to receive payments under the Plan on account of Disability by reason of accidental injury or illness (not including the accidental injuries specified in Paragraph 4.1(d) below) arising out of and in the course of employment by the Company or a Participating Company. Such payments are hereinafter referred to as Accident Disability Benefits.

(b) Individuals who are on leave of absence (or who are reemployed by the Company or a Participating Company in accordance with the terms of a settlement, award or order involving a grievance, arbitration or litigation relating to a prior termination from employment and which provides for the immediate crediting of a period of prior service with the Company or a Partici-

- 5 -

R-0010

pating Company) shall become covered on the date they return to work if they are then otherwise Eligible Employees or on such later date as they become Eligible Employees. Individuals on an Anticipated Disability Leave of Absence under the Anticipated Disability Program shall be covered when their certified Disability begins if they are otherwise eligible.

(c) Except as otherwise provided in Paragraph 5.14, eligibility to begin receiving benefits under this Plan shall cease on the date employment with the Company or a Participating Company is terminated. Termination of employment shall include retirement, layoff or leave of absence.

(d) Disability resulting from infection of a cut, abrasion, scratch, puncture, or other wound not immediately disabling and not reported at the time of the occurrence causing the injury, or from sunstroke or frostbite, shall not be classified as an accident, except at the discretion of the Committee.

## 4.2   Benefit Periods

Accident Disability Benefits commence on the first full day of an Eligible Employee's absence from work and shall be as follows:

### (a)   Total Disability

(i)    If term of employment is up to 15 years — full pay for 13 weeks; half pay as long as Eligible Employee remains Disabled.

(ii)   If term of employment is 15 years to 20 years — full pay for 26 weeks; half pay as long as Eligible Employee remains Disabled.

(iii)  If term of employment is 20 years to 25 years — full pay for 39 weeks; half pay as long as Eligible Employee remains Disabled.

(iv)   If term of employment is 25 years or more — full pay for 52 weeks; half pay as long as Eligible Employee remains Disabled.

Note: Term of employment is determined by net credited service as shown on the records of the Company or a Participating Company. For benefit periods applicable to Eligible Employees who are members of IBEW Locals Nos. 336 and 399, see Appendix A.

For an Eligible Employee hired or rehired on or after January 1, 1981 periods of "full pay" and "half pay" for purposes of this Paragraph 4.2 (a) shall be based on the Eligible Employee's term of employment as of the first day of absence, and Accident Disability Benefits shall be computed based on the number of hours per week constituting the Eligible Employee's current work sched-

R-0011

ule, not including overtime, and the Eligible Employee's Base Pay. For an Eligible Employee on the active payroll as of December 31, 1980, who works part-time thereafter during the same continuous period of employment, periods of "full pay" and "half pay" for purposes of this Paragraph 4.2 (a) shall be based on the Eligible Employee's term of employment as of the first day of absence, and Accident Disability Benefits shall be computed based on the number of hours per week commonly regarded as constituting full time service, not including overtime, and the Eligible Employee's Base Pay.

**(b)** **Successive Periods of Total Disability**

Successive periods of accident Disability shall be counted together, if from the same accident, as one period in computing the period during which the Eligible Employee shall be entitled to Accident Disability Benefits; except that, in event of any relapse related to the same accident but occurring after the Eligible Employee has been continuously at work for 13 weeks (excluding vacation, leave of absence and incidental absence time), the Eligible Employee shall be entitled to Accident Disability Benefits as provided in Paragraph 4.2(a).

**(c)** **Partial Disability**

Payment for any period of partial Disability during the first 13 weeks of Disability shall be 100% of the difference between the Eligible Employee's full pay based on the number of hours per week constituting the Eligible Employee's current work schedule, not including overtime, at the time the Committee declares such Eligible Employee partially Disabled and wages which, in the judgment of the Committee, the Eligible Employee is capable of earning. Payment for any period of partial Disability after the first 13 weeks of Disability shall be 50% of the difference between full pay at the time the Committee declares the Eligible Employee partially Disabled and wages which, in the judgment of the Committee, the Eligible Employee is capable of earning. However, no payments for partial Disability shall be made after six years of Disability payments.

**(d)** **Full Pay Periods of Partial Disability**

The 13-week period specified in Paragraph 4.2 (c) above shall, for accident partial Disability cases be increased, if applicable, to conform to the schedule for full pay periods set forth in Paragraph 4.2 (a) based upon the Eligible Employee's net credited service.

R-0012

### 4.3.  Change in Disability Classification

If, after a period of total Disability, the Disability becomes partial or if, after a period of partial Disability, the Disability becomes total, the amount of the benefits and the periods for which they are payable shall be changed accordingly.

### 4.4.  Determining Benefit Periods

To ascertain the period during which Accident Disability Benefits shall be paid, the period of Disability shall begin on the first day on which a full day's pay is not paid because of Disability. Successive periods of Disability shall be counted together, if from the same accident, in accordance with this Section 4, and separately if from different accidents.

### 4.5.  Relationship of Injury to Employment

Accidental injuries shall be considered as arising out of, and in the course of employment, only where the injury has resulted solely from an accident during and in direct connection with the performance of duties to which the Eligible Employee is assigned by the Company or a Participating Company or which he or she is directed to perform by proper Company or Participating Company authority or if voluntarily protecting the Company's or Participating Company's property or interests. There must be a clear and well-established history of the cause and circumstances of the injury that renders the Eligible Employee Disabled.

### 4.6.  Loss of Bodily Member

If an accidental injury to any Eligible Employee arising out of and in the course of employment by the Company or a Participating Company results in permanent loss of a bodily member or its use, special benefits, in lieu of all other benefits on account of such injury, may be awarded by the Committee.  However, such special benefits shall not exceed the amount of the payment that is or could be authorized, in that particular case, to be paid under the Ameritech Pension Plan in the event of death from accidental injury, except by specific authority from the Board of Directors of the Company.

### 4.7.  Payment of Expenses

In case of accidental injury to any Eligible Employee arising out of and in the course of employment by the Company or a Participating Company, the necessary expenses for first aid shall, on approval of the Committee, be paid by the Company or Participating Company.  In addition, the

R-0013

Company or Participating Company will pay for necessary surgical treatment, if approved by the Committee, but no Eligible Employee shall have authority to contract any bills against the Company or Participating Company or the Committee. Nothing herein shall be held to mean or imply that the Company or Participating Company will be responsible for such bills as an Eligible Employee may contract or a medical provider may charge. Bills for surgical treatment must be itemized before they will be considered by the Committee. The decision as to whether surgical treatment was necessary rests with the Committee. At its discretion, the Committee may authorize payment of other expenses necessary for the proper care of the Eligible Employee.

## 4.8.   Source of Payments

All Accident Disability Benefits and related expenses authorized under the Plan shall be a charge to the operating expense of the employing Company or Participating Company when and as paid.

# SECTION 5

## GENERAL PROVISIONS

## 5.1   Rights to Benefits

Neither the action of the Company's Board of Directors in establishing this Plan, nor any action taken by the Board, the Company, any Participating Company or the Committee shall be construed as giving to any officer, agent, or Eligible Employee a right to be retained in the service of the Company or any Participating Company nor any right or claim to any benefit or allowance after termination from the employment of the Company or Participating Company, unless the right to such benefit has accrued prior to such discharge. In the event of termination of the Plan, no Eligible Employee shall have any right against the Company or any Participating Company to any benefit under the Plan other than the amount to which the Eligible Employee has previously become entitled and which the Committee has directed be paid to the Eligible Employee under the Plan. An Eligible Employee will have no right against the Plan, the Company or any Participating Company except as otherwise provided herein or as provided by law.

R-0014

## 5.2.   Assignment or Alienation

Benefits payable to, or on account of, any Eligible Employee under the Plan may not be voluntarily or involuntarily assigned or alienated.

## 5.3.   Determination of Eligibility

In all questions relating to eligibility to become a participant in the Plan, or relating to term of employment, net credited service and Base Pay for determining Plan benefits, the decision of the Committee, based upon the records of the Company or a Participating Company, shall be final.

## 5.4.   Leave of Absence

Leave of absence, for the purposes of the Plan, shall mean a leave formally granted in conformity with the rules of the Company or a Participating Company, as adopted from time to time. A leave of absence for a period not exceeding one month, except a leave following expiration of Disability benefits, may be granted in accordance with the rules of the Company or Participating Company, without approval by the Committee. Eligible Employees shall retain eligibility for benefits under this Plan during any such absence. Leave of absence for any period in excess of one month shall not be effective unless approved in writing by the Committee. In any case in which such approval is given, the Committee shall indicate whether during this leave of absence the Eligible Employee shall be eligible for benefits under this Plan and, if so, under what conditions. Absence following the expiration of a period of Disability benefits shall be considered as a break in service unless the Eligible Employee is granted a leave of absence by the Committee. However, in its discretion, the Committee may consider any such absence as a leave of absence, if satisfactory evidence is furnished that the Disability was continuous during the entire period of absence.

## 5.5   Notice of Sickness or Injury

Every Eligible Employee who is absent from work due to sickness or injury must at once notify his or her immediate supervisor and any other individual or organization designated by the Company to receive such notice. Eligible Employees will not be entitled to Plan benefits prior to such notice, unless the delay is shown to have been unavoidable and satisfactory evidence of Disability is furnished.

R-0015

### 5.6.  Claims

All claims for Disability benefits must be made within 60 days from the date of accident or from the first day of absence due to sickness.

### 5.7.  Examination by Physician

A Disabled Eligible Employee will not be entitled to benefits if he or she declines to submit to such examination made by a physician chosen by the Committee, as the Company may deem necessary to ascertain the Eligible Employee's condition. If an Eligible Employee fails to provide proper information respecting his or her condition, fails to furnish objective medical documentation of such condition or fails to follow a medically credible treatment plan, reasonably designed (where practicable) to effect the Eligible Employee's recovery and return to work, Plan benefits are not payable.

### 5.8.  Request to Travel

A Disabled Eligible Employee wishing to travel overnight away from home shall obtain written approval for the specified time of absence from the Committee in advance of the travel, otherwise no benefits are payable from the Plan for such period of absence.

### 5.9  Payments of Benefits

Benefits provided by this Plan shall be paid directly to the Eligible Employee in the same frequency (monthly, biweekly, etc.) as regular wages would be paid if the Eligible Employee were actively employed. The Company and/or Participating Company pays the full cost of benefits provided. If an Eligible Employee is declared incompetent and a conservator or other person legally charged with the care of the Eligible Employee's person or estate is appointed, any benefits to which such Eligible Employee is entitled under the Plan shall be paid to such conservator or other person. In addition, benefits payable to an Eligible Employee for whom no conservator or other such person has been appointed, but who is nevertheless unable to execute a proper receipt, may be paid to a relative or other person selected by the Committee to use for the benefit of the Eligible Employee, and the receipt of such person shall be a sufficient discharge to the Plan, the Committee, the Company and the Participating Companies.

R-0016

## 5.10. Lump Sum Settlements

In case of any grave injury or chronic sickness, if the Eligible Employee requests that a lump sum be paid in full settlement of all claims under the Plan and against the Company or Participating Company on account of such injury or sickness, the Committee may, in its discretion, make full and final settlement with the Eligible Employee by commuting the benefit payments into a single lump sum payment. The payment shall be the present value computed on a fair basis, of the benefits to which the Eligible Employee would become entitled to during such period as the Disability may reasonably be expected to continue.

## 5.11. Subsequent Periods of Disability

After an Eligible Employee has received the maximum Sickness Disability Benefits provided for an Eligible Employee with his or her term of employment, such Eligible Employee is not entitled to any additional Sickness Disability Benefits until he or she is back at work for a continuous period of 13 weeks performing his or her job, excluding vacation, leave of absence or incidental absence time. If an Eligible Employee who has received Sickness Disability Benefits shall subsequently become disabled by an accidental injury arising out of, and in the course of employment by the Company or a Participating Company, or if an Eligible Employee who has received Accident Disability Benefits shall subsequently become Disabled by sickness, the period during which benefits are payable on account of such subsequent Disability shall not be affected by the preceding period of Disability.

## 5.12. No Duplicate Payments

Benefits shall not be payable for both accident and sickness Disability at the same time to the same person.

## 5.13. Amounts Accrued Prior to Death

Disability benefits accrued, but not actually paid at the time of death of an Eligible Employee, may (if permissible under applicable law and, if so, at the discretion of the Committee) be paid to the spouse of the deceased person or to some other suitable person selected by the Committee for use in payment of expenses incident to the death of such Eligible Employee or the Disability immediately preceding such death or for the benefit of any person or persons dependent upon such Eligible Employee at the time of death.

R-0017

### 5.14. Pension During Disability

If an Eligible Employee receiving Sickness or Accident Disability Benefits retires, under provisions of the Ameritech Pension Plan, and is entitled to payment of a service or deferred vested pension under such plan, the Disability benefits payable to such person shall be discontinued upon the commencement of the service or deferred vested pension payments. If the Disability benefits are greater in amount, the Eligible Employee may elect in writing to continue receiving them and defer receiving payments of the pension. Alternatively, the Committee may elect to make Disability benefit payments supplemental to the service or deferred vested pension so that the rate of total payment is not diminished below the rate of Disability benefits.

### 5.15. Claims Release

In case of accident resulting in injury to an Eligible Employee which entitled the Eligible Employee to benefits under the Plan, he or she may elect to accept such benefits or to prosecute such claims at law as he or she may have against the Company or a Participating Company. If election is made to accept the benefits, such election shall be in writing and shall release the Company or Participating Company from all claims and demands which the Eligible Employee may have against them, otherwise than under the Plan, on account of such accident.

The Committee, in its discretion, may require that the elections and releases described above shall release any other company connected with the accident. The right of the Eligible Employee to Accident Disability Benefits under the Plan shall lapse if election to accept such benefits, as above provided, is not made within 60 days after injury, or within a greater time as the Committee shall determine for the making of such election.

### 5.16. Payments Under Law

In case any benefit, which the Committee shall determine to be of the same general type as a payment provided by the Plan, shall be payable under any law now in force (or hereafter enacted) to any Eligible Employee of the Company or a Participating Company, the excess only, if any, of the amount prescribed in the Plan over the amount prescribed by law shall be payable under the Plan. However, no benefit payable under this Plan shall be reduced by reason of any governmental benefit payable on account of military service or by reason of any benefit which the recipient would be entitled to receive under the Social Security Act. In those cases when such excess is not ascertainable by mere comparison but adjustments are necessary, the Committee in its sole discretion is authorized to determine whether or not in fact any such excess exists, and in case of such excess, to make the adjustments necessary to execute in a fair and equitable manner the spirit of this provision.

- 13 -

## 5.17. Amendment and Termination

Subject to the provisions of this Plan and any applicable collective bargaining agreement, the Company's Senior Vice President – Human Resources, or such other officer of the Company as may from time to time be primarily responsible for human resources matters, may with the concurrence of the Company's Executive Vice President and General Counsel or such other Officer of the Company as may from time to time be primarily responsible for legal matters, make minor or administrative amendments to the Plan. Also, subject to any applicable collective bargaining agreement, the Company reserves the right, by action of its Board of Directors to amend or terminate the Plan at any time and any Participating Company may, by action of its Board of Directors (or, if such Participating Company does not have a Board of Directors and is managed by its shareholder or shareholders, by action of such shareholder or shareholders), terminate its participation in the Plan at any time.

## 5.18. Participant Rights

No action under this Section 5. shall, without the consent of the affected Eligible Employee, adversely affect the rights of any Eligible Employee with respect to any amount payable under the Plan to which the Eligible Employee previously became eligible to receive by reason of a Disability which occurred prior to such action.

## 5.19. Successors

The obligations of the Company and each Participating Company under the Plan shall be binding upon any assignee or successor in interest thereto.

## 5.20. Notice

Any notice or document required to be given to or filed with the Committee shall be considered to be given or filed if delivered to the Committee or mailed by registered mail, postage prepaid, to the Secretary of the Employees' Benefit Committee, in care of the Company, at 225 W. Randolph St., HQ 26A, Chicago, IL 60606.

## 5.21. Applicable Laws

The Plan shall be construed and administered in accordance with the laws of the State of Illinois to the extent not preempted by federal law.

R-0019

## 5.22. Gender and Number

Where the context admits, words in any gender shall include any other gender, words in the singular shall include the plural and the plural shall include the singular.

## 5.23. Plan Not Contract of Employment

The Plan does not constitute a contract of employment, and nothing in the Plan will give any employee or Eligible Employee the right to be retained in the employ of the Company or a Participating Company nor any right or claim to any benefit under the Plan, except to the extent specifically provided under the terms of the Plan.

## 5.24. Judgment or Settlement

In case any judgment is recovered against the Company or a Participating Company or any settlement is made of any claim or suit on account of the injury of an Eligible Employee, and the amount which would otherwise have been payable under the Plan is greater than the amount paid on account of such judgment or settlement, the difference between the two amounts may, in the discretion of the Committee, be distributed to the beneficiaries who would have received benefits under the Plan.

## 5.25. Subrogation

The Company shall be subrogated to all rights of recovery of the person to whom payment is made under the Plan, against any person or organization, except against insurers on policies of insurance issued to and in the name of the person for whom such payment is made, and the latter shall execute and deliver such instruments and papers as may be required and do whatever else is necessary to secure such rights. This subrogation provision allows the Company the right to recover benefits paid to an Eligible Employee from a third party whose negligent or wrongful actions resulted in the Disability to that Eligible Employee.

## 5.26 Plan Year and Expenses

The Plan year is from January 1 to December 31. The expenses of administering the Plan shall be paid by the Company and Participating Companies.

R-0020

# SECTION 6

## PLAN ADMINISTRATION

### 6.1.  Plan Administration

The Company shall be the Plan Administrator and the Sponsor of this Plan as these terms are defined in the Employee Retirement Income Security Act of 1974, as amended (ERISA).  The Company shall appoint the Committee to have the administrative responsibilities described below. The Company and Committee each shall be a named fiduciary (as that term is used in ERISA) with respect to the particular duties and responsibilities allocated to it pursuant to this Plan.

### 6.2.  Committee Responsibilities

(a)      The Committee shall have the specific powers elsewhere herein granted to it and shall have such other powers as may be necessary in order to enable it to administer the Plan, except for powers herein granted or provided to be granted to others.

(b)      The Committee shall adopt and apply in a uniform and nondiscriminatory manner to all persons similarly situated such by-laws and rules or procedures as it may find appropriate.  The Committee shall also maintain and keep such records concerning the Plan and the Committee's acts and proceedings in such form and detail as the Committee deems appropriate.

(c)      The Committee shall be empowered to employ a Secretary and such assistants as may be required in the administration of the Plan.  The Secretary is hereby designated as agent for service of legal process with respect to any claims arising under the Plan.  The Committee may also employ agents, experts and  counsel as it deems desirable and may delegate discretionary powers to and reasonably rely upon information and advice furnished by such agents, experts and counsel.

(d)      The Committee shall grant or deny claims for benefits under the Plan and authorize benefit payments pursuant to the Plan.  A claim for benefits can be denied at any time an Eligible Employee becomes ineligible to receive benefits.  If a claim for benefits under the Plan is denied in whole or in part, the Committee shall provide the claimant with a written notification of the following, within a reasonable period of time after receipt of the claim (not to exceed 90 days unless special circumstances warrant an extension of up to an additional 90 days and written notification of the extended deadline and the reason therefor is sent to the claimant within the original 90 days):

- 16 -

(i)    the specific reason for the denial;

(ii)   the specific Plan provision on which the denial is based;

(iii)  if applicable, a description of the additional information or documentation needed to perfect the claim;

(iv)  an explanation of why such additional material is necessary; and

(v)   the person to whom a request for review of the denied claim should be addressed, and the deadline for making such request (which shall not be earlier than 60 days after the claimant's receipt of the written notification of the claim denial).

If the Committee does not respond to a claim for benefits within the period of time described above, the claim shall be deemed to be denied in full and eligible for review.

(e)    The Committee shall serve as the final review committee, under the Plan and ERISA, for the review of all appeals by individuals whose initial claims for benefits have been denied, in whole or part. Any individual whose claim for benefits has been denied, in whole or part, may (and must for the purpose of seeking any further review of a decision or determining any entitlement to a benefit under the Plan), within 60 days after receipt of notice of denial, submit a written request for review of the decision denying the claim. In such case, the Committee, shall:

(i)    make a full and fair review of such decision within 60 days after receipt of the written request for review, or within an additional 60 days, provided the claimant is notified of the delay and the reasons for requiring such additional time; and

(ii)   notify the claimant in writing of the review decision, specifying the reasons for such decision.

(f)    The Committee has full discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with Plan terms. The Committee shall determine conclusively for all parties all questions arising in the administration of the Plan and any decision of the Committee shall not be subject to further review.

(g)    The Company may allocate responsibilities for the operation and administration of the Plan consistent with the Plan's terms. The Company and other named fiduciaries may delegate any of their responsibilities hereunder by designating in writing other persons to carry out their respective responsibilities under the Plan, and may employ persons to advise them with regard to any such responsibilities. Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan.

R-0022

# APPENDIX A

## BENEFIT PERIODS FOR ELIGIBLE EMPLOYEES IN IBEW LOCAL 336 AND 399 EMPLOYED BY AMERITECH INFORMATION SYSTEMS

### Sickness Disability Benefits shall be as follows:

(a)  If term of employment is 6 months to 2 years, half pay 26 weeks.

(b)  If term of employment is 2 years to 5 years, full pay 4 weeks, half pay 22 weeks.

(c)  If term of employment is 5 years to 15 years, full pay 13 weeks, half pay 13 weeks.

(d)  If term of employment is over 15 years, full pay 26 weeks.

Sickness Disability Benefits shall begin on the first calendar day of absence on account of Disability after the Waiting Period; provided, however, that if an Eligible Employee is again absent on account of sickness within one week after the termination of the first benefit period, any Sickness Disability Benefits on account of such further sickness shall begin on the first day of absence instead of on the eighth day.

Successive periods of sickness Disability shall be counted together as one period in computing the period during which the Eligible Employee shall be entitled to Sickness Disability Benefits, except that any sickness occurring after an Eligible Employee has been continuously at work for seven (7) weeks (excluding vacation, leave of absence and incidental absence time) shall be considered a new sickness and not as part of any Disability which preceded such period of seven (7) weeks.

### Accident Disability Benefits shall be as follows:

(a)  If term of employment is up to 15 years, full pay 7 weeks, half pay as long as totally Disabled.

(b)  If term of employment is 15 years but less than 20 years, full pay 13 weeks, half pay as long as totally Disabled.

(c)  If term of employment is 20 years but less than 25 years, full pay 20 weeks, half pay as long as totally Disabled.

(d)  If term of employment is 25 years or more, full pay 26 weeks, half pay as long as totally Disabled.

Successive periods of accident Disability shall be counted together, if from the same accident, as one period in computing the period during which the Eligible Employee shall be entitled to Accident Disability Benefits; except that, in event of any relapse related to the same accident but occuring after the Eligible Employee has been continuously at work for seven (7) weeks (excluding vacation, leave of absence and incidental absence time), the Eligible Employee shall be entitled to Accident Disability Benefits as provided above.

R-0023



# LONG TERM DISABILITY PLAN

### (AS AMENDED AND RESTATED EFFECTIVE AS OF JUNE 1, 1996)

R-0024

# TABLE OF CONTENTS

**SECTION**                                                          **PAGE**

1. **General**                                                          1

   History and Purpose

2. **Definitions**                                                      2

3. **Disability Benefits**                                              3

   Eligibility for Coverage
   Amount of Benefit
   Benefit Payment Intervals
   Duration of Benefits

4. **Exclusions**                                                       5

5. **Plan Administration**                                              6

   Plan Administration
   Committee Responsibilities

6. **Other General Provisions**                                         8
   Rights to Benefits
   Assignment and Alienation
   Determination of Eligibility
   Examination by Physician
   Payments of Benefits
   Amounts Accrued Prior to Death
   Claims Release
   Amendment and Termination
   Participant Rights
   Successors
   Notice
   Applicable Laws
   Gender and Number
   Judgment or Settlement
   Subrogation
   Plan Year and Expenses

**Appendix A and B**                                                 **12, 13**

R-0025



# AMERITECH

## Long Term Disability Plan

### (As Amended and Restated Effective as of June 1, 1996)

## SECTION 1

### GENERAL

### 1.1. History and Purpose

Effective as of January 1, 1984, the Ameritech Long Term Disability Plan (the "Plan") was established by Ameritech Corporation, a Delaware corporation (the "Company"), for employees of the Company. Similiar plans were adopted at that same time by certain of the Company's subsidiaries and affiliates for their employees. Effective as of January 1, 1995 all such subsidiary and affiliate plans were merged into the Plan. The purpose of the Plan is to provide long term disability benefits, as defined, for employees of the Company and of any of its subsidiaries, affiliates or business units which adopt the Plan (a "Participating Company"). The following provisions constitute an amendment, restatement and continuation of the Plan, effective as of June 1, 1996.

1

R-0026

# SECTION 2

## DEFINITIONS

2.1 "Base Pay" shall mean an Eligible Employee's basic rate of pay in effect on the day prior to commencement of the Disability (not including compensation for overtime), as determined from the payroll records of the Company or Participating Company which employs the Eligible Employee. Differentials and/or average commissions may be included in Base Pay for purposes of the Plan if the policy of the Company or a Participating Company so provides.

2.2 "Committee" shall mean the Ameritech Employees' Benefit Committee. "Committee" shall also mean, where appropriate, any applicable subcommittee or any duly authorized delegate of the Company, a Participating Company or the Committee as the case may be. Such duly authorized delegate may be an individual or organization within the Company, the Participating Company or the Committee or may be an unrelated third party individual or organization.

2.3 "Company" shall mean Ameritech Corporation.

2.4 "Disability" or "Disabled" is defined in Appendices A and B.

2.5 "Effective Date" shall mean January 1, 1984.

2.6 "Eligible Employee" shall mean an individual who on or after the effective date of this Plan is a regular full-time or part-time employee (salaried or non-salaried) of the Company or a Participating Company. An individual who is represented by a collective bargaining agent is not an Eligible Employee unless such individual's participation in this Plan is provided for by agreement between the Company or a Participating Company and such agent. Part-time employees of Ameritech Mobile Communications, Inc., Ameritech Paging Services, Inc., Metrocom Communications, Inc., and CyberTel Corporation must be scheduled to work 25 hours or more per week to be considered Eligible Employees.

2.7 "Non-Salaried Employee" shall mean an employee who is paid at an hourly rate of pay, is subject to the overtime pay provisions of the Fair Labor Standards Act and whose position is subject to automatic wage progression.

2.8 "Participating Company" shall mean any subsidiary, affiliate or business unit of the Company which has adopted the Plan.

2.9 "Plan" shall mean this Ameritech Long Term Disability Plan (LTD), the terms and conditions of which are set forth herein.

2

R-0027

2.10 "Salaried Employee" shall mean an employee whose pay is at a monthly or annual rate and whose position is not subject to automatic wage progression.

2.11 "Waiting Period" shall mean the 26 week or 52 week period for which Sickness Disability Benefits under the Ameritech Sickness and Accident Disability Benefit Plan are payable and for which no benefits are payable under this Plan.

# SECTION 3

## DISABILITY BENEFITS

### 3.1. Eligibility For Coverage

(a)  Individuals, including those receiving sickness disability benefits under the Ameritech Sickness and Accident Disability Benefit Plan (SADBP), shall become covered if they are then otherwise Eligible Employees or on such later date as they become Eligible Employees.

(b)  Individuals who are on leave of absence (or who are reemployed by the Company or a Participating Company in accordance with the terms of a settlement, award or order involving a grievance, arbitration or litigation relating to a prior termination from employment and which provides for the immediate crediting of a period of prior service with the Company or a Participating Company) shall become covered on the date they return to work if they are then otherwise Eligible Employees or on such later date as they become Eligible Employees.  Individuals on an Anticipated Disability Leave of Absence shall be covered when their certified disability begins if they are otherwise eligible.

(c)  Eligible Employees must apply for benefits under this Plan within six months after the expiration of the Waiting Period or all rights to apply for and receive benefits under the Plan are forfeited.

### 3.2. Amount of Benefit

If an Eligible Employee is Disabled for a period beyond the Waiting Period as a result of sickness or injury, this Plan shall provide, for the period during which benefits are provided by this Plan, an amount of monthly benefit which when added to amounts paid or payable from the following sources equals 50% of Base Pay:

3

(a)    as a Disability Insurance Benefit or an Old Age Insurance Benefit under the Social Security Act (Primary Benefit only). The amount of Social Security benefit to be considered shall be that amount reasonably estimated to be payable by the Company in its sole discretion at the time of commencement of benefits under this Plan, or the amount of Social Security benefit determined at such later date as the Social Security benefit may first become payable. Any retroactive award of Social Security benefits which covers any portion of the period for which benefits have been paid under this Plan shall be considered as an offset of such Plan benefits and are payable to the Company. The Company may deduct from any future benefits payable under this Plan any portion of a retroactive award of Social Security benefits considered due and not paid to the Company under this Section 3.2(a). Once determined for benefit calculation purposes, any further increase in Social Security shall not be considered;

(b)    as payments under any Workers' Compensation Act or similar legislation;

(c)    as payments under any other State or Federal disability benefits law, except Veteran's benefits; and

(d)    as benefits under the Ameritech Sickness and Accident Disability Benefit Plan (SADBP) or pension payments under the Ameritech Pension Plan. The amount of any such pension payment which is used in determining the total amount received for computing the benefits payable under this Plan shall be the amount of the pension payment as of September 1, 1983, or the date of retirement, whichever is later.

If the sum of (a), (b), (c), and (d) exceeds 50% of such Base Pay, then no amount is payable under this Plan. If nothing is payable from (a), (b), (c), or (d), then this Plan shall provide 50% of such Base Pay as the Plan benefit.

### 3.3.  Benefit Payment Intervals

Benefit payments shall be made at monthly intervals. To convert weekly Base Pay rates to a monthly amount, the weekly Base Pay rate shall be multiplied by 4.35.

Note: Benefits under this Plan will be directly deposited into Eligible Employees' designated accounts at a bank, savings and loan association or other financial institution, unless the recipient specifically elects to have benefits paid directly to them by check.

### 3.4.  Duration of Benefits

Benefits shall continue to be paid to an Eligible Employee until the earliest of:

(a)    Cessation of the employee's Disability;

(b)    The employee's death;

(c)    Expiration of the maximum LTD coverage period in accordance with the following schedule:

4

R-0029

| Age At Which Disability Commences | Maximum Duration of Benefits* |
|---|---|
| 61 or younger | to age 65 |
| 62 | 3-1/2 years |
| 63 | 3 years |
| 64 | 2-1/2 years |
| 65 | 2 years |
| 66 | 1-3/4 years |
| 67 | 1-1/2 years |
| 68 | 1-1/4 years |
| 69 and over | 1 year |

*Includes 52 weeks of sickness disability benefits under SADBP.

# SECTION 4

## EXCLUSIONS

The Plan does not cover, and no benefits shall be paid for, Disability caused or contributed to by:

- Any injury or sickness sustained in the commission of a felony by an otherwise Eligible Employee.

- Intentionally self-inflicted injuries, while sane or insane.

- Military service or war, declared or undeclared, or any act or hazard of war occurring after the Eligible Employee becomes covered under the Plan.

- Active participation in a riot, insurrection, rebellion or civil commotion.

Note: Benefits shall not be paid for any period of Disability during which the Eligible Employee is not under the care of a licensed physician. Also, an Eligible Employee covered under the Plan after the expiration of Sickness Disability Benefits under the SADBP is considered a former employee of the Company or Participating Company which previously employed him or her and as such has no guarantee of re-employment if no longer Disabled.

5

# SECTION 5

## PLAN ADMINISTRATION

### 5.1. Plan Administration

The Company shall be the Plan Administrator and the Sponsor of this Plan as these terms are defined in the Employee Retirement Income Security Act of 1974, as amended (ERISA). The Company shall appoint the Committee to have the administrative responsibilities described below. The Company and Committee each shall be a named fiduciary (as that term is used in ERISA) with respect to the particular duties and responsibilities allocated to it pursuant to this Plan.

### 5.2. Committee Responsibilities

(a)    The Committee shall have the specific powers elsewhere herein granted to it and shall have such other powers as may be necessary in order to enable it to administer the Plan, except for powers herein granted or provided to be granted to others.

(b)    The Committee shall adopt and apply in a uniform and nondiscriminatory manner to all persons similarly situated such by-laws and rules or procedures as it may find appropriate. The Committee shall also maintain and keep such records concerning the Plan and the Committee's acts and proceedings in such form and detail as the Committee deems appropriate.

(c)    The Committee shall be empowered to employ a Secretary and such assistants as may be required in the administration of the Plan. The Secretary is hereby designated as agent for service of legal process with respect to any claims arising under the Plan. The Committee may also employ agents, experts and counsel as it deems desirable and may delegate discretionary powers to and reasonably rely upon information and advice furnished by such agents, experts and counsel.

(d)    The Committee shall grant or deny claims for benefits under the Plan and authorize benefit payments pursuant to the Plan. A claim for benefits can be denied at any time an Eligible Employee becomes ineligible for benefits under the Plan. If a claim for benefits under the Plan is denied in whole or in part, the Committee shall provide the claimant with a written notification of the following, within a reasonable period of time after receipt of the claim (not to exceed 90 days unless special circumstances warrant an extension of up to an additional 90 days and written notification of the extended deadline and the reason therefor is sent to the claimant within the original 90 days):

(i)    the specific reason for the denial;

(ii)    the specific Plan provision on which the denial is based;

6

R-0031

(iii)  if applicable, a description of the additional information or documentation needed to perfect the claim;

(iv)  an explanation of why such additional material is necessary; and

(v)  the person to whom a request for review of the denied claim should be addressed, and the deadline for making such request (which shall not be earlier than 60 days after the claimant's receipt of the written notification of the claim denial).

If the Committee does not respond to a claim for benefits within the period of time described above, the claim shall be deemed to be denied in full and eligible for review.

(e)  The Committee shall serve as the final review committee, under the Plan and ERISA, for the review of all appeals by individuals whose initial claims for benefits have been denied, in whole or part. Any individual whose claim for benefits has been denied, in whole or part, may (and must for the purpose of seeking any further review of a decision or determining any entitlement to a benefit under the Plan), within 60 days after receipt of notice of denial, submit a written request for review of the decision denying the claim. In such case, the Committee, shall:

(i)  make a full and fair review of such decision within 60 days after receipt of the written request for review, or within an additional 60 days, provided the claimant is notified of the delay and the reasons for requiring such additional time; and

(ii)  notify the claimant in writing of the review decision, specifying the reasons for such decision.

(f)  The Committee has full discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with Plan terms. The Committee shall determine conclusively for all parties all questions arising in the administration of the Plan and any decision of the Committee shall not be subject to further review.

(g)  The Company may allocate responsibilities for the operation and administration of the Plan consistent with the Plan's terms. The Company and other named fiduciaries may delegate any of their responsibilities hereunder by designating in writing other persons to carry out their respective responsibilities under the Plan, and may employ persons to advise them with regard to any such responsibilities. Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan.

7

R-0032

# SECTION 6

## OTHER GENERAL PROVISIONS

### 6.1 Rights to Benefits

Neither the action of the Company's Board of Directors in establishing this Plan, nor any action taken by the Board, the Company, any Participating Company or the Committee shall be construed as giving to any officer, agent, or Eligible Employee a right to be retained in the service of the Company or any Participating Company nor any right or claim to any benefit or allowance after termination from the employment of the Company or Participating Company, unless the right to such benefit has accrued prior to such discharge. In the event of termination of the Plan, no Eligible Employee shall have any right against the Company or any Participating Company to any benefit under the Plan other than the amount to which the Eligible Employee has previously become entitled and which the Committee has directed be paid to the Eligible Employee under the Plan. An Eligible Employee will have no right against the Plan, the Company or any Participating Company except as otherwise provided herein or as provided by law.

### 6.2. Assignment or Alienation

Benefits payable to, or on account of, any Eligible Employee under the Plan may not be voluntarily or involuntarily assigned or alienated.

### 6.3. Determination of Eligibility

In all questions relating to eligibility to become a participant in the Plan, or relating to term of employment, net credited service and Base Pay for determining Plan benefits, the decision of the Committee, based upon the records of the Company or a Participating Company, shall be final.

### 6.4 Examination by Physician

A Disabled Eligible Employee will not be entitled to benefits if he or she declines to submit to such examination made by a physician chosen by the Committee, as the Company may deem necessary to ascertain the Eligible Employee's condition. If an Eligible Employee fails to provide proper information respecting his or her condition, fails to furnish objective medical documentation of such condition or fails to follow a medically credible treatment plan, reasonably designed (where practicable) to effect the Eligible Employee's recovery and return to work, Plan benefits are not payable.

8

R-0033

### 6.5    Payments of Benefits

If an Eligible Employee is declared incompetent and a conservator or other person legally charged with the care of the Eligible Employee's person or estate is appointed, any benefits to which such Eligible Employee is entitled under the Plan shall be paid to such conservator or other person.  In addition, benefits payable to an Eligible Employee for whom no conservator or other such person has been appointed, but who is nevertheless unable to execute a proper receipt, may be paid to a relative or other person selected by the Committee to use for the benefit of the Eligible Employee, and the receipt of such person shall be a sufficient discharge to the Plan, the Committee, the Company and the Participating Companies.

### 6.6.    Amounts Accrued Prior to Death

Disability benefits accrued, but not actually paid at the time of death of an Eligible Employee, may (if permissible under applicable law and, if so, at the discretion of the Committee) be paid to the spouse of the deceased person or to some other suitable person selected by the Committee for use in payment of expenses incident to the death of such Eligible Employee or the Disability immediately preceding such death or for the benefit of any person or persons dependent upon such Eligible Employee at the time of death.

### 6.7.    Claims Release

In case of accident resulting in injury to an Eligible Employee which entitled the Eligible Employee to benefits under the Plan, he or she may elect to accept such benefits or to prosecute such claims at law as he or she may have against the Company or a Participating Company.  If election is made to accept the benefits, such election shall be in writing and shall release the Company or Participating Company from all claims and demands which the Eligible Employee may have against them, otherwise than under the Plan, on account of such accident.

The Committee, in its discretion, may require that the elections and releases described above shall release any other company connected with the accident.

### 6.8.    Amendment and Termination

Subject to the provisions of this Plan and any applicable collective bargaining agreement, the Company's Senior Vice President – Human Resources, or such other officer of the Company as may from time to time be primarily responsible for human resources matters, may with the concurrence of the Company's Executive Vice President and General Counsel, or such other officer of the Company as may from time to time be primarily responsible for legal matters, make minor or administrative amendments to the Plan.  Also, subject to any applicable collec-

9

tive bargaining agreement, the Company reserves the right, by action of its Board of Directors to amend or terminate the Plan at any time and any Participating Company may, by action of its Board of Directors (or, if such Participating Company does not have a Board of Directors and is managed by its shareholder or shareholders, by action of such shareholder or shareholders), terminate its participation in the Plan at any time.

### 6.9.  Participant Rights

No action under this Section 6 shall, without the consent of the affected Eligible Employee, adversely affect the rights of any Eligible Employee with respect to any amount payable under the Plan to which the Eligible Employee previously became eligible to receive by reason of a Disability which occurred prior to such action.

### 6.10. Successors

The obligations of the Company and each Participating Company under the Plan shall be binding upon any assignee or successor in interest thereto.

### 6.11. Notice

Any notice or document required to be given to or filed with the Committee shall be considered to be given or filed if delivered to the Committee or mailed by registered mail, postage prepaid, to the Secretary, Employees' Benefit Committee, in care of the Company, at 225 W. Randolph St., HQ 26A, Chicago, IL 60606.

### 6.12. Applicable Laws

The Plan shall be construed and administered in accordance with the laws of the State of Illinois to the extent not preempted by federal law.

### 6.13. Gender and Number

Where the context admits, words in any gender shall include any other gender, words in the singular shall include the plural and the plural shall include the singular.

### 6.14. Judgment or Settlement

In case any judgment is recovered against the Company or a Participating Company or any settlement is made of any claim or suit on account of the injury of an Eligible Employee, and the amount which would otherwise have been payable under the Plan is greater than the amount paid on account of such judgment or settlement, the difference between the two amounts may, in the discretion of the Committee, be distributed to the beneficiaries who would have received benefits under the Plan.

10

R-0035

### 6.15. Subrogation

The Company shall be subrogated to all rights of recovery of the person to whom payment is made under the Plan, against any person or organization, except against insurers on policies of insurance issued to and in the name of the person for whom such payment is made, and the latter shall execute and deliver such instruments and papers as may be required and do whatever else is necessary to secure such rights. This subrogation provision allows the Company the right to recover benefits paid to an Eligible Employee from a third party whose negligent or wrongful actions resulted in the Disability to that Eligible Employee.

### 6.16  Plan Year and Expenses

The Plan year is January 1 to December 31. The expenses of administering the Plan shall be paid by the Company and Participating Companies.

R-0036

# APPENDIX A

## DEFINITION OF DISABILITY FOR NON-SALARIED EMPLOYEES

"Disability" or "Disabled" immediately following the Waiting Period shall mean an illness or injury, other than accidental injury arising out of and in the course of employment by the Company, or a Participating Company, supported by objective medical documentation, that prevents the Eligible Employee from engaging in any occupation or employment (with reasonable accommodation as determined by the Company or its delegate), for which the Eligible Employee is qualified, or may reasonably become qualified, based on training, education or experience. An employee shall continue to be considered disabled if prevented by reason of such illness or injury, supported by objective medical documentation, from working at a job which pays wages which, when combined with benefits payable from the Plan, equal less than 75% of the Eligible Employee's Base Pay at the time the Disability occurred.

R-0037

# APPENDIX B

## DEFINITION OF DISABILITY FOR SALARIED EMPLOYEES

"Disability" or "Disabled" during the period of one year immediately following the Waiting Period shall mean an illness or injury, other than accidental injury arising out of and in the course of employment by the Company or a Participating Company, supported by objective medical documentation, that prevents the Eligible Employee from performing the duties of his/her last Company or Participating Company-assigned job, with reasonable accommodation (as determined by the Company or its delegate). "Disability" after the one year period immediately following the Waiting Period shall mean that the Eligible Employee is prevented by reason of such illness or injury, supported by objective medical documentation, from either (1) working at a job for which the Eligible Employee is either qualified or may reasonably become qualified based on training, education and experience or (2) working at a job that pays at least 50% of the Eligible Employee's Base Pay at the time the Disability occurred.

R-0038

# Using The Ameritech Non-Management Disability Plans



# Using This Handbook

The disability benefits provided by the Ameritech Disability Plans (or "the Plans") are designed to help provide financial protection and security for you and your family if you should become disabled during your career with the Company. The Plans provide income for short- and long-term periods of disability at no cost to you.

This is a guide to using the Ameritech Disability Plans, which include the Ameritech Sickness And Accident Disability Benefit Plan and the Long Term Disability Plan. It is set up so that you can find the answers to your questions quickly. In the next sections, you'll find two helpful guides: "Finding The Information You Need" and "What You Need To Know About The Plans." "Finding The Information You Need" will tell you where you can find detailed information about the Plans. "What You Need To Know About The Plans" will highlight important Plan basics.

There are other easy ways for you to find information. Throughout this handbook, you'll find icons that identify important Plan information, including definitions, examples, and important facts. The following legend shows you what each icon represents:

 **Defines words and concepts that are important to the Plans**

 **Shows examples that can help you understand how the Plans work**

 **Calls your attention to information that you may not know about the Plans**

 **Indicates information to which you should pay special attention**

 **Explains where you can call if you have questions about the Plans**

*Using This Handbook (cont.)*

Each example features fictional Ameritech employees, Samuel and Angela. Throughout this and other benefit guides, these characters will be used to show how you can make the most of your benefits. Although your personal situation may differ from Samuel's and Angela's, the examples may help you better understand how the Plans work.

Please read through the pages that follow carefully. You may also want to share them with your family. Understanding what the Plans offer will help you take advantage of the benefits they provide should you ever need them.

### About This Handbook

*This handbook is your summary plan description (SPD) for the Ameritech Disability Plans, which are the Ameritech Sickness And Accident Disability Benefit Plan, and the Ameritech Long Term Disability Plan ("the Plan(s)") as restated June 1, 1996. Throughout this handbook, "Company" will be used to refer to the Ameritech Family of Companies (that is, the companies in the Ameritech tax-controlled group as defined in the Internal Revenue Code of 1986). "Ameritech" will be used to*

*refer to Ameritech Corporation. In addition to this handbook, refer to the* Administrative Information Handbook *for information on:*

- *claims appeals procedures*
- *administrative information about the Plans*
- *amending or terminating the Plans*
- *your rights under the Employee Retirement Income Security Act of 1974 (ERISA)*

*Along with the information listed above, some details of the Plans are not included in this summary. If there are any discrepancies between the information in this SPD and the actual Plan documents or federal tax laws and related IRS regulations, the Plan documents and such laws and regulations will be the final authority.*

*Except as specifically provided in the Plans, changes in Plan provisions that occur after you begin receiving your benefits generally will not offset those benefits. However, Ameritech reserves the right to amend or terminate the Plans at any time, subject to any applicable collective bargaining agreements.*

# Finding The Information You Need

Using This Handbook . . . . . . . . . . . . . . . . . . . . . . . . 1

What You Need To Know About The Plans . . . . . . . 4

Using The Ameritech Disability Plans  . . . . . . . . . . 7

Who Is Eligible For Coverage? . . . . . . . . . 7
How To Enroll  . . . . . . . . . . . . . . . . . . . . 7
When Coverage Begins  . . . . . . . . . . . . . . 7
When Coverage Ends  . . . . . . . . . . . . . . . 7

How The Sickness And
Accident Disability Benefit Plan Works  . . . . . . . . 8

Your Sickness Disability Benefits  . . . . . . . 8
Your Accident Disability Benefits  . . . . . . 10
If You Anticipate A Disability . . . . . . . . . 15

How The Long Term Disability Plan Works  . . . . . 16

Benefits Provided By The Plan . . . . . . . . . 16
How Long You Receive LTD Benefits  . . . . 17
Qualifying For Benefits  . . . . . . . . . . . . . . 17
When The Plan Does Not Pay Benefits  . . .17
Continuation Of Coverage Under
Other Company-Sponsored Plans  . . . . . . .18
Your Employment Status
When Receiving LTD Benefits . . . . . . . . . .18

Social Security Disability Benefits  . . . . . . . . . . . 19

How To File A Claim  . . . . . . . . . . . . . . . . . . . . . . 20

What To Do If You Become Disabled
(Checklist) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# What You Need To Know About The Plans

The Ameritech Disability Plans are designed to provide you and your dependents with protection from lost wages in the event of either a short- or long-term disability. The Plans include the Ameritech Sickness And Accident Disability Benefit Plan, which provides:

- Sickness benefits if you are unable to work due to an off-the-job illness or injury
- Accident benefits if you are unable to work due to an on-the-job illness or injury

In the event of a long-term disability, the Ameritech Long Term Disability (LTD) Plan provides pay-replacement if Sickness Disability benefits end and you are still disabled.

*Understanding the Plans doesn't take much! Just read through the table that follows and you'll find the basic information you need to use the Sickness And Accident Disability Benefit and LTD Plans. If you're looking for more detailed information, the table of contents on the previous page can help you find it.*

### When Am I Eligible?

If you are a regular full-time or part-time employee, coverage for Sickness Disability benefits and LTD begins after you complete six months of employment with the Company. Coverage for Accident Disability benefits begins on the first day of your employment.

### How Do I Enroll?

You are automatically enrolled in each Plan on your first day of eligibility.

### Do I Contribute To The Plans?

No. The Company provides you with these benefits at no cost to you.

4

R-0043

## How Do The Plans Work?

Sickness Disability benefits provide all or half of your pay, depending on your length of employment with the Company, for up to 52 weeks. To qualify, you must be disabled for seven consecutive days (including weekends and scheduled days off) due to an *off-the-job* illness or injury.

Accident Disability benefits will provide you with full pay for up to 52 weeks, depending on your length of employment. Once full pay is no longer available, the Plan will provide half pay for as long as you remain disabled. To qualify, you must be disabled due to an *on-the-job* illness or injury. See the next question for details on how the Plan coordinates benefits with Workers' Compensation.

LTD benefits begin if you are still disabled due to an off-the-job illness or injury after you have exhausted Sickness Disability benefits. The Plan works with other sources of disability income to provide you with half of your pre-disability pay. To qualify for LTD benefits, you must be disabled according to the definition of disability found in the "How The Long Term Disability Plan Works" section.

## How Will Receiving Workers' Compensation Affect The Accident Disability Benefits I Receive?

If you qualify to receive Accident Disability benefits, you may also qualify to receive Workers' Compensation benefits according to state statutes.

In such cases, the payment of Accident Disability and Workers' Compensation benefits will be coordinated. See the "Coordinating Benefits With Workers' Compensation" section for details.

## When Can I Receive Benefits From The Plan?

You can begin receiving Sickness Disability benefits after you are disabled for more than seven consecutive days (including weekends and scheduled days off) as a result of an off-the-job illness or injury.

You can begin receiving Accident Disability benefits on the first full day of your absence due to a disability resulting from an on-the-job illness or injury.

You can begin receiving LTD benefits after you have been disabled for the 52-week period during which Sickness Disability benefits are payable.

For both Plans, receipt of benefits is dependent on completing the benefit application process. You will not automatically receive benefits if you do not complete this process. See the "Qualifying For Benefits" section for details.

## When Do My Sickness And Accident Disability Benefits End?

Your benefits under the Sickness And Accident Disability Benefit Plan end on the first to occur of the following:

• your disability ends

• your eligible benefit period ends

• your employment ends for any reason (including your death)

• the Plan terminates

## When Do My LTD Benefits End?

Your benefits under the LTD Plan end on the first to occur of the following:

• your disability ends

• your eligible benefit period ends

• you die

• the Plan terminates

## Does Receiving Benefits Under The Plans Affect My Employment Status?

Your employment status will not be affected by receipt of Sickness and/or Accident Disability benefits.

However, your employment with the Company will end when your Sickness Disability benefits end if you are not able to return to work at that time.

## Who Should I Call If I Still Have Questions?



If you have any questions about the Plans, call the Ameritech Disability Service Center at **888/212-3300**. This toll-free number is staffed with claim representatives 24 hours a day, seven days a week to assist with reporting a claim. If

you call between 7:30 A.M. and 5:00 P.M. central time, Monday–Friday, case managers or other appropriate staff members will be available to assist you with existing claims.

6

# Using The Ameritech Disability Plans

### Who Is Eligible For Coverage?

You are eligible for Sickness And Accident Disability Benefit Plan and Long Term Disability (LTD) Plan coverage if you are a regular full-time or part-time employee of an Ameritech company that has adopted the Plans.

### How To Enroll

You do not have to enroll to be eligible for disability benefits. You are automatically enrolled as of the date you become eligible for coverage under each Plan.

### When Coverage Begins

Your coverage for Accident Disability benefits begins on your first day of work with the Company.

Coverage for Sickness Disability and LTD benefits begins after you have completed six months of employment as shown by the records of the Company.

If you are on a leave of absence on the date you would otherwise become eligible for coverage, coverage will begin after you return to work and fulfill the six-month eligibility requirement. Time you may spend on a leave of absence does not count toward the six-month eligibility requirement. If you are on an Anticipated Disability leave of absence (see the "If You Anticipate A Disability" section), coverage will begin when your certified disability begins, if you are otherwise eligible.

**Please note: You cannot receive Sickness Disability and LTD benefits at the same time.**



### When Coverage Ends

Your coverage under the Sickness And Accident Disability Benefit and LTD Plans ends on the first to occur of the following:

- your employment ends for any reason, including your death (does not apply to LTD coverage if employment ends because of receipt of LTD benefits)
- you are no longer eligible for coverage (see the "Who Is Eligible For Coverage?" section)
- the Plan terminates

# How The Sickness And Accident Disability Benefit Plan Works

The Sickness And Accident Disability Benefit Plan provides disability benefits if you are disabled and unable to work.

 **DISABLED—**

**Under the Sickness And Accident Disability Benefit Plan, you are considered disabled if you have an illness or injury, supported by objective medical documentation, that prevents you from performing the duties of your job (or any other job assigned by the Company for which you are qualified) with or without reasonable accommodation.**

### Your Sickness Disability Benefits

Sickness Disability benefits are designed to provide income for you if you are disabled for more than seven consecutive days as a result of an off-the-job illness or injury. These benefits will help replace your regular earnings for up to 52 weeks. Disability associated with pregnancy is considered a disability due to illness.

*Benefits Provided By The Plan*
The amount of benefits paid depends on your base pay rate and your length of employment on the eighth day of your absence. You receive full or half pay during your absence according to the schedule at the bottom of the page.

If you return to work for less than two weeks and become disabled again, benefits resume on the first day of the second absence. If you return to work for 2 or more but less than 13 weeks, benefits will not resume until the eighth consecutive day of the second absence. In either case, the first absence is counted in determining the amount (i.e., full pay or half pay) and the duration of your benefits. This is true regardless of whether the absences are due to the same or a different off-the-job illness or injury.

## Sickness Disability Benefits

| If, on the day your Sickness Disability benefits start, you were employed for at least . . . | You'll receive full pay up to . . . | You'll receive half pay up to . . . |
| --- | --- | --- |
| 6 months but less than 2 years | — | 52 weeks |
| 2 years but less than 5 years | 4 weeks | 48 weeks |
| 5 years but less than 15 years | 13 weeks | 39 weeks |
| 15 years but less than 20 years | 26 weeks | 26 weeks |
| 20 years but less than 25 years | 39 weeks | 13 weeks |
| 25 years or more | 52 weeks | — |

8

Using The Ameritech Disability Plans



**Determining Angela's Sickness Disability Benefits**

Angela has worked for the Company for 12 years. She becomes ill and is absent from work from December 1 until December 22. She becomes eligible for benefits on December 8, the eighth continuous day of her absence. Because Angela has 12 years of service, she receives full-pay Sickness Disability benefits for the two weeks she is gone after qualifying for benefits.

Angela returns to work on December 22. Beginning January 23, she is absent from work again as a result of her previous illness. Because she had been back at work for more than two weeks, her benefits do not begin until the eighth day of her second absence. On January 30, Angela begins receiving full-pay benefits and is eligible for up to 11 weeks of full-pay benefits (13 weeks minus the two weeks she received during her previous period of disability). She returns to work on March 29, having received full pay for her entire eight-week absence.

After returning from her second absence, Angela becomes disabled again on April 12 due to her original illness. Because she becomes disabled before 13 weeks have elapsed, the benefits she received during her first two absences count when determining the benefits she is eligible to receive. Therefore, she is eligible for up to three weeks of full pay (13 weeks minus the 10 weeks she received during her two previous periods of disability) and then half pay for the next 39 weeks as long as she is considered disabled.

Angela is eligible for the following disability benefits during each absence:

Absence #1 = 2 weeks of disability benefits at full pay
Absence #2 = 8 weeks of disability benefits at full pay
Absence #3 = 3 weeks of disability benefits at full pay, and up to 39 weeks of benefits at half pay
Total     =  13 weeks of full-pay disability benefits and up to 39 weeks of half-pay disability benefits

**Angela's First Absence**

| | *2 weeks full benefits* | |
|---|---|---|
| **Dec 1** Absence begins | **Dec 8** Benefits begin | **Dec 22** Returns to work— benefits end |

**Angela's Second Absence**

| | *8 weeks full benefits* | |
|---|---|---|
| **Jan 23** Absence begins | **Jan 30** Benefits begin | **March 29** Returns to work— benefits end |

**Angela's Third Absence**

| | *3 weeks full benefits* | *Half benefits* |
|---|---|---|
| **April 12** Absence begins | **April 19** Benefits begin | **May 10** Half benefits begin and last up to 39 weeks (as long as disabled) |

9

R-0048

*Benefits Provided By The Plan (cont.)*

After you have returned to work and performed your job for 13 weeks, you will again be eligible for benefits according to the schedule. At that point, any previous disability will not affect the amount or duration of your Sickness Disability benefits.

*Qualifying For Benefits*

To qualify for Sickness Disability benefits, you must:

- contact your supervisor on the first day of your absence to report your absence;
- contact the Ameritech Disability Service Center to report your claim as soon as you know your absence will last at least eight days;
- place yourself under a physician's care, be following a treatment plan reasonably designed to result in your recovery and return to work, and, as requested by the Disability Service Center, furnish medical evidence of your disability from your physician (the Company will provide forms for this certification, which must be completed and returned with all applicable medical records);
- report for medical examinations by a physician designated by the Company when requested; and
- obtain permission from your physician as well as from the Ameritech Disability Service Center if you plan overnight travel away from your home at any time during your absence.

*After Your Benefits End*

Although Sickness Disability benefits end after 52 weeks, you may be eligible to receive benefits under the Long Term Disability Plan if you continue to be disabled (see the "How The Long Term Disability Plan Works" section).

**Your Accident Disability Benefits**

Accident Disability benefits are designed to help replace your regular earnings if you are disabled, either partially or totally, as a result of an on-the-job illness or injury. Your benefits will continue for as long as you continue to be disabled and unable to return to work. In addition, any reasonable and necessary medical expenses you incur as a result of the illness or injury will be paid by the Company upon approval of the Ameritech Disability Service Center.

*Benefits For Total Disability*

You will receive benefits for a total disability if you are completely disabled as a result of an on-the-job illness or injury. Benefit payments for a total disability start on the first full day of your absence. The amount paid depends on your base pay rate and your length of employment on the day your disability absence starts.



**You are considered totally disabled if you are completely unable to perform your regular job as a result of an illness or injury caused by, and in direct connection with, the performance of an assigned duty in the Company.**

You will receive Accident Disability benefits equal to your full or half pay according to the schedule at the bottom of the page. Refer to the "Coordinating Benefits With Workers' Compensation" section for details on how the Plan pays benefits when you also receive Workers' Compensation.

If you return to work for fewer than 13 continuous weeks after your original disability absence, and are absent again due to the same on-the-job illness or injury, you receive full-pay benefits for the number of remaining weeks to which you were entitled.

If you become disabled again due to a *different* on-the-job illness or injury, any benefits you previously received are not counted in determining the duration of your full-pay benefits.

## Total Accident Disability Benefits

| If, on the day your Accident Disability benefits start, you were employed for . . . | You'll receive full pay up to . . . | After your full-pay period is over, you'll receive half pay . . . |
| --- | --- | --- |
| up to 15 years | 13 weeks | as long as you remain totally disabled |
| at least 15 years but less than 20 years | 26 weeks | |
| at least 20 years but less than 25 years | 39 weeks | |
| at least 25 years or more | 52 weeks | |

*Coordinating Benefits With Workers' Compensation*

The Plan will coordinate Accident Disability benefits with any Workers' Compensation benefits you receive.

If you qualify to receive both Workers' Compensation and Accident Disability benefits, Workers' Compensation benefits will be paid first and Accident Disability benefits will be paid second.

This means that if the amount paid by Workers' Compensation is *equal to or more* than the amount you qualify to receive from the Sickness And Accident Disability Benefit Plan, your benefits will be paid entirely by Workers' Compensation. In this case, you will not receive any additional payment from the Plan.

If the amount paid by Workers' Compensation benefits is *less* than the amount you qualify to receive from the Sickness And Accident Disability Benefit Plan, the Plan will pay benefits so that you receive the total amount you qualify to receive according to the Plan.

For example, if you qualify to receive full-pay benefits from the Plan, but Workers' Compensation only replaces two-thirds of your pay, the Plan will pay a benefit equal to one-third of your pay. Your total benefits—Workers' Compensation plus Plan benefits—will equal your full pay. If, on the other hand, you qualify to receive half-pay benefits from the Plan and Workers' Compensation replaces two-thirds of your pay, then the Plan will not pay any additional benefit to you.

*If You Are Employed Part Time*

If you were an active part-time employee on December 31, 1980, and have worked continuously since January 1, 1981, you are eligible to receive Accident Disability benefits as though you were a full-time employee. If you were hired or rehired after January 1, 1981, Accident Disability benefits will instead be based on the number of hours you are scheduled to work (not including overtime).

 **DID YOU KNOW . . .**

*. . . that Workers' Compensation is a company-paid benefit based on state law? If you are disabled due to an on-the-job illness or injury, you may be eligible for a Workers' Compensation benefit—paid by the Company—for part or all of your disability.*

*Benefits For Partial Disability*

You will receive benefits, up to six years, for a partial disability if you are unable to fully perform your job (or another Company job for which you are qualified) due to an on-the-job illness or injury. Accident Disability benefits will make up for all or part of the loss of pay between:

- your rate of pay as a full-time or part-time employee at the time you are declared partially disabled by the Employees' Benefit Committee or its delegate; and
- the wages the Employees' Benefit Committee or its delegate determines you are capable of earning while partially disabled.

**You are considered partially disabled if you are unable to fully perform your regular job as a result of an illness or injury caused by, and in direct connection with, the performance of an assigned duty in the Company.**

Accident Disability benefits you receive while partially disabled are offset by any Workers' Compensation benefits you receive. See the "Coordinating Benefits With Workers' Compensation" Section for information on how your partial disability benefits will be coordinated with any other benefits you are receiving.



**Determining The Length Of Samuel's Accident Disability Benefits**

As a result of an on-the-job injury, Samuel is totally disabled and unable to work. Samuel has 18 years of service at the time he is injured, so he is eligible to receive his full pay for up to 26 weeks (see the chart on the next page). After receiving 10 weeks of full-pay disability benefits, he is no longer disabled and returns to work.

Unfortunately, within two weeks of returning to work, he is again disabled and unable to work as a result of the original injury. Because he had returned to work for less than 13 weeks, the length of his first absence is counted when determining the number of weeks for which he is eligible to receive full-pay benefits. Therefore, he is eligible to receive full-pay benefits for 16 more weeks (26 weeks minus the 10 weeks he received during his first absence).

After 16 weeks, Samuel is still disabled. He is then eligible to receive half-pay benefits as long as he remains totally disabled.



**EXAMPLE 3**

**Determining If Angela Qualifies For Full And Partial Accident Disability Benefits**

After completing 18 years of employment in a heavy-labor position, Angela is injured on the job. Her injury occurs on January 3 and she is totally disabled until February 3. Therefore, she receives full-pay disability benefits for four weeks.

After four weeks, Angela is able to return to work, but is unable to perform the duties of her previous heavy-labor position due to her injuries. As a result, she is declared partially disabled and is moved into a lesser paying position. The Plan will make up the difference between Angela's higher paying labor-intensive position and her lesser paying position for up to six years.

She is eligible to receive a partial disability benefit based on her full pay for 22 additional weeks (26 weeks minus the four weeks of benefits she received while fully disabled). During these 22 weeks, the Plan will pay Angela the difference between her full-time pay before she became disabled and the amount the Plan determines Angela can earn while partially disabled.

After receiving a full-pay disability benefit for 22 weeks, Angela remains partially disabled for two additional weeks. During these two weeks, the Plan pays Angela the difference between half of her pre-disability pay and what the Plan determines she is able to earn while partially disabled.

*Benefits For Partial Disability (cont.)*

Your Plan benefits are based on your length of employment according to the schedule at the bottom of the page.

*Qualifying For Benefits*

To qualify for Accident Disability benefits, you must:

- report any on-the-job illness or injury to your supervisor immediately. Your supervisor will then report the claim to the Ameritech Disability Service Center. Accident Disability benefits will not be paid for any period before the illness or injury is properly reported. If you do not report the illness or injury within 60 days of its occurrence, you will not receive any benefits.

## Partial Accident Disability Benefits

| If, on the day your Accident Disability benefits start, you were employed for . . . | You'll receive benefits based on full pay up to . . . | After your full-pay period is over, you'll receive benefits based on half pay . . . |
|---|---|---|
| up to 15 years | 13 weeks | |
| at least 15 years but less than 20 years | 26 weeks | as long as your disability continues, up to a maximum of six years |
| at least 20 years but less than 25 years | 39 weeks | |
| at least 25 years or more | 52 weeks | |

The periods listed above include any time you received total or partial Accident Disability benefits for the same on-the-job illness or injury.

14

R-0053

- place yourself under a physician's care, be following a treatment plan reasonably designed to result in your recovery and return to work, and, as requested by the Disability Service Center, furnish medical evidence of your disability from your physician (the Company will provide forms for this certification, which must be completed and returned with all applicable medical records); and
- obtain permission from your physician as well as from the Ameritech Disability Service Center if you plan overnight travel away from your home at any time during your absence.

**If You Anticipate A Disability**

If you anticipate an absence due to a disability (e.g., pregnancy, elective surgery) and you want to take a leave of absence, you must apply to the Ameritech Occupational Medicine Department—Leaves of Absence for the unpaid leave that then may be granted. The leave of absence can be up to six months in length, and is granted for the time period immediately preceding the disabling event. Once the period of disability begins, you may begin receiving paid Sickness Disability benefits provided you have at least six months of employment with the Company and meet the Plan requirements.

For more information about the Anticipated Disability Program, contact the Ameritech Occupational Medicine Department—Leaves of Absence.

 **DID YOU KNOW . . .**

*. . . you may apply for a leave of absence if you anticipate a period of disability for which medical treatment has been scheduled, such as elective surgery or pregnancy? The unpaid leave may be up to six months long. Once the period of disability begins, you may begin receiving Sickness Disability benefits if you are eligible and meet the requirements.*

# How The Long Term Disability Plan Works

The Long Term Disability (LTD) Plan is designed to protect you and your family from the financial hardship that can accompany an illness or injury that keeps you from working for an extended period of time. The LTD Plan provides important protection by providing you a source of income after your Sickness Disability benefits end. LTD benefits are combined with other sources of income to provide you with a monthly benefit of at least half of your monthly pay.



**To be eligible for LTD benefits, you must be disabled and under the continuous care of a physician.**

 **DISABLED—**

You are considered disabled if, due to an off-the-job illness or injury, you are unable to engage in any occupation or employment that you are qualified, or may reasonably become qualified, by training, education, and experience; and if you are unable to work at any job other than one that pays wages that, when combined with your LTD benefits, equal less than 75 percent of your base pay at the time you became disabled.

**Benefits Provided By The Plan**

Your monthly LTD benefit is 50 percent of your monthly base pay (not including overtime) as of the day before your Sickness Disability benefits began. The benefit is then reduced by other sources of income, including:

- your primary Social Security disability benefit (may be estimated by the Ameritech Disability Service Center), but not any Social Security benefit payable to your family (see the "Social Security Disability Benefits" section for details)
- benefits you receive under any other state or federal disability benefits law except veterans' benefits
- benefits you receive from Workers' Compensation

16

## How Long You Receive LTD Benefits

The length of time LTD benefits are payable depends on your age at the time of disability:

| If your age when your disability starts is . . . | The maximum LTD benefit period* is . . . |
| --- | --- |
| age 61 or younger | up to age 65 |
| 62 | 3-1/2 years |
| 63 | 3 years |
| 64 | 2-1/2 years |
| 65 | 2 years |
| 66 | 1-3/4 years |
| 67 | 1-1/2 years |
| 68 | 1-1/4 years |
| 69 or over | 1 year |

*Includes 52 weeks of Sickness Disability benefits under the Sickness And Accident Disability Benefit Plan.*

LTD benefits will end if you die or are no longer disabled.

## Qualifying For Benefits

To qualify for LTD benefits, you must:
- complete and return the proper application when sent to you by the Ameritech Disability Service Center
- report for any medical examinations by a physician designated by the Ameritech Disability Service Center when requested

## When The Plan Does Not Pay Benefits

The Plan does not pay LTD benefits for disabilities caused by the following:
- your commission of a felony
- military service
- war or any act of war, declared or undeclared
- active participation in a riot, insurrection, rebellion, or civil commotion
- intentionally self-inflicted injuries

The Plan will also not pay LTD benefits for any period during which you are not under the care of a licensed physician, you refuse to provide information concerning your disability, or you refuse to be examined by a physician designated by the Ameritech Disability Service Center.

### Continuation Of Coverage Under Other Company-Sponsored Plans

You are eligible to continue coverage under Company-sponsored medical and life insurance plans until the last day of the month in which your LTD benefits end. Refer to the medical or life insurance handbooks for details.



**Your coverage under a Company-sponsored dental and/or vision plan will end on the last day of the month in which your Sickness Disability benefits end.**

### Your Employment Status When Receiving LTD Benefits

If you do not return to work after your Sickness Disability benefits end, you are no longer considered an employee of the Company whether or not you begin receiving LTD benefits. If your disability ends while you are receiving LTD benefits, the Company will not guarantee you an offer of reemployment.

# Social Security Disability Benefits

Social Security also may provide you with disability benefits, if you qualify. These benefits combine with your benefits under the Sickness And Accident Disability Benefit and LTD Plans.

You and the Company share the cost of Social Security by paying taxes on your earnings covered under law.

Social Security benefits are not paid automatically. You must apply for them in all cases. For more information about your Social Security benefits, contact your local Social Security office. You will find the address in the telephone book under "United States Government."

 **DID YOU KNOW . . .**

*. . . once your Social Security disability benefit is initially determined, it remains the same for purposes of calculating your LTD benefit? This means that if your Social Security payments increase while you are receiving LTD benefits, your monthly LTD benefit will not be reduced. Any increases mean additional income to you.*

# How To File A Claim

You, your beneficiaries, or duly autho-
rized persons have the right under the
Employee Retirement Income Security
Act of 1974 (ERISA) and the Plans to
file a written claim for benefits under
the Plans. Claims for benefits under
either the Sickness And Accident
Disability Benefit Plan or the Long Term
Disability Plan can be filed by calling
the Ameritech Disability Service Center
at 888/212-3300. Or, you may mail your
written claim to:

*Ameritech Disability Service Center*
*P.O. Box 8046*
*Chicago, IL 60680-8046*

If your claim is denied and you want
to appeal the decision, refer to the
*Administrative Information*
*Handbook* for the correct procedures.

# What To Do If You Become Disabled (Checklist)

Knowing what to do if you should become disabled can help ensure that you receive the benefits for which you are eligible in a timely manner. By following the steps outlined below, you and your dependents will be able to receive the financial protection needed in the event that you are unable to work.

**If you are disabled due to an on-the-job illness or injury . . .**

☐ Report the on-the-job illness or injury to your supervisor as soon as it occurs.

☐ Complete form AM974—Employee Statement of Illness/Injury and submit it to the Ameritech Disability Service Center.

☐ Place yourself under a qualified physician's care and follow a recommended treatment plan reasonably designed to result in your recovery and return to work.

☐ Complete the top portion of the medical release form AM975—Attending Physician's Report of Illness/Injury.

☐ Ask your attending physician to complete the remainder of form AM975 at the time of initial treatment and to provide documentation of your illness or injury by including applicable medical records.

**If you are disabled due to an off-the-job illness or injury . . .**

❑ Report your absence to your immediate supervisor on your first day of absence.

❑ Call the Ameritech Disability Service Center at **888/212-3300** as soon as you are aware that an absence due to an off-the job illness or injury will last eight days or more. You will need to provide the Center with all necessary medical documentation of your disability.

❑ Place yourself under a qualified physician's care and follow a recommended treatment plan reasonably designed to result in your recovery and return to work.

❑ When you call the Disability Service Center, be prepared to provide:

your home address _____

your home phone number _____

your Social Security number _____ your date of birth _____

your work address _____

your work fax numbers _____

your supervisor's name _____

      address: _____

      phone: _____ fax: _____

the name of your Company and business unit _____

your job title _____

your physician's name _____

      address: _____

      phone: _____ fax: _____

date of your first full day of absence due to the disability _____

the nature of your illness _____

your Net Credited Service (NCS) date _____

22

R-0062

R-0063

9/97 Non-Mgt
ACP   CTC
ILB   CRD
INB   INT
MIB   ADV
OHB   NZL
WIB   ACI
ASI   NME
ADS   AIM
AIS (IBEW
58 & 494)



R-0064



summary of material
# modifications

Important Benefits Information

# Disability Plans

This summary of material modifications (SMM) is an update to the claims and appeals process provided in the summary plan description (SPD) for each of the following disability plans:

> SBC Disability Benefits Plan

> SBC Disability Income Plan

> PTG Comprehensive Disability Benefits Plan

> SNET Disability Benefits Plan

> Ameritech Sickness and Accident Disability Benefit Plan

> Ameritech Long Term Disability Plan

Please file this SMM behind the Disability tab of *Your Benefits Binder*.

## Claims and Appeals Process

When you make a claim for benefits under your company's disability benefits plan, the plan's Claims Administrator will notify you of the decision regarding your claim within 45 days of the date your claim is made. The Claims Administrator may extend this 45-day period for up to 30 days (plus an additional 30 days if needed) if it determines that special circumstances require more time to determine your claim. You will be notified within the initial 45-day period (and within the first 30-day extension period if an additional 30 days is needed) if additional time is needed and what special circumstances require the extra time. If extensions are required because the Claims Administrator needs additional information from you, you will have 45 days from the time of the Claims Administrator's notification to provide that information.

## Distribution

Distributed to management (nonbargained) and bargained-for employees of all SBC companies and participants on long-term disability.

NIN: 28812

 Disability                Summary of Material Modifications   |   February 2002   |   Page 1

R-0065

You may treat your claim as denied if:

> You receive a written denial from the Claims Administrator; or

> You receive no reply from the Claims Administrator after 45 days; or

> The Claims Administrator has extended the time to reply by an additional 30 or 60 days and you receive no reply after the additional 30 or 60 days.

If you receive a written notice from the Claims Administrator that your claim is denied, the notice will contain:

> Specific reasons for the denial

> Specific reference to the plan provision upon which the denial is based

> A description of any additional information needed to make your claim acceptable and the reason the information is needed

> A description of the procedure by which you may appeal the denial to the plan's named fiduciary as provided in your denial letter

If your claim is denied or treated as denied, and you disagree with the decision, you may appeal the decision by filing a written request for review. You or someone authorized by you must make the request for review within 180 days of receipt of the denial notice or, if no notice is received, 180 days after the expiration of 45, 75 or 105 days, whichever is applicable. A written request for review should be sent directly to the appropriate named fiduciary as provided in your denial letter or, if you received no denial letter, to:

SBC Services, Inc.
Disability Plan
c/o Executive Director –
Workforce Effectiveness
P.O. Box 29690
San Antonio, TX 78229

If you or your authorized representative sends a written request for review of a denied claim, you or your representative has the right to:

> Send a written statement of the issues and any other comments, along with any new or additional evidence or materials in support of your appeal

> Request and examine documents that bear on your claim

> Review pertinent plan documents, which may be obtained by following the procedures provided in the section of your disability plan's SPD that describes your rights under the Employee Retirement Income Security Act of 1974, as amended (ERISA)

Unless you are notified in writing that more time is needed, a review and decision on your appeal must be made within 45 days after your appeal is received. If special circumstances require more time to consider your appeal, the named fiduciary may take an additional 45 days to reach a decision, but you must be notified in writing that there will be a delay. If you do not receive notice of the decision by the end of the 45- or 90-day period, the appeal is considered denied.

If your appeal is denied, it is final and not subject to further review by the named fiduciary. However, you may have further rights under ERISA, as provided in the section of your disability plan's SPD that describes those rights.

This SMM was written for easy readability. Therefore, it may contain generalizations and colloquialisms rather than precise legal terms. Also, this document only summarizes benefits, and individual situations may vary. For full details, including eligibility, you should consult the SPD for your disability plan, any accompanying SMMs or the official plan documents. In all cases, the official disability plan documents govern and are the final authority on the terms of the applicable plan; if there are any discrepancies between the information in this SMM and the applicable disability plan, the plan document will control. The SBC companies reserve the right to terminate or amend any and all of their employee benefits plans or programs. Benefits described in this document may be subject to collective bargaining. Participation is neither a contract nor a guarantee of future employment. Please keep this SMM for future reference.

R-0066

```
Date: 02/28/2008  2:51pm          User: aarcher                    Page:     1
================================================================================
Claim Number : A625007022-0001-01                     Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
================================================================================


--------------------------------- Note ---------------------------------

Event/Clmnt/Claim   Date       Tp Examiner
------------------- ---------- -- ---------------------------------------

A625007022-0001-01 03/22/2006 IT SYS
                              What is the diagnosis? Reptured Disc
                              Is there a history of any other medical
                              conditions? :NO
                              What was the first treatment date? :03/09/2006
                              Provided by? :DR. JOHN K. MILLER
                              When is the next treatment date? :03/23/2006
                              Provided by? :DR. JOHN K. MILLER
                              Has the physician indicated a return to work
                              with restrictions can happen? :UNKNOWN
                              If so,what are the restrictions and has the
                              department tried to match a placement? :
                              Has there been a return to work? :YES

                              Intake Comments :S: SERVE BACK PIAN, NUBNESS IN
                              LEGS AND BACK.  EE IS CURRENTLY ON WALKER.
                              **** NOTE CREATED BY: lchamber ****
                              [Time Note Created :10:57 AM ]
------------------------------------------------------------------------------
A625007022-0001-01 03/22/2006 CP SYS
                              Claim Policy Number:No Excess
                              SIR for Policy:       000.00
                              [Time Note Created :10:57 AM ]
------------------------------------------------------------------------------
A625007022-0001-01 03/22/2006 IT SYS
                              Supervisor #1
                              Name  : ANGELA HOHIMER
                              Phone : 2177476600
                              Phone : ap3618
                              Supervisor #2
                              Name  : Helliary Felleming
                              **** NOTE CREATED BY: lchamber ****
                              [Time Note Created :10:57 AM ]
------------------------------------------------------------------------------
A625007022-0001-01 03/22/2006 IT SYS
                              DOCTOR #1
                              Name  : Dr. John K. Miller
                              Phone : 309-671-7766
                              DOCTOR #2
                              Name  : Dr. Christin Rassi
                              Phone : 309-676-0766
                              DOCTOR #3
                              Name  : Dr. Bruce Chein
                              Phone : 309-691-8973
                              **** NOTE CREATED BY: lchamber ****
                              [Time Note Created :10:57 AM ]
------------------------------------------------------------------------------
A625007022-0001-01 03/22/2006 IT SYS
                              HOSPITAL : Proctor Hospital
```

R-0067

```
Date: 02/28/2008  2:51pm          User: aarcher               Page:     2
=============================================================================
Claim Number : A625007022-0001-01                      Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=============================================================================


------------------------------ NOTES ----------------------------------

Event/Clmnt/Claim  Date        Tp Examiner
-----------------  ----------  -- ------------------------------------------


                   **** NOTE CREATED BY: lchamber ****
                   [Time Note Created :10:57 AM ]
----------------------------------------------------------------------------
A625007022-0001-01 03/22/2006 DE SYS
                   FDA:  03/13/2006
                   Reptured Disc
                   **** NOTE CREATED BY: lchamber ****
                   [Time Note Created :10:57 AM ]
----------------------------------------------------------------------------
A625007022-0001-01 03/22/2006 ST LCHAMBER
                   CSR confirmed no linking issues.
                   [Time Note Created :10:58 AM ]
----------------------------------------------------------------------------
A625007022-0001-01 03/22/2006 CM LCHAMBER
                   Created at 3/22/2006 10:51 AM

                   Spoke with: EE
                   Job Duties/Physical Requirements:
                   Job Classification:
                   Schedule/ Hours

                   To better manage the length of time in which
                   you may be approved disability benefits I will
                   need to obtain your height and weight.  This
                   information is needed as it may impact your
                   recovery period and will be used in conjunction
                   with other medical documentation received from
                   your treatment provider to determine the period
                   of disability benefits.

                   Height: 5'11
                   Weight: 250
                   You will need a pen and paper to write, as I
                   explain at&t's disability policies and
                   procedures to you.

                   Sickness disability benefits begin with the 8th
                   calendar day of absence.
                   Your FDA: 03/13/2006
                   Your FDD: 03/20/2006


                   SBC Telecom, SBC Operations, Pacific Bell,
                   Nevada Bell, & Southwestern
                   Skip conditional pay explanation, there is no
                   conditional pay for these EE's.
```

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:      3
============================================================================
Claim Number : A625007022-0001-01          Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
============================================================================

---------------------------------- NOTES ----------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
------------------ -------- -- -----------------------------------------------
```

Check conditional pay tree for all other
groups.

Employees on the AIT Disability Plan
Conditional Pay Explanation
You will receive conditional payments for 21
calendar days starting with the FDD, which is
your 8th calendar day of absence. This is to
prevent you from missing disability pay on your
next check, conditioned on your providing
necessary medical information. 03/20/2006 to
04/09/2006:

If your claim were denied, it would mean a loss
of pay after your conditional pay ended, if you
remained off work.   Your payroll company will
also recoup any conditional pay that you
received for the period of denial.

As an employee with:
5 Years of Service,
You are eligible to receive:
13 Weeks at your full pay and
39 Weeks at 50% of your pay:
Totaling 52 weeks of benefits as long as your
benefits remain approved.

Your case manager contact you within 24
business hours  and your provider to obtain the
necessary medical information.  AT&T IDSC may
require copies of your medical records,
specifically regarding the days of this period
of absence.  Therefore, it is very important
that you sign a Release of Information at your
doctor's office to assist the Case Manager in
obtaining the necessary information to make a
determination.

These records may include, but are not limited
to:
Delete what is not applicable and add what is
appropriate but not listed
" Office notes/ Treatment notes
" Lab results/ X-rays results
" Hospital discharge summary
" Treatment Plan
" Physical therapy notes

R-0069

```
Date: 02/28/2008  2:51pm          User: aarcher                 Page:    4
========================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
========================================================================

--------------------------------- NOTES -------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------- ---------- -- ---------------------------------------
```

                        Time off due to an approved disability runs
                        concurrent with FMLA time, if you are eligible
                        and entitled to Family Medical Leave (FMLA).

                        Your time away from work is unpaid while your
                        disability determination from AT&T IDSC is
                        pending.  It is important that we receive your
                        medical records timely to prevent the least
                        disruption in pay.  Once we review your medical
                        records your case manager will make a
                        disability benefit determination.  In the event
                        that your claim is approved you will ordinarily
                        receive your disability pay on your next
                        regularly scheduled paycheck.


                        Employees with 21 calendar days of conditional
                        pay:

                        Your medical information is due: 04/05/2006

                        You or your provider can fax these records:
                         (866) 224-4627 (Chicago/Irving)
                        (

                        Claims without medical information supporting a
                        complete inability to perform your assigned job
                        duties by the medical due date will be denied.
                        So please sign a Release of Medical Information
                        at your provider's office to assist your Case
                        Manager in obtaining the necessary medical
                        information.

                        We expect that you are not working, traveling
                        or attending school while receiving disability
                        benefits.

                        We will mail an information letter (and new
                        claims only an AT&T IDSC Disability Guide),
                        which will review the information we have
                        covered.

                        For your convenience, would you like your
                        information packet emailed to your home email
                        account?  The packet will be emailed by the end
                        of the next business day.
                        May I please have your email address?

=====================================================================
Claim Number : A625007022-0001-01                     Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=====================================================================

--------------------------------- NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------  --------- -- ----------------------------------------------


                   Please remember to call AT&T IDSC to report any
                   changes or updates in your medical condition or
                   any return to work information and to sign a
                   Release of Medical information with your
                   provider.

                   Feel free to contact our Customer Service Team
                   at anytime regarding your disability benefits
                   or your claim.

                   Are there any questions that I can answer for
                   you now?

                   Thank you for calling AT&T IDSC, I sincerely
                   hope you are feeling better.
                   [Time Note Created :11:03 AM ]
---------------------------------------------------------------------
A625007022-0001-01 03/22/2006 CM LCHAMBER
                   Call was disconnected if EE calls back go over
                   script.
                   [Time Note Created :11:04 AM ]
---------------------------------------------------------------------
A625007022-0001-01 03/22/2006 IV IVR
                   Initial claim information retrieved.
                   Information accessed on 03/22/2006 at 11:04:49
                   (Central Time).
                   [Time Note Created :11:04 AM ]
---------------------------------------------------------------------
A625007022-0001-01 03/22/2006 CM JDUHIGG
                   Spoke with: EE
                   Job Duties/Physical Requirements: marketing
                   support specialist
                   Job Classification: sitting typing talking
                   Sedentary:
                   Schedule/ Hours: m-f 8-4:30

                   To better manage the length of time in which
                   you may be approved disability benefits I will
                   need to obtain your height and weight.  This
                   information is needed as it may impact your
                   recovery period and will be used in conjunction
                   with other medical documentation received from
                   your treatment provider to determine the period
                   of disability benefits.

                   Height: 5'11
                   Weight: 250

R-0071

Date: 02/28/2008  2:51pm          User: aarcher               Page:     6
================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
================================================================================


------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------ ---------- -- --------------------------------------------
                              You will need a pen and paper to write, as I
                              explain at&t's disability policies and
                              procedures to you.

                              Sickness disability benefits begin with the 8th
                              calendar day of absence.
                              Your FDA: 03/13/2006
                              Your FDD: 03/20/2006


                              SBC Telecom, SBC Operations, Pacific Bell,
                              Nevada Bell, & Southwestern
                              Skip conditional pay explanation, there is no
                              conditional pay for these EE's.

                              Check conditional pay tree for all other
                              groups.

                              Employees on the AIT Disability Plan
                              Conditional Pay Explanation
                              You will receive conditional payments for 21
                              calendar days starting with the FDD, which is
                              your 8th calendar day of absence. This is to
                              prevent you from missing disability pay on your
                              next check, conditioned on your providing
                              necessary medical information. 03/20/2006 to
                              04/09/2006:

                              If your claim were denied, it would mean a loss
                              of pay after your conditional pay ended, if you
                              remained off work.    Your payroll company will
                              also recoup any conditional pay that you
                              received for the period of denial.


                              As an employee with:
                              5 Years of Service,
                              You are eligible to receive:
                              13 Weeks at your full pay and
                              39 Weeks at 50% of your pay:
                              Totaling 52 weeks of benefits as long as your
                              benefits remain approved.

                              Your case manager contact you within 24
                              business hours  and your provider to obtain the
                              necessary medical information.  AT&T IDSC may
                              require copies of your medical records,
                              specifically regarding the days of this period

R-0072

Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA

------------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
-----------------  ---------  --  ---------------------------------------------

of absence.  Therefore, it is very important
that you sign a Release of Information at your
doctor's office to assist the Case Manager in
obtaining the necessary information to make a
determination.

These records may include, but are not limited
to:

" Office notes/ Treatment notes
" Lab results/ X-rays results
" Hospital discharge summary
" Treatment Plan
" Physical therapy notes

Time off due to an approved disability runs
concurrent with FMLA time, if you are eligible
and entitled to Family Medical Leave (FMLA).

Your time away from work is unpaid while your
disability determination from AT&T IDSC is
pending.  It is important that we receive your
medical records timely to prevent the least
disruption in pay.  Once we review your medical
records your case manager will make a
disability benefit determination.  In the event
that your claim is approved you will ordinarily
receive your disability pay on your next
regularly scheduled paycheck.

Employees with 21 calendar days of conditional
pay:

Your medical information is due: 04/05/2006

You or your provider can fax these records:
 (866) 224-4627 (Chicago/Irving)
 (

Claims without medical information supporting a
complete inability to perform your assigned job
duties by the medical due date will be denied.
So please sign a Release of Medical Information
at your provider's office to assist your Case
Manager in obtaining the necessary medical
information.

R-0073

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:     8
================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
================================================================================

----------------------------- NOTES -----------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------  ---------- -- ------------------------------------------
                               We expect that you are not working, traveling
                               or attending school while receiving disability
                               benefits.

                               We will mail an information letter (and new
                               claims only an AT&T IDSC Disability Guide),
                               which will review the information we have
                               covered.

                               For your convenience, would you like your
                               information packet emailed to your home email
                               account?  The packet will be emailed by the end
                               of the next business day.
                               May I please have your email address?

                               Please remember to call AT&T IDSC to report any
                               changes or updates in your medical condition or
                               any return to work information and to sign a
                               Release of Medical information with your
                               provider.

                               Feel free to contact our Customer Service Team
                               at anytime regarding your disability benefits
                               or your claim.

                               Are there any questions that I can answer for
                               you now?

                               Thank you for calling AT&T IDSC, I sincerely
                               hope you are feeling better.
                               [Time Note Created :11:20 AM ]
------------------------------------------------------------------------
A625007022-0001-01 03/22/2006 CM JDUHIGG
                               confirmed claim does not link
                               [Time Note Created :11:21 AM ]
------------------------------------------------------------------------
A625007022-0001-01 03/22/2006 EM TIFFANYH
                               From: Hamilton, Tiffany T.
                               Sent: Wednesday, March 22, 2006 12:08 PM
                               To: 'ap3618@att.com'
                               Subject: Disability Claim Notice Melissa
                               Gardner A625007022000101.doc

                               [Time Note Created :12:07 PM ]
------------------------------------------------------------------------
A625007022-0001-01 03/22/2006 ST TIFFANYH
                               IP mailed to ee
                               [Time Note Created :12:07 PM ]
------------------------------------------------------------------------
```

R-0074

```
A625007022-0001-01 03/22/2006 U5 EMCGREW
                              no linking issues
                              [Time Note Created : 4:30 PM ]
--------------------------------------------------------------------
A625007022-0001-01 03/22/2006 TP EMCGREW
                              ds2 review & triage. assign: AIT-Combined
                              [Time Note Created : 4:30 PM ]
--------------------------------------------------------------------
A625007022-0001-01 03/22/2006 CT SYS
                              Subtype changed from  to NC
                              **** NOTE CREATED BY: emcgrew ****
                              [Time Note Created : 4:30 PM ]
--------------------------------------------------------------------
A625007022-0001-01 03/22/2006 CI EMCGREW
                              Examiner change: From:  nc  To:   robinh
                              **** NOTE CREATED BY: SYS ****
                              [Time Note Created : 4:30 PM ]
--------------------------------------------------------------------
A625007022-0001-01 03/23/2006 U5 PPICKERI
                              no linking issues
                              [Time Note Created :11:38 AM ]
--------------------------------------------------------------------
A625007022-0001-01 03/23/2006 CN PPICKERI
                              claim note sent to ee supv, no need to contact
                              at this time
                              [Time Note Created :11:39 AM ]
--------------------------------------------------------------------
A625007022-0001-01 03/23/2006 DE PPICKERI
                              ee is elig for cp
                              [Time Note Created :11:39 AM ]
--------------------------------------------------------------------
A625007022-0001-01 03/23/2006 CM PPICKERI
                              INITIAL CALL TO EE:

                              TCT to EE, generic VMM  left for c/b, at c/b
                              may spk to a CSR

                              PLEASE OBTAIN/VERIFY THE FOLLOWING:

                              - VERIFY EE DEMOS
                              - VERIFY FDA
                              - VERIFY PROV DEMOS, LOV, NOV  ** also which
                              prov is treating prov for sd claim ??
                              - JOB DUTIES :
                              - EE IS ELIG FOR CP FROM: 3/21 - 4/10/06
                              - MED DUE BY: 4/5/06
                              - REMIND TO SIGN ROI
                              - CURRENT SXS
                              - DAILY ACTIVITIES
                              - ANY MEDICAL DX ?
                              - DX
                              - MEDS
                              - ERTW, GRTW MAY BE AVAIL TO EE
                              - MAY AT&T IDSC LEAVE CONFIDENTIAL INFORMATION
                              REGARDING CLAIM ON EE'S VM OR ANSWERING MACHINE
                              ?

                              [Time Note Created :11:41 AM ]
--------------------------------------------------------------------
A625007022-0001-01 03/23/2006 MD PPICKERI
                              INITIAL CALL TO PROV OFFICE:
```

R-0075

```
Date: 02/28/2008  2:51pm        User: aarcher            Page:    10
========================================================================
Claim Number : A625007022-0001-01                  Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
========================================================================


------------------------------- NOTES ----------------------------------

Event/Clmnt/Claim  Date    Tp Examiner
------------------- --------- -- ---------------------------------------

                    TCT  DR BRUCE CHEIN OFFICE, SPK TO TINA
                    ,    calling to request preferred telephonic
                    (Med inform, DX, meds, compliance w/ tx)
                    inform from  3/13/06 forward   , to also
                    include ERTW date, GRTW/R/L may be avail to EE
                    at RTW.
                    Medical due by:  4/5/06
                    C/B num and Fax num given.
                    [Time Note Created :11:43 AM ]
------------------------------------------------------------------------
A625007022-0001-01 03/23/2006 MD PPICKERI
                    INITIAL CALL TO PROV OFFICE:

                    TCT  Dr. Christin Rassi  OFFICE, SPK TO RHONDA,
                    TRANSFERRED TO MEDICAL RECORDS DEPT, SPK
                    TIFFANY,        ,   calling to request
                    preferred telephonic (Med inform, DX, meds,
                    compliance w/ tx)  inform from  3/13/06 forward
                     , to also include ERTW date, GRTW/R/L may be
                    avail to EE at RTW.
                    Medical due by:  4/5/06
                    C/B num and Fax num given.
                    [Time Note Created :11:43 AM ]
------------------------------------------------------------------------
A625007022-0001-01 03/23/2006 MD PPICKERI
                    INITIAL CALL TO PROV OFFICE:

                    TCT  Dr. John K. Miller    , LINE BUSY
                    [Time Note Created :11:46 AM ]
------------------------------------------------------------------------
A625007022-0001-01 03/23/2006 AP PPICKERI
                    INITIAL ACTION PLAN:

                    - Claim Status: Pending
                    - Complete Initial Contacts: 2ND CALL TO EE AND
                    2ND ATTEMPT TO REACXH DR MILLER
                    - Obtain Medical and make BA Deter
                    - Address RTW date and or GRTW/RL at 5 day
                    contacts to EE and Prov AND 2ND CALL TO EE AND
                    2ND ATTEMPT TO REACXH DR MILLER




                    [Time Note Created :11:51 AM ]
------------------------------------------------------------------------
A625007022-0001-01 03/23/2006 IV IVR
                    Initial claim information retrieved.
```

R-0076

```
Date: 02/28/2008  2:51pm          User: aarcher                Page:    11
=============================================================================
Claim Number : A625007022-0001-01                  Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
=============================================================================


------------------------------- NOTES ---------------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------ ---------- -- ---------------------------------------------

                      Information accessed on 03/23/2006 at 11:57:09
                      (Central Time).
                      [Time Note Created :11:57 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 03/23/2006 CM COKREGLA
                      EE rtc to cm, csr verified the following:

                      - VERIFY EE DEMOS: verified
                      - VERIFY FDA: 03/13/06 not 03/14/06
                      - VERIFY PROV DEMOS: verified
                      - ** also which prov is treating prov for sd
                      claim ??: unsure at this time. EE hasn't had an
                      ov since she was discharged since 03/17/06
                      - JOB DUTIES: sitting, typing, & talking on
                      phone
                      - EE IS ELIG FOR CP FROM: 3/21 - 4/10/06
                      - MED DUE BY: 4/5/06
                      - REMIND TO SIGN ROI
                      - CURRENT SXS: hands and feet numb, can't grasp
                      with left hand, on right hand pinky & ring
                      finger are numb, both big toes and second toes
                      on both feet are numb and tingley
                      - DAILY ACTIVITIES: none, lay on heating pac
                      completely medicated
                      - ANY MEDICAL DX: ruptured disc in back (disc
                      between L4 & L5 torn, L3, L4, L5 bad
                      generation)
                      - DX: ruptured disc in back
                      - MEDS: diazepam 1x/every 6hrs, ambien 1x/day,
                      gabapentin 3x/day, nabumetone 2x/day, &
                      tramadol 2 pills 3x/day
                      -Discharged: 03/17/06
                      - ERTW: TBD
                      -GRTW MAY BE AVAIL TO EE: ee vu
                      - MAY AT&T IDSC LEAVE CONFIDENTIAL INFORMATION
                      REGARDING CLAIM ON EE'S VM OR ANSWERING MACHINE
                      ? yes

                      [Time Note Created :11:59 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 03/25/2006 HR ROBINH
                      AT&T hr feed recvd
                      [Time Note Created :10:58 PM ]
-----------------------------------------------------------------------------
A625007022-0001-01 03/27/2006 MD ROBINH
                      tpc to dr miller 309-671-7766
                      this number is to an automated dictation center
                      that requires a code to access
```

R-0077

```
Date: 02/28/2008  2:51pm          User: aarcher                Page:    12
================================================================================
Claim Number : A625007022-0001-01                 Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
================================================================================


----------------------------- NOTES ------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------   --------- --  ----------------------------------------

                    [Time Note Created : 3:43 PM ]
-----------------------------------------------------------------------
A625007022-0001-01 03/27/2006 CM ROBINH
                    tpc to ee 309-256-9393
                    i spoke with ee and asked ee for dr miller
                    number she stated
                    dr miller family practice 309-693-2020
                    [Time Note Created : 3:45 PM ]
-----------------------------------------------------------------------
A625007022-0001-01 03/27/2006 MD ROBINH
                    dr miller family practice 309-693-2020
                    lvm asking for return call with verbal clinical
                    info including: dx, level of functioning, daily
                    activities, clinical findings, medications,
                    frequency of visits, treatment plan, info on
                    rtw and any accommodations info or a copy of
                    office visit noted from office visit date
                    3/14/06 thru current time period that would
                    support ee absence.
                    I left ee DOB and name, my name, fax
                    /866-224-4627 and call back number
                    866-249-1170
                    [Time Note Created : 3:48 PM ]
-----------------------------------------------------------------------
A625007022-0001-01 03/29/2006 MD ROBINH
                    dr miller family practice 309-693-2020


                    I spoke with Chris, she stated they use smart
                    document solutions, she will have to mail a
                    form for ee to sign. i gave her ee address.
                    once they recvd the form back they will send
                    medical.  Per Chris she cannot provide me any
                    medical information over the phone. In order to
                    obtain medical by fax I must request medical
                    information and send a ROI signed by EE.


                    [Time Note Created :11:03 AM ]
-----------------------------------------------------------------------
A625007022-0001-01 03/29/2006 CM ROBINH
                    tpc to ee  309-256-9393
                    lvm advising her to call mr and find out if she
                    can come in and sign any forms. i advised they
                    willmail it to her then they send to outsource
                    records and then thye mail to me. i advised ee
                    to call mr to expedite
                    [Time Note Created :11:10 AM ]
-----------------------------------------------------------------------
```

R-0078

A625007022-0001-01 03/31/2006 IV IVR
                           Initial claim information retrieved.
                           Information accessed on 03/31/2006 at 14:29:06
                           (Central Time).
                           [Time Note Created : 2:29 PM ]
-----------------------------------------------------------------
A625007022-0001-01 03/31/2006 CM FOWLIEFT
                           ee called to inform CM that medical will be
                           sent from DR. CHIEN (309-691-8973) who has
                           approved ee to travel to Chicago with her
                           family via train for Easter weekend. leaving
                           04-15-06 returning 04-16-06 (her B-day).
                           [Time Note Created : 2:37 PM ]
-----------------------------------------------------------------
A625007022-0001-01 04/04/2006 CM MMARRS
                           8:18am. EE called for status of claim. CSR
                           advised claim is pending rec't of meds; MDD
                           4/5/06. CSR also advised that CP has her pay
                           covered until 4/10/06 so decision will probably
                           not be made until CP expires.

                           EE also wanted clarification as to what is
                           needed to support her claim. CSR asked about
                           dates of OV's, etc. EE provided the following:

                           3/13-3/17/06: hospitalized; 1st spinal
                           injection & 1st MRI
                           3/17-4/3/06: placed on home rest w/ Rx; no
                           OV's; 2nd MRI
                           4/3/06: 2nd spinal injection & EMG; Dx: spinal
                           degeneration disease w/ 2 ruptured discs & 4
                           degenerated vertebrae; given new Rx of Vicodin
                           750mg & Neurontin

                           EE advised that all medical requests should go
                           thru Dr. Chien's office. She will provide
                           signed ROI and will personally request that
                           info is provided or have someone call to speak
                           to CM.

                           EE also asked about her travelling to Chicago,
                           via train, to spend Easter w/ her family. CSR
                           advised a release to travel must be provided in
                           writing from MD. EE understood.

                           Diary set for CM.
                           [Time Note Created : 8:18 AM ]
-----------------------------------------------------------------
A625007022-0001-01 04/04/2006 MD ROBINH
                           Dr. Bruce Chein, pain/spinal mgmt
                           spec.309-691-8973
                           LINE BUSY ON 3 TRIES
                           [Time Note Created :10:36 AM ]
-----------------------------------------------------------------
A625007022-0001-01 04/05/2006 MD ROBINH
                           call deferred medical recvd 4/5 doc id 1258262
                           [Time Note Created :11:48 AM ]
-----------------------------------------------------------------
A625007022-0001-01 04/05/2006 CM ROBINH
                           call deferred medical recvd 4/5 doc id 1258262
                           [Time Note Created :11:48 AM ]
-----------------------------------------------------------------
A625007022-0001-01 04/07/2006 CM EZMARTIN

R-0079

ee ci to ck status,csr informed claim pending
and cm will review info 4/10/06. ee vu
[Time Note Created : 5:22 PM ]

---

A625007022-0001-01 04/10/2006 CM EMARQUEZ
ee (309) 256-9393 ci to check if cm reviewed
fax, csr advised fax still under review
[Time Note Created : 9:36 AM ]

---

A625007022-0001-01 04/10/2006 CM LACHANFT
Pc from EE asking claim status-pending med rvw
[Time Note Created :11:31 AM ]

---

A625007022-0001-01 04/10/2006 CM ROBINH
call to cm deferred medical recvd
[Time Note Created : 2:47 PM ]

---

A625007022-0001-01 04/10/2006 MD ROBINH
call to md deferred medical recvd
[Time Note Created : 2:47 PM ]

---

A625007022-0001-01 04/10/2006 CM DHORAN
EE calling to say she was supposed to get a
call back today, but no one called her. Advised
that the cm noted the call was deferred due to
info pending a review. The EE express being
very anxious to know what's going on, and
having some idea of what her status will be. CM
not available. EE is expressing concern over
not ever being able to speak with her cm.

Diary to cm.
[Time Note Created : 4:51 PM ]

---

A625007022-0001-01 04/10/2006 MD EMCGREW
med recd on 04/05/06 (d0c #1258262 and 1258966)
[Time Note Created : 4:58 PM ]

---

A625007022-0001-01 04/10/2006 MD EMCGREW
recd doc #1250114. however, cm unable to open.
notice to have info re-entered into cm's inbox.
[Time Note Created : 5:00 PM ]

---

A625007022-0001-01 04/11/2006 IE ROBINH
recvd fax 4/5/06 from dr chien doc id 1258262


Bruce B. Chien M.D.
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938
March 14, 2006
Melissa Gardner is a 32 y.o, w. female with the
acute onset of back pain, midline, lumbar, on
Thursday while at work (desk work). Her drive
home from Springfield uncomfortable, with her
noticing it to be painful to lift her leg to
the brake pedal. It did not remit at home in
the standing or
recumbent position and she went to OSF Prompt

R-0080

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    15
================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client     : 1632       - AT&T Inc.
Account    : 16320730   - TC - Ameritech Services, Inc
Unit       : TC065      - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
================================================================================
```

```
---------------------- NOTES ---------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------- -- -----------------------------
```

Care in Morton, where she was given Vicodin and
skelaxin. Friday she went to work, was
miserable. Went on Sunday to the ED at MMCI- no

MRI, Xrays8percocet. Awoke 0400, called office,
went to ED,
PMH: Migraine, about three years., Looked after
by Or Richard Lee. Due for a menstrual period,
FH: Everyone I her family has back pain.
SH: Smoker, WANTS to smoke, deosn't want a
patch.
Allergies; Demerol-blisters, ASA-NV, Compazine
-anxiety. Wants MS.
Surgical: Chole, DC, T&A, Ectopic. Cubital
tunnel on the left.
ROS: Otherwise negative. She REALLY wants to
smoke.
Physical Exam: VS are unremarkable. PERRLA VFs
are full, fundi are benign. Chest: clear per
° Dr. Dunaway. CV: s S3, S4. murmur gallop.
Abd; No organomegaly. Spine: Tender at L4 in
the
midline. SLR is positive on both sides, Right
>Left at 30 and 45 degrees respectively. There
is paraspinous sapsm but no radiation. Motor
and sensory are normal. DTRs are 2+. She can
stand at the bedside but with much axial pain.
SI joints are benign.
Impression: Probably an L4 disc syndrome. I've
explained in detail the interventional
algorithm-but as she's never been scanned at
three hospitals, we'll accomplish that today.
She is aware Ln that Lumbar ESI has about a 60%
yield over 6-12 months when approached in three
2 weekincrements; that there are steroid
limitations and we are careful to not broach
maximum dose limits. Narcotic is unlikely to be
of any long term use; Surgical evaluation
clearly has to Pend on the MRI. Implanted
devices are unlikely to be of much use as her
distribution is axial still at this time.
Intradiscal procedures- though I do them, are
reserved for "last chance" as the risk of
disciitis is irreducible at 0.5%.
We'll await the MRI this afternoon.
Regards,
Bruce B. Chien, M.D>
----------------------

Date: 02/28/2008  2:51pm              User: aarcher                    Page:    16

```
Claim Number : A625007022-0001-01                      Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
```

--------------------------- NOTES ------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
-----------------   -------   -- ------------------------------------

                    noted dated 4/4/06 from dr chien

                    ok to travel by train but must be able to
                    change position freq and no prolonged sitting
                    position

                    MRI 3/14/06
                    IMPRESSION
                    DDD EVIDNT BY MILD DEGENERATION DEHYDRATION AND
                    LOSS OF DISC SPACE HEIGHT OF THE L3-L4 AND
                    L5-S1 DICS. THIS IS ASSOCIATED WITH AGE
                    INDETERMINATION POSTERIOR CENTRAL ANNULAR TEATS
                    OF THE L3-L4 AND L4-L5 DISC
                    -------------------------------------
                    PROCTOR HOSPITAL
                    5409 N. KNOXVILLE, PEORIA, IL 61614
                    DATE OF OPERATION: 03/15/2006
                    SURGEON: BRUCE B. CHIEN, MD
                    PREOPERATIVE DIAGNOSIS: HERNIATED L4 NUCLEUS
                    PULPOSUS.
                    POSTOPERATIVE DIAGNOSIS: HERNIATED L4 NUCLEUS
                    PULPOSUS.
                    OPERATION: MIDLINE L4 EPIDURAL STEROID
                    INJECTION
                    INDICATION: Melissa Gardner is ready for her
                    midline L4 epidural steroid injection.
                    PROCEDURE: After written and informed consent,
                    the patient was placed in a seated position
                    over an over-bed tray table and the midline
                    prepped at the level of the L4-L5. A #18-gauge
                    Tuohy needle was passed to a depth of 8 cm
                    in the midline with the patient's stereotactic
                    guidance to loss of resistance were upon 10 mL
                    containing triancinolone 80 mg, lidocaine 0.5%
                    were injected,This was well tolerated. The
                    needle was withdrawn and the patient actually
                    felt sufficiently better that she wanted to go
                    to the bathroom to empty her bladder which she
                    did in the accompaniment of the staff nurse.
                    She was given
                    instruction not to arise from the toilet unless
                    our staff was there to assist her. The patient
                    tolerated this well.
                    BRUCE   CHIEN. MD/hs/lr
                    ---------------------
                    NOTE FROM DTR CHEIN

                    EE SCHEDUIREL FOR L4 ESI WITH DR flores 4/17/06
```

```
Date: 02/28/2008  2:51pm          User: aarcher          Page:   17
==================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==================================================================================
```

```
---------------------------------- NOTES ----------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
-------------------- ---------- -- ---------------------------------------------
```

```
                    ---------------------
                    RECVD FAX 4/5/06 DOC ID FROM CENTRAL ILLINOIS
                    REHABILITATION ASSOCIATES

                    CENTRAL ILLINOIS REHABILITATION ASSOCIATES,
                    S.C.
                    Telephone: 309-692-4588
                    Fax: 309-692-4433
                    RIchard A. Flores, M.D.
                    CIRA EVALUATION & MANAGEMENT FORM
                    Appointment Date: April 3, 2006 Page I
                    Bruce B. Chien, M.I.
                    Internal Medicine & Pain Medicine
                    5401 N. Knoxville Avenue
                    Suite #212
                    Peoria, Illinois 61614
                    Name: Melissa Gardner #6771. Age: 32
                    This now 32-year old female presents with the
                    following history. She had significant low back
                    pain with
                    lumbar radicular pain on 3/9/06. Within the
                    next few days she developed numbness and
                    tingling of her upper
                    and lower extremities. Although, she has had a
                    history of cervical pain she was vague as to
                    what the radicular
                    pattern was. She had a previous left cubical
                    tunnel syndrome, decompression and
                    transposition of the ulnar
                    nerve a number of years ago but predominance of
                    her numbness and tingling is in the ulnar
                    distribution of her
                    hand and she has lost strength. She has lost
                    fine motor control in her hands,
                    On March 29, 2006, Dr. Bruce Chien referred
                    this patient for EMG & Neurosensory Testing for
                    C;6
                    radiculopathy. Her hands and toes are numb.
                    She has slowly progressing signs and symptoms
                    of numbness, tingling, and weakness in the
                    hands bilaterally.
                    She has numbness and tingling in the feet
                    bilaterally. She has neck pain. She has low
                    back pain. She does not
                    have increased pain with Valsalva maneuvers.
                    She has always had irregular bowel function.
                    She has not had
```

R-0083

==================================================================================
Claim Number : A625007022-0001-01                      Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==================================================================================


--------------------------------- NOTES ---------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ ---------- -- ----------------------------------------------
                              any excess exposure to chemicals. She rarely
                              drinks alcohol.
                              Review of Systems: She is not diabetic and she
                              does not have any thyroid problems.
                              Allergies: ASA, Compazine, and Demerol.
                              Past History:
                              Illnesses: She has had strep throat,
                              tonsillitis, and severe migraines. She was
                              hospitalized with a lymph infection recently.
                              Injuries: She broke her left leg two times as a
                              child, she has broken some toes, she had a
                              concussion,
                              contusion, torn knee muscles and tendons, and
                              she has dislocated her kneecap.
                              Operations: DNC, ectopic P.G. removal,
                              cholecystectomy, toosilloadenoidectomy, and
                              cubital tunnel syndrome decompression.
                              Treatments: She will be starting aqua P.T.
                              soon, medications, walker p.r.n, and a TENS
                              unit.
                              Social History: She is married and has 2
                              children.
                              Family History: Her mother is living; she has a
                              small spinal column, stomach problems and
                              hypertension.
                              Daily Medication: Depakote, Gabapentin,
                              Nabumetone, and Tramadol.
                              PHYSICAL EXAMINATION:

                              Height: 5'10 Y " Weight: 244 lbs Dominant hand:
                              right. BP: 126/78 Pulse: 84 Resp: 16
                              She has tenderness and tenseness of the C2-S5
                              paraspinals and hands.
                              She has decreased cervical range of motion at
                              15/30 degrees forward flexion and extension,
                              and 20/40 degrees
                              right and left lateral flexion. She has
                              decreased thoracolumbar range of motion at
                              70/90 degrees forward
                              flexion, 10/30 degrees extension. and 10/20
                              degrees right and left lateral flexion. She has
                              decreased strength in
                              the hands bilaterally. She has decreased deep
                              tendon reflexes at all sites bilaterally. She
                              has decreased pinprick sensation in the upper
                              and lower extremities bilaterally. She has
                              normal proprioception in the upper and lower
                              extremities bilaterally. She has decreased

R-0084

Date: 02/28/2008  2:51pm              User: aarcher                    Page:    19
=========================================================================
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client      : 1632        - AT&T Inc.
Account     : 16320730    - TC - Ameritech Services, Inc
Unit        : TC065       - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
=========================================================================


------------------------------ NOTES ------------------------------------


Event/Clmnt/Claim  Date        Tp Examiner
------------------  ----------  --  -----------------------------------------

                        vibratory sensation in the hands bilaterally.
                        She has equivocal
                        Tinel's for C.T.S and cubital tunnel syndrome
                        in the tapper extremities bilaterally and
                        tarsal tunnel syndrome in
                        the lower extremities bilaterally.
                        SKIN: She has no lesions, ulcers, or rashes.
                        PERIPHERAL VASCULAR SYSTEM: She has normal
                        pulses and temperature.
                        GAIT AND STATION: Antalgic.
                        PSYCHIATRIC/MENTAL STATUS: She is oriented to
                        person, place, and time and has normal mood and

                        affect.
                        ASSESSMENT OF MEDICAL DECISION MAKING
                        A. DIFFERENTIAL DIAGNOSIS: status post 3/9/06
                        (Date) onset of signs and symptoms of:
                        1. 353.4 Lumbar nerve root lesion
                        2. 354.2 Cubital tunnel syndrome
                        3. 356.4 Peripheral neuropathy
                        B. Coordinate case management with: (referring
                        physician): Dr. Bruce Chien
                        C. Plan of management.
                        1. Do PSSD Testing --- reader of this report is
                        referred to that report for the details
                        2. Do EMG Testing - reader of this report is
                        referred to that report for the details
                        3. Other interventions:
                        D. Summary of Test Results: Please see dictated
                        reports.
                        ----------------------------
                        Richard A. Flores, M. D.
                        NEUROSENSORY TESTING
                        Appointment Date: April 3, 2006 Page 1
                        Bruce B. Chien, M.D.
                        Internal Medicine & Pain Medicine
                        5401 N. Knoxville Avenue
                        Suite 421.2
                        Peoria, Illinois 61.614
                        Name: Melissa Gardner 96771 Age: 32
                        Neurosensory Testing and EMG of the upper and
                        lower extremities was performed on 4/3106, on
                        Mrs. Melissa
                        Gardner, a 32-year old female who had
                        significant low back pain with lumbar radicular
                        pain on 3/9/06. Within
                        the next few days she developed numbness and
                        tingling of her upper and lower extremities.

=========================================================================
Claim Number : A625007022-0001-01                       Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=========================================================================

---------------------------------- NOTES ----------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------  ---------  --  ---------------------------------------

                    Although, she has
                    had a history of cervical pain she was vague as
                    to what the radicular pattern was. She had a
                    previous left cubital
                    tunnel syndrome, decompression and
                    transposition of the ulnar nerve a number of
                    years ago but predominance
                    of her numbness and tingling is in the ulnar
                    distribution of her hand and she has lost
                    strength. She has lost fine
                    motor control in her hands.
                    Neurosensory Testing was done of the ulnar,
                    median, and radial nerve of the upper
                    extremities as well as grip
                    and pinch strength in the hands. In the lower
                    extremity, we tested the medial plantar branch
                    of the posterior
                    tibial nerve, the calcaneal nerve, and the deep
                    peroneal nerve.
                    Universally throughout, the cutaneous pressure
                    thresholds for 2-point discrimination (2PT)
                    were abnormally
                    elevated bilaterally at all test sites. The
                    2-point discrimination (2PT) was present at
                    some test sites but not at
                    all. The areas where it was not present
                    included the right radial nerve in the upper
                    extremities and the right
                    medial plantar branch of the posterior tibial
                    nerve as well as the ealcaneal nerve and deep
                    peroneal nerves
                    bilaterally. The grip strength in the dominant
                    right hand was at 56% of anticipated normal,
                    but only 34% of
                    anticipated normal in the left. The ratio of
                    median to ulnar grip was such that the median
                    nerve innervated
                    portion was at a ratio of 1.3 on the left and
                    1.4 on the right. Coefficient of variation was
                    within normal limits.
                    Pinch strength was reduced at maximum to 20% on
                    the left and 51 % on the left.
                    The results of Neurosensory Testing and motor
                    testing for grip are consistent with moderate
                    to severe bilateral
                    polyneuropathy with beginning axonal loss in
                    many of the lower extremity nerves and the
                    right radial nerve.

R-0086

```
Date: 02/28/2008  2:51pm            User: aarcher                    Page:    21
==============================================================================
Claim Number : A625007022-0001-01                           Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==============================================================================


------------------------------ NOTES ---------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------  ---------- -- ---------------------------------------
```

There is a marked reduction of grip strength
bilaterally in the hands, more so from the
ulnar innervated muscle
component than the median.
EMG of the muscles of the upper and lower
extremities was tested bilaterally. The reader
of this report is
referred to that report for the details. EMG
showed evidence consistent with:
1. Bilateral mild to moderate denervation in
the ul.nar nerve distribution from the elbow
distally.
2. EMG of the lower extremities was consistent
with mild bilateral f.4 radiculopathies.
I . Neurosensory Testing of the upper and lower
extremities is consistent with moderate to
severe bilater,-
sensory polyneuropathy with beginning axonal
loss, especially in the lower extremities.
2. Grip and pinch testing shows marked
reduction of grip strength to 56% of expected
normal in the righ
hand and 34% of expected normal on the left
hand, with the predominance of the loss in. the
ul.nar ner
innervated muscles rather than the median nerve
innervated muscles.
3. EMG of the upper and lower extremities is
consistent with
a. Bilateral mild to moderate denervation in
the ulnar nerve distribution from the elbows
distally
bilaterally.
b. Mild bilateral L4 radiculopathies.
Thank you very much.
Sincerely,
Richard A. Flores, M.T.
P AF• €},
---------------------------------------
Richard A. Flores, M. D.
ELECTRONEUROMYOGRAPI4Y
Appointment Date: April 3, 2006 Page I
Bruce B. Chien, M.D.
Internal Medicine & Pain Medicine
5401 N. Knoxville Avenue
Suite #212
Peoria, Illinois 61614
Name: Melissa Gardner ##6771 Age: 32

=======================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client     : 1632       - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     -- INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
=======================================================================

------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-------------------- ---------- -- -------------------------------------------

                         EMG Study of the muscles of the upper
                         extremities was tested bilaterally using
                         muscles representing?,
                         myotones C5-Tl . The lower extremity
                         musculature was tested using muscles
                         representing myotomes L2-S2.
                         In the upper extremities, in the ulnar nerve
                         innervated. muscles from the elbow distally
                         including the flexor carpi
                         ulnaris, flexor digitorum profundus for digits
                         4 and 5, first dorsi interossei, and abductor
                         digiti quinti, there was
                         increased insertional activity, 1+
                         fibrillations, and 2+ positive waves. The
                         activated motor unit potential
                         showed normal amplitude and duration with
                         increased polyphasicity and a mild to moderate
                         decrease in number
                         of motor units. In the lower extremities, in
                         the predominantly L4 innervated muscles
                         included the quadriceps
                         femoris, adductor longus, and tibi.alis
                         anterior, there was increased insertional
                         activity, 2+ fibrillations, and 2+
                         positive waves. The activated motor unit
                         potential showed normal. amplitude and duration
                         with increased
                         polyphasicity and a mild but definite decrease
                         in number of motor units. All the other muscles
                         of the ripper and
                         lower extremities showed normal insertional
                         activity with no fibrillations or positive
                         waves. The activated
                         motor unit potential showed normal amplitude,
                         duration, degree of polyphasicity, and number
                         of motor units-

                         IMPRESSION OF EMG OF THE UPPER AND LOWER
                         EXTREMITIES SHOWS ELECTRICAL
                         EVIDENCE OF:
                         1. Bilateral mild to moderate denervation in
                         the distribution of the ulnar nerve from the
                         elbow distally.
                         2. Mild bilateral L4 radiculopathies.
                         Thank you very much.
                         Sincerely,
                         Richard A. Flores, M.D.
                         RAF: lb

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    23
===============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===============================================================================


------------------------- NOTES -------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ --------- -- ------------------------------------------
```

```
                   DDG: 354.2/sed/Without surgery, regular work:
                   14 days
                   medical supports up 38 days. 17 days beyond ddg

                   RATIONALE: Ee is unable to perform sed job
                   duties that require prolonged tuping and
                   sitting, based on medical ee has bilateral
                   wrist unlar nerve degeneration with
                   radiculopathy and MILD DEGENERATION DEHYDRATION
                   AND LOSS OF DISC SPACE HEIGHT OF THE L3-L4 AND
                   L5-S1 DISC AND POSTERIOR CENTRAL ANNULAR TEATS
                   OF THE L3-L4 AND L4-L5 DISC. DR ALSO NOTES DX
                   353.4 AND 356.4 (DISCUSSED WITH AUDITOR DB) USE
                   354.2 THEY ALL HAVE SAME RTW BPG) EE WOULD NOT
                   BE ABOE TO SIT FOR PRLONGED PERIODS AND TYPE.
                   ACCOM ARE NOT APPROPRIATE AT EE HAS BILATERAL
                   DAMAGE IN WRIST. EE IS SCHEDULED FOR ESI
                   4/17/06. WILL F\UP FOR MEDICAL TO DETERMINE IF
                   EE CAN RTW GRTW AFTER INJ

                   MAP: APPROVED\OBTAIN F\UP AND OPERATIVE REPORTS
                   [Time Note Created : 2:25 PM ]
------------------------------------------------------------------------
A625007022-0001-01 04/11/2006 RP ROBINH
                   Scheduled allocation removed for pay code 101
                   date 04/14/2006 amount          206.50
                   [Time Note Created : 2:56 PM ]
------------------------------------------------------------------------
A625007022-0001-01 04/11/2006 BA ROBINH
                   BA 3/21/06-4/20 @ 100%
                   NO OFFSETS
                   [Time Note Created : 3:05 PM ]
------------------------------------------------------------------------
A625007022-0001-01 04/11/2006 AP ROBINH
                   Approved
                   obtain nov  and operative report
                   contact ee with updated status
                   sent approval notice to CN
                   sent Approval letter to EE
                   Review medical provided to make b\a-b\u
                   determination\ERTW\accommodations
                   [Time Note Created : 3:05 PM ]
------------------------------------------------------------------------
A625007022-0001-01 04/11/2006 EX ROBINH
                   Approval letter mailed to EE
                   [Time Note Created : 3:06 PM ]
------------------------------------------------------------------------
```

R-0089

A625007022-0001-01 04/11/2006 CM ROBINH
```
                        tpc to ee 309-256-9393 advised ba 3/21-4/20 @
                        100, we will need updated medical to support
                        ext ba beyond 4/20, advised dr to call with
                        verbal update.
                        ok to travel---ee in state
                        no post op date yet
                        [Time Note Created : 3:08 PM ]
```
--------------------------------------------------------------
A625007022-0001-01 04/11/2006 EM ROBINH
```
                        _____
                        From:      Hamilton, Robin
                        Sent:      Tuesday, April 11, 2006 3:08 PM
                        To:        'hf1383@att.com'
                        Subject:   IDSC Disability Approval Notice
                        Email-Claim-A625007022000101

                        [Time Note Created : 3:09 PM ]
```
--------------------------------------------------------------
A625007022-0001-01 04/11/2006 CN COKREGLA
```
                        AM Melissa Johnson 217-757-2761 tpc to update
                        FDD from 3/21 to 3/20. csr set diary.
                        [Time Note Created : 3:24 PM ]
```
--------------------------------------------------------------
A625007022-0001-01 04/12/2006 U5 HREILLY
```
                        no linking issues
                        [Time Note Created : 8:41 AM ]
```
--------------------------------------------------------------
A625007022-0001-01 04/12/2006 SR HREILLY
```
                        DE note: present
                        Claim Status:  Approved
                        ICD9 coding:  CM to add 353.4, 356.4, and 722.5
                        Time Tracking:  Appropriate
                        Miscellaneous Screen: Appropriate
                        Disability tab: filled in
                        Payment history screen: Appropriate
                        Appropriate notes sent:  Yes
                        DDG: Appropriate
                        A/P: Appropriate
                        B/A note address's offsets: Appropriate
                        RTW addressed: addressed in rationale


                        CM to f/u with MD regarding 4-4-06 note that ee
                        may take train and no prolonged sitting to see
                        if these are r/l's...if r/l's CM to f/u with MD
                        what prolonged means
                        [Time Note Created : 8:44 AM ]
```
--------------------------------------------------------------
A625007022-0001-01 04/12/2006 EM ROBINH
```
                        resent notice reflecting fdd 3/21/06_


                        _____
                        From:      Hamilton, Robin
                        Sent:      Wednesday, April 12, 2006 2:38 PM
                        To:        'hf1383@att.com'
                        Subject:   IDSC Disability Claim Notice
                        Email-Claim-A625007022000101---updated claim
                        notice GARDNER, MELISSA

                        From:      Hamilton, Robin
                        Sent:      Wednesday, April 12, 2006 2:41 PM
```

```
Date: 02/28/2008  2:51pm          User: aarcher          Page:    25
=================================================================================
Claim Number : A625007022-0001-01                   Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
=================================================================================

------------------------------- NOTES -------------------------------

Event/Clmnt/Claim   Date       Tp Examiner
-----------------   ---------- -- --------------------------------------------

                    To:      'hf1383@att.com'
                    Subject: IDSC Disability Approval Notice
                    Email-Claim-A625007022000101--FDD 3/21/06


                    [Time Note Created : 2:38 PM ]
---------------------------------------------------------------------------------
A625007022-0001-01 04/17/2006 MD ROBINH
                    recvd fax 4/13/06 doc id 1292075
                    medical from proctor health care

                    operative report 3/13/06

                    MRI 3/23/06

                    opertive report 3/15/06

                    consult notes 3/13/06

                    all info previously entered on 4/11


                    DDG: 354.2/sed/Without surgery, regular work:
                    14 days
                    medical does impact ddg entered on 4/11/06

                    MAP: obtain on going medical to support an ext
                    [Time Note Created : 1:03 PM ]
---------------------------------------------------------------------------------
A625007022-0001-01 04/18/2006 MD ROBINH
                    recvd fax 4/18/06 doc id 1329715 dr chien

                    Bruce B. Chien M.D.
                    Diplomate, American Boards of Anesthesiology,
                    Internal Medicine and Pain Medicine
                    5401 N. Knoxville, #212
                    Peoria, IL 61614
                    309-691-8973 fax 309-691-8938
                    April 18, 2006
                    To whom it may concern:
                    Melissa Gardner will need to be medically off
                    work through May 6, 2006.
                    Sincerely,
                    Bruce B. Chien, M.D.

                    DDG: 354.2/sed/Without surgery, regular work:
                    14 days
                    medical does not support an extension beyond
```

```
Date: 02/28/2008  2:51pm            User: aarcher              Page:    26
=============================================================================
Claim Number : A625007022-0001-01                       Date Loss : 03/12/2006
Client    : 1632     - AT&T Inc.
Account   : 16320730 - TC - Ameritech Services, Inc
Unit      : TC065    - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
=============================================================================

---------------------------------- NOTES ------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------  --------  --  -------------------------------------------

                              ddg on 4/11/06

                              MAP: obtain lov
                              [Time Note Created : 4:52 PM ]
-----------------------------------------------------------------------------
A625007022-0001-01 04/18/2006 MD ROBINH
                              tpc to Bruce B. Chien M.D.309-691-8973

                              lvm message with answering service to have dr
                              fax over lasted office notes to ext ba
                              [Time Note Created : 4:55 PM ]
-----------------------------------------------------------------------------
A625007022-0001-01 04/18/2006 CM ROBINH
                              tpc to ee 309-256-9393
                              i spoke with ee stated she has epidural
                              injection on 4/17/06
                              ee will have discogram on 4/27/06
                              i advised ee that off work note does not
                              support ext ba and ba expires 4/20/06. i
                              encourged ee to have tpo fax over lov ee vu
                              [Time Note Created : 5:04 PM ]
-----------------------------------------------------------------------------
A625007022-0001-01 04/19/2006 CN COKREGLA
                              AM, Michelle Johnson (217) 757-2761 called
                              stating that cm needs to change FDA to:
                              03/13/06 not 03/14/06, csr set diary
                              [Time Note Created : 9:18 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 04/19/2006 CM COKREGLA
                              ee called requesting for cm fax medical rqst to
                              Dr. Chein's office csr requested fax# ee stated
                              will call back with fax#
                              [Time Note Created :11:01 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 04/19/2006 CM TIFFANYT
                              ee rtc w/Dr. Chien's fax # 309-691-8938, ee
                              also reqsting cm send medical reqst form to MD
                              for LOV notes:4/17
                              [Time Note Created :11:07 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 04/19/2006 RP ROBINH
                              Scheduled allocation removed for pay code 101
                              date 04/21/2006 amount          826.00
                              [Time Note Created : 2:45 PM ]
-----------------------------------------------------------------------------
A625007022-0001-01 04/19/2006 EM ROBINH
                              TT corrected to reflect correct FDA as 3/13 not
                              3/14 new notices sent
```

R-0092

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    27
===============================================================================
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client     : 1632    - AT&T Inc.
Account    : 16320730 - TC - Ameritech Services, Inc
Unit       : TC065    - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
===============================================================================

----------------------------- NOTES -----------------------------

Event/Clmnt/Claim   Date     Tp Examiner
------------------- ---------- -- --------------------------------------------
```

```
                    _____
                    From:    Hamilton, Robin
                    Sent:    Wednesday, April 19, 2006 2:48 PM
                    To:      'hf1383@att.com'
                    Subject: IDSC Disability Approval Notice
                    Email-Claim-A625007022000101
                    _____
                    From:    Hamilton, Robin
                    Sent:    Wednesday, April 19, 2006 2:46 PM
                    To:      'hf1383@att.com'
                    Subject: IDSC Disability Claim Notice
                    Email-Claim-A625007022000101-updated claim
                    notice


                    [Time Note Created : 2:49 PM ]
```
```
------------------------------------------------------------------------
A625007022-0001-01 04/19/2006 EX ROBINH
                    corrected Approval letter mailed to EE
                    [Time Note Created : 2:49 PM ]
------------------------------------------------------------------------
A625007022-0001-01 04/19/2006 MD ROBINH
                    MANUALLY FAXED REQUEST FOR LOV 4/17/06 FROM DR
                    CHIEN
                    309-691-8938
                    [Time Note Created : 2:54 PM ]
------------------------------------------------------------------------
A625007022-0001-01 04/20/2006 U3 JEFFFT
                    resending time tracking per Lattrice Bush at
                    eLink.
                    [Time Note Created : 3:38 PM ]
------------------------------------------------------------------------
A625007022-0001-01 04/20/2006 CM KLATHROP
                    Tpc from ee verify receipt of medical, advised
                    fax rcvd 4/20/06. Ee states she had a discograh
                    performed today.
                    [Time Note Created : 4:51 PM ]
------------------------------------------------------------------------
A625007022-0001-01 04/21/2006 CM DIANEFT
                    EE called re status. Adv med just rcvd 4/20/06
                    that has to be reviewed.
                    [Time Note Created :11:10 AM ]
------------------------------------------------------------------------
A625007022-0001-01 04/21/2006 MD KANDRIAD
                    DOC ID 1340828 op report dated 4/17 from Dr.
                    Chien, appt notices for L4 discogram and lasb
```

R-0093

Date: 02/28/2008  2:51pm            User: aarcher                 Page:    28
==============================================================================
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
==============================================================================

--------------------------------- NOTES --------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------  --------- -- --------------------------------------------

              needed

              MS: c/o back pain, painful to lift leg Pre and
              Post Op. Dx. ee had Bil. L4 radiculo. L C7
              radiculopathy,  Op- midline ESI injection, has
              had 2 ESI , esam  SLR + on both sides at 60 and
              75 degrees on the r and L sides respectively,
              Parspinous spasm is present, no radiation, ,
              plan that ee likely has intradiskal disese with
              her pain pattern and failure to respond, in
              addition she has an L4 EMG, which showed a
              pattern compat. w/ Radiculopathy, will refer ee
              for L4 discogram.

              appt. notice, dx. Bil L4 Radiculopathy, L4
              discogram and Labs needed, date of test 4/20/06
              11:00 am at Proctor Hospital


              DDG: 354.2/sed/Without surgery, regular work:
              14 days
              medical supports upto 46 days. 32 days beyond
              ddg

              RATIONALE: Ee is unable to perform sed job
              duties that require prolonged typing and
              sitting, based on medical ee has bilateral Bil
              L4 radiculopathy and L C7 radiculopathy. (CM
              was advised byAUDITOR DB) USE 354.2 THEY ALL
              HAVE SAME RTW BPG) EE WOULD NOT BE ABlE TO SIT
              FOR PRLONGED PERIODS AND TYPE.  EE IS had
              discogram on 4/20/06. WILL F\UP FOR MEDICAL TO
              DETERMINE IF EE CAN RTW GRTW AFTER test results
              provided

              MAP: APPROVED\OBTAIN F\UP AND Test REPORTS
              [Time Note Created : 3:50 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 04/21/2006 AP KANDRIAD
              Approved
              obtain nov  and operative report
              contact ee with updated status
              sent approval notice to CN
              sent Approval letter to EE
              Review medical provided to make b\a-b\u
              determination\ERTW\accommodations
              [Time Note Created : 4:28 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 04/21/2006 BA KANDRIAD

R-0094

BA 3/21/06-4/27 @ 100%
NO OFFSETS
[Time Note Created : 4:29 PM ]

---

A625007022-0001-01 04/21/2006 CN KANDRIAD
dis. approval notice sent to supv. Hillari
Fleming via email
[Time Note Created : 4:33 PM ]

---

A625007022-0001-01 04/21/2006 CM KANDRIAD
tpc to ee 309-256-9393 advised ba 3/21-4/27 @
100, we will need updated medical to support
ext ba beyond 4/27, advised dr to call with
verbal update.  ee advised MD to obtain results
for discogram by 4/25
[Time Note Created : 4:36 PM ]

---

A625007022-0001-01 04/21/2006 CM KANDRIAD
BA ext. letter mailed to ee
[Time Note Created : 4:40 PM ]

---

A625007022-0001-01 04/24/2006 HR DHEISLER
disability
[Time Note Created : 3:15 PM ]

---

A625007022-0001-01 04/26/2006 CM JATHOMAS
ee reports procedure was performed last week.
result are now available. ee has one disc that
is internally ruptured. ee's appt.
w/neurosurgeon(Dr.Dihn)-6-16-06 to discuss sx.
ee states she cannot rtw on 4-28-06ee states cm
will need to fax request for ov notes to Dr.
Chein's ofc. set diary.
[Time Note Created :12:54 PM ]

---

A625007022-0001-01 04/27/2006 MD LWALLS
placed call to mdo dr chein 309-691-8973,
called mdo to obtain med update in regards to
procedure ee stated that she had performed last
week, ofc is currently closed
[Time Note Created :12:18 PM ]

---

A625007022-0001-01 04/27/2006 CM LWALLS
placed call to ee 309-256-9393, called ee to
inform of ba exp, and that med update is
needed, called ee to inform her to f/u with mdo
for med info, left vm for ee to return cm's
call
[Time Note Created :12:20 PM ]

---

A625007022-0001-01 04/27/2006 CM TIFFANYT
ee called stating cm needs to fax request to MD
for medical.  No fax number on file, ee will
c/b w/MD fax # so csr can update in address
book.
[Time Note Created :12:42 PM ]

---

A625007022-0001-01 04/27/2006 CM ROBINH
ee called back with Dr. Chen's fax number
entered into address book. ee said cm will need
to rax a request to Dr. Chen's office.
**** NOTE CREATED BY: larryft ****
[Time Note Created :12:46 PM ]

---
A625007022-0001-01 04/28/2006 CM KENDRAP
tpc from ee rtc to cm buddy, per cm BA extended
thru 05/01/06 to allow for add'l medical to be
submitted.
[Time Note Created : 3:58 PM ]
---
A625007022-0001-01 04/28/2006 CM LWALLS
placed call to ee 309-256-9393, called ee to
inform of ba thru 5.1.06 to allow for
additional medical, left vm for ee to return
cm's call

mailed ba letter to ee
[Time Note Created : 3:59 PM ]
---
A625007022-0001-01 04/28/2006 EM LWALLS
From:      Walls, LouLitha C.
Sent:      Friday, April 28, 2006 4:01 PM
To:        'hf1383@att.com'
Subject:   A625007022-0001-01 GARDNER, MELISSA

sent ba notice to er
[Time Note Created : 4:02 PM ]
---
A625007022-0001-01 04/28/2006 MD LWALLS
faxed med req to mdo:


This message was sent via FAXCOM, a product
from Biscom Inc. http://www.biscom.com/

            -------Fax Transmission
Report-------

To:             Dr. Chen at 3099918931
Subject:        A625007022-0001-01 GARDNER,
MELISSA
Result:         The transmission failed.
Explanation:    Called phone number ringing
but no answer
Pages Sent:     0
Connect Time:   0 minutes, 37 seconds
Transmit Time:  04/28/2006 16:14
Transfer Rate:  2400
Status Code:    0015
Retry Count:    3
Job Id:         233
Unique Id:
MEM2FX03_SMTPFaxQ_0604282042003659

[Time Note Created : 4:18 PM ]
---
A625007022-0001-01 05/02/2006 BA LWALLS
bu 5.2.06 to rtw
no additional medical submitted
[Time Note Created :10:44 AM ]
---
A625007022-0001-01 05/02/2006 CM LWALLS
placed call to ee 309-256-9393, called ee to
inform of denial status due to no additional

Date: 02/28/2008  2:51pm          User: aarcher                    Page:    31
=====================================================================
Claim Number : A625007022-0001-01                      Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730 - TC - Ameritech Services, Inc
Unit         : TC065    - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=====================================================================

----------------------------- NOTES -----------------------------------

Event/Clmnt/Claim   Date        Tp Examiner
-----------------   ---------   --  -------------------------------------
                                medical, informed of appeal rights and erisa
                                rights, ee stated that she will f/u with mdo to
                                have med submitted
                                [Time Note Created :10:45 AM ]
-----------------------------------------------------------------------
A625007022-0001-01 05/02/2006 AP LWALLS
                                Claim status is denied
                                send notice to dept
                                notify ee of status
                                denial letter to BUM
                                monitor for appeal
                                close claim in 30 days
                                [Time Note Created :10:45 AM ]
-----------------------------------------------------------------------
A625007022-0001-01 05/02/2006 CM DIANEFT
                                EE called stating that CM had incorrect fax#
                                for Dr Chen. Correct # is 309/691-8938.
                                Corrected address book and transferred ee to vm
                                of CM who sent request.
                                [Time Note Created :11:02 AM ]
-----------------------------------------------------------------------
A625007022-0001-01 05/02/2006 EM LWALLS
                                From:    Walls, LouLitha C.
                                Sent:    Tuesday, May 02, 2006 11:06 AM
                                To:      'hfl383@att.com'
                                Subject: Melissa Gardner A625007022-0001-01

                                sent denial notice to er
                                [Time Note Created :11:06 AM ]
-----------------------------------------------------------------------
A625007022-0001-01 05/02/2006 CM ALEXANDE
                                tpc from ee re: ee asked if cm has faxed med
                                req form to correct fax# for md, advised ee not
                                as of yet
                                [Time Note Created : 1:30 PM ]
-----------------------------------------------------------------------
A625007022-0001-01 05/03/2006 CM LWALLS
                                received vm from ee Tue 5/2/2006 11:03 AM,
                                stating that she initially gave us the
                                incorrect fax number and req we re-send fax req
                                for med
                                [Time Note Created : 1:22 PM ]
-----------------------------------------------------------------------
A625007022-0001-01 05/03/2006 MD LWALLS
                                fax med req to mdo:

                                This message was sent via FAXCOM, a product
                                from Biscom Inc. http://www.biscom.com/

R-0097

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    32
=============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
=============================================================================

------------------------------- NOTES --------------------------------------

Event/Clmnt/Claim   Date       Tp Examiner
------------------- ---------- -- ------------------------------------------


                               --------Fax Transmission
                      Report-------

                      To:        Dr. Chen at 3096918938
                      Subject:   A625007022-0001-01 Melissa
                      Gardner
                      Result:    The transmission was
                      successful.
                      Explanation:  All Pages Ok
                      Pages Sent:   2
                      Connect Time: 0 minutes, 59 seconds
                      Transmit Time: 05/03/2006 13:29
                      Transfer Rate: 14400
                      Status Code:  0000
                      Retry Count:  0
                      Job Id:       2431
                      Unique Id:
                      MEM2FX03_SMTPFaxQ_0605031828401968

                      [Time Note Created : 1:28 PM ]
----------------------------------------------------------------------------
A625007022-0001-01 05/04/2006 SR HREILLY
                      Denial letter returned to CM buddy as medical
                      received 5-3-06 Doc 1411834 and diary set for
                      CM
                      [Time Note Created : 2:39 PM ]
----------------------------------------------------------------------------
A625007022-0001-01 05/04/2006 MD LWALLS
                      DocID:  1411834 rcvd 5.3.06 dr chein

                      Ltr dated 5.3.06, stated ee has a ruptured L4
                      disc by discography and bilateral lumbar
                      radiculopathy L4. at the current time she
                      cannot stand or sit for any period more than
                      about 3 minutes. She is completely disabled
                      from all work at the current time. Ee is
                      awaiting to see Dr. Dzung Dinh, who is the L4
                      disc replacement vs.fusion neurosurgeon.

                      Ct scan results from 4.20.06, conclusion:
                      evidence of disruption of the L4-L5 disc
                      annulus posteriorly with extension of contrast
                      to the posterior annulus near the midline into
                      the epidural space and also to the left along
                      the left. Concordant 7 out of 10 pain
                      demonstrated with injection of the L4-L5 disc
                      space. There is also significantly diminished
```

R-0098

========================================================================
Claim Number : A625007022-0001-01                          Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA

========================================================================

------------------------------- NOTES ------------------------------------

Event/Clmnt/Claim   Date     Tp Examiner
------------------- -------- -- -------------------------------------------

                    disc turgor at this level and evidence of
                    penetration of contrast at least into, if not
                    through, the annular region posteriorly.

                    DDG: 354.2/sed/Without surgery, regular work:
                    14 days. medical supports extension of 47 days
                    beyond ddg entered on 4.21.06.

                    rationale:

                    [Time Note Created : 3:48 PM ]
------------------------------------------------------------------------
A625007022-0001-01 05/04/2006 MD LWALLS
                    placed call to dr dihn 309-676-0766, called mdo
                    to conf date of consultation with neurosurgeon,
                    s/w tonya who conf ee's first ov post
                    hospitalization is 6.16.06
                    [Time Note Created : 3:52 PM ]
------------------------------------------------------------------------
A625007022-0001-01 05/04/2006 BA LWALLS
                    BA 3/21/06 to 6.18.06 @ 100%
                    NO OFFSETS
                    [Time Note Created : 3:57 PM ]
------------------------------------------------------------------------
A625007022-0001-01 05/04/2006 AP LWALLS
                    Claim status is Approved
                    obtain nov 6.16.06
                    contact ee with updated status
                    sent approval notice to CN
                    sent Approval letter to EE
                    Review medical provided to make b\a~b\u
                    determination\ERTW\accommodations
                    [Time Note Created : 3:57 PM ]
------------------------------------------------------------------------
A625007022-0001-01 05/04/2006 CM LWALLS
                    placed call to ee 309-256-9393, called ee and
                    informed of ba dates, and that cm will need
                    update from nov 6.16.06, ee v/u

                    mailed ba letter to ee
                    [Time Note Created : 3:58 PM ]
------------------------------------------------------------------------
A625007022-0001-01 05/04/2006 EM LWALLS
                    From:    Walls, LouLitha C.
                    Sent:    Thursday, May 04, 2006 4:00 PM
                    To:      'hf1383@att.com'
                    Subject: Melissa Gardner A625007022-0001-01

R-0099

```
Date: 02/28/2008  2:51pm           User: aarcher              Page:    34
===============================================================================
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===============================================================================


-------------------------- NOTES -------------------------------

Event/Clmnt/Claim   Date        Tp Examiner
------------------- ----------  -- -----------------------------------------

                    sent ba notice to er
                    [Time Note Created : 4:00 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 05/22/2006 SR HREILLY
                    Diary set for CM to finnish rational statement
                    from 5-4-06 approval.  RTW not appr at this
                    time pending ongoing treatment plan from
                    neurosurgeon.
                    [Time Note Created : 4:59 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 05/23/2006 MD LWALLS
                    addendum to md note on 5.4.06:

                    DDG: 354.2/sed/Without surgery, regular work:
                    14 days. medical supports extension of 47 days
                    beyond ddg entered on 4.21.06.

                    rationale:ee unable to perform essential
                    functions of sedentary job which includes
                    sitting, typing, and talking. ee has ruptured
                    disk and is currently pending sx.

                    map: conf date of sx and obtain operative
                    report
                    [Time Note Created : 9:13 AM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/13/2006 CM ROBINH
                    tpc to ee 309-256-9393
                    lvm asking for rtc informing me of nov, and
                    rehab dates, names and phone number.
                    ba expire 6/18/06
                    [Time Note Created :12:19 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/13/2006 MD ROBINH
                    tpc to dr dihn  309-676-0766 i spoke with tonya
                    i asked what is post op date she stated 6/16 at
                    11:45am
                    [Time Note Created :12:20 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/13/2006 CM HOFFNEFT
                    rcv'd call from ee returning cm's call. EE
                    can't start rehab till she has her surgery and
                    nov is 6-16.
                    [Time Note Created :12:35 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/16/2006 MD ROBINH
                    tpc to dr dihn
```

R-0100

```
Date: 02/28/2008  2:51pm          User: aarcher                Page:    35
================================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
================================================================================

------------------------------- NOTES ----------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------- ---------- -- -----------------------------------------------
                              i spke with Tonya asked if sx has been
                              scheduled?
                              was ee seen today as a consult?
                              she took my name and number and will have the
                              nurse call me back
                              [Time Note Created : 9:51 AM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/16/2006 MD LCHAMBER
                              Dr Denz office rtc to mc, mc na call was
                              transferred to VM per request.
                              [Time Note Created :11:57 AM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/16/2006 CM JDUHIGG
                              tpc from ee to speak to cm, trans to cm.
                              [Time Note Created :12:03 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/16/2006 CM ROBINH
                              i spoke with EE who was at drs office she put
                              coordinator on the phone
                              i spoke norma-surgical precerter from dr dihn
                              ee was rescheduled due dr having been called
                              away for emergency surgery. she has been
                              rescheduled for
                              surgical consult 6/21/06 -
                              i asked how i can get copy of notes - fax a
                              request roi along with request tp 309-676-5920
                              fax takes about 72 hours to get dictated and
                              send.
                              i advised i will fax my request on 6/20/06--
                              norma stated i should call her for any info
                              309-495-6424
                              [Time Note Created :12:10 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/16/2006 BA ROBINH
                              B\A-benefits extended an additional 7 days to
                              await medical records from NOV on 6/21
                              BA 3/21/06 to 6.18.06 @ 100%
                              BA 6/19/06 to 6/25//06 @ 50%
                              NO OFFSETS

                              [Time Note Created :12:12 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/16/2006 EX ROBINH
                              Approval letter mailed to EE
                              [Time Note Created :12:14 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/16/2006 AP ROBINH
                              Approved
```

R-0101

```
Date: 02/28/2008  2:51pm           User: aarcher              Page:    36
================================================================================
Claim Number : A625007022-0001-01                Date Loss : 03/12/2006
Client     : 1632     - AT&T Inc.
Account    : 16320730 - TC - Ameritech Services, Inc
Unit       : TC065    - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
================================================================================


----------------------------- NOTES -------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------ ---------- -- -----------------------------------
                              fax request to dr for ovn on 6/20
                              Obtain Nov 6/21
                              sent approval notice to CN
                              Sent Approval letter to EE
                              Review medical provided to make b\a-b\u
                              determination\ERTW\accommodations

                              [Time Note Created :12:15 PM ]
-------------------------------------------------------------------
A625007022-0001-01 06/16/2006 EM ROBINH
                              From:    Hamilton, Robin
                              Sent:    Friday, June 16, 2006 12:16 PM
                              To:      'hf1383@att.com'
                              Subject: IDSC Disability Approval Notice
                              Email-Claim-A625007022000101

                              [Time Note Created :12:16 PM ]
-------------------------------------------------------------------
A625007022-0001-01 06/20/2006 CM TIFFANYT
                              EE tpc for CM; d/a n/a call transfrd to CM vm
                              per rqst;
                              [Time Note Created :11:50 AM ]
-------------------------------------------------------------------
A625007022-0001-01 06/20/2006 CM TDRACOPO
                              2:13 EE calling to speak with CM.  CSR offered
                              assistance.  EE was at the dr office when CM
                              called the MDO on 6/16/06.  She states that NP
                              wanted her to do 6 wks of therapy and will not
                              see the Neurosurgeon until 8/4/06.  EE stated
                              that she would have to call us back due to her
                              phone was dying. Diary set for CM.
                              [Time Note Created : 2:15 PM ]
-------------------------------------------------------------------
A625007022-0001-01 06/20/2006 CM LTHOMPSO
                              ee was concerned that she was approved through
                              6/25, csr adv that dr has med that has not been
                              sent as it is in transcription, ee will call
                              again to see if med has arrived
                              [Time Note Created : 2:21 PM ]
-------------------------------------------------------------------
A625007022-0001-01 06/20/2006 CM ROBINH
                              rtc to ee\5 day call
                              i advised i did not have any addl medical to
                              ext ba. ee stated she saw np christen for 1st
                              post hosp d\c on 6/16 instead of seeing dr dihn
                              to safe the cost of 2 co-pays. i asked if she
                              was examined, she stated yes and christen has
                              extended absence time thru nov with dr dihn
```

R-0102

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    37
==================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
==================================================================================

--------------------------------- NOTES ------------------------------------

Event/Clmnt/Claim   Date     Tp Examiner
------------------- ---------- -- ------------------------------------------
                            till 8/4/06. she is to do water therapy to see
                            how it will work as opposed to physical
                            therapy.
                            i advised i will need the therapist name and
                            phone number. i will call christen for verbal
                            clinical update.

                            [Time Note Created : 3:06 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/20/2006 MD ROBINH
                            tpc to dr dihn 309-676-0766

                            i called and spoke with receptionist i asked to
                            speak with christen, she stated she was busy.
                            she took my name and number for call back

                            [Time Note Created : 3:14 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/21/2006 CM FOWLIEFT
                            ee called to speak with CM ONLY. declined
                            assist. CM unavail. ee stated that Norma with
                            DR. DISTEN is awaiting CM's call back to inform
                            them what medical is needed.
                            [Time Note Created :10:57 AM ]
-------------------------------------------------------------------------------
A625007022-0001-01 06/21/2006 MD ROBINH
                            tpc to dr dinh 309-676-0766
                            i spoke with Norma-i asked for clinical info
                            either verbally or copy of lov 6/16, she stated
                            ee was seen by NP who is at the hosp so i could
                            not speak with her and obtain clinical. she
                            stated ee has had emg and mri that reveals
                            central annular tears at L3-4 and L4-5 with
                            radiculopathy and severe pain that prevents
                            prolonged sitting.
                            conservative treatment- injections and now
                            aquatic therapy for 6 wks-see dr dinh again
                            8/4/06

                            she transferred me to Ginni in medical records
                            person who does dictation is working from home
                            she could not give me a date when medical will
                            be recvd.

                            fax request to 309-495-6427 attn Jenny

                            faxed request for lov 6/19/06
                            [Time Note Created : 1:42 PM ]
-------------------------------------------------------------------------------
```

```
A625007022-0001-01 06/22/2006 CM FOWLIEFT
                     ee called to see if medical was recvd. todl her
                     no recent medical recvd.
                     [Time Note Created : 9:25 AM ]
```
--------------------------------------------------------------------
```
A625007022-0001-01 06/23/2006 MD ROBINH
                     recvd fax 6/22/06 doc id 1684999 from dr dinh

                     note  dated 6/22/06

                     ee should remain off work until next appt
                     8/4/06 to have water therapy

                     DDG: 354.2/sed/Without surgery, regular work:
                     14 days. medical does not support extension of
                     benefits beyond ddg entered on 5/23/06.

                     rationale:medical does not reveal clinical
                     information to support ee inability to perform
                     job duties.

                     map: refer to pa
                     [Time Note Created :11:10 AM ]
```
--------------------------------------------------------------------
```
A625007022-0001-01 06/23/2006 TP ROBINH
                     this is a 33yr old female who works as a
                     Marketing support specialist whose job is
                     sedentary and requires prolonged sitting,
                     repetitive hand and arm movement and prolonged
                     typing.

                     FDA 3/13... FDD 3/20 ba thru 6/25/06


                     all conservative methods have been exhausted,
                     doctor has now referred ee to water therapy for
                     6wk

                     DOC ID 1258262-1411834-1684999

                     QUESTIONS TO PA
                     1. DOES THE MEDICAL INFORMATION CONTAINED IN
                     THIS FILE SUPPORT AN TOTALLY DISABLING
                     CONDITION FROM 6/26 THRU PRESENT?

                     2. DOCTOR HAS NOT ADDRESSED RESTRICTIONS.
                     PLEASE MAKE RECOMMENDATIONS.

                     3. AFTER REVIEW OF MEDICAL IS EE A LIKELY
                     SURGICAL CANDIDATE? WHAT IN EE CONDITION IS
                     PREVENTING DOCTOR FROM PERFORMING SURGERY?
                     [Time Note Created :11:22 AM ]
```
--------------------------------------------------------------------
```
A625007022-0001-01 06/23/2006 CM ROBINH
                     TPC TO EE
                     I ADVISED I HAVE NOT RECVD ANY ADDITIONAL
                     MEDICAL TO SUPPORT AN EXT OF BA. I WILL SEND
                     HER FILE TO OUR PA FOR FURTHER REVIEW. THIS
                     PROCESS TAKES ABOUT 2-3 BUS DAYS.
                     [Time Note Created :11:36 AM ]
```
--------------------------------------------------------------------
```
A625007022-0001-01 06/23/2006 MD ROBINH
                     tpc to dr dinh 309-676-0766
```

R-0104

```
Claim Number : A625007022-0001-01                Date Loss : 03/12/2006
Client      : 1632    - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065    - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
```

------------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
----------------   ----------  --  ----------------------------------------

                              LVM ASKING WHAT IS A GOOD DATE AND TIME FOR OUR
                              PA TO SPEAK WITH DR DINH REGARDING EE
                              [Time Note Created :11:37 AM ]
------------------------------------------------------------------------------
A625007022-0001-01 06/23/2006 CM CHARYLEM
                              3:34pm EE ci to verify CM contact with MDO; csr
                              advised CM contacted MDO to set up PA doc to
                              doc consult; EE will f/u with MDO; call ended
                              [Time Note Created : 3:35 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 06/26/2006 MD ROBINH
                              no cll from dr dinh-refer file to pa
                              [Time Note Created : 2:06 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 06/26/2006 TP AMANDREW
                              PA referral rcv'd, forwarded to PA for Med
                              review only
                              [Time Note Created : 2:28 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 06/27/2006 TP ROBERTP
                              Physician Advisor Referral

                              Date file reviewed:  06/26/06.

                              Treatment Providers' names:   Listed as Dr.
                              Dinh, neurosurgeon, Dr. Chien, pain management,
                              and Dr. Flores, pain management
                              electrodiagnostics.

                              Date & time calls made to TP: Not applicable.
                              This is file review only.

                              Was TP contact successful?   N/A

                              If yes, name of contact:  N/A

                              Summary of TP medical documentation:

                              S:        This is a file review only.  I do not have
                              any electronic medical records available for
                              review.  This is from transcribed Juris case
                              manager notes only.  There is extensive
                              documentation, which has been reviewed in
                              detail.  Previous exams and testing procedures
                              have been noted.  Previously most recent exam
                              was 04/17/06.  These will be referred to in PA
                              rationale.  Also has previous EMG on 04/03/06
```

Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client      : 1632     - AT&T Inc.
Account     : 16320730 - TC - Ameritech Services, Inc
Unit        : TC065    - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA

----------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------   ---------  -- --------------------------------------------

showing mild-to-moderate bilateral
polyneuropathy upper extremities and a lower
extremity mild bilateral L4 radiculopathy.
Discogram from 04/20/06 has been reviewed
showing annular tears.  Previous MRI from
03/14/06 showing L3-L4 and L4-L5 annular tears
noted.  There is a notation that employee was
seen on 06/16/06 by nurse practitioner in Dr.
Dinh's office.

O: No objective reports are noted.


A:  Per employee, her disability was extended
until 08/04/06 where she will be seen by Dr.
Dinh and she has recommended performing aquatic
therapy for six weeks.  Again as noted above,
last objective exam was dated 04/17/06 and also
notation that employee had at least two
epidural steroid injections in lumbar spine.

Complications/co-morbidities impacting
recovery/functionality: In addition to low back
pain and lumbar radiculopathy, employee has
some complaints of upper extremity pain and
weakness and diagnosis of mild polyneuropathy
from recent electrodiagnostic testing.  This
does not warrant total disability at this time.

TP ERTW Date:  Not specified.  Nurse
practitioner has extended her disability
through 08/04/06 until evaluation with Dr.
Dinh.  No objective findings noted.


Physician Advisor Review

Assessment of functionality:     Based on the
information I have to review and the fact that
she does not have any objective exam since mid
April, I do not feel that continued total
disability would be warranted at this time.
She could be returned to her sedentary duties
with some accommodations to follow.


Reasonable and specific restrictions, including

R-0106

Claim Number : A625007022-0001-01                   Date Loss : 03/12/2006
Client      : 1632     - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065    - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA

------------------------------- NOTES -------------------------------

Event/Clmnt/Claim   Date       Tp Examiner
-----------------   --------    -- ----------------------------------

duration and anticipated medical milestones:
Employee could be returned 06/26/06 forward
with the accommodations and graduated return to
work.  She can be returned on that date
06/26/06 for four hours per day with the
accommodations of no lifting greater than 10
pounds, a 5-minute stretch break every 30
minutes, and no bending, squatting, kneeling,
and stooping activities.  After two-week
period, it could be extended to six hours per
day and then two weeks following extend back to
eight hours per day with the continued
accommodations lifting and sitting restrictions
until her exam with Dr. Dinh on 08/04/06.
Beyond this timeframe, we will need updated
medical information to support additional
accommodations and restrictions.

PA's ERTW (full-duty/restricted as
appropriate):     Employee could be returned
06/26/06 forward with the accommodations and
graduated return to work.  She can be returned
on that date 06/26/06 for four hours per day
with the accommodations of no lifting greater
than 10 pounds, a 5-minute stretch break every
30 minutes, and no bending, squatting,
kneeling, and stooping activities.  After
two-week period, it could be extended to six
hours per day and then two weeks following
extend back to eight hours per day with the
continued accommodations lifting and sitting
restrictions until her exam with Dr. Dinh on
08/04/06.  Beyond this timeframe, we will need
updated medical information to support
additional accommodations and restrictions.

PA rationale: Employee has been off duty since
03/13/06.  There is extensive documentation,
primarily neurosurgeon is evaluating low back
and also has mention of possible cervical
radiculopathy, upper extremity pain and
weakness on detailed testing is
electrodiagnostic EMG on 04/03/06 showing
mild-to-moderate bilateral polyneuropathy of
the upper extremities.  She had numerous
epidural steroid injections since March and
does have positive EMG of lower extremities
showing mild L4 bilateral radiculopathy.

```
Date: 02/28/2008  2:51pm          User: aarcher                     Page:    42
========================================================================
Claim Number : A625007022-0001-01                      Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
========================================================================
```

```
----------------------------- NOTES ------------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------ ---------- -- ---------------------------------------
```

Previous MRI, CT scans, and positive discogram at L4-L5 with annular tears.  It was noted on her office exam on 03/14/06 that motor and sensory were within normal limits and deep tendon reflexes were 2+ and symmetrical.  More recent exam with Dr. Flores performed EMG noted some decreased strength in the upper extremities.  She was referred to Dr. Dinh for possible surgical evaluation.

She did not see Dr. Dinh and she saw a nurse practitioner.  There are no objective exam notes.  Her disability was extended for six weeks and she was told to perform water therapy.  From the information I have to review, as stated above I do not have any recent objective exams dated later than mid April, which revealed findings.  EMG shows only mild L4 radiculopathy as well as upper extremity polyneuropathy, which is graded as mild-to-moderate.  She has been off for three months with recommendation to continue water therapy.  Uncertain as to why she has not seen Dr. Dinh, but I do not feel that continued total disability would be warranted.  She could be returned with the above noted accommodations with the gradual return to work program until her visit with Dr. Dinh scheduled for 08/04/06.

Answer to CM questions:

1.       Does medical information support totally disabling condition 06/26/06 to present? No.  I as stated above, there is no current objective physical exam.  Objective findings are dated mid April.  She has had conservative care being fitted for lumbar surgery only and recent EMG from April shows mild bilateral L4 radiculopathy.  She could be returned as of 06/26/06 forward with gradual return to work with the above noted accommodations.

2.       Doctor has not addressed restrictions. Please make recommendations. It has been addressed in section above specifically. Please see for details.

3.       After your medical, is employee likely a

Date: 02/28/2008  2:51pm          User: aarcher                    Page:    43

Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA

======================================================================

------------------------------ NOTES ------------------------------

Event/Clmnt/Claim   Date        Tp Examiner
------------------  ----------  --  ---------------------------------

                    surgical candidate?  What is the employee's
                    condition refraining doctor from performing
                    surgery? The employee has not seen the surgeon
                    yet.  Previous exam findings from April
                    including discogram and MRIs may warrant
                    surgical repair.  EMG shows only mild L4
                    radiculopathy.  I did not have current office
                    exam showing severe functional disability.  Do
                    not show any findings that would prevent
                    surgeon from performing surgical procedure if
                    necessary.

                    Sincerely,


                    Mark Dirnberger, D.O.
                    Doctor of Osteopathic Medicine
                    in Neuromusculoskeletal Medicine
                    and Pain Management
                    TX License # L5305

                    MD/sm
                    D:  06/26/06
                    T:  06/27/06
                    JOB#:  89310
                     Created by (robertp) Robert Porter, M.D. (via
                    JurisWeb)
                    [Time Note Created : 2:46 PM ]
-------------------------------------------------------------------
A625007022-0001-01 06/28/2006 TP SYS
                    Subject: PA completed for Melissa Gardner
                    Addressee(s) Hamilton, Robin
                    Body:


                    Amanda Andrews
                    Disability Specialist I
                    Sedgwick Claims Management Services, Inc.
                    Phone: 312-356-1835
                    E-mail: ahandrews@SedgwickCMS.com
                    Attachments:
                    None
                    **** NOTE CREATED BY: amandrew ****
                    [Time Note Created : 9:15 AM ]
-------------------------------------------------------------------
A625007022-0001-01 06/28/2006 MD ROBINH
                    DDG: 354.2/sed/Without surgery, regular work:

R-0109

```
================================================================================
Claim Number : A625007022-0001-01                Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
================================================================================

-------------------------------- NOTES -----------------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------ ---------- -- ------------------------------------------------
```

14 days. pa supports an extension of 3 days
beyond entered on 5/04/06

RATIONALE: Based on PA review of entire file
there has been no new objective exam since mid
April. Total disability would not be warranted
at this time.  PA recommends ee can rtw four
hours per day with the accommodations of no
lifting greater than 10 pounds, a 5-minute
stretch break every 30 minutes, and no bending,
squatting, kneeling, and stooping activities.
After two-week period, it could be extended to
six hours per day and then two weeks following
extend back to eight hours per day with the
continued accommodations lifting and sitting
restrictions until her exam with Dr. Dinh on
08/04/06.  Beyond this timeframe, we will need
updated medical information to support
additional accommodations and restrictions.
will extend ba thru 6/28/06. f\up with dept and
ee with r\l's

MAP: approved

[Time Note Created : 2:08 PM ]
```
--------------------------------------------------------------------------------
A625007022-0001-01 06/28/2006 CN ROBINH
```
              tpc to AM\Michelle Johnson 217-757-2761

i spoke with Michelle, i asked for ee specific
job duties:
1. data entry and anwering phone
prolonged sitting

I advised our pa has recommended:
EE can return to work four hours per day with
the accommodations of no lifting greater than
10 pounds, a 5-minute stretch break every 30
minutes, and no bending, squatting, kneeling,
and stooping activities, i advised with current
JD these are n\a
After two-week period, it could be extended to
six hours per day and then two weeks following
extend back to eight hours per day with the
continued accommodations lifting and sitting
restrictions until her exam with Dr. Dinh on
08/04/06.

R-0110

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    45
================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
================================================================================


------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------- --------- -- ------------------------------------------

                          per michelle she can accom these r\l's
                          [Time Note Created : 2:09 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 06/28/2006 CM ROBINH
                          tpc to ee 309-256-9393
                          i lvm advising ee of pa outcome, there was no
                          new clinical avail to review. pa reviewed
                          entire file and made the recommendations: 4
                          hour work date, no lifting greater than 10
                          pounds, a 5-minute stretch break every 30
                          minutes, and no bending, squatting, kneeling,
                          and stooping activities.
                          After two-week period, it could be extended to
                          six hours per day and then two weeks following
                          extend back to eight hours per day with the
                          continued accommodations lifting and sitting
                          restrictions until her exam with Dr. Dinh on
                          08/04/06.

                          i advised i have spoken with Michelle AM and
                          she can accom these r\l's. i will ext ba thru
                          6/28 with expectation of rtw with r\l's on
                          6/29/06
                          [Time Note Created : 2:15 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 06/28/2006 BA ROBINH
                          BA 3/21/06 to 6.18.06 @ 100%
                          BA 6/19/06 to 6/28/06 @ 50%
                          NO OFFSETS
                          [Time Note Created : 2:25 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 06/28/2006 AP ROBINH
                          Action Plan:

                          Claim status Approved
                          Send notice to supv.
                          Send letter to ee & advise
                          confirm grtw\send notices


                          [Time Note Created : 2:29 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 06/28/2006 AP ROBINH
                          Approval letter mailed to EE
                          [Time Note Created : 2:32 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 06/28/2006 EM ROBINH
                          From:    Hamilton, Robin
```

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    46
==============================================================================
Claim Number : A625007022-0001-01                  Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
==============================================================================

------------------------------- NOTES ----------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
-------------------  ---------  --  ------------------------------------------
                              Sent:      Wednesday, June 28, 2006 2:44 PM
                              To:        'hf1383@att.com'
                              Subject:   IDSC Disability Approval Notice
                              Email-Claim-A625007022000101

                              [Time Note Created : 2:44 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 06/28/2006 CM KLATHROP
                              Tpc from ee with questions re: medical. Ee
                              wanted to know what info cm needs to ext ba as
                              she is not capable of rtw 6/29/06. Advised
                              updated clinical info detailing dx, severity in
                              condition and how that impairs ee from
                              performing sedentary job duties. Advised meds
                              rcvd was lacking and unsupportive of a total
                              db. Ee states she will md call in with and
                              updated.
                              [Time Note Created : 4:48 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 06/28/2006 MD TIFFANYT
                              Stacey w/Dr. (309) 676-0766 tpc and is faxing
                              med in;
                              [Time Note Created : 5:01 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 06/29/2006 CM FOWLIEFT
                              ee called to see if medical that was sent last
                              night was recvd. told her no record of such as
                              of yet.
                              [Time Note Created : 7:04 AM ]
------------------------------------------------------------------------------
A625007022-0001-01 06/29/2006 CM ROBINH
                              Ee called checking on fax, informed ee fax was
                              received and if cm needs additonal information
                              please contact her.
                              **** NOTE CREATED BY: larryft ****
                              [Time Note Created :10:03 AM ]
------------------------------------------------------------------------------
A625007022-0001-01 06/29/2006 MD ROBINH
                              recvd fax 6/28/06 doc id 1716830 from dr dinh

                              06/16/2006
                              JOHN K. MILLER, MD
                              7725 N KNOXVILLE AVENUE
                              PEORIA, IL 61614
                              RE: MELISSA GARDNER
                              DO...
                              De...
                              MELISSA GARDNER was seen as a hospital follow
```

REDACTED

Date: 02/28/2008  2:51pm              User: aarcher              Page:    47

```
==========================================================================
Claim Number : A625007022-0001-01                  Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
==========================================================================
```

-------------------------------- NOTES ------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------  --------  --  ----------------------------------------

up today with a chief complaint of low back
pain. She is a 32 y/o female who was seen by us
at Proctor Hospital in March 2006 for low back
pain. She had an MRI on
March 14, 2006, which revealed an L4-5 annular,
tear. She states that after prolonged walking
she develops burning in her back. She has since
been
through physical therapy as well as other
modalities, neuromuscular stimulator, and pain
medication. She has been treated by Dr. Bruce
Chien who performed a series of epidural
steroid injections. She had a
discogram, which was positive at the L4-5
level.
Past medical history included hypertension
during pregnancy. Review of systems is negative
other than stated above. Current medications
include Lyrica, Nabumetone bid, Tramadol qid,
and hydrocodone bid. She is allergic to
aspirin, which causes vomiting. Demerol causes
hives and blister at the injection site.
Compazine causes severe nervousness. She has
had a cholecystectomy, a T&A, a D&C for ectopic
pregnancy, and cubital tunnel surgery in 2001.
Family history is positive for degenerative
spine disease in her mother. She is married
with children and lives with her family. She
works as an MSS at
ATT. She is a college graduate. She has no
history of substance abuse. She smokes %2 pack
of cigarettes a day for about 16 years. She
averages 2-3
alcoholic beverages per year and 2-3
caffeinated beverages per day, On physical
examination, HEENT are within normal limits.
Neck is supple with no thyromegaly or bruit.
Lungs are clear in all lobes. Heartsounds are
regular with regular rate and rhythm. Abdomen
is soft and nontender. She denies any
urinary incontinence, bowel incontinence, blood
in the urine or the stool. On neurological
exam,
cranial nerves II-XII are grossly intact. She
has numbness in the fingers of both hands, She
has a
recent EMG of the upper and lower extremities.
This revealed bilateral mild to moderate

R-0113

=======================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client      : 1632    - AT&T Inc.
Account     : 16320730 - TC - Ameritech Services, Inc
Unit        : TC065    - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
=======================================================================

------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ ---------- -- -----------------------------------------

denervation of the ulnar nerve of the bilateral
elbows distally bilaterally. She also had mild
bilateral L4 radiculopathies in the lower
extremities. In the upper extremities her
strength is +5/5.
Sensation is intact to light touch and deep
tendon reflexes are +2 in bilateral biceps,
triceps and
brachioradialis. In the lower extremities, she
has +1 reflexes in bilateral patellas and
Achilles,
Sensation is intact. Strength is 515 in the
lower extremities. She had increased pain with
hyperextension as well as increased pain with
side bending to the left. We recommend she
continue with her pain regimen as prescribed by
Dr. Chien. We recommend a course of water
therapy. We will see her back in 4-6 weeks for
reevaluation.
Thank you for allowing us to participate in the
patient's care. If we can be of any further
assistance, please let us know.
Sincerely,
Cristin Rassi, A.P.N., C.N.S./Dzung H. Dinh,
M.D.
CR,dsh


OFFICE NOTE
MELISSA GARDNER
06/28/2006
Review of films and dictation of 6-16-06. Per
Or Dinh, he agrees with Cristin.'s assessment
and treatment
plan. Patient is to remain off work until
therapy completed and is seen in office on
8-4-06. Or Dinh wants
patient to have interdiscal blocks for further
diagnosis. Patient notified and agrees with
plan.

DDG: 354.2/sed/Without surgery, regular work:
14 days. medical supports extension of 20 days
beyond ddg entered on 5/23/06.

Curbside with ABUM

rationale:ee unable to perform essential

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:     49
=============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=============================================================================

-------------------------------- NOTES --------------------------------

Event/Clmnt/Claim   Date     Tp Examiner
------------------- ---------- -- ---------------------------------------
```

                    functions of sedentary job which includes
                    prolonged sitting, typing, and talking. Based
                    on results for EMG ee has This revealed
                    bilateral mild to moderate
                    denervation of the ulnar nerve of the bilateral
                    elbows distally bilaterally. She also had mild
                    bilateral L4 radiculopathies in the lower
                    extremities. MRi reveals annular tears which is
                    currently being treated conservatively and will
                    take longer to heal, prolonged sitting
                    aggrevates the sxs and disbles EE.  Will
                    approved to allow 4 wks of water therapy, based
                    on conversation with ABUM when this type of
                    therapy is presribed ee dx is very disabling.
                    Will f\up for dates of new treatment of discal
                    blocks and obtain therapy notes.

                    MAP: approved\obtain on going medical
                    [Time Note Created :10:19 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 06/29/2006 RP ROBINH
                    Scheduled allocation removed for pay code 101
                    date 06/30/2006 amount          309.75
                    [Time Note Created :10:45 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 06/29/2006 BA ROBINH
                    BA 3/21/06 to 6.18.06 @ 100%
                    BA 6/19/06 to 7/18/06 @ 50%
                    NO OFFSETS
                    [Time Note Created :10:47 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 06/29/2006 AP ROBINH
                    Action Plan:

                    Claim status Approved
                    Send notice to supv.
                    Send letter to ee & advise
                    Obtain water therapy eval and on going notes
                    Obtainn dates of discal blocks
                    Review medical as received
                    Address RTW and R&L's after EOB call
                    Verify rtw/send notice/close claim
                    [Time Note Created :10:49 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 06/29/2006 AP ROBINH
                    Approval letter mailed to EE
                    [Time Note Created :10:49 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 06/29/2006 CN ROBINH

R-0115

```
                    tpc to AM\Michelle Johnson 217-757-2761
                    i lvm advising medical has been recvd and ba
                    approved thru 7/18/06. f\up with mdo for
                    additional medical
                    [Time Note Created :10:50 AM ]
```
-------------------------------------------------------------------
A625007022-0001-01 06/29/2006 CM ROBINH
```
                    tpc to ee
                    i advised medical supports ext of ba
                    BA 3/21/06 to 6.18.06 @ 100%
                    BA 6/19/06 to 7/18/06 @ 50%
                    my plan of action:
                    1. i need name and phone number to water
                    therapy fac
                    2. initial date of tx
                    3. dates of discal blocks and who will perform

                    update medical will be needed by 7/14/06 to
                    make any ba beyond 7/18/06
                    [Time Note Created :10:51 AM ]
```
-------------------------------------------------------------------
A625007022-0001-01 06/29/2006 EM ROBINH
```
                    From:     Hamilton, Robin
                    Sent:     Thursday, June 29, 2006 10:55 AM
                    To:       'hf1383@att.com'
                    Subject:  IDSC Disability Approval Notice
                    Email-Claim-A625007022000101


                    [Time Note Created :10:55 AM ]
```
-------------------------------------------------------------------
A625007022-0001-01 06/29/2006 CM SYI
```
                    ee ci to verify why ee's pay drops to 50% after
                    6/19/06. ee thought she had 100% as she has 5
                    years of service. csr advised ee that under
                    ee's plan, she is only eligable for 13 weeks at
                    100% and 39 weeks at 50%. ee vu.
                    [Time Note Created :12:46 PM ]
```
-------------------------------------------------------------------
A625007022-0001-01 07/14/2006 CM DEBFT
```
                    9.24am csr contact ee
                    ee nov with Dr. Chien will be 07/18/2006.  ee
                    also schedule to have interdiscal shot begin
                    07/24/2006


                    ee has also been refer for water therapy @ IPMR
                    ee's therapist is Carissa
                    tele # 309-671-2950 ee has signed roi
                    ee had initial evaluation. ee lst appt w/b
                    07/18/06
                    ee will be attending twice week.


                    [Time Note Created : 9:24 AM ]
```
-------------------------------------------------------------------
A625007022-0001-01 07/14/2006 MD DEBFT
```
                    9.36am csr contacted IPMR/ institute of phyical
                    medicine and rehabilation  tele 309-671-2950
                    s/w Connie
```

R-0116

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:   51
==============================================================================
Claim Number : A625007022-0001-01                      Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==============================================================================


------------------------------ NOTES ----------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
-----------------  -------- -- -----------------------------------------------
                            requesting a written request be sent 309
                            692-8673
                            [Time Note Created : 9:39 AM ]
------------------------------------------------------------------------------
A625007022-0001-01 07/17/2006 CM TIFFANYT
                            EE tpc on BA extension; med rec'vd 07/13 DocID:
                            1783012; interdiscal shot is one shot per day
                            for four days starting 07/24, the shots are to
                            determine which disc needs to be operated on;
                            NOV 07/18; EE rqst c/b asap on extension either
                            way @ 309-256-9393; CSR set diary;
                            [Time Note Created : 4:00 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 07/17/2006 MD ROBINH
                            csr faxed request ipmr for medical 7/17/06
                            [Time Note Created : 6:26 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 07/17/2006 MD ROBINH
                            recvd fax 7/13/06 doc id 1783012 from dr Bruce
                            chien

                            copy of next appt card
                            tues 7/18/06 2:30 f\up with dr chien

                            procedure: L-3-4, L4-5, L5-S1 interdiscal
                            blocks cam

                            DDG: 354.2/sed/Without surgery, regular work:
                            14 days. Medical supports extension of 12 days
                            beyond ddg entered on 6/29/06.


                            Rationale: ee unable to perform essential
                            functions of sedentary job which includes
                            prolonged sitting, typing, and talking. Based
                            on results for EMG ee has this revealed
                            bilateral mild to moderate denervation of the
                            ulnar nerve of the bilateral elbows distally
                            bilaterally. She also had mild bilateral L4
                            radiculopathies in the lower extremities. MRI
                            reveals annular tears which is currently being
                            treated conservatively and will take longer to
                            heal, prolonged sitting aggravates the sxs and
                            disables EE.  EE  will see DR. Chien \end of
                            water therapy 7/18/06 and has referred ee to
                            start interdiscal block on 7/24/06 in a series
                            of 4. Will approve to allow discal blocks and
                            obtain therapy notes.
```

R-0117

```
Date: 02/28/2008  2:51pm            User: aarcher            Page:    52
================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
================================================================================


------------------------------- NOTES ------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------  --------   --  ------------------------------------------


                    MAP: approved\obtain on going medical
                    [Time Note Created :11:23 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 07/17/2006 AP ROBINH
                    Action Plan:

                    Claim status Approved
                    complete ba process
                    Send notice to supv.
                    Send letter to ee & advise
                    Obtain water therapy eval and on going notes
                    Obtainn all dates of discal blocks
                    Review medical as received
                    Address RTW and R&L's after EOB call
                    Verify rtw/send notice/close claim
                    [Time Note Created :11:23 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 07/18/2006 CM LWALLS
                    placed call to ee 309-256-9393, called ee to
                    inform of ba exp, and that cm will need med
                    from 7.18.06, ee stated that she will have med
                    submitted from ov today
                    [Time Note Created :11:19 AM ]
--------------------------------------------------------------------------------
A625007022-0001-01 07/18/2006 MD LTHOMPSO
                    connie from dr chein office called to adv med
                    would be available from dr dihn's office, fax #
                    3096765920
                    [Time Note Created :11:43 AM ]
--------------------------------------------------------------------------------
A625007022-0001-01 07/18/2006 MD LWALLS
                    faxed med req to mdo:

                    This message was sent via FAXCOM, a product
                    from Biscom Inc. http://www.biscom.com/

                                    -------Fax Transmission
                    Report-------

                    To:             Connie at 3096765920
                    Subject:        A625007022-0001-01 GARDNER,
                    MELISSA
                    Result:         The transmission was
                    successful.
                    Explanation:    All Pages Ok
                    Pages Sent:     2
                    Connect Time:   0 minutes, 59 seconds
```

Date: 02/28/2008  2:51pm          User: aarcher                    Page:    53
================================================================================
Claim Number : A625007022-0001-01                      Date Loss : 03/12/2006
Client      : 1632       - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA

-------------------------------- NOTES --------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------- --  ---------------------------------------------

                   Transmit Time:    07/18/2006 12:23
                   Transfer Rate:    14400
                   Status Code:      0000
                   Retry Count:      2
                   Job Id:           8227
                   Unique Id:
                   MEM2FX03_SMTPFaxQ_0607181647011514

                   [Time Note Created :11:47 AM ]
-------------------------------------------------------------------------------
A625007022-0001-01 07/19/2006 RP ROBINH
                   Scheduled allocation removed for pay code 101
                   date 07/21/2006 amount          206.50
                   [Time Note Created : 8:03 AM ]
-------------------------------------------------------------------------------
A625007022-0001-01 07/19/2006 BA ROBINH
                   BA 3/21/06 to 6.18.06 @ 100%
                   BA 6/19/06 to 7/30/06 @ 50%
                   NO OFFSETS
                   [Time Note Created : 8:04 AM ]
-------------------------------------------------------------------------------
A625007022-0001-01 07/19/2006 EM ROBINH

                   _____
                   From:    Hamilton, Robin
                   Sent:    Wednesday, July 19, 2006 8:12 AM
                   To:      'hf1383@att.com'
                   Subject: IDSC Disability Approval Notice
                   Email-Claim-A625007022000101

                   [Time Note Created : 8:11 AM ]
-------------------------------------------------------------------------------
A625007022-0001-01 07/19/2006 AP ROBINH
                   Action Plan:

                   Claim status Approved
                   Send notice to supv.
                   Send letter to ee & advise
                   Obtain pt notes and nov notes
                   Review medical as received
                   Address RTW and R&L's after EOB call
                   Verify rtw/send notice/close claim

                   [Time Note Created : 8:12 AM ]
-------------------------------------------------------------------------------
A625007022-0001-01 07/19/2006 AP ROBINH
                   ba letter sent to ee
                   [Time Note Created : 8:12 AM ]
-------------------------------------------------------------------------------

```
A625007022-0001-01 07/19/2006 CM ROBINH
                        tpc to ee
                        i spoke with ee and advised status and what is
                        needed to ext ba beyond 7/30
                        BA 3/21/06 to 6.18.06 @ 100%
                        BA 6/19/06 to 7/30/06 @ 50%
                        copies of discal injections notes starting
                        7/24.
                        dr chein. lov 7/18/06-given pre op penicillin
                        injection
                        we need copies pt notes
                        [Time Note Created : 8:14 AM ]
-----------------------------------------------------------------
A625007022-0001-01 07/19/2006 IV IVR
                        Initial claim information retrieved.
                        Information accessed on 07/19/2006 at 10:00:26
                        (Central Time).
                        [Time Note Created :10:00 AM ]
-----------------------------------------------------------------
A625007022-0001-01 07/19/2006 MD LCHAMBER
                        Norma called to report she received a note for
                        a Dr who is not a part of there network.  The
                        fax was addressed to Dr. Chin and Dr. Chin does
                        not work at there office.
                        [Time Note Created :10:03 AM ]
-----------------------------------------------------------------
A625007022-0001-01 07/24/2006 CM DAVIDSON
                        5 day call.  ee states that she will not rtw on
                        7/31/06.  she saw Dr. Chein today and had
                        injections in her back.  She will need back sx.
                         ee stated she will fu with MD tomorrow.
                        [Time Note Created : 4:35 PM ]
-----------------------------------------------------------------
A625007022-0001-01 07/24/2006 MD DAVIDSON
                        5 day call.  call to Dr. Chein ofc to inform of
                        needed med recs for 7/24/06.  ofc closed.
                        message option n/a.
                        [Time Note Created : 4:37 PM ]
-----------------------------------------------------------------
A625007022-0001-01 07/25/2006 MD EMILLER
                        tpc from Connie/IPMR 309/671-2950 stating that
                        cm will need to send a medical request to her
                        at 309/671-2975 for medical records. diary set
                        for cm
                        [Time Note Created : 3:20 PM ]
-----------------------------------------------------------------
A625007022-0001-01 07/26/2006 MD ROBINH
                        manually faxed request for all ovn from 7/18/06
                        thru present along with roi
                        to connnie 309-671-2950
                        [Time Note Created : 3:30 PM ]
-----------------------------------------------------------------
A625007022-0001-01 07/28/2006 MD ROBINH
                        call deferred med recvd 7/28/06 doc id 1870363
                        [Time Note Created : 5:06 PM ]
-----------------------------------------------------------------
A625007022-0001-01 07/28/2006 CM ROBINH
                        call deferred med recvd 7/28/06 doc id 1870363
                        [Time Note Created : 5:06 PM ]
-----------------------------------------------------------------
A625007022-0001-01 07/31/2006 MD ROBINH
                        RECVD FAX 7/28/06 DOC ID 1870363 FRM DR CHIEN
```

R-0120

=================================================================
Claim Number : A625007022-0001-01                  Date Loss : 03/12/2006
Client     : 1632       - AT&T Inc.
Account    : 16320730   - TC - Ameritech Services, Inc
Unit       : TC065      - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
=================================================================

----------------------------- NOTES ------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ --------- -- -----------------------------------

                    OPERATIVE REPORT 7/24/06

                    DIAGNOSIS: L4-L5 INTRADISKAL PAIN
                    OPERATION: L4-L5 INTRADISKAL BLOCK AND
                    DISKOGRAPHY

                    F\UP WITH DR DINH 2 WKS
                    DDG: 354.2/sed/Without surgery, regular work:
                    14 days. Medical supports extension of 7 days
                    beyond ddg entered on 7/17/06.


                    Rationale: ee unable to perform essential
                    functions of sedentary job which includes
                    prolonged sitting, typing, and talking. Based
                    on results for EMG ee has this revealed
                    bilateral mild to moderate denervation of the
                    ulnar nerve of the bilateral elbows distally
                    bilaterally. She also had mild bilateral L4
                    radiculopathies in the lower extremities. MRI
                    reveals annular tears which is currently being
                    treated conservatively and will take longer to
                    heal, prolonged sitting aggravates the sxs and
                    disables EE.  EE  will see DR. Chien \end of
                    water therapy 7/18/06 and has referred ee to
                    start interdiscal block on 7/24/06 in a series
                    of 4. Will approve to allow discal blocks and
                    obtain therapy notes.

                    MAP: approved\obtain on going medical
                    [Time Note Created : 2:37 PM ]
-----------------------------------------------------------------
A625007022-0001-01 07/31/2006 CM ROBINH
                    TPC TO EE 309-256-9393
                    LVM ASKING EE TO ADVISE ME OF NEXT INJECTION
                    DATE AND NEXT APPT AND LEAVE THE DRS NAME AND
                    PHONE NUMBER
                    BA 3/21/06 to 6.18.06 @ 100%
                    BA 6/19/06 to 8/6/06 @ 50%
                    [Time Note Created : 2:39 PM ]
-----------------------------------------------------------------
A625007022-0001-01 07/31/2006 BA ROBINH
                    BA 3/21/06 to 6.18.06 @ 100%
                    BA 6/19/06 to 8/6/06 @ 50%
                    NO OFFSETS
                    [Time Note Created : 2:42 PM ]
-----------------------------------------------------------------
A625007022-0001-01 07/31/2006 AP ROBINH

R-0121

Action Plan:

Claim status Approved
Send notice to supv.
Send letter to ee & advise
Obtain Remaining inj dates and eval date with
surgeon
Review medical as received
Address RTW and R&L's after EOB call
Verify rtw/send notice/close claim

[Time Note Created : 2:42 PM ]

-----------------------------------------------------------------
A625007022-0001-01 07/31/2006 AP ROBINH
ba letter sent to ee
[Time Note Created : 2:43 PM ]

-----------------------------------------------------------------
A625007022-0001-01 07/31/2006 EM ROBINH

| | |
|---|---|
| From: | Hamilton, Robin |
| Sent: | Monday, July 31, 2006 2:45 PM |
| To: | 'hf1383@att.com' |
| Subject: | IDSC Disability Approval Notice |

Email-Claim-A625007022000101
[Time Note Created : 2:45 PM ]

-----------------------------------------------------------------
A625007022-0001-01 07/31/2006 CM FELICIAJ
EE r/c from cm and said that injections are not
for pain, they were to numb individual disks so
that it could be determined which disks are
causing the pain. They have determined that
disks 4 and 5 need to be replaced.
[Time Note Created : 3:37 PM ]

-----------------------------------------------------------------
A625007022-0001-01 08/02/2006 MD ROBINH
Per medical history check no medical received
to date
[Time Note Created : 1:58 PM ]

-----------------------------------------------------------------
A625007022-0001-01 08/02/2006 MD ROBINH
tpc to dr chien 309-691-8973
i spoke with Tina i asked if sx was scheduled?
she put me on hold to pull file.Per Tina she
spoke with Dr Chien and he was in the
background speaking, he is the pain mgmt
provider hefeels ee needs the surgery but it
will dr dihn the neurosurgeon doing the
surgery.

tpc to dr dihn 309-676-0766--i spoke with
Carrie iasked her to confirm if surgery has
been scheduled she checked book and advised not
they will discuss on nov 8/4/06
[Time Note Created : 2:00 PM ]

-----------------------------------------------------------------
A625007022-0001-01 08/02/2006 CM ROBINH
tpc to ee
i asked the ee to please call me back with
surgery.
ee stated ok and she is very very scared. we
talked for a few minutes about the outcome and
long term implications. she felt a little

R-0122

```
Date: 02/28/2008  2:51pm          User: aarcher            Page:    57
==================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client     : 1632       - AT&T Inc.
Account    : 16320730   - TC - Ameritech Services, Inc
Unit       : TC065      - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA


------------------------- NOTES ------------------------------

Event/Clmnt/Claim   Date     Tp Examiner
------------------- --------- -- ------------------------------
                    better.
                    [Time Note Created : 2:07 PM ]
--------------------------------------------------------------
A625007022-0001-01 08/04/2006 CM NINAFT
                    cm phoned ee regarding eob 8/6/06,address ertw
                    8/74/06 and if surgery was rescheduled ee will
                    not rtw 8/7/06 surgery have not been
                    rescheduled at this time due to ee insurance
                    will not cover the procedure dr dinh will be
                    trying to do something temprarory to decrease
                    the pain in her back, dr dinh will be trying to
                    get ee approved through fda it could take up to
                    a year before she will know anything ee will
                    f/u with cm and dr office on 8/7/06
                    [Time Note Created : 1:27 PM ]
--------------------------------------------------------------
A625007022-0001-01 08/04/2006 MD NINAFT
                    cm phoned dr office to obtain additional med
                    information regarding surgery placed on hold
                    for more than 5mins call disconnected
                    [Time Note Created : 1:28 PM ]
--------------------------------------------------------------
A625007022-0001-01 08/07/2006 MD ROBINH
                    Per medical history check no medical received
                    to date
                    [Time Note Created : 6:04 PM ]
--------------------------------------------------------------
A625007022-0001-01 08/07/2006 CM ROBINH
                    tpc to ee
                    i lvm i advised no medical has been recvd to
                    support an ext. since surgery has been denied
                    by insurance she will need to have her dr fax
                    over medical to support TDD from 8/7 and
                    beyond. i advised her to contact her CN and
                    discuss rtw options.

                    currently bu 8/7 thru rtw ee has 180 days to
                    appeal
                    [Time Note Created : 6:07 PM ]
--------------------------------------------------------------
A625007022-0001-01 08/07/2006 BA ROBINH
                    BA 3/21/06 to 6.18.06 @ 100%
                    BA 6/19/06 to 8/6/06 @ 50%
                    BU 8/7/06 thru rtw\failure to submit on going
                    medical
                    NO OFFSETS
                    [Time Note Created : 6:07 PM ]
--------------------------------------------------------------
A625007022-0001-01 08/07/2006 AP ROBINH
```

Claim status - terminated-failure to submit on
qing medical
b\u 8/7-rtw
void pay if appropriate
send denial notification to CN
compose denial letter
monitor claim for appeal-30 days
close claim
[Time Note Created : 6:08 PM ]

-------------------------------------------------------------
A625007022-0001-01 08/07/2006 EM ROBINH

From:       Hamilton, Robin
Sent:       Monday, August 07, 2006 6:10 PM
To:         'hf1383@att.com'
Subject:    IDSC Disability Denial Notice
E-Mail-Claim-A625007022000101

[Time Note Created : 6:10 PM ]

-------------------------------------------------------------
A625007022-0001-01 08/08/2006 CM PANDERSO
EE called. CSR advised BU 8/7/06 thru
rtw\failure to submit on going medical. EE
claims MD's last medical says EE to be off work
3 months. advised EE that CM requires frequent
updates from LOV to advised of current status.
EE stated her LOV 8/4/06 and the nurse takes a
week to get the notes transcribed. advised that
until the notes are sent over, claim will
remain BU

[Time Note Created :12:55 PM ]

-------------------------------------------------------------
A625007022-0001-01 08/09/2006 CM FELICIAJ
EE called saying she got job abandonment letter
and is frustrated because she will have mr
coming in but will not always have an appt to
cover need for updated mr. She asks that cm
call asap.
[Time Note Created : 2:14 PM ]

-------------------------------------------------------------
A625007022-0001-01 08/10/2006 CM ROBINH
late entry

i spoke with ee late last night 8/9/06, we
discussed denial. i advised i have followed the
DB process and did every thing i could to
obtain the medical needed for review for
possible ext of ba, i advised even if it was
here it no guarantee it would support an ext.
we are waiting for her lov 8/4.
her dr has advised the surgery she needs is
experimental and her insur will not cover and
FDA will approve sometime next year. she needed
to know what she needed to do to remain off
work until the procedure is approved. i advise
it is our policy to obtain clinical from every
visit to determine total disability. she would
still have to see her dr every 1-2 months so we
can have objective clinical that would support
a DB. we discussed the LTD portion and SSDI. ee
felt trapped she doesn't know what to do. i

==============================================================================
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==============================================================================


--------------------------- NOTES ------------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------  ---------  -- --------------------------------------------

                    advise the decision is hers i can provide her
                    with benefit info, but the decision is hers.
                    she was upset about the abandment letter, i
                    advised it the dept policy to send once the
                    claim is denied.
                    i advised i will compose the denial letter once
                    she recvd it she can appeal. any medical recvd
                    will be reviewed to determine if the denial
                    period can be overturned. as for the procedure
                    she will need to discuss at length with her dr
                    as to whether she can rtw while she waits or
                    remain off and submit medical to support TDD.
                    ee was advised she has 180 days to appeal and
                    she vu to all.
                    [Time Note Created : 9:55 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 08/10/2006 MD ROBINH
                    Per medical history check no medical received
                    to date

                    [Time Note Created :10:01 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 08/10/2006 EX ROBINH
                    Denial letter composed and forwarded to BUM
                    [Time Note Created :10:08 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 08/10/2006 SR TVLASIC
                    Claim denied for no addtl med.  BUM agrees.
                    Denial letter reviewed and mailed to EE
                    certified and regular mail.
                    [Time Note Created :11:32 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 08/11/2006 CM LBEDINGE
                    11:44am EE, (309) 256-9393, cld to ck on
                    receipt of fax from her provider which would
                    have been faxed yesterday. Advised EE a fax is
                    noted as received on 8/10/06 which is currently
                    in the review process.
                    [Time Note Created :11:46 AM ]
-----------------------------------------------------------------------------
A625007022-0001-01 08/14/2006 CM TIFFANYT
                    EE tpc because she needs ext decision; CSR
                    informed med rec'vd 08/10 and decision should
                    be made by 08/16; EE  stated her phone is
                    turned off and if she doesn't RTW tomorrow it
                    is considered job abondonment; CSR stated she
                    will email CM; EE will c/b @ 4pm to check
                    status again;

```
Date: 02/28/2008  2:51pm           User: aarcher                    Page:    60
================================================================================
Claim Number : A625007022-0001-01                          Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
================================================================================


------------------------------- NOTES ------------------------------------------

Event/Clmnt/Claim   Date       Tp Examiner
------------------  ---------- -- -----------------------------------------------

                    [Time Note Created : 2:15 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/14/2006 CM PANDERSO
                    4:28 EE called asking to speak with CM only.
                    CSR called CM...trx to CM
                    [Time Note Created : 4:29 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/14/2006 MD ROBINH
                    mini review of medical 8/10 1950926
                    ext 23 days, set up doc to doc
                    obtain nov
                    [Time Note Created : 4:39 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/14/2006 MD ROBINH
                    recvd fax 8/10/06 doc id 1950926 from dr dihn

                    08/04/2006
                    JOHN K. MILLER, MD
                    7725 N KNOXVILLE AVENUE
                    PEORIA, IL 61614
                    RE: MELISSA GARDNER
                    DO          REDACTED
                    De
                    I had the pleasure of seeing MELISSA GARDNER
                    for follow up today
                    regarding her chronic back pain. Her pain is
                    constant and rated 9/10 with some
                    improvement while in the water. The pain
                    returns after 30 minutes of being
                    out of the pool therapy. Currently she is
                    taking Vicodin ES, Relafen, Lyrica
                    and Iramadol.
                    She had an intradiscal block by Dr. Chien on
                    July 24 with pain relief for 15 minutes after
                    L4-5 block.
                    At this point it appears that her pain may be
                    coming from the L4-5 disc space however her
                    insurance company will not approve artificial
                    disc replacement
                    surgery at this point. We are a clinical trial
                    center for Aesculap lumbarartificial disc trial
                    starting next year. In the meantime I will
                    contact Dr. Chien
                    to see if he can provide her some interim pain
                    management with either a DCS trial or
                    intrathecal pain pump.I greatly appreciate the
                    opportunity to be involved in the care of this
                    patient. If
```

Date: 02/28/2008  2:51pm              User: aarcher                    Page:    61
================================================================================
Claim Number : A625007022-0001-01                          Date Loss : 03/12/2006
Client      : 1632       - AT&T Inc.
Account     : 16320730   - TC - Ameritech Services, Inc
Unit        : TC065      - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
================================================================================

--------------------------------- NOTES ----------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------  --------- -- -----------------------------------------------
                             I can be of any further assistance, please let
                             me know.
                             Sincerely,
                             Dzung H. Dinh, M.D., M.B.A.
                             DHD:dsh
                             -------------------------------------------------
                             ----
                             recvd fax 8/10/09 doc id 1945121 from dr chien

                             Bruce B. Chien M.D.
                             Diplomate, American Boards of Anesthesiology,
                             Internal Medicine and Pain Medicine
                             August 9, 2006
                             Robin Hamilton
                             AT&T Disability Center
                             In re: Melissa Gardner

                             Robin,
                             My understanding of Melissa Gardner's
                             disability centers on the need for disc
                             replacement. The
                             underlying condition will NOT change in a year,
                             a month or a week. Two week visits are
                             completely abusive and unnecessary to confirm
                             disability.
                             I understand that you will do what AT&T policy
                             requires you to do. Just beware that this could
                             be construed as abusive.
                             Regards,
                             Bruce B. Chien, M.D.
                             By fax to 866-224-4627


                             DDG: 354.2/sed/Without surgery, regular work:
                             14 days. Medical supports extension of 23 days
                             beyond ddg entered on 7/31/06

                             Rationale: ee unable to perform essential
                             functions of sedentary job which includes
                             prolonged sitting, typing, and talking. Based
                             on results for EMG ee has this revealed
                             bilateral mild to moderate denervation of the
                             ulnar nerve of the bilateral elbows distally
                             bilaterally. She also had mild bilateral L4
                             radiculopathies in the lower extremities. MRI
                             reveals annular tears which is currently being
                             treated conservatively and will take longer to

R-0127

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    62
===================================================================================
Claim Number : A625007022-0001-01                      Date Loss : 03/12/2006
Client     : 1632       - AT&T Inc.
Account    : 16320730   - TC - Ameritech Services, Inc
Unit       : TC065      - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
===================================================================================
```

--------------------------------- NOTES -----------------------------------

```
Event/Clmnt/Claim   Date      Tp Examiner
----------------   ---------  -- ----------------------------------------------
```

                        heal, prolonged sitting aggravates the sxs and
                        disables EE.  Water therapy has failed to
                        provide long term relief of pain. Surgeon wants
                        to surgically implant artificial disc which ee
                        insurance company does not approve. Next step
                        is to provide her some interim pain management
                        with either a DCS trial or intrathecal pain
                        pump. EE will contact dr for next appt, CM is
                        unable to extend benefits until procedure can
                        be approved. Cm will set up doc to doc with dr
                        dinh to determine ertw w\wo r\l's.

                        MAP: approved\refer to pa\poss ime
                        [Time Note Created : 9:39 PM ]
--------------------------------------------------------------------------
A625007022-0001-01 08/14/2006 BA ROBINH
                        BA 3/21/06 to 6.18.06 @ 100%
                        BA 6/19/06 to 8/29/06 @ 50%
                        NO OFFSETS
                        [Time Note Created : 9:40 PM ]
--------------------------------------------------------------------------
A625007022-0001-01 08/14/2006 AP ROBINH
                        Action Plan:

                        Claim status Approved
                        Send notice to supv.
                        Send letter to ee & advise
                        set up doc to dco \ poss IME
                        obtain next appt date with dr chien or dinh
                        Review medical as received
                        Address RTW and R&L's after EOB call
                        Verify rtw/send notice/close claim

                        [Time Note Created : 9:41 PM ]
--------------------------------------------------------------------------
A625007022-0001-01 08/14/2006 CM ROBINH
                        i spoke with ee i asked when next appt was with
                        either dr, she stated she did not have one
                        planned. i advised i could not extend her db
                        thru one year or when hte procedure is
                        approved. i explained that once she goes to LTD
                        she will separated from the company. and her
                        benefits will be 50% and she will need to apply
                        for SSDI. ee stted she has been rpovided so
                        much info she is hesitant to believe me. i
                        advised her to contact her HR or union rep for
                        a copy of her benefits info.
                        i advised i will approve benefits for 23 days
```

R-0128

=========================================================================
Claim Number : A625007022-0001-01                     Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=========================================================================


------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ ---------- -- ------------------------------------------

                              to allow tome for mr to set up a doc to doc
                              with her dr and our pa to discuss ongoing
                              treatment since procedure is not covered. i
                              encouraged her to make an appt as he will have
                              to provide ongoing medical to support any
                              extensions. i will address with PA
                              recommendations for improvement and potential
                              rtw w\wo r\l's.
                              ee vu
                              ba 3/21/06-6/18/06 @ 100%
                              ba 6/19/06-8/29/06 @ 50%
                              mdd 8/25/06
                              [Time Note Created : 9:47 PM ]
--------------------------------------------------------------------------
A625007022-0001-01 08/15/2006 AP ROBINH
                              ba letter sent to ee
                              [Time Note Created :10:58 AM ]
--------------------------------------------------------------------------
A625007022-0001-01 08/15/2006 CN KLATHROP
                              Approval notice sent
                              To 'hf1383@att.com'
                              letter-23108-2006855569-1.doc
                              Melissa Gardner   3:27 PM 69 KB
                              [Time Note Created : 3:27 PM ]
--------------------------------------------------------------------------
A625007022-0001-01 08/24/2006 MD ROBINH
                              tpc to dr dihn 309-676-0766--
                              i spoke with Norma i asked what would be a good
                              date and time for our pa
                              309-676-0766 dr monday 9:00 -3:00
                              [Time Note Created :12:03 PM ]
--------------------------------------------------------------------------
A625007022-0001-01 08/24/2006 TP ROBINH
                              this is a 33yr old female who works as a
                              Marketing support specialist whose job is
                              sedentary and requires prolonged sitting,
                              repetitive hand and arm movement and prolonged
                              typing.

                              FDA 3/13... FDD 3/20 ba thru 8/29/06


                              all conservative methods have been exhausted,
                              doctor notes at this point it appears that her
                              pain may be coming from the L4-5 disc space
                              however her insurance company will not approve
                              artificial disc replacement
                              surgery at this point. We are a clinical trial

R-0129

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    64
================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client      : 1632       - AT&T Inc.
Account     : 16320730   - TC - Ameritech Services, Inc
Unit        : TC065      - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
================================================================================


------------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------  --------  -- -----------------------------------------------

                             center for Aesculap lumbar artificial disc
                             trial starting next year

                             CURRENT DOC ID 1950926

                             DR. DIHN IS AVAILABLE 8/28/06 9:00 TO 3:00PM
                             309-676-0766

                             QUESTIONS TO PA
                             1. Please review file and discuss with Dr Dihn
                             if ee has capacity to return to her sed job
                             duties with or without restrictions and
                             duration of said restrictions and limitations.
                             dept can accom gradual hours, frequent
                             sit\stand\change positions, order an ergo
                             evaluation upon return to work.

                             2. What would be MMI for ee at this point
                             without surgery?

                             3. What is going to be on going treatment plan
                             without surgery?

                             4. is ee totally disabled from 8/30 thru
                             present?

                             5. poss IME
                             [Time Note Created :12:11 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/24/2006 CM ROBINH
                             tpc to ee
                             i advised as prev discussed i have set up doc
                             to doc
                             i advised her of the issues i needed to discuss
                             nov dr chein 8/24/06 i advised ee to discuss
                             ertw, r\l's.
                             [Time Note Created :12:25 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/25/2006 TP MDEBUS
                             From:    DeBus, Mark P.
                             Sent:    Friday, August 25, 2006 1:52 PM
                             To:      ATT Chicago PA Request
                             Subject: PA Review - MELISSA GARDNER
                             -A625007022-0001-01

                             << File: letter-23358-2006848996-1.doc >>
                             [Time Note Created : 1:53 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/28/2006 MD MDEBUS
```

R-0130

Received DocID:  2034124  on 8/25/06.  FAX
includes cover letter and summary report from
Bruce Chien, MD on 8/24/06.

Medical Summary:

Melissa Gardner was in the office for a
re-evaluation. Her situation is unchanged: she
has a known freely ruptured L4 disc noted at
L45 discogram 4/230/06, and noted by myself
fluoroscopically on diagnostic L5 and then L4
disc injection. She hasn't improved much at
all.  Walking is limited to about 100 feet
(from the car to the parking lot). She sleeps
on her side,
drives about 15 minutes and at that point has
pain paraspinally on the left at about the
iliac crest.
Medications: Vicodin 7.51500 twice per day
Allergies: Demerol, ASA, Compazine.
SH: wants to smoke
FH: Everyone in the family has back pain.
ROS: Otherwise negative.
Physical Exam: Her gait is antalgic. She
minimizes left sided weight bearing time. BP is
130/68,
HR 70 RR 16. She's 68 and 215 pounds. PERRLA Fs
are afull, fundi are benign. Chest is clear,
Cv is unremarkable. Liver is 8 cms, Spleen is
nonpalpable. SI jiotns are benign. SLR is
positive
on the left at 45 degrees with left paraspinal
pain at the level of the iliac crest. The right
side at 45
degres provokes pain in the left buttock.
Sensation is normal. DTRs are 2+
Impression: Unchanged. She's disabled L4
discogenic pain (left paraspinal) L5 discogenic
pain
(left buttock).
I've spent a good bit of time discussing why we
don't' want to do a spinal pump implant as a
"temporary" maneuver, and that the DCS is not
appropriate for her distribution of pain.
Chronic
maintenance narcotics only will lead to
escalation. She understands this and is
complying with
two Vicodins per day. awaiting the clinical
realease of the Charite disc.
- Bruce B. Chien, M.D.


DDG: 354.2/sed/Without surgery, regular work:
14 days. Severity establishment of this medical
pending PA review.

Rationale: claim with PA for review.  Rationale
pending PA review

MAP: claim with PA for review.  Rationale
pending PA review

Date: 02/28/2008  2:51pm          User: aarcher                    Page:    66
================================================================================
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
================================================================================


------------------------------- NOTES ------------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------  --------  --  ----------------------------------------------

                              [Time Note Created :11:30 AM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/30/2006 TP MDEBUS
                              PA review did not occur on 8/28/06.  Will call
                              Dr. Dinh back to reschedule for 8/31/06 or
                              9/1/06.
                              [Time Note Created :11:00 AM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/30/2006 MD MDEBUS
                              TCT Dr. Dinh's office 309-676-0766 and spoke
                              with Margie.  Left message with her for Dr.
                              Dinh's nurse to schedule a PA review anytime
                              9am-5pm CST on 8/31/06 or 9/1/06.  Awaiting
                              call back by 3:00pm today.
                              [Time Note Created :11:01 AM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/30/2006 MD JATHOMAS
                              Stacey from Dr. Dinh's ofc rtc to cm. asked for
                              md's availability to speak w/pa. Stacey states
                              md is available on Friday, Sept.1 @ 3pm(cst).
                              md can be reached @ tele#309-676-0766.
                              [Time Note Created :11:25 AM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/30/2006 TP MDEBUS
                              From:      DeBus, Mark P.
                              Sent:      Wednesday, August 30, 2006 3:17 PM
                              To:        ATT Chicago PA Request
                              Subject:   PA review request for 9/1/06 @ 3pm
                              CST- MELISSA GARDNER - A625007022-0001-01

                                 << File: letter-23358-2006848996-1.doc >>
                              [Time Note Created : 3:20 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/30/2006 RP ROBINH
                              Scheduled allocation removed for pay code 101
                              date 09/01/2006 amount            206.50
                              **** NOTE CREATED BY: mdebus ****
                              [Time Note Created : 3:26 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/30/2006 MD MDEBUS
                              DDG: 354.2/sed/Without surgery, regular work:
                              14 days. Available medical supports an
                              extension of 7 days to allow for PA review.
                              Total of 131 days (117 days beyond the BP
                              listed max).

                              Rationale: Appropriate to the approval to allow
                              for PA review, which should have been completed

R-0132

```
Date: 02/28/2008  2:51pm           User: aarcher              Page:   67
===============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
===============================================================================

------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------  --  --------------------------------------------

                             on 8/28/06.  Claim with PA for review.

                             MAP: claim with PA for review.  Contact ee/supv
                             regarding the decision.
                             [Time Note Created : 3:34 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 08/30/2006 CM MDEBUS
                             tct ee at home.  Informed her of the extension
                             of BA to 9/5/06 to allow for PA review.
                             Informed her that she will be notified when a
                             decision is made.  ee vu

                             EE reports that she is awaiting the approval by
                             her insurance for additional surgery (she did
                             not specify).  She was upset today as her
                             grandmother died last night.
                             [Time Note Created : 3:37 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 08/30/2006 CN MDEBUS
                             From:     DeBus, Mark P.
                             Sent:     Wednesday, August 30, 2006 3:41 PM
                             To:       'hf1383@att.com'
                             Subject:  Benefits approval notice - MELISSA
                             GARDNER - A625007022-0001-01

                             << File: letter-23108-2006856413-1.doc >>
                             [Time Note Created : 3:41 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 08/30/2006 BA MDEBUS
                             BA 3/21/06 to 6/18/06 @ 100%
                             BA 6/19/06 to 9/5/06 @ 50%
                             NO OFFSETS
                             [Time Note Created : 3:44 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 08/30/2006 AP MDEBUS
                             claim status:  approved 3/20/06 - 9/5/06
                             sent BA letter to ee:  3/20/06 - 9/5/06
                             PA review on 9/1/06
                             continue to address RTW/GRTW at all contacts
                             with ee/Provider
                             [Time Note Created : 3:45 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 08/31/2006 TP AMANDREW
                             PA referral rcv'd, forwarded to PA for Med
                             contact
                             [Time Note Created : 7:53 AM ]
-------------------------------------------------------------------------------
A625007022-0001-01 08/31/2006 CM ROBINH
                             call deferred file to pa
```

```
Date: 02/28/2008  2:51pm          User: aarcher          Page:    68
================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
================================================================================


------------------------- NOTES -------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------  --------  --  -------

                   [Time Note Created : 1:04 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/31/2006 MD ROBINH
                   call deferred file to pa
                   [Time Note Created : 1:04 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/31/2006 EX ROBINH
                   pa review has not occurred
                   [Time Note Created : 4:14 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 09/05/2006 MD MWOELFLE
                   Jennifer from Dr. Dihn 309 676 0766 was calling
                   cm back, cm not available, Jennifer advised CM
                   to call her back when available.
                   [Time Note Created : 8:27 AM ]
--------------------------------------------------------------------------------
A625007022-    -   09/05/2006 SR HREILLY
                   1 5-Month Review                      STD Case Manager

: Robin
                   Hamilton

                   Claim Number:  A625007022-0001-01
                   Employee Name:   MELISSA GARDNER
                   NCS Date:  02/12/2001 -
                   Date of Birth:  REDACTED
                   Job Title:  MARKETING SUPPO
                   AT&T Company Code   TC
                   FDA:  03/11/2006
                   BA Dates:  From   03/20/2006  Thru  08/29/2006
                   SS#   REDACTED
                   Initial Job aid prepared by the SD CM -
                   Review and Update the preparation for the 5 -8
                   Month Review
                   Diagnosis and Current Condition *(See Example):
                     EMG ee has this revealed bilateral mild to
                   moderate denervation of the ulnar nerve of the
                   bilateral elbows distally bilaterally. She also
                   had mild bilateral L4 radiculopathies in the
                   lower extremities. MRI reveals annular tears

                   Treatment Plan:  water therapy\meds\recommended
                   artificial disc replacement that is not covered
                   by insurance
                   Physical and/or Cognitive Demands of the job:**
                   sed
                   Describe the employee's functional and ADL
                   abilities:  no prolonged sitting, typing

                   Current R/L's with duration:  no work
```

R-0134

===============================================================================
```
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client    : 1632       - AT&T Inc.
Account   : 16320730   - TC - Ameritech Services, Inc
Unit      : TC065      - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
```
===============================================================================

```
-------------------------- NOTES --------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-------------------------  ----------- -- -------------------------------------
```

```
                      ERTW Date for Transition Work:  unk
                      ERTW Date for Full Duty:  unk
                      Was the TWP addressed?  no
                      Was there an Escalation; and what was the
                      result?  no
                      Has there been a PA review; and what was the
                      result?  no
                      Has there been an IME, and what was the result?
                       no
                      Is this a relapse; and why did the RTW fail?
                      no
                      Is there a ROI on file?  yes
                      What is the DDG; and where is the employee
                      within the DDG? ***  354.2 28/54 177 days paid
                      Additional Information Specific to the 8-Month
                      Review
                      What are the non-medical barriers to RTW?  no
                      Are there any contact names/telephone numbers
                      other than the employee?   no
                      Are there pertinent medical records in the
                      file?  yes
                      What is the SSN status?  no

                      Action Plan:
                      Await ongoing medical to see if EE will have
                      surgery at this time ee unable to sit/stand for
                      any period of time on narcotic pain killers and
                      outcome of PA review

                      [Time Note Created : 1:40 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 09/05/2006 CM LTHOMPSO
                      ee ask for status / csr adv of PA review
                      [Time Note Created : 1:52 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 09/05/2006 TP ROBERTP

                      Physician Advisor Referral

                      Date file reviewed:      9/1/06 3:00 CDT

                      Treatment Provider name(s):      Dr. Dinh

                      Date & time calls made to TP(s):  On 9/1/06 at
                      3:00 CDT and spoke with Margie who reported
                      that the Dr. was not available and a message
                      was left about this file review with a call
```

========================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
========================================================================

------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-------------------- ---------- -- -----------------------------------------

                    back number provided.

                    Was TP contact successful?        No

                    If yes, name of contact:  N/A

                    Summary of TP medical documentation:

                    S:       The patient is a 33 year-old female
                    marketing support specialist involved with
                    sedentary work activity and has history of some
                    low back pain issues.

                    O:       Per clinic note in Juris on 8/24/06,
                    discogram in April of this year reportedly
                    revealed an L4 disc rupture.  The patient is on
                    medication management for pain. Blood pressure
                    130/68, HR 70, R 16, and weight 215 pounds.
                    Gait was antalgic. SLR is positive on the left
                    at 45 degrees with left paraspinal pain at the
                    level of the iliac crest. The right side at 45
                    degrees provokes pain in the left buttock, and
                    otherwise physical exam was unremarkable and no
                    other detailed positive objective findings were
                    listed.

                    A:       L4-5 discogenic pain

                    Complications/co-morbidities
                    impacting recovery/functionality: None.

                    P:                        Per clinic note in Juris on 8/24
/06, we
                    don't' want to do a spinal pump implant as a
                    "temporary" maneuver, and that the DCS is not
                    appropriate for her distribution of pain.
                    Chronic maintenance narcotics only will lead to
                    escalation. She understands this and is
                    complying with two Vicodin per day, and
                    awaiting the clinical release of the Charite
                    disc.


                    TP ERTW Date:    None listed

                    Physician Advisor Review:

                    Assessment of functionality:      Based on the
                    available medical documentation/information,

=================================================================================
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=================================================================================

------------------------------ NOTES ---------------------------------

Event/Clmnt/Claim   Date        Tp Examiner
------------------- ----------  -- -----------------------------------------

              the patient should have returned back to her
              sedentary work activity as of 9/6/06.

              Reasonable and specific restrictions,
              including duration and
              anticipated medical milestones:    None.

              PA's ERTW
              (full-duty/restricted as appropriate): 9/6/06
              full-duty

              PA rationale:                    While the patient may have
              had some problems with chronic low back
              pain/discogenic pain, there is no indication
              from the available clinical
              documentation/information of any significant or
              severe positive objective findings or
              significant/severe functional limitations
              occurring that would have prevented a return
              back to her sedentary work activity by 9/6/06.
              There is also no mention as to why continued
              time off from work was still required, and
              there is also no clearly detailed treatment
              plan.  Subjective pain without significant
              positive objective findings does not justify
              continued time off from work.  She could have
              still received her medical treatment/follow-up
              for her condition as an outpatient without
              requiring continued time off from work as well.
              She should also be proactive/compliant in doing
              her own home exercise program daily for long
              term maintenance and conditioning as well.  As
              a result, based on the available medical
              documentation/information, the patient should
              have returned back to her sedentary work
              activity without restrictions as of 9/6/06.

              Answers to CM questions:

              1.      Please review file and discuss with Dr. Dihn
              if employee has capacity to return to her
              sedentary job duties with or without
              restrictions?

              No r/l's are required.

              2.      What would be the duration of said
              restrictions and limitations?

```
Date: 02/28/2008  2:51pm        User: aarcher              Page:    72
=======================================================================
Claim Number : A625007022-0001-01            Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
=======================================================================

---------------------------- NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------- ---------- -- --------------------------------------
```

N/A.  Dept can accommodate gradual hours,
frequent sit\stand\change positions, order an
ergo evaluation upon return to work.

3.        What would be MMI for employee at this point
without surgery?

Unknown based on the available
documentation/information.

4.        What is going to be the ongoing treatment
plan without surgery?

Unknown based on the available
documentation/information.

5.        Is employee totally disabled from 8/30 thru
present?

No.

6.        Possible IME?

No.


Sankar Pemmaraju, D.O.
Board Certified, Physical Medicine and
Rehabilitation


 Created by (robertp) Robert Porter, M.D. (via
JurisWeb)
[Time Note Created : 3:19 PM ]
-----------------------------------------------------------------------
A625007022-0001-01 09/05/2006 TP SYS
                   Subject: PA completed for Melissa Gardner
                   Addressee(s) Hamilton, Robin
                   Body:

                   Amanda Andrews
                   Disability Specialist I
                   Sedgwick Claims Management Services, Inc.
                   Phone: 312-356-1835
                   E-mail: ahandrews@SedgwickCMS.com
                   Attachments:
```

```
Date: 02/28/2008  2:51pm          User: aarcher               Page:    73
=================================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=================================================================================


-------------------------------- NOTES --------------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------  ----------  --  --------------------------------------------

                   None
                   **** NOTE CREATED BY: amandrew ****
                   [Time Note Created : 3:46 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 09/06/2006 MD ROBINH
                   PA rationale:  While the patient may have had
                   some problems with chronic low back
                   pain/discogenic pain, there is no indication
                   from the available clinical
                   documentation/information of any significant or
                   severe positive objective findings or
                   significant/severe functional limitations
                   occurring that would have prevented a return
                   back to her sedentary work activity by 9/6/06.
                   There is also no mention as to why continued
                   time off from work was still required, and
                   there is also no clearly detailed treatment
                   plan.  Subjective pain without significant
                   positive objective findings does not justify
                   continued time off from work.  She could have
                   still received her medical treatment/follow-up
                   for her condition as an outpatient without
                   requiring continued time off from work as well.
                   She should also be proactive/compliant in doing
                   her own home exercise program daily for long
                   term maintenance and conditioning as well.  As
                   a result, based on the available medical
                   documentation information, the patient should
                   have returned back to her sedentary work
                   activity without restrictions as of 9/6/06.


                   PA's ERTW
                   (full-duty/restricted as appropriate): 9/6/06
                   full-duty

                   DDG: 354.2/sed/Without surgery, regular work:
                   14 days.
                   PER PA MEDICAL DOES NOT SUPPORT


                   MAP: DENIED
                   [Time Note Created : 4:38 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 09/06/2006 CM ROBINH
                   TPC TO EE 309-256-9393
                   I SPOKE WITH EE I ADVISED THE PA WAS NOT ABLE
                   TO SPEAK WITH DR DINH AT THE SCHEDULED TIME,
                   THE PA REVIEWED THE MEDICAL AND FOUND IT WAS
```

R-0139

```
Date: 02/28/2008  2:51pm            User: aarcher              Page:    74
================================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client     : 1632       - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
================================================================================


---------------------------- NOTES ------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
-----------------   --------- --- ----------------------------------------

                              LACKING CLINICAL INFORMATION TO SUPPORT A
                              TOTALLY DISABLING CONDITION FROM 9/6 THRU
                              PRESENT. EE WAS ADVISED SHE HAS 180 DAYS
                              APPEAL, SHE WANTED HER OTHER DR TO CALL, I
                              ADVISED HER OF THE DOC TO DOC PROCESS AND SHE
                              WAS ADVISED TO HAVE THE DR FAX OVER MEDICAL TO
                              SUPPORT DB. EE VU
                              [Time Note Created : 4:41 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 09/06/2006 AP ROBINH
                              Claim status - MEDICAL DOES NOT SUPPORT
                              b\u 9/6 THRU RTW
                              void pay if appropriate
                              send denial notification to CN
                              compose denial letter
                              monitor claim for appeal-30 days
                              close claim
                              [Time Note Created : 4:48 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 09/06/2006 BA ROBINH
                              BA 3/21/06 to 6/18/06 @ 100%
                              BA 6/19/06 to 9/5/06 @ 50%
                              BU 9/6 THRU RTW-MEDICAL DOES NOT SUPPORT
                              NO OFFSETS
                              [Time Note Created : 4:49 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 09/06/2006 EM ROBINH
                              From:    Hamilton, Robin
                              Sent:    Wednesday, September 06, 2006 4:51 PM
                              To:      'hf1383@att.com'
                              Subject: IDSC Disability Denial Notice
                              E-Mail-Claim-A625007022000101

                              [Time Note Created : 4:51 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 09/07/2006 CM TIFFANYT
                              EE tpc to see if she still has insurance once
                              denied or just no pay; CSR informed no pay;
                              caller also stated worried about job
                              abandonment letter; CSR informed if MD isn't
                              releasing her to show her MD note to HR dept;
                              [Time Note Created : 8:31 AM ]
--------------------------------------------------------------------------------
A625007022-0001-01 09/07/2006 MD ROBINH
                              recv fax 9/7/06 doc id 2097524 from dr chein

                              Bruce B. Chien M.D.
                              Diplomate, American Boards of Anesthesiology,
```

R-0140

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    75
=================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client      : 1632       - AT&T Inc.
Account     : 16320730   - TC - Ameritech Services, Inc
Unit        : TC065      - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
=================================================================================


------------------------------- NOTES ------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------- ---------- -- ----------------------------------------------
```

                         Internal Medicine and Pain Medicine
                         5401 N. Knoxville, #212
                         Peoria, IL 61614
                         309-691-8973 fax 309-691-8938
                         September 7, 2006
                         Lou'litha Walls
                         AT&T Disability Center
                         Dear Ms. Walls,
                         Melissa Gardner is disabled from work. She has
                         an open L45 disc demonstrated at 4/25/06
                         discogram and has concordant history and
                         symptoms.
                         She should NOT work until she has found
                         surgical intervention. Our local surgical
                         community,
                         now having experienced Phase II clinical trials
                         of the Charite disc. Feels strongly that she
                         should
                         wait for the release of this product. The
                         distribution of her pain is not conducive to
                         Dorsal Column
                         Stimulator suppression. Although she could be
                         fused, I have to defer to our surgical opinion.
                         She cannot sit or stand for any period of more
                         than about 3 minutes, which is hardly
                         compatible
                         with the workplace.
                         Bruce B. Chien, M. D.
                         By fax to 866-224-4627


                         DDG: deferred to ABUM
                         [Time Note Created : 3:28 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 09/07/2006 EX ROBINH
                         denial letter deferred until ABUM reviews file
                         [Time Note Created : 3:29 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 09/07/2006 SR HREILLY
                         Reviewed claim and recommend that CM overturn
                         denial and arrange for an IME with a
                         neurologist at this time...as it appears that
                         EE would not receive the disc relapsement until
                         2007....
                         [Time Note Created : 4:38 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 09/08/2006 BA ROBINH
                         BA 3/21/06 to 6/18/06 @ 100%

R-0141

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:   76
========================================================================
Claim Number : A625007022-0001-01                      Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
========================================================================


---------------------------- NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------  -- -----------------------------------------

                            BA 6/19/06 to 10/09/06 @ 50%
                            NO OFFSETS
                            [Time Note Created :10:08 AM ]
------------------------------------------------------------------------
A625007022-0001-01 09/08/2006 AP ROBINH
                            APPROVED
                            SET DIARY FOR JAS TO GET JD FOR IME
                            SET UP IME
                            OBTAIN ANY ONGOING OFFICE NOTES
                            SEND BA LETTER TO EE AND CN
                            [Time Note Created :10:08 AM ]
------------------------------------------------------------------------
A625007022-0001-01 09/08/2006 AP ROBINH
                            BA LETTER SENT TO EE
                            [Time Note Created :10:08 AM ]
------------------------------------------------------------------------
A625007022-0001-01 09/08/2006 EM ROBINH
                            _____
                            From:     Hamilton, Robin
                            Sent:     Friday, September 08, 2006 10:10 AM
                            To:       'hf1383@att.com'
                            Subject:  IDSC Disability Approval Notice
                            Email-Claim-A625007022000101
                            [Time Note Created :10:11 AM ]
------------------------------------------------------------------------
A625007022-0001-01 09/08/2006 CM ROBINH
                            TPC TO EE
                            I SPOKE WITH EE AND ADVISED DENIAL OVERTURNED,
                            BA 3/21/06 to 6/18/06 @ 100%
                            BA 6/19/06 to 10/09/06 @ 50%
                            I AM SETTING UP HER CLAIM FOR AN IME AND I
                            EXPLAINED THE PROCESS. I ADVISED I WILL CALL
                            HER ONCE I HAVE THE APPT SET. EE VU
                            [Time Note Created :10:24 AM ]
------------------------------------------------------------------------
A625007022-0001-01 09/11/2006 VR HARRIS
                            jas review of referral for JD:

                            ee is a 33 y/o marketing support specialist.
                            FDA: 3/13/06.  DX: ruptured disc L4. R/l's:
                            none.


                            POA: send request to supv for JD.
                            [Time Note Created : 4:11 PM ]
------------------------------------------------------------------------
A625007022-0001-01 09/11/2006 VR HARRIS
                            CN:
```

R-0142

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:   77
==============================================================================
Claim Number : A625007022-0001-01                   Date Loss : 03/12/2006
Client       : 1632     - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065    - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==============================================================================

----------------------------- NOTES ------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
------------------  -------- -- --------------------------------------------


                   From:    Harris, Priscilla E.
                   Sent:    Monday, September 11, 2006 4:23 PM
                   To:      'hf1383@msg.ameritech.com'
                   Subject: RE: Melissa Gardner #A625007022

                   Hello,

                   I needed to know if you could send me a job
                   description for Ms. Gardner:

                   MARKETING SUPPORT SPEC (SRL)

                   I thank you in advance for your time.  I look
                   forward to hearing from you.


                   Priscilla E. Harris, M.S.
                   Job Accommodation Specialist
                   AT&T Integrated Disability Service Center
                   As Administered by Sedgwick CMS
                   pharris@sedgwickcms.com
                   Phone: 866-276-2278
                   Fax:866-224-4627

                   [Time Note Created : 4:23 PM ]
------------------------------------------------------------------------
A625007022-0001-01 09/13/2006 VR HARRIS
                   CN-

                   From: FLEMING, HILLARI Y (ASI-AIT)
                   [mailto:hf1383@att.com]
                   Sent: Tuesday, September 12, 2006 5:49 PM
                   To: Harris, Priscilla E.
                   Cc: FLEMING, HILLARI Y (ASI-AIT)
                   Subject: RE: Melissa Gardner #A625007022


                   Priscilla,

                   Please find included the specified job
                   description.


                   Thanks,
                   Hillari Y. Fleming
                   Manager - Access Service Center
                   Supporting Midwest (5 State) Wireless
```

R-0143

===================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===================================================================


----------------------------- NOTES -----------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------- -- ---------------------------------

                           Provisioning
                           AT&T Illinois
                           Phone:  (217) 747-7949
                           FAX: (217) 522-1651
                           Pager: (217) 252-3371



                           MARKET SUPPORT SPECIALIST:

                           Union Affiliation:
                           AIT IBEW Local 21
                           Location:
                           SBC Midwest Region
                           Arranges for Centrex and complex non-Centrex
                           services as received on a demand basis from
                           business
                           customers or vendors.  Duties may include but
                           are not limited to the following:
                           1) Negotiates and processes customer service
                           order requests by accessing multiple mechanized
                           systems
                           while speaking to customers.
                           2) Coordinates the installation and maintenance
                           of Ameritech provided services in order to
                           deliver
                            accurate and on-time service to customers.
                           3) Communicates with customers using in-depth
                           interviews to verify service appointments
                           and/or
                            subscriber service problems.
                           4) Prioritizes troubles for proper routing and
                           statusing which may involve dealing with
                           external customers.
                           5) Performs preventative maintenance testing
                           and analysis (e.g. Predictor).
                           6) Updates databases and corrects errors.
                           Coordinates the clearance/correction of
                           troubles.
                           7) May troubleshoot on accounts including
                           working with technicians to determine what
                           actions are
                            necessary to correct problems.
                           8) Determines customer requirements from among
                           many service offerings.  Recommends, sells and
                           substantiates the appropriate products and

```
================================================================================
Claim Number : A625007022-0001~01               Date Loss : 03/12/2006
Client   : 1632        - AT&T Inc.
Account  : 16320730  - TC - Ameritech Services, Inc
Unit     : TC065     - INDUSTRY MARKETS
Claimant : GARDNER, MELISSA
================================================================================
```

```
---------------------------- NOTES ------------------------------------
```

```
Event/Clmnt/Claim  Date       Tp Examiner
------------------ ---------- -- ---------------------------------------
```

services to customers using approved sales
techniques.
9) Accurately computes and quotes rates,
adjustments and balances to customers.
10) Discusses, investigates and resolves local
service and long distance billing inquiries.
11) Works to meet sales and service goals and
handles customer's needs promptly.
12) Coordinates service arrangements/agreements
with other departments.
13) Handles discussions with customers
involving company matters such as policy and
regulatory
conformance.
14) Prepares self-composed letters to
customers.
15) Positions Ameritech as the premier provider
of choice.
16) Performs all other duties comparable to the
above as assigned.
17) Follows established safety practices and
procedures.
GENERAL DUTIES
BASIC QUALIFICATIONS
Please note that the assessment is considered a
test.
Customer Contact Interactive Assessment (CCIA)
Customer Service Assessment : Core/Service
Module
Employment Inventory - PTC
Employment Inventory - Sales
Required   :
Required   :
Maybe Req'd:
Maybe Req'd:
Basic Tests:
Prerequisites:
1) Satisfactory attendance record and
performance ratings in present job.
2) Satisfactory results from a security
investigation, as required, unless previously
met.
3) Other factors which may vary based on work
group requirements.
Physical Requirements:
1) Normal authorized medical evaluation for
this job, unless previously met.
Hours:

E-FILED
Wednesday, 23 July, 2008 03:56:19 PM
Clerk, U.S. District Court, ILCD

```
Date: 02/28/2008  2:51pm          User: aarcher          Page: 80
========================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
========================================================================

-------------------------- NOTES --------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
-----------------  -------  -- ------------------------------------------

                            Hours vary depending on assignment.  Normally
                            works day hours (Monday through Friday)
                            with occasional overtime, weekends and holidays
                            as required.  Hours are determined by job
                            requirements, qualifications, seniority and
                            employee preference.
                            ADDITIONAL QUALIFICATIONS
                            *Please note that specific systems may be
                            requested at the time of requisition.
                            TRAINING
                            [Time Note Created : 8:50 AM ]
-----------------------------------------------------------------------
A625007022-0001-01 09/13/2006 VR HARRIS
                            CN-

                            From: Harris, Priscilla E.
                            Sent: Wednesday, September 13, 2006 8:51 AM
                            To: 'FLEMING, HILLARI Y (ASI-AIT)'
                            Subject: RE: Melissa Gardner #A625007022


                            Thank you for your assistance!

                            Priscilla E. Harris, M.S.
                            Job Accommodation Specialist
                            AT&T Integrated Disability Service Center
                            As Administered by Sedgwick CMS
                            pharris@sedgwickcms.com
                            Phone: 866-276-2278
                            Fax:866-224-4627

                            [Time Note Created : 8:52 AM ]
-----------------------------------------------------------------------
A625007022-0001-01 09/27/2006 MD ROBINH
                            ime form sent to MCN, along with medical doc

                            ****THIS IS AN UNATTENDED MAILBOX - DO NOT
                            REPLY**** For additional help, please contact
                            support@mcn.com.

                            Dear Robin Hamilton email:
                            Rhamilton@sedgwickcms.com,
                            Please review the following information for
                            accuracy:

                            MCN Case #: 1-PG4PL
                            Exam or Review #: 1-PG4PR
                            Product: IMO
```

R-0146

```
Date: 02/28/2008  2:51pm           User: aarcher              Page:    81
================================================================================
Claim Number : A625007022-0001-01                     Date Loss : 03/12/2006
Client    : 1632       - AT&T Inc.
Account   : 16320730   - TC - Ameritech Services, Inc
Unit      : TC065      - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
================================================================================

-------------------------------- NOTES ----------------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------ ---------- -- ----------------------------------------------

                      Requested Specialty: Neurological Surgery
                      Claim Number: a625007022-0001-01
                      Date of Injury:
                      Diagnosis: back\rutured L4
                      Insurance Type: Disability-Short Term
                      Jurisdiction: IL
                      Job Status:
                      Draft Copy: N
                      Expedite:
                      Reschedule Pre-Approved: N
                      Requested Due Date:
                      Comments:

                      If you notice missing or incorrect information
                      please submit a Special Request identifying MCN
                      Case #: 1-PG4PL and Exam or Review #: 1-PG4PR,
                      as well as any issues that apply.  Should you
                      have any questions, please do not hesitate to
                      contact a Customer Service Representative at
                      (206) 621-9097.

                      We look forward to serving you, and thank you
                      for choosing MCN.com.

                      [Time Note Created : 2:00 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 10/04/2006 CM ROBINH
                      tpc to ee
                      i lvm i needed to see if she has made any f\up
                      appt, pls provide name and phonenumber and date
                      [Time Note Created : 2:57 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 10/04/2006 MD ROBINH
                      call deferred\drs want to wait to do
                      experimental sx when approve\will await ime
                      date
                      [Time Note Created : 2:58 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 10/04/2006 CM LACHANFT
                      Call from EE asking to s/w Cm-declined CSR
                      assist, transferred caller to cm...vm
                      [Time Note Created : 3:04 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 10/09/2006 IM ROBINH
                      Hello Robin,

                      We have searched both in and out of network for
                      a provider to schedule this IME with.  We have
```

```
===============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client     : 1632       - AT&T Inc.
Account    : 16320730   - TC - Ameritech Services, Inc
Unit       : TC065      - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
===============================================================================
```

------------------------------ NOTES -----------------------------------------

```
Event/Clmnt/Claim  Date      Tp Examiner
------------------ ---------- -- ---------------------------------------------
```

located a provider in Springfield who is
willing to schedule this exam.  Please see the
appointment details below:

Date:            11/20/2006
Time:            1:30:00 PM
Consultant:      Dr. Margaret MacGregor
Specialty:       Neurological Surgery
Location:        Office of Margaret MacGregor, MD
Address:         800 N 1st St
                 Springfield, IL 62794

Be advised that due to high provider cost in
this area the fee for the IME will be $1250.00.
 The Dr. also charges the full fee if the exam
is cancelled late or if the claimant does not
attend.

Please confirm this is approved and I will send
an appointment letter to the claimant.

Feel free to call me at (800) 336-6269 ext. 408
if you have any questions or if I may be of
further assistance.

Thank you for choosing MCN!

Sincerely,

Heather Vasquez
National Client Service Representative

Medical Consultants Network, Inc. (r)
Medical Judgment: Nationwide
(800) 636-3926 ext. 408
(206) 623-4956 fax

Hvasquez@mcn.com
www.mcn.com

PS: Don't forget to register for your mcn.com
account at
http://www.mcn.com/clientlogonrequest/clientsign
up.aspx, where you can refer cases, track their
progress, and download correspondence/reports.

```
---------------------------------------------------------------
---------------------------------------------------------------
```

---------------------

Medical Consultants Network (MCN) complies with
HIPAA privacy regulations and does not include
Protected Health Information in email
correspondence.

This email and any files transmitted with it
are confidential and intended solely for the
use of the individual or entity to whom they
are addressed.

If you have received this email in error please
notify the originator of the message. This
footer also confirms that this email message
has been scanned for the presence of computer
viruses.

Any views expressed in this message are those
of the individual sender, except where the
sender specifies and with authority, states
them to be the views of Medical Consultants
Network.

Scanning of this message and addition of this
footer is performed by SurfControl Email Filter
software in conjunction with Symantec
Anti-Virus detection software.

[Time Note Created : 1:06 PM ]
-----------------------------------------------------------------------
A625007022-0001-01 10/09/2006 CM ROBINH
                    i spoke with ee and advised that i have the
                    date and time for IME. she will recvd her copy
                    in the mail. pls let me know if there is no
                    phone number. ee was concerned about the
                    distance since she lives in Peoria. i advised
                    this was the closest dr they could find. i
                    advised she has at least 50 days to find a
                    ride. i advised i needed an very early notice
                    if she cannot make the appt. her benefits maybe
                    denied if she does not attend session. i will
                    ext ba thru 11/30/06, and more if needed. we
                    discussed EOB and LTD again.
                    BA 3/21/06 to 6/18/06 @ 100%
                    BA 6/19/06 to 11/30/06 @ 50%
                    i advised ee to call me with any additional
                    appts
                    ee vu


                    Date:          11/20/2006
                    Time:          1:30:00 PM
                    Consultant:    Dr. Margaret MacGregor
                    Specialty:        Neurological Surgery
                    Location:         Office of Margaret MacGregor, MD
                    Address:          800 N 1st St
                                   Springfield, IL 62794
                    [Time Note Created : 1:07 PM ]
-----------------------------------------------------------------------
A625007022-0001-01 10/09/2006 RP ROBINH
                    Scheduled allocation removed for pay code 101

R-0149

```
Date: 02/28/2008  2:51pm           User: aarcher                Page:    84
========================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
========================================================================


------------------------- NOTES -----------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ --------- -- ----------------------------------------
                             date 10/13/2006 amount        103.25
                             [Time Note Created : 1:11 PM]
----------------------------------------------------------------------
A625007022-0001-01 10/09/2006 BA ROBINH
                             benefits extended to allow time for IME
                             scheduled for 11/20/06

                             BA 3/21/06 to 6/18/06 @ 100%
                             BA 6/19/06 to 11/30/06 @ 50%
                             NO OFFSETS
                             [Time Note Created : 1:41 PM]
----------------------------------------------------------------------
A625007022-0001-01 10/09/2006 AP ROBINH
                             Action Plan:

                             Claim status Approved
                             Send notice to supv.
                             Send letter to ee & advise
                             Obtain ime results
                             Review medical as received
                             Address RTW and R&L's after EOB call
                             Verify rtw/send notice/close claim


                             [Time Note Created : 1:42 PM]
----------------------------------------------------------------------
A625007022-0001-01 10/09/2006 AP ROBINH
                             Approval letter mailed to EE
                             [Time Note Created : 1:42 PM]
----------------------------------------------------------------------
A625007022-0001-01 10/09/2006 EM ROBINH
                             From:    Hamilton, Robin
                             Sent:    Monday, October 09, 2006 1:46 PM
                             To:      'hf1383@att.com'
                             Subject: IDSC Disability Approval Notice
                             Email-Claim-A625007022000101

                             [Time Note Created : 1:46 PM]
----------------------------------------------------------------------
A625007022-0001-01 11/14/2006 EX ROBINH
                             cover ime letter sent today
                             [Time Note Created :12:39 PM]
----------------------------------------------------------------------
A625007022-0001-01 11/16/2006 CN DIANEFT
                             Christine Nichols called requesting approval
                             dates be refed to elink.
                             [Time Note Created :12:38 PM]
----------------------------------------------------------------------
A625007022-0001-01 11/16/2006 U3 DIANEFT
```

R-0150

Re-sending time tracking info to elink.
[Time Note Created :12:38 PM ]

---

A625007022-0001-01 11/17/2006 CI HREILLY
Examiner change:  From:  robinh  To:  tpayton
**** NOTE CREATED BY: SYS ****
[Time Note Created : 3:18 PM ]

---

A625007022-0001-01 11/20/2006 CM KRISS
ee caled to speak to cm in regards to claim.
declined csr assistance. call transferred to cm
complete
[Time Note Created : 3:43 PM ]

---

A625007022-0001-01 11/20/2006 CM TPAYTON
rec'd call from ee advising she was sched for
IME today but was not examined by Provider- Dr.
Margaret Macgregor because payment had not been
recd - EE advised that she does not have an
office visit sched but is waiting for FDA to
appove sx which may take up to a year an a
half. CM advised that ba is ext thru 11/30/06
and cm will call ee with status on claim at
EOB/ EE VU
[Time Note Created : 3:50 PM ]

---

A625007022-0001-01 11/27/2006 SR TVLASIC
BUM reviewed the 11/20/06 CM note.  BUM placed
call to MCN rep, Janet Rubo, requesting she
investigate this matter and get back to me.  CM
is advised to extend the b/a further and
reschedule the IME asap.
[Time Note Created : 4:14 PM ]

---

A625007022-0001-01 11/28/2006 MD KRISS
chris, w/ medical consultant, called to speak
to cm. n/a transferred to vm at request of
caller
[Time Note Created : 4:27 PM ]

---

A625007022-0001-01 11/29/2006 SR TVLASIC
BUM s/w MCN rep in regards to this issue.  MCN
is going to terminate the IME MD for her
actions and was very apologetic for what
occurred.  IME will be rescheduled.
[Time Note Created :11:33 AM ]

---

A625007022-    -  11/30/2006 SR TVLASIC
STD Case Manager: Tan Payton
8-Month Review
LTD Case Manager:
Claim Number:  A625007022-0001-01
Employee Name:  MELISSA GARDNER
NCS Date:  02/12/2001
Date of Birth: **REDACTED**
Job Title:  MARKETING REP
AT&T Company Code  TC
FDA:  03/11/2006
BA Dates: From  03/20/2006 Thru  11/30/2006
SS **REDACTED**
In... ...prepared by the SD CM -
Review and Update the preparation for the 5 -8

```
Date: 02/28/2008  2:51pm              User: aarcher                Page:    86
===============================================================================
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA

===============================================================================
------------------------------- NOTES -----------------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
-----------------  ---------- -- -----------------------------------------------
```

Month Review
Diagnosis and Current Condition *(See Example):
  open L4-5 disc

Treatment Plan:  EMG on 04/03/06 showing
mild-to-moderate bilateral polyneuropathy of
the upper extremities.  She had numerous
epidural steroid injections since March had
positive EMG of lower extremities showing mild
L4 bilateral radiculopathy.  Previous MRI, CT
scans, and a positive 04/25/06 discogram at
L4-L5 with annular tears .  Conservative methods
of tx has been exhaused -  EE is currently
awaiting approval from the FDA for an artifical
lumbar disc.


Physical and/or Cognitive Demands of the job:**
 prolong sitting, typing, talkin on phone
Describe the employee's functional and ADL
abilities:  cannot sit or stand for any period
of more than  3 minutes

Current R/L's with duration:  n/a

ERTW Date for Transition Work:  tbd
ERTW Date for Full Duty:  tbd
Was the TWP addressed?  No
Was there an Escalation; and what was the
result?  none
Has there been a PA review; and what was the
result?  yes-avail meds d/n support.  Prior
ABUM overturned denial and requeseted IME.
Has there been an IME, and what was the result?
 Pending
Is this a relapse; and why did the RTW fail?
No
Is there a ROI on file?
What is the DDG; and where is the employee
within the DDG? ***  28-54 days, ee is at  253

Additional Information Specific to the 8-Month
Review
What are the non-medical barriers to RTW?  n/a
Are there any contact names/telephone numbers
other than the employee?  no
Are there pertinent medical records in the
file?  yes

R-0152

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    87
===============================================================================
Claim Number : A625007022-0001-01                      Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===============================================================================


------------------------------- NOTES -----------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
-------------------------------------------------------------------------------
                         What is the SSN status?  n/a

                         Action Plan
                         1.  Proceed with IME with neurosurgeon.
                         2.  CM to obtain any pain management records;
                         p.t. notes
                         3.  Allsup referral not indicated at this time
                         4.  Surveillance not indicated at this time.


                         [Time Note Created :10:30 AM ]
-------------------------------------------------------------------------------
A625007022-0001-01 12/01/2006 MD TVLASIC
                         DDG: 354.2/sed/Without surgery, regular work:
                         14 days. Available medical supports an
                         extension of b/a through 12/31/06 for a total
                         of 287 days.

                         Rationale: EE was previously scheduled for an
                         IME with a neurosurgeon.  IME provider was
                         unable to perform exam so a new exam is in the
                         process of being scheduled.  B/A is appropriate
                         until EE undergoes her IME and report is
                         received.

                         MAP: Await callback from MCN regarding new IME
                         appt time/date.
                         [Time Note Created : 2:09 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 12/01/2006 BA TVLASIC
                         benefits extended to allow time for IME
                         scheduled for 11/20/06

                         BA 3/21/06 to 6/18/06 @ 100%
                         BA 6/19/06 to 12/31/06 @ 50%
                         NO OFFSETS
                         [Time Note Created : 3:20 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 12/01/2006 CM TVLASIC
                         Call to EE deferred until IME date/time is
                         received from MCN.
                         [Time Note Created : 3:21 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 12/01/2006 AP TVLASIC
                         Claim approved
                         Await IME date/Time
                         Complete IME letter for IME provider
                         Notify EE of new IME date/time
```

R-0153

```
Date: 02/28/2008  2:51pm           User: aarcher              Page:   88
==============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==============================================================================


--------------------------- NOTES ---------------------------------

Event/Clmnt/Claim  Date        Tp Examiner
-----------------  ----------  -- -----------------------------------------

                          Assess for RTW with our without R/L's once IME
                          report is received
                          [Time Note Created : 3:21 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 12/01/2006 ST TVLASIC
                          From:    Vlasic, Thomas
                          Sent:    Friday, December 01, 2006 3:24 PM
                          To:      Outbound IDSC
                          Subject: IDSC BA MDD-Claim-A625007022000101


                          Thomas P. Vlasic
                          Business Unit Manager
                          AT&T Integrated Disability Service Center
                          As Administered by Sedgwick CMS
                          E-mail: tvlasic@SedgwickCMS.com
                          Phone: 312-356-1843
                          Fax:     312-356-0015
                          [Time Note Created : 3:25 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 12/01/2006 ST TVLASIC
                          From:    Vlasic, Thomas
                          Sent:    Friday, December 01, 2006 3:25 PM
                          To:      'hf1383@att.com'
                          Subject: IDSC Disability Approval Notice
                          Email-Claim-A625007022000101


                          Thomas P. Vlasic
                          Business Unit Manager
                          AT&T Integrated Disability Service Center
                          As Administered by Sedgwick CMS
                          E-mail: tvlasic@SedgwickCMS.com
                          Phone: 312-356-1843
                          Fax:     312-356-0015
                          [Time Note Created : 3:25 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 12/05/2006 MD TPAYTON
                          Rec'd confirmation of IME appointment

                          01/08/2007
                          Dr. Delheimer at 12pm
                          Address: 1015 S Mercer Ave
                                   Bloomington, IL 61701


                          [Time Note Created :12:23 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 12/26/2006 CM DEBFT
```

R-0154

<div style="text-align:right">5 day call to ee deferred ime schedule 01/08/07<br>[Time Note Created :12:44 PM ]</div>

--------------------------------------------------------------
A625007022-0001-01 12/26/2006 MD DEBFT
5 day call to ee deferred ime schedule 01/08/07
[Time Note Created :12:44 PM ]
--------------------------------------------------------------
A625007022-0001-01 12/29/2006 BA TPAYTON
benefits extended to allow time for IME
scheduled for 01/08/07

BA 3/21/06 to 6/18/06 @ 100%
BA 6/19/06 to 01/18/07 @ 50%
NO OFFSETS
[Time Note Created : 1:32 PM ]
--------------------------------------------------------------
A625007022-0001-01 12/29/2006 AP TPAYTON
Claim approved
IME Sched for 01/08/07
Await results from IME
BA/BU appropriately
Send appropriate letters and notices
Verify rtw status
Close claim
[Time Note Created : 1:34 PM ]
--------------------------------------------------------------
A625007022-0001-01 12/29/2006 CM TPAYTON
call to EE deferred - IME pending
[Time Note Created : 1:34 PM ]
--------------------------------------------------------------
A625007022-0001-01 12/29/2006 MD TPAYTON
DDG: 354.2/sed/Without surgery, regular work:
14 days. Available medical supports an
extension of b/a through 01/18/07

Rationale: EE was previously scheduled for an
IME with a neurosurgeon.  IME provider was
unable to perform exam so a new exam is in the
process of being scheduled.  B/A is appropriate
until EE undergoes her IME and report is
received.

MAP: Await Results from IME-  IME sched for
01/08/07
[Time Note Created : 1:34 PM ]
--------------------------------------------------------------
A625007022-0001-01 12/29/2006 EX TPAYTON
Form Letters Merged

Form Letter(s): IDSC BA MDD
Created On: 12/29/06

Sent to EE
[Time Note Created : 1:36 PM ]
--------------------------------------------------------------
A625007022-0001-01 12/29/2006 EX TPAYTON
Form Letters Merged

Form Letter(s): IDSC Disability Approval Notice
Email
Created On: 12/29/06

```
Date: 02/28/2008  2:51pm          User: aarcher                Page:    90
================================================================================
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
================================================================================


------------------------------ NOTES ------------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
-------------------- --------- -- -------------------------------------------

                              Sent to CN
                              [Time Note Created : 1:45 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/10/2007 CM CRAIGH
                              EE CALLED TO STATE SHE WENT TO SCHEDULED IME
                              APPT. EE ASKED TO SPEAK WITH CM CM UNAVAIL
                              TRANS TO VM'S CM
                              [Time Note Created : 4:23 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/12/2007 CM TPAYTON
                              eob call deferred - pending IME results
                              [Time Note Created : 5:22 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/12/2007 MD TPAYTON
                              eob call deferred - pending IME results
                              [Time Note Created : 5:22 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/18/2007 SR TVLASIC
                              IME reviewed.  CM is advised to contact the CN
                              to confirm EE's job allows her to change her
                              position when needed.  If this information is
                              verified, CM is advised to notify EE that her
                              claim will be denied for medical not supporting
                              based on the IME.
                              [Time Note Created :11:09 AM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/18/2007 CN TPAYTON
                              tpc to AM\Michelle Johnson 217-757-2761 to
                              verify if ee would be able to change positions
                              when needed. CN advised Yes
                              [Time Note Created : 2:15 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/18/2007 CM TPAYTON
                              tpc to ee to advise ba thru 01/18/07, per IME,
                              time off work is not supported. EE VU and
                              advised she will not rtw, she needs sx but it
                              has not been approved by FDA. EE advised she
                              will make some calls to have addtl meds
                              forwarded for review
                              [Time Note Created : 2:38 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/18/2007 MD TPAYTON
                              IME Report

                              DOS 01/08/07- Doc# 2678279
                              ************************************************
                              ******
```

R-0156

================================================================================
Claim Number : A625007022-0001-01                      Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
================================================================================

------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ --------- -- --------------------------------------------

**DIAGNOSTIC REVIEW:**
I reviewed several diagnostic films. The first
was a lumbar MRI dated March 14, 2006, which
showed an annular tear at L4-5. This was seen
only on the sagittal views.

I also reviewed a cervical MRI, which simply
showed mild degenerative disc disease.
Next, I reviewed a lumbar CT scan dated April
20, 2006. That CT scan showed an annular tear
at L4-5, which was midline.

Finally, I reviewed a discogram, which was a
one level procedure performed on April 20, 2006
at the L4-5 level. The discogram showed chronic
degenerative disc disease.

**NEUROLOGIC EXAMINATION:**
Ms. Gardner appeared to be uncomfortable while
sitting through the interview process. During
the examination, she limits movement of her
back, but she has a normal lumbar lordosis. Her
straight leg-raising test is negative in a
sitting position to 90°. Deep tendon reflexes
are equal, symmetrical, and normal at the knees
and ankles. She has normal strength, a normal
gait, and she can walk on her heels and toes
without difficulty.

**IMPRESSION:**
After obtaining a narrative history, performing
a neurologic exam, and reviewing medical
records and several diagnostic studies, it is
my opinion that Ms. Gardner has degenerative
disc disease of her lumbar spine. This opinion
is supported by the findings on her diagnostic
studies, which revealed an annular tear at the
L4-5 level that is midline in location.

**CONCLUSION:**
Ms. Gardner's history is significant for prior
episodes of back pain that lasted anywhere up
to a week and then cleared. In my opinion, the
changes seen on Ms. Gardner's diagnostic
studies appear to be degenerative in nature.
Furthermore, Ms. Gardner did not experience any
injury per se at the time of her acute onset of
pain, but rather she merely experienced pain

R-0157

=================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client       : 1632        - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=================================================================

------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------  --------- -- -----------------------------------------

when she rose from a chair, and then this back
pain gradually worsened. When Ms. Gardner stood
up from a seated position at work, she was not
lifting, twisting, or bending. Therefore, it is
my opinion that Ms. Gardner's acute onset of
pain in March 2006 is related to her
degenerative disc disease and is not an
occupational injury.

RECOMMENDATIONS:
In regards to Charite disc replacement, the
chances of improvement are reported to be 57%,
which is no better than the natural history of
the disease itself. Another approach would be
to consider an anterior lumbar fusion or
possibly a posterior hemilaminotomy.
Irrespective of what type of treatment Ms.
Gardner elects to proceed with, it is my
opinion that any medical and/or surgical
treatment is for her underlying degenerative
disc disease and is not related to her
employment at SBC Communications.

SPECIFIC INTERROGATORIES:
1. What is your evaluation of Ms. Gardner's
medical condition?

Response: After obtaining a narrative history,
performing a neurologic exam, and reviewing
medical records and several diagnostic studies,
it is my opinion that Ms. Gardner has
degenerative disc disease of her lumbar spine.
This opinion is supported by the findings on
her diagnostic studies, which revealed an
annular tear at the L4-5 level that is midline
in location.

2. What is her prognosis?

Response: Ms. Gardner's prognosis is guarded
based on her repeated episodes of low back pain
and multilevel involvement of the lumbar discs.
In the past, her episodes of back pain have
cleared; however, this current episode has
remained refractory to significant attempts at
conservative management. Although Ms. Gardner
has failed to respond to conservative
treatment, I am reluctant to recommend any type

R-0158

Date: 02/28/2008  2:51pm          User: aarcher              Page:    93
=================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=================================================================


-------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ --------- -- ---------------------------------------------
                             of surgical intervention given the nature of
                             the changes on her MRI.

                             3. Does her treatment plan seem reasonable to
                             date?

                             Response: After reviewing the medical reports,
                             it is my opinion that Ms. Gardner's treatment
                             and workup has been reasonable; however, I
                             consider her treatment to be related to a
                             pre-existing condition and not related to her
                             occupation. In regards to Charite disc
                             replacement, the chances of improvement are
                             reported to be 57%, which is no better than the
                             natural history of the disease itself.

                             Another approach would be to consider an
                             anterior lumbar fusion or possibly a posterior
                             hemilaminotomy.

                             4. Please comment on Ms. Gardner's activities
                             of daily living.

                             Response: Ms. Gardner indicated that standing
                             and walking aggravates the pain but the pain
                             will improve if she lies down. She reports that
                             overall her back pain is worse than the leg
                             pain. Ms. Gardner is also on a combination of
                             Lyrica, Tramadol, Nabumetone, and Hydrocodone
                             to control her pain. Without these medications,
                             she rates the pain at "10 to 15" on a scale of
                             0 (no pain) to 10 (the worst imaginable pain),
                             but with the medication the pain will decrease
                             to 5 or
                             6/10

                             6. How does Ms. Gardner's medical condition
                             interfere with her ability to perform the
                             essential functions of the Marketing Support
                             Specialist?

                             Response: In my opinion, Ms. Gardner's medical
                             condition should not prevent her from working
                             given the sedentary nature of her job; however,
                             the following factors could indirectly
                             interfere:

                             1. By history, the prolonged drive to and from

```
Date: 02/28/2008  2:51pm           User: aarcher              Page:    94
=============================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client      : 1632        - AT&T Inc.
Account     : 16320730    - TC - Ameritech Services, Inc
Unit        : TC065       - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
=============================================================================

----------------------------- NOTES -----------------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------ ---------- -- ---------------------------------------------
```

work everyday (East
Peoria, IL to Springfield, IL/Springfield to
East Peoria).
2. The fact that standing and walking
exacerbate the pain.
4. The only alleviating factor by history is
when Ms. Gardner lies down.
5. Her current regimen of pain medications.

7. Please comment on Ms. Gardner's functional
abilities.

Response: Ms. Gardner's job as a marketing
specialist is a sedentary position and requires
no physical modification in her work duties
other than possibly changing positions as
needed for comfort measures.

8. Do Ms. Gardner's symptoms match her
functionality and your understanding of her
medical condition?

Response: During the examination, Ms. Gardner
appeared to be uncomfortable and she limited
any movement of her back. In my opinion, Ms.
Gardner's current symptoms are consistent with
the diagnostic findings.

9. Is Ms. Gardner able to return to her full
duty position as a Marketing Support
Specialist?

Response: Ms. Gardner's job as a marketing
specialist is a sedentary position and requires
no physical modification in her work duties
other than possibly changing positions as
needed for comfort measures.

10. If no, please state specific work
restrictions and the duration.

Response: None.

11. Please specify any accommodations, which
may be needed regarding her medical condition.

Response: One might consider possibly
accommodating Ms. Gardner in terms of allowing

R-0160

```
==================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
==================================================================
```

-------------------------------- NOTES --------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------  -- ---------------------------------------

her to change positions as needed for comfort measures.

12. Has the claimant reached maximum medical improvement?

Response: In this case, maximal medical improvement does not apply, as I do not consider the acute onset of pain to be related to an occupational injury.

13. In your opinion is it appropriate to await the approval of the Charite procedure? Is this her best option for optimal improvement?

Response: In regards to Charite disc replacement, the chances of improvement are reported to be 57%, which is no better than the natural history of the disease itself.

Another approach would be to consider an anterior lumbar fusion or possibly a posterior hemilaminotomy.

Irrespective of what type of treatment Ms. Gardner elects to proceed with, it is my opinion that any medical and/or surgical treatment for this acute onset of pain is related to the underlying degenerative disc disease and is not related to her employment at SBC Communications.

***************************************************
DDG: 354.2/sed/Without surgery, regular work: 14 days.

No impact to DDG

Rationale- IME has been reviewed and does not support ongoing disability. CM has confirmed with CN that ee is able to change positions when needed. BA thru 01/18/07.

POA- monitor for addtl meds, if no addtl meds and ee does not rtw- complete denial process (medical not supporting letter needed.

R-0161

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    96
========================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
========================================================================


------------------------ NOTES ----------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------- --------- -- --------------------------------------

                    [Time Note Created : 2:42 PM ]
------------------------------------------------------------------------
A625007022-0001-01 01/18/2007 AP TPAYTON
                    Claim approved thru 01/18/07
                    IME results in and d/n support ongoing
                    disability
                    Verify rtw status- if no rtw/ addtl meds - (do
                    denial)
                    If addtl meds rec'd - Send to PA
                    Set appropriate diaries for f/u
                    Send appropriate letters and notices
                    close claim
                    [Time Note Created : 3:18 PM ]
------------------------------------------------------------------------
A625007022-0001-01 01/19/2007 CN FOWLIEFT
                    mgr. Heather Lenhart (217-747-7968) called to
                    let CM know that ee has not RTW today.
                    [Time Note Created :11:02 AM ]
------------------------------------------------------------------------
A625007022-0001-01 01/19/2007 CN LASDAVIS
                    Placed call to ee supvr to verify if rtw
                    occurred today. supvr out.cm was xfrd to
                    Heather Linhardt @ 217-747-7968 to verify rtw
                    status. s/w Heater who advised that she will
                    have to check and call cm back.
                    [Time Note Created :11:07 AM ]
------------------------------------------------------------------------
A625007022-0001-01 01/19/2007 AP LASDAVIS
                    terminated
                    send notices to dept
                    letter to AUM for mailing
                    rvw medical as rcvd
                    monitor for appeal
                    close claim in 30 days
                    [Time Note Created : 4:17 PM ]
------------------------------------------------------------------------
A625007022-0001-01 01/19/2007 BA LASDAVIS
                    BA 3/21/06 to 6/18/06 @ 100%
                    BA 6/19/06 to 01/18/07 @ 50%
                    NO OFFSETS
                    BU: 1/19/07-rtw (medical does not support after
                    IME and no rtw)
                    [Time Note Created : 4:17 PM ]
------------------------------------------------------------------------
A625007022-0001-01 01/24/2007 EX TPAYTON
                    Form Letters Merged

                    Form Letter(s): IDSC Disability Denial Notice
```

R-0162

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    97
================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
================================================================================


--------------------------------- NOTES ---------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
-----------------  -------  -- ----------------------------------------------


                            E-Mail
                            Created On: 01/24/07

                            Sent to CN
                            [Time Note Created : 3:25 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/24/2007 CM TPAYTON
                            tpc to advise bu 01/19/07 thru rtw- meds d/n
                            support- ee vu and advised she cont to have
                            pain, she has pain in her arms. provider sched
                            an MRI today and results with updated meds will
                            be forwarded.
                            [Time Note Created : 3:28 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/24/2007 EX TPAYTON
                            Form Letters Merged

                            Form Letter(s): SD AIT Denial Med Not Support
                            Created On: 01/24/07

                            Denial letter forwarded to ABUM for review
                            [Time Note Created : 3:38 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/24/2007 MD TPAYTON
                            01/23/07 rec'd 01/08/07 (duplicate ime) - doc#
                            2711826
                            [Time Note Created : 9:31 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/25/2007 SR EMCGREW
                            denial letter reviewed & decision is
                            appropriate.
                            IME performed & although condition warrants
                            tx'ment there are no med findings supporting an
                            inability to sit/talk/type w/out recommended
                            r&l's to cx positions as needed.

                            letter sent for mailing: reg/cert
                            [Time Note Created : 7:09 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/29/2007 CM CRAIGH
                            ee called to state her nov is 01/30/07. she
                            stated she recvd paperwork from supvr for fmla.
                            she asked if dias is approved if fmla is
                            necessary. informed her fmla would not be
                            necessary. ee asked to speak with cm. trans to
                            cm. cm unavail trans to cm's vm
                            [Time Note Created : 2:33 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 01/30/2007 MD TPAYTON
```

R-0163

rtc to ee at 309-256-9393. EE reports she has
an OV with Dr.Chein today and info will
forwarded in couple of days.
[Time Note Created :10:28 AM ]

---

A625007022-0001-01 01/31/2007 MD TPAYTON
01/29/07 rec'd duplicate 01/08/07 IME w/
Invoice- doc# 2734430
[Time Note Created :10:04 AM ]

---

A625007022-0001-01 02/01/2007 SR TVLASIC
Invoice N47585 received from MCN for IME
completed on 1/8/07.  Billed amount: $1,650.00.
BUM entered for payment.
[Time Note Created : 3:14 PM ]

---

A625007022-0001-01 02/01/2007 CM LATISHAH
tpc from ee rqst to speak with cm, regarding
claim decision, cm n/a call xferd to cm vm
[Time Note Created : 4:59 PM ]

---

A625007022-0001-01 02/05/2007 CM JDUHIGG
tpc from ee to speak to cm.  advised no change
in status. ee vu.  trans to cm
[Time Note Created : 9:56 AM ]

---

A625007022-0001-01 02/05/2007 MD TPAYTON
01/30/07 rec'd 01/30/07 MD note- Dr. Chein-
doc# 2741153

Melissa Gardner Is still disabled from work.
She has an open L45 disc demonstrated at
4/25/06 discogram and has concordant history
and symptoms. On exam today her Straight leg
raising is positive an the right at 10 degrees
and on the left at 30 degrees. She Is unable to
arise even from a chair without a 25 pound hand
assist. She has to roll to erect from bed.

She should NOT work until she has found
surgical intervention. Our local surgical
community, now having experienced Phase II
clinical trials of the Charlte disc. Feels
strongly that she should wait for the release
of this product. The distribution of her pain
Is not conducive to dorsal Column Stimulator
suppression. Although she could be fused, I
have to defer to our surgical opinion.

She still cannot sit or stand for any period of
more than about 3 minutes, which is hardly
compatible with the workplace.

DDG: No impact to DDG, cm to send MAD letter
[Time Note Created : 9:58 AM ]

---

A625007022-0001-01 02/05/2007 CM TPAYTON
rtc to ee - cm advised 01/30/07 med note from
Dr. Chein was rec'd and reviewed but cm could
not overturn denial. CM advised ee of her right
to appeal decision. EE became upset and reports
she can't work , needs to pay bills. She spends

```
Date: 02/28/2008  2:51pm         User: aarcher              Page:    99
================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
================================================================================


--------------------------- NOTES ---------------------------

Event/Clmnt/Claim   Date        Tp Examiner
------------------- ----------- -- ---------------------------------------------
                                   her day lying flat on her back, using a tens
                                   unit. She reports when she showers, bathe,
                                   prepare meals or help her children with
                                   homework she has severe pain. She also reports
                                   she gets help around the house. LOV 01/30/07,
                                   NOV- None sched.  EE req to speak with ABUM,
                                   call transferred to ABUM VM.
                                   [Time Note Created :11:06 AM ]
--------------------------------------------------------------------------------
A625007022-0001-01 02/05/2007 SR EMCGREW
                                   recd call from ee. ee wanting rtc re: denial.
                                   req'ing rtc
                                   [Time Note Created : 3:58 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 02/06/2007 SR EMCGREW
                                   rtc to ee. ee states she is upset that claim is
                                   denied because IME md was paid off to say claim
                                   should be denied.

                                   ee states her md's are top notch & accliamed &
                                   she isn't being paid. ee states she is
                                   currently laying on the couch on a heating pad
                                   & is on so much pain meds she is unfunctional.
                                   ee reports there is no way to explain how
                                   horrible the situation is.

                                   ee states she is awaiting approval for disk
                                   replacement sx.

                                   appt w/neurosurgeon on 02/28/07

                                   asked ee if it would be okay for SR to review
                                   new med & f/u w/her tomorrow. ee agreed.
                                   [Time Note Created : 3:59 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 02/07/2007 SR EMCGREW
                                   reviewed med & there is no significant cx in
                                   ee's condtition since IME that would support
                                   reversal.
                                   IME md recommending rtw w/r&ls to cx positions
                                   as needed & dept was willing to accommodate ee;
                                   however, ee has not returned to work to date.
                                   updated med does not support reversal of denial
                                   from 01/19/07 to the present. madd letter has
                                   been sent.
                                   [Time Note Created : 5:37 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 02/07/2007 CM EMCGREW
                                   call to ee to advise that SR had reviewed med &
```

R-0165

=================================================================
Claim Number : A625007022-0001-01                  Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=================================================================

------------------------- NOTES -------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
-----------------   -------   -- ---------------------------------

                              SR unable to reverse entire denial period.
                              explained rationale for upholding denial. ee
                              states IME md was not correct. EE states IME md
                              lied. EE states there is no way that she can
                              return to job sitting for 8 hr period even
                              w/ability to cx'd positions

                              -ee states she spends time lying down. EE
                              states she is still awaiting approval from FDA
                              for sx.

                              suggested ee may want to appeal.
                              [Time Note Created : 6:06 PM ]
----------------------------------------------------------------
A625007022-0001-01 02/08/2007 EX TPAYTON
                              Form Letters Merged

                              Form Letter(s): IDSC MAD
                              Created On: 02/08/07


                              Sent to EE
                              [Time Note Created : 1:23 PM ]
----------------------------------------------------------------
A625007022-0001-01 02/08/2007 CM TIFFANYT
                              EE tpc for receipt of med; none; EE will f/u
                              w/MDO;
                              [Time Note Created : 3:49 PM ]
----------------------------------------------------------------
A625007022-0001-01 02/09/2007 CM TPAYTON
                              rec'd msg from ee inicating addlt meds will be
                              forwarded
                              [Time Note Created :10:03 AM ]
----------------------------------------------------------------
A625007022-0001-01 02/09/2007 CM YCULLAR
                              EE cld  to ck if any medical was rcvd Advised
                              no medical noted
                              [Time Note Created :12:22 PM ]
----------------------------------------------------------------
A625007022-0001-01 02/09/2007 CM TPAYTON
                              EE called regarding her claim denial and
                              wanting to s/w a supervisor, called bum
                              transferred call.
                              **** NOTE CREATED BY: larryft ****
                              [Time Note Created : 2:24 PM ]
----------------------------------------------------------------
A625007022-0001-01 02/09/2007 SR TVLASIC
                              Tcf: EE/transfer from csr/ee calling in regards

```
Date: 02/28/2008  2:51pm          User: aarcher            Page:    101
==============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     -- INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
==============================================================================


---------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------------------------------------------------------------------
                            to her claim denial.  EE stating she is in
                            severe pain and unable to rtw.  EE disputing
                            IME's findings that she can rtw.  This bum
                            advised ee to file an appeal of her claim
                            denial if she disputes her claim denial.  EE
                            also advised she can request a copy of her file
                            free of charge if she wishes to view what is in
                            her file.  EE vu and thanked me for my
                            assistance.
                            [Time Note Created : 2:46 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 02/09/2007 CM TPAYTON
                            P/c from ee the information bum requested has
                            been sent and she sent her request for her file
                            as well.
                            **** NOTE CREATED BY: larryft ****
                            [Time Note Created : 3:00 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 02/09/2007 SR TVLASIC
                            tcf: ee/message left on my vmx/per ee, her
                            husband has faxed her request into idsc, attn
                            tom vlasic
                            [Time Note Created : 3:46 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 02/12/2007 CM TPAYTON
                            02/09/07 rec'd letter from ee req copy of her
                            file- doc# 2784704

                            req forwarded for processing
                            [Time Note Created :10:31 AM ]
------------------------------------------------------------------------------
A625007022-0001-01 02/13/2007 ST AARCHER
                            Rec'd ee file copy request, doc.#2784704, fwd
                            to BUM for review.
                            [Time Note Created :11:24 AM ]
------------------------------------------------------------------------------
A625007022-0001-01 02/15/2007 SR EMCGREW
                            file reviewed & cleared for mailout.
                            removed the $1650.00 invoice from MCN (pg #21
                            of 236 pgs) for IME.

                            file returned to office support for mailing.
                            [Time Note Created :10:43 AM ]
------------------------------------------------------------------------------
A625007022-0001-01 02/15/2007 ST AARCHER
                            Copy of file and juris notes to ee per written
                            request, mailed FEDEX on February 15, 2007,
                            tracking number 7981 0872 2040.
```

R-0167

```
Date: 02/28/2008  2:51pm          User: aarcher          Page:   102
===============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
===============================================================================


------------------------------ NOTES ----------------------------------

Event/Clmnt/Claim   Date       Tp Examiner
-----------------   --------   -- ----------------------------------------

                              [Time Note Created : 1:53 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 02/22/2007 RH JACKIEC
                              User jackiec took pending payment to MELISSA
                              GARDNER off hold.
                              **** NOTE CREATED BY: SYS ****
                              [Time Note Created : 8:07 AM ]
-------------------------------------------------------------------------
A625007022-0001-01 02/22/2007 RH JACKIEC
                              User jackiec took pending payment to MELISSA
                              GARDNER off hold.
                              **** NOTE CREATED BY: SYS ****
                              [Time Note Created : 8:07 AM ]
-------------------------------------------------------------------------
A625007022-0001-01 03/23/2007 CN JEFFFT
                              Call from Angela Francis at eLink- eLink is
                              receiving an EOB error on their.  Angela is
                              requesting that the denied time on this claim
                              be broken up in order to correct error.  Opened
                              claim to adjust time tracking.
                              [Time Note Created :11:20 AM ]
-------------------------------------------------------------------------
A625007022-0001-01 07/20/2007 ER JPEREZ
                              Appeal rqst rcvd w/meds from attorney on
                              07/19/07. doc 422007072001321.  The appeal is
                              for STD and LTD (A625027340-0001-01).
                              **** NOTE CREATED BY: danm ****
                              [Time Note Created :12:24 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 07/20/2007 SR DANM
                              Appeal Triage:

                              Appeal request received from EE's attorney for
                              LTD denial and STD denial (A625007022-0001-01).

                              Dx: in STD claim - annular tear @ L4- L5,
                              chronic degenerative disc disease

                              (LTD was denied because EE did not meet waiting
                              period.)

                              Appeal request assigned to Appeal Specialist
                              for both the STD and LTD claim.
                              [Time Note Created :12:32 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 07/20/2007 CI DANM
                              Examiner change:  From:  tpayton  To:  stkane
                              **** NOTE CREATED BY: SYS ****
                              [Time Note Created :12:33 PM ]
-------------------------------------------------------------------------
```

R-0168

```
-----------------------------------------------------------------
A625007022-0001-01 07/20/2007 AP STKANE
                        APPEALS ACTION PLAN:
                        1. Review EE file & appeal letter for appeal
                        review
                        2. Call EE for initial contact & explain appeal
                        review
                        3. Determine if add'l med is needed to perfect
                        claim.
                        4. F/u with EE as needed.
                        5. Consider IPA Review.
                        6. Make final appeal determination.
                        7. Notify EE/dept/payroll & render decision in
                        JURIS
                        -**AS will also confirm that the original
                        denial letter was sent to EE by DS.
                        [Time Note Created : 1:43 PM ]
-----------------------------------------------------------------
A625007022-0001-01 07/20/2007 EX JPEREZ
                        Form Letter(s): IDSC AIT Acknowledgement
                        Created On: 07/20/07

                        [Time Note Created : 4:11 PM ]
-----------------------------------------------------------------
A625007022-0001-01 07/20/2007 EX JPEREZ
                        Form Letter(s): IDSC Appeal Disability Notice
                        Email
                        Created On: 07/20/07

                        [Time Note Created : 4:15 PM ]
-----------------------------------------------------------------
A625007022-0001-01 07/25/2007 LG STKANE
                        Letter from Atty/Robert J. Rosati w/ ERISA Law
                        Group LLP dated 07/17/07 rec'd 07/21/07 stating
                        representing ee for LTD & STD claims.
                        410707211138003
                        [Time Note Created :11:12 AM ]
-----------------------------------------------------------------
A625007022-0001-01 07/25/2007 ST STKANE
                        INITIAL APPEAL FILE REVIEW:
                        File reviewed and appeal rec'd by AS
                        AS confirmed EE's demographic information & MD
                        contact info.
                        Plan: AIT SD

                        FDA: 03/13/06
                        BA: 03/20/06 thru 01/18/07
                        BU: 01/19/07 thru SD EOB (03/18/07)
                        RTW: none
                        JOB: Marketing Support Specialist
                        JOB classification: Sed
                        MDD: 08/07/07
                        Denial letter sent to EE: 01/26/07
                        Denial Reason: PA-med did not support
                        Dx: Intractable back pain; L4 Disc syndrome;
                        Bilat L4 Radiculopathy; Left C7 Radiculopathy,
                        L4 & L5 Intradiskal pain
                        IPA specialty: Pain Mgmt, Neurosurgery

                        Med doc rec'd w/ Appeal letter: none

                        Medical in file:
```

```
Date: 02/28/2008  2:51pm            User: aarcher              Page:    104
==================================================================================
Claim Number : A625007022-0001-01                          Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==================================================================================
--------------------------------- NOTES -----------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
------------------  ------   -------------------------------------------------------
```

                         Proctor Hospital - ER Report 03/13/06, H&P
                         03/13/06 by Adams MD, Assessment 03/13/06 by
                         Dunaway MD; MRI of L/S 03/14/06, MRI of C/S
                         03/23/06, Pain Mgmt consult 03/14/06 by Chien
                         MD, Neurosurgery consult 03/15/06 by Dinh MD,
                         urine pregnancy test 03/13/06

                         Flores MD/PM&R - Eval, Neurosensory testing,
                         EMG 04/03/06

                         Chien MD/Pain Mgmt - O/V 03/14/06 & 08/24/06;
                         ESI reports 03/15/06 & 04/17/06; "OK to travel"
                         note 04/04/04; Off work note 04/18/06; CT
                         Lumbosacral spine 04/20/6, L4-L5 Diskogram
                         04/20/06; L4 & L5 Indradiscal block &
                         Discography report 07/24/06; Letters 05/03/06,
                         08/09/06, 09/07/06, 01/30/07

                         Dinh MD/Neurosurgeon - Off work slip 06/22/06,
                         NP O/V 06/16/06, MD check 06/28/06, MD O/V
                         08/04/06

                         Delheimer MD/Neurosurgery - IME report 01/08/07

                         ***Additional information that may be needed?
                         (AS will discuss with EE at initial
                         contact)-File may be complete unless add'l med
                         available for review.
                         [Time Note Created : 4:41 PM ]
------------------------------------------------------------------------------------
A625007022-0001-01 07/25/2007 LG STKANE
                         INITIAL CALL TO ATTORNEY from Appeal
                         Specialist-
                         TCT Atty/Robt J. Rosati at 559-256-9800.
                         AS called Atty to discuss appeal review and go
                         over medical info in file to determine if file
                         complete or add'l med available prior to
                         proceeding with appeal review.
                         MDD: 08/07/07
                         Left vm for Atty TCB.
                         [Time Note Created : 4:43 PM ]
------------------------------------------------------------------------------------
A625007022-0001-01 07/25/2007 LG STKANE
                         RCF Atty.
                         Telephone conference with EE by Appeal
                         Specialist (AS). AS Verified that the EE is
                         requesting an appeal for the denied time frame
```

R-0170

========================================================================
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
========================================================================

-------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim    Date      Tp Examiner
------------------    -------   --  ----------------------------------------

                               in this claim from 01/19/07 thru SD EOB. AS
                               confirmed with Atty-Diagnosis, reason for being
                               off work to determine specialty of IPA for
                               appeal review (detail info below). Reviewed the
                               medical information contained in the file,
                               discussed how to perfect claim if needed. AS
                               confirmed TPO listed below as the treating
                               providers and EE did not see any other TPO's
                               during the appealed time frame. AS discussed
                               the Atty on the ERISA Appeal Regulations. If
                               add med needed for appeal review then it will
                               need be received by MDD. AS informed that the
                               appeal decision is final, next step is to file
                               suit if they choose this after appeal decision
                               is rendered.

                               *List of TPO and specialty:
                               1. Dr. Bruce Chein - pain mgmt
                               2. Dr. Dihn - neurosurgeon

                               AS went over medical rec'd and medical in
                               file-(see previous notes for med rec'd)

                               **Atty stated NEED ADDITIONAL MED from MD for
                               appeals review.

                               *We Need- Additional documentments being sent
                               in mail which were referenced in appeal request
                               rec'd via fax (approx 1" worth of data).
                               Provided QRU fax number and mailing address for
                               additional information.
                               ---Once this info requested is obtained file
                               will be considered complete according to Atty.
                               *Med Due Date- 08/07/07
                               *AS informed Atty that is very important to
                               stay in contact with QRU, if not then due to
                               the 45 day time frame set by ERISA for appeal,
                               we  may have to proceed with the process if
                               Atty does not respond to our contacts. AS
                               explained the tolling process to the Atty.

                               *Atty confirmed -Reason for time off
                               work/symptoms/diagnosis- Intractable back pain;
                               L4 Disc syndrome; Bilat L4 Radiculopathy; Left
                               C7 Radiculopathy, L4 & L5 Intradiskal pain.
                               "Pain/problems all thru the back."
                               IPA specialty: Pain Mgmt, Neurosurgery
                               *RTW?- EE has not RTW, ee is permanently

R-0171

Date: 02/28/2008  2:51pm              User: aarcher                    Page:   106
```
===============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===============================================================================
```

```
------------------------------ NOTES ------------------------------------
```

```
Event/Clmnt/Claim   Date        Tp Examiner
------------------  ----------  --  --------------------------------------
```

```
                    disabled.
                    *AS gave EE a brief explanation of disability
                    criteria for receiving wage replacement
                    benefits-Med has to support EE's inability to
                    function in their job and requires medical
                    information from TPO to support severity of
                    symptoms, inability to perform job duties and
                    address functionality related to their job
                    duties.

                    AS noting not part of process to provide IPA
                    report for rebutt w/out subsequent request for
                    medical info which will be added to file.
                    ** Atty verbalized understanding and denies any
                    questions at this time.
                    [Time Note Created : 5:41 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 07/26/2007 LG STKANE
                    Letter by Atty/Robt J. Rosati rec'd via fax
                    07/26/07, noting initial contact w/ AS, &
                    appeal letter w/ supportive medical
                    documentation being sent to new QRU PO Box via
                    US Mail.
                    422007072600537021
                    [Time Note Created : 6:04 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 08/02/2007 CM STKANE
                    Declaration of ee rec'd via mail 07/27/07.
                    4107072700199621, 4107072700199521

                    Added to claim file.
                    [Time Note Created : 2:56 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 08/02/2007 MD STKANE
                    Medical records rec'd via mail 07/27/07.
                    4107072700199421, 4107072700199321

                    Duplicate records as on file; Medication pt
                    information/education literature.
                    [Time Note Created : 3:07 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 08/02/2007 MD STKANE
                    Medical records & documents of legal procedings
                    rec'd via mail 07/30/07.
                    4107073000389221

                    Duplicate records as on file
```

R-0172

Date: 02/28/2008  2:51pm          User: aarcher                    Page:   107

=================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
=================================================================


------------------------------ NOTES ------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
-----------------  ---------- -- ----------------------------------

                   Website printout for MCN, Consultant's
                   agreement for MCN, Consultant Application,
                   Website printout for Delheimer MD & Innovative
                   Medical Evaluations
                   [Time Note Created : 3:26 PM ]
-----------------------------------------------------------------
A625007022-0001-01 08/02/2007 LG STKANE
                   Documents of legal procedings rec'd via mail
                   07/30/07.
                   4107073000389221

                   Opinion of the court for Appeal of Circuit
                   Court for 13th Judicial Circuit, Terry L.
                   Siekierka (plaintiff-Appellant) vs. United
                   Steel Deck, Inc filed 05/04/07.

                   WC claim decision 05/11/99 for Michael Poli
                   (applicant) vs. Fox Midwest Transport
                   (employer) and Liberty Mutual Fire Ins Co
                   (Insurer)

                   WC Commissioner Decision Geri Siegfried vs.
                   Eagle Food Ctr 04/30/02

                   Opinion of the court Kathleen M. Martin
                   (plaintif-appellant) vs. Joel D. Sally
                   [Time Note Created : 3:57 PM ]
-----------------------------------------------------------------
A625007022-0001-01 08/02/2007 LG STKANE
                   Letter dated 07/30/07 by Atty/Robt J. Rosati
                   rec'd via fax 07/30/07.
                   422007073000902821

                   This is in response to Mr. Stephan Kane's
                   letter of July 26, 2007. Ms. Gardner appealed
                   both the STD and LTD by letter dated July
                   19,2007. This serves to confirm that if Ms.
                   Gardner's STD benefits are reinstated, that her
                   LTD claim will be reviewed at the exhaustion of
                   her STD benefit period.
                   [Time Note Created : 4:06 PM ]
-----------------------------------------------------------------
A625007022-0001-01 08/02/2007 LG STKANE
                   5 DAY CALL- TCT Atty/Robt J. Rosati at
                   559-256-9800 to f/u on medical status. Left
                   detailed vm.

                   AS called Atty to f/u noting rec'd records via

```
========================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
========================================================================
```

----------------------------- NOTES ------------------------------------

```
Event/Clmnt/Claim   Date        Tp Examiner
------------------- ----------  -- ------------------------------------
                               mail 07/27/07 & 07/30/07: medical records were
                               duplicates of all medical records on file; also
                               rec'd copies of court opinions & website
                               printouts; still no add'l medical info from
                               MDs; most recent medical record is letter dated
                               01/30/07 by Chien MD. MDD 08/07/07-EE needs to
                               f/u w/ MD office to make sure we get medical by
                               MDD. If EE needs an extension to the current
                               MDD-please contact Appeal Specialist/Quality
                               Review Unit by MDD to request additional time
                               to allow for additional medical to be
                               rec'd-(tolling process).
                               Also verified if SD benefits are reinstated
                               thru SD EOB 52 wk period, ee's LD claim will be
                               re-evaluated by LD team.
                               [Time Note Created : 4:12 PM ]
-----------------------------------------------------------------------
A625007022-0001-01 08/03/2007 LG STKANE
                               Letter dated 07/30/07 by Atty/Robt J. Rosati
                               rec'd via mail 08/03/07.
                               4107080300312621

                               Duplicate letter as rec'd via fax 07/30/07 &
                               documented in LG note below dated 08/02/07.
                               [Time Note Created : 2:55 PM ]
-----------------------------------------------------------------------
A625007022-0001-01 08/07/2007 LG STKANE
                               MDD- TCT Atty/Robt J. Rosati at 559-256-9800.

                               AS Called Atty to f/u-Med due date 08/07/07-No
                               add'l medical info rec'l from MD. Since no
                               add'l medical info rec'd by MDD and Atty did
                               not request add'l time to provide medical info
                               for appeal review the claim will be considered
                               complete and appeal process will proceed with
                               sending claim to IPA for review-unless Atty
                               responds to this call within 2 business days to
                               request add'l time for medical to be rec'd by
                               Quality Review Unit for appeal review (tolling
                               process). Atty vu, states he is checking w/ ee
                               to see if she has further info. Not requesting
                               tolling at this time but WCB by 08/09/07 if
                               requesting tolling.
                               [Time Note Created : 1:04 PM ]
-----------------------------------------------------------------------
A625007022-0001-01 08/10/2007 AP STKANE
                               No add'l medical info rec'd; no call back from
                               atty to request tolling.
```

R-0174

Date: 02/28/2008  2:51pm            User: aarcher                    Page:    109

```
==========================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
==========================================================================

------------------------------ NOTES ------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------- ---------- -- ------------------------------------
```

```
                          * Send to IPA revie
                          Neurosurgery
                          [Time Note Created            8 of 12
------------------------------------------
A625007022-0001-01 08/13/2007 MD STKANE
                          Per Insurance Appea
                          file rec'd; IPA rep
                          42200708130024O721
                          [Time Note Created :
------------------------------------------
A625007022-0001-01 08/14/2007 SR DANM
                          Claim reviewed.  EE
                          appeal.  Appeal Spec
                          attorney, explained
                          file. The claim was
                          not support disabili
                          was submitted with t
                          Duplicate medical was
                          appeal process.  The
                          appropriate specialis
                          physician advisor rev    ... ...c is pending
                          the IPA reviews. The appeal determination
                          remains pending.
                          [Time Note Created : 9:05 AM ]
------------------------------------------
A625007022-0001-01 08/17/2007 MD STKANE
                          Rec'd IPA dated 08/17/07 from Insurance
                          Appeals, LTD -
                          422007081700486921

                          Dr. Philip Jordan Marion - Board Cert Pain Mgmt
                          Teleconference was attempted-No

                          EE's subjective c/o unsubstantiated by the
                          clinical findings. Medical documentation does
                          not support severity of symptoms or inability
                          to perform their job duties.

                          Rationale: The patient had sudden onset of back
                          pain on or about 3/13/06, not associated with
                          any specific trauma or precipitating event.
                          Since that time, she has undergone epidural
                          steroid injections and nerve block. However,
                          her complaint of back pain has persisted. The
                          treating physician, however, requested surgical
                          intervention.
                          However, from pain management perspective,
```

```
Date: 02/28/2008  2:51pm        User: aarcher              Page:   110
```
========================================================================
```
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
```
========================================================================

------------------------------- NOTES ----------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------- --------- -- ----------------------------------------

there remains no objective impairment
precluding the patient from performing routine
duties of her regular job. She remained
independent with activities of daily living,
ambulation and not restricted from driving a
motor vehicle. In addition, she is otherwise
functionally capable of performing routine
duties of a sedentary job.


Dr. J. Parker Mickle - Board Cert Neurosurgeon
Teleconference was attempted-No

EE's subjective c/o unsubstantiated by the
clinical findings. Medical documentation does
not support severity of symptoms or inability
to perform their job duties.

Rationale: The rationale for these opinions is
that this individual is experiencing from
chronic pain and has minimal degenerative
disease in the cervical and lumbar spines and a
completely normal neurological exam, which
would result in no need for any significant
restrictions and limitations in the performance
of her usual occupation.

For review of complete IPA report refer to
claim/report filed.
[Time Note Created : 5:46 PM ]
------------------------------------------------------------------------
A625007022-0001-01 08/17/2007 MD STKANE
Requested correction to Pain Mgmt IPA report
from Insurance Appeals LTD (no impact on claim
decision).
[Time Note Created : 5:47 PM ]
------------------------------------------------------------------------
A625007022-0001-01 08/20/2007 MD STKANE
Corrected Pain Mgmt IPA report rec'd via fax
08/20/07 from Insurance Appeals LTD.
422007082000295621

(No impact on claim decision.)
[Time Note Created :10:41 AM ]
------------------------------------------------------------------------
A625007022-0001-01 08/20/2007 ST STKANE
IPA review completed. Appeal decision letter
written and forwarded to BUM for approval of

R-0176

```
=====================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
=====================================================================


-------------------------- NOTES ------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
------------------ -------- -- ---------------------------------------
                            letter/decision prior to making final appeal
                            decision, calling EE, email to supv, changing
                            TT/status and entering notes in system.
                            [Time Note Created :10:41 AM ]
---------------------------------------------------------------------
A625007022-0001-01 08/21/2007 SR DANM
                            Reviewed appeal determination letter.  Agree
                            with appeal determination.  Approved and routed
                            appeal determination letter for mailing to the
                            EE's attorney with a copy to the EE.  The
                            Appeal Specialist will communicate the appeal
                            determination to the EE's attorney, update the
                            ERISA screen, notify the EE's supervisor and
                            close the claim.
                            [Time Note Created : 7:51 AM ]
---------------------------------------------------------------------
A625007022-0001-01 08/21/2007 MD STKANE
                            Requested add'l correction to Pain Mgmt IPA
                            report from Insurance Appeals LTD (no impact on
                            claim decision).
                            [Time Note Created :11:10 AM ]
---------------------------------------------------------------------
A625007022-0001-01 08/21/2007 ER STKANE
                            Appeal decision rendered-decision to deny
                            benefits from 01/19/07 thru RTW is upheld.

                            Medical did not support disability for appealed
                            time period.
                            Updated TT, claim status and ERISA screen.

                            ***Appeal letter sent to EE in regular and
                            certified mail- contains detailed clinical
                            information regarding the basis of our appeal
                            decision and results from IPA.
                            ***Appeal decision-denial upheld email sent to
                            supervisor and cc to file.
                            [Time Note Created :12:12 PM ]
---------------------------------------------------------------------
A625007022-0001-01 08/21/2007 BA STKANE
                            Appeal decision rendered-decision to deny
                            benefits from 01/19/07 thru RTW is upheld.
                            [Time Note Created :12:12 PM ]
---------------------------------------------------------------------
A625007022-0001-01 08/21/2007 ER STKANE
                            August 21, 2007
```

R-0177

Date: 02/28/2008  2:51pm          User: aarcher                    Page:   112

```
===============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===============================================================================
```

---------------------------------- NOTES ------------------------------------

```
Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------- -- -----------------------------------------------
```

ROBERT J. ROSATI
ERISA LAW GROUP, LLP
2055 SAN JOAQUIN STREET
FRESNO, CA 93721

Re:      Ameritech Sickness and Accident Disability
Benefit Plan
   Claim Number: A625007022-0001-01
   Your Client: GARDNER, MELISSA

Dear Mr. Rosati:

Your client's claim appealing the denial of
sickness disability benefits under the
Ameritech Sickness and Accident Disability
Benefit Plan (SADBP) was reviewed by the AT&T
Integrated Disability Service Center (IDSC)
Quality Review Unit.

The AT&T Integrated Disability Service Center
(IDSC) Quality Review Unit reviewed all
submitted material and information regarding
the denial of sickness disability benefits by
the AT&T Integrated Disability Service Center
for your client's claim with a first date
absent of March 13, 2006.  After this review,
the Unit determined to uphold the denial of
benefits based on the following:

The SADBP provides in Section 2, Paragraph 2.4
that a claim for sickness disability benefits
must be supported by objective medical
documentation that prevents the Eligible
Employee from performing the duties of his/her
last Company job with or without reasonable
accommodation.

The Unit and the independent physician advisors
reviewed medical records from Proctor Hospital;
Robert B. Adams, MD; Frank R. Dunaway, MD;
Bruce B. Chien, MD; Richard A. Flores, MD;
George A. Gentry, MD; Terrance M. Brady, MD;
Cristin Rassi, APN, CNS; Dzung H. Dinh, MD; and
Steven C. Delheimer, MD dated March 13, 2006
through January 30, 2007.

Philip Jordan Marion, MD, a specialist in Pain
Management, conducted a review of the medical

R-0178

Date: 02/28/2008  2:51pm          User: aarcher                    Page:    113
==================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632        - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065       - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==================================================================================

-------------------------------------- NOTES --------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
-------------------- ---------- -- --------------------------------------------------

records on file as part of the appeal process.
The specialist noted your client had sudden
onset of back pain on or about March 13, 2006,
not associated with any specific trauma or
precipitating event.  Since that time, she has
undergone epidural steroid injections and nerve
block.  However, her complaint of back pain has
persisted.  The treating physician, however,
requested surgical intervention.  However, the
independent specialist noted that from a pain
management perspective, there remains no
objective impairment precluding the patient
from performing routine duties of her regular
job.  He noted she remained independent with
activities of daily living, ambulation and not
restricted from driving a motor vehicle.  In
addition, she is otherwise functionally capable
of performing routine duties of a sedentary
job.  The specialist determined Ms. Gardner is
not disabled from her regular job as of January
19, 2007 to present.

J. Parker Mickle, MD, a specialist in
Neurosurgery, also conducted a review of the
medical records on file as part of the appeal
process.  The specialist noted your client's
diagnoses of polyneuropathy with disk disease
at L4, chronic migraine, obesity, and x-ray
evidence of chronic degenerative disease at
multiple levels in the cervical and lumbar
spines without evidence of progressive
neurocompression.  The specialist noted her
neurological exams on multiple occasions by Dr.
Chien, Dr. Flores, and others have always been
normal with normal reflexes, normal muscle
strength, and normal sensory examinations.  He
determined Ms. Gardner is not disabled from her
regular job as of January 19, 2007 to present
based on all the medical information provided
demonstrating no significant medical
documentation of her condition that would
prevent this individual from performing her
usual occupation.  The specialist noted the
rationale for these opinions is that Ms.
Gardner is experiencing from chronic pain and
has minimal degenerative disease in the
cervical and lumbar spines and a completely
normal neurological exam, which would result in

R-0179

Date: 02/28/2008  2:51pm          User: aarcher               Page:   114
===========================================================================
Claim Number : A625007022-0001-01              Date Loss : 03/12/2006
Client     : 1632      ~ AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
===========================================================================

---------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
-----------------  -------- -- -------------------------------------------------

                            no need for any significant restrictions and
                            limitations in the performance of her usual
                            occupation.

                            Although some findings are referenced, none are
                            documented to be so severe as to prevent your
                            client from performing the job duties of a
                            Marketing Support Specialist (SRL) [IBEW21]
                            with or without reasonable accommodation from
                            January 19, 2007 through the her return to work
                            date.

                            Under the terms of the Ameritech Sickness and
                            Accident Disability Benefit Plan the decision
                            of the Unit is final.

                            Your client shall be provided, upon written
                            request and free of charge, reasonable access
                            to, and copies of, all documents, records, and
                            other information relevant to your client's
                            claim benefits.

                            Your client has the right to bring suit under
                            Section 502(a) of the Employee Retirement
                            Income Security Act of 1974 after there has
                            been full exhaustion of your client's appeal
                            rights as enumerated in the plan's claim
                            procedures and those rights have been exercised
                            and the Plan benefit's requested by said
                            claimant in such appeal have been denied in
                            whole or in part by your client's employer.

                            Sincerely,


                            Stephen Kane, LCSW
                            Appeal Specialist
                            AT&T Integrated Disability Service Center
                            (IDSC) Quality Review Unit

                            cc: GARDNER, MELISSA
                            [Time Note Created :12:13 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 08/21/2007 LG STKANE
                            TCT Atty/Robt J. Rosati at 559-256-9800 to
                            provide claim status. Trans to paralegal/Jill.
                            AS advised Appeals Decision has been rendered

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:   115
===============================================================================
Claim Number : A625007022-0001-01               Date Loss : 03/12/2006
Client      : 1632     - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
===============================================================================

------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
-----------------   --------  --  ----------------------------------------

                              and the unit decided to uphold the denial for
                              the appealed time period. (See TT screen and
                              prior notes for dates and MD note for
                              rationale) Medical did not support disability
                              for this time period-did not support severity
                              of symptoms or inability to perform job duties.
                              The appeals decision is final, but EE has
                              option to file suit if they choose. Letter is
                              being sent to Atty & EE via regular & cert mail
                              with details regarding our decision to uphold
                              the denial, IPA results and the clinical basis
                              of our appeals decision. Paralegal vu.
                              [Time Note Created :12:17 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 08/21/2007 EM STKANE
                              From:      Kane, Stephen
                              Sent:      Tuesday, August 21, 2007 12:18 PM
                              To:        'hf1383@att.com'
                              Subject:   IDSC Appeal Disability Benefit Denial
                              Notice-Claim-A625007022000101
                              [Time Note Created :12:18 PM ]
-------------------------------------------------------------------------
A625007022-0001-01 08/21/2007 ER STKANE
                              AT&T Integrated Disability Service Center
                              (IDSC)
                              APPEAL DISABILITY BENEFIT DENIAL NOTICE
                              08/21/2007

                              ATTENTION: HILLARI Y FLEMING
                               RC: AYJ4D2060

                              Employee Name: MELISSA GARDNER
                                Employee ID:
                              Employee Job Title: MARKETING SUPPORT SPEC
                              (SRL) [IBEW21]
                                Employee NCS Date: 02/12/2001
                              IDSC Claim #: A625007022-0001-01
                                Plan: AIT SADBP
                              First Day Absent: 03/13/2006
                                First Day of Disability: 03/20/2006
                              CLAIM STATUS
                              ¢ Disability Benefits Approved from
                              through        .

                              ¢ Disability Benefits Denied (if appropriate)
                              01/19/2007 through Return to Work Date.

                                ¢ Date claimant contacted regarding the
```

R-0181

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:   116
==============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client     : 1632        - AT&T Inc.
Account    : 16320730   - TC - Ameritech Services, Inc
Unit       : TC065      - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
==============================================================================


---------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ --------- -- ----------------------------------------------
```

                        denial: 08/21/2007

                        OTHER IMPORTANT INFORMATION
                        ◊ Supervisor Contact Information - Notices are
                        automatically generated and sent to the
                        employee's supervisor as listed in Webphone.
                        If you do not handle disability issues for this
                        employee, please forward to the appropriate
                        person.  If Webphone is incorrect, update with
                        the correct supervisory information.
                        ◊ Disability Resources
                        o Contact the IDSC at 1-866-276-2278 or reply
                        to this notice if you have questions regarding
                        the information provided.
                        o AT&T Disability Status Web site:
                        http://hrweb01.AT&T.com/disability/index.cfm
                        ◊ Time Reporting - For additional information
                        on disability time reporting visit
                        http://eLink.AT&T.com.  It is important that
                        you verify your employee's time reporting once
                        you receive this notice to ensure pay accuracy.
                        ◊ Denied Disability Process - For additional
                        information in managing an employee's absence
                        in the event that s/he is denied disability the
                        supervisor may refer to the Denied Disability
                        Process which is located on the Attendance
                        Management web site
                        (http://hrweb01.AT&T.com/attmgmt/login.asp)and
                        the HR Reference Portal
                        (https://ebiz2.AT&T.com/hrgrefportal/).  It is
                        recommended that you consult with Human
                        Resources, Labor Relations, and Legal prior to
                        making employment decisions for an employee who
                        has been denied disability benefits.

                        PLAN KEY

                        Disability Plan Name       Acronym
                        AT&T Disability Income Plan       AT&T DIP (60)
                        AT&T Disability Income Plan       AT&T DIP (50)
                        AT&T Disability Benefits Plan     AT&T DBP
                        SNET Disability Benefits Plan     SNET DBP
                        Ameritech Sickness and Accident Disability
                        Benefit Plan     AIT SADBP
                        Ameritech Long Term Disability Plan       AIT LTD
                        Pacific Telesis Group Comprehensive Disability
                        Benefits Plan     PTG CDBP
                        Southwestern Bell Corporation Sickness and

R-0182

================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
================================================================================

-------------------------------- NOTES --------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
-----------------   ------    --  ------------------------------------------

                    Accident Disability Benefit Plan  AT&T SADBP
                    Pacific Telesis Group Sickness and Accident
                    Disability Benefit Plan    PTG SADBP

                    RESTRICTED PROPRIETARY INFORMATION

                    hf1383@att.com
                    [Time Note Created :12:19 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 08/21/2007 AP STKANE
                    * Appeal complete
                    * Close claim
                    [Time Note Created :12:19 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 08/21/2007 MD STKANE
                    Corrected Pain Mgmt IPA report rec'd via fax
                    08/21/07 from Insurance Appeals LTD.
                    42200708210072502l

                    (No impact on claim decision.)
                    [Time Note Created : 4:58 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 08/21/2007 ER JPEREZ
                    Uphold ltrs sent via regular and certified
                    mail, 7007 1490 0002 7119 2907 and 7007 1490
                    0002 7119 2914
                    [Time Note Created : 6:33 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 08/29/2007 SR TONYAW
                    File reopened. Atty of EE requested copy of IPA
                    reports prior to determination being rendered.
                    AS to contact the atty and advise that the IPA
                    reports will be sent and the claim toll will be
                    granted for 15 days from today. AS to fax IPA
                    reports to atty for review and confirm reciept
                    with atty tomorrow.  AS to send tolling letter
                    with explanation of toll to allow review of IPA
                    reports.  Decision will be rescinded.  Reviewed
                    and approved letter to be sent to atty with
                    explanation.
                    [Time Note Created : 4:46 PM ]
------------------------------------------------------------------------------
A625007022-0001-01 08/29/2007 LG STKANE
                    TCT Atty/Robt J. Rosati at 559-256-9800. LVMTCB
                    noting per his request on the appeal request to
                    review & comment on IPA reports prior to appeal
                    determination being made, mgmt has determined

```
Date: 02/28/2008  2:51pm              User: aarcher              Page:    118
========================================================================
Claim Number : A625007022-0001-01            Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
========================================================================


-------------------------- NOTES ---------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------- -- ----------------------------------------
                            to rescind the determination letter dated
                            08/21/07, and to submit IPA reports to atty for
                            his review & comment & to allow for submission
                            of further medical info, delaying decision x 15
                            days. Noting further info needs to be submitted
                            by 09/12/07.

                            AS faxed cover letter & IPA reports to atty at
                            fax # 559-256-9795.
                            [Time Note Created : 6:08 PM ]
------------------------------------------------------------------------
A625007022-0001-01 08/29/2007 ER JPEREZ
                            Tolling and IPA Reports sent via regular and
                            certified mail to ee's attorney, 7007 1490 0002
                            7119 4444. Also, cc'ed ee on toll via regular
                            mail.
                            [Time Note Created : 6:21 PM ]
------------------------------------------------------------------------
A625007022-0001-01 09/06/2007 LG LATISHAH
                            tpc from attorney ofc rqst to speak with cm, cm
                            available call xferd
                            [Time Note Created : 4:39 PM ]
------------------------------------------------------------------------
A625007022-0001-01 09/06/2007 LG STKANE
                            TCF Jill w/ ERISA Law Group. Requesting copies
                            of plan documents. AS advised they can obtain
                            plan documents is to call the AT&T Health
                            Benefits Enrollment Center (Hewitt) at
                            877-722-0020 or send a written request to:

                            AT&T Services, Inc.
                            P O Box 29690
                            San Antonio, TX 78205


                            AS verified they did receive AS' communications
                            dated 08/29/07, & plan to submit add'l medical
                            info after reviewing IPA reports. AS noting
                            add'l info has to be rec'd by 09/12/07. Jill
                            vu.
                            [Time Note Created : 4:42 PM ]
------------------------------------------------------------------------
A625007022-0001-01 09/10/2007 LG STKANE
                            Letter from Atty/Robt J. Rosati dated 09/10/07
                            rec'd via fax 09/10/07, letter refutes IPA
                            report; no medical information provided.
                            422007091000884621
```

R-0184

Date: 02/28/2008  2:51pm          User: aarcher                Page:    119

Claim Number : A625007022-0001-01                  Date Loss : 03/12/2006
Client      : 1632       - AT&T Inc.
Account     : 16320730   - TC - Ameritech Services, Inc
Unit        : TC065      - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA

----------------------------------- NOTES -----------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------- --------- -- --------------------------------------------

Dear Mr. Kane:
This letter is in response to your August 29,
2007 letter.
Neither Dr. Marion's report nor Dr. Miekel's
report, either jointly or separately, is
sufficient to support the Plan's denial of
benefits. In Ihet, each report is glaringly
deficient for several reasons:
1. Neither report addresses the pain
medications Ms. Gardner takes. As set forth in
my July 19, 2007 letter, those medications,
standing alone, disable Ms. Gardner.
2. Federal regulations mandate that the plans
consider all information submitted as part of
an appeal. Obviously, the Plans chose not to do
so.
"Failure to consider all factors causing
disability is, standing alone, an abuse of
discretion. See McKoy v. International Paper
Company, _____ F. 3d _____.No. 06-1795 (40 Cir.
2007): denial of benefits based solely on
claimant's physical condition without
addressing claimant's mental condition, also
grounds for the disability claim, constituted
an unreasonable application of the Plan's
definition of disability."
3. Your doctors dismiss pain, using the same
"buzz words:" lack of objective evidence.
Please note: "objective medical documentation"
of an inability to work,is not the same as
["objective evidence"]. Of course there is no
objective evidence of pain: there is never
objective evidence of pain, as such. Any
competent doctor would know this. To expect —
and demand — objective evidence when none is
possible is an abuse of discretion and, from
the doctors' perspectives, demonstrates either
dishonesty or incompetence.
4. Pain as a disabling is also critically and
closely analyzed and evaluated in the "Report
of the Commission on the Evaluation of Pain"
issued in 1986. The Executive Summary is
enclosed. The Commission was appointed by
Congress and consisted of 20 members with
collective experience in the fields of
medicine, law, insurance, and disability
program administration with significant
concentration of expertise in the field of

R-0185

====================================================================

Claim Number : A625007022-0001-01          Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
====================================================================

------------------------------- NOTES -------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------- --------- -- --------------------------------------

                    clinical pain (Executive Summary, p. xi) The
                    report explains that 'Pain is a complex
                    experience, embracing physical, mental, social,
                    and behavioral processes which compromises the
                    quality of life of many individuals. (Report,
                    p. xii.) The report explains that chronic pain
                    syndrome is a recognized condition to which
                    numerous medical, psychological, sociological,
                    and economic factors contribute. (Id. at p.
                    xiii.)
                    The Report's findings include:
                    "1. .. . . Chronic pain and its consequences
                    are inadequately understood by patients, the
                    healthcare system, the public generally, and
                    the Social Security
                    Administration."
                    "4. Chronic pain syndrome is a complex
                    condition that has physical, mental, and social
                    components. Both chronic pain and chronic pain
                    syndrome can be defined in tenns duration and
                    persistence in relation to the extent of
                    demonstrated and observable pathology. However,
                    chronic pain syndrome, as opposed to chronic
                    pain, has the added component of certain
                    recognizable psychological and socioeconomic
                    influence."
                    "5. There is a clear consensus that malingering
                    is not a significant problem, that it can be
                    diagnosed by trained professionals, medical and
                    other, and that increased attention to
                    subjective evidence in the evaluation of the
                    existence and nature of pain will not
                    significantly alter this."
                    "6. Numerous attempts have been made to try to
                    develop methodologies for measuring pain
                    objectively. That is, as yet, not possible
                    because pain is inherently a subjective
                    personal experience and we are necessarily
                    limited to observations of pain behavior,
                    including the person's reports..."
                    "8. There is a lack of knowledge on the part of
                    healthcare professionals generally about
                    chronic pain and chronic pain syndromes and
                    about their impact on the disability system...
                    ." (Report, pp. xvii-xix.)
                    5. The requirement in section Two, paragraph
                    2.4 that a claim for sickness disability
                    benefits must be supported by objective medical

R-0186

=================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=================================================================


------------------------------ NOTES ------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ --------- -- ------------------------------------

documentation that prevents the eligible
employee from performing the duties of his/her
last company job with or without a reasonable
accommodation is fully met by the evidence
submitted by Ms. Gardner:
A. The MRI of 3/14/06, the CT of 4/16/06, the
discogram of 4/20/06, the MRI of 6116/06 are
objective medical evidence of conditions which
cause disabling pain.
B. The known side effects of Ms. Gardner's
medications constitute objective medical
evidence of sickness-caused circumstances that
preclude Ms. Gardner from working.
C. Dr. Marion's opinion is based upon a
erroneous assumptions of fact. He observes that
Ms. Gardner "remained independent with
activities of daily living, ambulation and not
restricted from driving a motor vehicle. In
addition, she is otherwise functionally capable
of performing routine duties of a sedentary
job." This assertion ignores the facts. In her
initial
declaration in support of her appeal Ms.
Gardner unambiguously stated "the medication I
have to take in order to not be in excruciating
pain makes me unable to drive, work and
function on my own." Marion's opinion is not
rendered valid by his patent ignorance of the
facts.
D. Dr. Mickel also ignores medication and
dismisses chronic pain syndrome as something
which should not influence her ability to
perform her usual occupation.
E. The reality here is that in order to treat
chronic pain, Ms. Gardner takes a large number
of serious medications. The pain, alone, is
disabling, the side effects of the medication,
alone, is disabling. The combination of the
pain and side effects of the medication
obviously are disabling. Neither of your new
doctors saw fit to address those issues despite
the fact that those issues set forth the
explicit basis for Ms. Gardner's disability
appeal. A medical opinion that ignores the
facts and that is not based on all the evidence
has no value and is entitled to no deference.
It is arbitrary and capricious and an abuse of
discretion to rely on such a medical opinion in

===================================================================================
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===================================================================================

-------------------------------- NOTES ------------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------  --------- -- -------------------------------------------------

                            the face of the Plan's actual knowledge that
                            the doctors failed to address the issues
                            presented.
                            6. It is also an abuse of discretion to fail to
                            address all evidence submitted in support of an
                            appeal, which evidence necessarily includes Ms.
                            Gardner's declaration (which was obviously not
                            given to either doctor) and the previous appeal
                            letter submitted (again, which was obviously
                            not given to either doctor). See Rekstand v.
                            USBancorp, 451 F. 3d 1114,1121 (lOthCir. 2006):
                            arbitrary and capricious for plan to make its
                            decision to deny disability benefits without
                            giving full and thur consideration to the
                            affidavits submitted by the claimant and her
                            relatives.
                            Ms. Gardner's Supplemental Declaration
                            Also enclosed please find Ms. Gardner's
                            supplemental declaration which addresses her
                            very aggressive attempts to get pain relieve
                            and return to work.
                            Insurance Appeals, LTD
                            This is a biased service whose sole function
                            obviously is to provide "cover" to insurance
                            companies to deny claims. Opinions from biased
                            providers do not support denial of benefits.
                            Conclusion
                            These opinions do not alter the conclusion that
                            Ms. Gardner is disabled and entitled to
                            benefits. These opinions do not support the
                            Plan's decision to deny benefits. Demand is
                            made once again that benefits be paid,
                            retroactive, with interest until and unless it
                            is detennined that Ms. Gardner is no longer
                            eligible for such benefits under the terms of
                            the Plans.
                            [Time Note Created : 3:44 PM ]
-----------------------------------------------------------------------------------
A625007022-0001-01 09/11/2007 CM STKANE
                            Note from atty, ee's Supplementarty Declaration
                            dated 09/11/07 rec'd via fax 09/11/07.
                            422007091100861521

                            SUPPLEMENTAL DECLARATION OF MELISSA GARDNER
                            I, Melissa Gardner, declare and state as
                            follows:
                            1. I make this supplemental declaration in
                            support of my appeal of the denial of my short

Date: 02/28/2008  2:51pm                User: aarcher                Page:   123
================================================================================
Claim Number : A625007022-0001-01                        Date Loss : 03/12/2006
Client     : 1632       - AT&T Inc.
Account    : 16320730 - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
================================================================================

------------------------------ NOTES ------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------  -- -----------------------------------------------
                            and long term disability benefits.
                            2. I am waiting for FDA approval of the double
                            Charite Disc Replacement. I have been waiting,
                            and asking for the replacement surgery since I
                            had to leave work on disability.
                            3. I will be applying to be part of a study
                            group for the procedure for FDA approval. The
                            procedure is in its final phases of
                            negotiations. Once that is complete, I will be
                            applying to be part of the study group for the
                            Charite Disc Replacement. If I am approved
                            through the screening process, the earliest
                            scheduling for the procedure will be late
                            October or Early November.
                            4. I am hoping that the operation will be
                            successful and I will be able to return to
                            work.
                            I declare under penalty of perjury that the
                            foregoing is true and correct and if called as
                            a witness I could testify competently thereto.
                            Executed at _1 :27PM_, _Tuesday_ on _Sept. 11_,
                            2007.
                            Melissa A. Gardner
                            Melissa Gardner
                            [Time Note Created : 2:43 PM ]
----------------------------------------------------------------------
A625007022-0001-01 09/12/2007 LG STKANE
                            TCT Atty/Robt J. Rosati at 559-256-9800. LVMTCB
                            noting rec'd atty's letter dated 09/10/07
                            refuting IPA reports, and ee's supplementary
                            declaration dated 09/11/07. Noting will include
                            this info in making appeal determination.
                            [Time Note Created : 6:37 PM ]
----------------------------------------------------------------------
A625007022-0001-01 09/13/2007 SR TONYAW
                            Reviewed 9/10/07 letter from Robert Rosati,
                            atty of EE and supplemental declaration, dated
                            9/11/07 from EE. There is no new medical
                            information provided. AS to proceed with
                            determination.
                            [Time Note Created : 5:31 PM ]
----------------------------------------------------------------------
A625007022-0001-01 09/13/2007 ST STKANE
                            Discussed w/ QRU Mgr. No new medical info
                            submitted by Atty/ee after review of IPA
                            report. Letter from atty dated 09/10/07 & ee
                            supplemental declaration 09/11/07 have been
                            reviewed but do not need to be sent to IPA for

==========================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==========================================================================


-------------------------------- NOTES ----------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------- --------- -- -----------------------------------------

                    review.
                    Appeal decision letter written and forwarded to
                    BUM for approval of letter/decision prior to
                    making final appeal decision, calling atty,
                    email to supv, changing TT/status and entering
                    notes in system.
                    [Time Note Created : 5:41 PM ]
------------------------------------------------------------------------
A625007022-0001-01 09/13/2007 SR DANM
                    Reviewed appeal determination letter.  Approved
                    and routed appeal determination letter for
                    mailing to the EE's attorney with a copy to the
                    EE.  The Appeal Specialist will communicate the
                    determination to the EE's attorney, notify the
                    EE's supervisor and close the claim.
                    [Time Note Created : 6:40 PM ]
------------------------------------------------------------------------
A625007022-0001-01 09/14/2007 LG STKANE
                    Letter from Atty/Robt J. Rosati dated 09/10/07
                    rec'd via mail 09/14/07.
                    4107091403073721

                    Duplicate as rec'd via fax 09/10/07 &
                    documented below.
                    [Time Note Created :12:11 PM ]
------------------------------------------------------------------------
A625007022-0001-01 09/14/2007 ER STKANE
                    Appeal decision rendered-decision to deny
                    benefits from 01/19/07 thru RTW is upheld.

                    Medical did not support disability for appealed
                    time period.
                    Updated TT, claim status and ERISA screen.

                    ***Appeal letter sent to EE in regular and
                    certified mail- contains detailed clinical
                    information regarding the basis of our appeal
                    decision and results from IPA.
                    ***Appeal decision-denial upheld email sent to
                    supervisor and cc to file.
                    [Time Note Created :12:12 PM ]
------------------------------------------------------------------------
A625007022-0001-01 09/14/2007 BA STKANE
                    Appeal decision rendered-decision to deny
                    benefits from 01/19/07 thru RTW is upheld.
                    [Time Note Created :12:12 PM ]
------------------------------------------------------------------------
A625007022-0001-01 09/14/2007 ER STKANE
                    September 14, 2007

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:   125
================================================================================
Claim Number : A625007022-0001-01         Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
================================================================================

------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ --------- -- ------------------------------------------
```

ROBERT J. ROSATI
ERISA LAW GROUP, LLP
2055 SAN JOAQUIN STREET
FRESNO, CA 93721

Re:     Ameritech Sickness and Accident Disability
Benefit Plan
  Claim Number: A625007022-0001-01
  Your Client: GARDNER, MELISSA

Dear Mr. Rosati:

Your client's claim appealing the denial of
sickness disability benefits under the
Ameritech Sickness and Accident Disability
Benefit Plan (SADBP) was reviewed by the AT&T
Integrated Disability Service Center (IDSC)
Quality Review Unit.

The AT&T Integrated Disability Service Center
(IDSC) Quality Review Unit reviewed all
submitted material and information regarding
the denial of sickness disability benefits by
the AT&T Integrated Disability Service Center
for your client's claim with a first date
absent of March 13, 2006.  After this review,
the Unit determined to uphold the denial of
benefits based on the following:

The SADBP provides in Section 2, Paragraph 2.4
that a claim for sickness disability benefits
must be supported by objective medical
documentation that prevents the Eligible
Employee from performing the duties of his/her
last Company job with or without reasonable
accommodation.

The Unit and the independent physician advisors
reviewed medical records from Proctor Hospital;
Robert B. Adams, MD; Frank R. Dunaway, MD;
Bruce B. Chien, MD; Richard A. Flores, MD;
George A. Gentry, MD; Terrance M. Brady, MD;
Cristin Rassi, APN, CNS; Dzung H. Dinh, MD; and
Steven C. Delheimer, MD dated March 13, 2006
through January 30, 2007.

R-0191

Date: 02/28/2008  2:51pm              User: aarcher                Page:   126

Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA

------------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------  --------  -- -------------------------------------------------

Philip Jordan Marion, MD, a specialist in Pain
Management, conducted a review of the medical
records on file as part of the appeal process.
The specialist noted your client had sudden
onset of back pain on or about March 13, 2006,
not associated with any specific trauma or
precipitating event.  Since that time, she has
undergone epidural steroid injections and nerve
block.  However, her complaint of back pain has
persisted.  The treating physician, however,
requested surgical intervention.  However, the
independent specialist noted that from a pain
management perspective, there remains no
objective impairment precluding the patient
from performing routine duties of her regular
job.  He noted she remained independent with
activities of daily living, ambulation and not
restricted from driving a motor vehicle.  In
addition, she is otherwise functionally capable
of performing routine duties of a sedentary
job.  The specialist determined Ms. Gardner is
not disabled from her regular job as of January
19, 2007 to present.

J. Parker Mickle, MD, a specialist in
Neurosurgery, also conducted a review of the
medical records on file as part of the appeal
process.  The specialist noted your client's
diagnoses of polyneuropathy with disk disease
at L4, chronic migraine, obesity, and x-ray
evidence of chronic degenerative disease at
multiple levels in the cervical and lumbar
spines without evidence of progressive
neurocompression.  The specialist noted her
neurological exams on multiple occasions by Dr.
Chien, Dr. Flores, and others have always been
normal with normal reflexes, normal muscle
strength, and normal sensory examinations.  He
determined Ms. Gardner is not disabled from her
regular job as of January 19, 2007 to present
based on all the medical information provided
demonstrating no significant medical
documentation of her condition that would
prevent this individual from performing her
usual occupation.  The specialist noted the
rationale for these opinions is that Ms.
Gardner is experiencing from chronic pain and

R-0192

Date: 02/28/2008  2:51pm            User: aarcher                  Page:   127
===================================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client     : 1632       - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
===================================================================================

------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ ---------- -- -------------------------------------------

has minimal degenerative disease in the
cervical and lumbar spines and a completely
normal neurological exam, which would result in
no need for any significant restrictions and
limitations in the performance of her usual
occupation.

The Unit also reviewed your letter dated
September 10, 2007 and Ms. Gardner's
"Supplemental Declaration" dated September 11,
2007.  No additional medical records or
examination findings were submitted to rebut
the opinions expressed on the Independent
Physician Advisors' reports.

Although some findings are referenced, none are
documented to be so severe as to prevent your
client from performing the job duties of a
Marketing Support Specialist (SRL) [IBEW21]
with or without reasonable accommodation from
January 19, 2007 through the her return to work
date.

Under the terms of the Ameritech Sickness and
Accident Disability Benefit Plan the decision
of the Unit is final.

Your client shall be provided, upon written
request and free of charge, reasonable access
to, and copies of, all documents, records, and
other information relevant to your client's
claim benefits.

Your client has the right to bring suit under
Section 502(a) of the Employee Retirement
Income Security Act of 1974 after there has
been full exhaustion of your client's appeal
rights as enumerated in the plan's claim
procedures and those rights have been exercised
and the Plan benefit's requested by said
claimant in such appeal have been denied in
whole or in part by your client's employer.

Sincerely,


Stephen Kane, LCSW

R-0193

```
Date: 02/28/2008  2:51pm            User: aarcher                Page:    128
================================================================================
Claim Number : A625007022-0001-01                     Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
================================================================================


-------------------------- NOTES --------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
------------------  -------  -- --------------------------------------------

                            Appeal Specialist
                            AT&T Integrated Disability Service Center
                            (IDSC) Quality Review Unit

                            cc: GARDNER, MELISSA
                            [Time Note Created :12:13 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 09/14/2007 LG STKANE
                            TCT Atty/Robt J. Rosati at 559-256-9800 to
                            provide claim status. AS advised Appeals
                            Decision has been rendered and the unit decided
                            to uphold the denial for the appealed time
                            period. (See TT screen and prior notes for
                            dates and MD note for rationale) Medical did
                            not support disability for this time period-did
                            not support severity of symptoms or inability
                            to perform job duties. The appeals decision is
                            final, but EE has option to file suit if they
                            choose. Letter is being sent to Atty & EE via
                            regular & cert mail with details regarding our
                            decision to uphold the denial, IPA results and
                            the clinical basis of our appeals decision.

                            -Left detailed vm w/ appeal determination.
                            [Time Note Created :12:15 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 09/14/2007 EM STKANE
                            From:    Kane, Stephen
                            Sent:    Friday, September 14, 2007 12:18 PM
                            To:      'hf1383@att.com'
                            Subject: IDSC Appeal Disability Benefit Denial
                            Notice-Claim-A625007022000101
                            [Time Note Created :12:18 PM ]
--------------------------------------------------------------------------------
A625007022-0001-01 09/14/2007 ER STKANE
                            AT&T Integrated Disability Service Center
                            (IDSC)
                            APPEAL DISABILITY BENEFIT DENIAL NOTICE
                            09/14/2007

                            ATTENTION: HILLARI Y FLEMING
                              RC: AYJ4D2060

                            Employee Name: MELISSA GARDNER
                              Employee ID:
                            Employee Job Title: MARKETING SUPPORT SPEC
                            (SRL) [IBEW21]
                              Employee NCS Date: 02/12/2001
```

```
Date: 02/28/2008  2:51pm          User: aarcher            Page:   129
===========================================================================
Claim Number : A625007022-0001-01                   Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA


--------------------------------- NOTES ---------------------------------

Event/Clmnt/Claim   Date       Tp Examiner
-------------------- ---------- -- ---------------------------------------
                               IDSC Claim #: A625007022-0001-01
                                 Plan: AIT SADBP
                               First Day Absent: 03/13/2006
                                 First Day of Disability: 03/20/2006
                               CLAIM STATUS
                               ◊ Disability Benefits Approved from
                               through        .

                               ◊ Disability Benefits Denied (if appropriate)
                               01/19/2007 through Return to Work Date.

                               ◊  Date claimant contacted regarding the
                               denial: 09/14/2007

                               OTHER IMPORTANT INFORMATION
                               ◊ Supervisor Contact Information - Notices are
                               automatically generated and sent to the
                               employee's supervisor as listed in Webphone.
                               If you do not handle disability issues for this
                               employee, please forward to the appropriate
                               person.  If Webphone is incorrect, update with
                               the correct supervisory information.
                               ◊ Disability Resources
                               o Contact the IDSC at 1-866-276-2278 or reply
                               to this notice if you have questions regarding
                               the information provided.
                               o AT&T Disability Status Web site:
                               http://hrweb01.AT&T.com/disability/index.cfm
                               ◊ Time Reporting - For additional information
                               on disability time reporting visit
                               http://eLink.AT&T.com.  It is important that
                               you verify your employee's time reporting once
                               you receive this notice to ensure pay accuracy.
                               ◊ Denied Disability Process -- For additional
                               information in managing an employee's absence
                               in the event that s/he is denied disability the
                               supervisor may refer to the Denied Disability
                               Process which is located on the Attendance
                               Management web site
                               (http://hrweb01.AT&T.com/attmgmt/login.asp)and
                               the HR Reference Portal
                               (https://ebiz2.AT&T.com/hrgrefportal/).  It is
                               recommended that you consult with Human
                               Resources, Labor Relations, and Legal prior to
                               making employment decisions for an employee who
                               has been denied disability benefits.


                               PLAN KEY
```

```
Date: 02/28/2008  2:51pm          User: aarcher              Page:    130
==============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==============================================================================

------------------------------- NOTES ----------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------  -------   -- ---------                                -----


                    Disability Plan Name       Acronym
                    AT&T Disability Income Plan      AT&T DIP (60)
                    AT&T Disability Income Plan      AT&T DIP (50)
                    AT&T Disability Benefits Plan    AT&T DBP
                    SNET Disability Benefits Plan    SNET DBP
                    Ameritech Sickness and Accident Disability
                    Benefit Plan      AIT SADBP
                    Ameritech Long Term Disability Plan      AIT LTD
                    Pacific Telesis Group Comprehensive Disability
                    Benefits Plan     PTG CDBP
                    Southwestern Bell Corporation Sickness and
                    Accident Disability Benefit Plan  AT&T SADBP
                    Pacific Telesis Group Sickness and Accident
                    Disability Benefit Plan   PTG SADBP

                    RESTRICTED PROPRIETARY INFORMATION


                    hf1383@att.com
                    [Time Note Created :12:18 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 09/14/2007 AP STKANE
                    * Appeal complete
                    * Close claim
                    [Time Note Created :12:18 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 09/14/2007 ER JFULLYLO
                    Uphold Letter sent via reg and cert mail, 7007
                    0710 0003 5941 5182
                    [Time Note Created : 4:53 PM ]
-------------------------------------------------------------------------------
A625007022-0001-01 09/18/2007 LG STKANE
                    Request for copy of claim file rec'd via fax
                    09/18/07 from Attorney.
                    422007091800347521, 422007091800337821

                    Fwd to Office Services.
                    [Time Note Created :11:17 AM ]
-------------------------------------------------------------------------------
A625007022-0001-01 09/19/2007 CM STKANE
                    EE's Supplementary Declaration dated 09/11/07
                    rec'd via mail 09/19/07.
                    4107091901845221

                    Duplicate as rec'd via fax & documented below
                    on 09/11/07.
                    [Time Note Created :11:19 AM ]
-------------------------------------------------------------------------------
```

R-0196

```
A625007022-0001-01 09/20/2007 ST AARCHER
                     LATE ENTRY - Rec'd ee's atty (Robert J. Rosati)
                     file copy request, DCN# 422007091800347521, dtd
                     September 18, 2007, fwd to BUM for review.  Ack
                     ltr mailed reg mail to atty.
                     [Time Note Created :11:40 AM ]
-----------------------------------------------------------------
A625007022-0001-01 09/21/2007 LG STKANE
                     Request for copy of claim file rec'd via mail
                     09/21/07 from Attorney.
                     4107092104539521

                     Duplicate as rec'd via fax 09/18/07
                     (42200709180034752l, 422007091800337821)
                     [Time Note Created : 1:09 PM ]
-----------------------------------------------------------------
A625007022-0001-01 09/21/2007 SR DANM
                     EE's attorney requested a copy of the claim
                     file.  Claim file copied and reviewed.  Routed
                     to Administrative Services to mail.
                     [Time Note Created : 1:17 PM ]
-----------------------------------------------------------------
A625007022-0001-01 09/24/2007 ST AARCHER
                     Copy of file and juris notes to ee's atty
                     (Robert J. Rosati) per written request, mailed
                     FEDEX on September 24, 2007, tracking number
                     7991 9227 1485.
                     [Time Note Created : 2:50 PM ]
-----------------------------------------------------------------
A625007022-0001-01 09/27/2007 LG STKANE
                     VM from Jill/ERISA Law Group for address on
                     where to obtain copy of plan documents & SPD.

                     RCT Jill at 559-256-9800 ext 28. Advised
                     she can send a written request copy of plan
                     documents & SPD to:

                     AT&T Services, Inc.
                     P.O. Box 29690
                     San Antonio, TX 78205
                     [Time Note Created :12:00 PM ]
-----------------------------------------------------------------
A625007022-0001-01 01/11/2008 LG STKANE
                     TCF Jill w/ERISA Law Group to determine at what
                     address they can physically serve law suit
                     against AT&T & benefit plan. AS trans caller to
                     IDM to discuss.
                     [Time Note Created :12:14 PM ]
-----------------------------------------------------------------
A625007022-0001-01 01/11/2008 LG DANM
                     Spoke with Jill (ERISA Law Group) at 12:11 PM
                     CT and advised that law suit could be directed
                     to PO Box as provided.  Unable to provide
                     street address
                     [Time Note Created :12:16 PM ]
-----------------------------------------------------------------
A625007022-0001-01 01/11/2008 CM STKANE
                     VM from RCT Jill w/ ERISA Law Group stating AS
                     had informed her AS has address to where she
                     can serve the lawsuit.

                     RCT Jill at 559-256-9800 ext 28. LVMTCB noting
```

```
Date: 02/28/2008  2:51pm           User: aarcher              Page:    132
==============================================================================
Claim Number : A625007022-0001-01                    Date Loss : 03/12/2006
Client      : 1632        - AT&T Inc.
Account     : 16320730    - TC - Ameritech Services, Inc
Unit        : TC065       - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
==============================================================================


------------------------------ NOTES -----------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------- -- ----------------------------------------------

                             the only address AS has is the address where
                             requests for copies of plan documents can be
                             obtained:
                             AT&T Services, Inc.
                             P.O. Box 29690
                             San Antonio, TX 78205
                             [Time Note Created : 1:33 PM ]
------------------------------------------------------------------------------
```

R-0198

Sedgwick Claims Management Services, Inc.

To:              ERISA scan only
Fax Number:      +18598256886

From:            Stephen Kane, LCSW
Fax Number:      866-856-5065

Date:            August 21, 2007
Subject:         IDSC Appeal Disability Benefit Denial Notice-Claim-A625007022000101

Memo:

Stephen Kane, LCSW
Appeal Specialist
AT&T Integrated Disability Service Center
as administered by Sedgwick CMS
Toll Free:  866.276.2278

---

***CONFIDENTIALITY NOTE***

The information contained in this facsimile message may be legally privileged
and confidential information intended only for the use of the individual or
entity named above. If the reader of this message is not the intended recipient,
you are hereby notified that any dissemination, distribution, or copying of this
telecopy is strictly prohibited. If you have received this telecopy in error,
please notify us immediately by calling the number listed above and return the
original message to us at the address above by the United States Postal Service.

(Page 2 of 427)

08/21/2007 12:18:56 PM -0500 SEDGWICK CMS                    PAGE 2    OF 4

Toll Free Fax: 866.856.5065
Stephen.Kane@sedgwickcms.com

+------------------------------------------------------------------+
|          **AT&T Integrated Disability Service Center (IDSC)**     |
|          **APPEAL DISABILITY BENEFIT DENIAL NOTICE**             |
|                        **08/21/2007**                            |
+------------------------------------------------------------------+

ATTENTION: HILLARI Y FLEMING              RC: AYJ4D2060

Employee Name: MELISSA GARDNER            Employee ID:

Employee Job Title: MARKETING SUPPORT SPEC    Employee NCS Date: 02/12/2001
(SRL) [IBEW21]

IDSC Claim #: A625007022-0001-01          Plan: AIT SADBP

First Day Absent: 03/13/2006              First Day of Disability: 03/20/2006

## *CLAIM STATUS*

➢   Disability Benefits Approved from          **through**       .

➢   Disability Benefits Denied (if appropriate) 01/19/2007 through Return to Work Date.

➢   Date claimant contacted regarding the denial: 08/21/2007

## *OTHER IMPORTANT INFORMATION*

➢   **Supervisor Contact Information** - Notices are automatically generated and sent to the
    employee's supervisor as listed in Webphone. If you do not handle disability issues for this
    employee, please forward to the appropriate person. If Webphone is incorrect, update with the
    correct supervisory information.
➢   **Disability Resources**
    o   Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions
        regarding the information provided.
    o   AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
➢   **Time Reporting** – For additional information on disability time reporting visit
    http://eLink.AT&T.com. It is important that you verify your employee's time reporting once
    you receive this notice to ensure pay accuracy.
➢   **Denied Disability Process** - For additional information in managing an employee's absence in
    the event that s/he is denied disability the supervisor may refer to the Denied Disability Process
    which is located on the Attendance Management web site
    (http://hrweb01.AT&T.com/attmgmt/login.asp)and the HR Reference Portal
    (https://ebiz2.AT&T.com/hrgrefportal/). It is recommended that you consult with Human
    Resources, Labor Relations, and Legal prior to making employment decisions for an employee
    who has been denied disability benefits.

## *PLAN KEY*

| Disability Plan Name              | Acronym         |
|-----------------------------------|-----------------|
| AT&T Disability Income Plan       | AT&T DIP (60)   |
| AT&T Disability Income Plan       | AT&T DIP (50)   |
| AT&T Disability Benefits Plan     | AT&T DBP        |
| SNET Disability Benefits Plan     | SNET DBP        |

| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
|---|---|
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

Melissa Gardner
August 21, 2007
Page 2

functionally capable of performing routine duties of a sedentary job. The specialist determined Ms. Gardner is not disabled from her regular job as of January 19, 2007 to present.

J. Parker Mickle, MD, a specialist in Neurosurgery, also conducted a review of the medical records on file as part of the appeal process. The specialist noted your client's diagnoses of polyneuropathy with disk disease at L4, chronic migraine, obesity, and x-ray evidence of chronic degenerative disease at multiple levels in the cervical and lumbar spines without evidence of progressive neurocompression. The specialist noted her neurological exams on multiple occasions by Dr. Chien, Dr. Flores, and others have always been normal with normal reflexes, normal muscle strength, and normal sensory examinations. He determined Ms. Gardner is not disabled from her regular job as of January 19, 2007 to present based on all the medical information provided demonstrating no significant medical documentation of her condition that would prevent this individual from performing her usual occupation. The specialist noted the rationale for these opinions is that Ms. Gardner is experiencing from chronic pain and has minimal degenerative disease in the cervical and lumbar spines and a completely normal neurological exam, which would result in no need for any significant restrictions and limitations in the performance of her usual occupation.

Although some findings are referenced, none are documented to be so severe as to prevent your client from performing the job duties of a Marketing Support Specialist (SRL) [IBEW21] with or without reasonable accommodation from January 19, 2007 through the her return to work date.

Under the terms of the Ameritech Sickness and Accident Disability Benefit Plan the decision of the Unit is final.

Your client shall be provided, upon written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your client's claim benefits.

Your client has the right to bring suit under Section 502(a) of the Employee Retirement Income Security Act of 1974 after there has been full exhaustion of your client's appeal rights as enumerated in the plan's claim procedures and those rights have been exercised and the Plan benefit's requested by said claimant in such appeal have been denied in whole or in part by your client's employer.

Sincerely,

Stephen Kane, LCSW
Appeal Specialist
AT&T Integrated Disability Service Center (IDSC)

cc: GARDNER, MELISSA



R-0203

(Page 6 of 427)

## AT&T Integrated Disability Service Center
### Quality Review Unit
*As Administered by Sedgwick CMS*

P.O. Box 14626; Lexington, KY 40512; Telephone 866-276-2278; Facsimile 866-856-5065

August 21, 2007

ROBERT J. ROSATI
ERISA LAW GROUP, LLP
2055 SAN JOAQUIN STREET
FRESNO, CA 93721

Re:    Ameritech Sickness and Accident Disability Benefit Plan
       Claim Number: A625007022-0001-01
       Your Client: GARDNER, MELISSA

Dear Mr. Rosati:

Your client's claim appealing the denial of sickness disability benefits under the Ameritech Sickness and Accident Disability Benefit Plan (SADBP) was reviewed by the AT&T Integrated Disability Service Center (IDSC) Quality Review Unit.

The AT&T Integrated Disability Service Center (IDSC) Quality Review Unit reviewed all submitted material and information regarding the denial of sickness disability benefits by the AT&T Integrated Disability Service Center for your client's claim with a first date absent of March 13, 2006. After this review, the Unit determined to uphold the denial of benefits based on the following:

The SADBP provides in Section 2, Paragraph 2.4 that a claim for sickness disability benefits must be supported by objective medical documentation that prevents the Eligible Employee from performing the duties of his/her last Company job with or without reasonable accommodation.

The Unit and the independent physician advisors reviewed medical records from Proctor Hospital; Robert B. Adams, MD; Frank R. Dunaway, MD; Bruce B. Chien, MD; Richard A. Flores, MD; George A. Gentry, MD; Terrance M. Brady, MD; Cristin Rassi, APN, CNS; Dzung H. Dinh, MD; and Steven C. Delheimer, MD dated March 13, 2006 through January 30, 2007.

Philip Jordan Marion, MD, a specialist in Pain Management, conducted a review of the medical records on file as part of the appeal process. The specialist noted your client had sudden onset of back pain on or about March 13, 2006, not associated with any specific trauma or precipitating event. Since that time, she has undergone epidural steroid injections and nerve block. However, her complaint of back pain has persisted. The treating physician, however, requested surgical intervention. However, the independent specialist noted that from a pain management perspective, there remains no objective impairment precluding the patient from performing routine duties of her regular job. He noted she remained independent with activities of daily living, ambulation and not restricted from driving a motor vehicle. In addition, she is otherwise

R-0204

Melissa Gardner
August 21, 2007
Page 2

functionally capable of performing routine duties of a sedentary job. The specialist determined
Ms. Gardner is not disabled from her regular job as of January 19, 2007 to present.

J. Parker Mickle, MD, a specialist in Neurosurgery, also conducted a review of the medical
records on file as part of the appeal process. The specialist noted your client's diagnoses of
polyneuropathy with disk disease at L4, chronic migraine, obesity, and x-ray evidence of chronic
degenerative disease at multiple levels in the cervical and lumbar spines without evidence of
progressive neurocompression. The specialist noted her neurological exams on multiple
occasions by Dr. Chien, Dr. Flores, and others have always been normal with normal reflexes,
normal muscle strength, and normal sensory examinations. He determined Ms. Gardner is not
disabled from her regular job as of January 19, 2007 to present based on all the medical
information provided demonstrating no significant medical documentation of her condition that
would prevent this individual from performing her usual occupation. The specialist noted the
rationale for these opinions is that Ms. Gardner is experiencing from chronic pain and has
minimal degenerative disease in the cervical and lumbar spines and a completely normal
neurological exam, which would result in no need for any significant restrictions and limitations
in the performance of her usual occupation.

Although some findings are referenced, none are documented to be so severe as to prevent your
client from performing the job duties of a Marketing Support Specialist (SRL) [IBEW21] with or
without reasonable accommodation from January 19, 2007 through the her return to work date.

Under the terms of the Ameritech Sickness and Accident Disability Benefit Plan the decision of
the Unit is final.

Your client shall be provided, upon written request and free of charge, reasonable access to, and
copies of, all documents, records, and other information relevant to your client's claim benefits.

Your client has the right to bring suit under Section 502(a) of the Employee Retirement Income
Security Act of 1974 after there has been full exhaustion of your client's appeal rights as
enumerated in the plan's claim procedures and those rights have been exercised and the Plan
benefit's requested by said claimant in such appeal have been denied in whole or in part by your
client's employer.

Sincerely,

Stephen Kane, LCSW
Appeal Specialist
AT&T Integrated Disability Service Center (IDSC)

cc: GARDNER, MELISSA



R-0205

(Page 8 of 427)

UNITED STATES POSTAL SERVICE



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 14626
Lexington KY 40512-4626

4107083111083221                    08/31/2007

R-0206

(Page 9 of 427)

**SENDER:** *COMPLETE THIS SECTION*

- Complete Items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

ROBERT.J. ROSATI
ERISA LAW GROUP, LLP
2055 SAN JOAQUIN STREET
FRESNO, CA 93721

Melissa Gardner   AC25 DO70 2L01

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____   ☐ Agent
☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (*Extra Fee*)   ☐ Yes

2. Article Number
(*Transfer from service label*)

7007 1490 0002 7119 2914

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

08/31/2007

R-0207



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

* Sender: Please print your name, address, and ZIP+4 in this box *

AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 14626
Lexington, KY 40512-4626

4107090513471521          A625007022000101          09/05/2007

(Page 11 of 427)

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

**MELISSA GARDNER**
**124 PUTNAM STREET**
**E PEORIA, IL 61611**

*Melissa Gardner* A625007022 01

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)           ☐ Yes

2. Article Number
   (Transfer from service label)

   7007 1490 0002 7119 2907

R-0209

From: NMR    To: 1-866-856-5085    Page: 2/4    Date: 8/20/2007 9:12:49 AM

 Insurance Appeals, Ltd.

An Independent Review Organization (IRO)

**REFERRED BY:** Stephen Kane
**CLIENT:** AT&T
**REVIEW TYPE:** Appeal
**NAME:** Melissa Gardner
**CLAIM #:** A625007022-0001-01
**NMR #:** A84163.01
**DATE:** 08/17/2007

## MEDICAL RECORDS PROVIDED FOR REVIEW:

| CLAIM LOG | Case Notes | 03/22/06-08/10/07 | 1-111 |
|---|---|---|---|
| PROG NOTES | Proctor Hospital | 03/13/06-07/24/06 | 112-127 |
| PROG NOTES | B. Chien, M.D. | 03/14/06-01/30/07 | 128-139 |
| PROG NOTES | R. Flores, M.D. | 04/03/06 | 140-141 |
| PROG NOTES | Saint Francis Medical Center | 04/17/06 | 142-144 |
| PROG NOTES | Associates University Neurosurgeons, S.C. | 06/16/06-08/10/06 | 145-151 |
| IME | | 01/08/07 | 152-162 |
| LAB | | 03/13/06 | 163 |
| CT/MRI | | 03/14/06-04/20/06 | 164-169 |
| EMG/NCS | | 04/03/06 | 170-177 |
| JOB | | | 178-179 |
| BILLING | | 01/23/07 | 180 |
| MISC. | | 04/30/02-07/30/07 | 181-267 |
| ROI | | 03/30/06-04/04/06 | 268-269 |

**PAIN MANAGEMENT SYNOPSIS:** The enclosed clinical records were reviewed. The patient was evaluated by Dr. Chien on 3/14/06 at the Proctor Hospital for her complaints of acute onset back pain. The patient indicated she noted back pain while at work. This was not associated with any specific activities such as lifting or falling. There was no history of trauma. However, the patient noted progressive back pain over the course of the day. Over the next several days, the patient's back pain continued and increased in severity. She was presented to the local emergency department and was prescribed the medication Percocet. Her back pain complaints continued and she now presented for evaluation.

After performing a physical examination, Dr. Chien's clinical impression was L4 disc syndrome. Dr. Chien performed a L4 epidural steroid injection on 3/15/06. The patient's back pain complaints persisted without significant improvement.

Dr. Chien performed an L4 and L5 intradiskal block and diskography on 7/24/06. Dr. Chien submitted a letter on 3/03/06 indicating the patient has poor sitting and standing tolerance rendering her unable to perform her routine work duties.

URAC ACCREDITED INDEPENDENT REVIEW ORGANIZATION

605 Fulton Avenue • Suite 3002 • Rockford, Illinois 61103 • TEL (815) 964-6334 • FAX (815) 964-1162
E-Mail: info@insuranceappeals.cc

From: NMR    To 1-866-856-5065    Page: 3/4    Date: 8/20/2007 9:12:49 AM

RE: Melissa Gardner                                    NMR#: A84163.01
Page 2



A subsequent letter from Dr. Chien of 9/07/06 reiterated that the patient is unable to work in any capacity and requires surgical intervention. A letter from Dr. Chien of 1/30/07 again voiced similar issues regarding her inability to work and the need for surgical intervention.

An independent medical evaluation was performed by neurosurgeon Dr. Delheimer on 1/08/07. After obtaining an extensive clinical history, reviewing the prior medical records, and performing a physical examination, Dr. Delheimer concluded that the patient was functionally capable of resuming her sedentary job as a marketing specialist.

**ATTENDING PHYSICIAN MOST RECENT DIAGNOSIS:** Acute onset back pain

**OBJECTIVE INFORMATION:** A lumbar spine MRI scan performed on 3/14/06 demonstrated mild degenerative disc disease with central annular tears at L3-4 and L4-5. There was no evidence of herniated disc disease or nerve root impingement. A cervical spine MRI scan performed on 3/23/06 was documented as normal. Electrodiagnostic evaluation performed on 4/03/06 demonstrated mild bilateral L4 radiculopathies.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

    **1. Is the employee disabled from her regular job as of 01/19/07 to present?**

From pain management perspective perspective according to the medical record, the employee is not disabled from her regular job as of 1/19/07 to present.

    **2. If disabled, what is the rationale or basis for the disability?**

The patient is not disabled.

    **3. If disabled, what is the expected/appropriate length of disability?**

The patient is not disabled.

    **4. What are the clinical findings contained in the medical record and how would it impact the employee's ability to function?**

The clinical findings consist primarily the patient's complaints of low back pain with poor sitting and standing tolerance. However, this is not associated with significant underlying objective radiological (lumbar MRI) findings or electrodiagnostic findings correlating to the patient's severe subjective complaints.

    **5. If there are findings that are not clinically significant, why are these findings not clinically significant?**

The patient's clinical findings are significant; however, they are not associated with objective impairment precluding her from performing the routine duties of her regular job.

422007082000295621                    A625007022000101                    08/20/2007

4107090513519506                      A625007022000101                    09/05/2007

From: NMR    To: 1-866-856-5065    Page: 4/4    Date: 8/20/2007 9:12:49 AM

RE: Melissa Gardner                                  NMR#: A84163.01
Page 3



**RATIONALE:** The enclosed clinical records were reviewed. The patient had sudden onset of back pain on or about 3/13/06, not associated with any specific trauma or precipitating event. Since that time, she has undergone epidural steroid injections and nerve block. However, her complaint of back pain has persisted. The treating physician, however, requested surgical intervention.

However, from pain management perspective, there remains no objective impairment precluding the patient from performing routine duties of her regular job. She remained independent with activities of daily living, ambulation and not restricted from driving a motor vehicle. In addition, she is otherwise functionally capable of performing routine duties of a sedentary job.

However, it should be noted that if indeed the patient requires surgical intervention and has significant pathology from a neurosurgical perspective, this is best addressed by the neurosurgeon and this physician advisor would defer to the neurosurgeon regarding surgical intervention and the patient's disability status.

**CRITERIA:** ACOEM Occupational Medicine Practice Guidelines, second edition, page 302, table 12-6. "Guidelines for modification of work activities and disability duration."

**CONFLICT OF INTEREST ATTESTATION:**

I attest to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device, or procedure.

I attest that my compensation is not dependent on the specific outcome of my review.

**PHYSICIAN ADVISOR:**

Philip Jordan Marion, M.D., M.S., M.P.H.
Board Certified Physical Medicine
   and Rehabilitation
Board Certified Pain Management
Associate Clinical Professor, George Washington University
   Medical Center
MD License #D40084
NY License #168424
VA License# 0101045270
Washington DC License #17907
Certified, Texas Worker's Compensation
   Commission – ADL

**NMR CONFLICT OF INTEREST ATTESTATION:**

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

422007082000295621                   A625007022000101                   08/20/2007

4107090513519506                      A625007022000101                   09/05/2007

(Page 15 of 427)

(Page 5 of 7)



Insurance Appeals, Ltd.

An Independent Review Organization (IRO)

| REFERRED BY: | Stephen Kane |
| CLIENT: | AT&T |
| REVIEW TYPE: | Appeal |
| NAME: | Melissa Gardner |
| CLAIM #: | A625007022-0001-01 |
| NMR #: | A84163.01 |
| DATE: | 08/17/2007 |

**MEDICAL RECORDS PROVIDED FOR REVIEW:**

| CLAIM LOG | Case Notes | 03/22/06-08/10/07 | 1-111 |
|---|---|---|---|
| PROG NOTES | Proctor Hospital | 03/13/06-07/24/06 | 112-127 |
| PROG NOTES | B. Chien, M.D. | 03/14/06-01/30/07 | 128-139 |
| PROG NOTES | R. Flores, M.D. | 04/03/06 | 140-141 |
| PROG NOTES | Saint Francis Medical Center | 04/17/06 | 142-144 |
| PROG NOTES | Associates University Neurosurgeons, S.C. | 06/16/06-08/10/06 | 145-151 |
| IME | | 01/08/07 | 152-162 |
| LAB | | 03/13/06 | 163 |
| CT/MRI | | 03/14/06-04/20/06 | 164-169 |
| EMG/NCS | | 04/03/06 | 170-177 |
| JOB | | | 178-179 |
| BILLING | | 01/23/07 | 180 |
| MISC. | | 04/30/02-07/30/07 | 181-267 |
| ROI | | 03/30/06-04/04/06 | 268-269 |

**NEUROSURGICAL SYNOPSIS:** This is the medical file of 34-year-old female, who has a 250-pound. She went out on disability on 3/20/06 due to complaints of back pain secondary to L4 degenerative disease and C7 radiculopathy on the left side.

On 3/13/06, this patient went to the hospital complaining of neck and back pain with radiation into the arms and legs with numbness and tingling in arms, legs, and hands. MRI studies performed and demonstrated some chronic mild degenerative disease at L4 and at C6-7 in the cervical spine. Her neurological exam was entirely normal.

She then came under the care of Dr. Chien, a chronic pain management individual, and was seen by Dr. Flores, a neurologist, for which she underwent EMGs and nerve conductions, which had mild problems associated with cervical radiculopathy and bilateral L4 radiculopathy.

She underwent a discogram only at L4, which was positive in some way. Reportedly, she was treated with epidural steroid injections with only minimal improvement. She was given a diagnosis of polyneuropathy with disk disease at L4. However, no clear-cut explanation for all the complaints including her pain, numbness, and tingling reported.

TRAC ACCREDITED

805 Fulton Avenue • Suite 202 • Rockford, Illinois 61103 • PH - (815) 964-0334 • FAX: (815) 964-1162
E-Mail: info@insuranceappeals.cc

422007081700486921                     A625007022000101                     08/17/2007

4107090513519506                       A625007022000101                     09/05/2007

R-0213

From: NMR     To: 1-866-856-5065     Page: 6/7     Date: 8/17/2007 11 13:59 AM



RE: Melissa Gardner                                        NMR#: A84163.01
Page 2

Her neurological exams on multiple occasions by Dr. Chien, Dr. Flores, and others have always been normal with normal reflexes, normal muscle strength, and normal sensory examinations.

She also over the years had chronic migraine, which has been aggravated by her cervical condition. She underwent a thorough chart review and neurological evaluation by Dr. Delheimer on 1/08/07, and he essentially found a normal neurological exam with some x-ray evidence of chronic degenerative disease at multiple levels in the cervical and lumbar spines without evidence of progressive neurocompression.

### ATTENDING PHYSICIAN MOST RECENT DIAGNOSIS:

X-ray evidence of chronic degenerative disease at multiple levels in the cervical and lumbar spines without evidence of progressive neurocompression
Polyneuropathy with disk disease at L4
Chronic migraine
Obesity

**OBJECTIVE INFORMATION:** Her neurological exams on multiple occasions by Dr. Chien, Dr. Flores, and others have always been normal with normal reflexes, normal muscle strength, and normal sensory examinations.

Neurological evaluation by Dr. Delheimer on 1/08/07, found a normal neurological exam with some x-ray evidence of chronic degenerative disease at multiple levels in the cervical and lumbar spines without evidence of progressive neurocompression.

### IN ANSWER TO YOUR SPECIFIC QUESTIONS:

1.  **Is the employee disabled from her regular job as of 01/19/07 to present?**

No and this is based on all the medical information provided demonstrating no significant medical documentation of her condition that would prevent this individual from performing her usual occupation.

2.  **If disabled, what is the rationale or basis for the disability?**

Not applicable.

3.  **If disabled, what is the expected/appropriate length of disability?**

Not applicable.

---

422007081700486921                A625007022000101                08/17/2007

4107090513519506                  A625007022000101                09/05/2007

From: NMR    To: 1-868-856-5065    Page: 7/7    Date: 8/17/2007 11:13:59 AM

RE: Melissa Gardner                                NMR#: A84163.01
Page 3



**4.  What are the clinical findings contained in the medical record and how would it impact the employee's ability to function?**

The only significant clinical finding is the complaints of pain, minimal degenerative disease in the cervical and lumbar spines, and mild neurodiagnostic electrical studies demonstrating a questionable diagnosis of polyneuropathy.  She is also obese.  The most significant problem with this woman is her obesity and her chronic pain syndrome, neither of which should influence her ability to perform her usual occupation.

**5.  If there are findings that are not clinically significant, why are these findings not clinically significant?**

The mild electrodiagnostic findings of polyneuropathy appear not to be clinically significant because there is no clinical correlate in this patient of a polyneuropathy.

**RATIONALE:**  The rationale for these opinions is that this individual is experiencing from chronic pain and has minimal degenerative disease in the cervical and lumbar spines and a completely normal neurological exam, which would result in no need for any significant restrictions and limitations in the performance of her usual occupation.

**CONFLICT OF INTEREST ATTESTATION:**

I attest to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device, or procedure.

I attest that my compensation is not dependent on the specific outcome of my review.

**PHYSICIAN ADVISOR:**

J. Parker Mickle, M.D.
Board Certified Neurosurgery
FL License #: ME37968
Certified, Texas Worker's Compensation
    Commission – ADL

*NMR CONFLICT OF INTEREST ATTESTATION:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

422007081700486921            A625007022000101            08/17/2007

4107090513519506            A625007022000101            09/05/2007

# FACSIMILE COVER SHEET

DATE:                    September 10, 2007_____   File No.:

TO:                      Mr. Steven Kane: Quality Review Unit

RE:                      *Melissa Gardner*

FACSIMILE NO.:           866-856-5065

From:  Jill A. Fulkes *for* The ERISA Law Group

| DOCUMENTS | NUMBER OF PAGES (INCLUDING COVER SHEET) |
|---|---|
| Correspondence | 5 |

If you do not receive <u>all</u> pages, please telephone us immediately at 559-256-9800 ext. 28.

Message:_____

CONFIDENTIAL NOTICE: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone, and return the original message to the above address via the U.S. Postal Service.  Postage will be reimbursed.  Thank you.

422007091000884621                A625027340000101                09/10/2007

R-0216



**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (559) 256-9800
Facsimile: (559) 256-9795

September 10, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

AT&T Integrated Disability Service Center          *VIA FACSIMILE: 866-856-5065*
Quality Review Unit                                 *AND U. S. MAIL*
PO Box 14626
Lexington, KY 40512

> Re:      *Melissa Gardner*
> Claim No.:    A625027340-0001-01
> Employer:    AT & T
> RE:          Short Term Disability (STD) and Long Term Disability
>              (LTD)

Dear Mr. Kane:

This letter is in response to your August 29, 2007 letter.

Neither Dr. Marion's report nor Dr. Mickel's report, either jointly or separately, is sufficient to support the Plan's denial of benefits. In fact, each report is glaringly deficient for several reasons:

1.    Neither report addresses the pain medications Ms. Gardner takes. As set forth in my July 19, 2007 letter, those medications, standing alone, disable Ms. Gardner.

2.    Federal regulations mandate that the plans consider all information submitted as part of an appeal. Obviously, the Plans chose not to do so.

"Failure to consider all factors causing disability is, standing alone, an abuse of discretion. See *McKoy v. International Paper Company,* ____ F. 3d ____, No. 06-1795 (4th Cir. 2007): denial of benefits based solely on claimant's physical condition without addressing claimant's mental condition, also grounds for the disability claim, constituted an unreasonable application of the Plan's definition of disability."

3.    Your doctors dismiss pain, using the same "buzz words:" lack of objective evidence. Please note: "objective medical documentation" of an inability to work,

AT&T
September 10, 2007
Page 2

is not the same as ["objective evidence"]. Of course there is no objective
evidence of pain: there is never objective evidence of pain, as such. Any
competent doctor would know this. To expect – and demand – objective
evidence when none is possible is an abuse of discretion and, from the doctors'
perspectives, demonstrates either dishonesty or incompetence.

4.    Pain as a disabling is also critically and closely analyzed and evaluated in the
      "Report of the Commission on the Evaluation of Pain" issued in 1986. The
      Executive Summary is enclosed. The Commission was appointed by Congress
      and consisted of 20 members with collective experience in the fields of medicine,
      law, insurance, and disability program administration with significant
      concentration of expertise in the field of clinical pain. (Executive Summary, p. xi)
      The report explains that "Pain is a complex experience, embracing physical,
      mental, social, and behavioral processes which compromises the quality of life of
      many individuals. (Report, p. xii.) The report explains that chronic pain
      syndrome is a recognized condition to which numerous medical, psychological,
      sociological, and economic factors contribute. (Id. at p. xiii.)

The Report's findings include:

"1.    . . . . Chronic pain and its consequences are inadequately understood by patients,
       the healthcare system, the public generally, and the Social Security
       Administration."

* * * *

"4.    Chronic pain syndrome is a complex condition that has physical, mental, and
       social components. Both chronic pain and chronic pain syndrome can be defined
       in terms duration and persistence in relation to the extent of demonstrated and
       observable pathology. However, chronic pain syndrome, as opposed to chronic
       pain, has the added component of certain recognizable psychological and socio-
       economic influence."

* * * *

"5.    There is a clear consensus that malingering is not a significant problem, that it can
       be diagnosed by trained professionals, medical and other, and that increased
       attention to subjective evidence in the evaluation of the existence and nature of
       pain will not significantly alter this."

* * * *

Sep 10 2007 12:23PM   HP LASERJET FAX                                    p.4

AT&T
September 10, 2007
Page 3

"6.    Numerous attempts have been made to try to develop methodologies for
       measuring pain objectively.  That is, as yet, not possible because pain is inherently
       a subjective personal experience and we are necessarily limited to observations of
       pain behavior, including the person's reports. . . ."

                              * * * *

"8.    There is a lack of knowledge on the part of healthcare professionals generally
       about chronic pain and chronic pain syndrome and about their impact on the
       disability system. . . ."  (Report, pp. xvii-xix.)

5.     The requirement in section Two, paragraph 2.4 that a claim for sickness disability
       benefits must be supported by objective medical documentation that prevents the
       eligible employee from performing the duties of his/her last company job with or
       without a reasonable accommodation is fully met by the evidence submitted by
       Ms. Gardner:

       A.    The MRI of 3/14/06, the CT of 4/16/06, the discogram of 4/20/06, the
             MRI of 6/16/06 are objective medical evidence of conditions which cause
             disabling pain.

       B.    The known side effects of Ms. Gardner's medications constitute objective
             medical evidence of sickness-caused circumstances that preclude Ms.
             Gardner from working.

       C.    Dr. Marion's opinion is based upon a erroneous assumptions of fact.  He
             observes that Ms. Gardner "remained independent with activities of daily
             living, ambulation and not restricted from driving a motor vehicle.  In
             addition, she is otherwise functionally capable of performing routine
             duties of a sedentary job."  This assertion ignores the facts.  In her initial
             declaration in support of her appeal Ms. Gardner unambiguously stated
             "the medication I have to take in order to not be in excruciating pain
             makes me unable to drive, work and function on my own."  Marion's
             opinion is not rendered valid by his patent ignorance of the facts.

       D.    Dr. Mickel also ignores medication and dismisses chronic pain syndrome
             as something which should not influence her ability to perform her usual
             occupation.

       E.    The reality here is that in order to treat chronic pain, Ms. Gardner takes a

422007091000884621                    A625027340000101                    09/10/2007

                                                                          R-0219

AT&T
September 10, 2007
Page 4

large number of serious medications. The pain, alone, is disabling, the side effects of the medication, alone, is disabling. The combination of the pain and side effects of the medication obviously are disabling. Neither of your new doctors saw fit to address those issues despite the fact that those issues set forth the explicit basis for Ms. Gardner's disability appeal. A medical opinion that ignores the facts and that is not based on all the evidence has no value and is entitled to no deference. It is arbitrary and capricious and an abuse of discretion to rely on such a medical opinion in the face of the Plan's actual knowledge that the doctors failed to address the issues presented.

6.        It is also an abuse of discretion to fail to address all evidence submitted in support of an appeal, which evidence necessarily includes Ms. Gardner's declaration (which was obviously not given to either doctor) and the previous appeal letter submitted (again, which was obviously not given to either doctor). See *Rekstand v. US Bancorp*, 451 F. 3d 1114, 1121 (10th Cir. 2006): arbitrary and capricious for plan to make its decision to deny disability benefits without giving full and fair consideration to the affidavits submitted by the claimant and her relatives.

Ms. Gardner's Supplemental Declaration

Also enclosed please find Ms. Gardner's supplemental declaration which addresses her very aggressive attempts to get pain relieve and return to work.

Insurance Appeals, LTD

This is a biased service whose sole function obviously is to provide "cover" to insurance companies to deny claims. Opinions from biased providers do not support denial of benefits.

Conclusion

These opinions do not alter the conclusion that Ms. Gardner is disabled and entitled to benefits. These opinions do not support the Plan's decision to deny benefits. Demand is made once again that benefits be paid, retroactive, with interest until and unless it is determined that Ms. Gardner is no longer eligible for such benefits under the terms of the Plans.

Very truly yours,

Robert J. Rosati

422007091000884621                          A625027340000101                          09/10/2007

R-0220

(Page 23 of 427)

AT&T
September 10, 2007
Page 5

RJR/jaf

cc:    Melissa Gardner

422007091000884621                    A625027340000101                09/10/2007

R-0221

(Page 24 of 427)

# FACSIMILE COVER SHEET

**DATE:**              September 11, 2007 _____    File No.:

**TO:**                Mr. Steven Kane; Quality Review Unit

**RE:**                *Melissa Gardner*

**FACSIMILE NO.:**     866-856-5065

**From:** Jill A. Fulkes *for* The ERISA Law Group

| DOCUMENTS | NUMBER OF PAGES (EXCLUDING COVER SHEET) |
|---|---|
| Correspondence | 2 |

If you do not receive <u>all</u> pages, please telephone us immediately at 559-256-9800 ext. 28.

Message: _____

CONFIDENTIAL NOTICE: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to the above address via the U.S. Postal Service. Postage will be reimbursed. Thank you.

422007091100861521                    A625027340000101                        09/11/2007

R-0222

(Page 25 of 427)

Sep 11 2007 12:27PM   HP LASERJET FAX                                    p.2



## ERISA LAW GROUP LLP

2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:      (559) 256-9800
Facsimile: (559) 256-9795

September 11, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

Mr. Stephen Kane                              *VIA FACSIMILE: 866-856-5065*
AT&T Integrated Disability Service Center     *AND U. S. MAIL*
Quality Review Unit
PO Box 14626
Lexington, KY 40512

Re:      *Melissa Gardner*
Claim No.:    A625027340-0001-01
Employer:     AT & T
RE:           Short Term Disability (STD) and Long Term Disability
              (LTD)

Dear Mr. Kane:

Enclosed please find Ms. Melissa Gardner's supplementary declaration.

Please feel free to call me if you have any questions.

Very truly yours,

Jill A. Fulkes
Paralegal *for* The ERISA Law group

/jaf

Enclosure

42200709110861521                    A625027340000101                    09/11/2007

R-0223

Sep 11 2007 12:27PM   HP LASERJET FAX                                    p.3

## SUPPLEMENTAL DECLARATION OF MELISSA GARDNER

I, Melissa Gardner, declare and state as follows:

1.      I make this supplemental declaration in support of my appeal of the denial of my short and long term disability benefits.

2.      I am waiting for FDA approval of the double Charite Disc Replacement.  I have been waiting, and asking for the replacement surgery since I had to leave work on disability.

3.      I will be applying to be part of a study group for the procedure for FDA approval.  The procedure is in its final phases of negotiations.  Once that is complete, I will be applying to be part of the study group for the Charite Disc Replacement.  If I am approved through the screening process, the earliest scheduling for the procedure will be late October or Early November.

4.      I am hoping that the operation will be successful and I will be able to return to work.

I declare under penalty of perjury that the foregoing is true and correct and if called as a witness I could testify competently thereto.

Executed at _1:27PM_, _Tuesday_ on __Sept. 11__, 2007.

# Melissa A. Gardner
Melissa Gardner

422007091100861521                  A625027340000101                    09/11/2007

R-0224

UNITED STATES POSTAL SERVICE



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 14626
Lexington, KY 40512-4626

4107091300234416

09/13/2007

(Page 28 of 427)

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Robert J. Rosati
EHSA LAW GROUP
2055 SAN JOAQUIN STREET
FRESNO, CA · 93721

A625 007022-01

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery

9-14-07

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered      ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
   (Transfer from service label)

7007 1490 0002 7119 4444

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

09/13/2007

R-0226



**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (559) 256-9800
Facsimile: (559) 256-9795

September 10, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

AT&T Integrated Disability Service Center          *VIA FACSIMILE: 866-856-5065*
Quality Review Unit                                 *AND U. S. MAIL*
. PO Box 14626
Lexington, KY 40512

      Re:    *Melissa Gardner*
      Claim No.:    A625027340-0001-01
      Employer:    AT & T
      RE:    Short Term Disability (STD) and Long Term Disability
            (LTD)

Dear Mr. Kane:

    This letter is in response to your August 29, 2007 letter.

    Neither Dr. Marion's report nor Dr. Mickel's report, either jointly or separately, is sufficient to support the Plan's denial of benefits.  In fact, each report is glaringly deficient for several reasons:

    1.    Neither report addresses the pain medications Ms. Gardner takes.  As set forth in my July 19, 2007 letter, those medications, standing alone, disable Ms. Gardner.

    2.    Federal regulations mandate that the plans consider all information submitted as part of an appeal.  Obviously, the Plans chose not to do so.

        "Failure to consider all factors causing disability is, standing alone, an abuse of discretion.  See *McKoy v. International Paper Company*, ____ F. 3d ___, No. 06-1795 (4th Cir. 2007): denial of benefits based solely on claimant's physical condition without addressing claimant's mental condition, also grounds for the disability claim, constituted an unreasonable application of the Plan's definition of disability."

    3.    Your doctors dismiss pain, using the same "buzz words:" lack of objective evidence.  Please note: "objective medical documentation" of an inability to work,

07091403073721

AT&T
September 10, 2007
Page 2

is not the same as ["objective evidence"]. Of course there is no objective evidence of pain: there is never objective evidence of pain, as such. Any competent doctor would know this. To expect – and demand – objective evidence when none is possible is an abuse of discretion and, from the doctors' perspectives, demonstrates either dishonesty or incompetence.

4.   Pain as a disabling is also critically and closely analyzed and evaluated in the "Report of the Commission on the Evaluation of Pain" issued in 1986. The Executive Summary is enclosed. The Commission was appointed by Congress and consisted of 20 members with collective experience in the fields of medicine, law, insurance, and disability program administration with significant concentration of expertise in the field of clinical pain. (Executive Summary, p. xi) The report explains that "Pain is a complex experience, embracing physical, mental, social, and behavioral processes which compromises the quality of life of many individuals. (Report, p. xii.) The report explains that chronic pain syndrome is a recognized condition to which numerous medical, psychological, sociological, and economic factors contribute. (*Id.* at p. xiii.)

The Report's findings include:

"1.    . . . . Chronic pain and its consequences are inadequately understood by patients, the healthcare system, the public generally, and the Social Security Administration."

* * * *

"4.   Chronic pain syndrome is a complex condition that has physical, mental, and social components. Both chronic pain and chronic pain syndrome can be defined in terms duration and persistence in relation to the extent of demonstrated and observable pathology. However, chronic pain syndrome, as opposed to chronic pain, has the added component of certain recognizable psychological and socio-economic influence."

* * * *

"5.   There is a clear consensus that malingering is not a significant problem, that it can be diagnosed by trained professionals, medical and other, and that increased attention to subjective evidence in the evaluation of the existence and nature of pain will not significantly alter this."

* * * *

AT&T
September 10, 2007
Page 3

"6.    Numerous attempts have been made to try to develop methodologies for
measuring pain objectively.  That is, as yet, not possible because pain is inherently
a subjective personal experience and we are necessarily limited to observations of
pain behavior, including the person's reports. . . ."

\* \* \* \*

"8.    There is a lack of knowledge on the part of healthcare professionals generally
about chronic pain and chronic pain syndrome and about their impact on the
disability system. . . ." (Report, pp. xvii-xix.)

5.    The requirement in section Two, paragraph 2.4 that a claim for sickness disability
benefits must be supported by objective medical documentation that prevents the
eligible employee from performing the duties of his/her last company job with or
without a reasonable accommodation is fully met by the evidence submitted by
Ms. Gardner:

A.    The MRI of 3/14/06, the CT of 4/16/06, the discogram of 4/20/06, the
MRI of 6/16/06 are objective medical evidence of conditions which cause
disabling pain.

B.    The known side effects of Ms. Gardner's medications constitute objective
medical evidence of sickness-caused circumstances that preclude Ms.
Gardner from working.

C.    Dr. Marion's opinion is based upon a erroneous assumptions of fact.  He
observes that Ms. Gardner "remained independent with activities of daily
living, ambulation and not restricted from driving a motor vehicle.  In
addition, she is otherwise functionally capable of performing routine
duties of a sedentary job."  This assertion ignores the facts.  In her initial
declaration in support of her appeal Ms. Gardner unambiguously stated
"the medication I have to take in order to not be in excruciating pain
makes me unable to drive, work and function on my own."  Marion's
opinion is not rendered valid by his patent ignorance of the facts.

D.    Dr. Mickel also ignores medication and dismisses chronic pain syndrome
as something which should not influence her ability to perform her usual
occupation.

E.    The reality here is that in order to treat chronic pain, Ms. Gardner takes a

R-0229

AT&T
September 10, 2007
Page 4

large number of serious medications. The pain, alone, is disabling, the side effects of the medication, alone, is disabling. The combination of the pain and side effects of the medication obviously are disabling. Neither of your new doctors saw fit to address those issues despite the fact that those issues set forth the explicit basis for Ms. Gardner's disability appeal. A medical opinion that ignores the facts and that is not based on all the evidence has no value and is entitled to no deference. It is arbitrary and capricious and an abuse of discretion to rely on such a medical opinion in the face of the Plan's actual knowledge that the doctors failed to address the issues presented.

6.    It is also an abuse of discretion to fail to address all evidence submitted in support of an appeal, which evidence necessarily includes Ms. Gardner's declaration (which was obviously not given to either doctor) and the previous appeal letter submitted (again, which was obviously not given to either doctor). See *Rekstand v. US Bancorp*, 451 F. 3d 1114, 1121 (10th Cir. 2006): arbitrary and capricious for plan to make its decision to deny disability benefits without giving full and fair consideration to the affidavits submitted by the claimant and her relatives.

<u>Ms. Gardner's Supplemental Declaration</u>

Also enclosed please find Ms. Gardner's supplemental declaration which addresses her very aggressive attempts to get pain relieve and return to work.

<u>Insurance Appeals, LTD</u>

This is a biased service whose sole function obviously is to provide "cover" to insurance companies to deny claims. Opinions from biased providers do not support denial of benefits.

<u>Conclusion</u>

These opinions do not alter the conclusion that Ms. Gardner is disabled and entitled to benefits. These opinions do not support the Plan's decision to deny benefits. Demand is made once again that benefits be paid, retroactive, with interest until and unless it is determined that Ms. Gardner is no longer eligible for such benefits under the terms of the Plans.

Very truly yours,

Robert J. Rosati

AT&T
September 10, 2007
Page 5


RJR/jaf

cc:    Melissa Gardner

4107091403073721          A625027340000101          09/14/2007

R-0231

**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721

4107091403073721    BCSO

AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 14626
Lexington, KY 40512

USA First-Class

4107091403073721    A625027340000101    09/14/2007

R-0232

(Page 35 of 427)

09/14/2007 12:37:46 PM    SEDGWICK CMS    PAGE 1    OF 4

Sedgwick Claims Management Services, Inc.

To:    ERISA scan only
Fax Number:    +18598256886

From:    Stephen Kane, LCSW
Fax Number:    866-856-5065

Date:    September 14, 2007
Subject:    IDSC Appeal Disability Benefit Denial Notice-Claim-A625007022000101

Memo:

Stephen Kane, LCSW
Appeal Specialist
AT&T Integrated Disability Service Center
as administered by Sedgwick CMS
Toll Free:  866.276.2278

***CONFIDENTIALITY NOTE***

The information contained in this facsimile message may be legally privileged
and confidential information intended only for the use of the individual or
entity named above. If the reader of this message is not the intended recipient,
you are hereby notified that any dissemination, distribution, or copying of this
telecopy is strictly prohibited. If you have received this telecopy in error,
please notify us immediately by calling the number listed above and return the
original message to us at the address above by the United States Postal Service.

422007091400557921                A625007022000101                09/14/2007

R-0233

(Page 36 of 427)

Toll Free Fax: 866.856.5065
Stephen.Kane@sedgwickcms.com

---

**AT&T Integrated Disability Service Center (IDSC)**
**APPEAL DISABILITY BENEFIT DENIAL NOTICE**
**09/14/2007**

---

ATTENTION: HILLARI Y FLEMING            RC: AYJ4D2060

Employee Name: MELISSA GARDNER           Employee ID:

Employee Job Title: MARKETING SUPPORT SPEC   Employee NCS Date: 02/12/2001
(SRL) [IBEW21]

IDSC Claim #: A625007022-0001-01          Plan: AIT SADBP

First Day Absent: 03/13/2006              First Day of Disability: 03/20/2006

### CLAIM STATUS

➤  Disability Benefits Approved from          **through**          .

➤  Disability Benefits Denied (if appropriate) 01/19/2007 through Return to Work Date.

➤  Date claimant contacted regarding the denial: 09/14/2007

### OTHER IMPORTANT INFORMATION

➤  **Supervisor Contact Information** - Notices are automatically generated and sent to the
   employee's supervisor as listed in Webphone. If you do not handle disability issues for this
   employee, please forward to the appropriate person. If Webphone is incorrect, update with the
   correct supervisory information.

➤  **Disability Resources**
   o  Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions
      regarding the information provided.
   o  AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm

➤  **Time Reporting** – For additional information on disability time reporting visit
   http://eLink.AT&T.com. It is important that you verify your employee's time reporting once
   you receive this notice to ensure pay accuracy.

➤  **Denied Disability Process** - For additional information in managing an employee's absence in
   the event that s/he is denied disability the supervisor may refer to the Denied Disability Process
   which is located on the Attendance Management web site
   (http://hrweb01.AT&T.com/attmgmt/login.asp)and the HR Reference Portal
   (https://ebiz2.AT&T.com/hrgrefportal/). It is recommended that you consult with Human
   Resources, Labor Relations, and Legal prior to making employment decisions for an employee
   who has been denied disability benefits.

### PLAN KEY

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |

---

| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
|---|---|
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

# FACSIMILE COVER SHEET

DATE:                    September 17, 2007_____     File No.:

TO:                      Mr. Steven Kane: Quality Review Unit

RE:                      *Melissa Gardner*

FACSIMILE NO.:           866-856-5065

From:  Jill A. Fulkes *for* The ERISA Law Group

| DOCUMENTS | NUMBER OF PAGES EXCLUDING COVER SHEET |
|---|---|
| Correspondence | 2 |

If you do not receive <u>all</u> pages, please telephone us immediately at 559-256-9800 ext. 28.

Message:_____

CONFIDENTIAL NOTICE: This message is intended only for the use of the individual or entry to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to the above address via the U.S. Postal Service. Postage will be reimbursed. Thank you.

Sep 18 2007 8:04AM   HP LASERJET FAX                                    p.2



## ERISA LAW GROUP LLP

2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:      (559) 256-9800
Facsimile: (559) 256-9795

September 17, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

Mr. Stephen Kane
AT&T Integrated Disability Service Center
PO Box 14626
Lexington, KY 40512

*VIA FACSIMILE: 866-856-5065*
*AND U.S. MAIL*

Re:    Ameritech Sickness and Accident Disability Benefit Plan
       Claim No.:    A625007022-0001-01
       Client:    Melissa Gardner

Dear Mr. Kane:

As you know, I represent Ms. Melissa Gardner ("Claimant") in the above referenced matter. By letter dated September 14, 2007, Claimant's appeal for short and long term disability was denied.

Pursuant to 29 CFR Section 2560.503-1 I am requesting that you provide to me, free of

42200709180033782 1                A625007022000101                09/18/2007

R-0238

# FACSIMILE COVER SHEET

DATE:                  September 17, 2007_____    File No.:

TO:                    Mr. Steven Kane: Quality Review Unit

RE:                    *Melissa Gardner*

FACSIMILE NO.:         866-856-5065

From:  Jill A. Fulkes *for* The ERISA Law Group

| DOCUMENTS | NUMBER OF PAGES EXCLUDING COVER SHEET |
|---|---|
| Correspondence | 2 |

If you do not receive <u>all</u> pages, please telephone us immediately at 559-256-9800 ext. 28.

Message:_____

CONFIDENTIAL NOTICE: This message is intended only for the use of the individual or entry to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to the above address via the U.S. Postal Service. Postage will be reimbursed. Thank you.

(Page 42 of 427)

Sep 18 2007 8:08AM    HP LASERJET FAX                                    p.2



**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:      (559) 256-9800
Facsimile: (559) 256-9795

September 17, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

Mr. Stephen Kane                                      *VIA FACSIMILE: 866-856-5065*
AT&T Integrated Disability Service Center             *AND U.S. MAIL*
PO Box 14626
Lexington, KY 40512

Re:    Ameritech Sickness and Accident Disability Benefit Plan
       Claim No.:    A625007022-0001-01
       Client:       Melissa Gardner

Dear Mr. Kane:

As you know, I represent Ms. Melissa Gardner ("Claimant") in the above referenced matter. By letter dated September 14, 2007, Claimant's appeal for short and long term disability was denied.

Pursuant to 29 CFR Section 2560.503-1 I am requesting that you provide to me, free of charge, copies of all documents, records and other information relevant to Claimant's claim for benefits. As you know, a document, record or other information is relevant to a claimant's claim if such document, record or other information was relied upon in the making of the benefits termination; was submitted, considered, or generated in the course of making the benefit determination, without regard to whether it was relied in making the benefit determination; demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of Section 2560.503-1; or constitutes a statement of policy or guidance with respect to the plan concerning the benefit without regard to whether such advise or statement was relied upon in making the benefit determination. I also request free of charge a copy any internal rule, guideline, protocol, or other similar criterion that was relied upon in making the adverse determination. Finally, you are required to have claims procedures that contain administrative processes and safeguards designed to insure and to verify that benefit claims determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. Please provide all applicable and relevant claims procedures regarding this claim.

In accordance with the foregoing legal standards, my request for copies of documents includes, but is not limited to:

1.    All documents obtained by you from any source at any time in evaluating

422007091800347521                    A625007022000101                    09/18/2007

R-0240

Sep 18 2007 8:08AM    HP LASERJET FAX                                    P.3

Mr. Kane
September 17, 2007
Page 2

        Claimant's claim for benefits.

2.    Claimant's claim for benefits.

3.    All documents requesting authorizations to obtain Claimant's medical records.

4.    All documents showing efforts to obtain Claimant's medical records.

5.    All medical records obtained regarding the Claimant.

6.    All documents setting forth any reviews or analysis of Claimant's medical records.

7.    All documents setting forth Claimant's job descriptions, job duties, and/or any other efforts to determine exactly what the claimant did.

8.    All communications between you and Claimant's employer.

9.    All records of all communications between you and Claimant.

10.    All documents demonstrating or setting forth any all efforts to determine Claimant's ability to perform Claimants job or any other job for which Claimant is reasonably fitted by education, training, or experience.

11.    The plan, with all amendments.

12.    To the extent not otherwise provided, a copy of your entire file and all other files regarding or referencing claims by this Claimant.

Very truly yours,

Robert J. Rosati

RJR/jaf

cc:  Melissa Gardner

R-0241

(Page 44 of 427)



## ERISA LAW GROUP LLP

2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:      (559) 256-9800
Facsimile: (559) 256-9795

September 11, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

Mr. Stephen Kane
AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 14626
Lexington, KY 40512

*VIA FACSIMILE: 866-856-5065*
*AND U. S. MAIL*

Re:    *Melissa Gardner*
Claim No.:    A625027340-0001-01
Employer:    AT & T
RE:    Short Term Disability (STD) and Long Term Disability
(LTD)

Dear Mr. Kane:

Enclosed please find Ms. Melissa Gardner's supplementary declaration.

Please feel free to call me if you have any questions.

Very truly yours,

Jill A. Fulkes
Paralegal *for* The ERISA Law group

/jaf

Enclosure

07053190184572

**R-0242**

## SUPPLEMENTAL DECLARATION OF MELISSA GARDNER

I, Melissa Gardner, declare and state as follows:

1.    I make this supplemental declaration in support of my appeal of the denial of my short and long term disability benefits.

2.    I am waiting for FDA approval of the double Charite Disc Replacement. I have been waiting, and asking for the replacement surgery since I had to leave work on disability.

3.    I will be applying to be part of a study group for the procedure for FDA approval. The procedure is in its final phases of negotiations. Once that is complete, I will be applying to be part of the study group for the Charite Disc Replacement. If I am approved through the screening process, the earliest scheduling for the procedure will be late October or Early November.

4.    I am hoping that the operation will be successful and I will be able to return to work.

I declare under penalty of perjury that the foregoing is true and correct and if called as a witness I could testify competently thereto.

Executed at _1:27PM_, _Tuesday_ on __Sept. 11__, 2007.

# Melissa A. Gardner
Melissa Gardner

R-0243

(Page 46 of 427)

**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721

FRESNO CA 937
11 SEP 2007 PM 3 T

USA

Mr. Stephen Kane
AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 14626
Lexington, KY 40512

40512+4626

4107091901845221                A625027340000101                09/19/2007

R-0244

# AT&T Integrated Disability Service Center
### Quality Review Unit
*As Administered by Sedgwick CMS*

P.O. Box 14626; Lexington, KY 40512; Telephone 866-276-2278; Facsimile 866-856-5065

September 14, 2007

ROBERT J. ROSATI
ERISA LAW GROUP, LLP
2055 SAN JOAQUIN STREET
FRESNO, CA 93721

Re:     Ameritech Sickness and Accident Disability Benefit Plan
       Claim Number: A625007022-0001-01
       Your Client: GARDNER, MELISSA

Dear Mr. Rosati:

Your client's claim appealing the denial of sickness disability benefits under the Ameritech
Sickness and Accident Disability Benefit Plan (SADBP) was reviewed by the AT&T Integrated
Disability Service Center (IDSC) Quality Review Unit.

The AT&T Integrated Disability Service Center (IDSC) Quality Review Unit reviewed all
submitted material and information regarding the denial of sickness disability benefits by the
AT&T Integrated Disability Service Center for your client's claim with a first date absent of
March 13, 2006. After this review, the Unit determined to uphold the denial of benefits based on
the following:

The SADBP provides in Section 2, Paragraph 2.4 that a claim for sickness disability benefits
must be supported by objective medical documentation that prevents the Eligible Employee from
performing the duties of his/her last Company job with or without reasonable accommodation.

The Unit and the independent physician advisors reviewed medical records from Proctor
Hospital; Robert B. Adams, MD; Frank R. Dunaway, MD; Bruce B. Chien, MD; Richard A.
Flores, MD; George A. Gentry, MD; Terrance M. Brady, MD; Cristin Rassi, APN, CNS; Dzung
H. Dinh, MD; and Steven C. Delheimer, MD dated March 13, 2006 through January 30, 2007.

Philip Jordan Marion, MD, a specialist in Pain Management, conducted a review of the medical
records on file as part of the appeal process. The specialist noted your client had sudden onset of
back pain on or about March 13, 2006, not associated with any specific trauma or precipitating
event. Since that time, she has undergone epidural steroid injections and nerve block. However,
her complaint of back pain has persisted. The treating physician, however, requested surgical
intervention. However, the independent specialist noted that from a pain management
perspective, there remains no objective impairment precluding the patient from performing
routine duties of her regular job. He noted she remained independent with activities of daily
living, ambulation and not restricted from driving a motor vehicle. In addition, she is otherwise

Melissa Gardner
September 14, 2007
Page 2

functionally capable of performing routine duties of a sedentary job. The specialist determined
Ms. Gardner is not disabled from her regular job as of January 19, 2007 to present.

J. Parker Mickle, MD, a specialist in Neurosurgery, also conducted a review of the medical
records on file as part of the appeal process. The specialist noted your client's diagnoses of
polyneuropathy with disk disease at L4, chronic migraine, obesity, and x-ray evidence of chronic
degenerative disease at multiple levels in the cervical and lumbar spines without evidence of
progressive neurocompression. The specialist noted her neurological exams on multiple
occasions by Dr. Chien, Dr. Flores, and others have always been normal with normal reflexes,
normal muscle strength, and normal sensory examinations. He determined Ms. Gardner is not
disabled from her regular job as of January 19, 2007 to present based on all the medical
information provided demonstrating no significant medical documentation of her condition that
would prevent this individual from performing her usual occupation. The specialist noted the
rationale for these opinions is that Ms. Gardner is experiencing from chronic pain and has
minimal degenerative disease in the cervical and lumbar spines and a completely normal
neurological exam, which would result in no need for any significant restrictions and limitations
in the performance of her usual occupation.

The Unit also reviewed your letter dated September 10, 2007 and Ms. Gardner's "Supplemental
Declaration" dated September 11, 2007. No additional medical records or examination findings
were submitted to rebut the opinions expressed on the Independent Physician Advisors' reports.

Although some findings are referenced, none are documented to be so severe as to prevent your
client from performing the job duties of a Marketing Support Specialist (SRL) [IBEW21] with or
without reasonable accommodation from January 19, 2007 through the her return to work date.

Under the terms of the Ameritech Sickness and Accident Disability Benefit Plan the decision of
the Unit is final.

Your client shall be provided, upon written request and free of charge, reasonable access to, and
copies of, all documents, records, and other information relevant to your client's claim benefits.

Your client has the right to bring suit under Section 502(a) of the Employee Retirement Income
Security Act of 1974 after there has been full exhaustion of your client's appeal rights as
enumerated in the plan's claim procedures and those rights have been exercised and the Plan
benefit's requested by said claimant in such appeal have been denied in whole or in part by your
client's employer.

Sincerely,


Stephen Kane, LCSW
Appeal Specialist

Melissa Gardner
September 14, 2007
Page 3


AT&T Integrated Disability Service Center (IDSC) Quality Review Unit

cc: GARDNER, MELISSA

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com.

| Postage | $ | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To  M. Gardner
Street, Apt. No.; or PO Box No.
City, State, ZIP+4  A625007022-0001-01

PS Form 3800, August 2006          See Reverse for Instructions

R-0247

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 14627; Lexington, KY 40512; Telephone 866-276-2278; Facsimile 866-224-4627

SEPTEMBER 20, 2007

ROBERT J. ROSATI
ERISA LAW GROUP, LLP
2055 SAN JOAQUIN STREET
FRESNO, CA 93721

RE: MELISSA GARDNER
CLAIM NUMBER: A625007022-0001-01

DEAR MR. ROSATI:

This letter serves to acknowledge receipt of your written request for information relevant to claim number A625007022-0001-01. Your request was received at the AT&T Integrated Disability Service Center on SEPTEMBER 18, 2007.

Within 14 calendar days, we will forward to you a packet containing copies of all relevant file documents that are required to be provided under ERISA, along with the instructions for filing an appeal.

If your case is in appeal and you believe there is additional information available that may be relevant to your appeal, or you would like to review your file before proceeding, please contact your Appeal Specialist immediately.

If you have any questions regarding this matter, please contact the AT&T Integrated Disability Service Center at 1-866-276-2278.

Sincerely,


Administrative Services
AT&T Integrated Disability Service Center

(Page 51 of 427)



**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (559) 256-9800
Facsimile: (559) 256-9795

September 17, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

Mr. Stephen Kane                          *VIA FACSIMILE: 866-856-5065*
AT&T Integrated Disability Service Center  *AND U.S. MAIL*
PO Box 14626
Lexington, KY 40512

Re:    Ameritech Sickness and Accident Disability Benefit Plan
       Claim No.:    A625007022-0001-01
       Client:       Melissa Gardner

Dear Mr. Kane:

As you know, I represent Ms. Melissa Gardner ("Claimant") in the above referenced matter. By letter dated September 14, 2007, Claimant's appeal for short and long term disability was denied.

Pursuant to 29 CFR Section 2560.503-1 I am requesting that you provide to me, free of charge, copies of all documents, records and other information relevant to Claimant's claim for benefits. As you know, a document, record or other information is relevant to a claimant's claim if such document, record or other information was relied upon in the making of the benefits termination; was submitted, considered, or generated in the course of making the benefit determination, without regard to whether it was relied in making the benefit determination; demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of Section 2560.503-1; or constitutes a statement of policy or guidance with respect to the plan concerning the benefit without regard to whether such advise or statement was relied upon in making the benefit determination. I also request free of charge a copy any internal rule, guideline, protocol, or other similar criterion that was relied upon in making the adverse determination. Finally, you are required to have claims procedures that contain administrative processes and safeguards designed to insure and to verify that benefit claims determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. Please provide all applicable and relevant claims procedures regarding this claim.

In accordance with the foregoing legal standards, my request for copies of documents includes, but is not limited to:

1.    All documents obtained by you from any source at any time in evaluating

Mr. Kane
September 17, 2007
Page 2

Claimant's claim for benefits.

2.    Claimant's claim for benefits.

3.    All documents requesting authorizations to obtain Claimant's medical records.

4.    All documents showing efforts to obtain Claimant's medical records.

5.    All medical records obtained regarding the Claimant.

6.    All documents setting forth any reviews or analysis of Claimant's medical records.

7.    All documents setting forth Claimant's job descriptions, job duties, and/or any other efforts to determine exactly what the claimant did.

8.    All communications between you and Claimant's employer.

9.    All records of all communications between you and Claimant.

10.   All documents demonstrating or setting forth any all efforts to determine Claimant's ability to perform Claimants job or any other job for which Claimant is reasonably fitted by education, training, or experience.

11.   The plan, with all amendments.

12.   To the extent not otherwise provided, a copy of your entire file and all other files regarding or referencing claims by this Claimant.

Very truly yours,

Robert J. Rosati

RJR/jaf

cc:    Melissa Gardner

4107092104539521                    A625007022000101                    09/21/2007

R-0250



**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721



FRESNO CA 937
18 SEP 2007 PM 1 L

USA First-Class

Mr. Stephen Kane
AT&T Integrated Disability Service Center
PO Box 14626
Lexington, KY 40512

40512+4626

4107092104539521                A625007022000101                              09/21/2007

R-0251

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 14627; Lexington, KY 40512; Telephone 866-276-2278; Facsimile 866-224-4627

SEPTEMBER 24, 2007

ROBERT J. ROSATI
ERISA LAW GROUP, LLP
2055 SAN JOAQUIN STREET
FRESNO, CA 93721

RE:    MELISSA GARDNER
CLAIM NUMBER:  A625007022-0001-01

DEAR MR. ROSATI:

This letter, along with the enclosures, serves as our response to your written request for information relevant to claim number A625007022-0001-01.   Your request was received at AT&T IDSC on SEPTEMBER 18, 2007.

You will find that the attached packet contains a copy of file per your request.  If you have any questions regarding this matter, please contact AT&T IDSC at 1-866-276-2278.

Requests for copies of the plan and/or SPD should be made in writing to:

AT&T Services, Inc.
P. O. Box 29690
San Antonio, Texas 78229

Sincerely,

Administrative Services
AT&T Integrated Disability Service Center as Administered by Sedgwick CMS

UNITED STATES POSTAL SERVICE



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**AT&T** Integrated Disability Service Center
**Quality Review Unit**
PO Box 14626
Lexington, KY 40512-4626

4107092612608716        A625007022000101        09/26/2007

(Page 56 of 427)

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Robert J. Rosati
ERISA Law Group, LLP.
2055 San Joaquin St.
Fresno, CA 93721

A 625007022 - 0001 - 01

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

x _Rita Pen_                ☐ Agent
                            ☐ Addressee

B. Received by ( Printed Name)  | C. Date of Delivery
                                | 9-17-07

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered          ☐ Return Receipt for Merchandise
   ☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)

   7007 0710 0003 5941 5182

PS Form 3811, February 2004            Domestic Return Receipt

R-0254

Sedgwick Claims Management Services, Inc.

To:                idsc-sir
Fax Number:        8598256888

From:              Archer, Audrey X.
Fax Number:

Date:              September 25, 2007
Subject:           FED EX Label - Melissa Gardner - A625007022-0001-01

Memo:
<<www.fedex.com-ship-domesticShipmentAction.tif>>

***CONFIDENTIALITY NOTE***

The information contained in this facsimile message may be legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please notify us immediately by calling the number listed above and return the original message to us at the address above by the United States Postal Service.

09/25/2007 7:20:09 AM        SEDGWICK CMS                    PAGE 2    OF 2
FedEx | Ship Manager | Label 799192271485                   Page 1 of 1

[x]

Shipping Label: Your shipment is complete

1. Use the 'Print' feature from your browser to send this page to your laser or inkjet printer.

2. Fold the printed page along the horizontal line.

3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

R-0256

(Page 59 of 427)

## AT&T Integrated Disability Service Center

*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406; Telephone 866-276-2278; Facsimile 866-224-4627

Date Recv: 02/08/2007

February 8, 2007

MELISSA GARDNER
124 PUTNAM STREET,
E PEORIA, IL 61611

Re: Medical information received for A625007022-0001-01

Dear Ms. GARDNER:

On January 19, 2007, the AT&T Integrated Disability Service Center denied your claim for disability benefits. On January 30, 2007, the AT&T Integrated Disability Service Center received information from Dr. Chien; however this information does not alter the previous denial decision.

In order for the AT&T Integrated Disability Service Center (IDSC) Quality Review Unit (QRU) to consider this and any additional information, you must submit a written appeal to the QRU as described in your denial letter. Enclosed is a copy of the "Quality Review Unit Appeal Procedures" and the "IDSC Quality Review Unit Appeal Form". These documents outline what is needed to file a written appeal.

It is very important that you complete the "IDSC Quality Review Unit Appeal Form" or write a letter requesting an appeal. Submit the appeal form or letter with any relevant documentation you wish to have the QRU consider at the time you file your appeal. Your appeal must be filed within 180 days from your receipt of your original denial letter. Once the QRU makes a determination on your request for benefits, the determination is final.

If you have any questions, please call me at 1-866-276-2278.

Sincerely,

Tan Payton
Disability Specialist

Enclosures:
        IDSC Quality Review Unit Appeal Form
        Quality Review Unit Appeal Procedures
        Self-Addressed Envelope

03-N-00 Medical after Denial 02-08-00

R-0257

Date Recv: 02/08/2007

## IDSC Quality Review Unit Appeal Form

To appeal the denial of your benefits, please complete this form and return it in the enclosed self addressed envelope within 180 days from your receipt of your original denial letter. If your appeal is not received within 180 days from your receipt of your original denial letter the original denial will be upheld.

### Please attach all pertinent medical information

| Claim Number: | | Social Security Number: | |
|---|---|---|---|
| Last Name: | First Name: | | Middle Initial: |
| Street Address | | | |
| City: | State: | | Zip: |
| Home Phone: | | Work Phone: | |

Please provide name and phone number of treating physician(s)

| Provider Name:<br>Address: | Phone Number<br>Specialty: |
|---|---|
| Provider Name:<br>Address: | Phone Number:<br>Specialty: |
| Provider Name:<br>Address: | Phone Number:<br>Specialty: |

Please state specifically why you are requesting an appeal of your benefits. Use the back of the form if necessary or attach a letter if additional space is needed.

Do you have additional medical information to submit that is not attached to the form? _____

If yes, please submit additional medical information as soon as reasonably possible.

Employee Certification:

I hereby certify that the information provided is complete and accurate to the best of my knowledge.

Employee Signature: _____ Date: _____

Please mail completed form in the enclosed envelope to:    IDSC Quality Review Unit
P.O. Box 61568
King of Prussia, PA 19406
Phone – 866-276-2278
Fax 1-866-856-5065

03-N-00 Inite-22970 2007248179-1 doc

R-0258

(Page 61 of 427)

Date Recv: 02/08/2007

## AT&T Integrated Disability Service Center
As Administered by Sedgwick CMS

**Quality Review Unit**
**Appeal Procedures**

1. Decisions of the Administrator (referred to as IDSC) to deny or limit a claim for benefits may be appealed and be subject to review by the Quality Review Unit (QRU).

2. You, or your authorized representative, may appeal the IDSC decision in writing to the QRU, either by completing the enclosed appeal form or forwarding a letter.

3. Your written appeal letter or form must be mailed or faxed to the QRU and must be postmarked within 180 days after you receive the IDSC notice of denial of benefits letter. Mail or fax your appeal to:

IDSC Quality Review Unit
PO Box 61568
King of Prussia, PA 19406
Phone – 866-276-2278
Fax – 866-856-5065

4. Your appeal must be in writing and should state as clearly and specifically as possible any facts and/or reasons why you believe the IDSC decision is incorrect. Since you have only one opportunity to appeal the denial of benefits, you should also include any new or additional medical evidence or materials in support of your appeal which you wish the QRU to consider. Such medical evidence or materials must be submitted along with your written statement at the time you file your appeal. If you are including medical evidence in your appeal, you or your treatment provider must submit the following:

- A clear outline of your level of functionality
- A description of how your level of functionality impacts your ability to work and perform your daily activities
- A detailed description of the treatment provider's rationale for your level of functionality
- Clinical documentation that supports the treatment provider's rationale

### Mental Health
- Findings from formal mental status examination including clinical presentation and interaction
- Presenting signs (observations made by the treatment provider during office visits/therapy sessions)
- Dosage of medications if used; response to medications

### Medical Health
- Findings from physical examinations
- Diagnostic test results (i.e. lab results, x-rays, MRI's, etc.)

03-N-00 letter-22970-2007248179-1.doc

R-0259

(Page 62 of 427)

- Dosage of medications if used; response to medications

For additional information regarding what information your treatment provider needs to submit to support disability benefits refer to your IDSC Guide, page 5.

**IMPORTANT NOTE:  A written or verbal notice from you or your authorized representative that you intend to appeal will not be treated as your appeal nor will it stop the 180-day period from running.  Your written appeal must be received by the QRU within 180 days from the date you receive the IDSC written denial or you may lose your opportunity to have the QRU review your claim.**

5.  You or your authorized representative may examine documents that bear on your claim by making a written request for the documents to the QRU.  Such documents could include copies of the plan and/or SPD, medical and other records, and internal rules, guidelines, protocol or other similar criterion relied on in denying your claim.

Requests for copies of the plan and/or SPD should be made in writing to:

AT&T Communications Inc.
P.O. Box 29690
San Antonio, TX 78229

Requests for copies of medical and other records, and internal rules, guidelines, protocol or other similar criterion relied on in denying your claim should be made in writing to:

AT&T Integrated Disability Service Center
P.O. Box 61569
King of Prussia, PA 19406

If you wish your authorized representative to receive copies of medical documents that pertain to your claim, you must first authorize release of the documents by signing and returning with your written request an authorization for release of medical information.  Copies of documents you request to examine will be mailed to you or your authorized representative upon receipt of your written request (and a signed authorization for release of medical information, if applicable.)

**IMPORTANT  NOTE:   If you or your authorized representative wish to examine documents, you should immediately request such documents to allow yourself time for review and preparation of your written appeal within the 180-day time period.**

6.  When your written appeal letter or form and any additional medical evidence or materials are received, the QRU will begin the appeal review.  During the appeal review the QRU is not required to conduct a hearing.  You or other authorized representatives are not permitted to present oral testimony.

03-N-00 0000-22070-2007248179-1 doc

R-0260

Date Recv: 02/08/2007

(Page 63 of 427)

Date Recv: 02/08/2007

7.  A qualified individual who was not involved in the decision to deny your initial claim will be appointed to decide the appeal. If your appeal is related to clinical matters, the review will be done in consultation with a health care professional with appropriate expertise in the field and who was not involved in the initial determination. The QRU may consult with, or seek the participation of, medical experts as part of your appeal resolution.

8.  Unless you are notified in writing that more time is needed, the QRU will review and decide your appeal within 45 days of its receipt of your appeal. If special circumstances require more time to consider your appeal, the QRU may take up to an additional 45 days to reach a decision. If this additional time is needed, the QRU will notify you in writing by both registered and regular mail before the initial 45-day period has expired.

**IMPORTANT NOTE: You may not bring a lawsuit to recover benefits until you have filed an appeal with the QRU and either (a) you have received notice from the QRU that your claim has been denied or (b) you have received no notice from the QRU within 45 days of receipt of your appeal, or, if you were notified that an additional 45 days was needed, within 90 days of receipt of your appeal.**

(Page 64 of 427)

**MedManager**

| | |
|---|---|
| **From:** | Payton, Tan [Tanjale.Payton@sedgwickcms.com] |
| **Sent:** | Thursday, February 08, 2007 2:27 PM |
| **To:** | outbound.IDSC |
| **Subject:** | Melissa Gardner A625007022-0001-01 |

2/8/2007

R-0262

Date Recv: 02/08/2007

(Page 65 of 427)

# Facsimile Cover Sheet

| | Total number of pages Including cover sheet -- 2 | Date: February 9, 2007 |
|---|---|---|
| **To** | **Name** Tom Vlasic | |
| | **Department/Company** Sedgewick Claims -- ATT Disability Center | |
| | **Plant/Office/Address** N/A | |
| | **Fax** 866-224-4627 | **Telephone** 312-356-0001 |
| **From** | **Name** Melissa Gardner | |
| | **Company** N/A | |
| | **Address** 124 Putnam Street | |
| | **City, State, Zip** East Peoria, Illinois 61611 | |
| | **Fax** 309-636-2811 | **Telephone** 309-256-9393 |

**Message: Attention Tom Vlasic**

**Confidential Communication**      This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged or confidential. If the reader of this message is not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately, and return the original message to us at the above address. Thank you.

Caterpillar Form No. 01-089583-01 PC (2401) MS Word 97

R-0263



R-0264

***Please make changes and return if any of the information below is incorrect***

| AT&T Integrated Disability Service Center (IDSC)<br>REPORTED DISABILITY CLAIM NOTICE<br>03/22/2006 |
|---|

**Attention: ANGELA M HOHIMER**          RC: AYJ4D1240

Employee Name: MELISSA GARDNER          Employee ID: **mf4914**

Employee Job Title: MARKETING SUPPORT          Employee NCS Date: 02/12/2001
SPEC (SRL) [IBEW21]

IDSC Claim #: A625007022-0001-01          Plan: **AIT SADBP**

<u>Disability Claim</u>
➤  **Employee reported first day absent as 03/14/2006**

   **If Incorrect, Correct date is:** _____

➤  **Seven calendar waiting days required  x Yes          No**

➤  **Workers' compensation companion claim          Yes x No**

Please be sure to notify the IDSC on the first day your employee returns to work.

**Comments:**

<u>Other Important Information:</u>
o  **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's
   supervisor as listed in Webphone.  If you do not handle disability issues for this employee, please forward
   to the appropriate person.  If Webphone is incorrect, update with the correct supervisory information.
o  **Disability Resources**
      o  Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the
         information provided.
      o  AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
o  **Time Reporting** – For additional information on disability time reporting visit
   http://eLink.AT&T.com.  It is important that you verify your employee's time reporting once you
   receive this notice to ensure pay accuracy.
o  **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the
   employee is eligible and entitled to FMLA and/or state family and medical leave.  For additional
   information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-
   722-1787.

<u>Plan Key</u>

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |

*Date Recv: 03/22/2006*

| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

ap3618@att.com

Date Recv: 03/22/2006

**MedManager**

| | |
|---|---|
| **From:** | Hamilton, Tiffany T. [thamilton@sedgwickcms.com] |
| **Sent:** | Wednesday, March 22, 2006 1:08 PM |
| **To:** | ap3618@att.com |
| **Subject:** | Disability Claim Notice Melissa Gardner A625007022000101.doc |

Date Recv: 03/22/2006

3/22/2006

R-0267

### AUTHORIZATION FOR RELEASE OF
### PROTECTED HEALTH INFORMATION
### (DISABILITY BENEFITS/JOB ACCOMMODATION)

I, the undersigned, hereby authorize any person or facility that attends, treats or examines me to release all health information related to my request for reasonable job accommodation and/or my claim for short-term (including sickness and/or accident), long-term disability and/or vocational rehabilitation benefits under my participating company's disability benefits plan.

This health information consists of medical, psychological and/or psychiatric information, records and reports (including HIV/AIDS) and may include, but is not limited to, medical history, chart notes, consultation, prescriptions or treatment, diagnostic test results, x-ray reports, copies of all hospital or medical summaries or reports, and records that pertain to the payment of claims.

My health information is to be made available, upon request, to the AT&T Integrated Disability Service Center or its representative. AT&T Integrated Disability Service Center may release my health information to any person or facility that attends, treats, examines me or impacts determination of my eligibility for reasonable job accommodation, workers' compensation and/or disability benefits, or coordinates my health insurance benefits, or to the Social Security Administration or to a social security, vocational rehabilitation vendor, or to compliance investigatory personnel to the extent all or any of such health information is considered by AT&T Integrated Disability Service Center or its representative to be relevant to the determination of my claim. I understand that after this information is disclosed, federal law might not protect it and the recipient might disclose this information.

I understand and agree that the signing of this authorization is a pre-condition to my receiving a reasonable job accommodation and/or disability benefits and that this authorization relates to my request for such reasonable job accommodation and/or disability benefits.

I further understand that I have the right to revoke this authorization at any time by submitting a revocation request in writing to the attention of the Office Service Manager, AT&T Integrated Disability Service Center, PO Box 61569, King of Prussia, PA 19406 1-866-224-4627. This revocation will be effective after receipt, review and processing on a prospective basis only. I understand that my revocation of this authorization shall terminate my right to receive prospectively additional disability benefits, but shall not affect my right to disability benefits to which I was entitled during the period this authorization was in effect. Moreover, I understand that the revocation of this authorization may result in denial of any pending request for a reasonable job accommodation, and/or discontinuance of a job accommodation that is already in place.

Absent my revocation, this authorization shall remain valid for the duration of my claim for a reasonable job accommodation and/or short-term disability benefits and/or vocational rehabilitation benefits. If my claim is for long-term disability benefits, then, absent my revocation, this authorization shall remain valid for one year from the date I sign this authorization.

I understand that I have a right to request and receive a copy of this authorization. A photocopy of this authorization shall be valid and is to be accepted with the same effect as the original.

Printed Name of Employee: _____

Social Security Number of Employee: _____

Signature of Employee or Personal
Representative: _____ Date: _____

If a personal representative executes this form, that representative warrants that he or she has the authority to act on behalf of the employee in signing this form and that the basis for this authority is as follows: _____

(Attach documentation that evidences the authority to act as a personal representative.)

Date Recv: 03/22/2006

---

## PHYSICIAN'S SUBMISSION OF MEDICAL RECORDS

### INSTRUCTIONS TO THE EMPLOYEE

I.    Medical records relevant to your absence are necessary for a determination on eligibility for an accommodation.  It is your responsibility to make sure that:

    A.    The enclosed "Instructions To The Physician," including the "Submission of Medical Records" forms are forwarded to your treating physician immediately.

    B.    You sign the enclosed "Authorization to Release Medical Information" and:

        ➤    attach a copy of this Authorization to the "Instructions To The Physician" when you send/give it to your treating physician, and

        ➤    send the Authorization with your original signature to the AT&T Integrated Disability Service Center, and

        ➤    keep a copy of the Authorization for your records.

        ➤    the authorization must be signed to obtain medical information for approval of benefits

    C.    All medical records relevant to your accommodation are received in the AT&T Integrated Disability Service Center (AT&T IDSC) by the designated due date: April 5, 2006.

2.    If your accommodation is of extended duration, periodic requests will be made for updated medical records.  Failure at any time to provide the requested relevant records will adversely impact your accommodation.

3.    Any charges for the requested medical records are your responsibility.

**AT&T Integrated Disability Service Center**
**PO Box 61569, King of Prussia, PA 19406**
**Fax: 1 (866) 224-4627**

---

## PHYSICIAN'S SUBMISSION OF MEDICAL RECORDS

---

## INSTRUCTIONS TO THE PHYSICIAN

1. Your patient has filed a disability claim requesting wage replacement benefits for a current absence commencing March 14, 2006. In order to make a determination on the patient's eligibility for these benefits you are requested to submit to the AT&T Integrated Disability Service Center (AT&T IDSC) by: April 5, 2006.

    A. All medical records relevant to the above-referenced accommodation, including chart notes, treatment plan, diagnostic test results, Specialist reports, etc., plus

    B. The "Submission of Medical Records" form at the bottom of this sheet, attached to the front of the records being submitted.

2. Failure to provide the requested relevant medical records will adversely impact your patient's request for accommodation.

3. Any charges for the requested records are the responsibility of your patient.

4. Once you have submitted all the requested medical information to AT&T Integrated Disability Service Center, the Job Accommodation Specialist may make a request for a physician peer-to-peer discussion with you regarding the medical condition.

5. If the accommodation is of an extended duration, periodic requests will be made for updated medical records.

Date Recv: 03/22/2006

---

### SUBMISSION OF MEDICAL RECORDS

Employee
Name: Melissa Gardner      SS#: _____    Claim Number: A625007022-0001-01

Print Physician's Name: _____

Physician's Signature: _____

Address: _____      Telephone #: _____

_____      Date Rec'd:: _____
                                      (To be completed by AT&T IDSC)

**AT&T Integrated Disability Service Center**
**PO Box 61569, King of Prussia, PA 19406**
**Fax: 1 (866) 224-4627**

R-0270

**AT&T Integrated Disability Service Center**
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 866-224-4627

Dear Employee:

This letter is a reminder that any absence (beginning with the 1st date of absence) resulting in a claim for short-term disability benefits under a AT&T disability plan will also be designated as an FMLA-qualifying reason for absence. If your disability claim is approved, you will receive an automatic FMLA approval, as long as you are eligible for FMLA and have not exhausted 12 weeks in a 12-month period under federal FMLA or any applicable leave period under state law.

FMLA runs concurrently with approved short-term disabilities as well as any illness days preceding the start of the short-term disability.

If your disability claim is denied, you have the right to request FMLA consideration. Your supervisor must submit a revised FMLA Eligibility form (FMLA1) indicating that your disability was denied and provide you with a Certification of Health Care Provider form (FMLA4). You must complete the employee section of the form and have your health care provider complete the remainder of the form, sign it and mail or fax the form to the FMLA Processing Unit.

Please advise your supervisor of any changes to your home address so that they may be included on the FMLA1 and updated in our records.

If you have any questions regarding this letter, please feel free to call 1-888-722-1787.

Sincerely,
FMLA Processing Unit

Date Recv: 03/22/2006

R-0271

(Page 74 of 427)

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 866-224-4627

March 22, 2006

Melissa Gardner
124 Putnam St.
E Peoria, IL 61611

RE: AT&T Disability Plan
    Claim Number: A625007022-0001-01

Dear Melissa Gardner:

The AT&T Integrated Disability Service Center (AT&T IDSC) has been notified of your absence from work due to an illness or injury. A claim has been initiated and a determination is pending receipt of medical substantiation from your treatment provider. The medical information to substantiate your disability is due to the AT&T Integrated Disability Service Center by April 5, 2006. No consideration for disability benefits can be made until relevant medical documentation is received.

When you are unable to work because of an illness or an injury, you may be eligible for disability benefit payments. Under the provisions of the AT&T disability plans you have a waiting period of 7 calendar days. Disability benefits will begin on the 8th calendar day. To determine if you qualify for benefit payments under the AT&T disability plans, we need your cooperation as well as that of your medical provider. Benefit payments cannot be authorized without your treatment provider substantiating that your medical condition meets the criteria as defined in the AT&T disability plans. To qualify for benefit payments under the AT&T disability plans, your medical condition should involve a sickness or injury, supported by medical documentation that prevents you from performing the duties of your job with or without reasonable accommodations. To assist you in perfecting your claim, the following information is provided for you:

It is your responsibility to sign the Authorization to Release Medical Information form and to provide that authorization form with the Instructions to the Physician to your treatment provider. It is important that both you and your treatment provider understand that these forms, along with chart notes, diagnostic test results, hospital summaries, etc. specifically related to the reason of your absence should be returned regardless of the length of your disability. It is critical that your physician demonstrates by his/her observations and clinical findings that you are unable to perform your work with or without accommodations. This is the information, which will allow the case manager to make a determination of your eligibility for benefit payments under the AT&T disability plans.

Please explain to your treatment provider that he/she should submit all relevant medical records by April 5, 2006. If the medical documentation received from your treatment provider does not contain information that establishes that your condition prevents you from performing the duties of your job with or without reasonable accommodations, your claim will not qualify for benefit payments under the AT&T disability plans.

Conditional Period
You may receive a conditional benefit period from March 20, 2006 (your first day of disability) through April 9, 2006 to allow time to submit the necessary medical information.
Failure to submit the necessary medical information by this date could result in loss of pay for you while you are on disability.
If the medical information does not substantiate your inability to perform the duties of your job with or without

1164968

reasonable accommodations, your claim will not qualify for benefit payments under the plan and all or part of your conditional disability benefit payments may need to be repaid.

Upon receipt of medical documentation, a determination will be made based on the medical substantiation and the conditional approval period will stop.

Travel
Any overnight travel while you are receiving disability benefits should be pre-approved in writing by your physician and by the AT&T Integrated Disability Service Center.

Other Employment
You are expected not to work while receiving AT&T disability plan benefits. If you are capable of working, you are generally considered capable of at least some level of work activity for AT&T and therefore, would not qualify for benefits under the AT&T disability plan.

Exclusions
Please refer to your specific company's Summary Plan Description (SPD) for more detailed information.

Family Medical Leave Act (FMLA)
If you are eligible and entitled to FMLA and/or state medical and family leave, and your disability benefits are approved under your disability plan, FMLA and/or state medical and family leave time will run concurrently with your disability. Questions regarding FMLA and/or state medical and family leave should be referred to the AT&T FMLA Processing Unit at 1-888-722-1787.

Returning to Work
AT&T Integrated Disability Service Center requests that you contact your case manager when you return to work. This will insure that your pay will reflect your worked hours.

All medical documentation collected regarding your disability absence will be treated in a confidential manner. The AT&T Integrated Disability Service Center (AT&T IDSC) will keep your department advised regarding the progress of your disability case, such as approval periods and when you might be expected to return to work. Should you have any questions regarding your claim for disability, please contact the AT&T Integrated Disability Service Center at 1-866-276-2278. For your convenience, a customer service team has been trained to assist you with questions regarding your disability claim.

Sincerely,

AT&T Integrated Disability Service Center
P.O. Box 61569
King of Prussia, PA 19406

Date Recv: 03/22/2006

1184968

R-0273

(Page 76 of 427)

PROCTOR MED RECORDS    3096911025      04/04 '06 10:30 NO.841   01/19

# Proctor Hospital    5409 N. Knoxville Ave.    Peoria, IL. 61614

Department or Facility Name:   MEDICAL RECORDS

# FAX

*Case Manager > Robin Hamilton*

*Disability Service Cnt.*

| | | | |
|---|---|---|---|
| | | **Date:** | 4-4-06 |
| | | Number of pages including cover page: | |
| To: | AT+T Integrated | From: | MEDICAL RECORDS DEPARTMENT |
| Fax #: | 866 - 224 - 4627 | Phone #: | 1-309-691-1047 |
| Phone #: | | Fax #: | 1-309-691-1025 |
| RE: | Melissa Gardner | | |
| CC: | | | |

**REMARKS:**   ☐ Urgent    ☐ For your review    ☐ Reply ASAP    ☒ Per your request
          ☐ Please Comment

*Medical Records*

*PB*

**WARNING:** Unauthorized interception or use of this fax could be a violation of Federal and State law. If you have received this information in error, please notify the sender immediately and arrange for the return or destruction of the documents.

This fax may contain health care information. Permission to use or disclose this information has been granted either by law or the patient. Further use or disclosure without additional patient authorization or as otherwise permitted by law is prohibited.

This fax may contain other confidential information belonging to the sender and may be used only for the purpose for which it was requested or intended.

You are responsible for securing any confidential information contained within this fax.

Fax Rcvd: 4/4/2006 12:31:43 PM

R-0274

(Page 77 of 427)

PROCTOR MED RECORDS       3096911025       04/04 '06 10:30 NO.841  02/19

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 866-224-4627

March 22, 2006

Melissa Gardner
124 Putnam St.
E Peoria, IL 61611

RE: AT&T Disability Plan
    Claim Number: A625007022-0001-01
    Case Manager: Robin Hamilton

Dear Melissa Gardner:

The AT&T Integrated Disability Service Center (AT&T IDSC) has been notified of your absence from work due to an illness or injury. A claim has been initiated and a determination is pending receipt of medical substantiation from your treatment provider. The medical information to substantiate your disability is due to the AT&T Integrated Disability Service Center by April 5, 2006. No consideration for disability benefits can be made until relevant medical documentation is received.

When you are unable to work because of an illness or an injury, you may be eligible for disability benefit payments. Under the provisions of the AT&T disability plans you have a waiting period of 7 calendar days. Disability benefits will begin on the 8th calendar day. To determine if you qualify for benefit payments under the AT&T disability plans, we need your cooperation as well as that of your medical provider. Benefit payments cannot be authorized without your treatment provider substantiating that your medical condition meets the criteria as defined in the AT&T disability plans. To qualify for benefit payments under the AT&T disability plans, your medical condition should involve a sickness or injury, supported by medical documentation that prevents you from performing the duties of your job with or without reasonable accommodations. To assist you in perfecting your claim, the following information is provided for you:

It is your responsibility to sign the Authorization to Release Medical Information form and to provide that authorization form with the Instructions to the Physician to your treatment provider. It is important that both you and your treatment provider understand that these forms, along with chart notes, diagnostic test results, hospital summaries, etc. specifically related to the reason of your absence should be returned regardless of the length of your disability. It is critical that your physician demonstrates by his/her observations and clinical findings that you are unable to perform your work with or without accommodations. This is the information, which will allow the case manager to make a determination of your eligibility for benefit payments under the AT&T disability plans.

Please explain to your treatment provider that he/she should submit all relevant medical records by April 5, 2006. If the medical documentation received from your treatment provider does not contain information that establishes that your condition prevents you from performing the duties of your job with or without reasonable accommodations, your claim will not qualify for benefit payments under the AT&T disability plans.

Conditional Period
You may receive a conditional benefit period from March 20, 2006 (your first day of disability) through April 9, 2006 to allow time to submit the necessary medical information.

1184968

R-0275

PROCTOR MED RECORDS    3096911025    04/04 '06 10:31 NO.841  03/19

Failure to submit the necessary medical information by this date could result in loss of pay for you while you are on disability.

If the medical information does not substantiate your inability to perform the duties of your job with or without reasonable accommodations, your claim will not qualify for benefit payments under the plan and all or part of your conditional disability benefit payments may need to be repaid.

Upon receipt of medical documentation, a determination will be made based on the medical substantiation and the conditional approval period will stop.

Travel
Any overnight travel while you are receiving disability benefits should be pre-approved in writing by your physician and by the AT&T Integrated Disability Service Center.

Other Employment
You are expected not to work while receiving AT&T disability plan benefits. If you are capable of working, you are generally considered capable of at least some level of work activity for AT&T and therefore, would not qualify for benefits under the AT&T disability plan.

Exclusions
Please refer to your specific company's Summary Plan Description (SPD) for more detailed information.

Family Medical Leave Act (FMLA)
If you are eligible and entitled to FMLA and/or state medical and family leave, and your disability benefits are approved under your disability plan, FMLA and/or state medical and family leave time will run concurrently with your disability. Questions regarding FMLA and/or state medical and family leave should be referred to the AT&T FMLA Processing Unit at 1-888-722-1787.

Returning to Work
AT&T Integrated Disability Service Center requests that you contact your case manager when you return to work. This will insure that your pay will reflect your worked hours.

All medical documentation collected regarding your disability absence will be treated in a confidential manner. The AT&T Integrated Disability Service Center (AT&T IDSC) will keep your department advised regarding the progress of your disability case, such as approval periods and when you might be expected to return to work. Should you have any questions regarding your claim for disability, please contact the AT&T Integrated Disability Service Center at 1-866-276-2278. For your convenience, a customer service team has been trained to assist you with questions regarding your disability claim.

Sincerely,

AT&T Integrated Disability Service Center
P.O. Box 61569
King of Prussia, PA 19406

Fax Rcvd: 4/4/2006 12:31:43 PM

1184966

R-0276

PROCTOR MED RECORDS     3096911025      04/04 '06 10:31 NO.841   04/19

### Proctor Health Care, Inc.
### Authorization for Use or Disclosure of Information

I hereby authorize Proctor Health Care, Inc. to ☐ use or ☒ disclose the following protected health information.

Patient's Name: _Gardner_     _Melissa_     _Ann_
               Last            First         Middle

Home Address: _124 Putnam St._    _East Peoria IL 61611_
                Address         City      State     Zip Code

**REDACTED**    _256-9393_

Social Security Number      Birth Date        Contact Number

To: _AT&T Integrated Disability Service Center + Dr. John K. Miller + Dr. Dinh + Dr. Bruce B. Chien_    From:

**PROCTOR HOSPITAL**
**MEDICAL RECORDS DEPARTMENT**
**5409 N. KNOXVILLE AVE.**
**PEORIA, IL 61614**

☐ Complete Medical File   _86-001-1391_     ☐ Disclosure of Highly Confidential Information
     ☐ Discharge Summary    ☐ Lab Reports       ☐ Mental Illness / Developmental Disability
     ☐ History & Physical     ☐ Cardiology Reports    ☐ Child Abuse & Neglect ☐ Venereal Disease
     ☐ Consultations        ☐ X-ray Reports      ☐ Substance Abuse (i.e., Alcohol or Drug)
     ☐ Procedure Reports    ☐ X-ray Films       ☐ Abuse of an Adult with a Disability
     ☐ ED Record                            ☐ Sexual Assault
     ☐ Other _3/9/06 Records Only_     ☐ HIV/AIDS Testing / Treatment

**TERM:** This authorization will remain in effect: _6016433, 6018288_
   ☒ For 90 days from the date of this authorization ☐ Other: _____

**PURPOSE:** The protected health information is being used or disclosed for the following purpose(s):
   ☐ Continuation of care    ☒ Other: (Specify) _____

❖ I understand that the information used or disclosed may be subject to redisclosure by the recipient receiving it and may no longer be protected by federal or state privacy regulations.
❖ I understand that Proctor Health Care, Inc. may, directly or indirectly, receive remuneration from a third party in connection with the use or disclosure of my health information.
❖ I understand that I may refuse to sign or may revoke (at any time) this Authorization, for any reason and that such refusal or revocation will not affect the commencement, continuation or quality of Proctor's treatment of me.
❖ I understand that I may inspect or receive a copy of my protected health information to be used or disclosed as permitted under federal or state law.
❖ I understand that I may revoke this Authorization by notifying the Privacy Office at Proctor Health Care, Inc. This notification must be in writing to: **Jo Carver, Privacy Officer, Proctor Health Care, Inc, 5409 N. Knoxville Ave., Peoria, IL 61614.**
❖ I have read and understand the terms of this Authorization and I have had an opportunity to ask questions about the use and disclosure of my health information. By my signature, I hereby, knowingly and voluntarily authorize Proctor Health Care, Inc. to use or disclose my health information in the manner described above.

_Melissa A. Gardner_      ✗_04-04-06_     _Peggy Barger_
Signature of Patient            Date         Signature of Witness*

**NOTE:** If patient is a minor or is otherwise unable to sign this Authorization, obtain the following signatures:

_____    _____   _____   _____
Signature of Legal Guardian Or     Relationship to Patient    Date    Signature of Witness*
Other Legal Representative

*Witness signature required for the release of information about mental illness or developmental disability.

**PLEASE SEE REVERSE SIDE FOR NOTICE TO RECEIVING AGENCY / PARTY**

Fax Rcvd: 4/4/2006 12:31:43 PM

R-0277

(Page 80 of 427)

PROCTOR MED RECORDS    3096911025    04/04 '06 10:31 NO.841  05/19
PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

DATE OF ADMISSION:  03/13/2006

PRIMARY CARE PHYSICIAN:  John K. Miller, MD

CODE STATUS:  Full code.

IDENTIFYING DATA:  Husband's name is Gregory Gardner.  Cell phone number 258-0096.

CHIEF COMPLAINT:  Intractable back pain.

HISTORY OF PRESENT ILLNESS:  This 32-year-old right-handed female with no significant history of low back pain who was in Springfield, Illinois, on Thursday, March 9, 2006, in a seminar course working with computers and started noticing waistline low back pain.  She was able to complete her tasks that day, but the pain was becoming more intense.  She decided to stop at the OSF Prompt Care on that Thursday and was given Vicodin and Skelaxin.  She was able to return to her training job in Springfield for AT and T on Friday but with increasing back pain.  At first, the pain became progressively worse over the weekend.  She had no fevers, chills, nausea, or vomiting.  She had no back trauma.  No history of herpes zoster.  She had no signs or symptoms of cauda equina.  Pain became more intense, rating it as close to 9/10 to the point where she went to the emergency room last evening at Methodist and had an x-ray performed that revealed some mild DJD and partial sacralization of L5, degenerative changes at L4-L5 and L5-S1 as read at the emergency room at Methodist on March 12, 2006.  She received 4 mg of morphine, Percocet, and muscle relaxants and was sent home.

She had increasing pain today to the point where she woke about 4 o'clock this morning and took her second Percocet.  She contacted her office but had increasing pain and was sent to the emergency room for evaluation.

In the emergency room, she received 60 mg of IM Norflex and Nubain 20 mg x2.  Her pain initially was rated as a 7/10.  She states it is down about a 6/10 without much in the way of pain release with the above medications.

She denies any footdrop.  No signs or symptoms of cauda equina.  No paresthesias or dysesthesias.  No radiculopathy symptoms with it.  No change of bowel or bladder habits.  She was able to urinate in the emergency room and thinks she had a bowel movement yesterday.  She does recognize that she has increasing pain with cough.  She feels more comfortable when she is in the left lateral decubitus position with her knees drawn to her chest.  She has increasing pain with both sitting as well as leaving her legs supine.

She denies ever having a significant back problem like this before.  She has been hospitalized for other reasons but never because of back pain.  She denies any history of diskitis or back trauma that she can recall.

GARDNER, MELISSA A    32Y F
860011391    DO
AC#:6016433                                         DT:HP IMP

**REDACTED**

HISTORY & PHYSICAL

PAGE  1

R-0278

PROCTOR MED RECORDS    3096911025    04/04 '06 10:32 NO.841  06/19
PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

Secondary to her above back pain, she was admitted to the hospital for pain management and evaluation.

PAST MEDICAL HISTORY: History of migraines. She has had this for a number of years. She has been hospitalized, she estimates around 6 times. She had been seeing initially Dr. Ni and now recently Dr. Richard Lee. She thinks she had a significant migraine about 2 weeks ago but not previously. She has had a history of what sounds like a cubital tunnel release on the left, history of a D and C, history of ectopic pregnancy, status post T and A, and history of cholecystectomy. No significant history of osteoarthritis.

SOCIAL HISTORY: She is married. Her husband's name is Gregory. She has 2 children, 11 and 5. She smokes half pack a day. As a matter of fact, she had a cigarette in the wheelchair on the way up here to the ortho-neuro floor. She works currently for AT and T/SBC, she is going through a training course down in Springfield, Illinois.

FAMILY HISTORY: Mother has a history of hyperlipidemia and a questionable history of having what sounds like congenital narrowed spinal canal. Her father's family history is unknown. She has no siblings.

REVIEW OF SYSTEMS:
CARDIOVASCULAR: She denies any chest pressure or chest pain. No syncope or presyncope. No angina symptoms. No palpitations.
GASTROINTESTINAL: No hematochezia or melena. Significant for dyspepsia.
GENITOURINARY: She denies any hematuria. No history of kidney stones. No UTI symptoms.
NEUROLOGIC: Positive pain without radiculopathy. No paresthesias or dysesthesias. No signs or symptoms of cauda equina.
ORTHOPEDIC: No history of significant orthopedic problems in the past other than some low-grade DJD.
ENDOCRINE: Her last menstrual period is due this week, it was about 25 days ago. No history of hyperlipidemia or diabetes.
NEUROLOGIC: No footdrop. No radiculopathy. No signs or symptoms of cauda equina. No paresthesias or dysesthesias. No motor weakness, other than just increasing pain with either supine or walking.

MEDICATIONS: Depakote ER 500 mg PO q.a.m. for migraine prophylaxis. Her pharmacy is Walgreens at East Peoria. Maxalt 10 mg and Ultram. She does not feel this is very effective. She is not using anything OCPs at this time.

ALLERGIES: Significant for DEMEROL causing blisters. She had an IM injection, it sounds like, and she had quite a bit of blisters on her gluteal area; nausea and vomiting that is significant with ASPIRIN; and COMPAZINE caused anxiety and mental status changes. She has never had any history of any problems with morphine, although it is mentioned as possible allergy on

GARDNER, MELISSA
860011391
AC#:6016433    REDACTED

DT:HP:MP

HISTORY & PHYSICAL

PAGE  2

Fax Rcvd: 4/4/2006 12:31:43 PM

PROCTOR MED RECORDS    3096911025    04/04 '06 10:32 NO.841  07/19
PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL 61614

her emergency room sheet; this, she tells me is inaccurate.

**PHYSICAL EXAMINATION:**
VITAL SIGNS: Blood pressure 157/87 with pulse of 70, respirations of 20, and temperature of 98.8. Saturating 98% on room air without any labored respirations.
GENERAL: Positive discomfort, she rates as a 6/10 lying in left lateral decubitus position with increasing pain with legs supine. She was able to get out of wheelchair in order to have a cigarette outside the emergency room earlier. Here with her mother.
HEENT: Oropharynx pink and moist. Uvula midline.
NECK: No thyromegaly. No carotid bruits.
CARDIOVASCULAR: Regular rate and rhythm without murmur. S1 and S2. No S3.
RESPIRATORY: Clear to auscultation without wheezes or crackles.
ABDOMEN: Soft, obese, and nontender. Bowel sounds are positive. No masses.
GENITOURINARY: Deferred.
RECTAL: Deferred.
BREASTS: Deferred.
EXTREMITIES: She has normal motor skills 5/5 on her lower extremities. She has no paresthesias or dysesthesias. No radiculopathy. She has no tenderness over her SI joints bilaterally. I did not check a straight leg raise because of muscle spasm and the patient's discomfort. She is able to move on her own power, rolling from side to side in the bed as well as straight her legs, preferring do this in a decubitus position. She has normal ankle reflexes, dorsiflexion as well as patellar reflexes with good sensation and distal pulses. Negative cords. Negative Homans. No lower extremity edema.
BACK: She has no real tenderness over the entire length of the supraspinous processes. She has some positive tenderness over the T12 all the way through the L4 region, paraspinous muscles with no obvious spasm with exam, although there is some tenderness to the skin. There is no obvious herpes zoster. No shingles. No erythema. No bullae or blisters.

**ASSESSMENT:**
1. A 32-year-old female, right handed, with intractable back pain.
2. Musculoskeletal nature. I do not believe she has any significant radiculopathy at this time.3. Family history of having some kind of congenital stenosis in the spinal canal in the mother from what she can recall.4. Drug allergies as above.

**PLAN:**
1. Admit for back pain with morphine sulfate for pain management.
2. We will use Zofran as an antiemetic.
3. We will use Norflex 60 mg IM q.12 h. for muscle spasm.
4. We will use Aqua pad heat for the patient's comfort.
5. We will continue on her Depakote for migraine prophylaxis.

GARDNER, MELISSA A    32Y F
860011391    DO
AC#:6016433    **REDACTED**    DT:HP/MP

HISTORY & PHYSICAL

PAGE 3

Fax Rcvd: 4/4/2006 12:31:43 PM

PROCTOR MED RECORDS      3096911025        04/04 '06 10:33 NO.841  08/19
PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

6.  We will check a urine pregnancy test.
7.  We will consult Dr. Bruce Chien, pain management specialist, secondary to
intractable back pain and see if she needs to proceed with MRA imaging of her
low back.
8.  Any signs and symptoms of cauda equina which have discussed with the
patient as well as nursing staff to contact me immediately or urinary
retention with good comprehension.
9.  The patient will be followed by Dr. Miller throughout her hospital course
with whom I will discuss her care.  He is aware of her admission.

ROBERT B. ADAMS, MD/hs/lr
D:   03/13/2006 20:29
T:   03/14/2006 12:00
981136/32755/32446

Fax Rcvd: 4/4/2006 12:31:43 PM

GARDNER, MELISSA A      32Y F
860011391   DOB**REDACTED**
AC#:6016433   4                                  DT:HPIMP
                        HISTORY & PHYSICAL
                                                 PAGE  4

(Page 84 of 427)

PROCTOR MED RECORDS    3096911025    04/04 '06 10:33 NO.841  09/19

   

**PROCTOR** HOSPITAL    5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071    TRI-COUNTY RADIOLOGISTS LTD.

3/24/06
9:32:26
PAGE    1

PATIENT NAME: GARDNER, MELISSA          M/R NUMBER:      860011391
ORDERING DR: CULEN, BRUCE B             TRANSCRIBE DATE: 3/24/06
BIRTH DATE: **REDACTED**                ORDER NUMBER:    0841196
OUTPATIENT: ██████                      ACCT. NUMBER:    6018288

EXAMINATION: MRI CERVICAL SPINE WITHOUT CONTRAST
DATE OF EXAM: 3-23-06
CLINICAL HISTORY: R C6 RADICULOPATHY  NUMBNESS R HAND  WEAKNESS L HAND

No abnormal signal identified within the cervical portion of the cord.  No
abnormal signal identified within the marrow-containing portion of the cervical
vertebral bodies.

There are mild annular bulges of the C3-C4, C4-C5, and C5-C6 discs with mild
mass effect upon the anterior aspect of the thecal sac and anterior subarachnoid
space.  No significant central spinal stenosis or foraminal stenosis identified.

IMPRESSION:

1.  NEGATIVE MRI EXAMINATION OF THE CERVICAL SPINE FOR FRANK DISC HERNIATIONS OR
SPINAL STENOSIS.

2.  NO ABNORMAL SIGNAL IDENTIFIED WITHIN THE CERVICAL PORTION OF THE CORD OR THE
MARROW-CONTAINING PORTION OF THE CERVICAL VERTEBRAL BODIES.

D:  3-23-06
T:  3-24-06

GG/macc

COPY TO:  DR. DINH

Fax Rcvd: 4/4/2006 12:31:43 PM

**CHART COPY**

GEORGE A. GENTRY, M.D.



**DIAGNOSTIC IMAGING CONSULTATION REPORT**

R-0282

(Page 85 of 427)

PROCTOR MED RECORDS        3096911025        04/04 '06 10:33 NO.841   10/19
PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

DATE OF OPERATION:          03/15/2006

SURGEON:                    BRUCE B. CHIEN, MD

PREOPERATIVE DIAGNOSIS:     HERNIATED L4 NUCLEUS PULPOSUS.

POSTOPERATIVE DIAGNOSIS:    HERNIATED L4 NUCLEUS PULPOSUS.

OPERATION:                  MIDLINE L4 EPIDURAL STEROID INJECTION

INDICATION: Melissa Gardner is ready for her midline L4 epidural steroid
injection.

PROCEDURE: After written and informed consent, the patient was placed in a
seated position over an over-bed tray table and the midline prepped at the
level of the L4-L5.  A #18-gauge Tuohy needle was passed to a depth of 8 cm
in the midline with the patient's stereotactic guidance to loss of resistance
were upon 10 mL containing triamcinolone 80 mg, lidocaine 0.5% were injected.
This was well tolerated.  The needle was withdrawn and the patient actually
felt sufficiently better that she wanted to go to the bathroom to empty her
bladder which she did in the accompaniment of the staff nurse.  She was given
instruction not to arise from the toilet unless our staff was there to assist
her.  The patient tolerated this well.

BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
D:   03/15/2006 06:44
T:   03/15/2006 19:12
116797/34653/32446

GARDNER, MELISSA A        32Y F
860011391    DOB          REDACTED
AC#:6016433   4/15/06                              DT:ORREPTIM

OPERATIVE REPORT

PAGE  1

R-0283

PROCTOR MED RECORDS       3096911025          04/04 '06 10:33 NO.841  11/19

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

PHYSICAL EXAMINATION:
GENERAL: This is a well-developed, well-nourished adult female awake, alert,
and oriented X 3. Affect appropriate. Rating her pain 7 to 8 out of 10.
VITAL SIGNS: On admission, blood pressure 112/88, pulse 88, respirations 16,
and temperature 98.8.
SKIN: Warm and dry. Turgor normal. No acute lesions.
HEENT: Head is normocephalic and atraumatic. PERRL. EOMI. Sclerae
anicteric. Conjunctivae clear. Oral mucosa is pink and moist. Pharynx
clear. Secretions normal.
NECK: Without adenopathy. Trachea midline. No stridor.
LUNGS: Clear. No rales, rhonchi, or wheezes. Good air movement to all
fields. Breath sounds are equal bilaterally. No retraction or accessory
muscle use.
HEART: Regular. No gallops, rubs, or murmurs.
ABDOMEN: Soft. Bowel sounds normoactive. No organomegaly and nontender to
palpation. No guarding or rigidity.
EXTREMITIES: Without edema or cyanosis. Radial and pedal pulses are 2+ and
equal bilaterally.
NEUROLOGIC: Cranial nerves 2 through 12 are intact. Upper and lower
extremity, motor 5/5 in all groups. Upper and lower extremity, sensory
intact to light touch in all dermatomes. Toes are equivocal bilaterally.
SPINE: Cervical spine: Nontender over the midline. No crepitation,
deformity, or paraspinous spasm. Thoracolumbar spine: Nontender over the
midline. No crepitation or deformity. There is paraspinous spasm, T12
through L2 close to the midline bilaterally (right equals left in intensity).

DATABASE: X-ray reading from Methodist Medical Center of Illinois was
evaluated. It showed degenerative changes per the interpretation of that
staff radiologist.

HOSPITAL COURSE: The patient was evaluated on arrival. Norflex 60 mg IM and
Nubain 20 mg IM was given with minimal if any pain relief. The patient had
the Nubain 20 mg IM repeated, had no pain whatsoever. Findings were
discussed with the patient. She felt that she could not tolerate outpatient
therapy having had no success with the medications previously had been
provided. For that reason, the case was discussed with Dr. Robert Adams
covering for Dr. John Miller. He accepted the patient for admission for
intractable pain and she was accordingly admitted. Orders written by.
Additional orders will be written by Dr. Adams in fair condition. I spent a
total of 30 minutes providing noncritical care to this patient.

DISCUSSION: The patient presents to the emergency department with ongoing
worsening low back pain. There is no history from the patient's perspective
of any inciting event. The findings were all localized at the area where the
patient has her discomfort, has not radiated, has not migrated. There are no

GARDNER, MELISSA A.          32Y F
860011391    DO                          **REDACTED**
AC#:6016433                                                    DT:ERDICTIM

EMERGENCY ROOM VISIT-ADMITTED

PAGE  2

Fax Rcvd: 4/4/2006 12:31:43 PM

R-0284

PROCTOR MED RECORDS      3096911025        04/04 '06 10:34 NO.841  12/19
PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

midline findings on my examination, and the x-ray obtained less than 24 hours prior to her admission here showed no acute pathology.  No evidence of any radicular symptoms.  The patient will be admitted for pain control, possible MRI or other evaluation.  Potential for complication at admission, low.

IMPRESSION:  Intractable low back pain.

PLAN:
1.  Evaluated and treated as above.
2.  Admit orders written by me, Dr. Miller's service.

FRANK R DUNAWAY, MD/hs
SIGNATURE ELECTRONICALLY AFFIXED
D:   03/14/2006 04:16
T:   03/14/2006 07:07
984235/30740/32446

Fax Rcvd: 4/4/2006 12:31:43 PM

GARDNER, MELISSA A        32Y F
860011391    DOB: REDACTED
AC#:6016433    451 1 EN

EMERGENCY ROOM VISIT-ADMITTED

DT:ERDICTIM

PAGE  3

R-0285

(Page 88 of 427)

PROCTOR MED RECORDS    3096911025    04/04 '06 10:34 NO.841  13/19

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL 61614

DATE OF ADMISSION: 03/13/2006

CONSULTATION DATE: 03/15/2006

ATTENDING PHYSICIAN: John K Miller, MD

CONSULTING PHYSICIAN: DZUNG H DINH, MD

ATTENDING NEUROSURGEON: Dzung H. Dinh, MD

HISTORY OF PRESENT ILLNESS: Melissa Gardner is a 32-year-old female who was
sitting at work last Thursday. She works at Ameritech and does a lot of
driving and sitting. She states that she noticed a mid to right low back
pain which progressively got worse. She did stop at OSF Prompt Care in
Morton and was given Vicodin and Skelaxin. She did return to work on Friday
and states that the pain progressively worsened. On Sunday, she went to the
emergency room at Methodist Medical Center. They performed x-rays, and she
was given Percocet. She then stated that early in the morning on Monday, she
went to Proctor ER.

PAST MEDICAL HISTORY: She has had migraine for approximately 3 years. She
sees Dr. Richard Lee, and she currently takes Depakote for her migraines.

PAST SURGICAL HISTORY: Positive for cholecystectomy. She has had a D and C,
a T and A, ectopic pregnancy, and cubital tunnel surgery on the left.

SOCIAL HISTORY: She does smoke, she takes about half a pack a day. She is
married. She lives with her husband, Craig; and she has 2 children, 11 and
5.

ALLERGIES: She is allergic to DEMEROL which causes blisters. She has nausea
and vomiting when she takes ASPIRIN, and COMPAZINE causes anxiety and mental
status changes.

PHYSICAL EXAMINATION:
HEAD, EYES, EARS, NOSE, AND THROAT: Within normal limits.
NECK: Supple. There is no thyromegaly or bruit.
LUNGS: Lung sounds are clear in all lobes.
HEART: Heart sounds regular rate and rhythm.
ABDOMEN: Soft and nontender. She is obese. She is approximately over 200
pounds.
NEUROLOGIC: Her cranial nerves 2 through 12 are grossly intact. Her upper
extremity exam is normal. Her strength is 5+/5 in all muscle groups and
sensation intact. Deep tendon reflexes of the upper extremities are 2+ in
the biceps, triceps, and brachioradialis. On her left lower extremity exam,
she did have right low back pain. On both straight leg examinations, right
is worse than the left at approximately 25 degrees on the right and 30
degrees on the left. Overall strength is good. Her strength is 5+/5 in

Fax Rcvd: 4/4/2006 12:31:43 PM

GARDNER, MELISSA A    32Y F
860011391    DOB: REDACTED
AC#:6016433    4    REDACTED                                    DT:CONSHRIM

CONSULTATION REPORT

PAGE 1

bilateral hip flexion and extension, knee flexion and extension, dorsi plantar flexion as well as the EHL.  Her sensation is intact, and her deep tendon reflexes on the bilateral patellar are 2+ and the bilateral Achilles' are 2+.

LABORATORY DATA:  A lumbar MRI was done yesterday on March 14, 2006, reveals an L4-L5 annular tear.

ASSESSMENT AND PLAN:  We have written for Physical Therapy to evaluate and treat.  We have added Valium 5 mg PO every 6 hours p.r.n. for back spasms. She is scheduled for an epidural steroid injection this afternoon per Dr. Tin.  We will see how this treatment relieves her right low back pain.

Thank you for the opportunity to participate in her care.  We will see how the lumbar epidural steroid injections, physical therapy, and medication management help with her low back pain.

Dictated by CRISTIN RASSI, APN, CNS

DZUNG H DINH, MD/hs
D:   03/15/2006 12:42
T:   03/16/2006 02:15
129187/36606/

Fax Rcvd: 4/4/2006 12:31:43 PM

GARDNER, MELISSA A          32Y F
860011391.   DOB  ~~REDACTED~~
AC#:6016433   45~~REDACTED~~                        DT:CONSHPIM

CONSULTATION REPORT                          PAGE  2

PROCTOR MED RECORDS    3096911025    04/04 '06 10:35 NO.841   15/19

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

DATE OF ADMISSION: 03/13/2006

CONSULTATION DATE: 03/14/2006

ATTENDING PHYSICIAN:  John K Miller, MD

CONSULTING PHYSICIAN:  BRUCE B CHIEN, MD

Consultation is in regard to acute-onset mid lumbar back pain.

Melissa Gardner is a 32-year-old female with acute onset of back pain, midline, lumbar on Thursday while at work.  She sits at a desk at Ameritech in Springfield.  Her drive home to East Peoria from Springfield was uncomfortable with her noticing that it was painful to lift her leg to the brake pedal.  This did not remit at home in a standing or recumbent position and she went to OSF Prompt Care in Morton where she was given Vicodin and Skelaxin.  She went to work on Friday, was miserable.  On Sunday, she went to the emergency department at MMCI, no MRI was performed.  She had x-rays done and was given Percocet.  She awoke at 0400 on Monday, called Dr. Miller's office, went to the emergency room.

PAST MEDICAL HISTORY:  Migraine for about 3 years, looked after by Dr. Richard Lee.  She is due for her menstrual period.

FAMILY HISTORY:  Everyone in her family has back pain.

SOCIAL HISTORY:  She wants to smoke, does not want a patch.

ALLERGIES:  DEMEROL LEADS TO BLISTERS, ASA LEADS TO NAUSEA AND VOMITING, COMPAZINE LEADS TO ANXIETY.  She wants morphine.

SURGICAL HISTORY:  Cholecystectomy, D and C, T and A, ectopic, and cubital tunnel on the left.

REVIEW OF SYSTEMS:  Otherwise negative.  She really wants to smoke.

PHYSICAL EXAMINATION:
GENERAL:  She is approximately 200 pounds, looks to be about 5 feet 7 inches.
VITAL SIGNS:  Unremarkable.
HEENT:  Pupils are equal, round, and reactive to light and accommodation. Visual fields are full.  Fundi are benign.
CHEST:  Clear per Dr. Dunaway.
CARDIOVASCULAR:  Without S3, S4, murmur, or gallop.
ABDOMEN:  Without organomegaly.
SPINE:  Tender at L4 in the midline.
EXTREMITIES:  Straight leg raising is positive on all sides, right greater than left at 30 and 45 degrees respectively.  There is paraspinous spasm but no radiation.  Motor and sensory are normal.  Deep tendon reflexes are 2+.

GARDNER, MELISSA A          32Y F
860011391    DOB:   REDACTED                    DT:CONSHPIM
AC#:6016433   4

CONSULTATION REPORT

PAGE  1

Fax Rcvd: 4/4/2006 12:31:43 PM

PROCTOR MED RECORDS    3096911025    04/04 '06 10:35 NO.841  16/19
PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

She can stand at the bedside but with much axial pain.  SI joints are benign.

IMPRESSION:  This is probably an L4 disk syndrome particularly given the fact
that being seated in the automobile is uncomfortable.  I have explained in
detail the intervention, outcome, and that she has never been scanned at any
of the 3 hospitals and we need to accomplish that today.  She is aware that
lumbar ESI is about a 60% yield over 6 to 12 months when approached in three
2-week increments; and that there are steroid limitations which we are
careful not to broach or approach the maximum dose limits.  Narcotics are
unlikely to be of long-term use.  Surgical evaluation clearly has to depend
on the MRI.  Implanted devices are unlikely to be of much use as her
distribution is axial still at this time.  As for intradiskal procedures, I
do do them but these are reserved for a last chance as the risk of diskitis
is irreducible at 0.5% and is a patient care disaster.  We will await the MRI
this afternoon.

Best regards,

BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
D:   03/14/2006 09:57
T:   03/15/2006 01:43
990810/31201/32446

Fax Rcvd: 4/4/2006 12:31:43 PM

GARDNER, MELISSA A          32Y F
860011391    DOB: REDACTED
AC#:6016433    451          DT:CONSHPIM

CONSULTATION REPORT

PAGE  2

(Page 92 of 427)

PROCTOR MED RECORDS        3096911025         04/04 '06 10:35 NO.841   17/19

PROCTOR HOSPITAL LABORATORY
5409 N. KNOXVILLE AVE. PEORIA, IL 61614
DIRECTOR - ALLAN C. CAMPBELL, M.D.
Results: 691-1060              FAX: 691-9163          Consults: 691-4430

NAME: GARDNER,MELISSA A                          Birthdate: REDACTED
                                                 AGE: 32Y       SEX: F
MR#: 860011391      NS: ON       ROOM: 451-1     Admit:    03/13/2006
ACCT: 6016433       DR: MILLER, JOHN K.          Discharge: 03/17/2006

*************************** SEROLOGY ***************************

03/13   2200 URINE PREGNANCY TEST
             URINE PREGNANCY TEST          NEGATIVE  NEG
             URINE SP GRAVITY              1.016
                                           SPECIFIC GRAVITY MUST BE >=1.010 FOR A VALID NEGATIVE
                                           URINE PREGNANCY TEST RESULT

Fax Rcvd: 4/4/2006 12:31:43 PM

GARDNER,MELISSA A
    MR#: 860011391                      END OF REPORT                        PAGE: 1
    LOC: ON    RM#: 451-1       INPATIENT MEDICAL RECORDS COPY
                                                           Printed: 03/17/2006 21:07

R-0290

E-FILED
Wednesday, 23 July, 2008  03:59:00 PM
Clerk, U.S. District Court, ILCD

(Page 93 of 427)

PROCTOR MED RECORDS    3096911025    04/04 '06 10:35 NO.841  18/19

ate: 4-04-06              PROCTOR HOSPITAL              PRELIMINARY
ime: 11:14:54         Transcription Report

atient Account: 6016433 I  2 GARDNER, MELISSA
-------------------------- Result Data ---------------------------*

XAMINATION:  MRI LUMBAR SPINE WITHOUT & WITH CONTRAST

ATE OF EXAM:  3/14/06

LINICAL HISTORY:  INTRACTABLE LOW BACK PAIN

RI of the lumbar spine was performed with and without the aid of intravenous
ontrast.

he conus medullaris of the cord ends at the appropriate level with no abnormal
nhancement or mass lesions identified.

o abnormal bone marrow edema or enhancement of the marrow-containing portion o
he lumbar vertebral bodies.

he L4-L5 Disc Space Level:  There is a broad-based disc bulge of the L4-L5 dis
ssociated with a posterior and central annular tear.  There is bilateral mild
o moderate narrowing of the neural canal and neural foramina at this disc spac
evel.

he L3-L4 Disc Space Level:  There is a broad-based annular bulge with an 8 mm
rea of annular tear involving the posterior central aspect of the annulus.  No
ignificant narrowing of the neural canal and neural foramina.

he remainder of the lumbar disc spaces appear to be unremarkable for frank dis
erniations or spinal stenosis.

MPRESSION:

DEGENERATIVE DISC DISEASE EVIDENT BY MILD DEGENERATIVE DEHYDRATION AND LOSS OF
DISC SPACE HEIGHT OF THE L3-L4, L4-L5 AND L5-S1 DISCS.  THIS IS ASSOCIATED WITH
AGE-INDETERMINATE POSTERIOR CENTRAL ANNULAR TEARS OF THE L3-L4 AND L4-L5 DISCS.

D: 3/14/06
T: 3/14/06

BG:jr

Fax Rcvd: 4/4/2006 12:31:43 PM

(Page 94 of 427)

PROCTOR MED RECORDS      3096911025        04/04 '06 10:36 NO.841  19/19

ate:  4-04-06                    PROCTOR HOSPITAL                        PRELIMINARY
ime: 11:14:54                  Transcription Report

atient Account: 6016433 I  2 GARDNER, MELISSA

---------------------------- Result Data ----------------------------------*

* End of Report *

Fax Rcvd: 4/4/2006 12:31:43 PM

R-0292

Apr 05 06 10:35a    DR B CHIEN                3096918938              p.1

Fax Rcvd: 4/5/2006 11:27:01 AM

---

### PHYSICIAN'S SUBMISSION OF MEDICAL RECORDS

## INSTRUCTIONS TO THE PHYSICIAN

1.  Your patient has filed a disability claim requesting wage replacement benefits for a current absence commencing March 14, 2006. In order to make a determination on the patient's eligibility for these benefits you are requested to submit to the AT&T Integrated Disability Service Center (AT&T IDSC) by: April 5, 2006.

    A.  All medical records relevant to the above-referenced accommodation, including chart notes, treatment plan, diagnostic test results, Specialist reports, etc., plus

    B.  The "Submission of Medical Records" form at the bottom of this sheet, attached to the front of the records being submitted.

2.  Failure to provide the requested relevant medical records will adversely impact your patient's request for accommodation.

3.  Any charges for the requested records are the responsibility of your patient.

4.  Once you have submitted all the requested medical information to AT&T Integrated Disability Service Center, the Job Accommodation Specialist may make a request for a physician peer-to-peer discussion with you regarding the medical condition.

5.  If the accommodation is of an extended duration, periodic requests will be made for updated medical records.

---

### SUBMISSION OF MEDICAL RECORDS

Employee
Name: _Melissa Gardner_                SS**REDACTED** ...ber: _A625007022-0001-01_

Print Physician's Name: _BRUCE B. CHIEN, MD SC_

Physician's Signature: _Bruce B Chien_

Address: _5401 N. KNOXVILLE, STE 212_  Telephone #: _(309) 691-8973_

_PEORIA, IL 61614_          Date Rec'd:: _____
                                        (To be completed by AT&T IDSC)

**AT&T Integrated Disability Service Center**
**PO Box 61569, King of Prussia, PA 19406**
**Fax: 1 (866) 224-4627**

R-0293

(Page 96 of 427)

Fax Rcvd: 4/5/2006 11:27:01 AM

Bruce B. Chien M.D.
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
(309) 691-8973  Fax (309) 691-8938

Date: April 4, 2004

Name: Melissa Gardner

Address: 124 Putnam, E Peo.

RX: OK to travel by train but must be able
To change position frequently & no prolonged
single position

May Substitute: _____      Signature: _____
Do Not Substitute: _____   Fed. DEA: AC8777433
Non Repeteur: _____        IL License: 036-063979

R-0294

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

March 14, 2006

Melissa Gardner is a 32 y.o. w. female with the acute onset of back pain, midline, lumbar, on Thursday while at work (desk work). Her drive home from Springfield uncomfortable, with her noticing it to be painful to lift her leg to the brake pedal. It did not remit at home in the standing or recumbent position and she went to OSF Prompt Care in Morton, where she was given Vicodin and skelaxin. Friday she went to work, was miserable. Went on Sunday to the ED at MMCI- no MRI, Xrays→percocet. Awoke 0400, called office, went to ED.

PMH: Migraine, about three years., Looked after by Dr Richard Lee. Due for a menstrual period.
FH: Everyone I her family has back pain.
SH: Smoker, WANTS to smoke, deosn't want a patch.
Allergies: Demerol→blisters, ASA→NV, Compazine →anxiety. Wants MS.
Surgical: Chole, DC, T&A, Ectopic. Cubital tunnel on the left.
ROS: Otherwise negative. She REALLY wants to smoke.

Physical Exam: VS are unremarkable. PERRLA VFs are full, fundi are benign. Chest: clear per Dr. Dunaway. CV: s S3, S4. murmur gallop. Abd: No organomegaly. Spine: Tender at L4 in the midline. SLR is positive on both sides, Right >Left at 30 and 45 degrees respectively. There is paraspinous sapsm but no radiation. Motor and sensory are normal. DTRs are 2+. She can stand at the bedside but with much axial pain. SI joints are benign.

Impression: Probably an L4 disc syndrome. I've explained in detail the interventional algorithm- but as she's never been scanned at three hospitals, we'll accomplish that today. She is aware that Lumbar ESI has about a 60% yield over 6-12 months when approached in three 2 week increments; that there are steroid limitations and we are careful to not broach maximum dose limits. Narcotic is unlikely to be of any long term use; Surgical evaluation clearly has to pend on the MRI. Implanted devices are unlikely to be of much use as her distribution is axial still at this time. Intradiscal procedures- though I do them, are reserved for "last chance" as the risk of discitis is irreducible at 0.5%.

We'll await the MRI this afternoon.

Regards,

Bruce B. Chien, M.D>

Fax Rcvd: 4/5/2006 11:27:01 AM

R-0295

(Page 98 of 427)

Apr 05 06 10:36a    DR B CHIEN            3096918938            p.4

**PROCTOR** HOSPITAL    5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071    TRI-COUNTY RADIOLOGISTS LTD.

3/14/06
17:24:55                                                                    PAGE    1

PATIENT NAME: GARDNER, MELISSA                M/R NUMBER:        860011391
ORDERING DR: CHIEN, BYUNG                     TRANSCRIBE DATE:   3/14/06
BIRTH DATE:                                   ORDER NUMBER:      0830583
INPATIENT - NS/ROOM/BED: GN20451/ 1           ACCT. NUMBER:      6016433

EXAMINATION:  MRI LUMBAR SPINE WITHOUT-& WITH CONTRAST
DATE OF EXAM:  3/14/06
CLINICAL HISTORY:  INTRACTABLE LOW BACK PAIN

MRI of the lumbar spine was performed with and without the aid of intravenous
contrast.

The conus medullaris of the cord ends at the appropriate level with no abnormal
enhancement or mass lesions identified.

No abnormal bone marrow edema or enhancement of the marrow-containing portion of
the lumbar vertebral bodies.

The L4-L5 Disc Space Level:  There is a broad-based disc bulge of the L4-L5 disc
associated with a posterior and central annular tear.  There is bilateral mild
to moderate narrowing of the neural canal and neural foramina at this disc space
level.

The L3-L4 Disc Space Level:  There is a broad-based annular bulge with an 8 mm
area of annular tear involving the posterior central aspect of the annulus.  No
significant narrowing of the neural canal and neural foramina.

The remainder of the lumbar disc spaces appear to be unremarkable for frank disc
herniations or spinal stenosis.

IMPRESSION:

DEGENERATIVE DISC DISEASE EVIDENT BY MILD DEGENERATIVE DEHYDRATION AND LOSS OF
DISC SPACE HEIGHT OF THE L3-L4, L4-L5 AND L5-S1 DISCS.  THIS IS ASSOCIATED WITH
AGE-INDETERMINATE POSTERIOR CENTRAL ANNULAR TEARS OF THE L3-L4 AND L4-L5 DISCS.

D:  3/14/06
T:  3/14/06

GG:jr

                                        GEORGE A. GENTRY, M.D.

**PHYSICIAN COPY**

**DIAGNOSTIC IMAGING CONSULTATION REPORT**

R-0296

Apr 05 06 10:36a    DR B CHIEN              3096918938              p.5

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL  61614

DATE OF ADMISSION:  03/13/2006

CONSULTATION DATE:  03/14/2006

ATTENDING PHYSICIAN:  John K Miller, MD

CONSULTING PHYSICIAN:  BRUCE B CHIEN, MD

Consultation is in regard to acute-onset mid lumbar back pain.

Melissa Gardner is a 32-year-old female with acute onset of back pain, midline, lumbar on Thursday while at work.  She sits at a desk at Ameritech in Springfield.  Her drive home to East Peoria from Springfield was uncomfortable with her noticing that it was painful to lift her leg to the brake pedal.  This did not remit at home in a standing or recumbent position and she went to OSF Prompt Care in Morton where she was given Vicodin and Skelaxin.  She went to work on Friday, was miserable.  On Sunday, she went to the emergency department at MMCI, no MRI was performed.  She had x-rays done and was given Percocet.  She awoke at 0400 on Monday, called Dr. Miller's office, went to the emergency room.

PAST MEDICAL HISTORY:  Migraine for about 3 years, looked after by Dr. Richard Lee.  She is due for her menstrual period.

FAMILY HISTORY:  Everyone in her family has back pain.

SOCIAL HISTORY:  She wants to smoke, does not want a patch.

ALLERGIES:  DEMEROL LEADS TO BLISTERS, ASA LEADS TO NAUSEA AND VOMITING, COMPAZINE LEADS TO ANXIETY.  She wants morphine.

SURGICAL HISTORY:  Cholecystectomy, D and C, T and A, ectopic, and cubital tunnel on the left.

REVIEW OF SYSTEMS:  Otherwise negative.  She really wants to smoke.

PHYSICAL EXAMINATION:
GENERAL:  She is approximately 200 pounds, looks to be about 5 feet 7 inches.
VITAL SIGNS:  Unremarkable.
HEENT:  Pupils are equal, round, and reactive to light and accommodation. Visual fields are full.  Fundi are benign.
CHEST:  Clear per Dr. Dunaway.
CARDIOVASCULAR:  Without S3, S4, murmur, or gallop.
ABDOMEN:  Without organomegaly.
SPINE:  Tender at L4 in the midline.
EXTREMITIES:  Straight leg raising is positive on all sides, right greater than left at 30 and 45 degrees respectively.  There is paraspinous spasm but no radiation.  Motor and sensory are normal.  Deep tendon reflexes are 2+.

GARDNER, MELISSA A        32Y F
860011391    DO     REDACTED
AC#:6016433                                    DT:CONSHPIM

CONSULTATION REPORT

PAGE  1

Fax Rcvd: 4/5/2006 11:27:01 AM

Apr 05 06 10:36a     DR B CHIEN             3096918930              p.6

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL  61614

She can stand at the bedside but with much axial pain.  SI joints are benign.

IMPRESSION:  This is probably an L4 disk syndrome particularly given the fact
that being seated in the automobile is uncomfortable.  I have explained in
detail the intervention, outcome, and that she has never been scanned at any
of the 3 hospitals and we need to accomplish that today.  She is aware that
lumbar ESI is about a 60% yield over 6 to 12 months when approached in three
2-week increments; and that there are steroid limitations which we are
careful not to broach or approach the maximum dose limits.  Narcotics are
unlikely to be of long-term use.  Surgical evaluation clearly has to depend
on the MRI.  Implanted devices are unlikely to be of much use as her
distribution is axial still at this time.  As for intradiskal procedures, I
do do them but these are reserved for a last chance as the risk of diskitis
is irreducible at 0.5% and is a patient care disaster.  We will await the MRI
this afternoon.

Best regards,


BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
D:   03/14/2006 09:57
T:   03/15/2006 01:43
P:   03/15/2006 15:23
990810/31201/32446

GARDNER, MELISSA A      32Y F
860011391   DOB
AC#:6016433   45        **REDACTED**                 DT:CONSHPIM

CONSULTATION REPORT                                  PAGE  2

Fax Rcvd: 4/5/2006 11:27:01 AM

R-0298

(Page 101 of 427)

Apr 05 06 10:36a    DR B CHIEN              3096916938              p.7

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL  61614

DATE OF OPERATION:      03/15/2006

SURGEON:               BRUCE B. CHIEN, MD

PREOPERATIVE DIAGNOSIS:    HERNIATED L4 NUCLEUS PULPOSUS.

POSTOPERATIVE DIAGNOSIS:   HERNIATED L4 NUCLEUS PULPOSUS.

OPERATION:             MIDLINE L4 EPIDURAL STEROID INJECTION

INDICATION:  Melissa Gardner is ready for her midline L4 epidural steroid
injection.

PROCEDURE:  After written and informed consent, the patient was placed in a
seated position over an over-bed tray table and the midline prepped at the
level of the L4-L5.  A #18-gauge Tuohy needle was passed to a depth of 8 cm
in the midline with the patient's stereotactic guidance to loss of resistance
were upon 10 mL containing triamcinolone 80 mg, lidocaine 0.5% were injected.
This was well tolerated.  The needle was withdrawn and the patient actually
felt sufficiently better that she wanted to go to the bathroom to empty her
bladder which she did in the accompaniment of the staff nurse.  She was given
instruction not to arise from the toilet unless our staff was there to assist
her.  The patient tolerated this well.

BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
D:    03/15/2006 06:44
T:    03/15/2006 19:12
P:    03/16/2006 15:35
116797/34653/32446

Fax Rcvd: 4/5/2006 11:27:01 AM

GARDNER, MELISSA A         32Y F
860011391    DOB
AC#:6016433   4      REDACTED                    DT:ORRPTIM

OPERATIVE REPORT

PAGE  1

R-0299

(Page 102 of 427)

Apr 05 06 10:36a    DR B CHIEN                    3096918938              p.8



**PROCTOR**
H O S P I T A L          5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071          TRI-COUNTY RADIOLOGISTS LTD.

3/24/06                                                                                  PAGE    1
9:32:26:

PATIENT NAME: GARDNER, MELISSA                    M/R NUMBER:       A60011381
ORDERING DR:  REDACTED                            TRANSCRIBE DATE:  3/24/06
BIRTH DATE:                                       ORDER NUMBER:     0841158
OUTPATIENT; MR SPI                                ACCT. NUMBER:     6016733

EXAMINATION:  MRI CERVICAL SPINE WITHOUT CONTRAST
DATE OF EXAM:  3-23-06
CLINICAL HISTORY:  R C6 RADICULOPATHY  NUMBNESS R HAND  WEAKNESS  L HAND

No abnormal signal identified within the cervical portion of the cord.  No
abnormal signal identified within the marrow-containing portion of the cervical
vertebral bodies.

There are mild annular bulges of the C3-C4, C4-C5, and C5-C6 discs with mild
mass effect upon the anterior aspect of the thecal sac and anterior subarachnoid
space.  No significant central spinal stenosis or foraminal stenosis identified

IMPRESSION:

1.   NEGATIVE MRI EXAMINATION OF THE CERVICAL SPINE FOR FRANK DISC HERNIATIONS OR
SPINAL STENOSIS.

2.   NO ABNORMAL SIGNAL IDENTIFIED WITHIN THE CERVICAL PORTION OF THE CORD OR THE
MARROW-CONTAINING PORTION OF THE CERVICAL VERTEBRAL BODIES.

D:  3-23-06
T:  3-24-06

GG/emtr

COPY TO:  DR. DINH

PHYSICIAN COPY          GEORGE A. GENTRY, M.D.

**DIAGNOSTIC IMAGING CONSULTATION REPORT**

R-0300

(Page 103 of 427)

Apr 05 06 10:37a    DR B CHIEN                3096918938                p.9

**Bruce B. Chien, M.D.S.C.**
*Anesthesiology and Pain Management*
Proctor Professional Building
5401 N. Knoxville Avenue, Suite 212
Peoria, Illinois 61614
Telephone: (309) 691-8973

*Melissa*

DATE: _Monday, April 17, 2006_        TIME: _1:45 pm_
                                                (*Please arrive @ 12:45 pm*)

OFFICE    METHODIST    PROCTOR    (OSF CENTER FOR HEALTH)    OSF

PROCEDURE: _Midline L4 ESI w/ Caron_

Fax Rcvd: 4/5/2006 11:27:01 AM

**INSTRUCTIONS FOR DAY OF SURGERY:**

1.  Nothing to eat or drink 6 hours before procedure.
2.  Please have a driver with you.
3.  Be at hospital one hour before procedure (in admitting): _12:45 pm_
4.  Please take your usual daily medications with a small sip of water unless otherwise directed by Dr. Chien. Patients on blood thinner will be informed of special directions from Dr. Chien.

R-0301

Apr 05 06 11:56a     DR B CHIEN          3096918938          p.1

Fax Rcvd: 4/5/2006 12:49:31 PM

---

## PHYSICIAN'S SUBMISSION OF MEDICAL RECORDS

## INSTRUCTIONS TO THE PHYSICIAN

1.  Your patient has filed a disability claim requesting wage replacement benefits for a current absence commencing March 14, 2006. In order to make a determination on the patient's eligibility for these benefits you are requested to submit to the AT&T Integrated Disability Service Center (AT&T IDSC) by: April 5, 2006.

    A.  All medical records relevant to the above-referenced accommodation, including chart notes, treatment plan, diagnostic test results, Specialist reports, etc., plus

    B.  The "Submission of Medical Records" form at the bottom of this sheet, attached to the front of the records being submitted.

2.  Failure to provide the requested relevant medical records will adversely impact your patient's request for accommodation.

3.  Any charges for the requested records are the responsibility of your patient.

4.  Once you have submitted all the requested medical information to AT&T Integrated Disability Service Center, the Job Accommodation Specialist may make a request for a physician peer-to-peer discussion with you regarding the medical condition.

5.  If the accommodation is of an extended duration, periodic requests will be made for updated medical records.

---

### SUBMISSION OF MEDICAL RECORDS

Employee Name: _Melissa Gardner_     SS#: **REDACTED**     Claim Number: _A625007022-0001-01_

Print Physician's Name: _Bruce B. Chien, MD SC_

Physician's Signature: _Bruce B. Chien_

Address: _5401 N. Knoxville, STE 212_     Telephone #: _(309) 691-8913_
_Peoria, IL 61614_     Date Rec'd:: _____
                                      (To be completed by AT&T IDSC)

**AT&T Integrated Disability Service Center**
**PO Box 61569, King of Prussia, PA 19406**
**Fax: 1 (866) 224-4627**

R-0302

Apr 05 06 11:57a     DR B CHIEN          3096918938        p.2

# CIRA

# CIRA

## CENTRAL ILLINOIS REHABILITATION ASSOCIATES, S.C.

Telephone: 309-692-4588
Fax: 309-692-4483

### Richard A. Flores, M.D.

### CIRA EVALUATION & MANAGEMENT FORM

Appointment Date: <u>April 3, 2006</u>                             Page 1

Bruce B. Chien, M.D.
Internal Medicine & Pain Medicine
5401 N. Knoxville Avenue
Suite #212
Peoria, Illinois 61614

Name: <u>Melissa Gardner #6771</u>       Age: <u>32</u>

This now 32-year old female presents with the following history. She had significant low back pain with lumbar radicular pain on 3/9/06. Within the next few days she developed numbness and tingling of her upper and lower extremities. Although, she has had a history of cervical pain she was vague as to what the radicular pattern was. She had a previous left cubital tunnel syndrome, decompression and transposition of the ulnar nerve a number of years ago but predominance of her numbness and tingling is in the ulnar distribution of her hand and she has lost strength. She has lost fine motor control in her hands.

On March 29, 2006, Dr. Bruce Chien referred this patient for EMG & Neurosensory Testing for C6 radiculopathy. Her hands and toes are numb.

She has slowly progressing signs and symptoms of numbness, tingling, and weakness in the hands bilaterally. She has numbness and tingling in the feet bilaterally. She has neck pain. She has low back pain. She does not have increased pain with Valsalva maneuvers. She has always had irregular bowel function. She has not had any excess exposure to chemicals. She rarely drinks alcohol.

<u>Review of Systems</u>: She is not diabetic and she does not have any thyroid problems.
Allergies: ASA, Compazine, and Demerol.

<u>Past History:</u>
Illnesses: She has had strep throat, tonsillitis, and severe migraines. She was hospitalized with a lymph infection recently.
Injuries: She broke her left leg two times as a child, she has broken some toes, she had a concussion, contusion, torn knee muscles and tendons, and she has dislocated her kneecap.
Operations: DNC, ectopic P.G. removal, cholecystectomy, tonsilloadenoidectomy, and cubital tunnel syndrome decompression.
Treatments: She will be starting aqua P.T. soon, medications, walker p.r.n, and a TENS unit.
Social History: She is married and has 2 children.
Family History: Her mother is living; she has a small spinal column, stomach problems and hypertension.
Daily Medication: Depakote, Gabapentin, Nabumetone, and Tramadol.

PHYSICAL EXAMINATION:

6339-A N. Big Hollow Rd.     Peoria, IL 61615

Fax Rcvd: 4/5/2006 12:49:31 PM

**Name:** Melissa Gardner #6771          **Date:** April 3, 2006          Page 2
**Height:** 5'10 ½ " **Weight:** 244 lbs  **Dominant hand:** right.  **BP:** 126/78 **Pulse:** 84 **Resp:** 16 .

She has tenderness and tenseness of the C2-S5 paraspinals and hands.

She has decreased cervical range of motion at 15/30 degrees forward flexion and extension, and 20/40 degrees right and left lateral flexion.  She has decreased thoracolumbar range of motion at 70/90 degrees forward flexion, 10/30 degrees extension, and 10/20 degrees right and left lateral flexion.  She has decreased strength in the hands bilaterally.  She has decreased deep tendon reflexes at all sites bilaterally.  She has decreased pinprick sensation in the upper and lower extremities bilaterally.  She has normal proprioception in the upper and lower extremities bilaterally.  She has decreased vibratory sensation in the hands bilaterally.  She has equivocal Tinel's for C.T.S and cubital tunnel syndrome in the upper extremities bilaterally and tarsal tunnel syndrome in the lower extremities bilaterally.

**SKIN:**  She has no lesions, ulcers, or rashes.
**PERIPHERAL VASCULAR SYSTEM:**  She has normal pulses and temperature.
**GAIT AND STATION:**  Antalgic.
**PSYCHIATRIC/MENTAL STATUS:**  She is oriented to person, place, and time and has normal mood and affect.

**ASSESSMENT OF MEDICAL DECISION MAKING**

A. **DIFFERENTIAL DIAGNOSIS:**  status post 3/9/06 (Date) onset of signs and symptoms of:
1.  353.4 Lumbar nerve root lesion
2.  354.2 Cubital tunnel syndrome
3.  356.4 Peripheral neuropathy

B. **Coordinate case management with:  (referring physician):**    Dr. Bruce Chien

C. **Plan of management:**
    1.  **Do PSSD Testing** – reader of this report is referred to that report for the details
    2.  **Do EMG Testing** – reader of this report is referred to that report for the details
    3.  **Other interventions:**

D. **Summary of Test Results:**  Please see dictated reports.

*Reviewed by Flores note*
Richard A. Flores, M.D.
RAF: lb                              Records left OPEN

cc:    Dr. John K. Miller

(Page 107 of 427)

Apr 05 06 11:57a    DR B CHIEN                3096918938                p.4

# CIRA

CIRA

## CENTRAL ILLINOIS REHABILITATION ASSOCIATES, S.C.

Telephone: 309-692-4588
Fax: 309-692-4483

Richard A. Flores, M.D.

### NEUROSENSORY TESTING

Appointment Date:  April 3, 2006                    Page 1

Bruce B. Chien, M.D.
Internal Medicine & Pain Medicine
5401 N. Knoxville Avenue
Suite #212
Peoria, Illinois 61614

Name:  Melissa Gardner #6771          Age: 32

Neurosensory Testing and EMG of the upper and lower extremities was performed on 4/3/06, on Mrs. Melissa Gardner, a 32-year old female who had significant low back pain with lumbar radicular pain on 3/9/06. Within the next few days she developed numbness and tingling of her upper and lower extremities. Although, she has had a history of cervical pain she was vague as to what the radicular pattern was. She had a previous left cubital tunnel syndrome, decompression and transposition of the ulnar nerve a number of years ago but predominance of her numbness and tingling is in the ulnar distribution of her hand and she has lost strength. She has lost fine motor control in her hands.

Neurosensory Testing was done of the ulnar, median, and radial nerve of the upper extremities as well as grip and pinch strength in the hands. In the lower extremity, we tested the medial plantar branch of the posterior tibial nerve, the calcaneal nerve, and the deep peroneal nerve.

Universally throughout, the cutaneous pressure thresholds for 2-point discrimination (2PT) were abnormally elevated bilaterally at all test sites. The 2-point discrimination (2PT) was present at some test sites but not at all. The areas where it was not present included the right radial nerve in the upper extremities and the right medial plantar branch of the posterior tibial nerve as well as the calcaneal nerve and deep peroneal nerves bilaterally. The grip strength in the dominant right hand was at 56% of anticipated normal, but only 34% of anticipated normal in the left. The ratio of median to ulnar grip was such that the median nerve innervated portion was at a ratio of 1.3 on the left and 1.4 on the right. Coefficient of variation was within normal limits. Pinch strength was reduced at maximum to 20% on the left and 51% on the left.

The results of Neurosensory Testing and motor testing for grip are consistent with moderate to severe bilateral polyneuropathy with beginning axonal loss in many of the lower extremity nerves and the right radial nerve. There is a marked reduction of grip strength bilaterally in the hands, more so from the ulnar innervated muscle component than the median.

EMG of the muscles of the upper and lower extremities was tested bilaterally. The reader of this report is referred to that report for the details. EMG showed evidence consistent with:

1. Bilateral mild to moderate denervation in the ulnar nerve distribution from the elbow distally.
2. EMG of the lower extremities was consistent with mild bilateral L4 radiculopathies.

**6339-A N. Big Hollow Rd.    Peoria, IL 61615**

Apr 05 06 11:58a    DR B CHIEN                3096918938                p.5

Name: Melissa Gardner #6771              Date: April 3, 2006              Page 2
SUMMARY OF DIAGNOSTIC TESTING IS AS FOLLOWS:

1. Neurosensory Testing of the upper and lower extremities is consistent with moderate to severe bilateral sensory polyneuropathy with beginning axonal loss, especially in the lower extremities.

2. Grip and pinch testing shows marked reduction of grip strength to 56% of expected normal in the right hand and 34% of expected normal on the left hand, with the predominance of the loss in the ulnar nerve innervated muscles rather than the median nerve innervated muscles.

3. EMG of the upper and lower extremities is consistent with:
   a. Bilateral mild to moderate denervation in the ulnar nerve distribution from the elbows distally bilaterally.
   b. Mild bilateral L4 radiculopathies.

Thank you very much.
Sincerely,

Richard A. Flores, M.D.
RAF: lb

cc:    Dr. John K. Miller

Fax Rcvd: 4/5/2006 12:49:31 PM

R-0306

(Page 109 of 427)

Apr 05 06 11:58a    DR B CHIEN        3096918938        p.6

# CIRA                                       CIRA

## CENTRAL ILLINOIS REHABILITATION ASSOCIATES, S.C.

Telephone: 309-692-4588
Fax: 309-692-4483

### Richard A. Flores, M.D.

ELECTRONEUROMYOGRAPHY

Appointment Date: <u>April 3, 2006</u>                           Page 1

Bruce B. Chien, M.D.
Internal Medicine & Pain Medicine
5401 N. Knoxville Avenue
Suite #212
Peoria, Illinois 61614

Name: <u>Melissa Gardner #6771</u>       Age: <u>32</u>

**EMG Study** of the muscles of the upper extremities was tested bilaterally using muscles representing myotomes C5-T1. The lower extremity musculature was tested using muscles representing myotomes L2-S2. In the upper extremities, in the ulnar nerve innervated muscles from the elbow distally including the flexor carpi ulnaris, flexor digitorum profundus for digits 4 and 5, first dorsi interossei, and abductor digiti quinti, there was increased insertional activity, 1+ fibrillations, and 2+ positive waves. The activated motor unit potential showed normal amplitude and duration with increased polyphasicity and a mild to moderate decrease in number of motor units. In the lower extremities, in the predominantly L4 innervated muscles included the quadriceps femoris, adductor longus, and tibialis anterior, there was increased insertional activity, 2+ fibrillations, and 2+ positive waves. The activated motor unit potential showed normal amplitude and duration with increased polyphasicity and a mild but definite decrease in number of motor units. All the other muscles of the upper and lower extremities showed normal insertional activity with no fibrillations or positive waves. The activated motor unit potential showed normal amplitude, duration, degree of polyphasicity, and number of motor units.

**IMPRESSION OF EMG OF THE UPPER AND LOWER EXTREMITIES SHOWS ELECTRICAL EVIDENCE OF:**

1. Bilateral mild to moderate denervation in the distribution of the ulnar nerve from the elbow distally.
2. Mild bilateral L4 radiculopathies.

Thank you very much.
Sincerely,

*Richard A. Flores, M.D.*
Richard A. Flores, M.D.
RAF: lb

cc:    Dr. John K. Miller

6339-A N. Big Hollow Rd.     Peoria, IL 61615

R-0307

(Page 110 of 427)

Apr 05 06 11:58a    DR B CHIEN          3096918938          p.7



REDACTED

Fax Rcvd: 4/5/2006 12:49:31 PM

(Page 111 of 427)

Apr 05 06 11:59a    DR B CHIEN                3096918938              p.8

Central Illinois Rehabilitation Associates, S.C.

Summary Pinch Report Page 1

Patient Name: GARDNER, MELISSA

Involved Side: B

Patient ID: 6771        Visit Date: 04/03/2006        Visit No: 1        Date of Birth

REDACTED



| Sustained Key | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Trials | | | | | AVG | | |
| | 1 | | 2 | | 3 | | | |
| | Left | Right | Left | Right | Left | Right | Left | Right | |
| Peak | 2.3 | 5.5 | 2.0 | 5.3 | 1.7 | 4.6 | 2.0 | 5.1 | KG |
| Average | 1.7 | 5.0 | 1.5 | 4.0 | 1.1 | 3.8 | 1.5 | 4.2 | KG |
| Reaction Time | 0.2 | 0.2 | 0.2 | 0.3 | 0.3 | 0.6 | 0.2 | 0.4 | SEC |
| Rise Time | 0.1 | 0.1 | 0.1 | 0.5 | 0.5 | 0.4 | 0.3 | 0.3 | SEC |
| % Fatigue | 33.0 | 16.3 | 54.5 | 39.8 | 44.2 | 37.6 | 43.9 | 31.2 | |
| Squeeze Time | 2.7 | 1.2 | 2.4 | 1.9 | 2.0 | 1.6 | 2.4 | 1.6 | SEC |
| Fatigue Rate | 0.3 | 0.7 | 0.6 | 1.1 | 0.4 | 0.9 | 0.4 | 0.9 | KG/SEC |
| Capacity | 5.5 | 15.5 | 4.6 | 12.1 | 3.6 | 9.5 | 4.6 | 12.4 | KG*SEC |

I/UI

C.V.                                    14.50  8.49

| | | |
|---|---|---|
| Peak: | Average peak strength for all trials | Rise Time: | Time from 10% of peak to 90% of peak | Fatigue Rate: | (Peak-Reading at end beep)/Squeeze Time |
| Average: | Average of all data from peak to end of test | % Fatigue: | 100*(Peak-Reading at beep)/Peak | Capacity: | Area under the curve |
| Reaction Time: | Time from start beep to 10% of peak | Squeeze Time: | Time from peak to end beep |

Fax Rcvd: 4/5/2006 12:49:31 PM

Apr 05 06 11:59a    DR B CHIEN        3096918938        p.9

Central Illinois Rehabilitation Associates, S.C.        PSSD Report Page 1

Patient Name: GARDNER, MELISSA

Patient ID: 6771        Visit Date: 04/03/2006        Visit No: 1        Date of Birth: **REDACTED**

NOTE: Underline indicates abnormal Pressure Threshold        * Indicates abnormal spacing

## Dorsal Web Space 1/2

|  | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 18.3 | | 6.3 | |
| 2 Pt Static | 60.0 | 15.0 * | 72.0 | 15.0 * |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |



## Great Toe Pulp

|  | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 46.8 | | 38.9 | |
| 2 Pt Static | 79.1 | 4.5 | 85.8 | 15.0 * |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |



Fax Rcvd: 4/5/2006 12:49:31 PM

R-0310

(Page 113 of 427)

Apr 05 06 11:59a    DR B CHIEN                3096918938              p.10

Central Illinois Rehabilitation Associates, S.C.                    PSSD Report Page 2

Patient Name: GARDNER, MELISSA
Patient ID: 6771              Visit Date: 04/03/2006          Visit No: 1        Date of Birth: **REDACTED**
              NOTE: Underline indicates abnormal Pressure Threshold    * indicates abnormal spacing

### Heel (Medial)

|              | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|--------------|-------------|------------|--------------|------------|
| 1 Pt Static  | 20.5        |            | 12.6         |            |
| 2 Pt Static  | 88.2        | 20.1 *     | 97.4         | 20.1 *     |
| 1 Pt Moving  |             |            |              |            |
| 2 Pt Moving  |             |            |              |            |



|         | 1 Pt Static | 2 Pt Static | 1 Pt Moving | 2 Pt Moving |
|---------|-------------|-------------|-------------|-------------|
| Gm/mm²  | 1.1         | 13.7        | 1.0         | 5.6         |
| mm      |             | 5.3         |             | 3.7         |

—Line indicates 99% normal confidence level

### Radial Hand Dorsum

|              | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|--------------|-------------|------------|--------------|------------|
| 1 Pt Static  | 6.9         |            | 19.8         |            |
| 2 Pt Static  | 56.6        | 3.0        | 83.6         | 10.0 *     |
| 1 Pt Moving  |             |            |              |            |
| 2 Pt Moving  |             |            |              |            |

|         | 1 Pt Static | 2 Pt Static | 1 Pt Moving | 2 Pt Moving |
|---------|-------------|-------------|-------------|-------------|
| Gm/mm²  | 1.0         | 1.0         | 1.0         | 1.0         |
| mm      |             | 3.0         |             | 3.0         |

—Line indicates 99% normal confidence level

Fax Rcvd: 4/5/2006 12:49:31 PM

R-0311

Apr 05 06 11:59a     DR B CHIEN                    3096910938                    p.11

Central Illinois Rehabilitation Associates, S.C.                    PSSD Report Page 3

Patient Name: GARDNER, MELISSA
Patient ID: 6771                    Visit Date: 04/03/2006               Visit No: 1          Date of Birth: **REDACTED**
                    NOTE: Underline Indicates abnormal Pressure Threshold      * Indicates abnormal spacing

**Thenar Eminence**

| | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 2.2 | | 2.0 | |
| 2 Pt Static | 94.3 | 6.1 | 71.5 | 6.0 |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |



**Ulnar Hand Dorsum**

| | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 4.5 | | 2.0 | |
| 2 Pt Static | 82.2 | 3.0 | 102.4 | 3.0 |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |



Fax Rcvd: 4/5/2006 12:49:31 PM

R-0312

(Page 115 of 427)

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

April 11, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE: Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from 03/21/2006 through 04/20/2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by 04/18/2006. Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

Robin Hamilton
Disability Specialist II
AT&T Integrated Disability Service Center

Date Recv: 04/11/2006

1290521

R-0313

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT APPROVAL NOTICE**
**04/11/2006**

---

ATTENTION: HILLARI Y FLEMING                    RC: AYJ4D1030

Employee Name: **MELISSA GARDNER**              Employee ID: **mf4914**

Employee Job Title: **MARKETING SUPPORT**       Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01               Plan: AIT SADBP

First Day Absent: 03/14/2006                   First Day of Disability: 03/21/2006

### *CLAIM STATUS*
➢ Disability Benefits Approved from 03/21/2006 through 04/20/2006

➢ Disability Benefits Denied (if applicable)

➢ Maximum potential for short term disability benefits under the plan: 03/19/2007

### *PAY STATUS*
➢ Full Pay From:
  03/21/2006 through 04/20/2006

If applicable:
➢ **Partial Pay: N/A**
➢
➢ Partial Pay Percentage No_ 50% _No_ 60%

### *OFFSETS FROM PAY*

**Check if applicable**

➢ **Workers' Compensation**
➢ **Social Security**
➢ **State Disability**

### *RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*
➢ Medical information supports the following restrictions:

➢ Duration of restrictions/modifications approved from   through

➢ Best estimated return to work full time full duty date: **04/21/2006**
Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

R-0314

*Date Recv: 04/11/2006*

Please be sure to notify the IDSC on the first day your employee returns to work.

Other Important Information:
➢ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
➢ **Disability Resources**
   o Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
   o AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
➢ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.
➢ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

Plan Key

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

IDSC Disability Approval Notice Email-Claim-A625007022000101                    Page 1 of 1

## MedManager

**From:** Hamilton, Robin [RHamilton@sedgwickcms.com]

**Sent:** Tuesday, April 11, 2006 4:08 PM

**To:** hf1383@att.com

**Subject:** IDSC Disability Approval Notice Email-Claim-A625007022000101

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

Date Recvr: 04/11/2006

4/11/2006

R-0316

## Proctor Health Care, Inc.
### Authorization for Use or Disclosure of Information

I hereby authorize Proctor Health Care, Inc. to ☐ use or ☒ disclose the following protected health information.

Patient's Name: Gardner                Melissa              Ann
                 Last                   First                Middle

Home Address: 124 Putnam St.     East Peoria IL 61611
              Address            City        State  Zip Code

Social Security Number    **REDACTED**  Birth Date    256-9393
                                                      Contact Number

To: AT&T Integrated Disability        From: PROCTOR HOSPITAL
    Service Center P.O. Box 61569 King of Prussia MEDICAL RECORDS DEPARTMENT
    + DR. John K. Miller + Dr. Dinh PA, 19406 5409 N. KNOXVILLE AVE.
    + DR. Bruce B. Chien              01/47 PEORIA, IL 61614

☐ Complete Medical File  86-001-1391     ☐ Disclosure of Highly Confidential Information
  ☐ Discharge Summary   ☐ Lab Reports       ☐ Mental Illness / Developmental Disability
  ☐ History & Physical  ☐ Cardiology Reports ☐ Child Abuse & Neglect ☐ Venereal Disease
  ☐ Consultations       ☐ X-ray Reports     ☐ Substance Abuse (i.e., Alcohol or Drug)
  ☐ Procedure Reports   ☐ X-ray Films       ☐ Abuse of an Adult with a Disability
  ☐ ED Record                              ☐ Sexual Assault
  ☐ Other 3/9/06 Records Only             ☐ HIV/AIDS Testing / Treatment

                                          6016433, 6018288

**TERM:** This authorization will remain in effect:
☒ For 90 days from the date of this authorization  ☐ Other: _____

**PURPOSE:** The protected health information is being used or disclosed for the following purpose(s):

☐ Continuation of care    ☒ Other: (Specify) _____

❖ I understand that the information used or disclosed may be subject to redisclosure by the recipient receiving it and may no longer be protected by federal or state privacy regulations.
❖ I understand that Proctor Health Care, Inc. may, directly or indirectly, receive remuneration from a third party in connection with the use or disclosure of my health information.
❖ I understand that I may refuse to sign or may revoke (at any time) this Authorization, for any reason and that such refusal or revocation will not affect the commencement, continuation or quality of Proctor's treatment of me.
❖ I understand that I may inspect or receive a copy of my protected health information to be used or disclosed as permitted under federal or state law.
❖ I understand that I may revoke this Authorization by notifying the Privacy Office at Proctor Health Care, Inc. This notification must be in writing to: **Jo Carver, Privacy Officer, Proctor Health Care, Inc, 5409 N. Knoxville Ave., Peoria, IL 61614.**
❖ I have read and understand the terms of this Authorization and I have had an opportunity to ask questions about the use and disclosure of my health information. By my signature, I hereby, knowingly and voluntarily authorize Proctor Health Care, Inc. to use or disclose my health information in the manner described above.

_____    X04-04-06    _____
Signature of Patient        Date          Signature of Witness

**NOTE:** If patient is a minor or is otherwise unable to sign this Authorization, obtain the following signatures:

_____    _____    ____    _____
Signature of Legal Guardian Or   Relationship to Patient   Date   Signature of Witness*
Other Legal Representative

*Witness signature required for the release of information about mental illness or developmental disability.

*PLEASE SEE REVERSE SIDE FOR NOTICE TO RECEIVING AGENCY / PARTY*

Date Recv: 04/11/2006

R-0317

(Page 120 of 427)

**AT&T Integrated Disability Service Center**
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 866-224-4627

March 22, 2006

Melissa Gardner
124 Putnam St.
E Peoria, IL 61611

RE: AT&T Disability Plan
    Claim Number: A625007022-0001-01
    *Case Manager: Robin Hamilton*

Dear Melissa Gardner:

The AT&T Integrated Disability Service Center (AT&T IDSC) has been notified of your absence from work due to an illness or injury. A claim has been initiated and a determination is pending receipt of medical substantiation from your treatment provider. The medical information to substantiate your disability is due to the AT&T Integrated Disability Service Center by April 5, 2006. No consideration for disability benefits can be made until relevant medical documentation is received.

When you are unable to work because of an illness or an injury, you may be eligible for disability benefit payments. Under the provisions of the AT&T disability plans you have a waiting period of 7 calendar days. Disability benefits will begin on the 8th calendar day. To determine if you qualify for benefit payments under the AT&T disability plans, we need your cooperation as well as that of your medical provider. Benefit payments cannot be authorized without your treatment provider substantiating that your medical condition meets the criteria as defined in the AT&T disability plans. To qualify for benefit payments under the AT&T disability plans, your medical condition should involve a sickness or injury, supported by medical documentation that prevents you from performing the duties of your job with or without reasonable accommodations. To assist you in perfecting your claim, the following information is provided for you:

It is your responsibility to sign the Authorization to Release Medical Information form and to provide that authorization form with the Instructions to the Physician to your treatment provider. It is important that both you and your treatment provider understand that these forms, along with chart notes, diagnostic test results, hospital summaries, etc. specifically related to the reason of your absence should be returned regardless of the length of your disability. It is critical that your physician demonstrates by his/her observations and clinical findings that you are unable to perform your work with or without accommodations. This is the information, which will allow the case manager to make a determination of your eligibility for benefit payments under the AT&T disability plans.

Please explain to your treatment provider that he/she should submit all relevant medical records by April 5, 2006. If the medical documentation received from your treatment provider does not contain information that establishes that your condition prevents you from performing the duties of your job with or without reasonable accommodations, your claim will not qualify for benefit payments under the AT&T disability plans.

Conditional Period
You may receive a conditional benefit period from March 20, 2006 (your first day of disability) through April 9, 2006 to allow time to submit the necessary medical information.

1184968

R-0318

Date Recv: 04/11/2006

Date Recv: 04/11/2006

Failure to submit the necessary medical information by this date could result in loss of pay for you while you are on disability.

If the medical information does not substantiate your inability to perform the duties of your job with or without reasonable accommodations, your claim will not qualify for benefit payments under the plan and all or part of your conditional disability benefit payments may need to be repaid.

Upon receipt of medical documentation, a determination will be made based on the medical substantiation and the conditional approval period will stop.

Travel
Any overnight travel while you are receiving disability benefits should be pre-approved in writing by your physician and by the AT&T Integrated Disability Service Center.

Other Employment
You are expected not to work while receiving AT&T disability plan benefits.  If you are capable of working, you are generally considered capable of at least some level of work activity for AT&T and therefore, would not qualify for benefits under the AT&T disability plan.

Exclusions
Please refer to your specific company's Summary Plan Description (SPD) for more detailed information.

Family Medical Leave Act (FMLA)
If you are eligible and entitled to FMLA and/or state medical and family leave, and your disability benefits are approved under your disability plan, FMLA and/or state medical and family leave time will run concurrently with your disability.  Questions regarding FMLA and/or state medical and family leave should be referred to the AT&T FMLA Processing Unit at 1-888-722-1787.

Returning to Work
AT&T Integrated Disability Service Center requests that you contact your case manager when you return to work.  This will insure that your pay will reflect your worked hours.

All medical documentation collected regarding your disability absence will be treated in a confidential manner. The AT&T Integrated Disability Service Center (AT&T IDSC) will keep your department advised regarding the progress of your disability case, such as approval periods and when you might be expected to return to work. Should you have any questions regarding your claim for disability, please contact the AT&T Integrated Disability Service Center at 1-866-276-2278.  For your convenience, a customer service team has been trained to assist you with questions regarding your disability claim.

Sincerely,

AT&T Integrated Disability Service Center
P.O. Box 61569
King of Prussia, PA 19406

(Page 122 of 427)

**AT&T Integrated Disability Service Center**
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 866-224-4627

Dear Employee:

This letter is a reminder that any absence (beginning with the 1st date of absence) resulting in a claim for short-term disability benefits under a AT&T disability plan will also be designated as an FMLA-qualifying reason for absence. If your disability claim is approved, you will receive an automatic FMLA approval, as long as you are eligible for FMLA and have not exhausted 12 weeks in a 12-month period under federal FMLA or any applicable leave period under state law.

FMLA runs concurrently with approved short-term disabilities as well as any illness days preceding the start of the short-term disability.

If your disability claim is denied, you have the right to request FMLA consideration. Your supervisor must submit a revised FMLA Eligibility form (FMLA1) indicating that your disability was denied and provide you with a Certification of Health Care Provider form (FMLA4). You must complete the employee section of the form and have your health care provider complete the remainder of the form, sign it and mail or fax the form to the FMLA Processing Unit.

Please advise your supervisor of any changes to your home address so that they may be included on the FMLA1 and updated in our records.

If you have any questions regarding this letter, please feel free to call 1-888-722-1787.

Sincerely,
FMLA Processing Unit

Date Recv'r: 04/11/2006

R-0320

<div style="border:1px solid black; padding:10px;">

## PHYSICIAN'S SUBMISSION OF MEDICAL RECORDS

</div>

## INSTRUCTIONS TO THE PHYSICIAN

1.  Your patient has filed a disability claim requesting wage replacement benefits for a current absence commencing March 14, 2006. In order to make a determination on the patient's eligibility for these benefits you are requested to submit to the AT&T Integrated Disability Service Center (AT&T IDSC) by: April 5, 2006.

    A.  All medical records relevant to the above-referenced accommodation, including chart notes, treatment plan, diagnostic test results, Specialist reports, etc., plus

    B.  The "Submission of Medical Records" form at the bottom of this sheet, attached to the front of the records being submitted.

2.  Failure to provide the requested relevant medical records will adversely impact your patient's request for accommodation.

3.  Any charges for the requested records are the responsibility of your patient.

4.  Once you have submitted all the requested medical information to AT&T Integrated Disability Service Center, the Job Accommodation Specialist may make a request for a physician peer-to-peer discussion with you regarding the medical condition.

5.  If the accommodation is of an extended duration, periodic requests will be made for updated medical records.

Date Recv: 04/11/2006

---

### SUBMISSION OF MEDICAL RECORDS

Employee Name: _Melissa Gardner_____     SS#: _____     Claim Number: _A625007022-0001-01_____

Print Physician's Name:_____

Physician's Signature: _____

Address: _____     Telephone #: _____

_____     Date Rec'd:: _____
(To be completed by AT&T IDSC)

**AT&T Integrated Disability Service Center**
**PO Box 61569, King of Prussia, PA 19406**
**Fax: 1 (866) 224-4627**

R-0321

## PHYSICIAN'S SUBMISSION OF MEDICAL RECORDS

## INSTRUCTIONS TO THE EMPLOYEE

1.   Medical records relevant to your absence are necessary for a determination on eligibility for an accommodation.  It is your responsibility to make sure that:

    A.   The enclosed "Instructions To The Physician," including the "Submission of Medical Records" forms are forwarded to your treating physician immediately.

    B.   You sign the enclosed "Authorization to Release Medical Information" and:

        &#10148;   attach a copy of this Authorization to the "Instructions To The Physician" when you send/give it to your treating physician, and

        &#10148;   send the Authorization with your original signature to the AT&T Integrated Disability Service Center, and

        &#10148;   keep a copy of the Authorization for your records.

        &#10148;   the authorization must be signed to obtain medical information for approval of benefits

    C.   All medical records relevant to your accommodation are received in the AT&T Integrated Disability Service Center (AT&T IDSC) by the designated due date: April 5, 2006.

2.   If your accommodation is of extended duration, periodic requests will be made for updated medical records.  Failure at any time to provide the requested relevant records will adversely impact your accommodation.

3.   Any charges for the requested medical records are your responsibility.

**AT&T Integrated Disability Service Center**
**PO Box 61569, King of Prussia, PA 19406**
**Fax: 1 (866) 224-4627**

R-0322

## AUTHORIZATION FOR RELEASE OF
## PROTECTED HEALTH INFORMATION
## (DISABILITY BENEFITS/JOB ACCOMMODATION)

I, the undersigned, hereby authorize any person or facility that attends, treats or examines me to release all health information related to my request for reasonable job accommodation and/or my claim for short-term (including sickness and/or accident), long-term disability and/or vocational rehabilitation benefits under my participating company's disability benefits plan.

This health information consists of medical, psychological and/or psychiatric information, records and reports (including HIV/AIDS) and may include, but is not limited to, medical history, chart notes, consultation, prescriptions or treatment, diagnostic test results, x-ray reports, copies of all hospital or medical summaries or reports, and records that pertain to the payment of claims.

My health information is to be made available, upon request, to the AT&T Integrated Disability Service Center or its representative. AT&T Integrated Disability Service Center may release my health information to any person or facility that attends, treats, examines me or impacts determination of my eligibility for reasonable job accommodation, workers' compensation and/or disability benefits, or coordinates my health insurance benefits, or to the Social Security Administration or to a social security, vocational rehabilitation vendor, or to compliance investigatory personnel to the extent all or any of such health information is considered by AT&T Integrated Disability Service Center or its representative to be relevant to the determination of my claim. I understand that after this information is disclosed, federal law might not protect it and the recipient might disclose this information.

I understand and agree that the signing of this authorization is a pre-condition to my receiving a reasonable job accommodation and/or disability benefits and that this authorization relates to my request for such reasonable job accommodation and/or disability benefits.

I further understand that I have the right to revoke this authorization at any time by submitting a revocation request in writing to the attention of the Office Service Manager, AT&T Integrated Disability Service Center, PO Box 61569, King of Prussia, PA 19406 1-866-224-4627. This revocation will be effective after receipt, review and processing on a prospective basis only. I understand that my revocation of this authorization shall terminate my right to receive prospectively additional disability benefits, but shall not affect my right to disability benefits to which I was entitled during the period this authorization was in effect. Moreover, I understand that the revocation of this authorization may result in denial of any pending request for a reasonable job accommodation, and/or discontinuance of a job accommodation that is already in place.

Absent my revocation, this authorization shall remain valid for the duration of my claim for a reasonable job accommodation and/or short-term disability benefits and/or vocational rehabilitation benefits. If my claim is for long-term disability benefits, then, absent my revocation, this authorization shall remain valid for one year from the date I sign this authorization.

I understand that I have a right to request and receive a copy of this authorization. A photocopy of this authorization shall be valid and is to be accepted with the same effect as the original.

Printed Name of Employee: _____

Social Security Number of Employee: _____

Signature of Employee or Personal
Representative: _____     Date: _____

If a personal representative executes this form, that representative warrants that he or she has the authority to act on behalf of the employee in signing this form and that the basis for this authority is as follows: _____

(Attach documentation that evidences the authority to act as a personal representative.)

Date Recv'r: 04/11/2006

R-0323

(Page 126 of 427)

# Methodist

## AUTHORIZATION FOR RELEASE OF INFORMATION

Patient's Name: _Gardner_ (Last)    _Melissa_ (First)    _Ann_ (Middle)

Home Address: _124 Putnam St. East Peoria Il 61611_

Telephone: _309/256-9393_    Date of Birth: **REDACTED  REDACTED**

I hereby authorize the release of the following protected health information:

From: Methodist Medical Center of Illinois

To: _AT&T / SBC Disability Claims Center_

To: Methodist Medical Center of Illinois

From: _Dr. Miller's (John) Offc._
_Dr. Chien's (Bruce) Offc._
_Dr. Dinh's Office_

| Complete Medical File | | I authorize the release of the following Highly Confidential Information |
|---|---|---|
| ☒ Consultations  ☐ Discharge Summary | ☐ Mental Illness or Developmental Disability | ☐ Sexual assault |
| ☒ Lab Reports  ☐ EKG Report | ☐ Child abuse and Neglect | ☐ HIV/AIDS Testing or Treatment |
| ☒ X-ray Reports  ☐ History & Physical | ☐ Venereal Disease(s) | ☐ Genetic Testing |
| ☒ X-ray films  ☐ ER Record | ☐ Substance (i.e., alcohol or drugs) Abuse | |
| ☒ Procedure Reports | ☐ Abuse of an Adult with a Disability | |

☒ Other: _ONLY RECORDS BASED ON THIS CURRENT DISABILITY THAT BEGAN 03/30/06._

**TERM:** This Authorization will remain in effect:
☐ For 90 days from the date of this Authorization.
☐ Until Methodist fulfills this request.
☒ Other: _Until Disability DoesNotExist + I am returned to work._

**PURPOSE:** The protected health information is being used or disclosed for the following purpose(s):
☐ Transfer of Care  ☐ Consultation with physician  ☐ Legal consultation  ☒ Insurance qualification  ☒ Case Coordination
☐ Treatment Planning  ☒ Other: _Disability Consideration for Work (Job) + Pay_

I understand that the information used or disclosed may be subject to redisclosure by the person(s) or class of person(s) receiving it and no longer protected by the federal privacy regulations.

I understand that Methodist may, directly or indirectly, receive remuneration from a third party in connection with the use or disclosure of my health information.

I understand that I may revoke this authorization by notifying Methodist Health Information Services Department at 221 N.E. Glen Oak, Peoria, IL 61636 in writing of my desire to revoke it. However, I understand that if I revoke this authorization, it will not have any affect on actions taken by Methodist in reliance on it before I revoked it.

I understand that I may refuse to sign or may revoke (at any time) this Authorization for any reason and that such refusal or revocation will not affect the commencement, continuation or quality of Methodist treatment of me.

I understand that I may inspect or copy the protected health information to be used or disclosed as permitted under federal or state law.

I have read and understand the terms of this Authorization and I have had an opportunity to ask questions about the use and disclosure of my health information. By my signature, I hereby, knowingly and voluntarily authorize Methodist to use or disclose my health information in the manner described above.

_Melissa L. Gardner_     _March 30, 2006_     _____
Signature of Patient     Date     Signature of Witness*

*Witness' Signature required for release of information about mental illness or developmental disability

Note: If patient is a minor or is otherwise unable to sign this Authorization, obtain the following signatures:

_____     _____     _____     _____
Signature of Legal Guardian     Relationship to Patient     Date     Signature of Witness*
Or other Legal Representative

*Witness' Signature required for release of information about a mental illness or developmental disability.     9050-35945  WH080092  7-2003

Date Recv'd: 04/11/2006

R-0324

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

DATE OF ADMISSION:  03/13/2006

PRIMARY CARE PHYSICIAN:  John K. Miller, MD

CODE STATUS:  Full code.

IDENTIFYING DATA:  Husband's name is Gregory Gardner.  Cell phone number
258-0096.

CHIEF COMPLAINT:  Intractable back pain.

HISTORY OF PRESENT ILLNESS:  This 32-year-old right-handed female with no
significant history of low back pain who was in Springfield, Illinois, on
Thursday, March 9, 2006, in a seminar course working with computers and
started noticing waistline low back pain.  She was able to complete her tasks
that day, but the pain was becoming more intense.  She decided to stop at the
OSF Prompt Care on that Thursday and was given Vicodin and Skelaxin.  She was
able to return to her training job in Springfield for AT and T on Friday but
with increasing back pain.  At first, the pain became progressively worse
over the weekend.  She had no fevers, chills, nausea, or vomiting.  She had
no back trauma.  No history of herpes zoster.  She had no signs or symptoms
of cauda equina.  Pain became more intense, rating it as close to 9/10 to the
point where she went to the emergency room last evening at Methodist and had
an x-ray performed that revealed some mild DJD and partial sacralization of
degenerative changes at L4-L5 and L5-S1 as read at the emergency room at
Methodist on March 12, 2006.  She received 4 mg of morphine, Percocet, and
muscle relaxants and was sent home.

She had increasing pain today to the point where she woke about 4 o'clock
this morning and took her second Percocet.  She contacted her office but had
increasing pain and was sent to the emergency room for evaluation.

In the emergency room, she received 60 mg of IM Norflex and Nubain 20 mg x2.
Her pain initially was rated as a 7/10.  She states it is down about a 6/10
without much in the way of pain release with the above medications.

She denies any footdrop.  No signs or symptoms of cauda equina.  No
paresthesias or dysesthesias.  No radiculopathy symptoms with it.  No change
of bowel or bladder habits.  She was able to urinate in the emergency room
and thinks she had a bowel movement yesterday.  She does recognize that she
has increasing pain with cough.  She feels more comfortable when she is in
the left lateral decubitus position with her knees drawn to her chest.  She
has increasing pain with both sitting as well as leaving her legs supine.

She denies ever having a significant back problem like this before.  She has
been hospitalized for other reasons but never because of back pain.  She
denies any history of diskitis or back trauma that she can recall.

GARDNER, MELISSA A     32Y F
160011391   DOB: REDACTED
AC#:6016433   45   REDACTED

DT:HP1MP

HISTORY & PHYSICAL

PAGE  1

R-0325

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

Secondary to her above back pain, she was admitted to the hospital for pain management and evaluation.

PAST MEDICAL HISTORY:  History of migraines.  She has had this for a number of years.  She has been hospitalized, she estimates around 6 times.  She had been seeing initially Dr. Ni and now recently Dr. Richard Lee.  She thinks she had a significant migraine about 2 weeks ago but not previously.  She has had a history of what sounds like a cubital tunnel release on the left, history of a D and C, history of ectopic pregnancy, status post T and A, and history of cholecystectomy.  No significant history of osteoarthritis.

SOCIAL HISTORY:  She is married.  Her husband's name is Gregory.  She has 2 children, 11 and 5.  She smokes half pack a day.  As a matter of fact, she had a cigarette in the wheelchair on the way up here to the ortho-neuro floor.  She works currently for AT and T/SBC, she is going through a training course down in Springfield, Illinois.

FAMILY HISTORY:  Mother has a history of hyperlipidemia and a questionable history of having what sounds like congenital narrowed spinal canal.  Her father's family history is unknown.  She has no siblings.

REVIEW OF SYSTEMS:

CARDIOVASCULAR:  She denies any chest pressure or chest pain.  No syncope or presyncope.  No angina symptoms.  No palpitations.

GASTROINTESTINAL:  No hematochezia or melena.  Significant for dyspepsia.

GENITOURINARY:  She denies any hematuria.  No history of kidney stones.  No GU symptoms.

NEUROLOGIC:  Positive pain without radiculopathy.  No paresthesias or dysesthesias.  No signs or symptoms of cauda equina.

ORTHOPEDIC:  No history of significant orthopedic problems in the past other than some low-grade DJD.

ENDOCRINE:  Her last menstrual period is due this week, it was about 25 days ago).  No history of hyperlipidemia or diabetes.

NEUROLOGIC:  No footdrop.  No radiculopathy.  No signs or symptoms of cauda equina.  No paresthesias or dysesthesias.  No motor weakness, other than just increasing pain with either supine or walking.

MEDICATIONS:  Depakote ER 500 mg PO q.a.m. for migraine prophylaxis.  Her pharmacy is Walgreens at East Peoria.  Maxalt 10 mg and Ultram.  She does not feel this is very effective.  She is not using anything OCPs at this time.

ALLERGIES:  Significant for DEMEROL causing blisters.  She had an IM injection, it sounds like, and she had quite a bit of blisters on her gluteal area; nausea and vomiting that is significant with ASPIRIN; and COMPAZINE caused anxiety and mental status changes.  She has never had any history of any problems with morphine, although it is mentioned as possible allergy on

Recv. 04/11/200[ ] Date:

GARDNER, MELISSA A          32Y F
M50011391   DOB: REDACTED
AC#:6016433   45

DT:HPIMP

HISTORY & PHYSICAL

PAGE  2

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

her emergency room sheet; this, she tells me is inaccurate.

PHYSICAL EXAMINATION:
VITAL SIGNS:  Blood pressure 157/87 with pulse of 70, respirations of 20, and
temperature of 98.8.  Saturating 98% on room air without any labored
respirations.
GENERAL:  Positive discomfort, she rates as a 6/10 lying in left lateral
decubitus position with increasing pain with legs supine.  She was able to
get out of wheelchair in order to have a cigarette outside the emergency room
earlier.  Here with her mother.
HEENT:  Oropharynx pink and moist.  Uvula midline.
NECK:  No thyromegaly.  No carotid bruits.
CARDIOVASCULAR:  Regular rate and rhythm without murmur.  S1 and S2.  No S3.
RESPIRATORY:  Clear to auscultation without wheezes or crackles.
ABDOMEN:  Soft, obese, and nontender.  Bowel sounds are positive.  No masses.
GENITOURINARY:  Deferred.
RECTAL:  Deferred.
BREASTS:  Deferred.
EXTREMITIES:  She has normal motor skills 5/5 on her lower extremities.  She
has no paresthesias or dysesthesias.  No radiculopathy.  She has no
tenderness over her SI joints bilaterally.  I did not check a straight leg
raise because of muscle spasm and the patient's discomfort.  She is able to
move on her own power, rolling from side to side in the bed as well as
straight her legs, preferring do this in a decubitus position.  She has
normal ankle reflexes, dorsiflexion as well as patellar reflexes with good
sensation and distal pulses.  Negative cords.  Negative Homans.  No lower
extremity edema.
BACK:  She has no real tenderness over the entire length of the supraspinous
processes.  She has some positive tenderness over the T12 all the way through
the L4 region, paraspinous muscles with no obvious spasm with exam, although
there is some tenderness to the skin.  There is no obvious herpes zoster.  No
shingles.  No erythema.  No bullae or blisters.

ASSESSMENT:
1.  A 32-year-old female, right handed, with intractable back pain.
2.  Musculoskeletal nature.  I do not believe she has any significant
radiculopathy at this time.3.  Family history of having some kind of
congenital stenosis in the spinal canal in the mother from what she can
recall.4.  Drug allergies as above.

PLAN:
1.  Admit for back pain with morphine sulfate for pain management.
2.  We will use Zofran as an antiemetic.
3.  We will use Norflex 60 mg IM q.12 h. for muscle spasm.
4.  We will use Aqua pad heat for the patient's comfort.
5.  We will continue on her Depakote for migraine prophylaxis.

GARDNER, MELISSA A        32Y  F
160011391   DOB: **REDACTED**
AC#:6016433   4                                    DT:HPIMP

HISTORY & PHYSICAL

PAGE  3

R-0327

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

5.  We will check a urine pregnancy test.
7.  We will consult Dr. Bruce Chien, pain management specialist, secondary to
intractable back pain and see if she needs to proceed with MRA imaging of her
low back.
8.  Any signs and symptoms of cauda equina which have discussed with the
patient as well as nursing staff to contact me immediately or urinary
retention with good comprehension.
9.  The patient will be followed by Dr. Miller throughout her hospital course
with whom I will discuss her care.  He is aware of her admission.

ROBERT B. ADAMS, MD/hs/lr
D:   03/13/2006 20:29
T:   03/14/2006 12:00
081136/32755/32446

Date Recv: 04/11/2006

GARDNER, MELISSA A      32Y F
360011391   DOB: REDACTED
AC#:6016433    451          DT:HPIMP

HISTORY & PHYSICAL

PAGE  4



R-0328

(Page 131 of 427)

 

# PROCTOR HOSPITAL
5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071

**TRI-COUNTY RADIOLOGISTS LTD.**

3/24/06
9:32:26

PAGE   1

PATIENT NAME: GARDNER, MELISSA          M/R NUMBER:       860011391
ORDERING DR: CHIEN, BRUCE B             TRANSCRIBE DATE:    3/24/06
BIRTH DATE: REDACTED                    ORDER NUMBER:      0841198
OUTPATIENT: REDACTED                    ACCT. NUMBER:      6018288

EXAMINATION: MRI CERVICAL SPINE WITHOUT CONTRAST
DATE OF EXAM: 3-23-06
CLINICAL HISTORY: R C6 RADICULOPATHY  NUMBNESS R HAND  WEAKNESS  L HAND

No abnormal signal identified within the cervical portion of the cord.  No
abnormal signal identified within the marrow-containing portion of the cervical
vertebral bodies.

There are mild annular bulges of the C3-C4, C4-C5, and C5-C6 discs with mild
mass effect upon the anterior aspect of the thecal sac and anterior subarachnoid
space.  No significant central spinal stenosis or foraminal stenosis identified.

IMPRESSION:

1.  NEGATIVE MRI EXAMINATION OF THE CERVICAL SPINE FOR FRANK DISC HERNIATIONS OR
SPINAL STENOSIS.

2.  NO ABNORMAL SIGNAL IDENTIFIED WITHIN THE CERVICAL PORTION OF THE CORD OR THE
MARROW-CONTAINING PORTION OF THE CERVICAL VERTEBRAL BODIES.

D:  3-23-06
T:  3-24-06

GG/macc


COPY TO:  DR. DINH

Date Recv: 04/11/2006

**CHART COPY**

GEORGE A. GENTRY, M.D.

**DIAGNOSTIC IMAGING CONSULTATION REPORT**

R-0329

(Page 132 of 427)

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

ATE OF OPERATION:        03/15/2006

URGEON:                  BRUCE B. CHIEN, MD

REOPERATIVE DIAGNOSIS:   HERNIATED L4 NUCLEUS PULPOSUS.

OSTOPERATIVE DIAGNOSIS:  HERNIATED L4 NUCLEUS PULPOSUS.

PERATION:                MIDLINE L4 EPIDURAL STEROID INJECTION

NDICATION:  Melissa Gardner is ready for her midline L4 epidural steroid
njection.

ROCEDURE:  After written and informed consent, the patient was placed in a
eated position over an over-bed tray table and the midline prepped at the
evel of the L4-L5.  A #18-gauge Tuohy needle was passed to a depth of 8 cm
n the midline with the patient's stereotactic guidance to loss of resistance
ere upon 10 mL containing triamcinolone 80 mg, lidocaine 0.5% were injected.
This was well tolerated.  The needle was withdrawn and the patient actually
elt sufficiently better that she wanted to go to the bathroom to empty her
ladder which she did in the accompaniment of the staff nurse.  She was given
nstruction not to arise from the toilet unless our staff was there to assist
er.  The patient tolerated this well.

UCE B CHIEN, MD/hs/lr
GNATURE ELECTRONICALLY AFFIXED
    03/15/2006 06:44
    03/15/2006 19:12
6797/34653/32446

Date Recd: 04/11/2006

GARDNER, MELISSA A        32Y F
860011391    DOB:  REDACTED
AC#:6016433    451

DT:ORRPTIM

OPERATIVE REPORT

PAGE  1

R-0330

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

ATE OF VISIT:       03/13/2006

ATIENT OF:  John K. Miller, MD

IME OF ADMISSION:  1312

ETHOD OF ARRIVAL:  Private vehicle.

HIEF COMPLAINT:  Low back pain.

ISTORY OF PRESENT ILLNESS:  Ms. Gardner is a 32-year-old woman who presents
o the emergency department complaining of low back pain.  She denies any
nciting event whatsoever.  No known injury at all.  She tells me it began
uring the day on Thursday prior to this admission.  She was sitting at her
esk when it began.  It began as a dull ache and has progressed to the point
here she states "my back is trashed."  She went to Prompt Care Facility in
orton, was treated with Skelaxin and Vicodin, was feeling a little bit
etter, perhaps if at all, went to work on Friday and became worse.  She was
een at Methodist Medical Center of Illinois Emergency Department on March
.2, 2006.  She was evaluated at that time with an x-ray which was "fine" and
iven morphine and Percocet.  She was told to call Dr. Miller's office on the
ning of March 13, 2006, and did so.  They were unable to work her in she
ls me and after spending the day in discomfort without relief, she
sents here.  She tells me she has had a previous episode of "muscle pain"
her back years ago that resolved without sequelae.  She has no numbness or
gling in her fingers or toes.  No incontinence.  No ataxia.  No urinary
ention.  She is able to point to the area and it is just lateral to the
line, right and left, at the level of T12.  She denies any urinary
quency, urgency, or dysuria.  No cough, rhinorrhea, sore throat, or other
er respiratory infection symptoms.  No anterior abdominal pain.  No other
plaints.

QVIEW OF SYSTEMS:  As above.  No additional pertinent positives or negatives
dentified on complete review.

PAST MEDICAL HISTORY:  Positive for a nerve relocation in her elbow, migraine
ephalagia, cholecystectomy, and ectopic pregnancy.

MEDICATIONS:  Vicodin, Skelaxin, and Percocet (out of that).

ALLERGIES:  ASPIRIN, DEMEROL, and COMPAZINE.

FAMILY HISTORY:  Noncontributory.

SOCIAL HISTORY:  A 32-year-old woman who lives in East Peoria.  Works for
meritech.

GARDNER, MELISSA A         32Y F
360011391    DOB: REDACTED
AC#:6016433    45                              DT:ERDICTIM

EMERGENCY ROOM VISIT-ADMITTED

PAGE  1

R-0331

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

PHYSICAL EXAMINATION:
GENERAL:  This is a well-developed, well-nourished adult female awake, alert,
and oriented X 3.  Affect appropriate.  Rating her pain 7 to 8 out of 10.
VITAL SIGNS:  On admission, blood pressure 112/88, pulse 88, respirations 16,
and temperature 98.8.
SKIN:  Warm and dry.  Turgor normal.  No acute lesions.
HEENT:  Head is normocephalic and atraumatic.  PERRL.  EOMI.  Sclerae
anicteric.  Conjunctivae clear.  Oral mucosa is pink and moist.  Pharynx
clear.  Secretions normal.
NECK:  Without adenopathy.  Trachea midline.  No stridor.
LUNGS:  Clear.  No rales, rhonchi, or wheezes.  Good air movement to all
fields.  Breath sounds are equal bilaterally.  No retraction or accessory
muscle use.
HEART:  Regular.  No gallops, rubs, or murmurs.
ABDOMEN:  Soft.  Bowel sounds normoactive.  No organomegaly and nontender to
palpation.  No guarding or rigidity.
EXTREMITIES:  Without edema or cyanosis.  Radial and pedal pulses are 2+ and
equal bilaterally.
NEUROLOGIC:  Cranial nerves 2 through 12 are intact.  Upper and lower
extremity, motor 5/5 in all groups.  Upper and lower extremity, sensory
intact to light touch in all dermatomes.  Toes are equivocal bilaterally.
SPINE:  Cervical spine:  Nontender over the midline.  No crepitation,
deformity, or paraspinous spasm.  Thoracolumbar spine:  Nontender over the
midline.  No crepitation or deformity.  There is paraspinous spasm, T12
through L2 close to the midline bilaterally (right equals left in intensity).

DATABASE:  X-ray reading from Methodist Medical Center of Illinois was
evaluated.  It showed degenerative changes per the interpretation of that
staff radiologist.

HOSPITAL COURSE:  The patient was evaluated on arrival.  Norflex 60 mg IM and
pain 20 mg IM was given with minimal if any pain relief.  The patient had
the Nubain 20 mg IM repeated, had no pain whatsoever.  Findings were
discussed with the patient.  She felt that she could not tolerate outpatient
therapy having had no success with the medications previously had been
provided.  For that reason, the case was discussed with Dr. Robert Adams
covering for Dr. John Miller.  He accepted the patient for admission for
intractable pain and she was accordingly admitted.  Orders written by.
Additional orders will be written by Dr. Adams in fair condition.  I spent a
total of 30 minutes providing noncritical care to this patient.

DISCUSSION:  The patient presents to the emergency department with ongoing
worsening low back pain.  There is no history from the patient's perspective
of any inciting event.  The findings were all localized at the area where the
patient has her discomfort, has not radiated, has not migrated.  There are no

GARDNER, MELISSA A      32Y F
860011391    DOB:  REDACTED
AC#:6016433   451                                          DT:ERDICTIM

EMERGENCY ROOM VISIT-ADMITTED
                                                           PAGE  2

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

idline findings on my examination, and the x-ray obtained less than 24 hours
rior to her admission here showed no acute pathology.  No evidence of any
adicular symptoms.  The patient will be admitted for pain control, possible
RI or other evaluation.  Potential for complication at admission, low.

MPRESSION:  Intractable low back pain.

'LAN:
.  Evaluated and treated as above.
.  Admit orders written by me, Dr. Miller's service.


'RANK R DUNAWAY, MD/hs
.IGNATURE ELECTRONICALLY AFFIXED
|:   03/14/2006 04:16
':   03/14/2006 07:07
'84235/30740/32446

Date Recv: 04/11/2006

JARDNER, MELISSA A          32Y  F
860011391    DOB:  **REDACTED**
AC#:6016433    451              DT:ERDICTIM

EMERGENCY ROOM VISIT-ADMITTED          PAGE  3

R-0333

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

ATE OF ADMISSION:  03/13/2006

ONSULTATION DATE:  03/15/2006

TTENDING PHYSICIAN:  John K Miller, MD

ONSULTING PHYSICIAN:  DZUNG H DINH, MD

TTENDING NEUROSURGEON:  Dzung H. Dinh, MD

HISTORY OF PRESENT ILLNESS:  Melissa Gardner is a 32-year-old female who was
sitting at work last Thursday.  She works at Ameritech and does a lot of
driving and sitting.  She states that she noticed a mid to right low back
pain which progressively got worse.  She did stop at OSF Prompt Care in
Morton and was given Vicodin and Skelaxin.  She did return to work on Friday
and states that the pain progressively worsened.  On Sunday, she went to the
emergency room at Methodist Medical Center.  They performed x-rays, and she
was given Percocet.  She then stated that early in the morning on Monday, she
went to Proctor ER.

PAST MEDICAL HISTORY:  She has had migraine for approximately 3 years.  She
sees Dr. Richard Lee, and she currently takes Depakote for her migraines.

PAST SURGICAL HISTORY:  Positive for cholecystectomy.  She has had a D and C,
D and A, ectopic pregnancy, and cubital tunnel surgery on the left.

SOCIAL HISTORY:  She does smoke, she takes about half a pack a day.  She is
married.  She lives with her husband, Craig; and she has 2 children, 11 and

ALLERGIES:  She is allergic to DEMEROL which causes blisters.  She has nausea
and vomiting when she takes ASPIRIN, and COMPAZINE causes anxiety and mental
status changes.

PHYSICAL EXAMINATION:
HEAD, EYES, EARS, NOSE, AND THROAT:  Within normal limits.
NECK:  Supple.  There is no thyromegaly or bruit.
LUNGS:  Lung sounds are clear in all lobes.
HEART:  Heart sounds regular rate and rhythm.
ABDOMEN:  Soft and nontender.  She is obese.  She is approximately over 200
pounds.
NEUROLOGIC:  Her cranial nerves 2 through 12 are grossly intact.  Her upper
extremity exam is normal.  Her strength is 5+/5 in all muscle groups and
sensation intact.  Deep tendon reflexes of the upper extremities are 2+ in
the biceps, triceps, and brachioradialis.  On her left lower extremity exam,
she did have right low back pain.  On both straight leg examinations, right
is worse than the left at approximately 25 degrees on the right and 30
degrees on the left.  Overall strength is good.  Her strength is 5+/5 in

GARDNER, MELISSA          **REDACTED**
860011391    DOB:
AC#:6016433    451                                       DT:CONSHPIM

CONSULTATION REPORT

PAGE  1

R-0334

(Page 137 of 427)

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

bilateral hip flexion and extension, knee flexion and extension, dorsi
plantar flexion as well as the EHL.  Her sensation is intact, and her deep
tendon reflexes on the bilateral patellar are 2+ and the bilateral Achilles'
are 2+.

LABORATORY DATA:  A lumbar MRI was done yesterday on March 14, 2006, reveals
an L4-L5 annular tear.

ASSESSMENT AND PLAN:  We have written for Physical Therapy to evaluate and
treat.  We have added Valium 5 mg PO every 6 hours p.r.n. for back spasms.
She is scheduled for an epidural steroid injection this afternoon per Dr.
Lin.  We will see how this treatment relieves her right low back pain.

Thank you for the opportunity to participate in her care.  We will see how
the lumbar epidural steroid injections, physical therapy, and medication
management help with her low back pain.

Dictated by CRISTIN RASSI, APN, CNS

DZUNG H DINH, MD/hs
D:   03/15/2006 12:42
T:   03/16/2006 02:15
9187/36606/

Date Recv: 04/11/2006

GARDNER, MELISSA                   32Y F
860011391   DOB:        REDACTED
AC#:6016433    451

CONSULTATION REPORT

DT:CONSHPIM

PAGE  2

R-0335

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

ATE OF ADMISSION:  03/13/2006

CONSULTATION DATE:  03/14/2006

ATTENDING PHYSICIAN:  John K Miller, MD

CONSULTING PHYSICIAN:  BRUCE B CHIEN, MD

Consultation is in regard to acute-onset mid lumbar back pain.

Melissa Gardner is a 32-year-old female with acute onset of back pain,
midline, lumbar on Thursday while at work.  She sits at a desk at Ameritech
in Springfield.  Her drive home to East Peoria from Springfield was
uncomfortable with her noticing that it was painful to lift her leg to the
brake pedal.  This did not remit at home in a standing or recumbent position
and she went to OSF Prompt Care in Morton where she was given Vicodin and
Skelaxin.  She went to work on Friday, was miserable.  On Sunday, she went to
the emergency department at MMCI, no MRI was performed.  She had x-rays done
and was given Percocet.  She awoke at 0400 on Monday, called Dr. Miller's
office, went to the emergency room.

PAST MEDICAL HISTORY:  Migraine for about 3 years, looked after by Dr.
Richard Lee.  She is due for her menstrual period.

FAMILY HISTORY:  Everyone in her family has back pain.

SOCIAL HISTORY:  She wants to smoke, does not want a patch.

ALLERGIES:  DEMEROL LEADS TO BLISTERS, ASA LEADS TO NAUSEA AND VOMITING,
COMPAZINE LEADS TO ANXIETY.  She wants morphine.

SURGICAL HISTORY:  Cholecystectomy, D and C, T and A, ectopic, and cubital
tunnel on the left.

REVIEW OF SYSTEMS:  Otherwise negative.  She really wants to smoke.

PHYSICAL EXAMINATION:
GENERAL:  She is approximately 200 pounds, looks to be about 5 feet 7 inches.
VITAL SIGNS:  Unremarkable.
HEENT:  Pupils are equal, round, and reactive to light and accommodation.
Visual fields are full.  Fundi are benign.
CHEST:  Clear per Dr. Dunaway.
CARDIOVASCULAR:  Without S3, S4, murmur, or gallop.
ABDOMEN:  Without organomegaly.
SPINE:  Tender at L4 in the midline.
EXTREMITIES:  Straight leg raising is positive on all sides, right greater
than left at 30 and 45 degrees respectively.  There is paraspinous spasm but
no radiation.  Motor and sensory are normal.  Deep tendon reflexes are 2+.

Date Recv 04/11/2006

GARDNER, MELISSA A          32Y F
860011391    DOB:  **REDACTED**
AC#:6016433    451

DT:CONSHPIM

CONSULTATION REPORT

PAGE  1

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

he can stand at the bedside but with much axial pain.  SI joints are benign.

IMPRESSION:  This is probably an L4 disk syndrome particularly given the fact that being seated in the automobile is uncomfortable.  I have explained in detail the intervention, outcome, and that she has never been scanned at any of the 3 hospitals and we need to accomplish that today.  She is aware that lumbar ESI is about a 60% yield over 6 to 12 months when approached in three 2-week increments; and that there are steroid limitations which we are careful not to broach or approach the maximum dose limits.  Narcotics are unlikely to be of long-term use.  Surgical evaluation clearly has to depend on the MRI.  Implanted devices are unlikely to be of much use as her distribution is axial still at this time.  As for intradiskal procedures, I do them but these are reserved for a last chance as the risk of diskitis is irreducible at 0.5% and is a patient care disaster.  We will await the MRI this afternoon.

Best regards,


BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
D:    03/14/2006 09:57
T:    03/15/2006 01:43
:0810/31201/32446

Date Recv: 04/11/2006

GARDNER, MELISSA A          32Y F
860011391    DOB: REDACTED
AC#:6016433    45

DT:CONSHPIM

CONSULTATION REPORT

PAGE  2

R-0337

(Page 140 of 427)

PROCTOR HOSPITAL LABORATORY
5409 N. KNOXVILLE AVE. PEORIA, IL 61614
DIRECTOR - ALLAN C. CAMPBELL, M.D.
Results: 691-1060          FAX: 691-9163              Consults: 692-4430

NAME: GARDNER,MELISSA A                          Birthdate: **REDACTED**
                                                 AGE: 32Y
    MR#: 860011391      NS: ON      ROOM: 451-1   Admit:     03/13/2006
    ACCT: 6016433       DR: MILLER, JOHN K.       Discharge: 03/17/2006

          ******************************** SEROLOGY ********************************

03/13   2200 URINE PREGNANCY TEST
             URINE PREGNANCY TEST            NEGATIVE  NEG
             URINE SP GRAVITY                1.016
                                             SPECIFIC GRAVITY MUST BE >=1.010 FOR A VALID NEGATIVE
                                             URINE PREGNANCY TEST RESULT

Date Recv: 04/11/2006

GARDNER,MELISSA A
    MR#: 860011391                       END OF REPORT                      PAGE: 1
    LOC: ON    RM#: 451-1       INPATIENT MEDICAL RECORDS COPY
                                                      Printed: 03/17/2006 21:07

R-0338

(Page 141 of 427)

te:  4-04-06                    PROCTOR HOSPITAL                         PRELIMINARY
me:  11:14:54                 Transcription Report

tient Account: 6016433 I  2 GARDNER, MELISSA
----------------------------- Result Data -------------------------------------*

AMINATION:  MRI LUMBAR SPINE WITHOUT & WITH CONTRAST

TE OF EXAM:  3/14/06

INICAL HISTORY:  INTRACTABLE LOW BACK PAIN

RI of the lumbar spine was performed with and without the aid of intravenous
ontrast.

e conus medullaris of the cord ends at the appropriate level with no abnormal
hancement or mass lesions identified.

abnormal bone marrow edema or enhancement of the marrow-containing portion o
e lumbar vertebral bodies.

e L4-L5 Disc Space Level:  There is a broad-based disc bulge of the L4-L5 dis
sociated with a posterior and central annular tear.  There is bilateral mild
moderate narrowing of the neural canal and neural foramina at this disc spac
el.

L3-L4 Disc Space Level:  There is a broad-based annular bulge with an 8 mm
a of annular tear involving the posterior central aspect of the annulus.  No
nificant narrowing of the neural canal and neural foramina.

e remainder of the lumbar disc spaces appear to be unremarkable for frank dis
erniations or spinal stenosis.

MPRESSION:

EGENERATIVE DISC DISEASE EVIDENT BY MILD DEGENERATIVE DEHYDRATION AND LOSS OF
ISC SPACE HEIGHT OF THE L3-L4, L4-L5 AND L5-S1 DISCS.  THIS IS ASSOCIATED WITH
GE-INDETERMINATE POSTERIOR CENTRAL ANNULAR TEARS OF THE L3-L4 AND L4-L5 DISCS.

: 3/14/06
: 3/14/06

G:jr

R-0339

ate:  4-04-06                  PROCTOR HOSPITAL                    PRELIMINARY
ime: 11:14:54               Transcription Report
atient Account: 6016433 I  2 GARDNER, MELISSA
-------------------------- Result Data ------------------------------------*

                        * End of Report *

Date Recv: 04/11/2006

R-0340

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT APPROVAL NOTICE**
**04/12/2006**

---

ATTENTION: HILLARI Y FLEMING            RC: AYJ4D1030

Employee Name: **MELISSA GARDNER**        Employee ID: mf4914

Employee Job Title: **MARKETING SUPPORT**    Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01         Plan: AIT SADBP

First Day Absent: 03/14/2006             First Day of Disability: 03/21/2006

*CLAIM STATUS*
➢ Disability Benefits Approved from 03/21/2006 through 04/20/2006

➢ Disability Benefits Denied (if applicable)

➢ Maximum potential for short term disability benefits under the plan: 03/19/2007

*PAY STATUS*
➢ Full Pay From:
   03/21/2006 through 04/20/2006

If applicable:
➢ **Partial Pay: N/A**
➢
➢ Partial Pay Percentage  No_ 50%  _No_ 60%

*OFFSETS FROM PAY*

                    **Check if applicable**
   ➢ **Workers' Compensation**
   ➢ **Social Security**
   ➢ **State Disability**

*RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*
➢ Medical information supports the following restrictions:

➢ Duration of restrictions/modifications approved from    through

➢ Best estimated return to work full time full duty date: **04/21/2006**
Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Date Recv: 04/12/2006

(Page 144 of 427)

Please be sure to notify the IDSC on the first day your employee returns to work.

**Other Important Information:**

➢ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.

➢ **Disability Resources**
    o  Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
    o  AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm

➢ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.

➢ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

**Plan Key**

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

Date Recv: 04/12/2006

IDSC Disability Approval Notice Email-Claim-A625007022000101--FDD 3/21/06     Page 1 of 1

## MedManager

**From:**   Hamilton, Robin [RHamilton@sedgwickcms.com]
**Sent:**   Wednesday, April 12, 2006 3:41 PM
**To:**   hf1383@att.com
**Subject:** IDSC Disability Approval Notice Email-Claim-A625007022000101--FDD 3/21/06

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

Date Recv: 04/12/2006

4/12/2006

R-0343

**\*\*\*Please make changes and return if any of the information below is incorrect\*\*\***

---

| AT&T Integrated Disability Service Center (IDSC) |
| :---: |
| REPORTED DISABILITY CLAIM NOTICE |
| 04/12/2006 |

---

Attention: HILLARI Y FLEMING                    RC: AYJ4D1030

Employee Name: MELISSA GARDNER                Employee ID: mf4914

Employee Job Title: MARKETING SUPPORT          Employee NCS Date: 02/12/2001
SPEC (SRL) [IBEW21]

IDSC Claim #: A625007022-0001-01                Plan: ATT SADBP

**Disability Claim**

➢    Employee reported first day absent as 03/14/2006

     If Incorrect, Correct date is: _____

➢    Seven calendar waiting days required        Yes        No

➢    Workers' compensation companion claim      Yes        No

Please be sure to notify the IDSC on the first day your employee returns to work.

Comments:

**Other Important Information:**
o    **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's
      supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward
      to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
o    **Disability Resources**
      o    Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the
            information provided.
      o    AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
o    **Time Reporting** – For additional information on disability time reporting visit
      http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you
      receive this notice to ensure pay accuracy.
o    **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the
      employee is eligible and entitled to FMLA and/or state family and medical leave. For additional
      information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-
      722-1787.

**Plan Key**

| Disability Plan Name | Acronym |
| --- | --- |
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |

Date Recv: 04/12/2006

| SNET Disability Benefits Plan | SNET DBP |
|---|---|
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hfl383@att.com

Date Recv: 04/12/2006

**MedManager**

| | |
|---|---|
| **From:** | Hamilton, Robin [RHamilton@sedgwickcms.com] |
| **Sent:** | Wednesday, April 12, 2006 3:38 PM |
| **To:** | hf1383@att.com |
| **Subject:** | IDSC Disability Claim Notice Email-Claim-A625007022000101---updated claim notice GARDNER, MELISSA |

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

Date Recv: 04/12/2006

4/12/2006

R-0346

Apr 18 06 04:21p    DR B CHIEN              3096918938              p.1

# *FAX COVER SHEET*

*Bruce B. Chien, M.D. P.C.*
*Proctor Professional Building*
*5401 N. Knoxville Avenue, Suite 212*
*Peoria, Illinois 61614*
*Phone: (309) 691-8973  Fax: (309) 691-8938*

*To:*

*Name:* Robin              *Company:* AT + T Disability

*Fax Number:* (866) 284-4627

*From:*

*Name:* Rose              *Company:* Dr. Bruce Chien.

*Date:* 04/18/06 _____    *Time:* 4:10pm

*TRANSMISSION:*
*This cover letter plus* ___1___ *pages attached.*

*REMARKS:* Ref. Plessis Gardner Comm #

    A6650702R - 0001 - 01

*The information contained in this facsimile message is privileged and confidential*
*information intended only for the use of the individual or entity named above. If the*
*reader of this message is not the intended recipient, you are hereby notified that any*
*dissemination, distribution or copying of this communication is strictly prohibited. If*
*you have received this communication in error, please notify us immediately.*

*Please advise us of any difficulties in receiving this transmission by calling the number*
*listed above.*

*REPLY REQUIRED? Yes___ No___  URGENT? Yes___ No___*

Fax Rcvd: 4/18/2006 5:09:59 PM

R-0347

Bruce B. Chien M.D.
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

April 18, 2006

To whom it may concern:

Melissa Gardner will need to be medically off work through May 6, 2006.

Sincerely,

Bruce B. Chien, M.D.

Fax Rcvd: 4/18/2006 5:09:59 PM

R-0348

(Page 151 of 427)

**AT&T Integrated Disability Service Center**

*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

April 19, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE: Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from 03/20/2006 through 04/20/2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by 04/15/2006. Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

Robin Hamilton
Disability Specialist II
AT&T Integrated Disability Service Center

Date Recv: 04/19/2006

1337380

R-0349

**\*\*\*Please make changes and return if any of the information below is incorrect\*\*\***

| |
|---|
| AT&T Integrated Disability Service Center (IDSC)<br>REPORTED DISABILITY CLAIM NOTICE<br>04/19/2006 |

**Attention: HILLARI Y FLEMING**          RC: AYJ4D1030

Employee Name: MELISSA GARDNER          Employee ID: mf4914

Employee Job Title: MARKETING SUPPORT          Employee NCS Date: 02/12/2001
SPEC (SRL) [IBEW21]

IDSC Claim #: A625007022-0001-01          Plan: AIT SADBP

Date Recv: 04/19/2006

Disability Claim

➢   Employee reported first day absent as 03/13/2006

    If Incorrect, Correct date is: _____

➢   Seven calendar waiting days required          Yes          No

➢   Workers' compensation companion claim          Yes          No

Please be sure to notify the IDSC on the first day your employee returns to work.

Comments:

Other Important Information:

o   **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's
    supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward
    to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
o   **Disability Resources**
    o   Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the
        information provided.
    o   AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
o   **Time Reporting** – For additional information on disability time reporting visit
    http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you
    receive this notice to ensure pay accuracy.
o   **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the
    employee is eligible and entitled to FMLA and/or state family and medical leave. For additional
    information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-
    722-1787.

Plan Key

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |

| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

Date Recv: 04/19/2006

**MedManager**

| | |
|---|---|
| **From:** | Hamilton, Robin [RHamilton@sedgwickcms.com] |
| **Sent:** | Wednesday, April 19, 2006 3:46 PM |
| **To:** | hf1383@att.com |
| **Subject:** | IDSC Disability Claim Notice Email-Claim-A625007022000101-updated claim notice |

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

Date Recv: 04/19/2006

4/19/2006

```
┌─────────────────────────────────────────────────────────────┐
│          AT&T Integrated Disability Service Center (IDSC)     │
│             DISABILITY BENEFIT APPROVAL NOTICE               │
│                        04/19/2006                           │
└─────────────────────────────────────────────────────────────┘
```

ATTENTION: HILLARI Y FLEMING          RC: AYJ4D1030

Employee Name: **MELISSA GARDNER**          Employee ID: **mf4914**

Employee Job Title: **MARKETING SUPPORT**          Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01          Plan: AIT SADBP

First Day Absent: 03/13/2006          First Day of Disability: 03/20/2006

### *CLAIM STATUS*
➢   Disability Benefits Approved from 03/20/06 through 04/20/2006

➢   Disability Benefits Denied (if applicable)

➢   Maximum potential for short term disability benefits under the plan: 03/18/2007

### *PAY STATUS*
➢   Full Pay From:
    03/20/2006 through 04/20/2006

If applicable:
➢   **Partial Pay: N/A**
➢
➢   Partial Pay Percentage  No_ 50%  _No_ 60%

### *OFFSETS FROM PAY*

                         Check if applicable
➢   **Workers' Compensation**
➢   **Social Security**
➢   **State Disability**

### *RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*
➢   Medical information supports the following restrictions:

➢   Duration of restrictions/modifications approved from   through

➢   Best estimated return to work full time full duty date: **04/21/2006**
Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the
employee.

Date Recv'r: 04/19/2006

Please be sure to notify the IDSC on the first day your employee returns to work.

**Other Important Information:**

➢ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.

➢ **Disability Resources**
  o Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
  o AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm

➢ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.

➢ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

**Plan Key**

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

Date Recv: 04/19/2006

IDSC Disability Approval Notice Email-Claim-A625007022000101                    Page 1 of 1

**MedManager**

| | |
|---|---|
| **From:** | Hamilton, Robin [RHamilton@sedgwickcms.com] |
| **Sent:** | Wednesday, April 19, 2006 3:48 PM |
| **To:** | hf1383@att.com |
| **Subject:** | IDSC Disability Approval Notice Email-Claim-A625007022000101 |

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

Date Recv: 04/19/2006

4/19/2006

Apr 20 06 08:48a    DR B CHIEN              3096918938              p.1

# *FAX COVER SHEET*

*Bruce B. Chien, M.D. P.C.*
*Proctor Professional Building*
*5401 N. Knoxville Avenue, Suite 212*
*Peoria, Illinois 61614*
*Phone: (309) 691-8973  Fax: (309) 691-8938*

*To:*

*Name:* Robin Hamilton          *Company:* AT & T Integrated
                                         Disability Service Center

*Fax Number:* (866) 224-4427

*From:*

*Name:* Nina              *Company:*

*Date:*    04-20-06          *Time:*    8:45 Am

*TRANSMISSION:*
*This cover letter plus*   5   *pages attached.*

*REMARKS:* Medical Records For: Melissa Gardner

*The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately.*

*Please advise us of any difficulties in receiving this transmission by calling the number listed above.*

*REPLY REQUIRED? Yes ___  No ___  URGENT? Yes ___  No ___*

Fax Rcvd: 4/20/2006 9:39:22 AM

R-0356

Apr 20 06 08:48a    DR B CHIEN            3096918938            p.2

Apr-19-06  14:32  From-Sedgwick CMS        3123560016    T-767  P.001/002  F-000

## AT&T Integrated Disability Service Center
### As Administered by Sedgwick CMS
P.O. Box 61569; King of Prussia, PA; 19406-0447; Telephone 866-276-2278; Facsimile 866-224-4627

| | |
|---|---|
| PATIENT OF: Dr. Chien | From: Robin Hamilton |
| Fax Number: 309-691-8938 | Date: April 19, 2006 |
| Employee Name: Melissa Gardner | Pages: |
| Date of Birth: **REDACTED** | ATTN: |
| Claim number: A625007022 | First date of absence: 3/13/2006 |

☐ URGENT  ☒ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

SBC Disability Center provides disability benefits for the above claimant. Please provide the following information by ASAP to document his medical status. Your prompt cooperation and response are necessary and appreciated. If you are unable to meet this deadline or have any questions, please call us at the number above. Delay in receiving this information may result in a denial of his disability benefits. *Please be advised that the claimant is responsible for providing the authorization to release medical information and any charges for the medical records, etc, thereof.*
*CURRENT BENEFITS EXPIRE 4/20/2006*

1. Please submit copy of office notes, test results and x-ray results from 4/17/06 thru present to make a determination of wage replacement on this patient.

****Confidential Note****
The information contained in this facsimile message may be legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by calling 866-276-2278, and return the original message to us at the address above by the United States Postal Service. SMAART does not pay for medical records it is the responsibility of the employee to provide us with medical documentation supporting their disability. Thank you.

Fax Rcvd: 4/20/2006 9:39:22 AM

R-0357

(Page 160 of 427)

4/18/2006 9:15 PM    MENON WEB REPORTS -> 6CIA - OFFICE OF DR BRUCE B CHIEN    Page 1 of 3

########## ROUTE TO PROV [6CIA]: 18390, Chien, Bruce B
PAGE 1

OPERATIVE REPORT
SAINT FRANCIS MEDICAL CENTER
Peoria    ,IL  61637
(309)6552000

Facility: SFMC                                         Label ID: OP

Patient: GARDNER, Melissa A          Adm Date:17Apr06    Location:CFHS-31
DOB:                                 Dis Date:17Apr06    Pt. Type:AS
MRN:                                 Acct #:002584873
Attending Phys: CHIEN, BRUCE
Primary Care Prov: MILLER, JOHN
Legal Signing Prov #:   18390
                                     COPY
------------------------------------------------------------------------

MR: 1145497 Acct: 2584873
Admit: 04/17/2006 Disch: 04/17/2006
DocID: D1061459

Dictating: 18390 BRUCE B CHIEN
ccdr1:
ccdr2:
ccdr3:
ccdr4:

D.04/17/2006 13:35:00
T.04/18/2006 17:29:58

REPORT OF OPERATION

DATE OF SURGERY:   04/17/2006

PREOPERATIVE DIAGNOSIS:
Bilateral L4 radiculopathy, left C7 radiculopathy.
POSTOPERATIVE DIAGNOSIS:
Same
SURGEON: Bruce B. Chien, M.D.

OPERATION:
MIDLINE L4 EPIDURAL STEROID INJECTION.
Melissa Gardner is a 42-year-old white female who had the acute onset of
back pain, midline, lumbar on Thursday while at work.  She sits at a desk
at Ameritech in Springfield.  The drive home from Springfield to East
Peoria was uncomfortable, noticing that it was painful to lift her leg to
the brake pedal.  It did not remit at home in the seated, standing or
recumbent position.  She went to the OSF Saint Francis Prompt Care and she
was given Vicodin and Skelaxin.  She went to work on the following Friday
and was miserable proceding the 14th of March.  On Sunday she went to the
emergency department at MMCI, no MR was performed.  She did have x-rays
done and was given Percocet.  She awoke at 0400 Monday and called Dr.
Miller's office and went to the emergency room.  She has now had two
midline L4 epidural steroid injections.

Fax Rcvd: 4/20/2006 9:39:22 AM

(Page 161 of 427)

4/18/2006 9:15 PM   MENON WEB REPORTS -> 0CIA - OFFICE OF DR BRUCE B CHIEN    Page 2 of 3

PAGE 2

OPERATIVE REPORT
SAINT FRANCIS MEDICAL CENTER
Peoria    ,IL  61637
(309)6552000

Facility: SFMC                                           Label ID: OP

Pat~~~~~~~~~~~~~~ssa A           Adm Date:17Apr06      Location:CFHS-31
DOB~~~~~~~~~~~~~                 Dis Date:17Apr06      Pt. Type:AS
MRN~~~~~~~~~~~~~                 Acct #:002584873
Attending Phys: CHIEN, BRUCE
Primary Care Prov: MILLER, JOHN
Legal Signing Prov #:   18390
                              COPY
----------------------------------------------------------------------------
PAST MEDICAL HISTORY: Migraines for the past three years, looked after by
Dr. Richard Lee.  She is having normal menstrual periods.

FAMILY HISTORY: Everyone in the family has back pain.

SOCIAL HISTORY: She wants to smoke.

ALLERGIES: Demerol leads to blisters, ASA leads to nausea and vomiting,
Compazine leads to anxiety.

SURGICAL HISTORY: Cholecystectomy, dilatation and curettage, tonsillectomy
and adenoidectomy, ectopic cubital tunnel on the left.

REVIEW OF SYSTEMS: Her left C7 radicular discomfort from her neck, triceps,
elbow and medial compartment of the forearm into the 5th and 4th fingers is
bothering her pretty much 14/7.

On physical examination she is about 200 pounds, 5'8"; vital signs are
unremarkable.  Pupils are equal, round, reactive to light and
accommodation.  Visual fields are full; fundi are benign.  Chest is clear.
Cardiovascular is unremarkable.  Liver is 8 cm; spleen is nontender.  Motor
in upper extremities and sensory in the left upper extremity in particular
is normal.  Straight leg raising is positive on both sides at 60 and 75
degrees on the right and left sides respectively.  Paraspinous spasm is
present.  There is no radiation.  Motor and sensory are normal.  Deep
tendon reflexes are 2+.  She is able to lie on her abdomen.

PROCEDURE: After written and informed consent the patient was brought to
the operating room and placed prone on five pillows.  The lumbar spine was
prepped with Betadine.  1% Lidocaine was infiltrated into the L4-5
interspace.  #18-gauge Tuohy needle was passed to a depth of 7 cm where
loss of resistance was obtained.  18 mL containing Triamcinolone 80 mg,
Lidocaine 50 mg, three parts in ten Isovue 200 were mixed and injected.
The patient had a sense of aching down both buttocks and both thighs.  PA
and lateral views were saved.  The needle was withdrawn.  The patient's
back was washed.  She was taken to the ASU.

It is pretty plain that she likely has intradiskal disease with her pain
pattern and failure to respond.  In addition she has an L4 EMG, which

R-0359

(Page 162 of 427)

Apr 20 06 08:49a    DR B CHIEN              3096918938              p.5

4/18/2006 9:15 PM  MENON WEB REPORTS -> 6CIA - OFFICE OF DR BRUCE R CHIEN    Page 3 of 3

PAGE 3

OPERATIVE REPORT
SAINT FRANCIS MEDICAL CENTER
Peoria      ,IL  61637
(309)6552000

Facility: SFMC                                              Label ID: OP

Patient: GARDNER, Melissa A        Adm Date:17Apr06   Location:CFHS-31
DOB                                Dis Date:17Apr06   Pt. Type:AS
MRN:                               Acct #:002584873
Attending Phys: CHIEN, BRUCE
Primary Care Prov: MILLER, JOHN
Legal Signing Prov #:   18390
                                   COPY
-----------------------------------------------------------------------

showed a pattern compatible with radiculopathy.  Will refer her downtown to
OSF Imaging and Radiology Department for an L4 discogram.  I spend a
considerable amount of counseling her as to how uncomfortable this
procedure is and there is discrete risk.  At the current time there is not
much on her MRI to need a neurosurgeon to intervene.  Thanks for this
opportunity to participate in the patient's care.

SMC/STS

Job #3833547
st

Version Date: 04/18/2006 21:00:29 ljw

BRUCE B CHIEN, Admitting Physician
JOHN K MILLER, Referring Physician 1


PRELIM SIGNING PROV:BRUCE CHIEN              MD      Date:
LEGAL SIGNING PROV:BRUCE CHIEN               MD      Date:
        PRINTED: 04/18/2006  9:14pm
        PRINTED BY: INTERFACE, T.

Fax Rcvd: 4/20/2006 9:39:22 AM

(Page 163 of 427)

Apr 20 06 08:50a    DR B CHIEN                3096918938                p.6

**BRUCE B. CHIEN, M.D.**
*Anesthesiology and Pain Management*

*Proctor Professional Building*
*5401 N. Knoxville Avenue, Suite 212*
*Peoria, Illinois 61614*
*(309) 691-8973*

Fax Rcvd: 4/20/2006 9:39:22 AM

*Patient Name:* __MELISSA GARDNER__

*Date of Birth:* __04/16/73__

*Diagnosis:* __BILATERAL L4 RADICULOPATHY__

*Test Order(s):* __L4 DISCOGRAM + LABS NEEDED__

*Date of Test(s):* __04/20/06__

*Time:* __11:00AM__

*Hospital:* __Proctor Hospital__

*Physician's Signature:* __Bruce Chien__

R-0361

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

April 21, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE: Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from March 21, 2006 through April 27, 2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by Dr. Bruce Chien. Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

Kandria Daniels CRC
Disability Specialist III
AT&T Integrated Disability Service Center

1353350

R-0362

DISABILITY BENEFIT APPROVAL NOTICE                                    Page 1 of 2

**MedManager**

| | |
|---|---|
| **From:** | Daniels, Kandria [kdaniels@sedgwickcms.com] |
| **Sent:** | Friday, April 21, 2006 5:33 PM |
| **To:** | hf1383@att.com |
| **Subject:** | Disability Approval Notice for Melissa Gardner A625007022-0001-01 |

---

AT&T Integrated Disability Service Center (IDSC)
DISABILITY BENEFIT APPROVAL NOTICE
04/21/2006

---

ATTENTION: HILLARI Y FLEMING              RC: AYJ4D1030

Employee Name: **MELISSA GARDNER**          Employee ID: mf4914

Employee Job Title: MARKETING SUPPORT SPEC      Employee NCS Date: 02/12/2001
(SRL) [IBEW21]

IDSC Claim #: A625007022-0001-01             Plan: AIT SADBP

First Day Absent: 03/11/2006                 First Day of Disability: 03/20/2006

*CLAIM STATUS*

➢  Disability Benefits Approved from 03/20/2006 through 04/27/2006

➢  Disability Benefits Denied (if applicable)

➢  Maximum potential for short term disability benefits under the plan: 03/18/2007

*PAY STATUS*
➢  Full Pay From:
➢ 03/20/2006 through 04/27/2006

If applicable:
➢  Partial Pay: N/A
➢
➢  Partial Pay Percentage  No_ 50% _No_ 60%

*OFFSETS FROM PAY*

                              Check if applicable

➢  Workers' Compensation
➢  Social Security
➢  State Disability

4/21/2006

R-0363

Date Recv: 04/21/2006

(Page 166 of 427)

DISABILITY BENEFIT APPROVAL NOTICE                                    Page 2 of 2

*RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*
  ➢  Medical information supports the following restrictions:

  ➢  Duration of restrictions/modifications approved from   through

  ➢  Best estimated return to work full time full duty date: **04/21/2006**
  Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Please be sure to notify the IDSC on the first day your employee returns to work.

Other Important Information:
  ➢  Supervisor Contact Information - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
  ➢  Disability Resources
        o   Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
        o   AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
  ➢  Time Reporting – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.
  ➢  FMLA and/or state family and medical leave will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

Plan Key

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

Date Recv:  04/21/2006

4/21/2006

(Page 167 of 427)



**Sedgwick CMS**

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447; Telephone 866-276-2278; Facsimile 866-224-4627

| | |
|---|---|
| To: Dr. Chen | From: Lou'litha Walls |
| Fax Number: 309/691-8931 | Date: April 28, 2006 |
| Phone Number: | Number of Pages: |
| Patient Name: Melissa Gardner | Claim Number: A625007022-0001-01 |
| D.O.B. REDACTED | Your Reference Number: |

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

We are currently managing a claim for Short Term Disability for Ms. Gardner and find that we are in need of your assistance at this time.

****Please two most recent office visit notes

1) Please provide us with a current diagnosis and the first date she was unable to work.

2) Please provide us with the specific functional limitations preventing your patient from working at this time.

3) Please provide us with your current treatment plan and an estimated return to work date.

Benefits are pending receipt of this information. To prevent a financial hardship on «EE_Salutation» we would ask that you reply to this request for information at your earliest convenience. Please reply to the fax number listed above.

Any charges for the requested records are the responsibility of your patient.

****Confidential Note****

The information contained in this facsimile message may be legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by calling 866-276-2278, and return the original message to us at the address above by the United States Postal Service. Thank you.

Date Recv'r: 04/28/2006

R-0365

(Page 168 of 427)

**MedManager**

| | |
|---|---|
| **From:** | Walls, LouLitha C. [lwalls@sedgwickcms.com] |
| **Sent:** | Friday, April 28, 2006 4:42 PM |
| **To:** | Dr. Chen (Business Fax) |
| **Subject:** | A625007022-0001-01 GARDNER, MELISSA |

Date Recv: 04/28/2006

4/28/2006

R-0366

(Page 169 of 427)

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT APPROVAL NOTICE**
**04/28/2006**

---

ATTENTION: HILLARI Y FLEMING                    RC: AYJ4D1030

Employee Name: **MELISSA GARDNER**              Employee ID: **mf4914**

Employee Job Title: **MARKETING SUPPORT**       Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01               Plan: AIT SADBP

First Day Absent: 03/11/2006                   First Day of Disability: 03/20/2006

### *CLAIM STATUS*

➢ Disability Benefits Approved from 03/20/2006 through 05/01/2006

➢ Disability Benefits Denied (if applicable)

➢ Maximum potential for short term disability benefits under the plan: 03/18/2007

### *PAY STATUS*
➢ Full Pay From:
  03/20/2006 through 04/27/2006
  04/28/2006 through 05/01/2006

If applicable:
➢ Partial Pay: N/A
➢
➢ Partial Pay Percentage  No. **50%** _No_ **60%**

### *OFFSETS FROM PAY*

**Check if applicable**

➢ **Workers' Compensation**
➢ **Social Security**
➢ **State Disability**

### *RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*

➢ Medical information supports the following restrictions:

➢ Duration of restrictions/modifications approved from    through

➢ Best estimated return to work full time full duty date: **05/02/2006**
Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the
employee.

Date Recv: 04/28/2006

(Page 170 of 427)

Please be sure to notify the IDSC on the first day your employee returns to work.

**Other Important Information:**

➢ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.

➢ **Disability Resources**
   o Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
   o AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm

➢ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.

➢ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

**Plan Key**

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

Date Recv: 04/28/2006

## MedManager

**From:** Walls, LouLitha C. [lwalls@sedgwickcms.com]
**Sent:** Friday, April 28, 2006 5:01 PM
**To:** hf1383@att.com
**Subject:** A625007022-0001-01 GARDNER, MELISSA

Date Recv: 04/28/2006

4/28/2006

R-0369

(Page 171 of 427)

<div style="border:1px solid black">

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT DENIAL NOTICE**
**05/02/2006**

</div>

**Attention: HILLARI Y FLEMING**          RC: AYJ4D1030

**Employee Name: MELISSA GARDNER**          Employee ID: mf4914

Employee Job Title: MARKETING SUPPORT SPEC          Employee NCS Date: 02/12/2001
(SRL) [IBEW21]

IDSC Claim #: A625007022-0001-01          Plan: AIT SADBP

First Day Absent: **03/11/2006**          First Day of Disability: **03/20/2006**

*CLAIM STATUS*

➢    Disability Benefits Approved from 03/20/2006 through 05/01/2006

➢    Disability Benefits Denied (if appropriate) 05/02/2006 through

➢    Maximum potential short term disability benefits under the plan: 03/18/2007

Reason for Denial    ☐ : Absence did not satisfy 7 day Waiting Period
                      ☒ : **Failure to submit additional medical information for review**
                      ☐ : Medical information submitted was not sufficient to support the claim
                          for disability benefits based on the provisions of the Plan
                      ☐ : Employee not eligible for benefits
                      ☐ : Performing activities that are inconsistent with his/her disability
                      ☐ : Traveling without permission
                      ☐ Other:

➢    Date claimant contacted regarding the disability benefit denial: 5.2.06
➢
➢    Estimated appeal expiration date: 10.28.06

The plan provides an employee one-hundred and eighty (180) days to appeal the disability
benefit denial determination.

         Please be sure to notify the IDSC on the first day your employee returns to
work.

*PAY STATUS*
➢    Full Pay From:
       03/20/2006 through 04/27/2006
       04/28/2006 through 05/01/2006

Partial Pay (If applicable):
➢    Partial Pay: N/A

Date Recv: 05/02/2006

R-0371

(Page 173 of 427)

Date Recv'r: 05/02/2006

Percentage of Partial Pay: No **50%**  No **60%**

**Other Important Information:**
- ➤ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
- ➤ **Disability Resources**
  - o   Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
  - o   AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
- ➤ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.
- ➤ **Denied Disability Process** - For additional information in managing an employee's absence in the event that s/he is denied disability the supervisor may refer to the Denied Disability Process which is located on the Attendance Management web site (http://hrweb01.AT&T.com/attmgmt/login.asp)and the HR Reference Portal (https://ebiz2.AT&T.com/hrrefportal/). It is recommended that you consult with Human Resources, Labor Relations, and Legal prior to making employment decisions for an employee who has been denied disability benefits.

**Plan Key**

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

Exhibit x

RESTRICTED PROPRIETARY INFORMATION

hfl383@att.com

R-0372

(Page 174 of 427)

Page 1 of 1

**MedManager**

**From:** Walls, LouLitha C. [lwalls@sedgwickcms.com]
**Sent:** Tuesday, May 02, 2006 12:06 PM
**To:** hf1383@att.com
**Subject:** Melissa Gardner A625007022-0001-01

Date Recv: 05/02/2006

5/2/2006

R-0373

May 03 06 02:50p    DR B CHIEN              3096918938              p.1

# *FAX COVER SHEET*

*Bruce B. Chien, M.D. P.C.*
*Proctor Professional Building*
*5401 N. Knoxville Avenue, Suite 212*
*Peoria, Illinois 61614*
*Phone: (309) 691-8973  Fax: (309) 691-8938*

---

*To:*

*Name:* Lockhman Whales    *Company:* AT+T Discovery Center

*Fax Number:* (866) 224 - 4627.

---

*From:*

*Name:* Rose    *Company:* Dr B. Chien

*Date:* 05/03/06    *Time:* 2:35 pm.

---

*TRANSMISSION:*
*This cover letter plus*  5  *pages attached.*

*REMARKS:* Ref. Melissa Gardner
DOB **REDACTED**

---

*The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately.*

*Please advise us of any difficulties in receiving this transmission by calling the number listed above.*

*REPLY REQUIRED? Yes___  No___   URGENT? Yes___  No___*

R-0374

May 03 06 02:51p    DR B CHIEN    3096918938    p.2

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

May 3, 2006

Lou'litha Walls
AT&T Disability Center

In R.E> Melissa Gardner    **REDACTED**

Ms. Gardner has a ruptured L4 disc by discography and bilateral lumbar radiculopathy (L4). At the current time she cannot stand or sit for any period more than about 3 minutes. She is completely disbled from all work at the current time.

She is waiting to see Dr Dzung Dinh, who is our L4 disc replacement vs. fusion Neurosurgeon.

Regards,

Bruce B. Chien, M.D.

Fax to: 866-204-4627

Fax Rcvd: 5/3/2006 3:39:56 PM

R-0375

May 03 06 02:51p    DR B CHIEN                3096918938              P.3
~~05/03/2006 1:29:17 PM~~        SEDGWICK CMS                    PAGE 2  OF 2



**Sedgwick CMS**

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447; Telephone 866-276-2278; Facsimile 866-224-4627

| | |
|---|---|
| To: Dr. Chen | From: Lou'Iitha Walls |
| Fax Number: 309/691-8938 | Date: May 3, 2006 |
| Phone Number: | Number of Pages: |
| Patient Name: Melissa Gardner | Claim Number: A625007022-0001-01 |
| D.O.B. REDACTED | Your Reference Number: |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

We are currently managing a claim for Short Term Disability for Mr. Gardner and find that we are in need of your assistance at this time.

****Please fax a copy of Ms. Gardners most recent office visit notes along with her most recent test results, her current tx plan, and her current restrictions and limitations
1)  Please provide us with a current diagnosis and the first date she was unable to work. ——— *(FAXED)*
                                                                04/20/06   04/05/06
                                                                04/18/06,

2)  Please provide us with the specific functional limitations preventing your patient from working at this time.

3)  Please provide us with your current treatment plan and an estimated return to work date.

Benefits are pending receipt of this information. To prevent a financial hardship on «EE_Salutation» we would ask that you reply to this request for information at your earliest convenience. Please reply to the fax number listed above.

~~Any charges for the requested records are the responsibility of your patient.~~

****Confidential Note****
The information contained in this facsimile message may be legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by calling 866-276-2278, and return the original message to us at the address above by the United States Postal Service. Thank you.

(Page 178 of 427)

May 03 06 02:51p    DR B CHIEN            3096918938            p.4

✠ **PROCTOR**
H O S P I T A L        5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071        **TRI-COUNTY RADIOLOGISTS**

4/26/06
9:08:09                                                            PAGE    1

PATIENT NAME: GARDNER, MELISSA            M/R NUMBER:        860011391
ORDERING DR:  BRADY, TERRANCE M.          TRANSCRIBE DATE:   4/25/06
BIRTH DATE:   **REDACTED**                ORDER NUMBER:      0874238
OUTPATIENT:   CT ~~REDACTED TOMOGRAPHY~~  ACCT. NUMBER:      6025115

EXAMINATION:  CT LUMBOSACRAL SPINE AFTER INJECTION OF L4-L5 DISC W/CONTRAST
DATE OF EXAM:  4/20/06

Patient was placed in supine position on the CT table.  Axial images were
initially obtained through the L4-L5 level with appropriate angulation of the
gantry to parallel the L4-L5 disc.  Images were obtained at 2.5 mm intervals.
Images were also reconstructed in coronal and sagittal projections.  These
images show that there is indeed penetration of contrast through the posterior
disc annulus into the epidural space, primarily centrally, but also a small
amount of contrast is seen extending to the left.  The majority of contrast,
however, is within the central nuclear area.  Note is made of a very small
curvilinear amount of contrast anteriorly in the disc, which was due to initial
attempt at disc injection with a 22-gauge needle and is not representative of
extravasation of contrast from the disc itself; therefore, this small area of
contrast anteriorly should be disregarded.

CONCLUSION:

EVIDENCE OF DISRUPTION OF THE L4-L5 DISC ANNULUS POSTERIORLY WITH EXTENSION OF
CONTRAST TO THE POSTERIOR ANNULUS NEAR THE MIDLINE INTO THE EPIDURAL SPACE AND
ALSO TO THE LEFT ALONG THE LEFT.

tr  bc

D:  4/25/06
T:  4/25/06

TMB:jr

COPY TO:  DR. BRUCE B. CHIEN

_TERRANCE M. BRADY, M.D._

**DIAGNOSTIC IMAGING CONSULTATION REPORT**

R-0377

(Page 179 of 427)

May 03 06 02:51p    DR B CHIEN                3096918938              p.5

**PROCTOR**
H O S P I T A L                    5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071        **TRI-COUNTY RADIOLOGISTS**

4/26/06
9:09:18                                                                          PAGE      1

PATIENT NAME: GARDNER, MELISSA                    M/R NUMBER:          860011391
ORDERING DR:  CHIEN, BRUCE B.                     TRANSCRIBE DATE:     4/25/06
BIRTH DATE:   ~~REDACTED~~                        ORDER NUMBER:        0873983
OUTPATIENT: CT ~~REDACTED~~ PHY                   ACCT. NUMBER:        6025115

EXAMINATION:  L4-L5 DISKOGRAM
DATE OF EXAM:  4/20/06

Reason For Examination:  Patient has history of severe low back pain, primarily
in the midline at the L4 level.  Patient now states it is also extending
inferiorly into the left buttock.  L4 radiculopathy is suspect.  Request is for
L4-L5 diskogram and subsequent CT examination at L4-L5 level after the disc is
injected with contrast.

The nature, benefits, alternatives, and risks of the diskogram were explained to
the patient prior to the procedure.  All questions were answered to her
satisfaction.  Ms. Gardner stated she understood and gave her consent.

The patient was then placed in the prone position on the Angiographic C-arm
table.  The L4-L5 disc level was examined with fluoroscopy in varying degrees of
obliquity.  The left transverse process at L5 is seen to be hypertrophied with
partial sacralization of the L5 vertebral body.  Pseudarthrosis of the
hypertrophied left L5 transverse process with the sacrum is seen.  For this
reason, it was elected to approach the L4-L5 disc from the right posterolateral
approach.  Using 27 degrees of cranial and 46 degrees of right posterior
angulation, the L4-L5 disc space is best visualized.  Skin and subcutaneous
tissues to the level of the spine were infiltrated with 1 percent Xylocaine for
local anesthesia.  Initial attempts were made to enter the L4-L5 disc space with
a 15 cm long, 22-gauge Chiba needle, but the 22-gauge Chiba needle was too
flexible to accurately control to get the needle well positioned within the L4-
L5 disc space.  Repeat attempts were made with a 20-gauge, 15 cm long Chiba
needle, which was successfully placed directly into the L4-L5 disc space.  Good
position of the needle tip within the disc was documented with digital
radiographs obtained in AP, oblique, and cross-table lateral projections.  At
this point, 2.5 ml of Omnipaque 350 were slowly injected into the L4-L5 disc
space.  Disc turgor was definitely diminished.  The patient also experienced
reproduction of the same midline low back pain with the injection of the disc.
The patient estimated the pain at 7 of 10 with the disc injection even with IV
sedation with Versed and Fentanyl that was administered with monitoring of vital
signs in order to allow the patient to lie in a prone position on the
Angiographic table.  Digital radiographs were obtained of the disc in lateral,
AP, oblique and AP with 47 degree cranial angulation.  Most of the contrast
appears to be contained within the expected central nuclear region.  However,
there does appear to be some contrast extension into and through the posterior
annular region and somewhat to the left as well.  The needle was then removed
and the patient transferred to the CT suite for further CT examination of the
L4-L5 disc.

--CONTINUED ON PAGE 2--

                                                                    TMB

R-0378

(Page 180 of 427)

May 03 06 02:51p    DR B CHIEN                    3096918938        p.6

PROCTOR                                          TRI-COUNTY RADIOLOGISTS
H O S P I T A L    5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071

4/26/06
9:09:18                                                          PAGE    2

PATIENT NAME: GARDNER, MELISSA              M/R NUMBER:        860011391
ORDERING DR:  CHIEN, BRUCE B.              TRANSCRIBE DATE:    4/25/06
BIRTH DATE:                                ORDER NUMBER:       0873983
OUTPATIENT: CT ~~REDACTED~~ TOMOGRAPHY     ACCT. NUMBER:       6025115

CONTINUED FROM PAGE 1


CONCLUSION:

CONCORDANT 7 OUT OF 10 PAIN DEMONSTRATED WITH INJECTION OF THE L4-L5 DISC SPACE.
THERE IS ALSO SIGNIFICANTLY DIMINISHED DISC TURGOR AT THIS LEVEL AND EVIDENCE OF
PENETRATION OF CONTRAST AT LEAST INTO, IF NOT THROUGH, THE ANNULAR REGION
POSTERIORLY.

tr  bc

D:  4/25/06
T:  4/25/06

TMB:jr


COPY TO:   DR. TERRANCE M. BRADY




                                          TERRANCE M. BRADY, M.D.

DIAGNOSTIC IMAGING CONSULTATION REPORT

Fax Rcvd: 5/3/2006 3:39:56 PM



## Sedgwick CMS

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447; Telephone 866-276-2278; Facsimile 866-224-4627

| | |
|---|---|
| To: Dr. Chen | From: Lou'litha Walls |
| Fax Number: 309/691-8938 | Date: May 3, 2006 |
| Phone Number: | Number of Pages: |
| Patient Name: Melissa Gardner | Claim Number: A625007022-0001-01 |
| D.O.B. **REDACTED** | Your Reference Number: |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

We are currently managing a claim for Short Term Disability for Mr. Gardner and find that we are in need of your assistance at this time.

****Please fax a copy of Ms. Gardners most recent office visit notes along with her most recent test results, her current tx plan, and her current restrictions and limitations
1) Please provide us with a current diagnosis and the first date she was unable to work.

2) Please provide us with the specific functional limitations preventing your patient from working at this time.

3) Please provide us with your current treatment plan and an estimated return to work date.

Benefits are pending receipt of this information. To prevent a financial hardship on «EE_Salutation» we would ask that you reply to this request for information at your earliest convenience. Please reply to the fax number listed above.

Any charges for the requested records are the responsibility of your patient

****Confidential Note****
The information contained in this facsimile message may be legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by calling 866-276-2278, and return the original message to us at the address above by the United States Postal Service. Thank you.

*(left margin)* Date Recv: 05/03/2006

**MedManager**

| | |
|---|---|
| **From:** | Walls, LouLitha C. [lwalls@sedgwickcms.com] |
| **Sent:** | Wednesday, May 03, 2006 2:28 PM |
| **To:** | Dr. Chen (Business Fax) |
| **Subject:** | A625007022-0001-01 Melissa Gardner |

Date Recv: 05/03/2006

5/3/2006

R-0381

**AT&T Integrated Disability Service Center**
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

May 04, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE:  Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from March 20, 2006 through June 18, 2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by June 19, 2006.  Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

LouLitha Walls
Disability Specialist II
AT&T Integrated Disability Service Center

Date Recv: 05/04/2006

1420419

R-0382

(Page 184 of 427)

<div style="border:1px solid">

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT APPROVAL NOTICE**
**05/04/2006**

</div>

ATTENTION: HILLARI Y FLEMING　　　　RC: AYJ4D1030

Employee Name: **MELISSA GARDNER**　　　　Employee ID: **mf4914**

Employee Job Title: **MARKETING SUPPORT SPEC (SRL) [IBEW21]**　　　　Employee NCS Date: 02/12/2001

IDSC Claim #: A625007022-0001-01　　　　Plan: AIT SADBP

First Day Absent: 03/11/2006　　　　First Day of Disability: 03/20/2006

*CLAIM STATUS*
- ➢　Disability Benefits Approved from 03/20/2006 through 06/18/2006

- ➢　Disability Benefits Denied (if applicable)

- ➢　Maximum potential for short term disability benefits under the plan: 03/18/2007

*PAY STATUS*
- ➢　Full Pay From:
  03/20/2006 through 04/27/2006
  04/28/2006 through 06/18/2006

If applicable:
- ➢　Partial Pay: N/A
- ➢
- ➢　Partial Pay Percentage  No_ 50% _No_ 60%

*OFFSETS FROM PAY*

**Check if applicable**
- ➢　Workers' Compensation
- ➢　Social Security
- ➢　State Disability

*RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*
- ➢　Medical information supports the following restrictions:

- ➢　Duration of restrictions/modifications approved from　through

- ➢　Best estimated return to work full time full duty date: **06/19/2006**
Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Date Recv: 05/04/2006

R-0383

Please be sure to notify the IDSC on the first day your employee returns to work.

**Other Important Information:**

➢ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
➢ **Disability Resources**
    o   Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
    o   AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
➢ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.
➢ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

Plan Key

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

**RESTRICTED PROPRIETARY INFORMATION**

hf1383@att.com

Date Recv: 05/04/2006

**MedManager**

| | |
|---|---|
| **From:** | Walls, LouLitha C. [lwalls@sedgwickcms.com] |
| **Sent:** | Thursday, May 04, 2006 5:00 PM |
| **To:** | hf1383@att.com |
| **Subject:** | Melissa Gardner A625007022-0001-01 |

Date Recv: 05/04/2006

5/5/2006

R-0385

(Page 187 of 427)

**AT&T Integrated Disability Service Center**
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

June 16, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE:  Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from 03/20/2006 through 06/25/2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by 06/22/2006.  Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

Robin Hamilton
Disability Specialist II
AT&T Integrated Disability Service Center

1648177

Date  Recv: 06/16/2006

R-0386

(Page 188 of 427)

Date Recv: 06/16/2006

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT APPROVAL NOTICE**
**06/16/2006**

---

ATTENTION: HILLARI Y FLEMING          RC: AYJ4D1030

Employee Name: **MELISSA GARDNER**          Employee ID: mf4914

Employee Job Title: MARKETING SUPPORT          Employee NCS Date: 02/12/2001
SPEC (SRL) [IBEW21]

IDSC Claim #: A625007022-0001-01          Plan: AIT SADBP

First Day Absent: 03/11/2006          First Day of Disability: 03/20/2006

*CLAIM STATUS*
➢  Disability Benefits Approved from 03/20/2006 through 06/25/2006

➢  Disability Benefits Denied (if applicable)

➢  Maximum potential for short term disability benefits under the plan: 03/18/2007

*PAY STATUS*
➢  Full Pay From:
    03/20/2006 through 04/27/2006
    04/28/2006 through 06/18/2006

If applicable:
➢  **Partial Pay from:**
    **06/19/2006 through 06/25/2006**
➢
➢  Partial Pay Percentage  Yes_ **50%** _No_  60%

*OFFSETS FROM PAY*

**Check if applicable**
➢  **Workers' Compensation**
➢  **Social Security**
➢  **State Disability**

*RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*
➢  Medical information supports the following restrictions:

➢  Duration of restrictions/modifications approved from    through

➢  Best estimated return to work full time full duty date: **06/26/2006**

R-0387

Date Recv: 06/16/2006

Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Please be sure to notify the IDSC on the first day your employee returns to work.

Other Important Information:
➢ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
➢ **Disability Resources**
   o Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
   o AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
➢ **Time Reporting** -- For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.
➢ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

Plan Key

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

IDSC Disability Approval Notice Email-Claim-A625007022000101                    Page 1 of 1

## MedManager

| | |
|---|---|
| **From:** | Hamilton, Robin [RHamilton@sedgwickcms.com] |
| **Sent:** | Friday, June 16, 2006 1:16 PM |
| **To:** | hf1383@att.com |
| **Subject:** | IDSC Disability Approval Notice Email-Claim-A625007022000101 |

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

6/16/2006

Date Recv: 06/16/2006

R-0389

(Page 191 of 427)

**AT&T Integrated Disability Service Center**
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

June 28, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE:  Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from 03/20/2006 through 06/28/2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by 06/28/2006.  Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

Robin Hamilton
Disability Specialist II
AT&T Integrated Disability Service Center

1714546

Date Recv'r: 06/28/2006

**R-0390**

> **AT&T Integrated Disability Service Center (IDSC)**
> **DISABILITY BENEFIT APPROVAL NOTICE**
> **06/28/2006**

ATTENTION: HILLARI Y FLEMING                    RC: AYI4D1030

Employee Name: **MELISSA GARDNER**              Employee ID: **mf4914**

Employee Job Title: **MARKETING SUPPORT**       Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01               Plan: AIT SADBP

First Day Absent: 03/11/2006                   First Day of Disability: 03/20/2006

### *CLAIM STATUS*

➢ Disability Benefits Approved from 03/20/2006 through 06/28/2006

➢ Disability Benefits Denied (if applicable)

➢ Maximum potential for short term disability benefits under the plan: 03/18/2007

### *PAY STATUS*

➢ Full Pay From:
03/20/2006 through 04/27/2006
04/28/2006 through 06/18/2006

If applicable:
➢ **Partial Pay from:**
**06/19/2006 through 06/28/2006**
➢
➢ Partial Pay Percentage  Yes_ 50% _No_ 60%

### *OFFSETS FROM PAY*

**Check if applicable**

➢ Workers' Compensation
➢ Social Security
➢ State Disability

### *RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*

➢ Medical information supports the following restrictions:

➢ Duration of restrictions/modifications approved from   through

➢ Best estimated return to work date: 06/29/2006

Date Recv: 06/28/2006

Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Please be sure to notify the IDSC on the first day your employee returns to work.

Other Important Information:
- **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
- **Disability Resources**
  - Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
  - AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
- **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.
- **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

Plan Key

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

IDSC Disability Approval Notice Email-Claim–A625007022000101                                    Page 1 of 1

**MedManager**

| **From:** | Hamilton, Robin [RHamilton@sedgwickcms.com] |
| **Sent:** | Wednesday, June 28, 2006 3:44 PM |
| **To:** | hf1383@att.com |
| **Subject:** | IDSC Disability Approval Notice Email-Claim–A625007022000101 |

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

6/28/2006

Date Recv': 06/28/2006

R-0393

(Page 195 of 427)

Jun. 28. 2006  5:38PM    ASSOC UNIVERSITY NEUROSURGEONS                No. 5819    P. 1

*ASSOCIATED UNIVERSITY NEUROSURGEONS, SC*
*719 N KUMPF BLVD SUITE 100*
*PEORIA, IL 61605*

FAX

| DATE:  6-28-06 | #OF PAGES: | FROM:  Stacey RN |
|---|---|---|
| TO: Robin Hamilton | | Associated University Neurosurgeons |
| CO. | | Ph # (309) 676-0766 |
| FAX #  866-224-4627 | | Fax # (309) 495-6453 |

NAME OF PATIENT:
        Melissa Gardner
        Claim # A625007022000101

DOCUMENTS BEING SENT:
        Medical Records

NOTICE

*The information contained in the telecopy may be privileged and/or confidential and is intended only for the use of the person to whom it is addressed. If the reader of this message is not the intended recipient (or such recipient's employee or agent), you are hereby notified not to read, distribute or copy the materials attached hereto without the prior written consent of the sender. If you have received this telecopy in error, please notify the sender by telephone call and return the original telecopy by mail.*

*Thank You.*

Fax Rcvd: 6/28/2006 6:34:30 PM

R-0394

OFFICE NOTE
MELISSA GARDNER
06/28/2006
Review of films and dictation of 6-16-06. Per Dr Dinh, he agrees with Cristin's assessment and treatment plan. Patient is to remain off work until therapy completed and is seen in office on 8-4-06. Dr Dinh wants patient to have interdiscal blocks for further diagnosis. Patient notified and agrees with plan.

Document approved by: Stacey Peters    Date: 06/28/2006 17:21

Fax Rcvd: 6/28/2006 6:34:30 PM

R-0395

Jun. 28. 2006  5:38PM    ASSOC UNIVERSITY NEUROSURGEONS        No. 5818    P. 1/3

*ASSOCIATED UNIVERSITY NEUROSURGEONS, SC*
*719 N KUMPF-BLVD SUITE 100*
*PEORIA, IL 61605*

FAX

| DATE: 6-28-06 | #OF PAGES: | FROM: *Stacey RN* |
|---|---|---|
| TO: Robin Hamilton | | Associated University Neurosurgeons |
| CO. | | Ph # (309) 676-0766 |
| FAX # 866-224-4627 | | Fax # (309) 495-6453 |

NAME OF PATIENT:
Melissa Gardner
Claim # A625007022000101

DOCUMENTS BEING SENT:
Medical Records

*NOTICE*

*The information contained in the telecopy may be privileged and/or confidential and is intended only for the use of the person to whom it is addressed. If the reader of this message is not the intended recipient (or such recipient's employee or agent), you are hereby notified not to read, distribute or copy the materials attached hereto without the prior written consent of the sender. If you have received this telecopy in error, please notify the sender by telephone call and return the original telecopy by mail.*

*Thank You.*

Fax Rcvd: 6/28/2006 6:34:30 PM

R-0396

(Page 198 of 427)

Jun. 28. 2006  5:39PM    ASSOC UNIVERSITY NEUROSURGEONS              No. 5818   P. 2/3

06/16/2006

JOHN K. MILLER, MD
7725 N KNOXVILLE AVENUE
PEORIA, IL 61614

RE: MELISSA GARDNER
DOB: **REDACTED**

Dear Dr. MILLER:

MELISSA GARDNER was seen as a hospital follow up today with a chief
complaint of low back pain. She is a 32 y/o female who was seen by us at
Proctor Hospital in March 2006 for low back pain. She had an MRI on
March 14, 2006, which revealed an L4-5 annular, tear. She states that after
prolonged walking she develops burning in her back.  She has since been
through physical therapy as well as other modalities, neuromuscular
stimulator, and pain medication. She has been treated by Dr. Bruce Chien
who performed a series of epidural steroid injections. She had a
discogram, which was positive at the L4-5 level.

Past medical history included hypertension during pregnancy. Review of
systems is negative other than stated above. Current medications include
Lyrica, Nabumetone bid, Tramadol qid, and hydrocodone bid. She is
allergic to aspirin, which causes vomiting. Demerol causes hives and
blister at the injection site. Compazine causes severe nervousness. She has
had a cholecystectomy, a T&A, a D&C for ectopic pregnancy, and cubital
tunnel surgery in 2001.

Family history is positive for degenerative spine disease in her mother. She
is married with children and lives with her family. She works as an MSS at
ATT. She is a college graduate. She has no history of substance abuse. She
smokes ½ pack of cigarettes a day for about 16 years. She averages 2-3
alcoholic beverages per year and 2-3 caffeinated beverages per day.

On physical examination, HEENT are within normal limits. Neck is
supple with no thyromegaly or bruit. Lungs are clear in all lobes. Heart

R-0397

Fax Rcvd: 6/28/2006 6:34:30 PM

Page 2
6/16/06
Re: Melissa Gardner

sounds are regular with regular rate and rhythm. Abdomen is soft and nontender. She denies any urinary incontinence, bowel incontinence, blood in the urine or the stool. On neurological exam, cranial nerves II-XII are grossly intact. She has numbness in the fingers of both hands. She has a recent EMG of the upper and lower extremities. This revealed bilateral mild to moderate denervation of the ulnar nerve of the bilateral elbows distally bilaterally. She also had mild bilateral L4 radiculopathies in the lower extremities. In the upper extremities her strength is +5/5. Sensation is intact to light touch and deep tendon reflexes are +2 in bilateral biceps, triceps and brachioradialis. In the lower extremities, she has +1 reflexes in bilateral patellas and Achilles. Sensation is intact. Strength is 5/5 in the lower extremities. She had increased pain with hyperextension as well as increased pain with side bending to the left.

We recommend she continue with her pain regimen as prescribed by Dr. Chien. We recommend a course of water therapy. We will see her back in 4-6 weeks for reevaluation.

Thank you for allowing us to participate in the patient's care. If we can be of any further assistance, please let us know.

Sincerely,


Cristin Rassi, A.P.N., C.N.S./Dzung H. Dinh, M.D.

CR:dsh

(Page 200 of 427)

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

June 29, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE: Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from 03/20/2006 through 07/18/2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by 07/14/2006. Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

Robin Hamilton
Disability Specialist II
AT&T Integrated Disability Service Center

1717917

Date Recv: 06/29/2006

R-0399

Date Recv: 06/29/2006

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT APPROVAL NOTICE**
**06/29/2006**

---

ATTENTION: HILLARI Y FLEMING          RC: AYJ4D1030

Employee Name: **MELISSA GARDNER**          Employee ID: mf4914

Employee Job Title: **MARKETING SUPPORT**          Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01          Plan: AIT SADBP

First Day Absent: 03/11/2006          First Day of Disability: 03/20/2006

### CLAIM STATUS
➢  Disability Benefits Approved from 03/20/2006 through 07/18/2006

➢  Disability Benefits Denied (if applicable)

➢  Maximum potential for short term disability benefits under the plan: 03/18/2007

### PAY STATUS
➢  Full Pay From:
    03/20/2006 through 04/27/2006
    04/28/2006 through 06/18/2006

If applicable:
➢  **Partial Pay from:**
    **06/19/2006 through 07/18/2006**
➢
➢  Partial Pay Percentage  Yes_ 50% _No_ 60%

### OFFSETS FROM PAY

                    Check if applicable
➢  **Workers' Compensation**
➢  **Social Security**
➢  **State Disability**

### RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS
➢  Medical information supports the following restrictions:

➢  Duration of restrictions/modifications approved from   through

➢  Best estimated return to work full time full duty date: **07/19/2006**

**R-0400**

(Page 202 of 427)

Date Rec'r: 06/29/2006

Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Please be sure to notify the IDSC on the first day your employee returns to work.

Other Important Information:

➢ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.

➢ **Disability Resources**
  o Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
  o AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm

➢ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.

➢ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

Plan Key

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

IDSC Disability Approval Notice Email-Claim-A625007022000101                    Page 1 of 1

**MedManager**

| | |
|---|---|
| **From:** | Hamilton, Robin [RHamilton@sedgwickcms.com] |
| **Sent:** | Thursday, June 29, 2006 11:55 AM |
| **To:** | hf1383@att.com |
| **Subject:** | IDSC Disability Approval Notice Email-Claim-A625007022000101 |

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

6/29/2006

R-0402

Date Recv: 06/29/2006

Date Recv: 01/25/2007

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406; Telephone 866-276-2278; Facsimile 866-224-4627

January 26, 2007

MELISSA GARDNER
124 PUTNAM STREET,
E PEORIA, IL 61611

Re:   Ameritech Sickness and Accident Disability Benefit Plan (SADBP)
      Claim Number: A625007022-0001-01

Dear Ms. GARDNER:

Please be advised that after a careful and thorough review of your request for payment of sickness disability benefits under the Ameritech Sickness and Accident Disability Benefit Plan (SADBP), it has been determined that your claim does not qualify for payment. As a result, benefits are denied for the period of January 19, 2007 to your return to work.

Section 2, paragraph 2.4 of the SADBP defines "disability" as follows:

> " 'Disability' or 'Disabled' during the period of 52 weeks immediately following the Waiting Period shall mean a sickness or injury, supported by objective medical documentation, that prevents the Eligible Employee from performing the duties of his/her last Company or Participating Company-assigned job with or without reasonable accommodation (as determined by the Company or its delegate) or any other job assigned by the Company or Participating Company for which the Eligible Employee is qualified with or without reasonable accommodation (as determined by the Company or its delegate). For the purposes of this Plan, disabilities associated with pregnancy shall be considered disabilities due to sickness."

Our determination to deny benefits is based on a review of the Independent Medical Evaluation (IME) done by Steven Delheimer, M.D. on January 08, 2007 confirming a diagnosis of degenerative disc disease of the lumbar spine requiring various modes of treatment that have included a cervical MRI, a discogram, a lumbar CT scan, a discography, an intradiskal block, epidural steroid injections and pain medications. Dr. Delheimer also noted that your treatment has been appropriate and reasonable; however, based on his physical examination findings your medical condition does not prevent you from performing your sedentary job duties as a Marketing Support Specialist. As such, disability benefits are denied from January 19, 2007 to your return to work date.

Any disability benefits received for the period of January 19, 2007 to your return to work will need to be repaid. You will be contacted by Payroll and /or its representative to discuss repayment of disability benefits received.

02-A-04 letter-23141-2007156302-1.doc 01-06

R-0403

«EE_Name»
January 26, 2007

If you disagree with our determination, you or your authorized representative may appeal the determination by submitting a written appeal within 180 days after you receive this denial notice. Enclosed is a copy of the appeal procedure and the appeal form. In your appeal, please state the reason(s) you believe your claim should not be denied. You may also submit additional medical or vocational information, and any facts, data, questions or comments you deem appropriate for us to give your appeal proper consideration. Your appeal and supporting documentation should be faxed to 1-866-856-5065 or submitted to:

<div align="center">

AT&T IDSC Quality Review Unit
P.O. Box 61568
King of Prussia, PA 19406

</div>

You shall be provided, upon written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim benefits.

"Please note that your file may be supplemented after we respond to your request for relevant documents and such further information will be provided to you upon your future request(s)."

You have a right to bring a lawsuit against the SADBP under Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA) for denied benefits you believe are due to you, but only after you complete the appeal process as enumerated in the enclosed appeal procedures and in the SADBP claim procedures, and your appeal has been denied.

Please contact your supervisor to discuss alternate methods to cover this period of time off and to cover future time off, if you will remain out of the workplace.

Questions regarding your appeal may be referred to the AT&T Integrated Disability Service Center (IDSC) Quality Review Unit at 1-866-276-2278.

Sincerely,


Tan Payton
Disability Specialist
AT&T Integrated Disability Service Center

Date Recv: 01/25/2007

02-A-04 letter-23141-2007156302-1.doc 01-06

(Page 206 of 427)

«EE_Name»
January 26, 2007

## IDSC Quality Review Unit Appeal Form

To appeal the denial of your benefits, please complete this form and return it in the enclosed self addressed envelope within 180 days from your receipt of your original denial letter. If your appeal is not received within 180 days from your receipt of your original denial letter the original denial will be upheld.

### Please attach all pertinent medical information

| Claim Number: A625007022-0001-01 | Social Security Number: **REDACTED** | |
|---|---|---|
| Last Name: GARDNER | First Name: MELISSA | Middle Initial: |
| Street Address 124 PUTNAM STREET, | | |
| City: E PEORIA | State: IL | Zip: 61611 |
| Home Phone: (309)256-9393 | Work Phone: (217)747-7970 | |

Please provide name and phone number of treating physician(s)

| Provider Name: Address: | Phone Number Specialty: |
|---|---|
| Provider Name: Address: | Phone Number: Specialty: |
| Provider Name: Address: | Phone Number: Specialty: |

Please state specifically why you are requesting an appeal of your benefits. Use the back of the form if necessary or attach a letter if additional space is needed.

Do you have additional medical information to submit that is not attached to the form? _____
If yes, please submit additional medical information as soon as reasonably possible.

| Employee Certification: |
|---|
| I hereby certify that the information provided is complete and accurate to the best of my knowledge. |
| Employee Signature:_____  Date:_____ |

Please mail completed form in the enclosed envelope to:

IDSC Quality Review Unit
P.O. Box 61568
King of Prussia, PA 19406
Phone - 866-276-2278
Fax 1-866-856-5065

02-A-04 letter-23141-2007158302-1.doc 01-06

R-0405

(Page 207 of 427)

Date Recv: 01/25/2007

## AT&T Integrated Disability Service Center
As Administered by Sedgwick CMS

### Quality Review Unit
### Appeal Procedures

1. Decisions of the Administrator (referred to as IDSC) to deny or limit a claim for benefits may be appealed and be subject to review by the Quality Review Unit (QRU).

2. You, or your authorized representative, may appeal the IDSC decision in writing to the QRU, either by completing the enclosed appeal form or forwarding a letter.

3. Your written appeal letter or form must be mailed or faxed to the QRU and must be postmarked within 180 days after you receive the IDSC notice of denial of benefits letter. Mail or fax your appeal to:

IDSC Quality Review Unit
PO Box 61568
King of Prussia, PA 19406
Phone – 866-276-2278
Fax – 866-856-5065

4. Your appeal must be in writing and should state as clearly and specifically as possible any facts and/or reasons why you believe the IDSC decision is incorrect. Since you have only one opportunity to appeal the denial of benefits, you should also include any new or additional medical evidence or materials in support of your appeal which you wish the QRU to consider. Such medical evidence or materials must be submitted along with your written statement at the time you file your appeal. If you are including medical evidence in your appeal, you or your treatment provider must submit the following:

- A clear outline of your level of functionality
- A description of how your level of functionality impacts your ability to work and perform your daily activities
- A detailed description of the treatment provider's rationale for your level of functionality
- Clinical documentation that supports the treatment provider's rationale

### Mental Health

- Findings from formal mental status examination including clinical presentation and interaction
- Presenting signs (observations made by the treatment provider during office visits/therapy sessions)
- Dosage of medications if used; response to medications

02-A-04 letter-23141-2007156302-1.doc 01-06

R-0406

(Page 208 of 427)

«EE_Name»
January 26, 2007

Date Recv: 01/25/2007

## Medical Health

- Findings from physical examinations
- Diagnostic test results (i.e. lab results, x-rays, MRI's, etc.)
- Dosage of medications if used; response to medications

For additional information regarding what information your treatment provider needs to submit to support disability benefits refer to your IDSC Guide, page 5.

**IMPORTANT NOTE: A written or verbal notice from you or your authorized representative that you intend to appeal will not be treated as your appeal nor will it stop the 180-day period from running. Your written appeal must be received by the QRU within 180 days from the date you receive the IDSC written denial or you may lose your opportunity to have the QRU review your claim.**

5. You or your authorized representative may examine documents that bear on your claim by making a written request for the documents to the QRU. Such documents could include copies of the plan and/or SPD, medical and other records, and internal rules, guidelines, protocol or other similar criterion relied on in denying your claim.

Requests for copies of the plan and/or SPD should be made in writing to:

AT&T Communications Inc.
P.O. Box 29690
San Antonio, TX 78229

Requests for copies of medical and other records, and internal rules, guidelines, protocol or other similar criterion relied on in denying your claim should be made in writing to:

AT&T Integrated Disability Service Center
P.O. Box 61569
King of Prussia, PA 19406

If you wish your authorized representative to receive copies of medical documents that pertain to your claim, you must first authorize release of the documents by signing and returning with your written request an authorization for release of medical information. Copies of documents you request to examine will be mailed to you or your authorized representative upon receipt of your written request (and a signed authorization for release of medical information, if applicable.)

**IMPORTANT NOTE: If you or your authorized representative wish to examine documents, you should immediately request such documents to allow yourself time for review and preparation of your written appeal within the 180-day time period.**

02-A-04 letter-23141-2007156302-1.doc 01-06

Date Recv: 01/25/2007

«EE_Name»
January 26, 2007

6. When your written appeal letter or form and any additional medical evidence or materials are received, the QRU will begin the appeal review. During the appeal review the QRU is not required to conduct a hearing. You or other authorized representatives are not permitted to present oral testimony.

7. A qualified individual who was not involved in the decision to deny your initial claim will be appointed to decide the appeal. If your appeal is related to clinical matters, the review will be done in consultation with a health care professional with appropriate expertise in the field and who was not involved in the initial determination. The QRU may consult with, or seek the participation of, medical experts as part of your appeal resolution.

8. Unless you are notified in writing that more time is needed, the QRU will review and decide your appeal within 45 days of its receipt of your appeal. If special circumstances require more time to consider your appeal, the QRU may take up to an additional 45 days to reach a decision. If this additional time is needed, the QRU will notify you in writing by both registered and regular mail before the initial 45-day period has expired.

**IMPORTANT NOTE: You may not bring a lawsuit to recover benefits until you have filed an appeal with the QRU and either (a) you have received notice from the QRU that your claim has been denied or (b) you have received no notice from the QRU within 45 days of receipt of your appeal, or, if you were notified that an additional 45 days was needed, within 90 days of receipt of your appeal.**

02-A-04 letter-23141-2007156302-1.doc 01-06

R-0408

Page 1 of 1

Date Recv: 01/25/2007

**MedManager**

| | |
|---|---|
| **From:** | McGrew, Ericka A. [Ericka.McGrew@sedgwickcms.com] |
| **Sent:** | Thursday, January 25, 2007 8:06 PM |
| **To:** | outbound.IDSC |
| **Subject:** | A625007022-0001-01: please send reg/cert |

1/26/2007

R-0409

U.S. Postal Service ™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

1-26-07

*Melissa*     2724955

Street, Apt. No.; or PO Box No.     *Gardner*

City, State, 2044

7006 2760 0003 9947 3135

Date Recv: 01/25/2007

R-0410

(Page 212 of 427)

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Melissa Gardner*
*124 Putnam St*
*E Peoria, IL 61611*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X *Melissa Gardner*  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

*Melissa Gardner*    02-08-07

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7006 2760 0003 9947 3135

Domestic Return Receipt

Date Rec'v: 01/25/2007

R-0411

(Page 213 of 427)

Jun-22-06   12:24   From-Sedgwick CMS                    3123560016          T-168   P.004/004   F-499

# AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447;
Telephone 866-276-2278; Facsimile 866-224-4627

| | |
|---|---|
| PATIENT OF: Dr. Dinh | From: Robin Hamilton |
| Fax Number: 309-495-6427 | Date: June 21, 2006 |
| Employee Name: Melissa Gardner | Pages: |
| Date of Birth: **REDACTED** | ATTN: Jenny |
| Claim number: A625007022 | First date of absence: 03/13/2006 |

☒ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

IDSC Disability Center provides replacement wages or disability benefits for the above claimant. Please provide the following information as soon as possible to document his/her medical status. Your prompt cooperation and response are necessary and appreciated. If you are unable to meet this deadline or have any questions, please call us at the number above. Delay in receiving this information may result in a denial of his/her disability benefits.
*__Please be advised that the claimant is responsible for providing the authorization to release medical information and any charges for the medical records, etc. thereof.__*

Please Forward :

   Please submit a copy of all clinical notes, operative reports and post operative notes from 06/19/2006 thru the present.

1. What symptoms currently prevent her/him from returning to her/his job duties?


2. Please provide any restrictions and limitations that would apply. Our policy provides a transitional work program that would allow the employee to return to work for ½ days, or with reasonable restrictions and\or limitations.   Please include DURATION of restrictions.

3. XX   Estimated Return to Work Date _____

****Confidential Note****
The information contained in this facsimile message may be legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by calling 866-276-2278, and return the original message to us at the address above by the United States Postal Service. SMAART does not pay for medical records it is the responsibility of the employee to provide us with medical documentation supporting their disability. Thank you.

Fax Rcvd: 6/22/2006 1:47:15 PM

R-0412

Jun. 22. 2006  4:36PM    ASSOC UNIVERSITY NEUROSURGEONS          No. 5603    P.  1

## ASSOCIATED UNIVERSITY NEUROSURGEONS, SC
### 719 N KUMPF BLVD  SUITE 100
### PEORIA, IL 61605

## FAX

| DATE: 6-22-06 | #OF PAGES: 1 | FROM: Stacey RN |
|---|---|---|
| TO: Robin Hamilton | | Associated University Neurosurgeons |
| CO. | | Ph # (309) 676-0766 |
| FAX # 866-224-4627 | | Fax # (309) 495-6453 |

*NAME OF PATIENT:*

Melissa Gardner

Claim #   A625007022000101
*DOCUMENTS BEING SENT:*

**ASSOCIATED UNIVERSITY NEUROSURGEONS, S.C.**
719 N. WILLIAM KUMPF BLVD. - SUITE 100
PEORIA, ILLINOIS 61605-2525
Telephone: (309) 676-0766

DATE: 6-22-06

Melissa Gardner                    IS UNDER MY CARE AND

_____ WAS EXAMINED IN MY OFFICE TODAY.

__✓__ SHOULD REMAIN OFF WORK FOR_____ DAYS/WEEKS.

_____ MAY RETURN TO WORK ON _____.

_____ MAY RETURN TO SCHOOL ON _____

_____ SHOULD NOT PARTICIPATE IN PHYSICAL EDUCATION.

COMMENTS: Until next appt. 8-4-06.
Pt. to have water therapy.

Dr. Dinh / S. Peters RN M.D.
PHYSICIAN

The information conta
for the use of the perso
recipient (or such recip
copy the materials atta
received this telecopy n
telecopy by mail.

AUN 111

R-0413

Fax Rcvd: 6/22/2006  5:32:09 PM



**Medical Consultants Network**

January 25, 2007

MCN - National Scheduling Service
901 Boren Avenue, Suite 1400
Seattle, WA 98104-3529
Tel: (800) 636-3926
Fax: (206) 812-6422

Tan Payton
Sedgwick Claims Management Services, Inc.
P.O. Box 61569
King of Prussia, PA 19406

| | | | |
|---|---|---|---|
| Re: | Melisa Gardner | MCN #: | 1-PG4PL |
| Coverage: | Disability-Short Term | Carrier: | Sedgwick Claims Management Services, Inc. |
| Specialty: | Neurological Surgery | Adjuster: | Tan Payton |
| Claim #: | a625007022-0001-01 | | |

Dear Tan Payton,

I have reviewed the Neurological Surgery Independent Medical Evaluation report regarding the above named claimant completed by Steven Delheimer M.D..

I trust you will find this information helpful. If I can be of any further assistance, please do not hesitate to contact me at (800) 636-3926.

Thank you for the referral. I look forward to working with you again in the future.

Sincerely,

Heather Vasquez
Customer Service Representative
Report Review Department

R-0414

Date Recv: 01/29/2007

# STEVEN C. DELHEIMER, M. D.
Neurosurgery

## Innovative Medical Evaluations, LLC

128 Bucklin Street, Suite B
LaSalle, Illinois 61301
Phone (800) 833-0913
Fax    (815) 224-8009
E-mail address:  schedule@imefirst.com

Heather Vasquez
Medical Consultants Network
901 Boren Avenue
Suite 1400
Seattle, WA  98104
Email:  hvasquez@mcn.com

| | |
|---|---|
| RE: | Melissa Gardner |
| Date of Exam: | January 8, 2007 |
| Claim #: | A625007022-0001-01 |
| Employer: | AT & T |
| Carrier: | Sedgwick Claims Management Services, Inc. |

Melissa Gardner was seen for an Independent Medical Evaluation at my Bloomington office on January 8, 2007, at the request of Medical Consultants Network.  It should be noted that no patient/doctor relationship was established at the time of this evaluation.  In my professional judgment, the opinions contained herein are all to a reasonable degree of medical and surgical certainty.

<u>HISTORY OBTAINED FROM THE EXAMINEE:</u>

COMPLAINTS AT THE TIME OF THIS EXAMINATION:
I had the opportunity to evaluate Ms. Gardner on January 8, 2007.  At this time, Ms. Gardner complains of pain involving her low back and both legs.  The pain is lateral in location and is associated with tingling and numbness involving both her toes and her fingertips.  Standing and walking aggravates the pain but lying down will alleviate the pain.  Ms. Gardner states that the back pain is worse than the leg pain.  Overall, she rates the pain at "10 to 15" on a scale of 0 (no pain) to 10 (the worst pain imaginable) without pain medication, but the pain will decrease to 5 or 6/10 with pain medication.

MEDICATION:
Ms. Gardner's current medications include the following –
    1.    Lyrica 75 mg
    2.    Nabumetone 500 mg
    3.    Tramadol 50 mg
    4.    Hydrocodone 7.50/500 mg

Date Recv: 01/29/2007

Medical Consultants Network
Independent Medical Evaluation
   Melissa Gardner
   January 8, 2007
   Page 2

Ms. Gardner took her last dose of medication at 7:00 o'clock this morning, January 8, 2007, and I examined her at approximately 12 noon.

DESCRIPTION OF INJURY:
At the onset of pain, Ms. Gardner was sitting in her chair and merely stood up, at which point she noticed an aching pain in her back. She stated that she thought that she might have slept wrong; however, the pain gradually worsened by the end of the workday and during her drive home from Springfield to East Peoria. The pain occurred acutely on March 9, 2006.

DESCRIPTION OF TREATMENT:
Ms. Gardner states that she presented to OSF PromptCare on March 9, 2006 and then the following day she went to St. Francis Emergency Room. She was then seen at Proctor Emergency Room on March 13, 2006, at which time she was admitted for pain management with Zofran, Norflex, and Depakote. She was also seen in consultation by Dr. Bruce Chien.

She underwent a lumbar MRI on March 14, 2006, which according to Ms. Gardner showed several herniated discs. She has also seen Dr. Dinh for a neurosurgical opinion, and has undergone epidural steroid injections and a discogram. It has been recommended that Ms. Gardner undergo a disc replacement.

OCCUPATIONAL HISTORY:
Ms. Gardner works for SBC Communications, which is now AT&T. Her job is a Marketing Support Specialist, which is primarily a desk job.

MEDICAL RECORD REVIEW:
The following is an abstract of records that were reviewed in conjunction with my evaluation on January 8, 2007. Documents were reviewed from the following providers:

- Bruce B. Chien, M.D. (Internal Medicine and Pain Medicine)
- Dzung H. Dinh, M.D. (Associated University Neurosurgers)
- Proctor Hospital
  - 03/13/2006   Emergency Room
  - 03/13/2006   Robert B. Adams, M.D. (consultation)
  - 03/14/2006   Lumbar MRI with and without contrast
  - 03/15/2006   Epidural Steroid Injection
  - 03/23/2006   Cervical Spine MRI
  - 04/20/2006   Lumbar CT

R-0416

(Page 218 of 427)

Medical Consultants Network
Independent Medical Evaluation
Melissa Gardner
January 8, 2007
Page 3

|  |  |
|---|---|
| 04/20/2006 | L4 & L5 Diskogram |
| 07/24/2006 | L4 & L5 Intradiskal Block & Diskography |

- Saint Francis Medical Center
  04/17/2006    Epidural Steroid Injection
- Richard A. Flores, M.D. (Central Illinois Rehabilitation Associates)

03/13/2006      Proctor Hospital Emergency Room: The claimant reported to the emergency room complaining of low back pain. The history indicated that the claimant reported the pain began the Thursday prior to this date (which would have been 03/09/2006), but denied any specific event or injury. The claimant also indicated that she had been to two different facilities prior to this for treatment in which an x-ray was taken and she was prescribed Skelaxin, Vicodin, Morphine, and Percocet. (None of these records were available for review) This report also indicated that the x-ray taken at Methodist 24 hours prior showed no acute pathology. The claimant was admitted for pain control.

03/13/2006      Proctor Hospital/Inpatient Record -- Robert B. Adams, M.D.: The claimant was seen in consultation for intractable back pain. She stated the pain began when she was at a seminar course working with computers a few days earlier. She rated her pain at a 6/10 (after pain medication in the emergency room) and noted that it increased when her legs were supine. A straight leg raise test was deferred due to the claimant's pain level and muscle spasms. Examination revealed tenderness from the T12 through L4 region. The remaining examination was normal. The claimant was admitted for pain management, given Zofran, Norflex, and Depakote, and a consultation was requested from Dr. Chien.

03/14/2006      Proctor Hospital/Inpatient consultation -- Bruce B. Chien, M.D. (Internal Medicine and Pain Medicine): Examination revealed tenderness at L4 in the midline, a positive straight leg raise bilaterally, right greater than left at 30 and 45 degrees respectively, paraspinous spasm with no radiation. Dr. Chien opined that the claimant was probably suffering from an L4 disc syndrome and a lumbar MRI was ordered.

Date Recv: 01/29/2007

Date Recv: 01/29/2007

Medical Consultants Network
Independent Medical Evaluation
Melissa Gardner
January 8, 2007
Page 4

| | |
|---|---|
| 03/14/2006 | Proctor Hospital; Lumbar MRI Report (with & without contrast): Report dated 03/14/2006 revealed degenerative disc disease at L3-4, L4-5, and L5-S1 with age indeterminate posterior central annular tears of the L3-4 and L4-5 discs. |
| 03/15/2006 | Dzung H. Dinh, M.D. (Associated University Neurosurgeons): Examination revealed right low back pain during her left lower extremity exam, positive straight leg raise bilaterally, right at 25 degrees and left and 30 degrees, strength was 5/5, reflexes were normal and sensation was intact. The claimant was scheduled for an epidural steroid injection, physical therapy was ordered, and Valium was added to her medication regimen for back spasms. |
| 03/15/2006 | Proctor Hospital; Epidural Steroid Injection Operative Report: Report dated 03/15/2006 was authored by Dr. Bruce Chien. The diagnosis listed was herniated L4 nucleus pulposus and the procedure listed was a midline L4 epidural steroid injection. The claimant tolerated the procedure well and noted improvement of her pain. |
| 03/23/2006 | Proctor Hospital; Cervical MRI without contrast: Report dated 03/23/2006 noted the MRI was ordered by Dr. Chien for the diagnosis of right C6 radiculopathy with numbness in the right hand and weakness in the left hand. The reported noted the MRI was negative for herniations or spinal stenosis. |
| 04/03/2006 & 04/04/2006 | Richard A. Flores, M.D. (Central Illinois Rehabilitation Associates): Dr. Chien referred the claimant to Dr. Flores for EMG & Neurosensory testing for C6 radiculopathy and numbness in her hands and toes. The claimant gave a history of low back pain beginning on 03/09/2006 with numbness and tingling of the upper and lower extremities developing within the following few days. She noted that she had lost strength and fine motor control of her hands. The claimant complained of numbness and tingling in her bilateral feet and hands, weakness in her hands, neck pain, and low back pain. Examination revealed equivocal Tinel's for carpal tunnel syndrome and cubital tunnel syndrome in the upper extremities bilaterally and tarsal tunnel syndrome in the lower extremities bilaterally. |

(Page 220 of 427)

Date Recv: 01/29/2007

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 5

EMG testing was consistent with bilateral mild to moderate denervation in the ulnar nerve distribution from the elbow distally and mild bilateral L4 radiculopathies.

Neurosensory Testing of the upper and lower extremities was consistent with moderate to severe bilateral sensory polyneuropathy with beginning axonal loss especially in the lower extremities.

Grip and pinch testing showed marked reduction of grip strength to 56% of expected normal in the right hand and 34% in the left hand, with the predominance of loss in the ulnar innervated muscles rather than the median innervated muscles.

**04/17/2006 &**
**04/18/2006**   Saint Francis Medical Center; Epidural Steroid Injection:  The operative report was dated 04/17/2006 and was authored by Dr. Bruce Chien.  The diagnosis listed was bilateral L4 radiculopathy and left C7 radiculopathy.  The procedure listed was a midline L4 epidural steroid injection.

During the procedure, the claimant had a sense of aching down both buttocks and thighs.  Dr. Chien opined that the claimant likely had intradiskal disease because of her pain pattern and failure to respond to treatment.  A discogram was ordered.  On 04/18/2006, Dr. Chien excused the claimant from work until 05/06/2006.

**04/20/2006**   Proctor Hospital; L4-L5 Diskogram:  Report dated 04/20/2006 revealed concordant 7 out of 10 pain with injection of the L4-L5 disc space and significantly diminished disc turgor at the same level with evidence of penetration of contrast at least into, if not through the annular region posteriorly.

Lumbosacral CT after injection of L4-5 disc with contrast:  Report dated 04/20/2006 revealed evidence of disruption of the L4-L5 disc annulus posteriorly with extension of contrast to the posterior annulus near the midline into the epidural space and also to the left along the left.

**05/03/2006**   Bruce B. Chien, M.D.:  A dictated note to AT&T authored by Dr. Chien indicated that the claimant had a ruptured L4 disc and bilateral lumbar radiculopathy; she could not sit or stand for any period more than about three minutes.  He opined that

Medical Consultants Network
Independent Medical Evaluation
  Melissa Gardner
  January 8, 2007
  Page 6

Date Recv: 01/29/2007

she was completely disabled from all work at the current time. He noted that she was waiting to see Dr. Dinh regarding disc replacement vs. fusion.

06/16/2006 thru
06/28/2006      Dzung H. Dinh, M.D.:   Dr. Dinh recommended that the claimant continue with her current pain medications and try a course of water therapy.   Interdiscal blocks were ordered for further diagnosis and the claimant was continued off work.

07/24/2006      Proctor Hospital; L4 & L5 Intradiskal block and diskography: Report dated 07/24/2006 was authored by Dr. Bruce Chien. Diagnosis listed was L4 & L5 intradiskal pain.
             The claimant was injected into the center one-third zone of the L4 disk space.  A good discal outline was seen with very minimal extravasation into the epidural space.  The claimant was asked to stand and walk and within one minute, she noted her discomfort was much reduced.   Upon returning to the operating bed, her discomfort was gone and she moved much more easily.
             The claimant was injected into the right side of the L5 disk space.  The claimant was again asked to ambulate and noted left buttock and posterior thigh discomfort.   PA and lateral views were taken (no report was available).
             The claimant was injected into the left side of the L3 disk space.  The claimant was again asked to ambulate and after a two minute walk noted that her discomfort had not changed. (It was noted that the image of the L3 disk was of good turgor and without extra discal leak).

08/04/2006      Dzung H. Dinh, M.D.: The claimant's pain was constant at this point, rated at 9/10 with some improvement while in the water, but the pain returned within 30 minutes of discontinuing pool therapy.  Dr. Dinh noted that the claimant had pain relief for 15 minutes after the L4-5 block in July.  Dr. Dinh opined that the claimant was a candidate for an artifical disk replacement surgery.  He stated that he would contact Dr. Chien regarding interim pain management for the claimant with either a trial of a Dorsal Column Stimulator or intrathecal pain pump.

Medical Consultants Network
Independent Medical Evaluation
   Melissa Gardner
   January 8, 2007
   Page 7

08/24/2006 &
09/07/2006       Bruce B. Chien, M.D.: In a letter dictated to Dr. Miller, Dr. Chien stated that the claimant had a known freely ruptured L4 disc without much improvement, that walking was limited to about 100 feet, the claimant had to sleep on her side and that after driving about 15 minutes she noted pain paraspinally on the left side at about the iliac crest. He noted that her examination on 08/24/2006 revealed a positive straight leg raise bilaterally, with the left producing left paraspinal pain at the level of the iliac crest at 45 degrees and the right producing pain in the left buttock at 45 degrees. Dr. Chien opined that he did not wish to proceed with a spinal pump implant as a temporary maneuver and that the DCS was not appropriate for the claimant's distribution of pain. The claimant was instructed to take only two Vicodin per day while awaiting the clinical release of the Charite disc.

        In a letter dictated to AT&T on 09/07/2006, Dr. Chien indicated the claimant had an open L4-5 disc with concordant history and symptoms. He believe the claimant was totally disabled from work due to the fact that she could not sit or stand for any period of time more than three minutes and should not work until she had surgical intervention. He noted that the surgical community had indicated the claimant should wait for the release of the Charite disc. He further opined that the distribution of her pain was not conducive to DCS suppression.

DIAGNOSTIC REVIEW:

I reviewed several diagnostic films. The first was a lumbar MRI dated March 14, 2006, which showed an annular tear at L4-5. This was seen only on the sagittal views.

I also reviewed a cervical MRI, which simply showed mild degenerative disc disease.

Next, I reviewed a lumbar CT scan dated April 20, 2006. That CT scan showed an annular tear at L4-5, which was midline.

Finally, I reviewed a discogram, which was a one level procedure performed on April 20, 2006 at the L4-5 level. The discogram showed chronic degenerative disc disease.

Date Recv: 01/29/2007

(Page 223 of 427)

Date Recv: 01/29/2007

Medical Consultants Network
Independent Medical Evaluation
Melissa Gardner
January 8, 2007
Page 8

NEUROLOGIC EXAMINATION:
Ms. Gardner appeared to be uncomfortable while sitting through the interview process. During the examination, she limits movement of her back, but she has a normal lumbar lordosis. Her straight leg-raising test is negative in a sitting position to 90°. Deep tendon reflexes are equal, symmetrical, and normal at the knees and ankles. She has normal strength, a normal gait, and she can walk on her heels and toes without difficulty.

IMPRESSION:
After obtaining a narrative history, performing a neurologic exam, and reviewing medical records and several diagnostic studies, it is my opinion that Ms. Gardner has degenerative disc disease of her lumbar spine. This opinion is supported by the findings on her diagnostic studies, which revealed an annular tear at the L4-5 level that is midline in location.

CONCLUSION:
Ms. Gardner's history is significant for prior episodes of back pain that lasted anywhere up to a week and then cleared. In my opinion, the changes seen on Ms. Gardner's diagnostic studies appear to be degenerative in nature. Furthermore, Ms. Gardner did not experience any injury per se at the time of her acute onset of pain, but rather she merely experienced pain when she rose from a chair, and then this back pain gradually worsened. When Ms. Gardner stood up from a seated position at work, she was not lifting, twisting, or bending. Therefore, it is my opinion that Ms. Gardner's acute onset of pain in March 2006 is related to her degenerative disc disease and is not an occupational injury.

RECOMMENDATIONS:
In regards to Charite disc replacement, the chances of improvement are reported to be 57%, which is no better than the natural history of the disease itself.

Another approach would be to consider an anterior lumbar fusion or possibly a posterior hemilaminotomy.

Irrespective of what type of treatment Ms. Gardner elects to proceed with, it is my opinion that any medical and/or surgical treatment is for her underlying degenerative disc disease and is not related to her employment at SBC Communications.

Date Recv: 01/29/2007

Medical Consultants Network
Independent Medical Evaluation
   Melissa Gardner
   January 8, 2007
   Page 9

SPECIFIC INTERROGATORIES:

1.    What is your evaluation of Ms. Gardner's medical condition?

Response:   After obtaining a narrative history, performing a neurologic exam, and reviewing medical records and several diagnostic studies, it is my opinion that Ms. Gardner has degenerative disc disease of her lumbar spine. This opinion is supported by the findings on her diagnostic studies, which revealed an annular tear at the L4-5 level that is midline in location.

2.    What is her prognosis?

Response:  Ms. Gardner's prognosis is guarded based on her repeated episodes of low back pain and multilevel involvement of the lumbar discs. In the past, her episodes of back pain have cleared; however, this current episode has remained refractory to significant attempts at conservative management. Although Ms. Gardner has failed to respond to conservative treatment, I am reluctant to recommend any type of surgical intervention given the nature of the changes on her MRI.

3.    Does her treatment plan seem reasonable to date?

Response: After reviewing the medical reports, it is my opinion that Ms. Gardner's treatment and workup has been reasonable; however, I consider her treatment to be related to a pre-existing condition and not related to her occupation. In regards to Charite disc replacement, the chances of improvement are reported to be 57%, which is no better than the natural history of the disease itself.

Another approach would be to consider an anterior lumbar fusion or possibly a posterior hemilaminotomy.

4.    Please comment on Ms. Gardner's activities of daily living.

Response:  Ms. Gardner indicated that standing and walking aggravates the pain but the pain will improve if she lies down. She reports that overall her back pain is worse than the leg pain. Ms. Gardner is also on a combination of Lyrica, Tramadol, Nabumetone, and Hydrocodone to control her pain. Without these medications, she rates the pain at "10 to 15" on a scale of 0 (no pain) to 10 (the worst imaginable pain), but with the medication the pain will decrease to 5 or 6/10.

Medical Consultants Network
Independent Medical Evaluation
  Melissa Gardner
  January 8, 2007
  Page 10

6.    How does Ms. Gardner's medical condition interfere with her ability to perform the essential functions of the Marketing Support Specialist?

Response:  In my opinion, Ms. Gardner's medical condition should not prevent her from working given the sedentary nature of her job; however, the following factors could indirectly interfere:

  1.    By history, the prolonged drive to and from work everyday (East Peoria, IL to Springfield, IL/Springfield to East Peoria).
  2.    The fact that standing and walking exacerbate the pain.
  4.    The only alleviating factor by history is when Ms. Gardner lies down.
  5.    Her current regimen of pain medications.

7.    Please comment on Ms. Gardner's functional abilities.

Response:  Ms. Gardner's job as a marketing specialist is a sedentary position and requires no physical modification in her work duties other than possibly changing positions as needed for comfort measures.

8.    Do Ms. Gardner's symptoms match her functionality and your understanding of her medical condition?

Response:  During the examination, Ms. Gardner appeared to be uncomfortable and she limited any movement of her back.  In my opinion, Ms. Gardner's current symptoms are consistent with the diagnostic findings.

9.    Is Ms. Gardner able to return to her full duty position as a Marketing Support Specialist?

Response:  Ms. Gardner's job as a marketing specialist is a sedentary position and requires no physical modification in her work duties other than possibly changing positions as needed for comfort measures.

10.    If no, please state specific work restrictions and the duration.

Response:  None.

11.    Please specify any accommodations, which may be needed regarding her medical condition.

Response:  One might consider possibly accommodating Ms. Gardner in terms of allowing her to change positions as needed for comfort measures.

Date Recv: 01/29/2007

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 11

12.    Has the claimant reached maximum medical improvement?

Response:  In this case, maximal medical improvement does not apply, as I do not consider the acute onset of pain to be related to an occupational injury.

13.    In your opinion is it appropriate to await the approval of the Charite procedure?  Is this her best option for optimal improvement?

Response:  In regards to Charite disc replacement, the chances of improvement are reported to be 57%, which is no better than the natural history of the disease itself.

Another approach would be to consider an anterior lumbar fusion or possibly a posterior hemilaminotomy.

Irrespective of what type of treatment Ms. Gardner elects to proceed with, it is my opinion that any medical and/or surgical treatment for this acute onset of pain is related to the underlying degenerative disc disease and is not related to her employment at SBC Communications.

The above analysis is based upon the available information at this time, including the history given by the examinee, the medical records, the diagnostic tests provided, and the physical findings.  It is assumed that the material provided is correct.  If more information becomes available at a later date, an additional report may be requested.  Such information may or may not change the opinions rendered in this evaluation.

Thank you for asking me to see Melissa Gardner for an Independent Medical Evaluation.  If you have any further questions or concerns, please do not hesitate to contact me.

           Sincerely,

           *Steven Delheimer, M.D.*

           Steven C. Delheimer, M. D.
           Neurosurgeon
           Consultant

scd/jd
FC: 01-15-2007

Date Recv: 01/29/2007

(Page 227 of 427)

# MCN ®

Medical Consultants Network® "Medical Judgment: Nationwide"

Medical Consultants Network, Inc®.
1200 Sixth Avenue, Suite 1800
Seattle, WA 98101
Tax ID: 91-1286821

# INVOICE

1/23/2007

## Invoice # N47585

| | | |
|---|---|---|
| **ATTN:** | Tan Payton | |
| **CLIENT:** | Sedgwick Claims Management Services, Inc. Tan Payton | |
| **ADDRESS:** | P.O. Box 61569 | |
| | King of Prussia, PA 19406 | |

**CLAIMANT:** Melisa Gardner
**CLAIM #:** a825007022-0001-01
**DATE OF INJURY**

**MCN #:**    1-PG4PL

| DATE OF SERVICE | PROVIDER EXAM ADDRESS | SPECIALTY | DESCRIPTION | AMOUNT |
|---|---|---|---|---|
| 1/8/07 | Dr. Steven Delheimer M.D. 1015 S Mercer Ave Bloomington, IL 61701 | Neurological Surgery | IME | $1,650.00 |
| | | | **INVOICE TOTAL** | **$1,650.00** |

A finance charge of 1% per month (12% per annum) will be assessed on all charges outstanding more than 30 days after the date of this invoice.

Please notify MCN® Accounting at (206) 219-4910 or fax (206) 812-6410 of any discrepancies within 30 days of this invoice.

Please indicate Invoice # N47585 with your payment to:

**Medical Consultants Network, Inc.®**
**1200 Sixth Avenue, Suite 1800**
**Seattle, WA  98101-1128**

**(206) 343-6100**
**(206) 623-4956 Fax**

Date Recv: 01/29/2007

R-0426

Jan 30 2007 10:16PM  Dr. Bruce Chien          309-691-8938          p.1

<div align="center">

**Bruce B. Chien M.D.**
**Diplomate, American Boards of Anesthesiology,**
**Internal Medicine and Pain Medicine**
**5401 N. Knoxville, #212**
**Peoria, IL 61614**
**309-691-8973 fax 309-691-8938**

</div>

January 30, 2007

Tan Payton
AT&T Disability Center

Dear Ms. Payton,

Melissa Gardner is still disabled from work. She has an open L45 disc demonstrated at 4/25/06 discogram and has concordant history and symptoms. On exam today her Straight leg raising is positive on the right at 10 degrees and on the left at 30 degrees. She is unable to arise even from a chair without a 25 pound hand assist. She has to roll to erect from bed.

She should NOT work until she has found surgical intervention. Our local surgical community, now having experienced Phase II clinical trials of the Charite disc. Feels strongly that she should wait for the release of this product. The distribution of her pain is not conducive to Dorsal Column Stimulator suppression. Although she could be fused, I have to defer to our surgical opinion.

She still cannot sit or stand for any period of more than about 3 minutes, which is hardly compatible with the workplace.

Bruce B. Chien, M.D.

By fax to 866-224-4627

Fax Rcvd: 01/30/07 5:16:56 PM

R-0427

(Page 229 of 427)

07/17/2006 4:14:40 PM    SEDGWICK CMS    PAGE 1    OF 2

Fax Rcvd: 7/17/2006 5:14:42 PM

Sedgwick Claims Management Services, Inc.

To:              8662244627
Fax Number:      8662244627

From:            Taylor, Tiffany M.
Fax Number:

Date:            July 17, 2006
Subject:         Medical Request1.doc

Memo:

***CONFIDENTIALITY NOTE***

The information contained in this facsimile message may be legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please notify us immediately by calling the number listed above and return the original message to us at the address above by the United States Postal Service.

R-0428

07/17/2006 4:14:40 PM        SEDGWICK CMS                    PAGE 2    OF 2

AT &T Intregrated Disability Service Center
P.O. Box 61569
King of Prussia, PA 19406
Phone Number: (866) 276-2278        Fax Number: (866) 224-4627

| To: IPMR | From: R. Hamilton |
|---|---|
| Fax Number: 309 692-8673 | Date: July 17, 2006 |
| Company: «Company_Name» | Number of Pages: 1 |
| Phone Number: «Provider_Phone_No» | Claim Number: A625007022-0001-01 |
| RE: GARDNER, MELISSA | Your Reference Number: «Provider_Reference_No» |

[X] URGENT  [ ] FOR REVIEW  [ ] PLEASE COMMENT  [X] PLEASE REPLY  [ ] PLEASE RECYCLE
--→Please fax back today, it is very important to the patients approval .

We are currently managing a claim for Short Term Disability for «EE_Salutation» and find that we are in need of your assistance at this time.

1)  Please provide us with a current diagnosis and the first date your patient was unable to work.

2)  Please provide us with the specific functional limitations preventing your patient from working at this time.

3)  Please provide us with your current treatment plan and an estimated return to work date.

Benefits are pending receipt of this information.  To prevent a financial hardship on «EE_Salutation» we would ask that you reply to this request for information at your earliest convenience.  Please reply to the fax number listed above.

***Confidential Note****
The information contained in this facsimile message may be legally privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited.  If you have received this telecopy in error, please immediately notify us by calling 866-276-2278, and return the original message to us at the address above by the United States Postal Service.  Thank you.

Fax Rcvd: 7/17/2006 5:14:42 PM



## Sedgwick CMS

### AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447; Telephone 866-276-2278; Facsimile 866-224-4627

| | |
|---|---|
| To: Dr. Chein | From: Lou'litha Walls |
| Fax Number: 309-676-5920 | Date: July 18, 2006 |
| Phone Number: | Number of Pages: |
| Patient Name: Melissa Gardner | Claim Number: A625007022-0001-01 |
| D.O.B. **REDACTED** | Your Reference Number: |

☐ URGENT ☐ FOR REVIEW ☐ PLEASE COMMENT ☐ PLEASE REPLY ☐ PLEASE RECYCLE

We are currently managing a claim for Short Term Disability for Ms. Gardner and find that we are in need of your assistance at this time.

***Please fax a copy of Ms. Gardner's office notes from 7.18.06

1) Please provide us with a current diagnosis and the first date she was unable to work.

2) Please provide us with the specific functional limitations preventing your patient from working at this time.

3) Please provide us with your current treatment plan and an estimated return to work date.

Benefits are pending receipt of this information. To prevent a financial hardship on «EE_Salutation» we would ask that you reply to this request for information at your earliest convenience. Please reply to the fax number listed above.

Any charges for the requested records are the responsibility of your patient

****Confidential Note****

The information contained in this facsimile message may be legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by calling 866-276-2278, and return the original message to us at the address above by the United States Postal Service. Thank you.

## MedManager

**From:** Walls, LouLitha C. [lwalls@sedgwickcms.com]
**Sent:** Tuesday, July 18, 2006 12:47 PM
**To:** Connie (Business Fax)
**Subject:** A625007022-0001-01 GARDNER, MELISSA

7/18/2006

Date Recv: 07/18/2006

R-0431

(Page 233 of 427)

**AT&T Integrated Disability Service Center**
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

Date Recv: 07/19/2006

July 19, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE:  Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from 03/20/2006 through 07/30/2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by 07/25/2006.  Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

Robin Hamilton
Disability Specialist II
AT&T Integrated Disability Service Center

1812866

R-0432

(Page 234 of 427)

<div style="text-align:right">Date Recv: 07/19/2006</div>

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT APPROVAL NOTICE**
**07/19/2006**

---

**ATTENTION:** HILLARI Y FLEMING          **RC:** AYJ4D1030

**Employee Name: MELISSA GARDNER**          Employee ID: **mf4914**

Employee Job Title: **MARKETING SUPPORT**          Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01          Plan: AIT SADBP

First Day Absent: 03/11/2006          First Day of Disability: 03/20/2006

### CLAIM STATUS
➢ Disability Benefits Approved from 03/20/2006 through 07/30/2006

➢ Disability Benefits Denied (if applicable)

➢ Maximum potential for short term disability benefits under the plan: 03/18/2007

### PAY STATUS
➢ Full Pay From:
  03/20/2006 through 04/27/2006
  04/28/2006 through 06/18/2006

If applicable:
➢ **Partial Pay from:**
  **06/19/2006 through 07/30/2006**
➢
➢ Partial Pay Percentage  Yes_ 50% _No_ 60%

### OFFSETS FROM PAY

<div style="text-align:center">Check if applicable</div>

➢ Workers' Compensation
➢ Social Security
➢ State Disability

### RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS
➢ Medical information supports the following restrictions:

➢ Duration of restrictions/modifications approved from    through

➢ Best estimated return to work full time full duty date: **07/31/2006**

R-0433

Date Recv: 07/19/2006

Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Please be sure to notify the IDSC on the first day your employee returns to work.

**Other Important Information:**

➢ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.

➢ **Disability Resources**
  o Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
  o AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm

➢ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.

➢ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

**Plan Key**

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

IDSC Disability Approval Notice Email-Claim-A625007022000101                    Page 1 of 1

**MedManager**

**From:**    Hamilton, Robin [RHamilton@sedgwickcms.com]
**Sent:**    Wednesday, July 19, 2006 9:12 AM
**To:**      hf1383@att.com
**Subject:**  IDSC Disability Approval Notice Email-Claim-A625007022000101

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

7/19/2006

R-0435

**E-FILED**
Wednesday, 23 July, 2008  04:02:42 PM
Clerk, U.S. District Court, ILCD

Date Recv: 07/27/2006

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447;
Telephone 866-276-2278; Facsimile 866-224-4627

| | |
|---|---|
| PATIENT OF: Dr. Chein | From: Robin Hamilton |
| Fax Number: 309-671-2950 | Date: July 27, 2006 |
| Employee Name: Melissa Gardner | Pages: |
| Date of Birth: **REDACTED** | ATTN: Connie IPMR |
| | First date of absence: 03/13/2006 |

[x] URGENT   [ ] FOR REVIEW   [ ] PLEASE COMMENT   [ ] PLEASE REPLY   [ ] PLEASE RECYCLE

IDSC Disability Center provides replacement wages or disability benefits for the above claimant. Please provide the following information as soon as possible to document his/her medical status. Your prompt cooperation and response are necessary and appreciated. If you are unable to meet this deadline or have any questions, please call us at the number above. Delay in receiving this information may result in a denial of his/her disability benefits.
*Please be advised that the claimant is responsible for providing the authorization to release medical information and any charges for the medical records, etc, thereof.*

1. Please submit copies of all clinical notes from 7/18/06 thru present to support this employee's disability.

2. Please provide any restrictions and limitations that would apply.  Our policy provides a transitional work program that would allow the employee to return to work for ½ days, or with reasonable restrictions and\or limitations.   Please include DURATION of restrictions.

3. Estimated Return to Work Date _____

****Confidential Note****
The information contained in this facsimile message may be legally privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this telecopy is strictly prohibited.  If you have received this telecopy in error, please immediately notify us by calling 866-276-2278, and return the original message to us at the address above by the United States Postal Service.  SMAART does not pay for medical records it is the responsibility of the employee to provide us with medical documentation supporting their disability. Thank you.

R-0436

Request for medical and recommendation for restrictions and limitation and duration for M ...    Page 1 of 1

Date Recv: 07/27/2006

## MedManager

| | |
|---|---|
| **From:** | Hamilton, Robin [RHamilton@sedgwickcms.com] |
| **Sent:** | Thursday, July 27, 2006 2:47 PM |
| **To:** | Dr Taha (Business Fax) |
| **Subject:** | Request for medical and recommendation for restrictions and limitation and duration for Monica Jenkins |

<<AT&T request for medical information form.doc>>

Robin Hamilton
Short Term Disability Benefits Specialist-II
AT&T Integrated Disability Service Center
866-276-2278 Toll Free
866-224-4627 Fax

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

7/27/2006

R-0437

Jul 28 06 08:41a    DR B CHIEN              3096918938              p.1

# *FAX COVER SHEET*

*Bruce B. Chien, M.D. P.C.*
*Proctor Professional Building*
*5401 N. Knoxville Avenue, Suite 212*
*Peoria, Illinois 61614*
*Phone: (309) 691-8973  Fax: (309) 691-8938*

*To:*

*Name:* Ms. L Walls        *Company:* AT & T Disability Center

*Fax Number:* (866) 224-4627

*From:*

*Name:* Nina            *Company:*

*Date:* 07-28-06        *Time:* 8:30 A.M.

*TRANSMISSION:*
*This cover letter plus* 2 *pages attached.*

*REMARKS:* Re Melissa Gardner - Medical
Records Sent per patient's request.

*The information contained in this facsimile message is privileged and confidential*
*information intended only for the use of the individual or entity named above. If the*
*reader of this message is not the intended recipient, you are hereby notified that any*
*dissemination, distribution or copying of this communication is strictly prohibited. If*
*you have received this communication in error, please notify us immediately.*

*Please advise us of any difficulties in receiving this transmission by calling the number*
*listed above.*

*REPLY REQUIRED? Yes ___  No ___  URGENT? Yes ___  No ___*

Fax Rcvd: 7/28/2006 9:26:49 AM

R-0438

Jul 28 06 08:41a    DR B CHIEN            3096918938            p.2

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL 61614

DATE OF OPERATION:        07/24/2006

SURGEON:                  BRUCE B. CHIEN, MD

DIAGNOSIS:                L4 AND L5 INTRADISKAL PAIN.

OPERATION:                L4 AND L5 INTRADISKAL BLOCK AND DISKOGRAPHY.

INDICATION: Melissa Gardner was seen on July 18, 2006, again at the request of Dr. Dinh. She has a known freely ruptured L4 disk noted on L4-5 diskogram on April 20, 2006, she had not improved much at all. Walking is pretty much limited to 200 feet. She sleeps on her side, can drive for about 15 minutes before she has pain in the left buttock. She does continue to work at a phone company but only half-time.

MEDICATIONS: Vicodin 7.5/500.

ALLERGIES: DEMEROL leads to blisters, ASA leads to nausea and vomiting, and COMPAZINE leads to anxiety.

SOCIAL HISTORY: Wants to smoke.

FAMILY HISTORY: Everyone in the family has back pain.

REVIEW OF SYSTEMS: Otherwise negative.

PHYSICAL EXAMINATION:
VITAL SIGNS: Unremarkable. She is 5 feet 8 inches and 210 pounds.
HEENT: Pupils equal, round, and reactive to light and accommodation. Visual fields are full. Fundi are benign.
CHEST: Clear.
CARDIOVASCULAR: Unremarkable.
ABDOMEN: Liver is 8 cm. Spleen is not palpable.
PELVIC: SIs are very tender on the left, somewhat tender on the right. Straight leg raising is positive on the left with pain in the midline and paraspinal flank area just above the pelvic crest on the left and with prolonged sitting and straight leg raising at 60 degrees on the left and right. She has discomfort in the left buttock and left posterior thigh. Sensation is normal. Deep tendon reflexes are 2+.

PROCEDURE: Ancef 1 g IV was given. The patient was taken to the operating room and prepped in the prone position on 5 pillows. The lower back was draped and after insertion of a through the skin introducer needle, a #22 gauge 5-inch needle was passed en fasse in a 30-degree paracoronal oblique view into the center one-third zone of the L4 disk. Then 2 mL containing 120 mcg/mL of Ancef and 0.25% bupivacaine, 30% Omnipaque 180 were mixed and injected. A good discal outline was seen with very minimal extravasation

GARDNER, MELISSA A     33Y F
860011391   DOB:                          DT:ORRPTIM
AC#:6044749   000 REDACTED

OPERATIVE REPORT
                                          PAGE 1

Fax Rcvd: 7/28/2006 9:26:49 AM

Jul 28 06 08:41a    DR B CHIEN              3096918938              p.3

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL 61614

into the epidural space on the initial view of the patient. The needle was withdrawn. The patient was asked to stand and walk, and in the course of a 1-minute walk, the patient noted that her discomfort in the midline and just in the left flank was much much reduced. By the time the patient climbed back onto the operating bed, her discomfort was gone and she moved much more easily. The L5 was then prepared in an identical fashion and approached from the right side. An additional 2 identical milliliters was injected, this with a fresh introducer and fresh 22-gauge 5-inch needle. The needle was withdrawn. The patient asked to ambulate again and during this 1-minute ambulation, the left buttock and the posterior thigh discomfort remitted. PA and lateral views of course had been saved. The patient was returned again for the L3 which was performed from the left side in an identical fashion. The patient after a 2-minute wait, was then walked once again and she noted that her discomfort had not changed. Anyway the image of the L3 disk was of good turgor and without extra discal leak. The patient was taken to the ASU in good condition, and given Ancef to take for the balance of the week at 500 mg q.i.d. x7 days.

She will return to see Dr. Dinh in approximately 2 weeks' time.

Thanks for this opportunity to participate in the patient's care.

BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
D:    07/24/2006 09:19
T:    07/25/2006 00:01
P:    07/27/2006 13:56
540014/31201/32446
cc:  JOHN K MILLER, MD
cc:  DZUNG H DINH, MD

Fax Rcvd: 7/28/2006 9:26:49 AM

GARDNER, MELISSA A        33Y_F
860011391    DOB:        REDACTED
AC#:6044749  000:                        DT:QRRPTIM

OPERATIVE REPORT

PAGE  2

Date Recv: 07/31/2006

### AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

July 31, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE:  Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from 03/21/2006 through 08/06/2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by 08/02/2006.  Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

Robin Hamilton
Disability Specialist II
AT&T Integrated Disability Service Center

1883149

Date Recv: 07/31/2006

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT APPROVAL NOTICE**
**07/31/2006**

---

**ATTENTION:** HILLARI Y FLEMING          RC: AYJ4D1030

Employee Name: **MELISSA GARDNER**          Employee ID: **mf4914**

Employee Job Title: **MARKETING SUPPORT**          Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01          Plan: AIT SADBP

First Day Absent: 03/11/2006          First Day of Disability: 03/20/2006

*CLAIM STATUS*
➢ Disability Benefits Approved from 03/20/2006 through 08/06/2006

➢ Disability Benefits Denied (if applicable)

➢ Maximum potential for short term disability benefits under the plan: 03/18/2007

*PAY STATUS*
➢ Full Pay From:
   03/20/2006 through 04/27/2006
   04/28/2006 through 06/18/2006

If applicable:
➢ **Partial Pay from:**
   **06/19/2006 through 08/06/2006**
➢
➢ Partial Pay Percentage Yes_ 50% _No_ 60%

*OFFSETS FROM PAY*

**Check if applicable**
➢ **Workers' Compensation**
➢ **Social Security**
➢ **State Disability**

*RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*
➢ Medical information supports the following restrictions:

➢ Duration of restrictions/modifications approved from    through

➢ Best estimated return to work full time full duty date: 08/07/2006

R-0442

(Page 244 of 427)

Date Recv: 07/31/2006

Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Please be sure to notify the IDSC on the first day your employee returns to work.

<u>Other Important Information:</u>
- ➤ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
- ➤ **Disability Resources**
  - o Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
  - o AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
- ➤ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.
- ➤ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

<u>Plan Key</u>

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

IDSC Disability Approval Notice Email-Claim-A625007022000101                Page 1 of 1

Date Recv: 07/31/2006

## MedManager

| | |
|---|---|
| **From:** | Hamilton, Robin [RHamilton@sedgwickcms.com] |
| **Sent:** | Monday, July 31, 2006 3:45 PM |
| **To:** | hf1383@att.com |
| **Subject:** | IDSC Disability Approval Notice Email-Claim-A625007022000101 |

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

7/31/2006

(Page 246 of 427)

Date Recv: 08/07/2006

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT DENIAL NOTICE**
**08/07/2006**

---

**Attention: HILLARI Y FLEMING**                    RC: AYJ4D1030

**Employee Name: MELISSA GARDNER**              Employee ID: mf4914

Employee Job Title: MARKETING SUPPORT SPEC       Employee NCS Date: 02/12/2001
(SRL) [IBEW21]

IDSC Claim #: A625007022-0001-01                 Plan: AIT SADBP

First Day Absent: **03/11/2006**                 First Day of Disability: **03/20/2006**

*CLAIM STATUS*

➢     Disability Benefits Approved from **03/20/2006** through **08/06/2006**

➢     **Disability Benefits Denied (if appropriate) 08/07/2006 through return to work**

➢     Maximum potential short term disability benefits under the plan: 03/18/2007

Reason for Denial    ☐   : Absence did not satisfy 7 day Waiting Period
                 ☒   : **Failure to submit additional medical information for review**
                 ☐   : **Medical information submitted was not sufficient to support the claim for disability benefits based on the provisions of the Plan**
                 ☐   : Employee not eligible for benefits
                 ☐   : Performing activities that are inconsistent with his/her disability
                 ☐   : Traveling without permission
                 ☐   : Other:

➢   Date claimant contacted regarding the disability benefit denial: 08/07/2006
➢
➢   Estimated appeal expiration date: 02/02/2007

The plan provides an employee one-hundred and eighty (180) days to appeal the disability benefit denial determination.

        Please be sure to notify the IDSC on the first day your employee returns to work.

*PAY STATUS*
➢   Full Pay From:
      03/20/2006 through 04/27/2006
      04/28/2006 through 06/18/2006

Partial Pay (If applicable):

R-0445

(Page 247 of 427)

Date Recv: 08/07/2006

> **Partial Pay from:**
> 06/19/2006 through 08/06/2006

Percentage of Partial Pay:  Yes 50%  No 60%

**Other Important Information:**
> **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone.  If you do not handle disability issues for this employee, please forward to the appropriate person.  If Webphone is incorrect, update with the correct supervisory information.
> **Disability Resources**
>     o  Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
>     o  AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
> **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com.  It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.
> **Denied Disability Process** - For additional information in managing an employee's absence in the event that s/he is denied disability the supervisor may refer to the Denied Disability Process which is located on the Attendance Management web site (http://hrweb01.AT&T.com/attmgmt/login.asp) and the HR Reference Portal (https://ebiz2.AT&T.com/hrprefportal/).  It is recommended that you consult with Human Resources, Labor Relations, and Legal prior to making employment decisions for an employee who has been denied disability benefits.

**Plan Key**

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

Exhibit x

**RESTRICTED PROPRIETARY INFORMATION**

hfl383@att.com

IDSC Disability Denial Notice E-Mail-Claim-A625007022000101                Page 1 of 1

**MedManager**

**From:**    Hamilton, Robin [RHamilton@sedgwickcms.com]
**Sent:**    Monday, August 07, 2006 7:10 PM
**To:**      hf1383@att.com
**Subject:** IDSC Disability Denial Notice E-Mail-Claim-A625007022000101

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

8/7/2006

Date Recvr: 08/07/2006

(Page 249 of 427)

Aug 10 06 07:51a    DR B CHIEN                3096918938                    p.1

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

August 9, 2006

Robin Hamilton
AT&T Disability Center
P.O. Box 61569 King of Prussia, PA 19406

In r.e: Melissa Gardner

# REDACTED

Robin,

My understanding of Melissa Gardner's disability centers on the need for disc replacement. The underlying condition will NOT change in a year, a month or a week. Two week visits are completely abusive and unnecessary to confirm disability.

I understand that you will do what AT&T policy requires you to do. Just beware that this could be construed as abusive.

Regards,

Bruce B. Chien, M.D.

By fax to 866-224-4627

Fax Rcvd: 8/10/2006 8:35:19 AM

R-0448

Date Recv: 08/10/2006

# AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406; Telephone 866-276-2278; Facsimile 866-224-4627

August 10, 2006

Melissa Gardner
124 Putnam Street
East Peoria, IL 61611

Re:   Ameritech Sickness and Accident Disability Benefit Plan (SADBP)
      Claim Number: A625007022-0001-01

Dear Ms. Gardner:

Please be advised that after a careful and thorough review of your claim for sickness disability benefits under the Ameritech Sickness and Accident Disability Benefit Plan (SADBP), it has been determined that you not qualify for further payment.  As a result, benefits are denied for the period of August 7, 2006 through return to work.

Section 5, paragraph 5.7 of the SADBP provides in relevant part:

> "If an Eligible Employee fails to provide proper information respecting his or her condition, fails to furnish objective medical documentation of such condition or fails to follow a medically credible treatment plan, reasonably designed (where practicable) to effect the Eligible Employee's recovery and return to work, plan benefits are not payable."

The AT&T Integrated Disability Service Center received medical information from Dr. Bruce B. Chien, on july 31, 2006, which confirmed your disability through August 6, 2006. Telephone calls were made to you, Dr. Chien and Dr. Dihn on August 2, 2006 and August 4, 2006. However, to date no additional information has been received to support continued sickness disability benefits beyond August 6, 2006.

Any disability benefits received for the period of August 7, 2006 through return to work will need to be repaid.  You will be contacted by Payroll and/or its representative to discuss repayment of disability benefits received.

If you disagree with our determination, you or your authorized representative may appeal the determination by submitting a written appeal within 180 days after you receive this denial notice. Enclosed is a copy of the appeal procedure and the appeal form.  In your appeal, please state the reason(s) you believe your claim should not be denied.  You may also submit additional medical or vocational information, and any facts, data, questions or comments you deem appropriate for us to give your appeal proper consideration.  Your appeal and supporting documentation should be faxed to 1-866-856-5065 or submitted to:

02-A-03 AIT Denial No Add Med 02 (5/21/04) 01-08

(Page 251 of 427)

Melissa Gardner
August 10, 2006

Date Recv'r: 08/10/2006

AT&T IDSC Quality Review Unit
P.O. Box 61568
King of Prussia, PA 19406

You shall be provided, upon written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim benefits.

"Please note that your file may be supplemented after we respond to your request for relevant documents and such further information will be provided to you upon your future request(s)."

You have a right to bring a lawsuit against the SADBP under Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA) for denied benefits you believe are due to you, but only after you complete the appeal process as enumerated in the enclosed appeal procedures and in the SADBP claim procedures, and your appeal has been denied.

Please contact your supervisor to discuss alternate methods to cover this period of time off and to cover future time off, if you will remain out of the workplace.

Questions regarding your appeal may be referred to the AT&T Integrated Disability Service Center (IDSC) Quality Review Unit at 1-866-276-2278.

Sincerely,


Robin Hamilton
Disability Specialist-II
AT&T Integrated Disability Service Center

02-A-03 AIT Denial No Add Med 02 (5/21/04) 01-06

**R-0450**

(Page 252 of 427)

A625007022-0001-01 Melissa gardner

Page 1 of 1

Date Recv: 08/10/2006

## MedManager

| | |
|---|---|
| **From:** | Vlasic, Thomas [tvlasic@sedgwickcms.com] |
| **Sent:** | Thursday, August 10, 2006 12:32 PM |
| **To:** | outbound.IDSC |
| **Subject:** | A625007022-0001-01 Melissa gardner |

Please mail denial letter certified and regular mail.

Thomas P. Vlasic
Business Unit Manager
AT&T Integrated Disability Service Center
As Administered by Sedgwick, CMS
tvlasic@sedgwickcms.com
Phone: 312-356-1843
Fax: 866-224-4627 .

**From:** Hamilton, Robin
**Sent:** Thursday, August 10, 2006 10:08 AM
**To:** Vlasic, Thomas
**Subject:** AIT Denial No Add Med 02 05.a625007022-0001-01 Melissa gardner.doc

<<AIT Denial No Add Med 02 05.a625007022-0001-01 melissa gardner.doc>>

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

8/10/2006

(Page 253 of 427)

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Melissa Gardner
124 Putnam St.
East Peoria IL
61611

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
8-1-06

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)

7006 0100 0002 6441 0777

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

Date Recv: 08/10/2006

R-0452

(Page 254 of 427)

Aug. 10. 2006  2:34PM    ASSOC UNIVERSITY NEUROSURGEONS             No. 7590   P. 1/2

*ASSOCIATED UNIVERSITY NEUROSURGEONS, SC*
*719 N KUMPF BLVD  SUITE 100*
*PEORIA, IL 61605*

FAX

| DATE:<br>8-10-06 | #OF PAGES:<br>2 | FROM:<br>*Stacey RN* |
|---|---|---|
| TO: *Robin Hamilton* | | Associated University Neurosurgeons |
| CO. | | Ph # (309) 676-0766 |
| FAX #  866-224-4627 | | Fax # (309) 495-6453 |

*NAME OF PATIENT:*

*Melissa Gardner*
*Claim # A 623007022000101*

*DOCUMENTS BEING SENT:*

*Medical Records*

NOTICE

*The information contained in the telecopy may be privileged and/or confidential and is intended only for the use of the person to whom it is addressed. If the reader of this message is not the intended recipient (or such recipient's employee or agent), you are hereby notified not to read, distribute or copy the materials attached hereto without the prior written consent of the sender. If you have received this telecopy in error, please notify the sender by telephone call and return the original telecopy by mail.*

*Thank You.*

Fax Rcvd:  08/10/06 3:31:13 PM

R-0453

08/04/2006


JOHN K. MILLER, MD
7725 N KNOXVILLE AVENUE
PEORIA, IL 61614

RE: MELISSA GARDNER
DOB: **REDACTED**
Dear Dr. MILLER:

I had the pleasure of seeing MELISSA GARDNER for follow up today regarding her chronic back pain. Her pain is constant and rated 9/10 with some improvement while in the water. The pain returns after 30 minutes of being out of the pool therapy. Currently she is taking Vicodin ES, Relafen, Lyrica and Tramadol.

She had an intradiscal block by Dr. Chien on July 24 with pain relief for 15 minutes after L4-5 block.

At this point it appears that her pain may be coming from the L4-5 disc space however her insurance company will not approve artificial disc replacement surgery at this point. We are a clinical trial center for Aesculap lumbar artificial disc trial starting next year. In the meantime I will contact Dr. Chien to see if he can provide her some interim pain management with either a DCS trial or intrathecal pain pump.

I greatly appreciate the opportunity to be involved in the care of this patient. If I can be of any further assistance, please let me know.

Sincerely,



Dzung H. Dinh, M.D., M.B.A.

DHD:dsh

R-0454

**AT&T Integrated Disability Service Center**
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

Date Recv: 08/15/2006

August 15, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE: Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from 03/20/2006 through 08/29/06.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by 08/24/2006. Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

Robin Hamilton
Disability Specialist II
AT&T Integrated Disability Service Center

1971456

R-0455

(Page 257 of 427)

Aug 25 06 09:16a    DR B CHIEN                3096918938                p.1

# *FAX COVER SHEET*

**Bruce B. Chien, M.D. P.C.**
*Proctor Professional Building*
*5401 N. Knoxville Avenue, Suite 212*
*Peoria, Illinois 61614*
*Phone: (309) 691-8973  Fax: (309) 691-8938*

*To:* Robin Hamilton

*Name:* Melissa Gardner  *Company:* A J + J Disability Ctr

*Fax Number:* (866) 224-4627

*From:*

*Name:* Nancy          *Company:*

*Date:* 8-25-06      *Time:* 9:00 AM

*TRANSMISSION:*
*This cover letter plus* 2 *pages attached.*

*REMARKS:* Re: Melissa Gardner -

*The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately.*

*Please advise us of any difficulties in receiving this transmission by calling the number listed above.*

*REPLY REQUIRED?  Yes ___  No ___    URGENT?  Yes ___  No ___*

Fax Rcvd: 8/25/2006 10:01:33 AM

R-0456

(Page 258 of 427)

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

August 24, 2006

Dr. John Miller
Methodist on Knoxville

Dear John:

Melissa Gardner was in the office for a re-evaluation. Her situation is unchanged; she has a known freely ruptured L4 disc noted at L45 discogram 4/230/06, and noted by myself fluoroscopically on diagnostic L5 and then L4 disc injection. She hasn't improved much at all. Walking is limited to about 100 feet (from the car to the parking lot). She sleeps on her side, drives about 15 minutes and at that point has pain paraspinally on the left at about the iliac crest.

Medications: Vicodin 7.5/500 twice per day
Allergies: Demerol, ASA, Compazine.
SH: wants to smoke
FH: Everyone in the family has back pain.
ROS: Otherwise negative.

Physical Exam: Her gait is antalgic. She minimizes left sided weight bearing time. BP is 130/68, HR 70 RR 16. She's 68 and 215 pounds.. PERRLA Fs are afull, fundi are benign. Chest is clear, Cv is unremarkable. Liver is 8 cms, Spleen is nonpalpable. SI jiotns are benign. SLR is positive on the left at 45 degrees with left paraspinal pain at the level of the iliac crest. The right side at 45 degres provokes pain in the left buttock. Sensation is normal. DTRs are 2+

Impression: Unchanged. She's disabled L4 discogenic pain (left paraspinal) L5 discogenic pain (left buttock).

I've spent a good bit of time discussing why we don't' want to do a spinal pump implant as a "temporary" maneuver, and that the DCS is not appropriate for her distribution of pain. Chronic maintenance narcotics only will lead to escalation. She understands this and is complying with two Vicodins per day, awaiting the clinical realease of the Charite disc.

Best regards,

*Bruce B Chien MD*

Bruce B. Chien, M.D.

Fax Rcvd: 8/25/2006 9:59:55 AM

**AT&T Integrated Disability Service Center**
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

August 30, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE: Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from March 30, 2006 through September 5, 2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by September 5, 2006. Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

Mark Debus
Disability Specialist III
AT&T Integrated Disability Service Center

Date Recv: 08/30/2006

2063328

R-0458

(Page 260 of 427)

Date Recv: 08/30/2006

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT APPROVAL NOTICE**
**08/30/2006**

---

ATTENTION: HILLARI Y FLEMING                    RC: AYJ4D2060

Employee Name: **MELISSA GARDNER**              Employee ID: **mf4914**

Employee Job Title: **MARKETING SUPPORT**       Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01               Plan: AIT SADBP

First Day Absent: 03/11/2006                   First Day of Disability: 03/20/2006

### *CLAIM STATUS*
➢ Disability Benefits Approved from 03/20/2006 through 09/05/2006

➢ Disability Benefits Denied (if applicable)

➢ Maximum potential for short term disability benefits under the plan: 03/18/2007

### *PAY STATUS*
➢ Full Pay From:
 03/20/2006 through 04/27/2006
 04/28/2006 through 06/18/2006

If applicable:
➢ **Partial Pay from:**
 **06/19/2006 through 09/05/2006**
➢
➢ Partial Pay Percentage  Yes_ 50% _No_ 60%

### *OFFSETS FROM PAY*

Check if applicable
➢ **Workers' Compensation**
➢ **Social Security**
➢ **State Disability**

### *RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*
➢ Medical information supports the following restrictions:

➢ Duration of restrictions/modifications approved from   through

➢ Best estimated return to work full time full duty date: 08/30/2006

R-0459

Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Please be sure to notify the IDSC on the first day your employee returns to work.

**Other Important Information:**

➢ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.

➢ **Disability Resources**
- o Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
- o AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm

➢ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.

➢ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

**Plan Key**

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

Date Recv: 08/30/2006

## MedManager

| | |
|---|---|
| **From:** | Debus, Mark P. [mdebus@sedgwickcms.com] |
| **Sent:** | Wednesday, August 30, 2006 4:41 PM |
| **To:** | hf1383@att.com |
| **Subject:** | Benefits approval notice - MELISSA GARDNER - A625007022-0001-01 |

Date Recv: 08/30/2006

R-0461

Date Recv: 09/06/2006

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT DENIAL NOTICE**
09/06/2006

---

Attention: HILLARI Y FLEMING                    RC: AYJ4D2060

Employee Name: **MELISSA GARDNER**              Employee ID: **mf4914**

Employee Job Title: MARKETING SUPPORT SPEC       Employee NCS Date: 02/12/2001
(SRL) [IBEW21]

IDSC Claim #: **A625007022-0001-01**             Plan: AIT SADBP

First Day Absent: **03/11/2006**                 First Day of Disability: **03/20/2006**


*CLAIM STATUS*

➢  Disability Benefits Approved from **03/20/2006** through **09/05/2006**

➢  Disability Benefits Denied (if appropriate) 09/06/2006 THROUGH RETURN TO
   WORK

➢  Maximum potential short term disability benefits under the plan: 03/18/2007

Reason for Denial   ☐ : Absence did not satisfy 7 day Waiting Period
                    ☐ : Failure to submit additional medical information for review
                    ☒ : Medical information submitted was not sufficient to support the claim
                        for disability benefits based on the provisions of the Plan
                    ☐ : Employee not eligible for benefits
                    ☐ : Performing activities that are inconsistent with his/her disability
                    ☐ : Traveling without permission
                    ☐ : Other:

➢  Date claimant contacted regarding the disability benefit denial: 09/06/2006
➢
➢  Estimated appeal expiration date: **03/07/2007**

The plan provides an employee one-hundred and eighty (180) days to appeal the disability
benefit denial determination.

          Please be sure to notify the IDSC on the first day your employee returns to
work.

*PAY STATUS*
➢  Full Pay From:
   **03/20/2006 through 04/27/2006**
   **04/28/2006 through 06/18/2006**

Partial Pay (If applicable):

R-0462

Date Recv: 09/06/2006

> **Partial Pay from:**
>     06/19/2006 through 09/05/2006

Percentage of Partial Pay: Yes 50% No 60%

**Other Important Information:**
> **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
> **Disability Resources**
>     o   Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
>     o   AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
> **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.
> **Denied Disability Process** - For additional information in managing an employee's absence in the event that s/he is denied disability the supervisor may refer to the Denied Disability Process which is located on the Attendance Management web site (http://hrweb01.AT&T.com/attmgmt/login.asp) and the HR Reference Portal (https://ebiz2.AT&T.com/hrgrefportal/). It is recommended that you consult with Human Resources, Labor Relations, and Legal prior to making employment decisions for an employee who has been denied disability benefits.

**Plan Key**

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

Exhibit x
              **RESTRICTED PROPRIETARY INFORMATION**


hfl383@att.com

IDSC Disability Denial Notice E-Mail-Claim-A625007022000101                    Page 1 of 1

## MedManager

**From:**    Hamilton, Robin [RHamilton@sedgwickcms.com]
**Sent:**    Wednesday, September 06, 2006 5:51 PM
**To:**      hf1383@att.com
**Subject:** IDSC Disability Denial Notice E-Mail-Claim-A625007022000101

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

9/6/2006

Date Recv: 09/06/2006

R-0464

Sep 07 06 09:15a    DR B CHIEN              3096918938            p.1

Fax Rcvd: 9/7/2006 9:58:20 AM

# *FAX COVER SHEET*

*Bruce B. Chien, M.D. P.C.*
*Proctor Professional Building*
*5401 N. Knoxville Avenue, Suite 212*
*Peoria, Illinois 61614*
*Phone: (309) 691-8973  Fax: (309) 691-8938*

*To:* Loilitha Walls

*Name:* Melissa Gardner *Company:* A T + T Disability Ctr

*Fax Number:* (866) 224-4627

*From:* Dr. Bruce Chien

*Name:* Nancy            *Company:*

*Date:* 9-7-06        *Time:* 9:00 AM

*TRANSMISSION:*
*This cover letter plus* 2 *pages attached.*

*REMARKS:* Re: Melissa Gardner

*The information contained in this facsimile message is privileged and confidential*
*information intended only for the use of the individual or entity named above. If the*
*reader of this message is not the intended recipient, you are hereby notified that any*
*dissemination, distribution or copying of this communication is strictly prohibited. If*
*you have received this communication in error, please notify us immediately.*

*Please advise us of any difficulties in receiving this transmission by calling the number*
*listed above.*

*REPLY REQUIRED? Yes___ No___  URGENT? Yes___ No___*

R-0465

Sep 07 06 09:16a    DR B CHIEN    3096918938    p.2

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

September 7, 2006

Lou'litha Walls
AT&T Disability Center

Dear Ms. Walls,

Melissa Gardner is disabled from work. She has an open L45 disc demonstrated at 4/25/06 discogram and has concordant history and symptoms.

She should NOT work until she has found surgical intervention. Our local surgical community, now having experienced Phase II clinical trials of the Charite disc. Feels strongly that she should wait for the release of this product. The distribution of her pain is not conducive to Dorsal Column Stimulator suppression. Although she could be fused, I have to defer to our surgical opinion.

She cannot sit or stand for any period of more than about 3 minutes, which is hardly compatible with the workplace.

Bruce B. Chien, M.D.

By fax to 866-224-4627

Fax Rcvd: 9/7/2006 9:58:20 AM

R-0466

**AT&T Integrated Disability Service Center**
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

September 08, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE: Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from 03/20/2006 through 10/09/2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by 10/05/2006. Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

Robin Hamilton
Disability Specialist II
AT&T Integrated Disability Service Center

Date Recv'd: 09/08/2006

2106951

**R-0467**

Date Rec'r: 09/08/2006

```
AT&T Integrated Disability Service Center (IDSC)
DISABILITY BENEFIT APPROVAL NOTICE
09/08/2006
```

ATTENTION: HILLARI Y FLEMING          RC: AYJ4D2060

Employee Name: **MELISSA GARDNER**          Employee ID: mf4914

Employee Job Title: **MARKETING SUPPORT**          Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01          Plan: AIT SADBP

First Day Absent: 03/11/2006          First Day of Disability: 03/20/2006

*CLAIM STATUS*
- ➤  Disability Benefits Approved from 03/20/2006 through 10/09/2006

- ➤  Disability Benefits Denied (if applicable)

- ➤  Maximum potential for short term disability benefits under the plan: 03/18/2007

*PAY STATUS*
- ➤  Full Pay From:
   03/20/2006 through 04/27/2006
   04/28/2006 through 06/18/2006

If applicable:
- ➤  **Partial Pay from:**
   **06/19/2006 through 10/09/2006**
- ➤
- ➤  Partial Pay Percentage  Yes_ 50% _No_ 60%

*OFFSETS FROM PAY*

**Check if applicable**
- ➤  **Workers' Compensation**
- ➤  **Social Security**
- ➤  **State Disability**

*RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*
- ➤  Medical information supports the following restrictions:

- ➤  Duration of restrictions/modifications approved from    through

- ➤  Best estimated return to work full time full duty date: **10/10/2006**

R-0468

Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Please be sure to notify the IDSC on the first day your employee returns to work.

**Other Important Information:**

➢ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.

➢ **Disability Resources**
  o Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
  o AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm

➢ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.

➢ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

**Plan Key**

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

Date Recv: 09/08/2006

IDSC Disability Approval Notice Email-Claim-A625007022000101          Page 1 of 1

**MedManager**

| | |
|---|---|
| **From:** | Hamilton, Robin [RHamilton@sedgwickcms.com] |
| **Sent:** | Friday, September 08, 2006 11:10 AM |
| **To:** | hf1383@att.com |
| **Subject:** | IDSC Disability Approval Notice Email-Claim-A625007022000101 |

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

9/8/2006

Date Recv'r: 09/08/2006

R-0470

**Date Recv'r: 12/01/2006**

# AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406; Telephone 866-276-2278; Facsimile 866-224-4627

December 1, 2006

MELISSA GARDNER
124 PUTNAM STREET,
E PEORIA, IL 61611

   Re: Claim Number: A625007022-0001-01

Dear Ms. GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive wage replacement benefits from 03/20/2006 through 12/31/2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by12/26/2006. Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
P.O. Box 61569
King of Prussia, PA 19406

Throughout a disability absence it is the responsibility of the employee to ensure that requested medical documentation is provided in a timely manner. In the situation where an extension of benefits may be considered, documentation must be submitted prior to the end of the approved authorization period.

If you have any questions regarding this matter you may contact the AT&T Integrated Disability Service Center at 1-866-276-2278.

Sincerely,

Tan Payton
Disability Specialist
AT&T Integrated Disability Service Center

01-N-00 BA Letter to EE 01-06

R-0471

IDSC BA MDD-Claim-A625007022000101                                    Page 1 of 1

## MedManager

| | |
|---|---|
| **From:** | Vlasic, Thomas [tvlasic@sedgwickcms.com] |
| **Sent:** | Friday, December 01, 2006 4:24 PM |
| **To:** | outbound.IDSC |
| **Subject:** | IDSC BA MDD-Claim-A625007022000101 |

Thomas P. Vlasic
Business Unit Manager
AT&T Integrated Disability Service Center
As Administered by Sedgwick CMS
E-mail: tvlasic@SedgwickCMS.com
Phone: 312-356-1843
Fax:    312-356-0015

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

12/1/2006

R-0472

Date Recv: 12/01/2006

Date Recv: 12/01/2006

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT APPROVAL NOTICE**
12/01/2006

---

ATTENTION: HILLARI Y FLEMING                    RC: AYJ4D2060


Employee Name: **MELISSA GARDNER**              Employee ID: mf4914

Employee Job Title: **MARKETING SUPPORT**       Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01               Plan: AIT SADBP

First Day Absent: 03/11/2006                    First Day of Disability: 03/20/2006


### CLAIM STATUS
➤ Disability Benefits Approved from 03/20/2006 through 12/31/2006

➤ Disability Benefits Denied (if applicable)

➤ Maximum potential for short term disability benefits under the plan: 03/18/2007

### PAY STATUS
➤ Full Pay From:
   03/20/2006 through 04/27/2006
   04/28/2006 through 06/18/2006

If applicable:
➤ **Partial Pay from:**
   **06/19/2006 through 12/31/2006**
➤
➤ Partial Pay Percentage  Yes_ 50% _No_ 60%

### OFFSETS FROM PAY

**Check if applicable**
   ➤ **Workers' Compensation**
   ➤ **Social Security**
   ➤ **State Disability**

### RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS
➤ Medical information supports the following restrictions:

➤ Duration of restrictions/modifications approved from   through

➤ Best estimated return to work full time full duty date: **01/01/2007**

R-0473

Date Recv: 12/01/2006

Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Please be sure to notify the IDSC on the first day your employee returns to work.

Other Important Information:

➢ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
➢ **Disability Resources**
  ○ Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
  ○ AT&T Disability Status Web site: http://hrxweb01.AT&T.com/disability/index.cfm
➢ **Time Reporting** -- For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.
➢ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1 888-722-1787.

Plan Key

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

IDSC Disability Approval Notice Email-Claim-A625007022000101                    Page 1 of 1

**MedManager**

| | |
|---|---|
| **From:** | Vlasic, Thomas [tvlasic@sedgwickcms.com] |
| **Sent:** | Friday, December 01, 2006 4:25 PM |
| **To:** | hf1383@att.com |
| **Subject:** | IDSC Disability Approval Notice Email-Claim-A625007022000101 |

Thomas P. Vlasic
Business Unit Manager
AT&T Integrated Disability Service Center
As Administered by Sedgwick CMS
E-mail: tvlasic@SedgwickCMS.com
Phone: 312-356-1843
Fax:     312-356-0015

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

12/1/2006

Date Recv: 12/01/2006

**R-0475**

Jul 13 06 11:06a     DR B CHIEN               3096918938               p.1

Fax Rcvd: 7/13/2006 11:53:29 AM

# *FAX COVER SHEET*

*Bruce B. Chien, M.D. P.C.*
*Proctor Professional Building*
*5401 N. Knoxville Avenue, Suite 212*
*Peoria, Illinois 61614*
*Phone: (309) 691-8973 Fax: (309) 691-8938*

*To:*

*Name:* *Loo'wiman Winals* *Company:* *AT+T Disability Center*

*Fax Number:* (866) 224-4627

*From:*

*Name:* *Rose*          *Company:* *Dr B. Chien*

*Date:* 07/13/07     *Time:* 10:50 AM

*TRANSMISSION:*
*This cover letter plus* 2 *pages attached.*

*REMARKS:* REF - Melissa Gardner
DOB **REDACTED**

*The information contained in this facsimile message is privileged and confidential*
*information intended only for the use of the individual or entity named above. If the*
*reader of this message is not the intended recipient, you are hereby notified that any*
*dissemination, distribution or copying of this communication is strictly prohibited. If*
*you have received this communication in error, please notify us immediately.*

*Please advise us of any difficulties in receiving this transmission by calling the number*
*listed above.*

*REPLY REQUIRED? Yes ___ No ___   URGENT? Yes ___ No ___*

R-0476

Jul 13 06 11:06a   DR B CHIEN                3096918938              p.2

Bruce B. Chien M.D.
Board Certified in Anesthesiology, Internal
Medicine, and in Pain Medicine
Member, American Pain Society
5401 N. Knoxville, # 219
Peoria, IL 61614
309-691-8973 fax 309-691-8938

## *Your Next Appointment:*

Date: *Tuesday July 18th, 2006*

Time: *2:30 p.m.*

Procedure: *Follow Up with Dr Chien*

Fax Rcvd: 7/13/2006 11:53:29 AM

R-0477

Jul 13 06 11:07a    DR B CHIEN                3096918938                p.3

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
Tel: (309) 691-8973

*Melissa*

DATE: *Monday July 24th 06*  TIME: _8:30 AM_
( *arrive 7:30 AM* )

METHODIST ( PROCTOR )  OSF CENTER FOR HEALTH    OSF

PROCEDURE: *L3-4, L4-5, L5-S1 Interdiscal Blocks w/Carm.*

---

INSTRUCTIONS FOR DAY OF SURGERY:

1.    *Nothing to eat or drink 6 hours prior to procedure.*

2.    *You must have a driver with you.*

3.    *Be at the hospital one hour prior to your procedure time (and clock in at the admitting office). IF YOU ARE MORE THAN 10 MINUTES LATE THERE IS A HIGH PROBABILITY THAT YOU OR SOMEONE WHO WAS ON TIME CANNOT BE TAKEN CARE OF THAT DAY. PATIENTS AND FAMILIES TAKE THE TIME OFF FROM WORK FOR THESE PROCEDURES AND THIS NEEDS TO BE RESPECTED.*

4.    *Please take your usual daily medications with a small sip of water unless otherwise directed by Dr. Chien. Patients on blood thinners will be given individualized intstruction.*

Fax Rcvd: 7/13/2006 11:53:29 AM

Date Recv: 10/09/2006

**AT&T Integrated Disability Service Center**
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406-0447
Telephone 866-276-2278; Facsimile 1-866-224-46

October 09, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL 61611

RE: Claim Number: A625007022000101

Dear MELISSA GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive an extension of wage replacement benefits from 03/20/2006 through 11/30/2006.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by 11/24/2006. Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

AT&T Integrated Disability Service Center
PO Box 61569
King Of Prussia, PA 19406

Please refer any questions you may have to AT&T Integrated Disability Service Center at 866-276-2278.

Sincerely,

Robin Hamilton
Disability Specialist II
AT&T Integrated Disability Service Center

2260750

R-0479

Date Recv: 10/09/2006

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT APPROVAL NOTICE**
**10/09/2006**

---

ATTENTION: HILLARI Y FLEMING          RC: AYJ4D2060

Employee Name: **MELISSA GARDNER**          Employee ID: **mf4914**

Employee Job Title: **MARKETING SUPPORT**          Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01          Plan: AIT SADBP

First Day Absent: 03/11/2006          First Day of Disability: 03/20/2006

### *CLAIM STATUS*
- ➢ Disability Benefits Approved from 03/20/2006 through 11/30/2006

- ➢ Disability Benefits Denied (if applicable)

- ➢ Maximum potential for short term disability benefits under the plan: 03/18/2007

### *PAY STATUS*
- ➢ Full Pay From:
  03/20/2006 through 04/27/2006
  04/28/2006 through 06/18/2006

If applicable:
- ➢ **Partial Pay from:**
  **06/19/2006 through 11/30/2006**
- ➢
- ➢ Partial Pay Percentage  Yes_ 50% _No_ 60%

### *OFFSETS FROM PAY*

**Check if applicable**
  - ➢ **Workers' Compensation**
  - ➢ **Social Security**
  - ➢ **State Disability**

### *RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*
- ➢ Medical information supports the following restrictions:

- ➢ Duration of restrictions/modifications approved from    through

- ➢ Best estimated return to work full time full duty date: **12/01/2006**

Date Recv: 10/09/2006

Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Please be sure to notify the IDSC on the first day your employee returns to work.

**Other Important Information:**

➢ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.

➢ **Disability Resources**
  o Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
  o AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm

➢ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.

➢ **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

Plan Key

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

(Page 283 of 427)

IDSC Disability Approval Notice Email-Claim-A625007022000101                Page 1 of 1

Date Recv: 10/09/2006

## MedManager

**From:**    Hamilton, Robin [RHamilton@sedgwickcms.com]
**Sent:**    Monday, October 09, 2006 2:46 PM
**To:**      hf1383@att.com
**Subject:** IDSC Disability Approval Notice Email-Claim-A625007022000101

Robin Hamilton
Examiner III
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1813
Fax: 866-224-4627
E-mail: rhamilton@sedgwickcms.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

10/9/2006

R-0482

Date Recv: 01/23/2007

# MCN® Medical Consultants Network

MCN - National Scheduling Service
901 Boren Avenue, Suite 1400
Seattle, WA 98104-3529
Tel: (800) 636-3926
Fax: (206) 812-6422

January 19, 2007

Tan Payton
Sedgwick Claims Management Services, Inc.
P.O. Box 61569
King of Prussia, PA 19406

| | | | |
|---|---|---|---|
| **Re:** | Melisa Gardner | **MCN #:** | 1-PG4PL |
| **Coverage:** | Disability-Short Term | **Carrier:** | Sedgwick Claims Management Services, Inc. |
| **Specialty:** | Neurological Surgery | **Adjuster:** | Tan Payton |
| **Claim #:** | a625007022-0001-01 | | |

Dear Tan Payton,

I have reviewed the Neurological Surgery Independent Medical Evaluation report regarding the above named claimant completed by Steven Delheimer M.D..

I trust you will find this information helpful. If I can be of any further assistance, please do not hesitate to contact me at (800) 636-3926.

Thank you for the referral. I look forward to working with you again in the future.

Sincerely,

Heather Vasquez
Customer Service Representative
Report Review Department

Date Recv: 01/23/2007

STEVEN C. DELHEIMER, M. D.
Neurosurgery

**Innovative Medical Evaluations, LLC**

128 Bucklin Street, Suite B
LaSalle, Illinois 61301
Phone (800) 833-0913
Fax    (815) 224-8009
E-mail address: schedule@imefirst.com

Heather Vasquez
Medical Consultants Network
901 Boren Avenue
Suite 1400
Seattle, WA  98104
Email: hvasquez@mcn.com

| | |
|---|---|
| RE: | Melissa Gardner |
| Date of Exam: | January 8, 2007 |
| Claim #: | A625007022-0001-01 |
| Employer: | AT & T |
| Carrier: | Sedgwick Claims Management Services, Inc. |

Melissa Gardner was seen for an Independent Medical Evaluation at my Bloomington office on January 8, 2007, at the request of Medical Consultants Network. It should be noted that no patient/doctor relationship was established at the time of this evaluation. In my professional judgment, the opinions contained herein are all to a reasonable degree of medical and surgical certainty.

<u>HISTORY OBTAINED FROM THE EXAMINEE:</u>

COMPLAINTS AT THE TIME OF THIS EXAMINATION:
I had the opportunity to evaluate Ms. Gardner on January 8, 2007. At this time, Ms. Gardner complains of pain involving her low back and both legs. The pain is lateral in location and is associated with tingling and numbness involving both her toes and her fingertips. Standing and walking aggravates the pain but lying down will alleviate the pain. Ms. Gardner states that the back pain is worse than the leg pain. Overall, she rates the pain at "10 to 15" on a scale of 0 (no pain) to 10 (the worst pain imaginable) without pain medication, but the pain will decrease to 5 or 6/10 with pain medication.

MEDICATION:
Ms. Gardner's current medications include the following –
    1.    Lyrica 75 mg
    2.    Nabumetone 500 mg
    3.    Tramadol 50 mg
    4.    Hydrocodone 7.50/500 mg

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 2

Ms. Gardner took her last dose of medication at 7:00 o'clock this morning, January 8, 2007, and I examined her at approximately 12 noon.

DESCRIPTION OF INJURY:
At the onset of pain, Ms. Gardner was sitting in her chair and merely stood up, at which point she noticed an aching pain in her back. She stated that she thought that she might have slept wrong; however, the pain gradually worsened by the end of the workday and during her drive home from Springfield to East Peoria. The pain occurred acutely on March 9, 2006.

DESCRIPTION OF TREATMENT:
Ms. Gardner states that she presented to OSF PromptCare on March 9, 2006 and then the following day she went to St. Francis Emergency Room. She was then seen at Proctor Emergency Room on March 13, 2006, at which time she was admitted for pain management with Zofran, Norflex, and Depakote. She was also seen in consultation by Dr. Bruce Chien.

She underwent a lumbar MRI on March 14, 2006, which according to Ms. Gardner showed several herniated discs. She has also seen Dr. Dinh for a neurosurgical opinion, and has undergone epidural steroid injections and a discogram. It has been recommended that Ms. Gardner undergo a disc replacement.

OCCUPATIONAL HISTORY:
Ms. Gardner works for SBC Communications, which is now AT&T. Her job is a Marketing Support Specialist, which is primarily a desk job.

MEDICAL RECORD REVIEW:
The following is an abstract of records that were reviewed in conjunction with my evaluation on January 8, 2007. Documents were reviewed from the following providers:

- Bruce B. Chien, M.D. (Internal Medicine and Pain Medicine)
- Dzung H. Dinh, M.D. (Associated University Neurosurgeons)
- Proctor Hospital
  - 03/13/2006   Emergency Room
  - 03/13/2006   Robert B. Adams, M.D. (consultation)
  - 03/14/2006   Lumbar MRI with and without contrast
  - 03/15/2006   Epidural Steroid Injection
  - 03/23/2006   Cervical Spine MRI
  - 04/20/2006   Lumbar CT

Date Recv: 01/23/2007

R-0485

Medical Consultants Network
Independent Medical Evaluation
   Melissa Gardner
   January 8, 2007
   Page 3

04/20/2006    L4 & L5 Diskogram
07/24/2006    L4 & L5 Intradiskal Block & Diskography
- Saint Francis Medical Center
04/17/2006    Epidural Steroid Injection
- Richard A. Flores, M.D. (Central Illinois Rehabilitation Associates)

03/13/2006    Proctor Hospital Emergency Room: The claimant reported to the emergency room complaining of low back pain. The history indicated that the claimant reported the pain began the Thursday prior to this date (which would have been 03/09/2006), but denied any specific event or injury. The claimant also indicated that she had been to two different facilities prior to this for treatment in which an x-ray was taken and she was prescribed Skelaxin, Vicodin, Morphine, and Percocet. (None of these records were available for review) This report also indicated that the x-ray taken at Methodist 24 hours prior showed no acute pathology. The claimant was admitted for pain control.

03/13/2006    Proctor Hospital/Inpatient Record -- Robert B. Adams, M.D.: The claimant was seen in consultation for intractable back pain. She stated the pain began when she was at a seminar course working with computers a few days earlier. She rated her pain at a 6/10 (after pain medication in the emergency room) and noted that it increased when her legs were supine. A straight leg raise test was deferred due to the claimant's pain level and muscle spasms. Examination revealed tenderness from the T12 through L4 region. The remaining examination was normal. The claimant was admitted for pain management, given Zofran, Norflex, and Depakote, and a consultation was requested from Dr. Chien.

03/14/2006    Proctor Hospital/Inpatient consultation -- Bruce B. Chien, M.D. (Internal Medicine and Pain Medicine): Examination revealed tenderness at L4 in the midline, a positive straight leg raise bilaterally, right greater than left at 30 and 45 degrees respectively, paraspinous spasm with no radiation. Dr. Chien opined that the claimant was probably suffering from an L4 disc syndrome and a lumbar MRI was ordered.

Date Recv: 01/23/2007

Medical Consultants Network
Independent Medical Evaluation
Melissa Gardner
January 8, 2007
Page 4

03/14/2006    Proctor Hospital; Lumbar MRI Report (with & without contrast): Report dated 03/14/2006 revealed degenerative disc disease at L3-4, L4-5, and L5-S1 with age indeterminate posterior central annular tears of the L3-4 and L4-5 discs.

03/15/2006    Dzung H. Dinh, M.D. (Associated University Neurosurgeons): Examination revealed right low back pain during her left lower extremity exam, positive straight leg raise bilaterally, right at 25 degrees and left and 30 degrees, strength was 5/5, reflexes were normal and sensation was intact. The claimant was scheduled for an epidural steroid injection, physical therapy was ordered, and Valium was added to her medication regimen for back spasms.

03/15/2006    Proctor Hospital; Epidural Steroid Injection Operative Report: Report dated 03/15/2006 was authored by Dr. Bruce Chien. The diagnosis listed was herniated L4 nucleus pulposus and the procedure listed was a midline L4 epidural steroid injection. The claimant tolerated the procedure well and noted improvement of her pain.

03/23/2006    Proctor Hospital; Cervical MRI without contrast: Report dated 03/23/2006 noted the MRI was ordered by Dr. Chien for the diagnosis of right C6 radiculopathy with numbness in the right hand and weakness in the left hand. The reported noted the MRI was negative for herniations or spinal stenosis.

04/03/2006 &
04/04/2006    Richard A. Flores, M.D. (Central Illinois Rehabilitation Associates): Dr. Chien referred the claimant to Dr. Flores for EMG & Neurosensory testing for C6 radiculopathy and numbness in her hands and toes. The claimant gave a history of low back pain beginning on 03/09/2006 with numbness and tingling of the upper and lower extremities developing within the following few days. She noted that she had lost strength and fine motor control of her hands. The claimant complained of numbness and tingling in her bilateral feet and hands, weakness in her hands, neck pain, and low back pain. Examination revealed equivocal Tinel's for carpal tunnel syndrome and cubital tunnel syndrome in the upper extremities bilaterally and tarsal tunnel syndrome in the lower extremities bilaterally.

Date Recv: 01/23/2007

Date Recv: 01/23/2007

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 5

EMG testing was consistent with bilateral mild to moderate denervation in the ulnar nerve distribution from the elbow distally and mild bilateral L4 radiculopathies.

Neurosensory Testing of the upper and lower extremities was consistent with moderate to severe bilateral sensory polyneuropathy with beginning axonal loss especially in the lower extremities.

Grip and pinch testing showed marked reduction of grip strength to 56% of expected normal in the right hand and 34% in the left hand, with the predominance of loss in the ulnar innervated muscles rather than the median innervated muscles.

04/17/2006 &
04/18/2006

Saint Francis Medical Center; Epidural Steroid Injection: The operative report was dated 04/17/2006 and was authored by Dr. Bruce Chien. The diagnosis listed was bilateral L4 radiculopathy and left C7 radiculopathy. The procedure listed was a midline L4 epidural steroid injection.

During the procedure, the claimant had a sense of aching down both buttocks and thighs. Dr. Chien opined that the claimant likely had intradiskal disease because of her pain pattern and failure to respond to treatment. A discogram was ordered. On 04/18/2006, Dr. Chien excused the claimant from work until 05/06/2006.

04/20/2006

Proctor Hospital; L4-L5 Diskogram: Report dated 04/20/2006 revealed concordant 7 out of 10 pain with injection of the L4-L5 disc space and significantly diminished disc turgor at the same level with evidence of penetration of contrast at least into, if not through the annular region posteriorly.

Lumbosacral CT after injection of L4-5 disc with contrast: Report dated 04/20/2006 revealed evidence of disruption of the L4-L5 disc annulus posteriorly with extension of contrast to the posterior annulus near the midline into the epidural space and also to the left along the left.

05/03/2006

Bruce B. Chien, M.D.: A dictated note to AT&T authored by Dr. Chien indicated that the claimant had a ruptured L4 disc and bilateral lumbar radiculopathy; she could not sit or stand for any period more than about three minutes. He opined that

Date Recv: 01/23/2007

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 6

she was completely disabled from all work at the current time. He noted that she was waiting to see Dr. Dinh regarding disc replacement vs. fusion.

| | |
|---|---|
| 06/16/2006 thru 06/28/2006 | Dzung H. Dinh, M.D.:   Dr. Dinh recommended that the claimant continue with her current pain medications and try a course of water therapy.  Interdiscal blocks were ordered for further diagnosis and the claimant was continued off work. |
| 07/24/2006 | Proctor Hospital; L4 & L5 Intradiskal block and diskography; Report dated 07/24/2006 was authored by Dr. Bruce Chien. Diagnosis listed was L4 & L5 intradiskal pain. |

07/24/2006 continued:

The claimant was injected into the center one-third zone of the L4 disk space.  A good discal outline was seen with very minimal extravasation into the epidural space.  The claimant was asked to stand and walk and within one minute, she noted her discomfort was much reduced.   Upon returning to the operating bed, her discomfort was gone and she moved much more easily.

The claimant was injected into the right side of the L5 disk space.  The claimant was again asked to ambulate and noted left buttock and posterior thigh discomfort.   PA and lateral views were taken (no report was available).

The claimant was injected into the left side of the L3 disk space.  The claimant was again asked to ambulate and after a two minute walk noted that her discomfort had not changed. (It was noted that the image of the L3 disk was of good turgor and without extra discal leak).

08/04/2006    Dzung H. Dinh, M.D.: The claimant's pain was constant at this point, rated at 9/10 with some improvement while in the water, but the pain returned within 30 minutes of discontinuing pool therapy.  Dr. Dinh noted that the claimant had pain relief for 15 minutes after the L4-5 block in July.  Dr. Dinh opined that the claimant was a candidate for an artifical disk replacement surgery.  He stated that he would contact Dr. Chien regarding interim pain management for the claimant with either a trial of a Dorsal Column Stimulator or intrathecal pain pump.

Date Recv: 01/23/2007

Medical Consultants Network
Independent Medical Evaluation
        Melissa Gardner
        January 8, 2007
        Page 7

08/24/2006 &
09/07/2006        Bruce B. Chien, M.D.:  In a letter dictated to Dr. Miller, Dr.
                  Chien stated that the claimant had a known freely ruptured L4
                  disc without much improvement, that walking was limited to
                  about 100 feet, the claimant had to sleep on her side and that
                  after driving about 15 minutes she noted pain paraspinally on
                  the left side at about the iliac crest.   He noted that her
                  examination on 08/24/2006 revealed a positive straight leg
                  raise bilaterally, with the left producing left paraspinal pain at
                  the level of the iliac crest at 45 degrees and the right producing
                  pain in the left buttock at 45 degrees.  Dr. Chien opined that
                  he did not wish to proceed with a spinal pump implant as a
                  temporary maneuver and that the DCS was not appropriate for
                  the  claimant's  distribution  of  pain.    The  claimant  was
                  instructed to take only two Vicodin per day while awaiting the
                  clinical release of the Charite disc.
                       In a letter dictated to AT&T on 09/07/2006, Dr. Chien
                  indicated the claimant had an open L4-5 disc with concordant
                  history and symptoms.  He believe the claimant was totally
                  disabled from work due to the fact that she could not sit or
                  stand for any period of time more than three minutes and
                  should not work until she had surgical intervention.  He noted
                  that the surgical community had indicated the claimant should
                  wait for the release of the Charite disc.  He further opined that
                  the  distribution  of  her  pain  was  not  conducive  to  DCS
                  suppression.

<u>DIAGNOSTIC REVIEW:</u>
I reviewed several diagnostic films.  The first was a lumbar MRI dated March 14,
2006, which showed an annular tear at L4-5.  This was seen only on the sagittal
views.

I also reviewed a cervical MRI, which simply showed mild degenerative disc
disease.

Next, I reviewed a lumbar CT scan dated April 20, 2006.  That CT scan showed an
annular tear at L4-5, which was midline.

Finally, I reviewed a discogram, which was a one level procedure performed on
April 20, 2006 at the L4-5 level.  The discogram showed chronic degenerative disc
disease.

R-0490

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 8

NEUROLOGIC EXAMINATION:
Ms. Gardner appeared to be uncomfortable while sitting through the interview process. During the examination, she limits movement of her back, but she has a normal lumbar lordosis. Her straight leg-raising test is negative in a sitting position to 90°. Deep tendon reflexes are equal, symmetrical, and normal at the knees and ankles. She has normal strength, a normal gait, and she can walk on her heels and toes without difficulty.

IMPRESSION:
After obtaining a narrative history, performing a neurologic exam, and reviewing medical records and several diagnostic studies, it is my opinion that Ms. Gardner has degenerative disc disease of her lumbar spine. This opinion is supported by the findings on her diagnostic studies, which revealed an annular tear at the L4-5 level that is midline in location.

CONCLUSION:
Ms. Gardner's history is significant for prior episodes of back pain that lasted anywhere up to a week and then cleared. In my opinion, the changes seen on Ms. Gardner's diagnostic studies appear to be degenerative in nature. Furthermore, Ms. Gardner did not experience any injury per se at the time of her acute onset of pain, but rather she merely experienced pain when she rose from a chair, and then this back pain gradually worsened. When Ms. Gardner stood up from a seated position at work, she was not lifting, twisting, or bending. Therefore, it is my opinion that Ms. Gardner's acute onset of pain in March 2006 is related to her degenerative disc disease and is not an occupational injury.

RECOMMENDATIONS:
In regards to Charite disc replacement, the chances of improvement are reported to be 57%, which is no better than the natural history of the disease itself.

Another approach would be to consider an anterior lumbar fusion or possibly a posterior hemilaminotomy.

Irrespective of what type of treatment Ms. Gardner elects to proceed with, it is my opinion that any medical and/or surgical treatment is for her underlying degenerative disc disease and is not related to her employment at SBC Communications.

Date Recv: 01/23/2007

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 9

## SPECIFIC INTERROGATORIES:

1.    What is your evaluation of Ms. Gardner's medical condition?

Response:    After obtaining a narrative history, performing a neurologic exam, and reviewing medical records and several diagnostic studies, it is my opinion that Ms. Gardner has degenerative disc disease of her lumbar spine. This opinion is supported by the findings on her diagnostic studies, which revealed an annular tear at the L4-5 level that is midline in location.

2.    What is her prognosis?

Response:    Ms. Gardner's prognosis is guarded based on her repeated episodes of low back pain and multilevel involvement of the lumbar discs. In the past, her episodes of back pain have cleared; however, this current episode has remained refractory to significant attempts at conservative management. Although Ms. Gardner has failed to respond to conservative treatment, I am reluctant to recommend any type of surgical intervention given the nature of the changes on her MRI.

3.    Does her treatment plan seem reasonable to date?

Response:    After reviewing the medical reports, it is my opinion that Ms. Gardner's treatment and workup has been reasonable; however, I consider her treatment to be related to a pre-existing condition and not related to her occupation. In regards to Charite disc replacement, the chances of improvement are reported to be 57%, which is no better than the natural history of the disease itself.

Another approach would be to consider an anterior lumbar fusion or possibly a posterior hemilaminotomy.

4.    Please comment on Ms. Gardner's activities of daily living.

Response:    Ms. Gardner indicated that standing and walking aggravates the pain but the pain will improve if she lies down. She reports that overall her back pain is worse than the leg pain. Ms. Gardner is also on a combination of Lyrica, Tramadol, Nabumetone, and Hydrocodone to control her pain. Without these medications, she rates the pain at "10 to 15" on a scale of 0 (no pain) to 10 (the worst imaginable pain), but with the medication the pain will decrease to 5 or 6/10.

Date Recv: 01/23/2007

Date Recv: 01/23/2007

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 10

6.   How does Ms. Gardner's medical condition interfere with her ability to perform the essential functions of the Marketing Support Specialist?

Response:  In my opinion, Ms. Gardner's medical condition should not prevent her from working given the sedentary nature of her job; however, the following factors could indirectly interfere:

1.   By history, the prolonged drive to and from work everyday (East Peoria, IL to Springfield, IL/Springfield to East Peoria).
2.   The fact that standing and walking exacerbate the pain.
4.   The only alleviating factor by history is when Ms. Gardner lies down.
5.   Her current regimen of pain medications.

7.   Please comment on Ms. Gardner's functional abilities.

Response:  Ms. Gardner's job as a marketing specialist is a sedentary position and requires no physical modification in her work duties other than possibly changing positions as needed for comfort measures.

8.   Do Ms. Gardner's symptoms match her functionality and your understanding of her medical condition?

Response:  During the examination, Ms. Gardner appeared to be uncomfortable and she limited any movement of her back. In my opinion, Ms. Gardner's current symptoms are consistent with the diagnostic findings.

9.   Is Ms. Gardner able to return to her full duty position as a Marketing Support Specialist?

Response:  Ms. Gardner's job as a marketing specialist is a sedentary position and requires no physical modification in her work duties other than possibly changing positions as needed for comfort measures.

10.   If no, please state specific work restrictions and the duration.

Response:  None.

11.   Please specify any accommodations, which may be needed regarding her medical condition.

Response:  One might consider possibly accommodating Ms. Gardner in terms of allowing her to change positions as needed for comfort measures.

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 11

12.    Has the claimant reached maximum medical improvement?

Response:  In this case, maximal medical improvement does not apply, as I do not consider the acute onset of pain to be related to an occupational injury.

13.    In your opinion is it appropriate to await the approval of the Charite procedure? Is this her best option for optimal improvement?

Response:  In regards to Charite disc replacement, the chances of improvement are reported to be 57%, which is no better than the natural history of the disease itself.

Another approach would be to consider an anterior lumbar fusion or possibly a posterior hemilaminotomy.

Irrespective of what type of treatment Ms. Gardner elects to proceed with, it is my opinion that any medical and/or surgical treatment for this acute onset of pain is related to the underlying degenerative disc disease and is not related to her employment at SBC Communications.

The above analysis is based upon the available information at this time, including the history given by the examinee, the medical records, the diagnostic tests provided, and the physical findings. It is assumed that the material provided is correct.  If more information becomes available at a later date, an additional report may be requested.  Such information may or may not change the opinions rendered in this evaluation.

Thank you for asking me to see Melissa Gardner for an Independent Medical Evaluation. If you have any further questions or concerns, please do not hesitate to contact me.

        Sincerely,

        *Steven Delheimer, M.D.*

        Steven C. Delheimer, M. D.
        Neurosurgeon
        Consultant

scd/jd
FC: 01-15-2007

Date Recv: 01/23/2007

Date Recv: 01/24/2007

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT DENIAL NOTICE**
**01/24/2007**

**Attention: HILLARI Y FLEMING**                    **RC: AYJ4D2060**

**Employee Name: MELISSA GARDNER**          Employee ID: **mf4914**

Employee Job Title: MARKETING SUPPORT SPEC     Employee NCS Date: **02/12/2001**
(SRL) [IBEW21]

IDSC Claim #: **A625007022-0001-01**              Plan: **AIT SADBP**

First Day Absent: **03/11/2006**                 First Day of Disability: **03/20/2006**

### CLAIM STATUS

➢     Disability Benefits Approved from **03/20/2006 through 01/18/2007**

➢     Disability Benefits Denied (if appropriate) 01/19/2007 through

➢     Maximum potential short term disability benefits under the plan: 03/18/2007

Reason for Denial     ☐ : Absence did not satisfy 7 day Waiting Period
                      ☐ : Failure to submit additional medical information for review
                      ☐ : Medical information submitted was not sufficient to support the claim
                          for disability benefits based on the provisions of the Plan
                      ☐ : Employee not eligible for benefits
                      ☐ : Performing activities that are inconsistent with his/her disability
                      ☐ : Traveling without permission
                      ☐ Other:

➢  WC Approval still in effect: ☐ Yes ☐ No

➢  Date claimant contacted regarding the disability benefit denial: 01/24/07

➢  Estimated appeal expiration date: 07/22/2007

The plan provides an employee one-hundred and eighty (180) days to appeal the disability
benefit denial determination.

> Please be sure to notify the IDSC on the first day your employee returns to
> work.

### PAY STATUS
➢  **Full Pay From:**
   **03/20/2006 through 04/27/2006**
   **04/28/2006 through 06/18/2006**

R-0495

Date Recv: 01/24/2007

**Partial Pay (If applicable):**
➤ **Partial Pay from:**
06/19/2006 through 01/18/2007

Percentage of Partial Pay: Yes 50%  No 60%

<u>Other Important Information:</u>
➤ **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
➤ **Disability Resources**
   o Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
   o AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
➤ **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.
➤ **Denied Disability Process** - For additional information in managing an employee's absence in the event that s/he is denied disability the supervisor may refer to the Denied Disability Process which is located on the Attendance Management web site (http://hrweb01.AT&T.com/attmgmt/login.asp)and the HR Reference Portal (https://ebiz2.AT&T.com/hrxefportal/). It is recommended that you consult with Human Resources, Labor Relations, and Legal prior to making employment decisions for an employee who has been denied disability benefits.

<u>Plan Key</u>

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

Exhibit x

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

## MedManager

**From:**     Payton, Tan [Tanjale.Payton@sedgwickcms.com]
**Sent:**      Wednesday, January 24, 2007 4:37 PM
**To:**         hf1383@att.com
**Subject:** IDSC Disability Denial Notice E-Mail-Claim-A625007022000101

Tan Payton
Disability Specialist II
AT&T Integrated Disability Service Center
Phone: 866- 276-2278
E-mail: tpayton@sedgwickcms.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

R-0497

Date Recv: 02/15/2007

## MedManager

**From:** Archer, Audrey X. [Audrey.Archer@sedgwickcms.com]
**Sent:** Thursday, February 15, 2007 12:37 PM
**To:** IDSC
**Subject:** Melissa Gardner - A625007022-0001-01

February 15, 2007

Ms. Melissa Gardner
124 Putnam Street
E Peoria, IL. 61611

RE:    A625007022-01

Dear Ms. Gardner:

This letter, along with the enclosures, serves as our response to your written request for information relevant to claim number A625007022-01.   Your request was received at AT&T IDSC on February 9, 2007.

You will find that the attached packet contains a copy of your file per your request.  If you have any questions regarding this matter, please contact AT&T IDSC at 1-866-276-2278.

Requests for copies of the plan and/or SPD should be made in writing to:

AT&T Services, Inc.
P. O. Box  29690
San Antonio, Texas  78229

Sincerely,

Administrative Services
AT&T Integrated Disability Service Center as Administered by Sedgwick CMS

2/15/2007

R-0498

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

Date Recv: 02/15/2007

2/15/2007

R-0499

(Page 301 of 427)

Date Recv: 12/29/2006

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406; Telephone 866-276-2278; Facsimile 866-224-4627

December 29, 2006

MELISSA GARDNER
124 PUTNAM STREET,
E PEORIA, IL 61611

     Re: Claim Number: A625007022-0001-01

Dear Ms. GARDNER:

Please be advised that after a thorough review of the medical documentation submitted by your physician, you have been approved to receive wage replacement benefits from 03/20/2006 through 01/18/2007.

In the event that you will not recover sufficiently to resume your job duties, with or without reasonable accommodations, at the end of the approval period, updated medical documentation including chart notes, diagnostic test results, hospital discharge summaries, etc. will need to be provided to AT&T Integrated Disability Service Center by01/18/2007. Further wage replacement benefits will be considered upon review of the additional information received.

You will be notified of the decision regarding further extensions. To expedite receipt of the medical records by AT&T Integrated Disability Service Center, a secure fax machine is available. Any additional medical documentation may be faxed to 1-866-224-4627, or documentation may be mailed to:

<div align="center">

AT&T Integrated Disability Service Center
P.O. Box 61569
King of Prussia, PA 19406

</div>

Throughout a disability absence it is the responsibility of the employee to ensure that requested medical documentation is provided in a timely manner. In the situation where an extension of benefits may be considered, documentation must be submitted prior to the end of the approved authorization period.

If you have any questions regarding this matter you may contact the AT&T Integrated Disability Service Center at 1-866-276-2278.

Sincerely,

Tan Payton
Disability Specialist
AT&T Integrated Disability Service Center

01-N-00 BA Letter to EE 01-06

**R-0500**

**MedManager**

**From:** Payton, Tan [Tanjale.Payton@sedgwickcms.com]
**Sent:** Friday, December 29, 2006 2:46 PM
**To:** outbound.IDSC
**Subject:** Melissa Gardner A625007022-0001-01

Date Recv: 12/29/2006

Date Recv: 12/29/2006

---

**AT&T Integrated Disability Service Center (IDSC)**
**DISABILITY BENEFIT APPROVAL NOTICE**
**12/29/2006**

---

ATTENTION: HILLARI Y FLEMING                    RC: AYJ4D2060

Employee Name: **MELISSA GARDNER**              Employee ID: mf4914

Employee Job Title: **MARKETING SUPPORT**        Employee NCS Date: 02/12/2001
**SPEC (SRL) [IBEW21]**

IDSC Claim #: A625007022-0001-01               Plan: AIT SADBP

First Day Absent: 03/11/2006                    First Day of Disability: 03/20/2006

*CLAIM STATUS*
➢   Disability Benefits Approved from 03/20/2006 through 01/18/2007

➢   Disability Benefits Denied (if applicable)

➢   Maximum potential for short term disability benefits under the plan: 03/18/2007

*PAY STATUS*
➢   Full Pay From:
     03/20/2006 through 04/27/2006
     04/28/2006 through 06/18/2006

If applicable:
➢   **Partial Pay from:**
     **06/19/2006 through 01/18/2007**
➢
➢   Partial Pay Percentage  Yes_ 50%  _No_ 60%

*OFFSETS FROM PAY*

                          **Check if applicable**
     ➢   **Workers' Compensation**
     ➢   **Social Security**
     ➢   **State Disability**

*RETURN TO WORK WITH/WITHOUT RESTRICTIONS/MODIFICATIONS*
     ➢   Medical information supports the following restrictions:

     ➢   Duration of restrictions/modifications approved from    through

     ➢   Best estimated return to work full time full duty date: **01/19/2007**

(Page 304 of 427)

Date Recv: 12/29/2006

Best Estimated Return To Work Date is for management purposes only; do not discuss this date with the employee.

Please be sure to notify the IDSC on the first day your employee returns to work.

Other Important Information:
> **Supervisor Contact Information** - Notices are automatically generated and sent to the employee's supervisor as listed in Webphone. If you do not handle disability issues for this employee, please forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory information.
> **Disability Resources**
   o Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions regarding the information provided.
   o AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
> **Time Reporting** – For additional information on disability time reporting visit http://eLink.AT&T.com. It is important that you verify your employee's time reporting once you receive this notice to ensure pay accuracy.
> **FMLA and/or state family and medical leave** will run concurrently with an approved disability, if the employee is eligible and entitled to FMLA and/or state family and medical leave. For additional information regarding FMLA and/or state family and medical leave laws contact HROneStop at 1-888-722-1787.

Plan Key

| Disability Plan Name | Acronym |
|---|---|
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

RESTRICTED PROPRIETARY INFORMATION

hf1383@att.com

(Page 305 of 427)

IDSC Disability Approval Notice Email-Claim-A625007022000101                    Page 1 of 1

Date Recv: 12/29/2006

## MedManager

**From:**    Payton, Tan [Tanjale.Payton@sedgwickcms.com]
**Sent:**    Friday, December 29, 2006 2:47 PM
**To:**       hf1383@att.com
**Subject:** IDSC Disability Approval Notice Email-Claim-A625007022000101

Tan Payton
Disability Specialist II
AT&T Integrated Disability Service Center
Phone: 866-276-2278
E-mail: tpayton@sedgwickcms.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

12/29/2006

R-0504

(Page 306 of 427)

01/15/07 13:59:26    MEDICAL CONSULTANTS->        HylaFAX Medical Consultants   Page 001



**Medical Judgment: Nationwide®**

Medical Consultants Network, Inc®

National Scheduling Services
901 Boren Avenue, Suite 1400
Seattle, WA 98101-3529

# Fax Coversheet

**To :** Tan Payton

**Company :** Sedgwick
**Fax Number :** (610) 233-0482
**Phone Number :**

**From :** Betty Lanman
**Fax Return To :** **206-812-6420**
**Phone Number :** 206-621-9097

**Time Sent :** Monday, January 15, 2007 01:59PM
**Pages :** 12
**Description :** FINAL IME report - Melisa Gardner

## MESSAGE:

Attached please find the final report.

Please feel free to contact me if you have any questions.

Sincerely,
Betty L. Lanman
Director of Client Services
800-636-3926
206-812-6420 FAX
belder@mcn.com

This facsimile may contain confidential or attorney-client privileged information intended only for the individual or entity to whom it is addressed. Do not read, copy or disseminate this information unless you are the addressee of the person responsible for delivery. If you have received this communication in error, please call the sender immediately (collect if necessary), and return the original message to the corporate offices of Medical Consultants Network, Inc. via US postal mail at the address above.

*(left margin, rotated)* Fax Rcvd: 01/15/07 5:03:55 PM

R-0505

01/15/07 13:59:40    MEDICAL CONSULTANTS->        HylaFAX Medical Consultants    Page 002

Fax Rcvd: 01/15/07 5:03:55 PM

# STEVEN C. DELHEIMER, M. D.
### Neurosurgery

# **I**nnovative **M**edical **E**valuations, LLC

128 Bucklin Street, Suite B
LaSalle, Illinois 61301
Phone (800) 833-0913
Fax    (815) 224-8009
E-mail address: schedule@imefirst.com

Heather Vasquez
Medical Consultants Network
901 Boren Avenue
Suite 1400
Seattle, WA  98104
Email:  hvasquez@mcn.com

| | |
|---|---|
| RE: | Melissa Gardner |
| Date of Exam: | January 8, 2007 |
| Claim #: | A625007022-0001-01 |
| Employer: | AT & T |
| Carrier: | Sedgwick Claims Management Services, Inc. |

Melissa Gardner was seen for an Independent Medical Evaluation at my Bloomington office on January 8, 2007, at the request of Medical Consultants Network. It should be noted that no patient/doctor relationship was established at the time of this evaluation. In my professional judgment, the opinions contained herein are all to a reasonable degree of medical and surgical certainty.

## HISTORY OBTAINED FROM THE EXAMINEE:

### COMPLAINTS AT THE TIME OF THIS EXAMINATION:
I had the opportunity to evaluate Ms. Gardner on January 8, 2007. At this time, Ms. Gardner complains of pain involving her low back and both legs. The pain is lateral in location and is associated with tingling and numbness involving both her toes and her fingertips. Standing and walking aggravates the pain but lying down will alleviate the pain. Ms. Gardner states that the back pain is worse than the leg pain. Overall, she rates the pain at "10 to 15" on a scale of 0 (no pain) to 10 (the worst pain imaginable) without pain medication, but the pain will decrease to 5 or 6/10 with pain medication.

### MEDICATION:
Ms. Gardner's current medications include the following –
1. Lyrica 75 mg
2. Nabumetone 500 mg
3. Tramadol 50 mg
4. Hydrocodone 7.50/500 mg

R-0506

Medical Consultants Network
Independent Medical Evaluation
   Melissa Gardner
   January 8, 2007
   Page 2

Ms. Gardner took her last dose of medication at 7:00 o'clock this morning, January 8, 2007, and I examined her at approximately 12 noon.

DESCRIPTION OF INJURY:
At the onset of pain, Ms. Gardner was sitting in her chair and merely stood up, at which point she noticed an aching pain in her back. She stated that she thought that she might have slept wrong; however, the pain gradually worsened by the end of the workday and during her drive home from Springfield to East Peoria. The pain occurred acutely on March 9, 2006.

DESCRIPTION OF TREATMENT:
Ms. Gardner states that she presented to OSF PromptCare on March 9, 2006 and then the following day she went to St. Francis Emergency Room. She was then seen at Proctor Emergency Room on March 13, 2006, at which time she was admitted for pain management with Zofran, Norflex, and Depakote. She was also seen in consultation by Dr. Bruce Chien.

She underwent a lumbar MRI on March 14, 2006, which according to Ms. Gardner showed several herniated discs. She has also seen Dr. Dinh for a neurosurgical opinion, and has undergone epidural steroid injections and a discogram. It has been recommended that Ms. Gardner undergo a disc replacement.

OCCUPATIONAL HISTORY:
Ms. Gardner works for SBC Communications, which is now AT&T. Her job is a Marketing Support Specialist, which is primarily a desk job.

MEDICAL RECORD REVIEW:
The following is an abstract of records that were reviewed in conjunction with my evaluation on January 8, 2007. Documents were reviewed from the following providers:

- Bruce B. Chien, M.D. (Internal Medicine and Pain Medicine)
- Dzung H. Dinh, M.D. (Associated University Neurosurgeons)
- Proctor Hospital
    03/13/2006    Emergency Room
    03/13/2006    Robert B. Adams, M.D. (consultation)
    03/14/2006    Lumbar MRI with and without contrast
    03/15/2006    Epidural Steroid Injection
    03/23/2006    Cervical Spine MRI
    04/20/2006    Lumbar CT

Fax Rcvd: 01/15/07 5:03:55 PM

01/15/07 14:00:26    MEDICAL CONSULTANTS->          HylaFAX Medical Consultants    Page 004

Medical Consultants Network
Independent Medical Evaluation
   Melissa Gardner
   January 8, 2007
   Page 3

     04/20/2006    L4 & L5 Diskogram
     07/24/2006    L4 & L5 Intradiskal Block & Diskography
- Saint Francis Medical Center
     04/17/2006    Epidural Steroid Injection
- Richard A. Flores, M.D. (Central Illinois Rehabilitation Associates)

03/13/2006    Proctor Hospital Emergency Room: The claimant reported to the emergency room complaining of low back pain. The history indicated that the claimant reported the pain began the Thursday prior to this date (which would have been 03/09/2006), but denied any specific event or injury. The claimant also indicated that she had been to two different facilities prior to this for treatment in which an x-ray was taken and she was prescribed Skelaxin, Vicodin, Morphine, and Percocet. (None of these records were available for review) This report also indicated that the x-ray taken at Methodist 24 hours prior showed no acute pathology. The claimant was admitted for pain control.

03/13/2006    Proctor Hospital/Inpatient Record -- Robert B. Adams, M.D.: The claimant was seen in consultation for intractable back pain. She stated the pain began when she was at a seminar course working with computers a few days earlier. She rated her pain at a 6/10 (after pain medication in the emergency room) and noted that it increased when her legs were supine. A straight leg raise test was deferred due to the claimant's pain level and muscle spasms. Examination revealed tenderness from the T12 through L4 region. The remaining examination was normal. The claimant was admitted for pain management, given Zofran, Norflex, and Depakote, and a consultation was requested from Dr. Chien.

03/14/2006    Proctor Hospital/Inpatient consultation -- Bruce B. Chien, M.D. (Internal Medicine and Pain Medicine): Examination revealed tenderness at L4 in the midline, a positive straight leg raise bilaterally, right greater than left at 30 and 45 degrees respectively, paraspinous spasm with no radiation. Dr. Chien opined that the claimant was probably suffering from an L4 disc syndrome and a lumbar MRI was ordered.

Fax Rcvd: 01/15/07 5:03:55 PM

R-0508

(Page 310 of 427)

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 4

03/14/2006          Proctor Hospital; Lumbar MRI Report (with & without contrast):
                    Report dated 03/14/2006 revealed degenerative disc disease at
                    L3-4, L4-5, and L5-S1 with age indeterminate posterior central
                    annular tears of the L3-4 and L4-5 discs.

03/15/2006          Dzung H. Dinh, M.D. (Associated University Neurosurgeons):
                    Examination revealed right low back pain during her left lower
                    extremity exam, positive straight leg raise bilaterally, right at
                    25 degrees and left and 30 degrees, strength was 5/5, reflexes
                    were normal and sensation was intact.    The claimant was
                    scheduled for an epidural steroid injection, physical therapy
                    was ordered, and Valium was added to her medication regimen
                    for back spasms.

03/15/2006          Proctor Hospital; Epidural Steroid Injection Operative Report:
                    Report dated 03/15/2006 was authored by Dr. Bruce Chien.
                    The diagnosis listed was herniated L4 nucleus pulposus and
                    the procedure listed was a midline L4 epidural steroid
                    injection. The claimant tolerated the procedure well and noted
                    improvement of her pain.

03/23/2006          Proctor Hospital; Cervical MRI without contrast: Report dated
                    03/23/2006 noted the MRI was ordered by Dr. Chien for the
                    diagnosis of right C6 radiculopathy with numbness in the right
                    hand and weakness in the left hand. The reported noted the
                    MRI was negative for herniations or spinal stenosis.

04/03/2006 &
04/04/2006          Richard A. Flores, M.D. (Central Illinois Rehabilitation
                    Associates): Dr. Chien referred the claimant to Dr. Flores for
                    EMG & Neurosensory testing for C6 radiculopathy and
                    numbness in her hands and toes. The claimant gave a history
                    of low back pain beginning on 03/09/2006 with numbness and
                    tingling of the upper and lower extremities developing within
                    the following few days. She noted that she had lost strength
                    and fine motor control of her hands. The claimant complained
                    of numbness and tingling in her bilateral feet and hands,
                    weakness in her hands, neck pain, and low back pain.
                    Examination revealed equivocal Tinel's for carpal tunnel
                    syndrome and cubital tunnel syndrome in the upper
                    extremities bilaterally and tarsal tunnel syndrome in the lower
                    extremities bilaterally.

Fax Rcvd: 01/15/07 5:03:55 PM

Fax Rcvd: 01/15/07 5:03:55 PM

Medical Consultants Network
Independent Medical Evaluation
Melissa Gardner
January 8, 2007
Page 5

EMG testing was consistent with bilateral mild to moderate denervation in the ulnar nerve distribution from the elbow distally and mild bilateral L4 radiculopathies.

Neurosensory Testing of the upper and lower extremities was consistent with moderate to severe bilateral sensory polyneuropathy with beginning axonal loss especially in the lower extremities.

Grip and pinch testing showed marked reduction of grip strength to 56% of expected normal in the right hand and 34% in the left hand, with the predominance of loss in the ulnar innervated muscles rather than the median innervated muscles.

04/17/2006 &
04/18/2006    Saint Francis Medical Center; Epidural Steroid Injection: The operative report was dated 04/17/2006 and was authored by Dr. Bruce Chien.    The diagnosis listed was bilateral L4 radiculopathy and left C7 radiculopathy. The procedure listed was a midline L4 epidural steroid injection.

During the procedure, the claimant had a sense of aching down both buttocks and thighs. Dr. Chien opined that the claimant likely had intradiskal disease because of her pain pattern and failure to respond to treatment. A discogram was ordered.    On 04/18/2006, Dr. Chien excused the claimant from work until 05/06/2006.

04/20/2006    Proctor Hospital; L4-L5 Diskogram: Report dated 04/20/2006 revealed concordant 7 out of 10 pain with injection of the L4-L5 disc space and significantly diminished disc turgor at the same level with evidence of penetration of contrast at least into, if not through the annular region posteriorly.

Lumbosacral CT after injection of L4-5 disc with contrast:    Report dated 04/20/2006 revealed evidence of disruption of the L4-L5 disc annulus posteriorly with extension of contrast to the posterior annulus near the midline into the epidural space and also to the left along the left.

05/03/2006    Bruce B. Chien, M.D.: A dictated note to AT&T authored by Dr. Chien indicated that the claimant had a ruptured L4 disc and bilateral lumbar radiculopathy; she could not sit or stand for any period more than about three minutes. He opined that

Medical Consultants Network
Independent Medical Evaluation
Melissa Gardner
January 8, 2007
Page 6

she was completely disabled from all work at the current time. He noted that she was waiting to see Dr. Dinh regarding disc replacement vs. fusion.

06/16/2006 thru
06/28/2006          Dzung H. Dinh, M.D.:   Dr. Dinh recommended that the claimant continue with her current pain medications and try a course of water therapy.   Interdiscal blocks were ordered for further diagnosis and the claimant was continued off work.

07/24/2006          Proctor Hospital; L4 & L5 Intradiskal block and diskography: Report dated 07/24/2006 was authored by Dr. Bruce Chien. Diagnosis listed was L4 & L5 intradiskal pain.
                    The claimant was injected into the center one-third zone of the L4 disk space.  A good discal outline was seen with very minimal extravasation into the epidural space.  The claimant was asked to stand and walk and within one minute, she noted her discomfort was much reduced.  Upon returning to the operating bed, her discomfort was gone and she moved much more easily.
                    The claimant was injected into the right side of the L5 disk space.  The claimant was again asked to ambulate and noted left buttock and posterior thigh discomfort.  PA and lateral views were taken (no report was available).
                    The claimant was injected into the left side of the L3 disk space.  The claimant was again asked to ambulate and after a two minute walk noted that her discomfort had not changed. (It was noted that the image of the L3 disk was of good turgor and without extra discal leak).

08/04/2006          Dzung H. Dinh, M.D.:  The claimant's pain was constant at this point, rated at 9/10 with some improvement while in the water, but the pain returned within 30 minutes of discontinuing pool therapy.  Dr. Dinh noted that the claimant had pain relief for 15 minutes after the L4-5 block in July.  Dr. Dinh opined that the claimant was a candidate for an artifical disk replacement surgery.  He stated that he would contact Dr. Chien regarding interim pain management for the claimant with either a trial of a Dorsal Column Stimulator or intrathecal pain pump.

(Page 313 of 427)

01/15/07 14:02:09    MEDICAL CONSULTANTS->    HylaFAX Medical Consultants    Page 008

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 7

08/24/2006 &
09/07/2006    Bruce B. Chien, M.D.:  In a letter dictated to Dr. Miller, Dr. Chien stated that the claimant had a known freely ruptured L4 disc without much improvement, that walking was limited to about 100 feet, the claimant had to sleep on her side and that after driving about 15 minutes she noted pain paraspinally on the left side at about the iliac crest.  He noted that her examination on 08/24/2006 revealed a positive straight leg raise bilaterally, with the left producing left paraspinal pain at the level of the iliac crest at 45 degrees and the right producing pain in the left buttock at 45 degrees.  Dr. Chien opined that he did not wish to proceed with a spinal pump implant as a temporary maneuver and that the DCS was not appropriate for the claimant's distribution of pain.   The claimant was instructed to take only two Vicodin per day while awaiting the clinical release of the Charite disc.

In a letter dictated to AT&T on 09/07/2006, Dr. Chien indicated the claimant had an open L4-5 disc with concordant history and symptoms.  He believe the claimant was totally disabled from work due to the fact that she could not sit or stand for any period of time more than three minutes and should not work until she had surgical intervention.  He noted that the surgical community had indicated the claimant should wait for the release of the Charite disc.  He further opined that the distribution of her pain was not conducive to DCS suppression.

DIAGNOSTIC REVIEW:
I reviewed several diagnostic films.  The first was a lumbar MRI dated March 14, 2006, which showed an annular tear at L4-5.  This was seen only on the sagittal views.

I also reviewed a cervical MRI, which simply showed mild degenerative disc disease.

Next, I reviewed a lumbar CT scan dated April 20, 2006.  That CT scan showed an annular tear at L4-5, which was midline.

Finally, I reviewed a discogram, which was a one level procedure performed on April 20, 2006 at the L4-5 level.  The discogram showed chronic degenerative disc disease.

Fax Rcvd: 01/15/07 5:03:55 PM

Medical Consultants Network
Independent Medical Evaluation
Melissa Gardner
January 8, 2007
Page 8

NEUROLOGIC EXAMINATION:
Ms. Gardner appeared to be uncomfortable while sitting through the interview process. During the examination, she limits movement of her back, but she has a normal lumbar lordosis. Her straight leg-raising test is negative in a sitting position to 90°. Deep tendon reflexes are equal, symmetrical, and normal at the knees and ankles. She has normal strength, a normal gait, and she can walk on her heels and toes without difficulty.

IMPRESSION:
After obtaining a narrative history, performing a neurologic exam, and reviewing medical records and several diagnostic studies, it is my opinion that Ms. Gardner has degenerative disc disease of her lumbar spine. This opinion is supported by the findings on her diagnostic studies, which revealed an annular tear at the L4-5 level that is midline in location.

CONCLUSION:
Ms. Gardner's history is significant for prior episodes of back pain that lasted anywhere up to a week and then cleared. In my opinion, the changes seen on Ms. Gardner's diagnostic studies appear to be degenerative in nature. Furthermore, Ms. Gardner did not experience any injury per se at the time of her acute onset of pain, but rather she merely experienced pain when she rose from a chair, and then this back pain gradually worsened. When Ms. Gardner stood up from a seated position at work, she was not lifting, twisting, or bending. Therefore, it is my opinion that Ms. Gardner's acute onset of pain in March 2006 is related to her degenerative disc disease and is not an occupational injury.

RECOMMENDATIONS:
In regards to Charite disc replacement, the chances of improvement are reported to be 57%, which is no better than the natural history of the disease itself.

Another approach would be to consider an anterior lumbar fusion or possibly a posterior hemilaminotomy.

Irrespective of what type of treatment Ms. Gardner elects to proceed with, it is my opinion that any medical and/or surgical treatment is for her underlying degenerative disc disease and is not related to her employment at SBC Communications.

Medical Consultants Network
Independent Medical Evaluation
  Melissa Gardner
  January 8, 2007
  Page 9

## SPECIFIC INTERROGATORIES:

1.    What is your evaluation of Ms. Gardner's medical condition?

Response:    After obtaining a narrative history, performing a neurologic exam, and reviewing medical records and several diagnostic studies, it is my opinion that Ms. Gardner has degenerative disc disease of her lumbar spine. This opinion is supported by the findings on her diagnostic studies, which revealed an annular tear at the L4-5 level that is midline in location.

2.    What is her prognosis?

Response:    Ms. Gardner's prognosis is guarded based on her repeated episodes of low back pain and multilevel involvement of the lumbar discs. In the past, her episodes of back pain have cleared; however, this current episode has remained refractory to significant attempts at conservative management. Although Ms. Gardner has failed to respond to conservative treatment, I am reluctant to recommend any type of surgical intervention given the nature of the changes on her MRI.

3.    Does her treatment plan seem reasonable to date?

Response:    After reviewing the medical reports, it is my opinion that Ms. Gardner's treatment and workup has been reasonable; however, I consider her treatment to be related to a pre-existing condition and not related to her occupation. In regards to Charite disc replacement, the chances of improvement are reported to be 57%, which is no better than the natural history of the disease itself.

Another approach would be to consider an anterior lumbar fusion or possibly a posterior hemilaminotomy.

4.    Please comment on Ms. Gardner's activities of daily living.

Response:    Ms. Gardner indicated that standing and walking aggravates the pain but the pain will improve if she lies down. She reports that overall her back pain is worse than the leg pain. Ms. Gardner is also on a combination of Lyrica, Tramadol, Nabumetone, and Hydrocodone to control her pain. Without these medications, she rates the pain at "10 to 15" on a scale of 0 (no pain) to 10 (the worst imaginable pain), but with the medication the pain will decrease to 5 or 6/10.

Fax Rcvd: 01/15/07 5:03:55 PM

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 10


6.    How does Ms. Gardner's medical condition interfere with her ability to perform the essential functions of the Marketing Support Specialist?

Response:  In my opinion, Ms. Gardner's medical condition should not prevent her from working given the sedentary nature of her job; however, the following factors could indirectly interfere:

    1.    By history, the prolonged drive to and from work everyday (East Peoria, IL to Springfield, IL/Springfield to East Peoria).
    2.    The fact that standing and walking exacerbate the pain.
    4.    The only alleviating factor by history is when Ms. Gardner lies down.
    5.    Her current regimen of pain medications.

7.    Please comment on Ms. Gardner's functional abilities.

Response:  Ms. Gardner's job as a marketing specialist is a sedentary position and requires no physical modification in her work duties other than possibly changing positions as needed for comfort measures.

8.    Do Ms. Gardner's symptoms match her functionality and your understanding of her medical condition?

Response:  During the examination, Ms. Gardner appeared to be uncomfortable and she limited any movement of her back.  In my opinion, Ms. Gardner's current symptoms are consistent with the diagnostic findings.

9.    Is Ms. Gardner able to return to her full duty position as a Marketing Support Specialist?

Response:  Ms. Gardner's job as a marketing specialist is a sedentary position and requires no physical modification in her work duties other than possibly changing positions as needed for comfort measures.

10.    If no, please state specific work restrictions and the duration.

Response:  None.

11.    Please specify any accommodations, which may be needed regarding her medical condition.

Response:  One might consider possibly accommodating Ms. Gardner in terms of allowing her to change positions as needed for comfort measures.

Fax Rcvd: 01/15/07 5:03:55 PM

Fax Rcvd: 01/15/07  5:03:55 PM

Medical Consultants Network
Independent Medical Evaluation
    Melissa Gardner
    January 8, 2007
    Page 11


12.    Has the claimant reached maximum medical improvement?

Response:  In this case, maximal medical improvement does not apply, as I do not consider the acute onset of pain to be related to an occupational injury.

13.    In your opinion is it appropriate to await the approval of the Charite procedure?  Is this her best option for optimal improvement?

Response:  In regards to Charite disc replacement, the chances of improvement are reported to be 57%, which is no better than the natural history of the disease itself.

Another approach would be to consider an anterior lumbar fusion or possibly a posterior hemilaminotomy.

Irrespective of what type of treatment Ms. Gardner elects to proceed with, it is my opinion that any medical and/or surgical treatment for this acute onset of pain is related to the underlying degenerative disc disease and is not related to her employment at SBC Communications.


The above analysis is based upon the available information at this time, including the history given by the examinee, the medical records, the diagnostic tests provided, and the physical findings.  It is assumed that the material provided is correct.   If more information becomes available at a later date, an additional report may be requested.  Such information may or may not change the opinions rendered in this evaluation.

Thank you for asking me to see Melissa Gardner for an Independent Medical Evaluation.  If you have any further questions or concerns, please do not hesitate to contact me.

                    Sincerely,

                    *Steven Delheimer, M.D.*

                    Steven C. Delheimer, M. D.
                    Neurosurgeon
                    Consultant


scd/jd
FC: 01-15-2007



### ERISA LAW GROUP LLP

2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (888) 883-7472
Facsimile: (559) 256-9795

July 9, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

AT & T Integrated Disability Service Center
PO Box 14627
Lexington, KY 40512

*VIA TELEFAX (866)224-4627*
*AND U.S. MAIL*

| | |
|---|---|
| Claimant: | Melissa Gardner |
| Employer: | AT & T |
| RE: | Short Term Disability (STD) and Long Term Disability (LTD) |

**To whom it May Concern:**

I represent Ms. Melissa Gardner ("Claimant") in the above referenced matter. By letter dated January 22, 2007, Ms. Gardner's Long Term Disability benefits were denied effective March 19, 2007.

In your January 22, 2007 letter you wrote that Claimant has a 180 day appeal period. At this time I am requesting a copy of your records so that I can file an appeal of the denial, which I calculate is due on July 21, 2007. Please advise if you disagree with my calculations.

Pursuant to 29 CFR Section 2560.503-1 I am requesting that you provide to me, free of charge, copies of all documents, records and other information relevant to Claimant's claim for benefits. As you know, a document, record or other information is relevant to a claimant's claim if such document, record or other information was relied upon in the making of the benefits termination; was submitted, considered, or generated in the course of making the benefit determination, without regard to whether it was relied in making the benefit determination; demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of Section 2560.503-1; or constitutes a statement of policy or guidance with respect to the plan concerning the benefit without regard to whether such advise or statement was relied upon in making the benefit determination. I also request free of charge a copy any internal rule, guideline, protocol, or other similar criterion that was relied upon in making the adverse determination. Finally, you are required to have claims procedures that contain administrative processes and safeguards designed to insure and to verify that benefit claims determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. Please provide all applicable and relevant claims procedures regarding this claim.

41070714458903

07/14/2007

R-0517

AT & T Integrated Disability Service Center
July 9, 2007
Page 2

In accordance with the foregoing legal standards, my request for copies of documents includes, but is not limited to:

1. All documents obtained by you from any source at any time in evaluating Claimant's claim for benefits.

2. Claimant's claim for benefits.

3. All documents requesting authorizations to obtain Claimant's medical records.

4. All documents showing efforts to obtain Claimant's medical records.

5. All medical records obtained regarding the Claimant.

6. All documents setting forth any reviews or analysis of Claimant's medical records.

7. All documents setting forth Claimant's job descriptions, job duties, and/or any other efforts to determine exactly what the claimant did.

8. All communications between you and Claimant's employer.

9. All records of all communications between you and Claimant.

10. All documents demonstrating or setting forth any all efforts to determine Claimant's ability to perform Claimants job or any other job for which Claimant is reasonably fitted by education, training, or experience.

11. The plan, with all amendments.

12. To the extent not otherwise provided, a copy of your entire file and all other files regarding or referencing claims by this Claimant.

Enclosed please find a copy of the claimant's authorization for me to handle her insurance claim.

Very truly yours,

Robert J. Rosati

RJR/caf

cc:    Melissa Gardner

07/14/2007

R-0518

CLIENT DESIGNATION OF ATTORNEY
TO HANDLE INSURANCE CLAIM

April 4, 2007

To:    Sedgwick Claims Management Services, Inc.

Attention:          Disability Claims Manager

Claimant:           Ms. Melissa Gardner
Policy Number:

Pursuant to Title 10, Section 2695.2(e) of the California Code of Regulations, I authorize my attorneys, Thornton Davidson and Robert J. Rosati to handle the claim of Ms. Melissa Gardner, under the above-captioned loss, and to obtain a copy of her records from the insurance company.

This authorization shall be valid for only one (1) year from the date below unless renewed or revoked by the undersigned. Any and all prior authorizations are hereby revoked by the undersigned as of the date of this authorization.

DATED: _April 5, 2007_          _Melissa Gardner_
                                  MELISSA GARDNER

Address and Telephone Number of Insured:

124 Putnam Street
East Peoria, IL 61611

(309) 256-9393

7071400458589



FRESNO CA 937

09 JUL 2007 PM 1 L

AT & T Integrated Disability Service Center
PO Box 14627
Lexington, KY 40512



ERISA LAW GROUP LLP
2055 San Joaquin Street
Fresno, CA 93721

7071400458903

41070714458903

07/14/2007

R-0520

**Sedgwick Claims Management Services, Inc.**

To:              ACS
Fax Number:      8598256886

From:            Perez, Jose
Fax Number:

Date:            July 20, 2007
Subject:         GARDNER, MELISSA A625007022-0001-01.doc

Memo:

***CONFIDENTIALITY NOTE***

The information contained in this facsimile message may be legally privileged
and confidential information intended only for the use of the individual or
entity named above. If the reader of this message is not the intended recipient,
you are hereby notified that any dissemination, distribution, or copying of this
telecopy is strictly prohibited. If you have received this telecopy in error,
please notify us immediately by calling the number listed above and return the
original message to us at the address above by the United States Postal Service.

4220070720738921                A625007022000101                07/20/2007

R-0521

(Page 323 of 427)

07/20/2007 4:20:22 PM -0500 SEDGWICK CMS                    PAGE 2    OF 2

## AT&T Integrated Disability Service Center
### Quality Review Unit
*As Administered by Sedgwick CMS*

P.O. Box 14626; Lexington, KY 40512; Telephone 866-276-2278; Facsimile 866-856-5065

July 20, 2007

MELISSA GARDNER
124 PUTNAM STREET,
E PEORIA, IL 61611

Re:    Ameritech Sickness and Accident Disability Benefit Plan
       Claim Number: A625007022-0001-01

Dear Ms. Gardner:

This letter serves to acknowledge receipt of your request for appeal of benefits denied under the
Ameritech Sickness and Accident Disability Benefit Plan. Your request for appeal was received
in the AT&T Integrated Disability Service Center on 07/19/2007.

Your request for appeal of benefits denied will be reviewed by the AT&T Integrated Disability
Service Center (IDSC) Quality Review Unit and you will receive a written response by
09/02/2007.

Under the terms of Section 2, Paragraph 2.4 of the Sickness and Accident Disability Benefit
Plan, disability is defined, in part, as,

> "a sickness or injury, supported by objective medical documentation, that prevents the
> Eligible Employee from performing the duties of his/her last Company or Participating
> Company-assigned job with or without reasonable accommodation..."

If you have any questions regarding the information contained in this letter, you may contact the
AT&T Integrated Disability Service Center (IDSC) Quality Review Unit at 1-866-276-2278.

Sincerely,

Jose Perez
ERISA Specialist
AT&T Integrated Disability Service Center

86-A-81 mpt_bsp_d412_d144.tmp_GARDNER, MELISSA A625007022-0801-01.doc 01-06

4220070720738921                    A625007022000101                    07/20/2007

**R-0522**

07/20/2007 4:27:47 PM        SEDGWICK CMS                    PAGE 2    OF 3

***Please make changes and return if any of the information below is incorrect***

---

**AT&T Integrated Disability Service Center (IDSC)**
**REQUEST FOR DISABILITY BENEFIT APPEAL NOTICE**
07/20/2007

---

ATTENTION: HILLARI Y FLEMING          RC: AYJ4D2060


Employee Name: MELISSA GARDNER          Employee ID:

Employee Job Title: MARKETING SUPPORT          Employee NCS Date: 02/12/2001
SPEC (SRL) [IBEW21]

IDSC Claim #: A625007022-0001-01          Plan: AIT SADBP

First Day Absent: 03/11/2006          First Day of Disability: 03/20/2006


*APPEAL STATUS*
➢  Appeal Received Date: 07/19/2007

➢  Best Estimated Appeal Decision Date: 09/02/2007

Please be sure to notify the IDSC on the first day your employee returns to work.

*CLAIM STATUS*
➢  Disability Benefits Approved from 03/20/2006 through 01/18/2007

➢  Disability Benefits Denied (if applicable) 03/21/2007 through
   02/20/2007 through 03/20/2007
   01/19/2007 through 02/19/2007

➢  Maximum potential for short term disability benefits under the plan: 05/18/2007

*OTHER IMPORTANT INFORMATION*
➢  Supervisor Contact Information - Notices are automatically generated and sent to the employee's
   supervisor as listed in Webphone. If you do not handle disability issues for this employee, please
   forward to the appropriate person. If Webphone is incorrect, update with the correct supervisory
   information.
➢  Disability Resources
      o  Contact the IDSC at 1-866-276-2278 or reply to this notice if you have questions
         regarding the information provided.
      o  AT&T Disability Status Web site: http://hrweb01.AT&T.com/disability/index.cfm
➢  Time Reporting – For additional information on disability time reporting visit
   http://eLink.AT&T.com. It is important that you verify your employee's time reporting once
   you receive this notice to ensure pay accuracy.
➢  Denied Disability Process - For additional information in managing an employee's absence in
   the event that s/he is denied disability the supervisor may refer to the Denied Disability Process
   which is located on the Attendance Management web site

---

4220070720745721               A625007022000101                    07/20/2007


R-0523

07/20/2007 4:27:47 PM        SEDGWICK CMS              PAGE 3    OF 3

(http://hrweb01.AT&T.com/attmgmt/login.asp) and the HR Reference Portal
(https://ebiz2.AT&T.com/hrprefportal/). It is recommended that you consult with Human
Resources, Labor Relations, and Legal prior to making employment decisions for an employee
who has been denied disability benefits.

*PLAN KEY*

| Disability Plan Name | Acronym |
| --- | --- |
| AT&T Disability Income Plan | AT&T DIP (60) |
| AT&T Disability Income Plan | AT&T DIP (50) |
| AT&T Disability Benefits Plan | AT&T DBP |
| SNET Disability Benefits Plan | SNET DBP |
| Ameritech Sickness and Accident Disability Benefit Plan | AIT SADBP |
| Ameritech Long Term Disability Plan | AIT LTD |
| Pacific Telesis Group Comprehensive Disability Benefits Plan | PTG CDBP |
| Southwestern Bell Corporation Sickness and Accident Disability Benefit Plan | AT&T SADBP |
| Pacific Telesis Group Sickness and Accident Disability Benefit Plan | PTG SADBP |

hf1383@att.com

07/20/2007 4:27:47 PM        SEDGWICK CMS                    PAGE 1    OF 3

Sedgwick Claims Management Services, Inc.

To:          ACS
Fax Number:  8598256886

From:        Perez, Jose
Fax Number:

Date:        July 20, 2007
Subject:     GARDNER, MELISSA A625007022-0001-01

Memo:

***CONFIDENTIALITY NOTE***

The information contained in this facsimile message may be legally privileged
and confidential information intended only for the use of the individual or
entity named above. If the reader of this message is not the intended recipient,
you are hereby notified that any dissemination, distribution, or copying of this
telecopy is strictly prohibited. If you have received this telecopy in error,
please notify us immediately by calling the number listed above and return the
original message to us at the address above by the United States Postal Service.

4220070720745721              A625007022000101                  07/20/2007

R-0525

Jul 26 2007 10:49AM    HP LASERJET FAX                    p.1

# FACSIMILE COVER SHEET

DATE:              July 26, 2007 _____  File No.:

TO:                Quality Review Unit

RE:                *Melissa Gardner*

FACSIMILE NO.:     866-856-5065

From: Jill A. Fulkes *for* The ERISA Law Group

| DOCUMENTS | NUMBER OF PAGES EXCLUDING COVER SHEET |
|---|---|
| Correspondence | 1 |

If you do not receive all pages, please telephone us immediately at 559-256-9800 ext. 28.

Message: **Entire appeal following via U. S. Mail.**

CONFIDENTIAL NOTICE: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to the above address via the U.S. Postal Service. Postage will be reimbursed. Thank you.

422007072600537021              A625007022000101              07/26/2007

R-0526

(Page 328 of 427)

Jul 26 2007 10:49AM    HP LASERJET FAX                                    p.2



**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:      (559) 256-9800
Facsimile: (559) 256-9795

July 26, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jin Fulkes - Administrator

AT&T Integrated Disability Service Center          *VIA FACSIMILE: 866-856-5065*
Quality Review Unit                                *AND U. S. MAIL*
PO Box 14626
Lexington, KY 40512

STD Claim No.: A625007022-0001-01

To Whom it May Concern:

I received a call from Steve Kane, Appeal Specialist. In the course of our conversation:

1.     He told me that the PO Box to which I had sent the hard copy of the appeal was an old PO Box. Therefore, I am resending the entire appeal to the new PO box.

2.     He requested that I reference the STD claim number above.

3.     In reference to my request for copies of any medical reviews and an opportunity to respond to them in advance of a final decision on appeal, he advised that it was not procedure to do so.

In any event, enclosed please find an additional copy of the appeal and all supporting documents. If I obtain any additional medical records before the deadline of August 7, 2007 I will notify you and submit them promptly.

Thank you for your cooperation in this matter.

Very truly yours,

Robert J. Rosati

RJR/jaf

cc:    Melissa Gardner

422007072600537021                          A625007022000101                    07/26/2007

R-0527

07/25/2007 11:15:31 AM -0500 SEDGWICK CMS                 PAGE 1    OF 3

Sedgwick Claims Management Services, Inc.

To:              ERISA scan only
Fax Number:      +18598256886

From:            Stephen Kane, LCSW
Fax Number:      866-856-5065

Date:            July 25, 2007
Subject:         A625007022000101

Memo:
A625007022000101

<<ViewONE_Pro_document_(2_pages).tif>>

***CONFIDENTIALITY NOTE***

The information contained in this facsimile message may be legally privileged
and confidential information intended only for the use of the individual or
entity named above. If the reader of this message is not the intended recipient,
you are hereby notified that any dissemination, distribution, or copying of this
telecopy is strictly prohibited. If you have received this telecopy in error,
please notify us immediately by calling the number listed above and return the
original message to us at the address above by the United States Postal Service.

4220070725640121              A625007022000101                 07/25/2007

R-0528



### ERISA LAW GROUP LLP
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:     (888) 883-7472
Facsimile: (559) 256-9795

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

July 17, 2007

AT & T Integrated Disability Service Center       *VIA TELEFAX (866)224-4627*
PO Box 14627                                      *AND U.S. MAIL*
Lexington, KY 40512

Claimant:       Melissa Gardner
Employer:       AT & T
RE:             Short Term Disability (STD) and Long Term Disability
                (LTD)

To Whom it May Concern:

This is to clarify that we represent Ms. Melissa Gardner in the above referenced matter for both her short and long term disability.

Very truly yours,

Robert J. Rosati

RJR/caf

cc:    Melissa Gardner

R-0529

**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721

40512144627

AT & T Integrated Disability Service Center
PO Box 14627
Lexington, KY 40512



FRESNO CA 937
17 JUL 2007 PM 1 T

A625007022000101

R-0530

(Page 332 of 427)

07-25-07    01:26pm    From-Network Fax                          T-186  P.001    F-363

12 of 14

7/25/07

Case File?

# A625007022000101

R-0531

07-25-07    01:26pm    From-Network Fax                                    T-186   P.002   F-363
        Jul 19 2007 2:50PM    HP LASERJET FAX                                              P.1

# FACSIMILE COVER SHEET

DATE:                    July 19, 2007 _____  File No.:

TO:                      Quality Review Unit

RE:                      *Melissa Gardner*

FACSIMILE NO.:           866-856-5065

From:   Jill A. Fulkes *for* The ERISA Law Group

| | | |
|---|---|---|
| Appeal Letter & Declaration | | 15 |

If you do not receive all pages, please telephone us immediately at 559-256-9800 ext. 28.

Message:  **Supporting and referenced documents accompanying original via U.S. Mail.**

CONFIDENTIAL NOTICE: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to the above address via the U.S. Postal Service. Postage will be reimbursed. Thank you.

4220070720001321                    A625027340000101                    07/20/2007

4220070725918321                    A625007022000101                    07/25/2007

R-0532

(Page 334 of 427)

07-25-07    01:26pm    From-Network Fax                                    T-186   P.003/017   F-363
Jul 19 2007 2:50PM    HP LASERJET FAX                                                      P. 2



### ERISA LAW GROUP LLP
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:     (559) 256-9800
Facsimile: (559) 256-9795

July 19, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 691568
King Of Prussia, PA 19406

*VIA FACSIMILE: 866-856-5065*
*AND U. S. MAIL*

Re:    *Melissa Gardner*
Claim No.:    A625027340-0001-01

To Whom it May Concern:

### A.    Introduction

This is the appeal of the termination of Ms. Gardner's sickness disability benefits under the Ameritech Sickness and Accident Disability Benefits Plan and the denial of her application to apply for long term disability benefits through the Ameritech Long Term Disability Plan (collectively "the Plans"). Ms. Gardner's sickness disability benefits were terminated effective January 19, 2007, and consequently, her long term disability benefits claim was denied.

Ms. Gardner suffers from multiple back problems, including degenerative disc disease, crushed discs, ruptured, bulging discs and annular tears. She ceased working in March, 2006. She received sickness benefits through January 19, 2007.

### B.    Policy Definitions

The Plans have the following pertinent definitions:

Section 2.11 of the long term disability plan defines the waiting period as:

"'Waiting Period' shall mean the 26 weeks or 52 week period for which Sickness Disability Benefits under the Ameritech Sickness and Accident Disability Benefit Plan are payable and for which no benefits are payable under this Plan."

Section 2, paragraph 2.4 of the Sickness and Accident plan defines disability as:

4220070720001321                          A625027340000101                         07/20/2007

4220070725918321                          A625007022000101                         07/25/2007

R-0533

Review Unit
July 19, 2007
Page 2

"'Disability' or 'Disabled' during the period of 52 weeks immediately following the Waiting Period following the Waiting Period shall mean a sickness or injury or injury, supported by objective medical documentation, that prevents the Eligible Employee from performing the duties of his/her last Company or Participating Company-assigned job with or without reasonable accommodation (as determined by the Company or its delegate) or any other job assigned by the Company or Participating Company for which the Eligible Employee is qualified with or without reasonable accommodation (as determined by the Company or its delegate). For the purposes of this Plan, disabilities associated with pregnancy shall be considered disabilities due to sickness."

C.     **Basis for Appeal**

1.     The Plans's conclusion that Ms. Gardner is no longer disabled is based on clearly erroneous findings of fact: there is simply no supporting evidence for that conclusion. The evidence clearly establishes that Ms. Gardner is totally disabled and is entitled to benefits.

2.     The Plans failed to address the multiple medications Ms. Gardner is on and the effects those medications have on her ability to function, much less work.

3.     The Plans failed to consider pain as a disabling condition.

4.     The entire review of Ms. Gardner's claim was inherently unfair. AT&T hired MCN – a biased service – to obtain a "independent" medical review; MCN, in turn, hired Dr. Steven Delheimer – also a biased evaluator – to perform an IME. Delheimer was asked the "wrong questions" and therefore did not address the issues presented, although it is clear from Delheimer's objective findings that Ms. Gardner is totally disabled.

5.     The Plans failed to provide the documents requested, and required to be provided to me in order to comply with regulatory requirements regarding fair claims and appeal practices.

Each of these grounds will be addressed.

4220070720001321                    A625027340000101                         07/20/2007

4220070725918321                    A625007022000101                         07/25/2007

(Page 336 of 427)

Review Unit
July 19, 2007
Page 3

**D.**   **Ms. Gardner's Evidence**

1.   **Ms. Gardner's Medical Evidence**

3/13/06:   ER. Intractable back pain. More comfortable when she is in the left lateral decubitus position with her knees drawn to her chest. Increasing pain with both sitting as wells as leaving her legs supine.

3/14/06:   MRI. Degenerative disc disease evident by mild degenerative dehydration and loss of disc space height of the L3-L4, L4-L5, and L5-S1 discs. This is associated with posterior central annular tears of the L3-L4, and L5-L5 discs.

4/16/06:   CT. Evidence fo disruption of the L4-L5 disc annulus posteriorly with extesion of contrast to the posterior annulus near the midline into the epidural space and also to the left along the left.

4/20/06:   L4-L5 Diskogram. Concordant 7 out of 10 pain demonstrated with injection of the L4-5 disc space. There is also significant diminished disc turgor at this level, and evidence of penetration of contrast at least into, if not through, the annular region posteriorly.

4/17/06:   Chien. Midline epidural steroid injection.

5/3/06:   Chien: Ruptured L4 disc and bilateral lumbar radiculopathy. She cannot stand or sit for any period more than three minutes. She is completely disabled from all work at the current time. Waiting for consult re: L4 disc replacement v. fusion.

6/16/06:   Miller: MRI of March 14, 2006 revealed an L4-5 annular tear. After prolonged walking she develops burning in her back. She has numbness in the fingers of both. EMG revealed mild to moderate denervation of ulnar nerve of the bilateral elbows distally. Mild bilateral L4 radiculopathies in the lower extremities. Continue pain regimen.

7/24/06:   L4-5 infradiscal block and diskography.

8/4/06:   Dr. Dinh: Melissa Gardner's pain is constant and rated at 9/10 with some improvement while in the water. Pain returns after 30 minutes. She had an intradiscal block by Dr. Chien with pain relief for 15 minutes after L4-5 block.

8/9/06:   Chien: Ms. Gardner's disability centers on the need for disc replacement. The underlying condition will not change in a year, a month, or a week.

(Page 337 of 427)

07-25-07   01:27pm   From-Network Fax                                    T-186   P.006/017   F-363
Jul 19 2007 2:50PM   HP LASERJET FAX                                                          P. 5

Review Unit
July 19, 2007
Page 4

1/30/07:   Chien: "Ms. Gardner is still disabled from work. She has an open L4-5 disc
demonstrated at 4/25/06 discogram and has concordant history and symptoms.
On exam today her straight leg raising is positive on the right at 10 degrees and on
the left 30 degrees. She is unable to arise even from a chair without a 25 pound
hand assist. She has to roll to erect from bed. She should NOT work until she has
found surgical intervention. Our local surgical community, now have experienced
Phase II clinical trial of the Charite disc, feels strongly that she should wait for the
release of this product. The distribution of her pain is not conducive to Dorsal
Column Stimulator suppression. Although she could be fused, I have to defer to
our surgical opinion. She still cannot sit or stand for any period of more than 3
minutes, which is hardly compatible with the workplace."

2.     Ms. Gardner's Condition

Ms. Gardner's condition has severely limited her daily activities. She wakes up in pain,
gets out of bed, goes to kitchen, takes medication, lies down in a recliner in living room with
bowl of cereal, where she lies still for at least a couple of hours until the medicine has time to
ease some of her pain. She continue to stay in the recliner until lunch. She will go back to
kitchen and get something for lunch and return to her recliner until dinner time. She sits at their
kitchen table long enough to eat dinner with her family and then return to the recliner until bed
time. She will take a shower or bath, take her medication and go to bed with heating pad for her
back pain.

Ms. Gardner's pain and discomfort are present almost 100% of the day and night. It
would not, and does not allow her to function normally. The medication she takes to help control
the excruciating pain renders her unable to drive, work or function on her own. She depends on
her two children (ages 7 & 13 years) to help on a day to day basis, because she is unable to do for
herself. Other than doctors appointments, and occasionally going somewhere with her family she
rarely leaves her home.

3.     Ms. Gardner's Medications

| Medication | Dosage | Side-Effects |
| --- | --- | --- |
| Lyrica | 75 mg | Confusion, loss of coordination, muscle aches, pain, muscle aches, tenderness, weakness |
| Nabumetone | 500 mg | Confusion, numbness in arms or legs, selling in hands, legs or feet, persistent stomach pain, unusual joint or muscle pain, unusual tiredness or weakness, loss of appetite |

4220070720001321                    A625027340000101                    07/20/2007

4220070725918321                    A625007022000101                    07/25/2007

R-0536

(Page 338 of 427)

Review Unit
July 19, 2007
Page 5

| | | |
|---|---|---|
| Tramadol | 50 mg | Constipation, diarrhea, drowsiness, nausea, loss of appetite |
| Hydrocodone | 7.50/500 mg | Anxiety, dizziness, headache, stomach pain, trouble sleeping, weakness, loss of appetite |
| Ambien | 10 mg | Drowsiness, dizziness |
| Imitrex injection | 6 mg q 2hrs | Drowsiness, dizziness, nausea |

E.   **The Plan' Medical Evidence**

  1.   **Ms. Heather Vasquez**

  By letter dated January 19, 2007, Medical Consultants Network ("MCN")'s Heather
Vasquez, Customer Service Representative, Report Review Department wrote to Sedgwick
Claims stating, "I have reviewed the Neurological Surgery Independent Medical Evaluation
report regarding the above named claimant [Gardner] completed by Steven Delheimer, M.D. I
trust you will find this information helpful. . . . Thank you for the referral. I look forward to
working with you again in the future." It is unclear to me what review she needed to perform on
a medical doctor's report. The signature is electronically signed, so it is unclear if there were
Ms. Vasquez made changes to the original report from Dr. Delheimer.

  2.   **Dr. Steven C. Delheimer**

  Dr. Delheimer performed an IME on Ms. Gardner of January 8, 2007. Dr. Delheimer's
"impression" was:

> "After obtaining a narrative history, performing a neurologic exam,
> and reviewing medical records and several diagnostic studies, it is
> my opinion that Ms. Gardner has degenerative disc disease of her
> lumbar spine. This opinion is supported by the findings on her
> diagnostic studies, which revealed an annular tear at L4-5 level that
> is midline in location."

  Dr. Delheimer was asked how Ms. Gardner's condition would interfere with her ability to
perform the essential duties as a Marketing Support Specialist. He stated,

> "In my opinion, Ms. Gardner's medical condition should not
> prevent her from working given the sedentary nature of her job;
> however, the following factor could indirectly interfere:

4220070720001321          A625027340000101                          07/20/2007

4220070725918321          A625007022000101                          07/25/2007

R-0537

07-25-07    01:28pm    From-Network Fax                    T-186    P.008/017    F-363
     Jul 19 2007 2:51PM    HP LASERJET FAX                                        P. 8

Review Unit
July 19, 2007
Page 6

1.    By history, the prolonged drive to and from work everyday.
2.    The fact that standing and walking exacerbate pain.
3.    The only alleviating factor by history is when Ms. Garner lies down.
4.    Her current regimen of medications."

The above statement was the extent of Dr. Delheimer's evaluation of Ms. Gardner's medications.

Dr. Delheimer's <u>objective</u> findings clearly demonstrate that Ms. Gardner is totally disabled:

*    Degenerative disc disease of her lumbar spine.
*    Prognosis is guarded based on repeated episodes of low back pain and multilevel involvement of the l lumbar discs.
*    Treatment and work-up has been reasonable.
*    Only high levels of narcotic pain medications controls pain.

F.    Failure to Consider Side-Effects of Pain Medication

One question that Dr. Delheimer did not answer -- in part because he was not asked -- is whether Ms. Gardner's medication regimen disables her from work. As summarized above, Ms. Gardner takes a large number of medications, which cause confusion, drowsiness, tiredness, and dizziness. The side-effects of her medications, alone, disable Ms. Gardner. Dr. Delheimer did not address the side-effects of her medications. He had full knowledge of her medications. He should have known or could have researched the powerful effects that Ms. Gardner's narcotic medications had, and have, on her ability to function, think clearly, or even ambulate. Ms. Gardner often cannot finish complete thoughts due to this effects of the medication. She cannot remember what she was just saying, or what was told to her just minutes before. There is no way that Ms. Gardner can perform in a work environment in that condition -- independent of her physical disability. There is not an employer in existence who would hire a person in Ms. Gardner's current mental and physical condition.

Courts have held that an administrator abuses its discretion when if fails to consider the effect of the claimant's medication. In *Adams v. Prudential Ins. Co. Am.*, 280 F. Supp. 2d 731, 740-741 (N.D. Ohio 2003), the court held that the plan administrator abused its discretion by failing to consider Adams's narcotic regimen, which included Oxycontin, Demerol, Zoloft, Cardizen, and Neurontin. In *Dirberger v. Unum Life Ins. Co. of Am.* 246 F. Supp. 2d 927, 935 (W.D. Tenn. 2002) the court concluded that the plan administrator erred in failing to consider plaintiff's medications.

4220070720001321                    A625027340000101                    07/20/2007

4220070725918321                    A625007022000101                    07/25/2007

                                                                        R-0538

07-25-07   01:28pm   From-Network Fax                                T-186  P.008/017  F-363
Jul 19 2007 2:52PM   HP LASERJET FAX                                              p. 8

Review Unit
July 19, 2007
Page 7

Here, the side effects of Ms. Gardner's medications, standing alone, disable her. Furthermore, "[t]he fact that Plaintiff is on many strong medications is objective evidence that she is indeed chronically disabled." *Flanigan v. Liberty Life Assurance Co. of Boston*, 277 F. Supp. 2d 840 (S.D. Ohio 2003).

### G.   Pain is a Disabling Condition

Dr. Delheimer also was not asked and did not consider whether pain is a disabling condition and, of course, the Plans did not address Ms. Gardner's disabling condition: chronic, intractable pain.

Pain is a critical issue here. Severe pain can be so disabling as to preclude a person from performing any job for which he is reasonably qualified. *Morris v. Citibank, N. A. Disability Plan (501)*, 308 F, 3d 880, 882-885 (8th Cir. 2002): employee suffering from severe back pain as a result of herniated disc entitled to LTD benefits under the "any occupation" standard; *Spangler v. Lockheed Martin Energy Systems, Inc., supra*, 313 F. at p. 362: auditor suffering from spondylolisthesis, found to be totally disabled under the any occupation criteria.

"Medical science confirms that pain can be severe and disabling even in the absence of 'objective' medical findings; that is, test results that demonstrate a physical condition that normally causes pain of the severity claimed by the applicant." *Carradine v. Barnhart*, 360 F. 3d 751, 753 (7th Cir. 2004): Social Security case.

Here, Ms. Gardner has a well-documented medical condition which results in substantial pain. Yet, the Plans and Dr. Delheimer treat pain almost as if it is a non-issue. As Judge Posner explains in *Carradine v. Barnhart, supra*, 360 F. 3d at p. 754:

> "Pain is always subjective in the sense of being experienced in the brain. The question whether the experience is more acute because of a psychiatric condition is different from the question of whether the applicant is pretending to experience pain or more pain than she actually feels. The pain is genuine in the first, the psychiatric case, though fabricated in the second. The cases involving somatization recognize this distinction."

Judge Posner also explained that the conclusion that the applicant's testimony of disabling pain has been inconsistent with activities that she acknowledged engaging, such as performing household chores and taking walks as long as two miles was not logically substantiated because the alleged contradiction "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day, five consecutive days of the week." *Id*, at p 755. In *Carradine* "the applicant did

4220070720001321                    A625027340000101                    07/20/2007

4220070725918321                    A625007022000101                    07/25/2007

R-0539

07-25-07    01:28pm    From-Network Fax                                    T-186   P.010/017   F-383
Jul 19 2007 2:52PM    HP LASERJET FAX                                                         P. 9

Review Unit
July 19, 2007
Page 8

not claim to be 'in racking pain' every minute of the day. When she feels better for a little while, she can drive, shop, do housework. It does not follow that she can maintain concentration and effort over the full course of the work week. (¶) In addition, activities such as walking in the mall and swimming are not necessarily transferrable to the work setting with regard to the impact of pain. A patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Carradine* at p. 756.

The same types of analyses apply here.

That a person has a sedentary job does not mean that he or she cannot be disabled by pain. In *Sabatino v. Liberty Life Assurance Co. of Boston*, 286 F. Supp. 2d 1222, 1231 (N.D. Cal. 2003) the court explained that the defendant's medical opinion was "suspect" because it:

> "ignored the principal basis of the Plaintiff's claim for benefits and mischaracterized the facts from the Plaintiff's medical history. The crux of Plaintiff's claim for disability benefits is severe and chronic pain and the cognitive impairments caused by the pain medication she must take to manage this pain. Plaintiff was employed as an engineer, which may be a sedentary occupation, but one which requires careful thought and concentration. Simply being able to perform sedentary work does not necessarily enable one to work as an engineer."

Similarly, in *Krizek v. Cigna Group Insurance*, 345 F. 3d 91 (2d Cir. 2003), the plaintiff suffered from severe pain, fatigue and other problems. *Id.* at p. 94. *Krizek* rejected the district court's decision not to credit pain complaints; that decision was based in part on volunteer work with the Special Olympics. *Krizek* held that the record was simply void of any basis for the district court's decision that volunteer work with the Special Olympics undermined the credibility of plaintiff's pain complaints and found that the district court's conclusions were clearly erroneous. *Id.* at pp. 100-101. "There was no evidence showing that her duties with the Special Olympics were at all tantamount to performing all the essential duties of any occupation for which Krizek is or may reasonably become qualified, within the meaning of the plan's definition of total disability. Nor was there any evidence showing Krizek was able to perform these duties without the aid of pain medication." *Krizek*, at p. 100. (Internal quotations and parenthesis omitted.)

Here, acute and chronic intractable pain disables Ms. Gardner from her own or any job. The Plans and Dr. Delheimer simply ignored this issue.

Review Unit
July 19, 2007
Page 9

**H.     Dr. Delheimer is Biased and The Plans Investigation was Unfair**

The failure of the Plans and of Dr. Delheimer to address the obvious issues of this case –
pain and the side effects medication prescribed to control pain – begs the question: why didn't
you consider the real issues of the case?  The answer is apparent: the Plans chose to conduct an
unfair investigation and chose to use a biased doctor to effectuate its unfair investigation. Dr.
Delheimer has a business of providing medical reviews. A print out of his website for
"Innovative Medical Evaluations" is enclosed.  For this particular review, Dr. Delheimer was
provided by Medical Consultants Network ("MCN"), a biased service; a print out of its website
is also enclosed.  Dr. Delheimer and MCN understand that they get all their business from
insurance companies and self-insured employers; therefore, they have a built-in bias and
incentive to provide opinions consistent with these entities requirements and interests.  Their
opinions are inherently suspect, as such.

**I.     Dr. Delheimer's Opinion is Inherently Unreasonable**

Dr. Delheimer's prognosis stated that Ms. Gardner's prognosis was "'guarded'" based on
her repeated episodes of low back pain and multilevel involvement of the lumbar discs."

Dr. Delheimer acknowledged that Ms. Gardner "appeared uncomfortable and limited any
movement of her back." He opined that her symptoms are consistent with the diagnostic findings.
Dr. Delheimer reported that Ms. Gardner's pain is aggravated by standing and walking, but the
pain improves if she lies down.  He then listed the pain medication she takes, which decreases
the pain from a 10 to a 5 or 6/10.  He then opined that other than changing positions as needed
for comfort measures, there would be no need for physical modifications for her to perform her
job.

That conclusion is nonsensical especially given Dr. Delheimer's own notations. Ms.
Gardner is unable to get comfortable unless she lies down.  Dr. Delheimer recognizes and agrees
with this.  He states that, "One might consider possibly accommodating Ms. Gardner in terms of
allowing her to change position as needed for comfort measures.  "Changing positions" is not the
issue. The issue is that Ms. Gardner must lie down in order to gain relief from her pain.

A sedentary occupation does not allow for lying down any percentage of the time while at
work.  Lying down on the job is not reasonable. Therefore, even if Ms. Gardner's only duty was
to sit in a chair, and nothing else, she could still not perform the duties of a sedentary level
occupation, based on Dr. Delheimer's own analysis.

There is no indication that Dr. Delheimer was given Ms. Gardner's specific job duties.
He states that she can perform her job because it is sedentary in nature.  In reality, her job
required, in part:

4220070720001321                    A625027340000101                      07/20/2007

4220070725918321                    A625007022000101                      07/25/2007

R-0541

(Page 343 of 427)

07-25-07   01:28pm   From-Network Fax                          T-186  P.012/017  F-363
Jul 19 2007 2:54PM   HP LASERJET FAX                                              p. 11

Review Unit
July 19, 2007
Page 10

- Accessing multiple mechanized systems while speaking with customers.
- Coordinating installation and maintenance for accurate on-time service.
- Prioritizing routing statusing.
- Discusses, investigates and resolves local service and long distance billing inquiries.
- Works to meet sales goals.
- Prepares self-composed letters.
- Follows established safety practices and procedures.

Given her condition, Ms. Gardner could not perform her own occupation or any other occupation, because she needs her full mental faculties to be able to perform her own duties and she needs to be able to sit up, at least, in order to perform them.

Dr. Delheimer repeatedly refers to Ms. Gardner's disability not being job related and spends very little time explaining how her limitations would or would not affect her ability to work at her own occupation or any other occupation.

In conclusion, the conclusions set forth in Dr. Delheimer's opinion do not provide any reasonable basis to deny benefits to Ms. Gardner.

- He does not address or consider the side effects of pain medications as a disabling condition.

- He does not address or consider pain as a disabling condition.

- He spends most of his analysis addressing issues relevant only to a workers compensation claim, but not relevant to this claim.

- His objective findings are wholly consistent that Ms. Gardner is totally disabled.

- His opinion that Ms. Gardner can work with accommodations — the accommodation being the ability, in effect, to lie down — is wholly inconsistent with reality. Even if AT&T were willing to provide Ms. Gardner with a bed at her work site so that she could lie down, I do not know how she could actually do her job lying down. Furthermore, Dr. Delheimer simply ignored the mental clouding side effects of Ms. Gardner's medications.

Thus, quite obviously, Dr. Delheimer's opinion reflects bias, not reality. AT&T should never have relied upon it.

4220070720001321                    A625027340000101                    07/20/2007

4220070725918321                    A625007022000101                    07/25/2007

R-0542

07-25-07   01:29pm   From-Network Fax                    T-186   P.013/017   F-363
Jul 19 2007 2:54PM   HP LASERJET FAX                                      P-12

Review Unit
July 19, 2007
Page 11

   In conclusion, there is no evidence supporting the Plan's action because Dr. Delheimer's opinion ignores relevant issues and is inherently unreasonable.

J.   **Ms. Gardner is Totally Disabled Under the Policy**

The objective medical evidence demonstrates that Ms. Gardner cannot:

1.   Work a full day. She lacks both the physical capacity to do so.

2.   Work a full week. Again, she lacks the physical capacity to do so on a regular basis.

3.   Work at the level required by her job, or any other job for which she is reasonably qualified.

K.   **The Plan's Claims Procedures Are Unfair**

   There are also procedural issues presented by this appeal. As the Plans undoubtedly know, the applicable regulations, set forth at 29 C.F.R. §2560.503-1, require, in pertinent part, that every employee benefit plan establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (collectively referred to as claims procedures). The regulations further explain that claim procedures are reasonable only if they comply with the specifications of the regulations, which include, as pertinent here:

*   "The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. Written notice of adverse benefit determinations shall include the specific reason or reasons for the adverse determination, reference to the specific plan provisions on which the determination is based, a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the plan's review procedures and the time limits applicable to such procedures; if an internal rule, guideline, protocol, or other similar criterion was relied upon making the adverse determination, either the specific rule, guideline, protocol or other similar criterion must be provided or none was relied upon."

*   "The claimant is entitled to full and fair review regarding any appeal. Such full and fair review includes timely notice, the opportunity to submit written

4220070720001321            A625027340000101                07/20/2007

4220070725918321            A625007022000101                07/25/2007

R-0543

(Page 345 of 427)

R-0544

Review Unit
July 19, 2007
Page 12

comments and documents, the right to be provided upon request and free of charge "all documents, records and other information relevant to the claimant's claim for benefits." "A document, record, or other information shall be considered relevant to a claimant's claim for benefits if such document, record or other information was relied upon in making the benefit determination; was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, other information was relied upon in making the benefit determination; demonstrates compliance with the administrative processes and safeguards required pursuant to the rule; constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit without regard to whether such advice or statement was relied in making the benefit determination."

* Any adverse benefit determination that is based in whole or in part on a medical judgment requires that the appropriate named fiduciary consult with a healthcare professional who has appropriate training and experience in the field in medicine involved in the medical judgment. Furthermore, the medical or vocational expert's who advice was obtained on behalf of the plan in connection with the claimant's adverse benefit determination must be identified without regard to whether the advice was relied upon in making the benefit determination.

Here, the Plans' appeal practices do not conform to the minimum standards required under the regulations. Its procedural violations clearly have impacted your substantive conclusions. Specifically:

* The initial adverse determination did not provide notice of the materials and information needed to perfect the appeal.

* Despite my request, you have provided no documents which demonstrate compliance with the administrative processes and safeguards required under the regulations. I treat this as an admission that you, as a matter of standard practice and procedure, do not comply with the requirements of the regulations. Absent identification and production of such records and the opportunity to supplement this appeal, it is my opinion that your failure to provide such records at this time constitutes a binding admission that you have failed to implement fair appeal processes and that you do not comply with regulatory minimum standards.

* As the enclosed materials from MCN's website indicate, Dr. Delheimer was required to sign a consultant agreement, submit a consultant application, provide a copy of his current CV/resume', provide documentation of Board Certification, and provide a copy of his current malpractice insurance. The form consultant

4220070720001321                    A625027340000101                    07/20/2007

4220070725918321                    A625007022000101                    07/25/2007

R-0545

04/25/2007 01:30PM 03:58From-Network Fax    202 625 9536 GAMBRO SHELTON    10562244627    T-186  P.015/019  F-363
Jul 19 2007 2:55PM    HP LASERJET FAX    p.14

Review Unit
July 19, 2007
Page 13

agreement indicates that the consultant "agrees that he or she has reviewed the 'Consultant's Manual' and further agrees that he or she shall comply with the protocols contained therein when providing consultation services for this agreement." (Paragraph 9.) All of these documents are documents which should have been provided to Ms. Gardner for appeal under the authority cited above. None, of course, were provided.

Therefore, Ms. Gardner is not being given a fair appeals process.

**K.**    **Records Submitted**

*    All medical records referenced above.

*    Ms. Gardner's Declaration.

*    Medication information found at www.drugs.com.

*    MCN/Delheimer information.

**L.**    **Conclusion**

The termination of benefits to Ms. Gardner violated the terms of the Plans. Therefore, this appeal should be granted, benefits should be paid retroactively to her under both the Sickness Plan and the LTD Plan, with interest, and future benefits should be paid to her until and unless she is no longer eligible for benefits under the terms of the Plan.

In the course of reviewing this appeal, if further medical vocational opinions generated, please provide them to me for evaluation and comment prior to your final determination.

Very truly yours,

Robert J. Rosati

RJR/jaf

cc:    Melissa Gardner

4220070720001321    A625027340000101    07/20/2007

4220070725918321    A625007022000101    07/25/2007

R-0546

## DECLARATION OF MELISSA GARDNER

I, Melissa Gardner, declare and state as follows:

1.   I make this declaration in support of my appeal of the denial/termination of my
     Short and Long Term Disability benefits.

2.   My education is as follows:
     Associate Degree in Business Administration

3.   My work experience is as follows:
     I did Home Health Care for the elderly, and worked as a cashier at various local
     businesses until college.  Three years after I graduated from college I was hired at
     AT&T (SBC Comm.) where I continued to work until the time of my injury.

4.   I have not worked since March 2006.

5.   I am suffering from moderate to severe degenerative disc disease, crushed discs
     and ruptured and bulging discs. (L4 & L5 are ruptured and crushed, L3 & S1 are
     bulging and showing early signs of rupturing, and at least 2 other discs in my neck
     are also bulging and showing early signs of rupturing.)

6.   I have the following symptoms:
     I have constant pain in my middle and lower back, radiating down my entire left
     hip, leg, calf and foot. Where I suffer numbness in the toes of my left foot. I have
     almost constant headaches and returning migraines from the pain in my neck and
     shoulder area. I have experienced a loss in my appetite from the pain and
     medications. I'm almost always tired and moody.  I also suffer from short term
     memory loss due to the amount of medication I am on.

7.   I take the following medications and experience the following side-effects:

| Medication | Dosage | Side-effect |
| --- | --- | --- |
| NABUMETONE | 1 - 500mg tab twice daily | Drowsiness & Dizziness |
| CARISOPRODOL | 1 - 350mg tab 4 times daily | Drowsiness & Dizziness |
| TRAMADOL | 1 - 50mg tab 4 times daily | Drowsiness & Dizziness |
| HYDROCODONE | 1 - 7.5/500mg tab every 6hrs. | Drowsiness & Dizziness |
| AMBIEN | 1 - 10mg tab @ bedtime | Drowsiness & Dizziness |
| IMITREX injections | 1 - 6mg inject. every 2 hrs. as needed | Drowsiness & Dizziness |
|  | Not to exceed 2 doses in 24 hrs. | Nausea |

9.   In a typical day this is what I do:
     Wake up in pain, get out of bed, go to kitchen (next room) take medication, go lay
     down in recliner in living room (next room) with bowl of cereal, where I lay still
     for at least a couple of hours until the medicine has time to ease some of my pain.
     I continue to stay in the recliner until lunch, where I then go back to kitchen and
     get something for lunch, maybe help my boys with theirs if they need it, and
     return to my recliner until dinner time. Then I sit at our kitchen table long enough
     to eat dinner with my family and then return to the recliner until bed time. I then
     either, take a shower or bath, and then take my medication and go to bed with
     heating pad around my back.

4220070720001321                    A625027340000101                    07/20/2007

4220070725918321                    A625007022000101                    07/25/2007

R-0547

10.     I cannot work because:
        The pain and discomfort I have almost 100% of the day and night would not, and
        does not allow me to function normally. The medication I have to take in order to
        not be in excruciating pain makes me unable to drive, work and function on my
        own. I greatly depend on my two children (ages 7 & 13 years) to help on a day to
        day basis, because I am unable to do for myself. Other than doctors appointments,
        and occasionally going somewhere with my family I rarely leave my home.

I declare under penalty of perjury that the foregoing is true and correct and if called as a
witness I could testify competently thereto.

Executed at 5:27pm on July 18, 2007.

                                    Melissa A.

Gardner
                                    Melissa Gardner

4220070720001321                A625027340000101                    07/20/2007

4220070725918321                A625007022000101                    07/25/2007

Apr 05 06 10:36a    DR B CHIEN                3096918938              p.7

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL  61614

DATE OF OPERATION:        03/15/2006

SURGEON:              BRUCE B. CHIEN, MD

PREOPERATIVE DIAGNOSIS:    HERNIATED L4 NUCLEUS PULPOSUS.

POSTOPERATIVE DIAGNOSIS:   HERNIATED L4 NUCLEUS PULPOSUS.

OPERATION:             MIDLINE L4 EPIDURAL STEROID INJECTION

INDICATION:  Melissa Gardner is ready for her midline L4 epidural steroid
injection.

PROCEDURE:  After written and informed consent, the patient was placed in a
seated position over an over-bed tray table and the midline prepped at the
level of the L4-L5.  A #18-gauge Tuohy needle was passed to a depth of 8 cm
in the midline with the patient's stereotactic guidance to loss of resistance
were upon 10 mL containing triamcinolone 80 mg, lidocaine 0.5% were injected.
This was well tolerated.  The needle was withdrawn and the patient actually
felt sufficiently better that she wanted to go to the bathroom to empty her
bladder which she did in the accompaniment of the staff nurse.  She was given
instruction not to arise from the toilet unless our staff was there to assist
her.  The patient tolerated this well.

BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
D:    03/15/2006 06:44
T:    03/15/2006 19:12
P:    03/16/2006 15:35
116797/34653/32446

GARDNER, MELISSA A       32Y F
860011391        DOB:
AC#:6016433      451   **REDACTED**

REDACTED

OPERATIVE REPORT

DT:ORRPTIM

PAGE  1

Apr 05 06 10:36a     DR B CHIEN          3096918938          p.8

## PROCTOR HOSPITAL
5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071

**TRI-COUNTY RADIOLOGISTS LTD.**

3-24-06
9:32:26:                                                       PAGE    1

PATIENT NAME:  GARDNER, MELISSA              M/R NUMBER:      A60011151
ORDERING DR:   CHIEN, BRUCE                  TRANSCRIBE DATE: 3/24/06
BIRTH DATE:                                  ORDER NUMBER:    0641155
OUTPATIENT: MR                               ACCT. NUMBER:    5018788

REDACTED

EXAMINATION:   MRI CERVICAL SPINE WITHOUT CONTRAST
DATE OF EXAM:  3-23-06
CLINICAL HISTORY:  R C6 RADICULOPATHY  NUMBNESS R HAND  WEAKNESS  L HAND

No abnormal signal identified within the cervical portion of the cord.  No
abnormal signal identified within the marrow-containing portion of the cervical
vertebral bodies.

There are mild annular bulges of the C3-C4, C4-C5, and C5-C6 discs with mild
mass effect upon the anterior aspect of the thecal sac and anterior subarachnoid
space.  No significant central spinal stenosis or foraminal stenosis identified.

IMPRESSION:

1.   NEGATIVE MRI EXAMINATION OF THE CERVICAL SPINE FOR FRANK DISC HERNIATIONS OR
SPINAL STENOSIS.

2.   NO ABNORMAL SIGNAL IDENTIFIED WITHIN THE CERVICAL PORTION OF THE CORD OR THE
MARROW-CONTAINING PORTION OF THE CERVICAL VERTEBRAL BODIES.

D:  3-23-06
T:  3-24-06

COPY TO:  DR. DINH

PHYSICIAN COPY                    GEORGE A. GENTRY, M.D.

**DIAGNOSTIC IMAGING CONSULTATION REPORT**

4107072700199321              A625007022000101              07/27/2007

R-0550

Apr 05 06 11:57a     DR B CHIEN                    3096910930              p.2

# CIRA                                                                CIRA

## CENTRAL ILLINOIS REHABILITATION ASSOCIATES, S.C.

Telephone: 309-692-4588
Fax: 309-692-4483

Richard A. Flores, M.D.

### CIRA EVALUATION & MANAGEMENT FORM

Appointment Date: <u>April 3, 2006</u>                                   Page 1

Bruce B. Chien, M.D.
Internal Medicine & Pain Medicine
5401 N. Knoxville Avenue
Suite #212
Peoria, Illinois 61614

Name: <u>Melissa Gardner #6771</u>          Age: <u>32</u>

This now 32-year old female presents with the following history. She had significant low back pain with lumbar radicular pain on 3/9/06. Within the next few days she developed numbness and tingling of her upper and lower extremities. Although, she has had a history of cervical pain she was vague as to what the radicular pattern was. She had a previous left cubital tunnel syndrome, decompression and transposition of the ulnar nerve a number of years ago but predominance of her numbness and tingling is in the ulnar distribution of her hand and she has lost fine motor control in her hands.

On March 29, 2006, Dr. Bruce Chien referred this patient for EMG & Neurosensory Testing for C6 radiculopathy. Her hands and toes are numb.

She has slowly progressing signs and symptoms of numbness, tingling, and weakness in the hands bilaterally. She has numbness and tingling in the feet bilaterally. She has neck pain. She has low back pain. She does not have increased pain with Valsalva maneuvers. She has always had irregular bowel function. She has not had any excess exposure to chemicals. She rarely drinks alcohol.

<u>Review of Systems:</u> She is not diabetic and she does not have any thyroid problems.
Allergies: ASA, Compazine, and Demerol.

<u>Past History:</u>
Illnesses: She has had strep throat, tonsillitis, and severe migraines. She was hospitalized with a lymph infection recently.
Injuries: She broke her left leg two times as a child, she has broken some toes, she had a concussion, contusion, torn knee muscles and tendons, and she has dislocated her kneecap.
Operations: DNC, ectopic P.G. removal, cholecystectomy, tonsilloadenoidectomy, and cubital tunnel syndrome decompression.
Treatments: She will be starting aqua P.T. soon, medications, walker p.r.n, and a TENS unit.
Social History: She is married and has 2 children.
Family History: Her mother is living; she has a small spinal column, stomach problems and hypertension.
Daily Medication: Depakote, Gabapentin, Nabumetone, and Tramadol.

PHYSICAL EXAMINATION:

6339-A N. Big Hollow Rd.     Peoria, IL 61615

4107072700199321                A625007022000101                    07/27/2007

R-0551

Apr 05 06 11:57a    DR B CHIEN              3096918938              p.3

**Name:** Melissa Gardner #6771          **Date:** April 3, 2006          Page 2
**Height:** 5'10 ½ " **Weight:** 244 lbs  **Dominant hand:** right. **BP:** 126/78 **Pulse:** 84 **Resp:** 16 .

She has tenderness and tenseness of the C2-S5 paraspinals and hands.

She has decreased cervical range of motion at 15/30 degrees forward flexion and extension, and 20/40 degrees right and left lateral flexion. She has decreased thoracolumbar range of motion at 70/90 degrees forward flexion, 10/30 degrees extension, and 10/20 degrees right and left lateral flexion. She has decreased strength in the hands bilaterally. She has decreased deep tendon reflexes at all sites bilaterally. She has decreased pinprick sensation in the upper and lower extremities bilaterally. She has normal proprioception in the upper and lower extremities bilaterally. She has decreased vibratory sensation in the hands bilaterally. She has equivocal Tinel's for C.T.S and cubital tunnel syndrome in the upper extremities bilaterally and tarsal tunnel syndrome in the lower extremities bilaterally.

**SKIN:** She has no lesions, ulcers, or rashes.
**PERIPHERAL VASCULAR SYSTEM:** She has normal pulses and temperature.
**GAIT AND STATION:** Antalgic.
**PSYCHIATRIC/MENTAL STATUS:** She is oriented to person, place, and time and has normal mood and affect.

**ASSESSMENT OF MEDICAL DECISION MAKING**

A. **DIFFERENTIAL DIAGNOSIS:** status post 3/9/06 (Date) onset of signs and symptoms of:
1. 353.4 Lumbar nerve root lesion
2. 354.2 Cubital tunnel syndrome
3. 356.4 Peripheral neuropathy

B. **Coordinate case management with:** (referring physician):  __Dr. Bruce Chien__

C. **Plan of management:**
    1. **Do PSSD Testing** -- reader of this report is referred to that report for the details
    2. **Do EMG Testing** -- reader of this report is referred to that report for the details
    3. **Other interventions:**

D. **Summary of Test Results:** Please see dictated reports.

*Reviewed w. Nurse med*
Richard A. Flores, M.D.
RAF: lb                          Records left OPEN

cc:    Dr. John K. Miller

4107072700199321          A625007022000101                    07/27/2007

R-0552

Apr 05 06 11:57a     DR B CHIEN                    3096918938              p.4

# CIRA                                                        CIRA

## CENTRAL ILLINOIS REHABILITATION ASSOCIATES, S.C.

Telephone: 309-692-4588
Fax: 309-692-4483

**Richard A. Flores, M.D.**

### NEUROSENSORY TESTING

Appointment Date:  April 3, 2006                                    Page 1

Bruce B. Chien, M.D.
Internal Medicine & Pain Medicine
5401 N. Knoxville Avenue
Suite #212
Peoria, Illinois 61614

Name: Melissa Gardner #6771              Age: 32

Neurosensory Testing and EMG of the upper and lower extremities was performed on 4/3/06, on Mrs. Melissa Gardner, a 32-year old female who had significant low back pain with lumbar radicular pain on 3/9/06. Within the next few days she developed numbness and tingling of her upper and lower extremities. Although, she has had a history of cervical pain she was vague as to what the radicular pattern was. She had a previous left cubital tunnel syndrome, decompression and transposition of the ulnar nerve a number of years ago but predominance of her numbness and tingling is in the ulnar distribution of her hand and she has lost strength. She has lost fine motor control in her hands.

Neurosensory Testing was done of the ulnar, median, and radial nerve of the upper extremities as well as grip and pinch strength in the hands. In the lower extremity, we tested the medial plantar branch of the posterior tibial nerve, the calcaneal nerve, and the deep peroneal nerve.

Universally throughout, the cutaneous pressure thresholds for 2-point discrimination (2PT) were abnormally elevated bilaterally at all test sites. The 2-point discrimination (2PT) was present at some test sites but not at all. The areas where it was not present included the right radial nerve in the upper extremities and the right medial plantar branch of the posterior tibial nerve as well as the calcaneal nerve and deep peroneal nerves bilaterally. The grip strength in the dominant right hand was at 56% of anticipated normal, but only 34% of anticipated normal in the left. The ratio of median to ulnar grip was such that the median nerve innervated portion was at a ratio of 1.3 on the left and 1.4 on the right. Coefficient of variation was within normal limits. Pinch strength was reduced at maximum to 20% on the left and 51% on the left.

The results of Neurosensory Testing and motor testing for grip are consistent with moderate to severe bilateral polyneuropathy with beginning axonal loss in many of the lower extremity nerves and the right radial nerve. There is a marked reduction of grip strength bilaterally in the hands, more so from the ulnar innervated muscle component than the median.

EMG of the muscles of the upper and lower extremities was tested bilaterally. The reader of this report is referred to that report for the details. EMG showed evidence consistent with;

1. Bilateral mild to moderate denervation in the ulnar nerve distribution from the elbow distally.
2. EMG of the lower extremities was consistent with mild bilateral L4 radiculopathies.

**6339-A N. Big Hollow Rd.    Peoria, IL 61615**

4107072700199321                    A625007022000101                    07/27/2007

R-0553

Apr 05 06 11:58a     DR B CHIEN          3096918938               p.5

Name: Melissa Gardner #6771                Date: April 3, 2006                Page 2

SUMMARY OF DIAGNOSTIC TESTING IS AS FOLLOWS:

1. Neurosensory Testing of the upper and lower extremities is consistent with moderate to severe bilateral sensory polyneuropathy with beginning axonal loss, especially in the lower extremities.
2. Grip and pinch testing shows marked reduction of grip strength to 56% of expected normal in the right hand and 34% of expected normal on the left hand, with the predominance of the loss in the ulnar nerve innervated muscles rather than the median nerve innervated muscles.
3. EMG of the upper and lower extremities is consistent with:
   a. Bilateral mild to moderate denervation in the ulnar nerve distribution from the elbows distally bilaterally.
   b. Mild bilateral L4 radiculopathies.

Thank you very much.
Sincerely,

Richard A. Flores, M.D.
RAF: lb

cc:     Dr. John K. Miller

4107072700199321                    A625007022000101                    07/27/2007

R-0554

Apr 05 06 11:58a     DR B CHIEN          3096918930          p.6

# CIRA                                          CIRA

## CENTRAL ILLINOIS REHABILITATION ASSOCIATES, S.C.

Telephone: 309-692-4588
Fax: 309-692-4483

### Richard A. Flores, M.D.

ELECTRONEUROMYOGRAPHY

Appointment Date: April 3, 2006                    Page 1

Bruce B. Chien, M.D.
Internal Medicine & Pain Medicine
5401 N. Knoxville Avenue
Suite #212
Peoria, Illinois 61614

Name: Melissa Gardner #6771          Age: 32

EMG Study of the muscles of the upper extremities was tested bilaterally using muscles representing myotomes C5-T1. The lower extremity musculature was tested using muscles representing myotomes L2-S2. In the upper extremities, in the ulnar innervated muscles from the elbow distally including the flexor carpi ulnaris, flexor digitorum profundus for digits 4 and 5, first dorsi interossei, and abductor digiti quinti, there was increased insertional activity, 1+ fibrillations, and 2+ positive waves. The activated motor unit potential showed normal amplitude and duration with increased polyphasicity and a mild to moderate decrease in number of motor units. In the lower extremities, in the predominantly L4 innervated muscles included the quadriceps femoris, adductor longus, and tibialis anterior, there was increased insertional activity, 2+ fibrillations, and 2+ positive waves. The activated motor unit potential showed normal amplitude and duration with increased polyphasicity and a mild but definite decrease in number of motor units. All the other muscles of the upper and lower extremities showed normal insertional activity with no fibrillations or positive waves. The activated motor unit potential showed normal amplitude, duration, degree of polyphasicity, and number of motor units.

**IMPRESSION OF EMG OF THE UPPER AND LOWER EXTREMITIES SHOWS ELECTRICAL EVIDENCE OF:**

1. Bilateral mild to moderate denervation in the distribution of the ulnar nerve from the elbow distally.
2. Mild bilateral L4 radiculopathies.

Thank you very much.
Sincerely,

*Richard A. Flores, M.D.*
Richard A. Flores, M.D.
RAF: lb

cc:   Dr. John K. Miller

4107072700199321          A625007022000101                    07/27/2007

R-0555



REDACTED

4107072700199321                     A625007022000101                     07/27/2007

R-0556

Apr 05 06 11:59a      DR B CHIEN                    3096910930              p.8

REDACTED

Central Illinois Rehabilitation Associates, S.C.                    Summary Pinch Report Page 1

Patient Name: GARDNER, MELISSA                              Involved Side: B
Patient ID: 6771              Visit Date: 04/03/2006        Visit No: 1        Date of Birth:

| Sustained Key | 1 | | Trials 2 | | 3 | | AVG | | |
|---|---|---|---|---|---|---|---|---|---|
| | Left | Right | Left | Right | Left | Right | Left | Right | |
| Peak | 2.3 | 5.5 | 2.0 | 5.3 | 1.7 | 4.6 | 2.0 | 5.1 | KG |
| Average | 1.7 | 5.0 | 1.5 | 4.0 | 1.1 | 3.8 | 1.5 | 4.2 | KG |
| Reaction Time | 0.2 | 0.2 | 0.2 | 0.3 | 0.3 | 0.6 | 0.2 | 0.4 | SEC |
| Rise Time | 0.1 | 0.1 | 0.1 | 0.5 | 0.5 | 0.4 | 0.3 | 0.3 | SEC |
| % Fatigue | 33.0 | 16.3 | 54.5 | 39.8 | 44.2 | 37.6 | 43.9 | 31.2 | |
| Squeeze Time | 2.7 | 1.2 | 2.4 | 1.9 | 2.0 | 1.8 | 2.4 | 1.6 | SEC |
| Fatigue Rate | 0.3 | 0.7 | 0.5 | 1.1 | 0.4 | 0.9 | 0.4 | 0.9 | KG/SEC |
| Capacity | 6.5 | 15.5 | 4.6 | 12.1 | 3.6 | 9.5 | 4.6 | 12.4 | KG*SEC |

I/UI
C.V.                                    14.50 8.49



| Peak | Average peak strength for all trials | Rise Time | Time from 10% of peak to 90% of peak | Fatigue Rate | (Peak-Reading at end beep)/Squeeze Time |
| Average | Average of all data from peak to end of test | % Fatigue | 100*(Peak-Reading at end beep)/Peak | Capacity | Area under the curve |
| Reaction Time | Time from start beep to 10% of peak | Squeeze Temp | Time from peak to end beep | | |

Page 215 of 236

(Page 358 of 427)

Apr 05 06 11:59a    DR B CHIEN              3096910930        p.9

Central Illinois Rehabilitation Associates, S.C.                    PSSD Report Page 1

Patient Name: GARDNER, MELISSA
Patient ID:   6771          Visit Date: 04/03/2006      Visit No:  1      Date of Birth: **REDACTED**
      NOTE:  Underline indicates abnormal Pressure Threshold      * indicates abnormal spacing

**Dorsal Web Space 1/2**



**Great Toe Pulp**



0727001993

4107072700199321              A625007022000101                    07/27/2007

R-0558

Apr 05 06 11:59a    DR B CHIEN                3096918938              p.10

REDACTED

Central Illinois Rehabilitation Associates, S.C.                    PSSD Report Page 2

Patient Name: GARDNER, MELISSA
Patient ID:  6771                Visit Date: 04/03/2006          Visit No:  1          Date of Birth:
NOTE:  Underline indicates abnormal Pressure Threshold        * indicates abnormal spacing

### Heel (Medial)

| | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 20.5 | | 12.6 | |
| 2 Pt Static | 89.2 | 20.1 * | 97.4 | 20.1 * |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |



### Radial Hand Dorsum

| | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 6.9 | | 19.8 | |
| 2 Pt Static | 56.6 | 3.0 | 83.6 | 10.0 * |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |



872700 1993

4107072700199321              A625007022000101                    07/27/2007

R-0559

(Page 360 of 427)

Apr 05 06 11:59a     DR B CHIEN                    3096918938                p.11

Central Illinois Rehabilitation Associates, S.C.                    PSSD Report Page 3

Patient Name: GARDNER, MELISSA
Patient ID:  6771            Visit Date: 04/03/2006            Visit No:  1            Date of Birth: **REDACTED**

NOTE:  Underline indicates abnormal Pressure Threshold     * Indicates abnormal spacing

### Thenar Eminence

| | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 2.2 | | 2.0 | |
| 2 Pt Static | 94.3 | 6.1 | 71.6 | 6.0 |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |



### Ulnar Hand Dorsum

| | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 4.5 | | 2.0 | |
| 2 Pt Static | 82.2 | 3.0 | 102.4 | 3.0 |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |



4107072700199321                    A625007022000101                    07/27/2007

R-0560

Apr 05 06 10:35a    DR B CHIEN                3096918938                p.1

## PHYSICIAN'S SUBMISSION OF MEDICAL RECORDS

## INSTRUCTIONS TO THE PHYSICIAN

1.  Your patient has filed a disability claim requesting wage replacement benefits for a current absence commencing March 14, 2006. In order to make a determination on the patient's eligibility for these benefits you are requested to submit to the AT&T Integrated Disability Service Center (AT&T IDSC) by: April 5, 2006.

    A.  All medical records relevant to the above-referenced accommodation, including chart notes, treatment plan, diagnostic test results, Specialist reports, etc., plus

    B.  The "Submission of Medical Records" form at the bottom of this sheet, attached to the front of the records being submitted.

2.  Failure to provide the requested relevant medical records will adversely impact your patient's request for accommodation.

3.  Any charges for the requested records are the responsibility of your patient.

4.  Once you have submitted all the requested medical information to AT&T Integrated Disability Service Center, the Job Accommodation Specialist may make a request for a physician peer-to-peer discussion with you regarding the medical condition.

5.  If the accommodation is of an extended duration, periodic requests will be made for updated medical records.

### SUBMISSION OF MEDICAL RECORDS

Employee Name: Melissa Gardner          SS **REDACTED** Claim Number: A625007022-0001-01

Print Physician's Name: _Bruce B. Chien, MD SC_

Physician's Signature: _Bruce B. Chien_

Address: _5441 N. Knoxville, Ste 212_ Telephone #: _(309) 691-8473_
_Peoria, IL 61614_          Date Rec'd:: _____
                                        (To be completed by AT&T IDSC)

**AT&T Integrated Disability Service Center**
**PO Box 61569, King of Prussia, PA 19406**
**Fax: 1 (866) 224-4627**

R-0561

Apr 05 06 10:35a  DR B CHIEN  3096918938  P.2

Bruce B. Chien M.D.
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
(309) 691-8973 Fax (309) 691-8938

Date: April 4, 2006

Name: Melissa Gardner

Address: 124 Putman, E Peo.

RX: OK to travel by train but must be able
To change position frequently & no prolonged
single position

May Substitute: _____          Signature: _Bruce Chien_
Do Not Substitute: _____       Fed. DEA: AC8777433
Non Repeteur: _____            IL License: 036-063979

4107072700199321        A625007022000101        07/27/2007

Page 220 of 236

R-0562

Apr 05 06 10:36a    DR B CHIEN                3096918938              p.3

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

March 14, 2006

Melissa Gardner is a 32 y.o. w. female with the acute onset of back pain, midline, lumbar, on Thursday while at work (desk work). Her drive home from Springfield uncomfortable, with her noticing it to be painful to lift her leg to the brake pedal. It did not remit at home in the standing or recumbent position and she went to OSF Prompt Care in Morton, where she was given Vicodin and skelaxin. Friday she went to work, was miserable. Went on Sunday to the ED at MMCI- no MRI, Xrays→percocet. Awoke 0400, called office, went to ED.

PMH: Migraine, about three years., Looked after by Dr Richard Lee. Due for a menstrual period.
FH: Everyone I her family has back pain.
SH: Smoker, WANTS to smoke, doesn't want a patch.
Allergies: Demerol→blisters, ASA→NV, Compazine →anxiety. Wants MS.
Surgical: Chole, DC, T&A, Ectopic. Cubital tunnel on the left.
ROS: Otherwise negative. She REALLY wants to smoke.

Physical Exam: VS are unremarkable. PERRLA VFs are full, fundi are benign. Chest: clear per Dr. Dunaway. CV: s S3, S4. mumur gallop. Abd: No organomegaly. Spine: Tender at L4 in the midline. SLR is positive on both sides, Right >Left at 30 and 45 degrees respectively. There is paraspinous sapsm but no radiation. Motor and sensory are normal. DTRs are 2+. She can stand at the bedside but with much axial pain. SI joints are benign.

Impression: Probably an L4 disc syndrome. I've explained in detail the interventional algorithm- but as she's never been scanned at three hospitals, we'll accomplish that today. She is aware that Lumbar ESI has about a 60% yield over 6-12 months when approached in three 2 week increments; that there are steroid limitations and we are careful to not broach maximum dose limits. Narcotic is unlikely to be of any long term use; Surgical evaluation clearly has to pend on the MRI. Implanted devices are unlikely to be of much use as her distribution is axial still at this time. Intradiscal procedures- though I do them, are reserved for "last chance" as the risk of discitis is irreducible at 0.6%.

We'll await the MRI this afternoon.

Regards,

Bruce B. Chien, M.D>

4107072700199321              A625007022000101              07/27/2007

R-0563

(Page 364 of 427)

Apr 05 06 10:36a    DR B CHIEN    3096918938    p.4

# PROCTOR
### HOSPITAL
5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071

TRI-COUNTY RADIOLOGISTS LTD.

3/14/06
17:34:56

PAGE    1

PATIENT NAME: GARDNER, MELISSA
ORDERING DR: CHIEN, BRUCE B
BIRTH DATE:                **REDACTED**
INPATIENT - NS/ROOM-TEAM-ROOM-1

M/R NUMBER:          860011391
TRANSCRIBE DATE:     3/14/06
ORDER NUMBER:        0830583
ACCT. NUMBER:        6016433

EXAMINATION:  MRI LUMBAR SPINE WITHOUT & WITH CONTRAST
DATE OF EXAM:  3/14/06
CLINICAL HISTORY:   INTRACTABLE LOW BACK PAIN

MRI of the lumbar spine was performed with and without the aid of intravenous contrast.

The conus medullaris of the cord ends at the appropriate level with no abnormal enhancement or mass lesions identified.

No abnormal bone marrow edema or enhancement of the marrow-containing portion of the lumbar vertebral bodies.

The L4-L5 Disc Space Level:  There is a broad-based disc bulge of the L4-L5 disc associated with a posterior and central annular tear.  There is bilateral mild to moderate narrowing of the neural canal and neural foramina at this disc space level.

The L3-L4 Disc Space Level:  There is a broad-based annular bulge with an 8 mm area of annular tear involving the posterior central aspect of the annulus.  No significant narrowing of the neural canal and neural foramina.

The remainder of the lumbar disc spaces appear to be unremarkable for frank disc herniations or spinal stenosis.

IMPRESSION:

DEGENERATIVE DISC DISEASE EVIDENT BY MILD DEGENERATIVE DEHYDRATION AND LOSS OF DISC SPACE HEIGHT OF THE L3-L4, L4-L5 AND L5-S1 DISCS.  THIS IS ASSOCIATED WITH AGE-INDETERMINATE POSTERIOR CENTRAL ANNULAR TEARS OF THE L3-L4 AND L4-L5 DISCS.

D:  3/14/06
T:  3/14/06

GG:ta

PHYSICIAN COPY

GEORGE A. GENTRY, M.D.

**DIAGNOSTIC IMAGING CONSULTATION REPORT**

4107072700199321          A625007022000101          07/27/2007

R-0564

Apr 05 06 10:36a    DR B CHIEN    3096918938    p.5

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL 61614

DATE OF ADMISSION: 03/13/2006

CONSULTATION DATE: 03/14/2006

ATTENDING PHYSICIAN: John K Miller, MD

CONSULTING PHYSICIAN: BRUCE B CHIEN, MD

Consultation is in regard to acute-onset mid lumbar back pain.

Melissa Gardner is a 32-year-old female with acute onset of back pain, midline, lumbar on Thursday while at work. She sits at a desk at Ameritech in Springfield. Her drive home to East Peoria from Springfield was uncomfortable with her noticing that it was painful to lift her leg to the brake pedal. This did not remit at home in a standing or recumbent position and she went to OSF Prompt Care in Morton where she was given Vicodin and Skelaxin. She went to work on Friday, was miserable. On Sunday, she went to the emergency department at MMCI, no MRI was performed. She had x-rays done and was given Percocet. She awoke at 0400 on Monday, called Dr. Miller's office, went to the emergency room.

PAST MEDICAL HISTORY: Migraine for about 3 years, looked after by Dr. Richard Lee. She is due for her menstrual period.

FAMILY HISTORY: Everyone in her family has back pain.

SOCIAL HISTORY: She wants to smoke, does not want a patch.

ALLERGIES: DEMEROL LEADS TO BLISTERS, ASA LEADS TO NAUSEA AND VOMITING, COMPAZINE LEADS TO ANXIETY. She wants morphine.

SURGICAL HISTORY: Cholecystectomy, D and C, T and A, ectopic, and cubital tunnel on the left.

REVIEW OF SYSTEMS: Otherwise negative. She really wants to smoke.

PHYSICAL EXAMINATION:
GENERAL: She is approximately 200 pounds, looks to be about 5 feet 7 inches.
VITAL SIGNS: Unremarkable.
HEENT: Pupils are equal, round, and reactive to light and accommodation. Visual fields are full. Fundi are benign.
CHEST: Clear per Dr. Dunaway.
CARDIOVASCULAR: Without S3, S4, murmur, or gallop.
ABDOMEN: Without organomegaly.
SPINE: Tender at L4 in the midline.
EXTREMITIES: Straight leg raising is positive on all sides, right greater than left at 30 and 45 degrees respectively. There is paraspinous spasm but no radiation. Motor and sensory are normal. Deep tendon reflexes are 2+.

GARDNER, MELISSA A        32Y F
860011391    DOB: **REDACTED**
AC#:6016433    **REDACTED**                    DT:CONSHPIM

CONSULTATION REPORT

PAGE 1

Apr 05 06 10:36a    DR B CHIEN                3096918938                p.6

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL  61614

She can stand at the bedside but with much axial pain.  SI joints are benign.

IMPRESSION:  This is probably an L4 disk syndrome particularly given the fact
that being seated in the automobile is uncomfortable.  I have explained in
detail the intervention, outcome, and that she has never been scanned at any
of the 3 hospitals and we need to accomplish that today.  She is aware that
lumbar ESI is about a 60% yield over 6 to 12 months when approached in three
2-week increments; and that there are steroid limitations which we are
careful not to broach or approach the maximum dose limits.  Narcotics are
unlikely to be of long-term use.  Surgical evaluation clearly has to depend
on the MRI.  Implanted devices are unlikely to be of much use as her
distribution is axial still at this time.  As for intradiskal procedures, I
do do them but these are reserved for a last chance as the risk of diskitis
is irreducible at 0.5% and is a patient care disaster.  We will await the MRI
this afternoon.

Best regards,

BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
D:   03/14/2006 09:57
T:   03/15/2006 01:43
P:   03/15/2006 15:23
990810/31201/32446

GARDNER, MELISSA A    32Y F
860011391    DOB:
ACH:6016433    451    **REDACTED**

CONSULTATION REPORT

DT:CONSHPIM

PAGE  2

4107072700199321                 A625007022000101                    07/27/2007

R-0566

 **PROCTOR** H O S P I T A L    3409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071     TRI-COUNTY RADIOLOGISTS LTD.

3/24/06                                                              PAGE    1
9:32:26

PATIENT NAME: GARDNER, MELISSA              M/R NUMBER:      860011391
ORDERING DR:  CHIEN, BRUCE B                TRANSCRIBE DATE:   3/24/06
BIRTH DATE:   **REDACTED**                  ORDER NUMBER:     0841198
OUTPATIENT: MR                              ACCT. NUMBER:     6018288

EXAMINATION:  MRI CERVICAL SPINE WITHOUT CONTRAST
DATE OF EXAM:  3-23-06
CLINICAL HISTORY:  R C6 RADICULOPATHY  NUMBNESS R HAND  WEAKNESS  L HAND

No abnormal signal identified within the cervical portion of the cord.  No
abnormal signal identified within the marrow-containing portion of the cervical
vertebral bodies.

There are mild annular bulges of the C3-C4, C4-C5, and C5-C6 discs with mild
mass effect upon the anterior aspect of the thecal sac and anterior subarachnoid
space.  No significant central spinal stenosis or foraminal stenosis identified.

IMPRESSION:

1.  NEGATIVE MRI EXAMINATION OF THE CERVICAL SPINE FOR FRANK DISC HERNIATIONS OR
SPINAL STENOSIS.

2.  NO ABNORMAL SIGNAL IDENTIFIED WITHIN THE CERVICAL PORTION OF THE CORD OR THE
MARROW-CONTAINING PORTION OF THE CERVICAL VERTEBRAL BODIES.

D:  3-23-06
T:  3-24-06

GG/macc


COPY TO:  DR. DINH

GEORGE A. GENTRY, M.D.

**CHART COPY**

**DIAGNOSTIC IMAGING CONSULTATION REPORT**

### PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

DATE OF OPERATION:      03/15/2006

SURGEON:                BRUCE B. CHIEN, MD

PREOPERATIVE DIAGNOSIS:     HERNIATED L4 NUCLEUS PULPOSUS.

POSTOPERATIVE DIAGNOSIS:    HERNIATED L4 NUCLEUS PULPOSUS.

OPERATION:              MIDLINE L4 EPIDURAL STEROID INJECTION

INDICATION:  Melissa Gardner is ready for her midline L4 epidural steroid injection.

PROCEDURE:  After written and informed consent, the patient was placed in a seated position over an over-bed tray table and the midline prepped at the level of the L4-L5.  A #18-gauge Tuohy needle was passed to a depth of 8 cm in the midline with the patient's stereotactic guidance to loss of resistance where upon 10 mL containing triamcinolone 80 mg, lidocaine 0.5% were injected. This was well tolerated.  The needle was withdrawn and the patient actually felt sufficiently better that she wanted to go to the bathroom to empty her bladder which she did in the accompaniment of the staff nurse.  She was given instruction not to arise from the toilet unless our staff was there to assist her.  The patient tolerated this well.

BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
   03/15/2006 06:44
   03/15/2006 19:12
6797/34653/32446

GARDNER, MELISSA A      32Y F
60011391   DOB:
C#:6016433   451    REDACTED

DT:ORRPTIM

OPERATIVE REPORT                    PAGE  1

e: 4-04-06                 PROCTOR HOSPITAL                     PRELIMINARY
ie: 11:14:54            Transcription Report

:ient Account: 6016433 I  2 GARDNER, MELISSA
-------------------------- Result Data ------------------------------*

MINATION:  MRI LUMBAR SPINE WITHOUT & WITH CONTRAST
:E OF EXAM:  3/14/06
NICAL HISTORY:  INTRACTABLE LOW BACK PAIN

: of the lumbar spine was performed with and without the aid of intravenous
trast.

: conus medullaris of the cord ends at the appropriate level with no abnormal
lancement or mass lesions identified.

abnormal bone marrow edema or enhancement of the marrow-containing portion o
: lumbar vertebral bodies.

: L4-L5 Disc Space Level:  There is a broad-based disc bulge of the L4-L5 dis
sociated with a posterior and central annular tear.  There is bilateral mild
moderate narrowing of the neural canal and neural foramina at this disc spac
el.

: L3-L4 Disc Space Level:  There is a broad-based annular bulge with an 8 mm
a of annular tear involving the posterior central aspect of the annulus.  No
nificant narrowing of the neural canal and neural foramina.

: remainder of the lumbar disc spaces appear to be unremarkable for frank dis
rniations or spinal stenosis.


PRESSION:

GENERATIVE DISC DISEASE EVIDENT BY MILD DEGENERATIVE DEHYDRATION AND LOSS OF
SC SPACE HEIGHT OF THE L3-L4, L4-L5 AND L5-S1 DISCS.  THIS IS ASSOCIATED WITH
E-INDETERMINATE POSTERIOR CENTRAL ANNULAR TEARS OF THE L3-L4 AND L4-L5 DISCS.

    3/14/06
    3/14/06


:jr

May 03 06 02:51p    DR B CHIEN              3096918938              p.5

### PROCTOR HOSPITAL
5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071

**TRI-COUNTY RADIOLOGISTS**

4/26/06
9:09:18

PAGE    1

PATIENT NAME: GARDNER, MELISSA
ORDERING DR: CHIEN, BRUCE B
BIRTH DATE: **REDACTED**
OUTPATIENT: CT ... MYELOGRAPHY

M/R NUMBER:       860011391
TRANSCRIBE DATE:  4/25/06
ORDER NUMBER:     0873983
ACCT. NUMBER:     6025115

EXAMINATION: L4-L5 DISKOGRAM
DATE OF EXAM: 4/20/06

Reason For Examination: Patient has history of severe low back pain, primarily in the midline at the L4 level. Patient now states it is also extending inferiorly into the left buttock. L4 radiculopathy is suspect. Request is for L4-L5 diskogram and subsequent CT examination at L4-L5 level after the disc is injected with contrast.

The nature, benefits, alternatives, and risks of the diskogram were explained to the patient prior to the procedure. All questions were answered to her satisfaction. Ms. Gardner stated she understood and gave her consent.

The patient was then placed in the prone position on the Angiographic C-arm table. The L4-L5 disc level was examined with fluoroscopy in varying degrees of obliquity. The left transverse process at L5 is seen to be hypertrophied with partial sacralization of the L5 vertebral body. Pseudarthrosis of the hypertrophied left L5 transverse process with the sacrum is seen. For this reason, it was elected to approach the L4-L5 disc from the right posterolateral approach. Using 27 degrees of cranial and 46 degrees of right posterior angulation, the L4-L5 disc space is best visualized. Skin and subcutaneous tissues to the level of the spine were infiltrated with 1 percent Xylocaine for local anesthesia. Initial attempts were made to enter the L4-L5 disc space with a 15 cm long, 22-gauge Chiba needle, but the 22-gauge Chiba needle was too flexible to accurately control to get the needle well positioned within the L4-L5 disc space. Repeat attempts were made with a 20-gauge, 15 cm long Chiba needle, which was successfully placed directly into the L4-L5 disc space. Good position of the needle tip within the disc was documented with digital radiographs obtained in AP, oblique, and cross-table lateral projections. At this point, 2.5 ml of Omnipaque 350 were slowly injected into the L4-L5 disc space. Disc turgor was definitely diminished. The patient also experienced reproduction of the same midline low back pain with the injection of the disc. The patient estimated the pain at 7 of 10 with the disc injection even with IV sedation with Versed and Fentanyl that was administered with monitoring of vital signs in order to allow the patient to lie in a prone position on the Angiographic table. Digital radiographs were obtained of the disc in lateral, AP, oblique and AP with 47 degree cranial angulation. Most of the contrast appears to be contained within the expected central nuclear region. However, there does appear to be some contrast extension into and through the posterior annular region and somewhat to the left as well. The needle was then removed and the patient transferred to the CT suite for further CT examination of the L4-L5 disc.

--CONTINUED ON PAGE 2--

TMB

May 03 06 02:51p    DR B CHIEN         3096918930           p.6

OCTOR
HOSPITAL          5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071          TRI-COUNTY RADIOLOGISTS

4/26/06
9:09:18                                                          PAGE     2

PATIENT NAME: GARDNER, MELISSA                    M/R NUMBER:        860011391
ORDERING DR:  CHIEN, BRUCE B.                     TRANSCRIBE DATE:   4/25/06
BIRTH DATE:   REDACTED                            ORDER NUMBER:      0873983
OUTPATIENT: CT LUMBAR DISCOGRAPHY                 ACCT. NUMBER:      6025115

CONTINUED FROM PAGE 1

CONCLUSION:

CONCORDANT 7 OUT OF 10 PAIN DEMONSTRATED WITH INJECTION OF THE L4-L5 DISC SPACE.
THERE IS ALSO SIGNIFICANTLY DIMINISHED DISC TURGOR AT THIS LEVEL AND EVIDENCE OF
PENETRATION OF CONTRAST AT LEAST INTO, IF NOT THROUGH, THE ANNULAR REGION
POSTERIORLY.

tr  bc

D:  4/25/06
T:  4/25/06

TMB:jr

COPY TO:  DR. TERRANCE M. BRADY

TERRANCE M. BRADY, M.D.

Apr 20 06 08:48a   DR B CHIEN              3096918938                    p.3

4/18/2006 9:15 PM MENON WEB REPORTS -> 6CIA - OFFICE OF DR BRUCE B CHIEN   Page 1 of 3

########## ROUTE TO PROV [6CIA]: 18390, Chien, Bruce B
PAGE 1

OPERATIVE REPORT
SAINT FRANCIS MEDICAL CENTER
Peoria    ,IL  61637
(309)6552000

Facility: SFMC

Patient:                          ^        Adm Date:17Apr06    Label ID: OP
DOB:                                       Dis Date:17Apr06    Location:CFHS-31
MRN:                                       Acct #:002584873    Pt. Type:AS
Attending Phys: CHIEN, BRUCE
Primary Care Prov: MILLER, JOHN
Legal Signing Prov #:   18390

COPY

-----------------------------------------------------------------------------

MR: 1145497 Acct: 2584873
Admit: 04/17/2006 Disch: 04/17/2006
DocID: D1061459

Dictating: 18390 BRUCE B CHIEN
ccdr1:
ccdr2:
ccdr3:
ccdr4:

D.04/17/2006 13:35:00
T.04/18/2006 17:29:58

REPORT OF OPERATION

DATE OF SURGERY:  04/17/2006

PREOPERATIVE DIAGNOSIS:
Bilateral L4 radiculopathy, left C7 radiculopathy.
POSTOPERATIVE DIAGNOSIS:
Same
SURGEON: Bruce B. Chien, M.D.

OPERATION:
MIDLINE L4 EPIDURAL STEROID INJECTION.
Melissa Gardner is a 42-year-old white female who had the acute onset of
back pain, midline, lumbar on Thursday while at work.  She sits at a desk
at Ameritech in Springfield.  The drive home from Springfield to East
Peoria was uncomfortable, noticing that it was painful to lift her leg to
the brake pedal.  It did not remit at home in the seated, standing or
recumbent position.  She went to the OSF Saint Francis Prompt Care and she
was given Vicodin and Skelaxin.  She went to work on the following Friday
and was miserable proceding the 14th of March.  On Sunday she went to the
emergency department at MMCI, no MR was performed.  She did have x-rays
done and was given Percocet.  She awoke at 0400 Monday and called Dr.
Miller's office and went to the emergency room.  She has now had two
midline L4 epidural steroid injections.

REDACTED

4107072700199321          A625007022000101              07/27/2007

R-0572

PAGE 2

## OPERATIVE REPORT
### SAINT FRANCIS MEDICAL CENTER
Peoria     ,IL  61637
(309)6552000

Facility: SFMC                                                    Label ID: OP

Patient: GARDNER, Melissa A           Adm Date:17Apr06     Location:CFHS-31
DOB:                                  Dis Date:17Apr06     Pt. Type:AS
MRN:                                  Acct #:002584873
Attending Phys: CHIEN, BRUCE
Primary Care Prov: MILLER, JOHN
Legal Signing Prov #:  18390
                              COPY
----------------------------------------------------------------------------

PAST MEDICAL HISTORY: Migraines for the past three years, looked after by
Dr. Richard Lee.  She is having normal menstrual periods.

FAMILY HISTORY: Everyone in the family has back pain.

SOCIAL HISTORY: She wants to smoke.

ALLERGIES: Demerol leads to blisters, ASA leads to nausea and vomiting,
Compazine leads to anxiety.

SURGICAL HISTORY: Cholecystectomy, dilatation and curettage, tonsillectomy
and adenoidectomy, ectopic cubital tunnel on the left.

REVIEW OF SYSTEMS: Her left C7 radicular discomfort from her neck, triceps,
elbow and medial compartment of the forearm into the 5th and 4th fingers is
bothering her pretty much 14/7.

On physical examination she is about 200 pounds, 5'8"; vital signs are
unremarkable.  Pupils are equal, round, reactive to light and
accommodation.  Visual fields are full; fundi are benign.  Chest is clear.
Cardiovascular is unremarkable.  Liver is 8 cm; spleen is nontender.  Motor
in upper extremities and sensory in the left upper extremity in particular
is normal.  Straight leg raising is positive on both sides at 60 and 75
degrees on the right and left sides respectively.  Paraspinous spasm is
present.  There is no radiation.  Motor and sensory are normal.  Deep
tendon reflexes are 2+.  She is able to lie on her abdomen.

PROCEDURE: After written and informed consent the patient was brought to
the operating room and placed prone on five pillows.  The lumbar spine was
prepped with Betadine.  1% Lidocaine was infiltrated into the L4-5
interspace.  #18-gauge Tuohy needle was passed to a depth of 7 cm where
loss of resistance was obtained.  10 mL containing Triamcinolone 80 mg,
Lidocaine 50 mg, three parts in ten Isovue 200 were mixed and injected.
The patient had a sense of aching down both buttocks and both thighs.  PA
and lateral views were saved.  The needle was withdrawn.  The patient's
back was washed.  She was taken to the ASU.

It is pretty plain that she likely has intradiskal disease with her pain
pattern and failure to respond.  In addition she has an L4 EMG, which

REDACTED

PAGE 3

OPERATIVE REPORT
SAINT FRANCIS MEDICAL CENTER
Peoria    ,IL  61637
(309)6552000

Facility: SFMC                                              Label ID: OP

Patient: GARDNER, Melissa A          Adm Date:17Apr06    Location:CFHS-31
DOB: REDACTED                        Dis Date:17Apr06    Pt. Type:AS
MRN: REDACTED                        Acct #:002584873
Attending Phys: CHIEN, BRUCE
Primary Care Prov: MILLER, JOHN
Legal Signing Prov #:  18390
                          COPY
----------------------------------------------------------------------
showed a pattern compatible with radiculopathy.  Will refer her downtown to
OSF Imaging and Radiology Department for an L4 discogram.  I spend a
considerable amount of counseling her as to how uncomfortable this
procedure is and there is discrete risk.  At the current time there is not
much on her MRI to need a neurosurgeon to intervene.  Thanks for this
opportunity to participate in the patient's care.

SNC/STS

Job #3833547
st

Version Date: 04/18/2006 21:00:29 ljw

BRUCE B CHIEN, Admitting Physician
JOHN K MILLER, Referring Physician 1



PRELIM SIGNING PROV:BRUCE CHIEN                MD      Date:
LEGAL SIGNING PROV:BRUCE CHIEN                 MD      Date:
         PRINTED: 04/18/2006   9:14pm
         PRINTED BY: INTERFACE, T.

May 03 06 02:51p     DR B CHIEN                    3096918938              p.2

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

May 3, 2006

Lou'litha Walls
AT&T Disability Center

In R.E> Melissa Gardner **REDACTED**

Ms. Gardner has a ruptured L4 disc by discography and bilateral lumbar radiculopathy (L4). At the current time she cannot stand or sit for any period more than about 3 minutes. She is completely disbled from all work at the current time.

She is waiting to see Dr Dzung Dinh, who is our L4 disc replacement vs. fusion Neurosurgeon.

Regards,

*[signature]*

Bruce B. Chien, M.D.

Fax to: 866-224-4627

4107072700199321                    A625007022000101                    07/27/2007

R-0575

Jun. 28. 2006 5:39PM    ASSOC UNIVERSITY NEUROSURGEONS                No. 5818    P. 2/3

06/16/2006

JOHN K. MILLER, MD
7725 N KNOXVILLE AVENUE
PEORIA, IL 61614

RE: MELISSA GARDNER
DOB: **REDACTED**

Dear Dr. MILLER:

MELISSA GARDNER was seen as a hospital follow up today with a chief
complaint of low back pain. She is a 32 y/o female who was seen by us at
Proctor Hospital in March 2006 for low back pain. She had an MRI on
March 14, 2006, which revealed an L4-5 annular, tear. She states that after
prolonged walking she develops burning in her back. She has since been
through physical therapy as well as other modalities, neuromuscular
stimulator, and pain medication. She has been treated by Dr. Bruce Chien
who performed a series of epidural steroid injections. She had a
discogram, which was positive at the L4-5 level.

Past medical history included hypertension during pregnancy. Review of
systems is negative other than stated above. Current medications include
Lyrica, Nabumetone bid, Tramadol qid, and hydrocodone bid. She is
allergic to aspirin, which causes vomiting. Demerol causes hives and
blister at the injection site. Compazine causes severe nervousness. She has
had a cholecystectomy, a T&A, a D&C for ectopic pregnancy, and cubital
tunnel surgery in 2001.

Family history is positive for degenerative spine disease in her mother. She
is married with children and lives with her family. She works as an MSS at
ATT. She is a college graduate. She has no history of substance abuse. She
smokes ½ pack of cigarettes a day for about 16 years. She averages 2-3
alcoholic beverages per year and 2-3 caffeinated beverages per day.

On physical examination, HEENT are within normal limits. Neck is
supple with no thyromegaly or bruit. Lungs are clear in all lobes. Heart

4107072700199321                A625007022000101                        07/27/2007

R-0576

Jun. 28. 2006  5:39PM   ASSOC UNIVERSITY NEUROSURGEONS        No. 5818   P. 3/3

Page 2
6/16/06
Re: Melissa Gardner

sounds are regular with regular rate and rhythm. Abdomen is soft and nontender. She denies any
urinary incontinence, bowel incontinence, blood in the urine or the stool. On neurological exam,
cranial nerves II-XII are grossly intact. She has numbness in the fingers of both hands. She has a
recent EMG of the upper and lower extremities. This revealed bilateral mild to moderate
denervation of the ulnar nerve of the bilateral elbows distally bilaterally. She also had mild
bilateral L4 radiculopathies in the lower extremities. In the upper extremities her strength is +5/5.
Sensation is intact to light touch and deep tendon reflexes are +2 in bilateral biceps, triceps and
brachioradialis. In the lower extremities, she has +1 reflexes in bilateral patellas and Achilles.
Sensation is intact. Strength is 5/5 in the lower extremities. She had increased pain with
hyperextension as well as increased pain with side bending to the left.

We recommend she continue with her pain regimen as prescribed by Dr. Chien. We recommend
a course of water therapy. We will see her back in 4-6 weeks for reevaluation.

Thank you for allowing us to participate in the patient's care. If we can be of any further
assistance, please let us know.

Sincerely,


Cristin Rassi, A.P.N., C.N.S./Dzung H. Dinh, M.D.

CR:dsh

Jul 28 06 08:41a     DR B CHIEN               3096910930               p.2

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL 61614

DATE OF OPERATION:        07/24/2006

SURGEON:                  BRUCE B. CHIEN, MD

DIAGNOSIS:                L4 AND L5 INTRADISKAL PAIN.

OPERATION:                L4 AND L5 INTRADISKAL BLOCK AND DISKOGRAPHY.

INDICATION: Melissa Gardner was seen on July 18, 2006, again at the request
of Dr. Dinh. She has a known freely ruptured L4 disk noted on L4-5 diskogram
on April 20, 2006, she had not improved much at all. Walking is pretty much
limited to 200 feet. She sleeps on her side, can drive for about 15 minutes
before she has pain in the left buttock. She does continue to work at a
phone company but only half-time.

MEDICATIONS: Vicodin 7.5/500.

ALLERGIES: DEMEROL leads to blisters, ASA leads to nausea and vomiting, and
COMPAZINE leads to anxiety.

SOCIAL HISTORY: Wants to smoke.

FAMILY HISTORY: Everyone in the family has back pain.

REVIEW OF SYSTEMS: Otherwise negative.

PHYSICAL EXAMINATION:
VITAL SIGNS: Unremarkable. She is 5 feet 8 inches and 210 pounds.
HEENT: Pupils equal, round, and reactive to light and accommodation. Visual
fields are full. Fundi are benign.
CHEST: Clear.
CARDIOVASCULAR: Unremarkable.
ABDOMEN: Liver is 8 cm. Spleen is not palpable.
PELVIC: SIs are very tender on the left, somewhat tender on the right.
Straight leg raising is positive on the left with pain in the midline and
paraspinal flank area just above the pelvic crest on the left and with
prolonged sitting and straight leg raising at 60 degrees on the left and
right. She has discomfort in the left buttock and left posterior thigh.
Sensation is normal. Deep tendon reflexes are 2+.

PROCEDURE: Ancef 1 g IV was given. The patient was taken to the operating
room and prepped in the prone position on 5 pillows. The lower back was
draped and after insertion of a through the skin introducer needle, a #22
gauge 5-inch needle was passed en fasse in a 30-degree paracoronal oblique
view into the center one-third zone of the L4 disk. Then 2 mL containing 120
mcg/mL of Ancef and 0.25% bupivacaine, 30% Omnipaque 180 were mixed and
injected. A good discal outline was seen with very minimal extravasation

GARDNER, MELISSA A       33Y F
860011391  DOB:
AC#:6044749  000            REDACTED        DT:ORRPTIM

OPERATIVE REPORT
PAGE 1

Jul 28 06 08:41a    DR B CHIEN              3096918938              p.3

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL 61614

into the epidural space on the initial view of the patient. The needle was
withdrawn. The patient was asked to stand and walk, and in the course of a
1-minute walk, the patient noted that her discomfort in the midline and just
in the left flank was much much reduced. By the time the patient climbed
back onto the operating bed, her discomfort was gone and she moved much more
easily. The L5 was then prepared in an identical fashion and approached from
the right side. An additional 2 identical milliliters was injected, this
with a fresh introducer and fresh 22-gauge 5-inch needle. The needle was
withdrawn. The patient asked to ambulate again and during this 1-minute
ambulation, the left buttock and the posterior thigh discomfort remitted. PA
and lateral views of course had been saved. The patient was returned again
for the L3 which was performed from the left side in an identical fashion.
The patient after a 2-minute wait, was then walked once again and she noted
that her discomfort had not changed. Anyway the image of the L3 disk was of
good turgor and without extra discal leak. The patient was taken to the ASU
in good condition, and given Ancef to take for the balance of the week at 500
mg q.i.d. x7 days.

She will return to see Dr. Dinh in approximately 2 weeks' time.

Thanks for this opportunity to participate in the patient's care.


BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
D:   07/24/2006 09:19
T:   07/25/2006 00:01
P:   07/27/2006 13:56
540014/31201/32446
cc:  JOHN K MILLER, MD
cc:  DZUNG H DINH, MD

GARDNER, MELISSA A       31Y F
860011391    DOB:                    REDACTED
AC#:6044749    000                              DT:ORRPTIM
OPERATIVE REPORT
                                                .. PAGE 2 ...  ...

4107072700199321              A625007022000101              07/27/2007

R-0579

08/04/2006

JOHN K. MILLER, MD
7725 N KNOXVILLE AVENUE
PEORIA, IL 61614

RE: MELISSA GARDNER
DOB: **REDACTED**

Dear Dr. MILLER:

I had the pleasure of seeing MELISSA GARDNER for follow up today regarding her chronic back pain. Her pain is constant and rated 9/10 with some improvement while in the water. The pain returns after 30 minutes of being out of the pool therapy. Currently she is taking Vicodin ES, Relafen, Lyrica and Tramadol.

She had an intradiscal block by Dr. Chien on July 24 with pain relief for 15 minutes after L4-5 block.

At this point it appears that her pain may be coming from the L4-5 disc space however her insurance company will not approve artificial disc replacement surgery at this point. We are a clinical trial center for Aesculap lumbar artificial disc trial starting next year. In the meantime I will contact Dr. Chien to see if he can provide her some interim pain management with either a DCS trial or intrathecal pain pump.

I greatly appreciate the opportunity to be involved in the care of this patient. If I can be of any further assistance, please let me know.

Sincerely,


Dzung H. Dinh, M.D., M.B.A.

DHD:dsh

E-FILED
Wednesday, 23 July, 2008  04:06:38 PM
Clerk, U.S. District Court, ILCD

✳ *COPY* ✳

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

August 9, 2006

Robin Hamilton
AT&T Disability Center
P.O. Box 81569 King of Prussia, PA 19406

In r.e: Melissa Gardner

# REDACTED

Robin,

My understanding of Melissa Gardner's disability centers on the need for disc replacement. The underlying condition will NOT change in a year, a month or a week. Two week visits are completely abusive and unnecessary to confirm disability.

I understand that you will do what AT&T policy requires you to do. Just beware that this could be construed as abusive.

Regards,

Bruce B. Chien, M.D.

By fax to 866-224-4627

0727001993

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

January 30, 2007

Tan Payton
AT&T Disability Center

Dear Ms. Payton,

Melissa Gardner is still disabled from work. She has an open L45 disc demonstrated at 4/25/06 discogram and has concordant history and symptoms. On exam today her Straight leg raising is positive on the right at 10 degrees and on the left at 30 degrees. She is unable to arise even from a chair without a 25 pound hand assist. She has to roll to erect from bed.

She should NOT work until she has found surgical intervention. Our local surgical community, now having experienced Phase II clinical trials of the Charite disc. Feels strongly that she should wait for the release of this product. The distribution of her pain is not conducive to Dorsal Column Stimulator suppression. Although she could be fused, I have to defer to our surgical opinion.

She still cannot sit or stand for any period of more than about 3 minutes, which is hardly compatible with the workplace.

Bruce B. Chien, M.D.

By fax to 866-224-4627

R-0582



Close  Print this page

# Hydrocodone/Ibuprofen

**Generic Name:** Hydrocodone/Ibuprofen (hye-droe-KOE-done/eye-bue-PROE-fen)
**Brand Name:** Examples include Reprexain and Vicoprofen

## Hydrocodone/Ibuprofen is used for:

Short-term treatment of pain.

Hydrocodone/Ibuprofen is an opioid analgesic and NSAID combination. Exactly how it works is not known. Ibuprofen may block certain substances in the body that cause inflammation. Hydrocodone may affect opiate receptors in the brain to decrease pain.

## Do NOT use Hydrocodone/Ibuprofen if:

- you are allergic to any ingredient in Hydrocodone/Ibuprofen or any other codeine- or morphine-related medicine (eg, codeine)
- you have had a severe allergic reaction (eg, severe rash, hives, trouble breathing, growths in the nose, dizziness) to aspirin or an NSAID (eg, ibuprofen, celecoxib)
- you have severe kidney problems or you have severe diarrhea or other bowel problems caused by antibiotics or food poisoning
- you have recently had or will be having bypass heart surgery
- you are in the last 3 months of pregnancy
- you take sodium oxybate (GHB) or you have taken a monoamine oxidase inhibitor (MAOI) (eg, phenelzine) within the past 14 days

Contact your doctor or health care provider right away if any of these apply to you.

## Before using Hydrocodone/Ibuprofen :

Some medical conditions may interact with Hydrocodone/Ibuprofen . Tell your doctor or pharmacist if you have any medical conditions, especially if any of the following apply to you:

- if you are pregnant, planning to become pregnant, or are breast-feeding
- if you are taking any prescription or nonprescription medicine, herbal preparation, or dietary supplement
- if you have allergies to medicines, foods, or other substances
- if you or a family member has a history of mental or mood problems, suicidal thoughts or attempts, or alcohol or substance abuse, or if you drink alcohol
- if you have a history of kidney, liver, or lung problems, diabetes, or stomach or bowel problems (eg, bleeding, perforation, ulcers)
- if you have a history of swelling or fluid buildup, lupus, asthma, growths in the nose (nasal polyps), or mouth inflammation
- if you have high blood pressure, blood disorders, bleeding or clotting problems, heart problems (eg, heart failure), or blood vessel problems, or if you are at risk for any of these problems
- if you have Addison disease, thyroid problems, an enlarged prostate, or trouble urinating
- if you have asthma or breathing problems, seizures, growths in the brain, a recent head injury, or if you have had recent surgery
- if you have poor health, dehydration or low fluid volume, or low blood sodium levels

Some MEDICINES MAY INTERACT with Hydrocodone/Ibuprofen . Tell your health care provider if you are taking any other medicines, especially any of the following:

07/27/001993

- Anticoagulants (eg, warfarin), corticosteroids (eg, prednisone), heparin, salicylates (eg, aspirin), or selective serotonin reuptake inhibitors (SSRIs) (eg, fluoxetine) because the risk of bleeding, including stomach bleeding, may be increased
- Antihistamines (eg, diphenhydramine), barbiturates (eg, phenobarbital), cimetidine, narcotic pain medicine (eg, codeine), or sodium oxybate (GHB) because the risk of excessive drowsiness or severe breathing problems may be increased
- Anticholinergics (eg, benztropine), MAOIs (eg, phenelzine), probenecid, or tricyclic antidepressants (eg, amitriptyline) because they may increase the risk of Hydrocodone/Ibuprofen 's side effects
- Naltrexone or rifampin because they may decrease Hydrocodone/Ibuprofen 's effectiveness
- Cyclosporine, lithium, methotrexate, or quinolones (eg, ciprofloxacin) because the risk of their side effects may be increased by Hydrocodone/Ibuprofen
- Angiotensin-converting enzyme (ACE) inhibitors (eg, enalapril) or diuretics (eg, furosemide, hydrochlorothiazide) because their effectiveness may be decreased by Hydrocodone/Ibuprofen

This may not be a complete list of all interactions that may occur. Ask your health care provider if Hydrocodone/Ibuprofen may interact with other medicines that you take. Check with your health care provider before you start, stop, or change the dose of any medicine.

# How to use Hydrocodone/Ibuprofen :

Use Hydrocodone/Ibuprofen as directed by your doctor. Check the label on the medicine for exact dosing instructions.

- Hydrocodone/Ibuprofen comes with an extra patient information sheet called a Medication Guide. Read it carefully. Read it again each time you get Hydrocodone/Ibuprofen refilled.
- Take Hydrocodone/Ibuprofen by mouth with or without food. If stomach upset occurs, take with food to reduce stomach irritation.
- If you miss a dose of Hydrocodone/Ibuprofen and you are taking it regularly, take it as soon as possible. If several hours have passed or if it is nearing time for the next dose, do not double the dose to catch up, unless advised by your health care provider. Do not take 2 doses at once.

Ask your health care provider any questions you may have about how to use Hydrocodone/Ibuprofen .

# Important safety information:

- Hydrocodone/Ibuprofen may cause dizziness or drowsiness. These effects may be worse if you take it with alcohol or certain medicines. Use Hydrocodone/Ibuprofen with caution. Do not drive or perform other possibly unsafe tasks until you know how you react to it.
- Do not drink alcohol or use medicines that may cause drowsiness (eg, sleep aids, muscle relaxers) while you are using Hydrocodone/Ibuprofen ; it may add to their effects. Ask your pharmacist if you have questions about which medicines may cause drowsiness.
- Serious stomach ulcers or bleeding can occur with the use of Hydrocodone/Ibuprofen . Taking it in high doses or for a long time, smoking, or drinking alcohol increases the risk of these side effects. Taking Hydrocodone/Ibuprofen with food will NOT reduce the risk of these effects. Contact your doctor or emergency room at once if you develop severe stomach or back pain; black, tarry stools; vomit that looks like blood or coffee grounds; or unusual weight gain or swelling.
- Do NOT take more than the recommended dose or use for longer than prescribed without checking with your doctor.
- Hydrocodone/Ibuprofen has ibuprofen in it. Before you start any new medicine, check the label to see if it has ibuprofen in it too. If it does or you are not sure, check with your doctor or pharmacist.
- Do not take aspirin while you take Hydrocodone/Ibuprofen unless your doctor tells you to. If you already take aspirin for a heart or other condition, talk with your doctor about whether or not you should continue to take it with Hydrocodone/Ibuprofen .
- Lab tests, including liver function, kidney function, complete blood cell counts, and blood pressure, may be performed while you use Hydrocodone/Ibuprofen . These tests may be used to monitor your condition or check for side effects. Be sure to keep all doctor and lab appointments.
- Use Hydrocodone/Ibuprofen with caution in the ELDERLY; they may be more sensitive to its effects, especially stomach bleeding.
- Hydrocodone/Ibuprofen should be used with extreme caution in CHILDREN younger than 16 years old; safety and effectiveness in these children have not been confirmed.
- PREGNANCY and BREAST-FEEDING: Hydrocodone/Ibuprofen may cause harm to the fetus. Do not take it during the last 3 months of pregnancy. If you think you may be pregnant, contact your doctor. You will need to discuss the benefits and risks of using Hydrocodone/Ibuprofen while you are pregnant. It is not known if Hydrocodone/Ibuprofen is found in breast milk. Do not breast-feed while taking Hydrocodone/Ibuprofen .

Page 5 of 4

When used for long periods of time or at high doses, Hydrocodone/Ibuprofen may not work as well and may require higher doses to obtain the same effect as when originally taken. This is known as TOLERANCE. Talk with your doctor if Hydrocodone/Ibuprofen stops working well. Do not take more than prescribed.

Some people who use Hydrocodone/Ibuprofen for a long time may develop a need to continue taking it. People who take high doses are also at risk. This is known as DEPENDENCE or addiction.

If you suddenly stop taking Hydrocodone/Ibuprofen , you may experience WITHDRAWAL symptoms, including anxiety; diarrhea; fever, runny nose, or sneezing; goose bumps and abnormal skin sensations; nausea; vomiting; pain; rigid muscles; rapid heartbeat; seeing, hearing or feeling things that are not there; shivering or tremors; sweating; and trouble sleeping.

# Possible side effects of Hydrocodone/Ibuprofen :

All medicines may cause side effects, but many people have no, or minor, side effects. Check with your doctor if any of these most COMMON side effects persist or become bothersome:

> Anxiety; constipation; diarrhea; dizziness; dry mouth; gas; headache; heartburn; increased sweating; loss of appetite; nausea; nervousness; stomach pain or upset; trouble sleeping; vomiting; weakness.

Seek medical attention right away if any of these SEVERE side effects occur:

> Severe allergic reactions (rash; hives; itching; difficulty breathing; tightness in the chest; swelling of the mouth, face, lips, or tongue); bloody, black, or tarry stools; blurred vision; change in the amount of urine produced; chest pain; confusion; dark urine; depression; fainting; fast or irregular heartbeat; fever, chills, or persistent sore throat; mental or mood changes; numbness of an arm or leg; one-sided weakness; red, swollen, blistered, or peeling skin; ringing in the ears; seizures; severe headache or dizziness; severe or persistent stomach pain or nausea; severe vomiting; shortness of breath; slow or shallow breathing; stiff neck; sudden or unexplained weight gain; swelling of hands, legs, or feet; unusual bruising or bleeding; unusual joint or muscle pain; unusual tiredness or weakness; vision or speech changes; vomit that looks like coffee grounds; yellowing of the skin or eyes.

This is not a complete list of all side effects that may occur. If you have questions or need medical advice about side effects, contact your doctor or health care provider. You may report side effects to the FDA at 1-800-FDA-1088 (1-800-332-1088) or at http://www.fda.gov/medwatch.

# If OVERDOSE is suspected:

Contact 1-800-222-1222 (the American Association of Poison Control Centers), your local poison control center (http://www.aapcc.org/findyour.htm), or emergency room immediately. Symptoms may include blurred vision; cold and clammy skin; coma; confusion; decreased urination; loss of consciousness; ringing in the ears; severe dizziness or drowsiness; severe muscle weakness; severe nausea or stomach pain; slow or troubled breathing; unusual bleeding or bruising; vomit that looks like coffee grounds.

Proper storage of Hydrocodone/Ibuprofen :

Store Hydrocodone/Ibuprofen at 77 degrees F (25 degrees C). Brief storage at temperatures between 59 and 86 degrees F (15 and 30 degrees C) is permitted. Store away from heat, moisture, and light. Do not store in the bathroom. Keep Hydrocodone/Ibuprofen out of the reach of children and away from pets.

# General information:

- If you have any questions about Hydrocodone/Ibuprofen , please talk with your doctor, pharmacist, or other health care provider.
- Hydrocodone/Ibuprofen is to be used only by the patient for whom it is prescribed. Do not share it with other people.
- If your symptoms do not improve or if they become worse, check with your doctor.

This information is a summary only. It does not contain all information about Hydrocodone/Ibuprofen . If you have questions about the medicine you are taking or would like more information, check with your doctor, pharmacist, or other health care

provider.

Issue Date: November 1, 2006
Database Edition 06.4.1.002
Copyright © 2006 Wolters Kluwer Health, Inc.



Close  Print this page

# Tramadol

**Generic Name:** Tramadol Tablets (TRA-ma-dole)
**Brand Name:** Ultram

## Tramadol is used for:

Treating moderate to moderately severe pain.

Tramadol is an analgesic. It works in certain areas of the brain and nervous system to decrease pain.

## Do NOT use Tramadol if:

- you are allergic to any ingredient in Tramadol
- you have severe diarrhea due to taking an antibiotic
- you are intoxicated with alcohol, other opioids or narcotics (eg, morphine, codeine), sedatives or sleeping medicines (eg, temazepam, zolpidem), or other medicines
- you are taking nefazodone, carbamazepine, or sodium oxybate (GHB)

Contact your doctor or health care provider right away if any of these apply to you.

## Before using Tramadol :

Some medical conditions may interact with Tramadol . Tell your doctor or pharmacist if you have any medical conditions, especially if any of the following apply to you:

- if you are pregnant, planning to become pregnant, or are breast-feeding
- if you are taking any prescription (especially depression medicines) or nonprescription medicine, herbal preparation, or dietary supplement
- if you have allergies to medicines, foods, or other substances
- if you are allergic to codeine, a codeine-related medicine (eg, hydrocodone, dihydrocodeine, oxycodone), morphine, or a morphine-related medicine (eg, hydromorphone)
- if you have a history of alcohol abuse, substance abuse, or suicidal thoughts or behaviors
- if you have or recently have had any head injury, brain injury or tumor, increased pressure in the brain, or infection of the brain or nervous system
- if you have a history of stomach or intestinal problems, asthma or other lung or breathing problems, epilepsy, seizures, or chronic inflammation or ulceration of the bowels
- if you have had recent abdominal surgery
- if you have heart problems, liver problems (eg, hepatitis), kidney problems, thyroid problems, enlargement of the prostate gland, or urinary problems

Some MEDICINES MAY INTERACT with Tramadol . Tell your health care provider if you are taking any other medicines, especially any of the following:

- Carbamazepine because it may decrease Tramadol 's effectiveness and increase the risk of seizures
- Certain medicines for mental or mood disorders (eg, olanzapine, haloperidol), cyclobenzaprine, isoniazid, other opioid pain medicine (eg, codeine, hydrocodone), phenothiazines (eg, promethazine), sleeping medicines (eg, zolpidem), sodium oxybate (GHB), tricyclic antidepressants (amitriptyline), or weight loss medicines (eg, phentermine) because side effects, including excessive drowsiness, trouble breathing, liver problems, or seizures, may be increased
- Furazolidone, monoamine oxidase (MAO) inhibitors (eg, phenelzine), nefazodone, selegiline, or selective serotonin reuptake inhibitors (SSRIs) (eg, fluoxetine) because they may cause serious and sometimes fatal reactions, including restlessness, fever, excessive sweating, confusion, twitching, and seizures

R-0587

Page 2 of 3

- Oral anticoagulants (eg, warfarin) because its side effects, including bleeding, may be increased by Tramadol
- Digoxin because the risk of side effects, including nausea, vomiting, or slow heartbeat, may be increased by Tramadol

This may not be a complete list of all interactions that may occur. Ask your health care provider if Tramadol may interact with other medicines that you take. Check with your health care provider before you start, stop, or change the dose of any medicine.

# How to use Tramadol :

Use Tramadol as directed by your doctor. Check the label on the medicine for exact dosing instructions.

- Take Tramadol by mouth with or without food.
- If you miss a dose of Tramadol , take it as soon as possible. If it is almost time for your next dose, skip the missed dose and go back to your regular dosing schedule. Do not take 2 doses at once.

Ask your health care provider any questions you may have about how to use Tramadol .

# Important safety information:

- Tramadol may cause drowsiness and dizziness. These effects may be worse if you take it with alcohol or certain medicines. Use Tramadol with caution. Do not drive or perform other possibly unsafe tasks until you know how you react to it.
- Do not drink alcohol or use medicines that may cause drowsiness (eg, sleep aids, muscle relaxers) while you are using Tramadol ; it may add to their effects. Ask your pharmacist if you have questions about which medicines may cause drowsiness.
- Tramadol may cause dizziness; alcohol, hot weather, exercise, or fever may increase this effect. To prevent it, sit up or stand slowly, especially in the morning. Sit or lie down at the first sign of this effect.
- Tell your doctor or dentist that you take Tramadol before you receive any medical or dental care, emergency care, or surgery.
- Use Tramadol with caution in the ELDERLY; they may be more sensitive to its effects.
- Tramadol should not be used in CHILDREN younger than 16 years old; safety and effectiveness in these children have not been confirmed.
- PREGNANCY and BREAST-FEEDING: Tramadol has been shown to cause harm to the fetus. If you think you may be pregnant, contact your doctor. You will need to discuss the benefits and risks of using Tramadol while you are pregnant. Tramadol is found in breast milk. Do not breast-feed while taking Tramadol .

When used for long periods of time or at high doses, Tramadol may not work as well and may require higher doses to obtain the same effect as when originally taken. This is known as TOLERANCE. Talk with your doctor if Tramadol stops working well. Do not take more than prescribed.

Some people who use Tramadol for a long time without a break may develop a physical need to continue taking it. This is known as physical DEPENDENCE. If you suddenly stop taking Tramadol , you may experience WITHDRAWAL symptoms including anxiety; diarrhea; fever, runny nose, or sneezing; goose bumps and abnormal skin sensations; nausea; vomiting; pain; rigid muscles; rapid heartbeat; seeing, hearing or feeling things that are not there; shivering or tremors; sweating; and trouble sleeping.

# Possible side effects of Tramadol :

All medicines may cause side effects, but many people have no, or minor, side effects. Check with your doctor if any of these most COMMON side effects persist or become bothersome:

Constipation; diarrhea; dizziness; drowsiness; increased sweating; loss of appetite; nausea.

Seek medical attention right away if any of these SEVERE side effects occur:

Severe allergic reactions (rash; hives; itching; difficulty breathing; tightness in the chest; swelling of the mouth, face, lips, or tongue); agitation; fainting; fever; incoordination; muscle stiffness or tremor; seizures;

This is not a complete list of all side effects that may occur. If you have questions or need medical advice about side effects, contact your doctor or health care provider. You may report side effects to the FDA at 1-800-FDA-1088 (1-800-332-1088) or at http://www.fda.gov/medwatch.

# If OVERDOSE is suspected:

Contact 1-800-222-1222 (the American Association of Poison Control Centers), your local poison control center (http://www.aapcc.org/findyour.htm), or emergency room immediately. Symptoms may include bluish skin; cold clammy skin; difficult or slow breathing; drowsiness leading to unresponsiveness or coma; excessive sweating; loss of function in the heart and lungs; nausea and vomiting; pinpoint pupils; seizures; stomach or intestinal pain.

### Proper storage of Tramadol :

Store Tramadol at 77 degrees F (25 degrees C). Brief storage at temperatures between 59 and 86 degrees F (15 and 30 degrees C) is permitted. Store away from heat, moisture, and light. Do not store in the bathroom. Keep Tramadol out of the reach of children and away from pets.

# General information:

- If you have any questions about Tramadol , please talk with your doctor, pharmacist, or other health care provider.
- Tramadol is to be used only by the patient for whom it is prescribed. Do not share it with other people.
- If your symptoms do not improve or if they become worse, check with your doctor.

This information is a summary only. It does not contain all information about Tramadol . If you have questions about the medicine you are taking or would like more information, check with your doctor, pharmacist, or other health care provider.

Issue Date: November 1, 2006
Database Edition 06.4.1.002
Copyright © 2006 Wolters Kluwer Health, Inc.

Page 1 of 5

Close  Print this page

# Drugs.com.
### Drug Information Online

# Nabumetone

**Generic Name:** Nabumetone (nab-UE-me-tone)
**Brand Name:** Relafen

> Nabumetone is a nonsteroidal anti-inflammatory drug (NSAID). It may cause an increased risk of serious and sometimes fatal heart and blood vessel problems (eg, heart attack, stroke). The risk may be greater if you already have heart problems or if you take Nabumetone for a long time. Do not use Nabumetone right before or after bypass heart surgery.
>
> Nabumetone may cause an increased risk of serious and sometimes fatal stomach ulcers and bleeding. Elderly patients may be at greater risk. This may occur without warning signs.

## Nabumetone is used for:

Treating rheumatoid arthritis or osteoarthritis. It may also be used for other conditions as determined by your doctor.

Nabumetone is an NSAID. Exactly how it works is not known. It may block certain substances in the body that are linked to inflammation. NSAIDs treat the symptoms of pain and inflammation. They do not treat the disease that causes those symptoms.

## Do NOT use Nabumetone if:

- you are allergic to any ingredient in Nabumetone
- you have had a severe allergic reaction (eg, severe rash, hives, trouble breathing, growths in the nose, dizziness) to aspirin or an NSAID (eg, ibuprofen, celecoxib)
- you have recently had or will be having bypass heart surgery
- you are in the last 3 months of pregnancy

Contact your doctor or health care provider right away if any of these apply to you.

## Before using Nabumetone :

Some medical conditions may interact with Nabumetone . Tell your doctor or pharmacist if you have any medical conditions, especially if any of the following apply to you:

- if you are pregnant, planning to become pregnant, or are breast-feeding
- if you are taking any prescription or nonprescription medicine, herbal preparation, or dietary supplement
- if you have allergies to medicines, foods, or other substances
- if you have a history of kidney or liver disease, diabetes, or stomach or bowel problems (eg, bleeding, perforation, ulcers)
- if you have a history of swelling or fluid buildup, asthma, growths in the nose (nasal polyps), or mouth inflammation
- if you have high blood pressure, a blood disorder, bleeding or clotting problems, heart problems (eg, heart failure), or blood vessel disease, or if you are at risk for any of these diseases
- if you have poor health, dehydration or low fluid volume, or low blood sodium levels, you drink alcohol, or you have a history of alcohol abuse

Some MEDICINES MAY INTERACT with Nabumetone . Tell your health care provider if you are taking any other medicines, especially any of the following:

- Anticoagulants (eg, warfarin), aspirin, corticosteroids (eg, prednisone), heparin, or selective serotonin reuptake inhibitors (SSRIs) (eg, fluoxetine) because the risk of stomach bleeding may be increased
- Probenecid because it may increase the risk of Nabumetone 's side effects
- Cyclosporine, lithium, methotrexate, or quinolones (eg, ciprofloxacin) because the risk of their side effects may be increased by Nabumetone
- Angiotensin-converting enzyme (ACE) inhibitors (eg, enalapril) or diuretics (eg, furosemide, hydrochlorothiazide) because their effectiveness may be decreased by Nabumetone

This may not be a complete list of all interactions that may occur. Ask your health care provider if Nabumetone may interact with other medicines that you take. Check with your health care provider before you start, stop, or change the dose of any medicine.

# How to use Nabumetone :

Use Nabumetone as directed by your doctor. Check the label on the medicine for exact dosing instructions.

- Nabumetone comes with an extra patient information sheet called a Medication Guide. Read it carefully. Read it again each time you get Nabumetone refilled.
- Take Nabumetone by mouth. It may be taken with food if it upsets your stomach. This may not lower the risk of stomach or bowel problems (eg, bleeding, ulcers). Talk with your doctor if you have persistent stomach upset.
- Take Nabumetone with a full glass of water (8 oz/240 mL) as directed by your doctor.
- If you miss a dose of Nabumetone and you are taking it regularly, take it as soon as possible. If it is almost time for your next dose, skip the missed dose. Go back to your regular dosing schedule. Do not take 2 doses at once.

Ask your health care provider any questions you may have about how to use Nabumetone .

# Important safety information:

- Nabumetone may cause dizziness or drowsiness. These effects may be worse if you take it with alcohol or certain medicines. Use Nabumetone with caution. Do not drive or perform other possibly unsafe tasks until you know how you react to it.
- Serious stomach ulcers or bleeding can occur with the use of Nabumetone . Taking it in high doses or for a long time, smoking, or drinking alcohol increases the risk of these side effects. Taking Nabumetone with food will NOT reduce the risk of these effects. Contact your doctor or emergency room at once if you develop severe stomach or back pain; black, tarry stools; vomit that looks like blood or coffee grounds; or unusual weight gain or swelling.
- Do NOT take more than the recommended dose or use for longer than prescribed without checking with your doctor.
- Nabumetone is an NSAID. Before you start taking any new medicine, read the ingredients. If it also has an NSAID (eg, ibuprofen) in it, check with your doctor. If you are not sure, check with your doctor or pharmacist.
- Do not take aspirin while you are using Nabumetone unless your doctor tells you to.
- Nabumetone may cause you to become sunburned more easily. Avoid the sun, sunlamps, or tanning booths until you know how you react to Nabumetone . Use a sunscreen or wear protective clothing if you must be outside for any length of time.
- Lab tests, including kidney function, complete blood cell counts, and blood pressure, may be done to monitor your progress or to check for side effects. Be sure to keep all doctor and lab appointments.
- Use Nabumetone with caution in the ELDERLY; they may be more sensitive to its effects, including stomach bleeding and kidney problems.
- Nabumetone should be used with extreme caution in CHILDREN; safety and effectiveness in children have not been confirmed.
- PREGNANCY and BREAST-FEEDING: Nabumetone may harm the fetus. Do not use it during the last 3 months of pregnancy. If you think you may be pregnant, contact your doctor. You will need to discuss the benefits and risks of using Nabumetone while you are pregnant. It is not known if Nabumetone is found in breast milk. Do not breast-feed while you are taking Nabumetone .

# Possible side effects of Nabumetone :

All medicines may cause side effects, but many people have no, or minor, side effects. Check with your doctor if any of these most COMMON side effects persist or become bothersome:

Constipation; diarrhea; dizziness; drowsiness; gas; headache; heartburn; nausea; stomach upset.

Page 3 of 3

Seek medical attention right away if any of these SEVERE side effects occur:

Severe allergic reactions (rash; hives; itching; trouble breathing; tightness in the chest; swelling of the mouth, face, lips, or tongue); bloody or black, tarry stools; change in the amount of urine produced; chest pain; confusion; dark urine; depression; fainting; fast or irregular heartbeat; fever, chills, or persistent sore throat; mental or mood changes; numbness of an arm or leg; one-sided weakness; red, swollen, blistered, or peeling skin; ringing in the ears; seizures; severe headache or dizziness; severe or persistent stomach pain or nausea; severe vomiting; shortness of breath; sudden or unexplained weight gain; swelling of hands, legs, or feet; unusual bruising or bleeding; unusual joint or muscle pain; unusual tiredness or weakness; vision or speech changes; vomit that looks like coffee grounds; yellowing of the skin or eyes.

This is not a complete list of all side effects that may occur. If you have questions or need medical advice about side effects, contact your doctor or health care provider. You may report side effects to the FDA at 1-800-FDA-1088 (1-800-332-1088) or at http://www.fda.gov/medwatch.

# If OVERDOSE is suspected:

Contact 1-800-222-1222 (the American Association of Poison Control Centers), your local poison control center (http://www.aapcc.org/findyour.htm), or emergency room immediately. Symptoms may include decreased urination; loss of consciousness; seizures; severe dizziness or drowsiness; severe nausea or stomach pain; slow or troubled breathing; unusual bleeding or bruising; vomit that looks like coffee grounds.

Proper storage of Nabumetone :

Store Nabumetone at 77 degrees F (25 degrees C). Brief storage at temperatures between 59 and 86 degrees F (15 and 30 degrees C) is permitted. Store away from heat, moisture, and light. Do not store in the bathroom. Keep Nabumetone out of the reach of children and away from pets.

# General information:

- If you have any questions about Nabumetone , please talk with your doctor, pharmacist, or other health care provider.
- Nabumetone is to be used only by the patient for whom it is prescribed. Do not share it with other people.
- If your symptoms do not improve or if they become worse, check with your doctor.

This information is summary only. It does not contain all information about Nabumetone . If you have questions about the medicine you are taking or would like more information, check with your doctor, pharmacist, or other health care provider.

Issue Date: November 1, 2006
Database Edition 06.4.1.002
Copyright © 2006 Wolters Kluwer Health, Inc.

0727001993

Page 1 of 3



Close  Print this page

# Lyrica

**Generic Name:** Pregabalin (pre-GAB-a-lin)
**Brand Name:** Lyrica

## Lyrica is used for:

Treating certain types of nerve pain. It is also used in combination with other medicines to treat certain types of seizures. It may also be used for other conditions as determined by your doctor.

Lyrica is an anticonvulsant and neuropathic pain agent. How Lyrica works is not fully understood. It is thought to bind to certain areas in the brain that help reduce seizures, nerve pain, and anxiety.

## Do NOT use Lyrica if:

- you are allergic to any ingredient in Lyrica

Contact your doctor or health care provider right away if any of these apply to you.

## Before using Lyrica :

Some medical conditions may interact with Lyrica . Tell your doctor or pharmacist if you have any medical conditions, especially if any of the following apply to you:

- if you are pregnant, planning to become pregnant, or are breast-feeding
- if you are taking any prescription or nonprescription medicine, herbal preparation, or dietary supplement
- if you have allergies to medicines, foods, or other substances
- if you have heart problems (eg, congestive heart failure, irregular heartbeat), elevated creatinine kinase, muscle problems, diabetes, bleeding problems, or a history of alcohol or substance abuse
- if you have kidney problems or are on dialysis

Some MEDICINES MAY INTERACT with Lyrica . However, no specific interactions with Lyrica are known at this time.

This may not be a complete list of all interactions that may occur. Ask your health care provider if Lyrica may interact with other medicines that you take. Check with your health care provider before you start, stop, or change the dose of any medicine.

## How to use Lyrica :

Use Lyrica as directed by your doctor. Check the label on the medicine for exact dosing instructions.

- Lyrica comes with an additional patient leaflet. Read it carefully and reread it each time you get Lyrica refilled.
- Lyrica may be taken with or without food.
- Take Lyrica regularly to receive the most benefit from it. Taking Lyrica at the same time each day will help you remember to take it.
- If you miss a dose of Lyrica , take it as soon as possible. If it is almost time for your next dose, skip the missed dose and go back to your regular dosing schedule. Do not take 2 doses at once.

Ask your health care provider any questions you may have about how to use Lyrica .

R-0593

Page 2 of 3

# Important safety information:

- Lyrica may cause drowsiness, dizziness, blurred vision, or lightheadedness. Do not drive, operate machinery, or do anything else that could be dangerous until you know how you react to Lyrica . Using Lyrica alone, with certain other medicines, or with alcohol may lessen your ability to drive or perform other potentially dangerous tasks.
- Avoid drinking alcohol or taking other medicines that cause drowsiness (eg, sedatives, tranquilizers) while taking Lyrica . Lyrica will add to the effects of alcohol and other depressants. Ask your pharmacist if you have questions about which medicines are depressants.
- Lyrica may reduce the number of clot-forming cells (platelets) in your blood. To prevent bleeding, avoid situations in which bruising or injury may occur. Report any unusual bleeding, bruising, blood in stools, or dark, tarry stools to your doctor.
- Before you have any medical or dental treatments, emergency care, or surgery, tell the doctor or dentist that you are using Lyrica .
- If you are planning to father a child, talk to your doctor about the benefits and risks of fathering a child while taking Lyrica .
- LAB TESTS, including blood cell counts, creatine kinase levels, or heart function, may be performed to monitor your progress or to check for side effects. Be sure to keep all doctor and lab appointments.
- Use Lyrica with caution in the ELDERLY because they may be more sensitive to its effects.
- Lyrica is not recommended for use in CHILDREN. Safety and effectiveness have not been confirmed.
- PREGNANCY and BREAST-FEEDING: If you become pregnant while taking Lyrica , discuss with your doctor the benefits and risks of using Lyrica during pregnancy. It is unknown if Lyrica is excreted in breast milk. Do not breast-feed while taking Lyrica .

If you suddenly stop taking Lyrica , you may experience WITHDRAWAL symptoms, including diarrhea, headache, nausea, or sleeplessness. If treatment with Lyrica is stopped, the dose should be reduced gradually.

# Possible side effects of Lyrica :

All medicines may cause side effects, but many people have no, or minor, side effects. Check with your doctor if any of these most COMMON side effects persist or become bothersome:

Changes in sexual function; constipation; dizziness; drowsiness; dry mouth; gas; headache; lightheadedness; stomach pain.

Seek medical attention right away if any of these SEVERE side effects occur:

Severe allergic reactions (rash; hives; itching; difficulty breathing; tightness in the chest; swelling of the mouth, face, lips, or tongue); bloating or swelling of the hands, feet, or ankles; changes in vision; confusion; fast or irregular heartbeat; fever; inability to control urination; loss of coordination; mental/mood changes; muscle aches, pain, tenderness, or weakness (especially if this occurs with a fever or general feeling or discomfort); speaking problems; sudden weight gain; unusual tiredness or weakness.

This is not a complete list of all side effects that may occur. If you have questions or need medical advice about side effects, contact your doctor or health care provider. You may report side effects to the FDA at 1-800-FDA-1088 (1-800-332-1088) or at http://www.fda.gov/medwatch.

# If OVERDOSE is suspected:

Contact 1-800-222-1222 (the American Association of Poison Control Centers), your local poison control center (http://www.aapcc.org/findyour.htm), or emergency room immediately.

**Proper storage of Lyrica :**

Store Lyrica at 77 degrees F (25 degrees C). Brief storage at temperatures between 59 and 86 degrees F (15 and 30 degrees C) is permitted. Store away from heat, moisture, and light. Do not store in the bathroom. Keep Lyrica out of the reach of children and away from pets.

# General information:

Page 3 of 3

- If you have any questions about Lyrica , please talk with your doctor, pharmacist, or other health care provider.
- Lyrica is to be used only by the patient for whom it is prescribed. Do not share it with other people.
- If your symptoms do not improve or if they become worse, check with your doctor.

This information is a summary only. It does not contain all information about Lyrica . If you have questions about the medicine you are taking or would like more information, check with your doctor, pharmacist, or other health care provider.

Issue Date: November 1, 2006
Database Edition 06.4.1.002
Copyright © 2006 Wolters Kluwer Health, Inc.

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL 61614

.TE OF ADMISSION: 03/13/2006

.IMARY CARE PHYSICIAN: John K. Miller, MD

DE STATUS: Full code.

ENTIFYING DATA: Husband's name is Gregory Gardner. Cell phone number
8-0096.

IEF COMPLAINT: Intractable back pain.

STORY OF PRESENT ILLNESS: This 32-year-old right-handed female with no
gnificant history of low back pain who was in Springfield, Illinois, on
ursday, March 9, 2006, in a seminar course working with computers and
arted noticing waistline low back pain. She was able to complete her tasks
at day, but the pain was becoming more intense. She decided to stop at the
F Prompt Care on that Thursday and was given Vicodin and Skelaxin. She was
le to return to her training job in Springfield for AT and T on Friday but
th increasing back pain. At first, the pain became progressively worse
er the weekend. She had no fevers, chills, nausea, or vomiting. She had
 back trauma. No history of herpes zoster. She had no signs or symptoms
 cauda equina. Pain became more intense, rating it as close to 9/10 to the
int where she went to the emergency room last evening at Methodist and had
.x-ray performed that revealed some mild DJD and partial sacralization of
 degenerative changes at L4-L5 and L5-S1 as read at the emergency room at
hodist on March 12, 2006. She received 4 mg of morphine, Percocet, and
cle relaxants and was sent home.

: had increasing pain today to the point where she woke about 4 o'clock
s morning and took her second Percocet. She contacted her office but had
reasing pain and was sent to the emergency room for evaluation.

' the emergency room, she received 60 mg of IM Norflex and Nubain 20 mg x2.
: pain initially was rated as a 7/10. She states it is down about a 6/10
hout much in the way of pain release with the above medications.

e denies any footdrop. No signs or symptoms of cauda equina. No
resthesias or dysesthesias. No radiculopathy symptoms with it. No change
 bowel or bladder habits. She was able to urinate in the emergency room
d thinks she had a bowel movement yesterday. She does recognize that she
s increasing pain with cough. She feels more comfortable when she is in
e left lateral decubitus position with her knees drawn to her chest. She
s increasing pain with both sitting as well as leaving her legs supine.

e denies ever having a significant back problem like this before. She has
en hospitalized for other reasons but never because of back pain. She
nies any history of diskitis or back trauma that she can recall.

RDNER, MELISSA A      32Y F
0011391   DOB:
#:6016433  451       REDACTED                           DT:HPIMP

HISTORY & PHYSICAL
                                              PAGE 1

4107072700199421           A625007022000101              07/27/2007

                                                              R-0596

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

:condary to her above back pain, she was admitted to the hospital for pain
anagement and evaluation.

\ST MEDICAL HISTORY:  History of migraines.  She has had this for a number
: years.  She has been hospitalized, she estimates around 6 times.  She had
:en seeing initially Dr. Ni and now recently Dr. Richard Lee.  She thinks
1e had a significant migraine about 2 weeks ago but not previously.  She has
1d a history of what sounds like a cubital tunnel release on the left,
istory of a D and C, history of ectopic pregnancy, status post T and A, and
istory of cholecystectomy.  No significant history of osteoarthritis.

XIAL HISTORY:  She is married.  Her husband's name is Gregory.  She has 2
1ildren, 11 and 5.  She smokes half pack a day.  As a matter of fact, she
1d a cigarette in the wheelchair on the way up here to the ortho-neuro
loor.  She works currently for AT and T/SBC, she is going through a training
ourse down in Springfield, Illinois.

\MILY HISTORY:  Mother has a history of hyperlipidemia and a questionable
.story of having what sounds like congenital narrowed spinal canal.  Her
ither's family history is unknown.  She has no siblings.

:VIEW OF SYSTEMS:
\RDIOVASCULAR:  She denies any chest pressure or chest pain.  No syncope or
) :syncope.  No angina symptoms.  No palpitations.
\iTROINTESTINAL:  No hematochezia or melena.  Significant for dyspepsia.
\iNITOURINARY:  She denies any hematuria.  No history of kidney stones.  No
(: symptoms.
:ROLOGIC:  Positive pain without radiculopathy.  No paresthesias or
/esthesias.  No signs or symptoms of cauda equina.
:THOPEDIC:  No history of significant orthopedic problems in the past other
in some low-grade DJD.
\OCRINE:  Her last menstrual period is due this week, it was about 25 days
}).  No history of hyperlipidemia or diabetes.
:UROLOGIC:  No footdrop.  No radiculopathy.  No signs or symptoms of cauda
uina.  No paresthesias or dysesthesias.  No motor weakness, other than just
:creasing pain with either supine or walking.

:DICATIONS:  Depakote ER 500 mg PO q.a.m. for migraine prophylaxis.  Her
1armacy is Walgreens at East Peoria.  Maxalt 10 mg and Ultram.  She does not
'el this is very effective.  She is not using anything OCPs at this time.

\LERGIES:  Significant for DEMEROL causing blisters.  She had an IM
jection, it sounds like, and she had quite a bit of blisters on her gluteal
'ea; nausea and vomiting that is significant with ASPIRIN; and COMPAZINE
.used anxiety and mental status changes.  She has never had any history of
y problems with morphine, although it is mentioned as possible allergy on

RDNER, MELISSA A      32Y F
0011391    DOB:
#:6016433    451      REDACTED                    DT:HPIMP

HISTORY & PHYSICAL

PAGE  2

4107072700199421          A625007022000101                    07/27/2007

R-0597

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL 61614

ar emergency room sheet; this, she tells me is inaccurate.

PHYSICAL EXAMINATION:
VITAL SIGNS: Blood pressure 157/87 with pulse of 70, respirations of 20, and
temperature of 98.8. Saturating 98% on room air without any labored
respirations.
GENERAL: Positive discomfort, she rates as a 6/10 lying in left lateral
decubitus position with increasing pain with legs supine. She was able to
get out of wheelchair in order to have a cigarette outside the emergency room
earlier. Here with her mother.
ENT: Oropharynx pink and moist. Uvula midline.
NECK: No thyromegaly. No carotid bruits.
CARDIOVASCULAR: Regular rate and rhythm without murmur. S1 and S2. No S3.
RESPIRATORY: Clear to auscultation without wheezes or crackles.
ABDOMEN: Soft, obese, and nontender. Bowel sounds are positive. No masses.
GENITOURINARY: Deferred.
RECTAL: Deferred.
BREASTS: Deferred.
EXTREMITIES: She has normal motor skills 5/5 on her lower extremities. She
has no paresthesias or dysesthesias. No radiculopathy. She has no
tenderness over her SI joints bilaterally. I did not check a straight leg
raise because of muscle spasm and the patient's discomfort. She is able to
move on her own power, rolling from side to side in the bed as well as
straight her legs, preferring do this in a decubitus position. She has
normal ankle reflexes, dorsiflexion as well as patellar reflexes with good
sensation and distal pulses. Negative cords. Negative Homans. No lower
extremity edema.
BACK: She has no real tenderness over the entire length of the supraspinous
processes. She has some positive tenderness over the T12 all the way through
the L4 region, paraspinous muscles with no obvious spasm with exam, although
there is some tenderness to the skin. There is no obvious herpes zoster. No
shingles. No erythema. No bullae or blisters.

ASSESSMENT:
. A 32-year-old female, right handed, with intractable back pain.
. Musculoskeletal nature. I do not believe she has any significant
radiculopathy at this time.3. Family history of having some kind of
congenital stenosis in the spinal canal in the mother from what she can
recall.4. Drug allergies as above.

PLAN:
   Admit for back pain with morphine sulfate for pain management.
   We will use Zofran as an antiemetic.
   We will use Norflex 60 mg IM q.12 h. for muscle spasm.
   We will use Aqua pad heat for the patient's comfort.
   We will continue on her Depakote for migraine prophylaxis.

GARDNER, MELISSA A      32Y F
0011391   DOB:
#:6016433   451      **REDACTED**                    DT:HPIMP

HISTORY & PHYSICAL

PAGE 3

4107072700199421          A625007022000101          07/27/2007

R-0598

PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

We will check a urine pregnancy test.
We will consult Dr. Bruce Chien, pain management specialist, secondary to
.tractable back pain and see if she needs to proceed with MRA imaging of her
w back.
Any signs and symptoms of cauda equina which have discussed with the
.tient as well as nursing staff to contact me immediately or urinary
:tention with good comprehension.
The patient will be followed by Dr. Miller throughout her hospital course
.th whom I will discuss her care.  He is aware of her admission.

)BERT B. ADAMS, MD/hs/lr
:   03/13/2006 20:29
:   03/14/2006 12:00
)1136/32755/32446

ARDNER, MELISSA A      32Y F
50011391    DOB:
:#:6016433    451  REDACTED

HISTORY & PHYSICAL

DT:HPIMP

PAGE  4

Page 191 of 236

## DECLARATION OF MELISSA GARDNER

I, Melissa Gardner, declare and state as follows:

1.    I make this declaration in support of my appeal of the denial/termination of my Short and Long Term Disability benefits.

2.    My education is as follows:
Associate Degree in Business Administration

3.    My work experience is as follows:
I did Home Health Care for the elderly, and worked as a cashier at various local businesses until college.  Three years after I graduated from college I was hired at AT&T (SBC Comm.) where I continued to work until the time of my injury.

4.    I have not worked since March 2006.

5.    I am suffering from moderate to severe degenerative disc disease, crushed discs and ruptured and bulging discs. (L4 & L5 are ruptured and crushed, L3 & S1 are bulging and showing early signs of rupturing, and at least 2 other discs in my neck are also bulging and showing early signs of rupturing.)

6.    I have the following symptoms:
I have constant pain in my middle and lower back, radiating down my entire left hip, leg, calf and foot. Where I suffer numbness in the toes of my left foot.  I have almost constant headaches and returning migraines from the pain in my neck and shoulder area. I have experienced a loss in my appetite from the pain and medications. I'm almost always tired and moody.  I also suffer from short term memory loss due to the amount of medication I am on.

7.    I take the following medications and experience the following side-effects:

| Medication | Dosage | Side-effect |
| --- | --- | --- |
| NABUMETONE | 1 - 500mg tab twice daily | Drowsiness & Dizziness |
| CARISOPRODOL | 1 – 350mg tab 4 times daily | Drowsiness & Dizziness |
| TRAMADOL | 1 – 50mg tab 4 times daily | Drowsiness & Dizziness |
| HYDROCODONE | 1 - 7.5/500mg tab every 6hrs. | Drowsiness & Dizziness |
| AMBIEN | 1 – 10mg tab @ bedtime | Drowsiness & Dizziness |
| IMITREX injections | 1 – 6mg inject. every 2 hrs. as needed | Drowsiness & Dizziness |
|  | Not to exceed 2 doses in 24 hrs. | Nausea |

9.    In a typical day this is what I do:
Wake up in pain, get out of bed, go to kitchen (next room) take medication, go lay down in recliner in living room (next room) with bowl of cereal, where I lay still for at least a couple of hours until the medicine has time to ease some of my pain. I continue to stay in the recliner until lunch, where I then go back to kitchen and get something for lunch, maybe help my boys with theirs if they need it, and return to my recliner until dinner time. Then I sit at our kitchen table long enough to eat dinner with my family and then return to the recliner until bed time. I then either, take a shower or bath, and then take my medication and go to bed with heating pad around my back.

10.  I cannot work because:
The pain and discomfort I have almost 100% of the day and night would not, and does not allow me to function normally. The medication I have to take in order to not be in excruciating pain makes me unable to drive, work and function on my own. I greatly depend on my two children (ages 7 & 13 years) to help on a day to day basis, because I am unable to do for myself. Other than doctors appointments, and occasionally going somewhere with my family I rarely leave my home.

I declare under penalty of perjury that the foregoing is true and correct and if called as a witness I could testify competently thereto.

Executed at 5:27pm on July 18, 2007.

Melissa A.

Gardner

Melissa Gardner

0727001995

4107072700199521               A625007022000101                         07/27/2007

R-0601

## DECLARATION OF MELISSA GARDNER

I, Melissa Gardner, declare and state as follows:

1. I make this declaration in support of my appeal of the denial/termination of my Short and Long Term Disability benefits.

2. My education is as follows:
   Associate Degree in Business Administration

3. My work experience is as follows:
   I did Home Health Care for the elderly, and worked as a cashier at various local businesses until college. Three years after I graduated from college I was hired at AT&T (SBC Comm.) where I continued to work until the time of my injury.

4. I have not worked since March 2006.

5. I am suffering from moderate to severe degenerative disc disease, crushed discs and ruptured and bulging discs. (L4 & L5 are ruptured and crushed, L3 & S1 are bulging and showing early signs of rupturing, and at least 2 other discs in my neck are also bulging and showing early signs of rupturing.)

6. I have the following symptoms:
   I have constant pain in my middle and lower back, radiating down my entire left hip, leg, calf and foot. Where I suffer numbness in the toes of my left foot. I have almost constant headaches and returning migraines from the pain in my neck and shoulder area. I have experienced a loss in my appetite from the pain and medications. I'm almost always tired and moody. I also suffer from short term memory loss due to the amount of medication I am on.

7. I take the following medications and experience the following side-effects:

| Medication | Dosage | Side-effect |
|---|---|---|
| NABUMETONE | 1 - 500mg tab twice daily | Drowsiness & Dizziness |
| CARISOPRODOL | 1 – 350mg tab 4 times daily | Drowsiness & Dizziness |
| TRAMADOL | 1 – 50mg tab 4 times daily | Drowsiness & Dizziness |
| HYDROCODONE | 1 – 7.5/500mg tab every 6hrs. | Drowsiness & Dizziness |
| AMBIEN | 1 – 10mg tab @ bedtime | Drowsiness & Dizziness |
| IMITREX injections | 1 – 6mg inject. every 2 hrs. as needed Not to exceed 2 doses in 24 hrs. | Drowsiness & Dizziness Nausea |

9. In a typical day this is what I do:
   Wake up in pain, get out of bed, go to kitchen (next room) take medication, go lay down in recliner in living room (next room) with bowl of cereal, where I lay still for at least a couple of hours until the medicine has time to ease some of my pain. I continue to stay in the recliner until lunch, where I then go back to kitchen and get something for lunch, maybe help my boys with theirs if they need it, and return to my recliner until dinner time. Then I sit at our kitchen table long enough to eat dinner with my family and then return to the recliner until bed time. I then either, take a shower or bath, and then take my medication and go to bed with heating pad around my back.

10.    I cannot work because:
The pain and discomfort I have almost 100% of the day and night would not, and does not allow me to function normally. The medication I have to take in order to not be in excruciating pain makes me unable to drive, work and function on my own. I greatly depend on my two children (ages 7 & 13 years) to help on a day to day basis, because I am unable to do for myself. Other than doctors appointments, and occasionally going somewhere with my family I rarely leave my home.

I declare under penalty of perjury that the foregoing is true and correct and if called as a witness I could testify competently thereto.

Executed at 5:27pm on July 18, 2007.

Melissa A.

Gardner

Melissa Gardner

4107072700199621                    A625007022000101                    07/27/2007

R-0603

Jul 30 2007 3:07PM    HP LASERJET FAX                              p.1

# FACSIMILE COVER SHEET

DATE:                July 30, 2007_____    File No.:

TO:                  Quality Review Unit

RE:                  *Melissa Gardner*

FACSIMILE NO.:       866-856-5065

From:  Jill A. Fulkes *for* The ERISA Law Group

| DOCUMENTS | NUMBER OF PAGES INCLUDING COVER SHEET |
|-----------|---------------------------------------|
| Correspondence | 1 |

If you do not receive _all_ pages, please telephone us immediately at 559-256-9800 ext. 28.

Message:_____

CONFIDENTIAL NOTICE: This message is intended only for the use of the individual or entry to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to the above address via the U.S. Postal Service. Postage will be reimbursed. Thank you.

422007073000902821              A625007022000101                    07/30/2007

**R-0604**

Jul 30 2007 3:07PM    HP LASERJET FAX                              p.2



### ERISA LAW GROUP LLP
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:     (559) 256-9800
Facsimile: (559) 256-9795

July 30, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

AT&T Integrated Disability Service Center          *VIA FACSIMILE: 866-856-5065*
Quality Review Unit                                *AND U. S. MAIL*
PO Box 14626
Lexington, KY 40512

      STD Claim No.: A625007022-0001-01
      LTD Claim No.: A625027340-0001-01

To Whom it May Concern:

    This is in response to Mr. Stephan Kane's letter of July 26, 2007. Ms. Gardner appealed both the STD and LTD by letter dated July 19, 2007. This serves to confirm that if Ms. Gardner's STD benefits are reinstated, that her LTD claim will be reviewed at the exhaustion of her STD benefit period.

                Very truly yours,

                Robert J. Rosati

RJR/jaf

cc:    Melissa Gardner

422007073000902821          A625007022000101          07/30/2007

R-0605



## ERISA LAW GROUP LLP
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (559) 256-9800
Facsimile: (559) 256-9795

July 30, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 14626
Lexington, KY 40512

*VIA FACSIMILE: 866-856-5065
AND U. S. MAIL*

STD Claim No.: A625007022-0001-01
LTD Claim No.: A625027340-0001-01

To Whom it May Concern:

This is in response to Mr. Stephan Kane's letter of July 26, 2007. Ms. Gardner appealed both the STD and LTD by letter dated July 19, 2007. This serves to confirm that if Ms. Gardner's STD benefits are reinstated, that her LTD claim will be reviewed at the exhaustion of her STD benefit period.

Very truly yours,

Robert J. Rosati

RJR/jaf

cc:   Melissa Gardner



**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721

FRESNO CA 937
30 JUL 2007 PM 2 L



AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 14626
Lexington, KY 40512

40512+4626

4107080300312621                A625007022000101                08/03/2007

R-0607

08-10-07    12:27pm    From-Network Fax                    T-390  P.001/004  F-569

## External Physician Advisor Referral Form
## AT&T IDSC Quality Review Unit

**Review Request**     08/10/07

Type of Review:     ☒ Medical     ☐ Mental Health     ☐ Both
Type of Specialty Review requested: Pain Mgmt, Neurosurgery
                                                    Review Due Date:     08/17/07
Has Physician Advisor reviewed case before: ☒ Yes  ☐ No
If yes, reviewed by: Sankar Pemmaraju, D.O.; Mark Dirnberger, D.O.

**Referral Source**

Appeal Specialist Name: Stephen Kane
Email Address: skane@sedgwickcms.com
Phone:  866-276-2278, direct line-#469-417-6116      Fax: 866-856-5065

**Employee Information**

Name: GARDNER, MELISSA                    Sex:  ☒ F    ☐ M
SSN: **REDACTED**                          DOB: **REDACTED**
Business: AT&T                             Job title: Marketing Support Specialist
*See detailed job duty description included in the file

**Treating Physician – Appeals Specialist to Complete this Section ONLY if Doc/Doc requested**
*Appeal Specialist, prior to PA Referral, determine Attending Physician's availability:*

Last name: _____     First name: _____     Specialty/practice: _____
Phone number: _____     Fax Number: _____     Time Zone: _____
Availability (dates & time): Monday thru Friday office hrs.

Last name: _____     First name: _____     Specialty/practice: _____
Phone number: _____     Fax Number: _____     Time Zone: _____
Availability (dates & time): Monday thru Friday office hrs.

Last name: _____     First name: _____     Specialty/practice: _____
Phone number: _____     Fax Number: _____     Time Zone: _____
Availability (dates & time): Monday thru Friday office hrs.

**Claim Information**

Claim number: A625007022-0001-01          Claim Type: ☒ STD ☐ AD ☐ LTD
Date of Disability: 03/20/2006             Last Day Worked: 03/12/2006
Has the employee RTW: ☒ NO ☐ YES            If yes, date: _____
Diagnosis: Intractable back pain; L4 Disc syndrome;     Axis #1: _____
Diagnosis: Radiculopathy; Left C7 Radiculopathy.        Axis #2: _____
Diagnosis: L4 & L5 Intradiskal pain                     Axis #3: _____
                                                        Axis #4: _____

08-10-07   12:27pm   From-Network Fax                        T-390   P.002/004   F-569

| Employee Name: **GARDNER, MELISSA** | Claim Number: A625007022-0001-01 |
|---|---|
| SSN: **REDACTED** | |

**DCM complete the following:**
**(Must print case notes and provide copies of medical information received.)**

1) Brief case summary: _____
2) Additional information about the diagnosis: _____
3) Current treatment plan: _____
4) Reason for referral: <u>requesting MD opinion of claimant's ability to carry out job duties during the period in question.</u>

**Questions for Physician Advisor to address (check as appropriate):**

☒ 1.  Is the employee disabled from his/her regular job as of 01/19/2007 to Present?

☐ 2.  How are symptoms and functional capacity assessed and monitored between appointments?
☐ 3.  Since a return to an increased functional level is also therapeutic, how is the plan of care developed to promote these types of activities?
☐ 4.  What is the treating provider's plan for return to work?  In your opinion, is the employee capable of any work? If so, what work restrictions, if any, are necessary?
☐ 5.  If disabled, what is/are the disabling diagnoses and complicating factors/comorbidities?
☒ 6.  If disabled, what is the rationale or basis for the disability?
☒ 7.  If disabled, what is the expected/appropriate length of disability?
☐ 8.  Is the treatment plan appropriate?  Is this a standard treatment plan?  Are there modifications you would recommend to the treatment plan?
☐ 9.  Does the treating physician agree with the recommendation?

Please write additional questions here:

<u>10.    What are the clinical findings contained in the medical record and how would it impact the employee's ability to function?</u>
<u>11.    If there are findings that are not clinically significant, why are these findings not clinically significant?</u>

08-10-07    12:27pm    From-Network Fax                                     T-390    P.003/004    F-569

## Marketing Support Specialist

I.      General Duties

Arranges for Centrex and complex non-Centrex services as received on a demand basis from business customers or vendors. Duties may include but are not limited to the following:

1)   Negotiates and processes customer service order requests by accessing multiple mechanized systems while speaking to customers.
2)   Coordinates the installation and maintenance of Ameritech provided services in order to deliver accurate and on-time service to customers.
3)   Communicates with customers using in-depth interviews to verify service appointments and/or subscriber service problems.
4)   Prioritizes troubles for proper routing and statusing which may involve dealing with external customers.
5)   Performs preventative maintenance testing and analysis (e.g. Predictor).
6)   Updates databases and corrects errors. Coordinates the clearance/correction of troubles.
7)   May troubleshoot on accounts including working with technicians to determine what actions are necessary to correct problems.
8)   Determines customer requirements from among many service offerings. Recommends, sells and substantiates the appropriate products and services to customers using approved sales techniques.
9)   Accurately computes and quotes rates, adjustments and balances to customers.
10) Discusses, investigates and resolves local service and long distance billing inquiries.
11) Works to meet sales and service goals and handles customer's needs promptly. –
12) Coordinates service arrangements/agreements with other departments.
13) Handles discussions with customers involving company matters such as policy and regulatory conformance.
14) Prepares self-composed letters to customers.
15) Positions Ameritech as the premier provider of choice.
16) Performs all other duties comparable to the above as assigned.
17) Follows established safety practices and procedures.

II. Basic Qualifications

* Tests
1)   Minimum qualifications on the Service Representative Computerized Assessment Process (SR CAP): Workstation Score.
2)   Minimum qualifications on the Service Representative Telephone Assessment Process (SR TAP): Core/Service Score. [T3400]

* Prerequisites
   1)   Satisfactory attendance record and performance ratings in present job.
   2)   Satisfactory results from a security investigation, as required, unless previously met.
   3)   Other factors which may vary based on work group requirements.

* Physical Requirements

Normal authorized medical evaluation for this job, unless previously met.

* Hours - Hours vary depending on assignment. Normally works day hours (Monday through Friday) with occasional overtime, weekends and holidays as required. Hours are determined by job requirements, qualifications, seniority and employee preference.

* Time on Assignment - Incumbents to this position are expected to meet a Time on Assignment requirement of 18 months.

R-0610

(Page 411 of 427)

III. Additional Qualifications

A)   Most highly desired.

1)   Service order experience. [73110]  Definition: Regular and consistent experience working with service orders, including reading, issuing, and/or completing.

B)   Highly desired.

2.)  Complex telecom products/services knowledge. [72100] Definition: On-the-job working knowledge of how to integrate products/services such as: DS1, DS3, ISDN, SONET, ADTS, etc., in order to sell and/or provide systems (e.g., Centrex, PBX) for customer business solutions.

C)   Desired.

2)   Experience using Ameritech computerized systems (in accordance with Business Units and job requirements). [71100]* Definition: Regular and consistent experience using Ameritech computerized systems to access or enter billing, collections, service order, and/or provisioning information (e.g., ACIS, ASON, LMOS, MORTEL, TIRKS, WFA, etc.).

3)   Experience coordinating with other departments. [73130] Definition: Regular and consistent experience coordinating due dates and work with others including troubleshooting problems and/or escalating when necessary in order to meet customer requests.

4)   Experience with customer negotiation and conflict resolution. [73100] Definition: Regular and consistent experience negotiating with customers to resolve conflicts, determine needs, and/or recommend products and services.    *Please note that specific systems may be requested at the time of requisition.

IV.  Training
     -    Classroom training. - On-the-job training.

V.       Reasonable accommodations will be made for qualified candidates with disabilities. Essential job functions are identified for specific jobs on job requisition forms.

     ** Updated 4/21/2000

CONFIDENTIAL

Solely for use by employees of Ameritech companies who have a need to know. Not to be disclosed to or used by any other person without prior authorization.

From: NMR    To: 1866-856-5065    Page: 1/1    Date: 8/13/2007 8:59:18 AM



# FAX TRANSMITTAL

August 13, 2007

TO:   STEPHEN KANE                           FROM:   MICHELLE KEITH
      AT&T IDSC QUALITY REVIEW UNIT
                                             FAX#:   815-399-5437

FAX#:    (866)-856-5065
                                             PHONE#:    815-399-5180
PHONE#:   (469)-417-6116   EXT.              TOLL FREE:   888-388-1667
                                                              (NMR)

RE:  **MELISSA GARDNER**

CLAIM#:   A625007022-0001-01

NMR FILE#:   A84163.01

EXPECTED DATE OF COMPLETION:   <u>08/17/2007</u>

Your request for a medical review of the information on the above named individual has been received.
This file is on STANDARD status and will be completed with in the above indicated time frame.
Should you have any questions or concerns regarding this review, please feel free to contact us at the following:

We appreciate your referral. Thank you.

-For general questions or for review status:        mkeith@nmrco.com

-For questions regarding medical content:           twise@nmrco.com
                                                    dhapp@nmrco.com

-For billing questions:                             mkeith@nmrco.com

*The information contained in this facsimile message is intended for the personal and confidential use of the designated recipient(s) named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, and has received this document in error, Please notify me immediately by telephone so that the return of the document can be arranged.*

*Thank You*

*Providers of Evidence-Based Medical Reports*

605 Fulton Ave. Suite 2002          Rockford, IL. 61103
Telephone 815/964-6334 or 888/388-1667   Fax 815/964-1162

422007081300240721          A625007022000101          08/13/2007

R-0612

From: NMR    To: 1-866-856-5065    Page: 2/7    Date: 8/17/2007 11:13:57 AM



## Insurance Appeals, Ltd.

An Independent Review Organization (IRO)

**REFERRED BY:** Stephen Kane
**CLIENT:** AT&T
**REVIEW TYPE:** Appeal
**NAME:** Melissa Gardner
**CLAIM #:** A625007022-0001-01
**NMR #:** A84163.01
**DATE:** 08/17/2007

### MEDICAL RECORDS PROVIDED FOR REVIEW:

| CLAIM LOG | Case Notes | 03/22/06-08/10/07 | 1-111 |
|---|---|---|---|
| PROG NOTES | Proctor Hospital | 03/13/06-07/24/06 | 112-127 |
| PROG NOTES | B. Chien, M.D. | 03/14/06-01/30/07 | 128-139 |
| PROG NOTES | R. Flores, M.D. | 04/03/06 | 140-141 |
| PROG NOTES | Saint Francis Medical Center | 04/17/06 | 142-144 |
| PROG NOTES | Associates University Neurosurgeons, S.C. | 06/16/06-08/10/06 | 145-151 |
| IME | | 01/08/07 | 152-162 |
| LAB | | 03/13/06 | 163 |
| CT/MRI | | 03/14/06-04/20/06 | 164-169 |
| EMG/NCS | | 04/03/06 | 170-177 |
| JOB | | | 178-179 |
| BILLING | | 01/23/07 | 180 |
| MISC. | | 04/30/02-07/30/07 | 181-267 |
| ROI | | 03/30/06-04/04/06 | 268-269 |

**PAIN MANAGEMENT SYNOPSIS:** The enclosed clinical records were reviewed. The patient was evaluated by Dr. Chien on 3/14/06 at the Proctor Hospital for her complaints of acute onset back pain. The patient indicated she noted back pain while at work. This was not associated with any specific activities such as lifting or falling. There was no history of trauma. However, the patient noted progressive back pain over the course of the day. Over the next several days, the patient's back pain continued and increased in severity. She was presented to the local emergency department and was prescribed the medication Percocet. Her back pain complaints continued and she now presented for evaluation.

After performing a physical examination, Dr. Chien's clinical impression was L4 disc syndrome. Dr. Chien performed a L4 epidural steroid injection on 3/15/06. The patient's back pain complaints persisted without significant improvement.

Dr. Chien performed an L4 and L5 intradiskal block and diskography on 7/24/06. Dr. Chien submitted a letter on 3/03/06 indicating the patient has poor sitting and standing tolerance rendering her unable to perform her routine work duties.



605 Fulton Avenue • Suite 2002 • Rockford, Illinois 61103 • TEL: (815) 964-6334 • FAX: (815) 964-4162
E-Mail: info@insuranceappeals.cc

From: NMR    To: 1-866-856-5065    Page: 3/7    Date: 8/17/2007 11:13:58 AM

RE: Melissa Gardner                                                        NMR#: A84163.01
Page 2



A subsequent letter from Dr. Chien of 9/07/06 reiterated that the patient is unable to work in any capacity and requires surgical intervention. A letter from Dr. Chien of 1/30/07 again voiced similar issues regarding her inability to work and the need for surgical intervention.

An independent medical evaluation was performed by neurosurgeon Dr. Delheimer on 1/08/07. After obtaining an extensive clinical history, reviewing the prior medical records, and performing a physical examination, Dr. Delheimer concluded that the patient was functionally capable of resuming her sedentary job as a marketing specialist.

**ATTENDING PHYSICIAN MOST RECENT DIAGNOSIS:** Acute onset back pain

**OBJECTIVE INFORMATION:** A lumbar spine MRI scan performed on 3/14/06 demonstrated mild degenerative disc disease with central annular tears at L3-4 and L4-5. There was no evidence of herniated disc disease or nerve root impingement. A cervical spine MRI scan performed on 3/23/06 was documented as normal. Electrodiagnostic evaluation performed on 4/03/06 demonstrated mild bilateral L4 radiculopathies.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

   1.  **Is the employee disabled from her regular job as of 01/19/07 to present?**

From a physical medicine and rehabilitation perspective according to the medical record, the employee is not disabled from her regular job as of 1/19/07 to present.

   2.  **If disabled, what is the rationale or basis for the disability?**

The patient is not disabled.

   3.  **If disabled, what is the expected/appropriate length of disability?**

The patient is not disabled.

   4.  **What are the clinical findings contained in the medical record and how would it impact the employee's ability to function?**

The clinical findings consist primarily the patient's complaints of low back pain with poor sitting and standing tolerance. However, this is not associated with significant underlying objective radiological (lumbar MRI) findings or electrodiagnostic findings correlating to the patient's severe subjective complaints.

   5.  **If there are findings that are not clinically significant, why are these findings not clinically significant?**

The patient's clinical findings are significant; however, they are not associated with objective impairment precluding her from performing the routine duties of her regular job.



RE: Melissa Gardner                                         NMR#: A84163.01
Page 3

**RATIONALE:** The enclosed clinical records were reviewed. The patient had sudden onset of back pain on or about 3/13/06, not associated with any specific trauma or precipitating event. Since that time, she has undergone epidural steroid injections and nerve block. However, her complaint of back pain has persisted. The treating physician, however, requested surgical intervention.

However, from pain management perspective, there remains no objective impairment precluding the patient from performing routine duties of her regular job. She remained independent with activities of daily living, ambulation and not restricted from driving a motor vehicle. In addition, she is otherwise functionally capable of performing routine duties of a sedentary job.

However, it should be noted that if indeed the patient requires surgical intervention and has significant pathology from a neurosurgical perspective, this is best addressed by the neurosurgeon and this physician advisor would defer to the neurosurgeon regarding surgical intervention and the patient's disability status.

**CRITERIA:** ACOEM Occupational Medicine Practice Guidelines, second edition, page 302, table 12-6. "Guidelines for modification of work activities and disability duration."

**CONFLICT OF INTEREST ATTESTATION:**

I attest to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device, or procedure.

I attest that my compensation is not dependent on the specific outcome of my review.

**PHYSICIAN ADVISOR:**

Philip Jordan Marion, M.D., M.S., M.P.H.
Board Certified Physical Medicine
   and Rehabilitation
Board Certified Pain Management
Associate Clinical Professor, George Washington University
   Medical Center
MD License #D40084
NY License #168424
VA License# 0101045270
Washington DC License #17907
Certified, Texas Worker's Compensation
   Commission – ADL

*NMR CONFLICT OF INTEREST ATTESTATION:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

422007081700486921               A625007022000101                    08/17/2007

R-0615

(Page 417 of 427)

From: NMR    To: 1-866-856-5065    Page: 5/7    Date: 8/17/2007 11:13:59 AM



Insurance Appeals, Ltd.

An Independent Review Organization (IRO)

| REFERRED BY: | Stephen Kane |
| CLIENT: | AT&T |
| REVIEW TYPE: | Appeal |
| NAME: | Melissa Gardner |
| CLAIM #: | A625007022-0001-01 |
| NMR #: | A84163.01 |
| DATE: | 08/17/2007 |

## MEDICAL RECORDS PROVIDED FOR REVIEW:

| CLAIM LOG | Case Notes | 03/22/06-08/10/07 | 1-111 |
|---|---|---|---|
| PROG NOTES | Proctor Hospital | 03/13/06-07/24/06 | 112-127 |
| PROG NOTES | B. Chien, M.D. | 03/14/06-01/30/07 | 128-139 |
| PROG NOTES | R. Flores, M.D. | 04/03/06 | 140-141 |
| PROG NOTES | Saint Francis Medical Center | 04/17/06 | 142-144 |
| PROG NOTES | Associates University Neurosurgeons, S.C. | 06/16/06-08/10/06 | 145-151 |
| IME | | 01/08/07 | 152-162 |
| LAB | | 03/13/06 | 163 |
| CT/MRI | | 03/14/06-04/20/06 | 164-169 |
| EMG/NCS | | 04/03/06 | 170-177 |
| JOB | | | 178-179 |
| BILLING | | 01/23/07 | 180 |
| MISC. | | 04/30/02-07/30/07 | 181-267 |
| ROI | | 03/30/06-04/04/06 | 268-269 |

**NEUROSURGICAL SYNOPSIS:** This is the medical file of 34-year-old female, who has a 250-pound. She went out on disability on 3/20/06 due to complaints of back pain secondary to L4 degenerative disease and C7 radiculopathy on the left side.

On 3/13/06, this patient went to the hospital complaining of neck and back pain with radiation into the arms and legs with numbness and tingling in arms, legs, and hands. MRI studies performed and demonstrated some chronic mild degenerative disease at L4 and at C6-7 in the cervical spine. Her neurological exam was entirely normal.

She then came under the care of Dr. Chien, a chronic pain management individual, and was seen by Dr. Flores, a neurologist, for which she underwent EMGs and nerve conductions, which had mild problems associated with cervical radiculopathy and bilateral L4 radiculopathy.

She underwent a discogram only at L4, which was positive in some way. Reportedly, she was treated with epidural steroid injections with only minimal improvement. She was given a diagnosis of polyneuropathy with disk disease at L4. However, no clear-cut explanation for all the complaints including her pain, numbness, and tingling reported.



605 Fulton Avenue • Suite 2002 • Rockford, Illinois 61103 • TEL: (815) 964-6334 • FAX: (815) 964-1162
E-Mail: info@insuranceappeals.cc

422007081700486921    A625007022000101    08/17/2007

R-0616



RE: Melissa Gardner
Page 2

NMR#: A84163.01

Her neurological exams on multiple occasions by Dr. Chien, Dr. Flores, and others have always been normal with normal reflexes, normal muscle strength, and normal sensory examinations.

She also over the years had chronic migraine, which has been aggravated by her cervical condition. She underwent a thorough chart review and neurological evaluation by Dr. Delheimer on 1/08/07, and he essentially found a normal neurological exam with some x-ray evidence of chronic degenerative disease at multiple levels in the cervical and lumbar spines without evidence of progressive neurocompression.

## ATTENDING PHYSICIAN MOST RECENT DIAGNOSIS:

X-ray evidence of chronic degenerative disease at multiple levels in the cervical and lumbar spines without evidence of progressive neurocompression
Polyneuropathy with disk disease at L4
Chronic migraine
Obesity

**OBJECTIVE INFORMATION:** Her neurological exams on multiple occasions by Dr. Chien, Dr. Flores, and others have always been normal with normal reflexes, normal muscle strength, and normal sensory examinations.

Neurological evaluation by Dr. Delheimer on 1/08/07, found a normal neurological exam with some x-ray evidence of chronic degenerative disease at multiple levels in the cervical and lumbar spines without evidence of progressive neurocompression.

## IN ANSWER TO YOUR SPECIFIC QUESTIONS:

**1. Is the employee disabled from her regular job as of 01/19/07 to present?**

No and this is based on all the medical information provided demonstrating no significant medical documentation of her condition that would prevent this individual from performing her usual occupation.

**2. If disabled, what is the rationale or basis for the disability?**

Not applicable.

**3. If disabled, what is the expected/appropriate length of disability?**

Not applicable.

RE: Melissa Gardner                                        NMR#:  A84163.01
Page 3



**4.  What are the clinical findings contained in the medical record and how would it impact the employee's ability to function?**

The only significant clinical finding is the complaints of pain, minimal degenerative disease in the cervical and lumbar spines, and mild neurodiagnostic electrical studies demonstrating a questionable diagnosis of polyneuropathy.  She is also obese.  The most significant problem with this woman is her obesity and her chronic pain syndrome, neither of which should influence her ability to perform her usual occupation.

**5.  If there are findings that are not clinically significant, why are these findings not clinically significant?**

The mild electrodiagnostic findings of polyneuropathy appear not to be clinically significant because there is no clinical correlate in this patient of a polyneuropathy.

**RATIONALE:**  The rationale for these opinions is that this individual is experiencing from chronic pain and has minimal degenerative disease in the cervical and lumbar spines and a completely normal neurological exam, which would result in no need for any significant restrictions and limitations in the performance of her usual occupation.

**CONFLICT OF INTEREST ATTESTATION:**

I attest to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device, or procedure.

I attest that my compensation is not dependent on the specific outcome of my review.

**PHYSICIAN ADVISOR:**

J. Parker Mickle, M.D.
Board Certified Neurosurgery
FL License #: ME37968
Certified, Texas Worker's Compensation
    Commission – ADL

_NMR CONFLICT OF INTEREST ATTESTATION:_

_NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure.  NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral._



**To:** MELISSA GARDNER

**Message:**



# FAX TRANSMITAL

**DATE:** 8/17/07

**TO:** STEPHEN KANE

**PAGES:** 7 including this page

**RE:** MELISSA GARDNER

**Tina Blanchard**

Phone:1-815-964-6334  Ext.11
Fax:1-215-701-1843
E-mail: tblanchard@nmrco.com
Web: www.nmrco.com

The information contained in the email is confidential and protected by applicable laws. It is intended only for the party specified as the addressee. If this transmittal is received in error, please contact this sender, delete this email from any computer and do not use, disclose, or store the information it contains.



   

605 Fulton Ave. Suite 2002 Rockford, IL 61103
Tel:815.964.6334 Fax:815.964.1162
Website:www.nmrco.com

422007081700486921　　　　A625007022000101　　　　08/17/2007

R-0619

(Page 421 of 427)



Insurance Appeals, Ltd.

An Independent Review Organization (IRO)

| | |
|---|---|
| **REFERRED BY:** | Stephen Kane |
| **CLIENT:** | AT&T |
| **REVIEW TYPE:** | Appeal |
| **NAME:** | Melissa Gardner |
| **CLAIM #:** | A625007022-0001-01 |
| **NMR #:** | A84163.01 |
| **DATE:** | 08/17/2007 |

## MEDICAL RECORDS PROVIDED FOR REVIEW:

| CLAIM LOG | Case Notes | 03/22/06-08/10/07 | 1-111 |
|---|---|---|---|
| PROG NOTES | Proctor Hospital | 03/13/06-07/24/06 | 112-127 |
| PROG NOTES | B. Chien, M.D. | 03/14/06-01/30/07 | 128-139 |
| PROG NOTES | R. Flores, M.D. | 04/03/06 | 140-141 |
| PROG NOTES | Saint Francis Medical Center | 04/17/06 | 142-144 |
| PROG NOTES | Associates University Neurosurgeons, S.C. | 06/16/06-08/10/06 | 145-151 |
| IME | | 01/08/07 | 152-162 |
| LAB | | 03/13/06 | 163 |
| CT/MRI | | 03/14/06-04/20/06 | 164-169 |
| EMG/NCS | | 04/03/06 | 170-177 |
| JOB | | | 178-179 |
| BILLING | | 01/23/07 | 180 |
| MISC. | | 04/30/02-07/30/07 | 181-267 |
| ROI | | 03/30/06-04/04/06 | 268-269 |

**PAIN MANAGEMENT SYNOPSIS:** The enclosed clinical records were reviewed. The patient was evaluated by Dr. Chien on 3/14/06 at the Proctor Hospital for her complaints of acute onset back pain. The patient indicated she noted back pain while at work. This was not associated with any specific activities such as lifting or falling. There was no history of trauma. However, the patient noted progressive back pain over the course of the day. Over the next several days, the patient's back pain continued and increased in severity. She was presented to the local emergency department and was prescribed the medication Percocet. Her back pain complaints continued and she now presented for evaluation.

After performing a physical examination, Dr. Chien's clinical impression was L4 disc syndrome. Dr. Chien performed a L4 epidural steroid injection on 3/15/06. The patient's back pain complaints persisted without significant improvement.

Dr. Chien performed an L4 and L5 intradiskal block and diskography on 7/24/06. Dr. Chien submitted a letter on 3/03/06 indicating the patient has poor sitting and standing tolerance rendering her unable to perform her routine work duties.



ACCREDITED INDEPENDENT REVIEW ORGANIZATION

605 Fulton Avenue • Suite 2002 • Rockford, Illinois 61103 • TEL: (815) 964-6334 • FAX: (815) 964-1162
E-Mail: info@insuranceappeals.cc

(Page 422 of 427)

From: NMR　　To: 1-866-856-5065　　Page: 3/4　　Date: 8/20/2007 9:12:49 AM



RE: Melissa Gardner　　　　　　　　　　　　　　　　　NMR#: A84163.01
Page 2

A subsequent letter from Dr. Chien of 9/07/06 reiterated that the patient is unable to work in any capacity and requires surgical intervention. A letter from Dr. Chien of 1/30/07 again voiced similar issues regarding her inability to work and the need for surgical intervention.

An independent medical evaluation was performed by neurosurgeon Dr. Delheimer on 1/08/07. After obtaining an extensive clinical history, reviewing the prior medical records, and performing a physical examination, Dr. Delheimer concluded that the patient was functionally capable of resuming her sedentary job as a marketing specialist.

**ATTENDING PHYSICIAN MOST RECENT DIAGNOSIS:** Acute onset back pain

**OBJECTIVE INFORMATION:** A lumbar spine MRI scan performed on 3/14/06 demonstrated mild degenerative disc disease with central annular tears at L3-4 and L4-5. There was no evidence of herniated disc disease or nerve root impingement. A cervical spine MRI scan performed on 3/23/06 was documented as normal. Electrodiagnostic evaluation performed on 4/03/06 demonstrated mild bilateral L4 radiculopathies.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

　　1.　**Is the employee disabled from her regular job as of 01/19/07 to present?**

From pain management perspective perspective according to the medical record, the employee is not disabled from her regular job as of 1/19/07 to present.

　　2.　**If disabled, what is the rationale or basis for the disability?**

The patient is not disabled.

　　3.　**If disabled, what is the expected/appropriate length of disability?**

The patient is not disabled.

　　4.　**What are the clinical findings contained in the medical record and how would it impact the employee's ability to function?**

The clinical findings consist primarily the patient's complaints of low back pain with poor sitting and standing tolerance. However, this is not associated with significant underlying objective radiological (lumbar MRI) findings or electrodiagnostic findings correlating to the patient's severe subjective complaints.

　　5.　**If there are findings that are not clinically significant, why are these findings not clinically significant?**

The patient's clinical findings are significant; however, they are not associated with objective impairment precluding her from performing the routine duties of her regular job.

From: NMR     To: 1-866-856-5065     Page: 4/4     Date: 8/20/2007 9:12:49 AM

RE: Melissa Gardner                                    NMR#: A84163.01
Page 3



**RATIONALE:** The enclosed clinical records were reviewed. The patient had sudden onset of back pain on or about 3/13/06, not associated with any specific trauma or precipitating event. Since that time, she has undergone epidural steroid injections and nerve block. However, her complaint of back pain has persisted. The treating physician, however, requested surgical intervention.

However, from pain management perspective, there remains no objective impairment precluding the patient from performing routine duties of her regular job. She remained independent with activities of daily living, ambulation and not restricted from driving a motor vehicle. In addition, she is otherwise functionally capable of performing routine duties of a sedentary job.

However, it should be noted that if indeed the patient requires surgical intervention and has significant pathology from a neurosurgical perspective, this is best addressed by the neurosurgeon and this physician advisor would defer to the neurosurgeon regarding surgical intervention and the patient's disability status.

**CRITERIA:** ACOEM Occupational Medicine Practice Guidelines, second edition, page 302, table 12-6. "Guidelines for modification of work activities and disability duration."

**CONFLICT OF INTEREST ATTESTATION:**

I attest to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device, or procedure.

I attest that my compensation is not dependent on the specific outcome of my review.

**PHYSICIAN ADVISOR:**

Philip Jordan Marion, M.D., M.S., M.P.H.
Board Certified Physical Medicine
   and Rehabilitation
Board Certified Pain Management
Associate Clinical Professor, George Washington University
   Medical Center
MD License #D40084
NY License #168424
VA License# 0101045270
Washington DC License #17907
Certified, Texas Worker's Compensation
   Commission – ADL

*NMR CONFLICT OF INTEREST ATTESTATION:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

From: NMR    To: 1-866-856-5065    Page: 1/4    Date: 8/20/2007 9:12:48 AM



# FAX
## TRANSMISSION

To:    MELISSA GARDNER-REVISED REPORT

Message:



# FAX TRANSMITAL

DATE:    8/20/07

TO:    STEPHEN KANE

PAGES:    4 including this page

RE:    MELISSA GARDNER-REVISED REPORT

**Tina Blanchard**

Phone:1-815-964-6334  Ext.11
Fax:1-215-701-1843
E-mail: tblanchard@nmrco.com
Web: www.nmrco.com

The information contained in the email is confidential and protected by applicable laws.
It is intended only for the party specified as the addressee.  If this transmittal is received
in error, please contact this sender, delete this email from any computer and do not use,
disclose, or store the information it contains.



   

605 Fulton Ave. Suite 2002 Rockford, IL 61103
Tel:815.964.6334 Fax:815.964.1162
Website:www.nmrco.com

422007082000295621         A625007022000101              08/20/2007

R-0623



Insurance Appeals, Ltd.

An Independent Review Organization (IRO)

| REFERRED BY: | Stephen Kane |
|---|---|
| CLIENT: | AT&T |
| REVIEW TYPE: | Appeal |
| NAME: | Melissa Gardner |
| CLAIM #: | A625007022-0001-01 |
| NMR #: | A84163.01 |
| DATE: | 08/21/2007 |

**MEDICAL RECORDS PROVIDED FOR REVIEW:**

| CLAIM LOG | Case Notes | 03/22/06-08/10/07 | 1-111 |
|---|---|---|---|
| PROG NOTES | Proctor Hospital | 03/13/06-07/24/06 | 112-127 |
| PROG NOTES | B. Chien, M.D. | 03/14/06-01/30/07 | 128-139 |
| PROG NOTES | R. Flores, M.D. | 04/03/06 | 140-141 |
| PROG NOTES | Saint Francis Medical Center | 04/17/06 | 142-144 |
| PROG NOTES | Associates University Neurosurgeons, S.C. | 06/16/06-08/10/06 | 145-151 |
| IME | | 01/08/07 | 152-162 |
| LAB | | 03/13/06 | 163 |
| CT/MRI | | 03/14/06-04/20/06 | 164-169 |
| EMG/NCS | . | 04/03/06 | 170-177 |
| JOB | | | 178-179 |
| BILLING | | 01/23/07 | 180 |
| MISC. | | 04/30/02-07/30/07 | 181-267 |
| ROI | | 03/30/06-04/04/06 | 268-269 |

**PAIN MANAGEMENT SYNOPSIS:** The enclosed clinical records were reviewed. The patient was evaluated by Dr. Chien on 3/14/06 at the Proctor Hospital for her complaints of acute onset back pain. The patient indicated she noted back pain while at work. This was not associated with any specific activities such as lifting or falling. There was no history of trauma. However, the patient noted progressive back pain over the course of the day. Over the next several days, the patient's back pain continued and increased in severity. She was presented to the local emergency department and was prescribed the medication Percocet. Her back pain complaints continued and she now presented for evaluation.

After performing a physical examination, Dr. Chien's clinical impression was L4 disc syndrome. Dr. Chien performed a L4 epidural steroid injection on 3/15/06. The patient's back pain complaints persisted without significant improvement.

Dr. Chien performed an L4 and L5 intradiskal block and diskography on 7/24/06. Dr. Chien submitted a letter on 05/03/06 indicating the patient has poor sitting and standing tolerance rendering her unable to perform her routine work duties.



605 Fulton Avenue • Suite 2002 • Rockford, Illinois 61103 • TEL: (815) 964-6334 • FAX: (815) 964-4162
E-Mail: info@insuranceappeals.cc

From: NMR    To: 1-866-856-5065    Page: 3/4    Date: 8/21/2007 1:38:57 PM

RE: Melissa Gardner                                          NMR#: A84163.01
Page 2



A subsequent letter from Dr. Chien of 9/07/06 reiterated that the patient is unable to work in any capacity and requires surgical intervention. A letter from Dr. Chien of 1/30/07 again voiced similar issues regarding her inability to work and the need for surgical intervention.

An independent medical evaluation was performed by neurosurgeon Dr. Delheimer on 1/08/07. After obtaining an extensive clinical history, reviewing the prior medical records, and performing a physical examination, Dr. Delheimer concluded that the patient was functionally capable of resuming her sedentary job as a marketing specialist.

**ATTENDING PHYSICIAN MOST RECENT DIAGNOSIS:** Acute onset back pain

**OBJECTIVE INFORMATION:** A lumbar spine MRI scan performed on 3/14/06 demonstrated mild degenerative disc disease with central annular tears at L3-4 and L4-5. There was no evidence of herniated disc disease or nerve root impingement. A cervical spine MRI scan performed on 3/23/06 was documented as normal. Electrodiagnostic evaluation performed on 4/03/06 demonstrated mild bilateral L4 radiculopathies.

**IN ANSWER TO YOUR SPECIFIC QUESTIONS:**

1. **Is the employee disabled from her regular job as of 01/19/07 to present?**

From a physical medicine and rehabilitation perspective according to the medical record, the employee is not disabled from her regular job as of 1/19/07 to present.

2. **If disabled, what is the rationale or basis for the disability?**

The patient is not disabled.

3. **If disabled, what is the expected/appropriate length of disability?**

The patient is not disabled.

4. **What are the clinical findings contained in the medical record and how would it impact the employee's ability to function?**

The clinical findings consist primarily the patient's complaints of low back pain with poor sitting and standing tolerance. However, this is not associated with significant underlying objective radiological (lumbar MRI) findings or electrodiagnostic findings correlating to the patient's severe subjective complaints.

5. **If there are findings that are not clinically significant, why are these findings not clinically significant?**

The patient's clinical findings are significant; however, they are not associated with objective impairment precluding her from performing the routine duties of her regular job.



RE: Melissa Gardner                                                                 NMR#: A84163.01
Page 3

**RATIONALE:** The enclosed clinical records were reviewed. The patient had sudden onset of back pain on or about 3/13/06, not associated with any specific trauma or precipitating event. Since that time, she has undergone epidural steroid injections and nerve block. However, her complaint of back pain has persisted. The treating physician, however, requested surgical intervention.

However, from pain management perspective, there remains no objective impairment precluding the patient from performing routine duties of her regular job. She remained independent with activities of daily living, ambulation and not restricted from driving a motor vehicle. In addition, she is otherwise functionally capable of performing routine duties of a sedentary job.

However, it should be noted that if indeed the patient requires surgical intervention and has significant pathology from a neurosurgical perspective, this is best addressed by the neurosurgeon and this physician advisor would defer to the neurosurgeon regarding surgical intervention and the patient's disability status.

**CRITERIA:** ACOEM Occupational Medicine Practice Guidelines, second edition, page 302, table 12-6. "Guidelines for modification of work activities and disability duration."

**CONFLICT OF INTEREST ATTESTATION:**

I attest to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device, or procedure.

I attest that my compensation is not dependent on the specific outcome of my review.

**PHYSICIAN ADVISOR:**

Philip Jordan Marion, M.D., M.S., M.P.H.
Board Certified Physical Medicine
 and Rehabilitation
Board Certified Pain Management
Associate Clinical Professor, George Washington University
 Medical Center
MD License #D40084
NY License #168424
VA License# 0101045270
Washington DC License #17907
Certified, Texas Worker's Compensation
 Commission – ADL

*NMR CONFLICT OF INTEREST ATTESTATION:*

*NMR attests to the fact that there is no conflict of interest with this review for referring entity, benefit plan, enrollee/consumer, attending provider, facility, drug, device or procedure. NMR attests that its compensation is not dependent on the specific outcome of this review or has had any involvement with this case prior to this referral.*

422007082100725021                    A625007022000101                    08/21/2007

R-0626

# FAX
## TRANSMISSION

To:      MELISSA GARDENR-REVISED REPORT

Message:      

# FAX TRANSMITAL

**DATE:**      **8/21/07**

**TO:**      **STEPHEN KANE**

**PAGES:**      **4 including this page**

**RE:**      **MELISSA GARDNER-REVISED REPORT**

**Tina Blanchard**

Phone:1-815-964-6334  Ext.11
Fax:1-215-701-1843
E-mail: tblanchard@nmrco.com
Web: www.nmrco.com

The information contained in the email is confidential and protected by applicable laws.
It is intended only for the party specified as the addressee. If this transmittal is received
in error, please contact this sender, delete this email from any computer and do not use,
disclose, or store the information it contains.



605 Fulton Ave. Suite 2002 Rockford, IL 61103
Tel:815.964.6334 Fax:815.964.1102
Website:www.nmrco.com

422007082100725021              A625007022000101              08/21/2007

R-0627

```
Date: 02/28/2008  2:42pm          User: aarcher              Page:      1
==============================================================================
Claim Number : A625027340-0001-01                    Date Loss : 03/12/2006
Client     : 1632     - AT&T Inc.
Account    : 16320730 - TC - Ameritech Services, Inc
Unit       : TC065    - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
==============================================================================


------------------------------ Note ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------- -- -----------------------------------------


A625027340-0001-01 11/08/2006 IT SYS
                              What is the diagnosis? AIT LTD
                              Has the physician indicated a return to work
                              with restrictions can happen? :
                              If so, what are the restrictions and has the
                              department tried to match a placement? :
                              Has there been a return to work? :

                              **** NOTE CREATED BY: swinters ****
                              [Time Note Created :12:55 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 11/08/2006 CP SYS
                              Claim Policy Number:No Excess
                              SIR for Policy:        000.00
                              [Time Note Created :12:55 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 11/08/2006 IT SYS
                              Supervisor #1
                              Name  : HILLARI FLEMING
                              Phone : 2177477949
                              Phone : hf1383
                              **** NOTE CREATED BY: swinters ****
                              [Time Note Created :12:55 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 11/08/2006 DE SYS
                              AIT LTD (TCB)
                              **** NOTE CREATED BY: swinters ****
                              [Time Note Created :12:55 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 11/08/2006 DC SYS
                              Possible Duplicate Claim (A625007022-0001-01);
                              Warning Overridden
                              **** NOTE CREATED BY: swinters ****
                              [Time Note Created :12:55 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 11/08/2006 CT SYS
                              Subtype changed from  to LA
                              **** NOTE CREATED BY: swinters ****
                              [Time Note Created :12:55 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 11/08/2006 AP SWINTERS
                              Open/pending claim  .
                              Incident claim set up
                              Send out LTD notification letter for this March
                              expiration
                              Set diary for LTD cm to call ee within 6-10
                              days from send date of letter
```

R-0628

```
Date: 02/28/2008  2:42pm          User: aarcher              Page:    2
=================================================================================
Claim Number : A625027340-0001-01                     Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
=================================================================================

--------------------------------- NOTES ----------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------- ---------- -- --------------------------------------------

                    [Time Note Created :12:56 PM ]
--------------------------------------------------------------------------------
A625027340-0001-01 11/09/2006 ST SWINTERS
                    AIT DATABASE ENTRY FORM

                    Loss Date:    3/12/2006
                               SSN:   REDACTED

                    Claimant:         MELISSA GARDNER

                    Address:  124 PUTNAM ST

                                   E. PEORIA IL 61611


                    STD end date:   3/18/2007
                       LTD start date:      3/19/2007

                    Phone:    309/256-9393

                    Date of Birth:   REDACTED
                    Maximum:    4/15/2038

                    Age:    33        NCS date: 2/12/2001
                               Service length:    5 YRS

                    Title:    MARKETING SUPPORT SPECIALIST

                    Company Code:    TCB

                    Location code:    AIT
                          Bargained

                    Weekly base pay amount: $    1032.50      Annual
                    amount: $

                    Increased base pay amount: $            Monthly amount:
                    $

                    Monthly amount:         $    2245.69      Gross
                    amount:   $


                    Increased amt x 4.35 x 50% = gross amt
                          Monthly amt x 60% = gross amount
```

R-0629

Date: 02/28/2008  2:42pm          User: aarcher                    Page:    3
===============================================================================
Claim Number : A625027340-0001-01              Date Loss : 03/12/2006
Client        : 1632      - AT&T Inc.
Account       : 16320730  - TC - Ameritech Services, Inc
Unit          : TC065     - INDUSTRY MARKETS
Claimant      : GARDNER, MELISSA
===============================================================================


------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
-------------------- ---------- -- ---------------------------------------

                          Date Letter Sent:    11/8/2006
                          TPC:
                          EOB:
                          DEC:
                          10 DAY:
                          30 DAY:

                          [Time Note Created : 1:14 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 11/09/2006 EM SWINTERS
                          From:      Winters, Sandra
                          Sent:      Wednesday, November 08, 2006 1:01 PM
                          To:        'Outbound.IDSC@MEDRISKNET.COM'
                          Subject:   MELISSA GARDNER-Claim-A625027340000101
                          [Time Note Created : 1:15 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 11/13/2006 CI MAGGIEWA
                          Examiner change:  From:  swinters  To:  jringo
                          **** NOTE CREATED BY: SYS ****
                          [Time Note Created :12:01 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 11/20/2006 CM JRINGO
                          Initial call - AIT bargained

                          Name:  Melissa Gardner
                          SD End Date:  3/18/2007
                          Occupation: Marketing Suppot Specialist
                          YOS: 5

                          Gross Monthly Benefit: $2,245.69

                          I introduced myself to the claimant and advised
                          that I will be his/her case manager for LTD.
                          As the employee will expire SD on 3/18/07, we
                          will begin consideration for Long Term
                          Disability.

                          We are not dismissing the possibility that you
                          may return to work prior to the EOB.  If you
                          feel that you may RTW, you should provide the
                          appropriate medical information to your SD Case
                          Manager.  Currently, SD benefits are approved
                          through 11/30/06

                          If you are unable to RTW by the date your SD
                          benefits expire, your employment may terminate.

R-0630

```
Date: 02/28/2008  2:42pm          User: aarcher               Page:      4
===========================================================================
Claim Number : A625027340-0001-01              Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===========================================================================

------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
------------------  --------- -- ---------------------------------------
```

This claim is being considered under the
Ameritech Long Term Disability Plan. In order
to receive payments under this plan, you must
complete the forms in the LTD packet and return
them to us as soon as possible in the postage
paid envelope.  If you have not yet completed
the paperwork, please sign and date the Medical
Records release and return it now, then
complete the remainder of the packet ASAP.
Failure to provide this information in a timely
manner could result in denial of your Long Term
Disability benefits.

Returning your LTD paperwork will assist us in
making a timely decision, but it will in no way
limit any return to work options available to
you, should your condition improve.

In order be considered disabled under the LTD
Plan, you must complete the Waiting period,
which is 52 weeks of approved SD benefits.

The definition of disability for that Plan is:
any occ, 50% gainful.

Because the STD definition of disability is
different than the definition in the LTD Plan,
we will not be able to complete the vocational
portion of our decision without the forms in
the packet.

The benefit payment if you meet the definition
of disability is 50% of your base pay as
reported by the company, as of your last day
worked.

Minus the following offsets: SSDI, SSR, W/C,
Disability or Service Pension and
State Dis.

If LTD is approved, LTD is paid once a month,
at the end of the month.

For California only:  Are you currently
receiving State Disability?  Have you received
any paperwork regarding the end date of the
State Disability?  We will need a copy of that
in order to stop the state disability offset

```
Date: 02/28/2008  2:42pm          User: aarcher              Page:    5
============================================================================
Claim Number : A625027340-0001-01            Date Loss : 03/12/2006
Client     : 1632     - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065    - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
============================================================================

--------------------------------- NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------- ---------- -- ------------------------------------------
```

from your LTD payment.

Approximately one month prior to your SD
expiration of benefits, we advise the pension
dept of the date employment would end.  The
pension retirement department will contact you
by mail as to what you may be entitled to under
the pension plan.  If you would like to speak
to them by phone you can reach them at
800/557-3640.

If you are entitled to receive pension, the
Pension Retirement Department will also forward
figures to us.  We will use the Single Life
Annuity Amount as an offset to your LTD Benefit
if you are found disabled for LTD, whether or
not you take a monthly annuity or a lump sum
pension benefit. This pension figure is offset
even if you choose not to elect your pension at
the end of your SD benefits.

The original pension figure which is
transmitted to us is an estimate and if the SLA
amount changes after you return their pension
papers, we will use the new corrected number
and there may be an overpayment or underpayment
on your claim.

Have you filed for SSDI?   If so, status?

Explained SSDI application process, requirement
to file under the LTD plan, appeal process.  If
you are not with an attorney, that service is
free and we will make the referral at this
time.

What is your diagnosis and symptoms?

What is your current height and weight?

Doctors (specialties, how often seen):

Do you think you may be able to RTW?   What is
it about your condition that prevents you from
being able to work?  Are you getting
better/worse

R-0632

Date: 02/28/2008  2:42pm          User: aarcher              Page:      6
=================================================================
Claim Number : A625027340-0001-01              Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=================================================================

------------------------------ NOTES ------------------------------

Event/Clmnt/Claim  Date    Tp Examiner
------------------ --------- -- ----------------------------------

                       If you are able to RTW and accommodations are
                       needed, the STD case manager will need specific
                       restrictions, duration, and supporting medical
                       information.

                       Current meds:

                       Daily activities:

                       Driving:

                       If you have questions about what happens to
                       your health insurance, the phone number for
                       health insurance questions (SBC Connect):
                       877-722-0020

                       Is there anything else I can help you with
                       today?
                       [Time Note Created : 2:09 PM ]
-----------------------------------------------------------------
A625027340-0001-01 11/20/2006 MD JRINGO
                       Medical copied from SD file

                       4/11/06
                       recvd fax 4/5/06 from dr chien doc id 1258262
                       Bruce B. Chien M.D.
                       Diplomate, American Boards of Anesthesiology,
                       Internal Medicine and Pain Medicine
                       March 14, 2006
                       Melissa Gardner is a 32 y.o, w. female with the
                       acute onset of back pain, midline, lumbar, on
                       Thursday while at work (desk work). Her drive
                       home from Springfield uncomfortable, with her
                       noticing it to be painful to lift her leg to
                       the brake pedal. It did not remit at home in
                       the standing or recumbent position and she went
                       to OSF Prompt Care in Morton, where she was
                       given Vicodin and skelaxin. Friday she went to
                       work, was miserable. Went on Sunday to the ED
                       at MMCI- no
                       MRI, Xrays8percocet. Awoke 0400, called office,
                       went to ED,PMH: Migraine, about three years.,
                       Looked after by Or Richard Lee. Due for a
                       menstrual period,
                       FH: Everyone I her family has back pain.
                       SH: Smoker, WANTS to smoke, deosn't want a
                       patch.
                       Allergies; Demerol-blisters, ASA-NV, Compazine

R-0633

```
Date: 02/28/2008  2:42pm          User: aarcher              Page:    7
===============================================================================
Claim Number : A625027340-0001-01                       Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
===============================================================================


---------------------------- NOTES -----------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
------------------ ----------  -- -----------------------------------------------
```

                              -anxiety. Wants MS.
                              Surgical: Chole, DC, T&A, Ectopic. Cubital
                              tunnel on the left.
                              ROS: Otherwise negative. She REALLY wants to
                              smoke.
                              Physical Exam: VS are unremarkable. PERRLA VFs
                              are full, fundi are benign. Chest: clear per
                              Dr. Dunaway. CV: s S3, S4. murmur gallop. Abd;
                              No organomegaly. Spine: Tender at L4 in the
                              midline. SLR is positive on both sides, Right
                              >Left at 30 and 45 degrees respectively. There
                              is paraspinous sapsm but no radiation. Motor
                              and sensory are normal. DTRs are 2+. She can
                              stand at the bedside but with much axial pain.
                              SI joints are benign.
                              Impression: Probably an L4 disc syndrome. I've
                              explained in detail the interventional
                              algorithm-but as she's never been scanned at
                              three hospitals, we'll accomplish that today.
                              She is aware Ln that Lumbar ESI has about a 60%
                              yield over 6-12 months when approached in three
                              2 weekincrements; that there are steroid
                              limitations and we are careful to not broach
                              maximum dose limits. Narcotic is unlikely to be
                              of any long term use; Surgical evaluation
                              clearly has to Pend on the MRI. Implanted
                              devices are unlikely to be of much use as her
                              distribution is axial still at this time.
                              Intradiscal procedures- though I do them, are
                              reserved for "last chance" as the risk of
                              disciitis is irreducible at 0.5%.
                              We'll await the MRI this afternoon.
                              noted dated 4/4/06 from dr chien

                              ok to travel by train but must be able to
                              change position freq and no prolonged sitting
                              position

                              MRI 3/14/06
                              IMPRESSION
                              DDD EVIDNT BY MILD DEGENERATION DEHYDRATION AND
                              LOSS OF DISC SPACE HEIGHT OF THE L3-L4 AND
                              L5-S1 DICS. THIS IS ASSOCIATED WITH AGE
                              INDETERMINATION POSTERIOR CENTRAL ANNULAR TEATS
                              OF THE L3-L4 AND L4-L5 DISC
                              ------------------------------------------
                              PROCTOR HOSPITAL
                              5409 N. KNOXVILLE, PEORIA, IL 61614

Date: 02/28/2008  2:42pm          User: aarcher          Page:      8
=================================================================
Claim Number : A625027340-0001-01                Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
=================================================================
------------------------------ NOTES ----------------------------------

Event/Clmnt/Claim  Date    Tp Examiner
------------------ -------- -- -----------------------------------------

                       DATE OF OPERATION: 03/15/2006
                       SURGEON: BRUCE B. CHIEN, MD
                       PREOPERATIVE DIAGNOSIS: HERNIATED L4 NUCLEUS
                       PULPOSUS.
                       POSTOPERATIVE DIAGNOSIS: HERNIATED L4 NUCLEUS
                       PULPOSUS.
                       OPERATION: MIDLINE L4 EPIDURAL STEROID
                       INJECTION
                       INDICATION: Melissa Gardner is ready for her
                       midline L4 epidural steroid injection.
                       PROCEDURE: After written and informed consent,
                       the patient was placed in a seated position
                       over an over-bed tray table and the midline
                       prepped at the level of the L4-L5. A #18-gauge
                       Tuohy needle was passed to a depth of 8 cm in
                       the midline with the patient's stereotactic
                       guidance to loss of resistance were upon 10 mL
                       containing triancinolone 80 mg, lidocaine 0.5%
                       were injected,This was well tolerated. The
                       needle was withdrawn and the patient actually
                       felt sufficiently better that she wanted to go
                       to the bathroom to empty her bladder which she
                       did in the accompaniment of the staff nurse.
                       She was given instruction not to arise from the
                       toilet unless our staff was there to assist
                       her. The patient tolerated this well.
                       BRUCE  CHIEN. MD/hs/lr
                       ----------------------
                       NOTE FROM DTR CHEIN

                       EE SCHEDUIREL FOR L4 ESI WITH DR flores 4/17/06

                       ----------------------
                       RECVD FAX 4/5/06 DOC ID FROM CENTRAL ILLINOIS
                       REHABILITATION ASSOCIATES

                       CENTRAL ILLINOIS REHABILITATION ASSOCIATES,
                       S.C.
                       Name: Melissa Gardner #6771. Age: 32
                       This now 32-year old female presents with the
                       following history. She had significant low back
                       pain with
                       lumbar radicular pain on 3/9/06. Within the
                       next few days she developed numbness and
                       tingling of her upper
                       and lower extremities. Although, she has had a
                       history of cervical pain she was vague as to
                       what the radicular

R-0635

===================================================================================
Claim Number : A625027340-0001-01                      Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===================================================================================


------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
-------------------  ----------  --  -------------------------------------------

                    pattern was. She had a previous left cubical
                    tunnel syndrome, decompression and
                    transposition of the ulnar
                    nerve a number of years ago but predominance of
                    her numbness and tingling is in the ulnar
                    distribution of her hand and she has lost
                    strength. She has lost fine motor control in
                    her hands,
                    On March 29, 2006, Dr. Bruce Chien referred
                    this patient for EMG & Neurosensory Testing for
                    C;6
                    radiculopathy. Her hands and toes are numb.
                    She has slowly progressing signs and symptoms
                    of numbness, tingling, and weakness in the
                    hands bilaterally.
                    She has numbness and tingling in the feet
                    bilaterally. She has neck pain. She has low
                    back pain. She does not
                    have increased pain with Valsalva maneuvers.
                    She has always had irregular bowel function.
                    She has not had
                    any excess exposure to chemicals. She rarely
                    drinks alcohol.
                    Review of Systems: She is not diabetic and she
                    does not have any thyroid problems.
                    Allergies: ASA, Compazine, and Demerol.
                    Past History:
                    Illnesses: She has had strep throat,
                    tonsillitis, and severe migraines. She was
                    hospitalized with a lymph infection recently.
                    Injuries: She broke her left leg two times as a
                    child, she has broken some toes, she had a
                    concussion,
                    contusion, torn knee muscles and tendons, and
                    she has dislocated her kneecap.
                    Operations: DNC, ectopic P.G. removal,
                    cholecystectomy, toosilloadenoidectomy, and
                    cubital tunnel syndrome decompression.
                    Treatments: She will be starting aqua P.T.
                    soon, medications, walker p.r.n, and a TENS
                    unit.
                    Social History: She is married and has 2
                    children.
                    Family History: Her mother is living; she has a
                    small spinal column, stomach problems and
                    hypertension.
                    Daily Medication: Depakote, Gabapentin,
                    Nabumetone, and Tramadol.

Date: 02/28/2008  2:42pm          User: aarcher          Page:    10
========================================================================
Claim Number : A625027340-0001-01            Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
========================================================================

-------------------------------- NOTES ---------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
-----------------  -------- -- --------------------------------------

PHYSICAL EXAMINATION:

Height: 5'10 Y " Weight: 244 lbs Dominant hand:
right. BP: 126/78 Pulse: 84 Resp: 16
She has tenderness and tenseness of the C2-S5
paraspinals and hands.
She has decreased cervical range of motion at
15/30 degrees forward flexion and extension,
and 20/40 degrees right and left lateral
flexion. She has decreased thoracolumbar range
of motion at 70/90 degrees forward flexion,
10/30 degrees extension. and 10/20 degrees
right and left lateral flexion. She has
decreased strength in the hands bilaterally.
She has decreased deep tendon reflexes at all
sites bilaterally. She has decreased pinprick
sensation in the upper and lower extremities
bilaterally. She has normal proprioception in
the upper and lower extremities bilaterally.
She has decreased vibratory sensation in the
hands bilaterally. She has equivocal
Tinel's for C.T.S and cubital tunnel syndrome
in the tapper extremities bilaterally and
tarsal tunnel syndrome in the lower extremities
bilaterally.
SKIN: She has no lesions, ulcers, or rashes.
PERIPHERAL VASCULAR SYSTEM: She has normal
pulses and temperature.
GAIT AND STATION: Antalgic.
PSYCHIATRIC/MENTAL STATUS: She is oriented to
person, place, and time and has normal mood and

affect.
ASSESSMENT OF MEDICAL DECISION MAKING
A. DIFFERENTIAL DIAGNOSIS: status post 3/9/06
(Date) onset of signs and symptoms of:
1. 353.4 Lumbar nerve root lesion
2. 354.2 Cubital tunnel syndrome
3. 356.4 Peripheral neuropathy
B. Coordinate case management with: (referring
physician): Dr. Bruce Chien
C. Plan of management.
1. Do PSSD Testing --- reader of this report is
referred to that report for the details
2. Do EMG Testing - reader of this report is
referred to that report for the details
3. Other interventions:
D. Summary of Test Results: Please see dictated

R-0637

```
Date: 02/28/2008  2:42pm           User: aarcher            Page:    11
=================================================================================
Claim Number : A625027340-0001-01                    Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
=================================================================================


------------------------------ NOTES ------------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
------------------ --------- -- -------------------------------------------------
```

                     reports.
                     ---------------------------------
                     Richard A. Flores, M. D.
                     NEUROSENSORY TESTING
                     Appointment Date: April 3, 2006 Page 1
                     Bruce B. Chien, M.D.
                     Internal Medicine & Pain Medicine
                     Name: Melissa Gardner 96771 Age: 32
                     Neurosensory Testing and EMG of the upper and
                     lower extremities was performed on 4/3106, on
                     Mrs. Melissa
                     Gardner, a 32-year old female who had
                     significant low back pain with lumbar radicular
                     pain on 3/9/06. Within
                     the next few days she developed numbness and
                     tingling of her upper and lower extremities.
                     Although, she has
                     had a history of cervical pain she was vague as
                     to what the radicular pattern was. She had a
                     previous left cubital tunnel syndrome,
                     decompression and transposition of the ulnar
                     nerve a number of years ago but predominance of
                     her numbness and tingling is in the ulnar
                     distribution of her hand and she has lost
                     strength. She has lost fine motor control in
                     her hands.
                     Neurosensory Testing was done of the ulnar,
                     median, and radial nerve of the upper
                     extremities as well as grip
                     and pinch strength in the hands. In the lower
                     extremity, we tested the medial plantar branch
                     of the posterior tibial nerve, the calcaneal
                     nerve, and the deep peroneal nerve.
                     Universally throughout, the cutaneous pressure
                     thresholds for 2-point discrimination (2PT)
                     were abnormally elevated bilaterally at all
                     test sites. The 2-point discrimination (2PT)
                     was present at some test sites but not at all.
                     The areas where it was not present included the
                     right radial nerve in the upper extremities and
                     the right medial plantar branch of the
                     posterior tibial nerve as well as the ealcaneal
                     nerve and deep peroneal nerves bilaterally. The
                     grip strength in the dominant right hand was at
                     56% of anticipated normal, but only 34% of
                     anticipated normal in the left. The ratio of
                     median to ulnar grip was such that the median
                     nerve innervated portion was at a ratio of 1.3

R-0638

```
Date: 02/28/2008  2:42pm          User: aarcher              Page:   12
==========================================================================
Claim Number : A625027340-0001-01            Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
==========================================================================
```

---------------------------------- NOTES -----------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------- ---------- -- -----------------------------------------

> on the left and 1.4 on the right. Coefficient
> of variation was within normal limits.
> Pinch strength was reduced at maximum to 20% on
> the left and 51 % on the left.
> The results of Neurosensory Testing and motor
> testing for grip are consistent with moderate
> to severe bilateral polyneuropathy with
> beginning axonal loss in many of the lower
> extremity nerves and the right radial nerve.
> There is a marked reduction of grip strength
> bilaterally in the hands, more so from the
> ulnar innervated muscle component than the
> median.
> EMG of the muscles of the upper and lower
> extremities was tested bilaterally. The reader
> of this report is
> referred to that report for the details. EMG
> showed evidence consistent with:
> 1. Bilateral mild to moderate denervation in
> the ul.nar nerve distribution from the elbow
> distally.
> 2. EMG of the lower extremities was consistent
> with mild bilateral f.4 radiculopathies.
> I . Neurosensory Testing of the upper and lower
> extremities is consistent with moderate to
> severe bilateral sensory polyneuropathy with
> beginning axonal loss, especially in the lower
> extremities.
> 2. Grip and pinch testing shows marked
> reduction of grip strength to 56% of expected
> normal in the righ
> hand and 34% of expected normal on the left
> hand, with the predominance of the loss in. the
> ulnar nerve
> innervated muscles rather than the median nerve
> innervated muscles.
> 3. EMG of the upper and lower extremities is
> consistent with a. Bilateral mild to moderate
> denervation in the ulnar nerve distribution
> from the elbows distally
> bilaterally.
> b. Mild bilateral L4 radiculopathies.
> ------------------------------------------------
> Richard A. Flores, M. D.
> ELECTRONEUROMYOGRAP14Y
> Appointment Date: April 3, 2006 Page I
> EMG Study of the muscles of the upper
> extremities was tested bilaterally using

```
Date: 02/28/2008  2:42pm          User: aarcher            Page:    13
===============================================================================
Claim Number : A625027340-0001-01                       Date Loss : 03/12/2006
Client      : 1632       - AT&T Inc.
Account     : 16320730   - TC - Ameritech Services, Inc
Unit        : TC065      - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
===============================================================================

-------------------------------- NOTES ----------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------- -- ----------------------------------------------
```

                    muscles representing?,
                    myotones C5-T1 . The lower extremity
                    musculature was tested using muscles
                    representing myotomes L2-S2.
                    In the upper extremities, in the ulnar nerve
                    innervated. muscles from the elbow distally
                    including the flexor carpi ulnaris, flexor
                    digitorum profundus for digits 4 and 5, first
                    dorsi interossei, and abductor digiti quinti,
                    there was increased insertional activity, 1+
                    fibrillations, and 2+ positive waves. The
                    activated motor unit potential showed normal
                    amplitude and duration with increased
                    polyphasicity and a mild to moderate decrease
                    in number of motor units. In the lower
                    extremities, in the predominantly L4 innervated
                    muscles included the quadriceps femoris,
                    adductor longus, and tibi.alis anterior, there
                    was increased insertional activity, 2+
                    fibrillations, and 2+
                    positive waves. The activated motor unit
                    potential showed normal. amplitude and duration
                    with increased
                    polyphasicity and a mild but definite decrease
                    in number of motor units. All the other muscles
                    of the ripper and lower extremities showed
                    normal insertional activity with no
                    fibrillations or positive waves. The activated
                    motor unit potential showed normal amplitude,
                    duration, degree of polyphasicity, and number
                    of motor units~

                    IMPRESSION OF EMG OF THE UPPER AND LOWER
                    EXTREMITIES SHOWS ELECTRICAL
                    EVIDENCE OF:
                    1. Bilateral mild to moderate denervation in
                    the distribution of the ulnar nerve from the
                    elbow distally.
                    2. Mild bilateral L4 radiculopathies.
                    [Time Note Created : 2:15 PM ]
```
-------------------------------------------------------------------------------
A625027340-0001-01 11/20/2006 MD JRINGO
                    Page 2 of 2
                    Medical copied from SD file

                    4/21/06
                    DOC ID 1340828 op report dated 4/17 from Dr.
                    Chien, appt notices for L4 discogram and lasb
```

R-0640

=========================================================================
Claim Number : A625027340-0001-01              Date Loss : 03/12/2006
Client     : 1632       - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
=========================================================================

------------------------- NOTES -----------------------------------

Event/Clmnt/Claim  Date    Tp Examiner
-----------------  ------- --  ----------------------------------------

                   needed
                   MS: c/o back pain, painful to lift leg Pre and
                   Post Op. Dx. ee had Bil. L4 radiculo. L C7
                   radiculopathy,  Op- midline ESI injection, has
                   had 2 ESI , esam  SLR + on both sides at 60 and
                   75 degrees on the r and L sides respectively,
                   Parspinous spasm is present, no radiation, ,
                   plan that ee likely has intradiskal disese with
                   her pain pattern and failure to respond, in
                   addition she has an L4 EMG, which showed a
                   pattern compat. w/ Radiculopathy, will refer ee
                   for L4 discogram.
                   appt. notice, dx. Bil L4 Radiculopathy, L4
                   discogram and Labs needed, date of test 4/20/06
                   11:00 am at Proctor Hospital

                   5/4/06
                   DocID:  1411834 rcvd 5.3.06 dr chein
                   Ltr dated 5.3.06, stated ee has a ruptured L4
                   disc by discography and bilateral lumbar
                   radiculopathy L4. at the current time she
                   cannot stand or sit for any period more than
                   about 3 minutes. She is completely disabled
                   from all work at the current time. Ee is
                   awaiting to see Dr. Dzung Dinh, who is the L4
                   disc replacement vs.fusion neurosurgeon.
                   Ct scan results from 4.20.06, conclusion:
                   evidence of disruption of the L4-L5 disc
                   annulus posteriorly with extension of contrast
                   to the posterior annulus near the midline into
                   the epidural space and also to the left along
                   the left. Concordant 7 out of 10 pain
                   demonstrated with injection of the L4-L5 disc
                   space. There is also significantly diminished
                   disc turgor at this level and evidence of
                   penetration of contrast at least into, if not
                   through, the annular region posteriorly.

                   6/29/06
                   recvd fax 6/28/06 doc id 1716830 from dr dinh
                   06/16/2006
                   Dear Dr. MILLER:
                   MELISSA GARDNER was seen as a hospital follow
                   up today with a chief complaint of low back
                   pain. She is a 32 y/o female who was seen by us
                   at Proctor Hospital in March 2006 for low back
                   pain. She had an MRI on
                   March 14, 2006, which revealed an L4-5 annular,

R-0641

```
Date: 02/28/2008  2:42pm          User: aarcher              Page:    15
========================================================================
Claim Number : A625027340-0001-01                 Date Loss : 03/12/2006
Client     : 1632       - AT&T Inc.
Account    : 16320730   - TC - Ameritech Services, Inc
Unit       : TC065      - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
========================================================================


----------------------------- NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------- ---------- -- -------------------------------------------
```

tear. She states that after prolonged walking she develops burning in her back. She has since been through physical therapy as well as other modalities, neuromuscular stimulator, and pain medication. She has been treated by Dr. Bruce Chien who performed a series of epidural steroid injections. She had a discogram, which was positive at the L4-5 level.

Past medical history included hypertension during pregnancy. Review of systems is negative other than stated above. Current medications include Lyrica, Nabumetone bid, Tramadol qid, and hydrocodone bid. She is allergic to aspirin, which causes vomiting. Demerol causes hives and blister at the injection site. Compazine causes severe nervousness. She has had a cholecystectomy, a T&A, a D&C for ectopic pregnancy, and cubital tunnel surgery in 2001. Family history is positive for degenerative spine disease in her mother. She is married with children and lives with her family. She works as an MSS at ATT. She is a college graduate. She has no history of substance abuse. She smokes ½ pack of cigarettes a day for about 16 years. She averages 2-3 alcoholic beverages per year and 2-3 caffeinated beverages per day, On physical examination, HEENT are within normal limits. Neck is supple with no thyromegaly or bruit. Lungs are clear in all lobes. Heartsounds are regular with regular rate and rhythm. Abdomen is soft and nontender. She denies any urinary incontinence, bowel incontinence, blood in the urine or the stool. On neurological exam, cranial nerves II-XII are grossly intact. She has numbness in the fingers of both hands, She has a recent EMG of the upper and lower extremities. This revealed bilateral mild to moderatedenervation of the ulnar nerve of the bilateral elbows distally bilaterally. She also had mild bilateral L4 radiculopathies in the lower extremities. In the upper extremities her strength is +5/5.

Sensation is intact to light touch and deep tendon reflexes are +2 in bilateral biceps, triceps and brachioradialis. In the lower extremities, she has +1 reflexes in bilateral patellas and

R-0642

```
========================================================================
Claim Number : A625027340-0001-01                     Date Loss : 03/12/2006
Client      : 1632       - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
========================================================================
```

```
---------------------------------- NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------- ---------- -- ----------------------------------------
```

                         Achilles,
                         Sensation is intact. Strength is 515 in the
                         lower extremities. She had increased pain with
                         hyperextension as well as increased pain with
                         side bending to the left. We recommend she
                         continue with her pain regimen as prescribed by
                         Dr. Chien. We recommend a course of water
                         therapy. We will see her back in 4-6 weeks for
                         reevaluation.
                         Thank you for allowing us to participate in the
                         patient's care. If we can be of any further
                         assistance, please let us know.
                         Sincerely,
                         Cristin Rassi, A.P.N., C.N.S./Dzung H. Dinh,
                         M.D.

                         OFFICE NOTE
                         MELISSA GARDNER
                         06/28/2006
                         Review of films and dictation of 6-16-06. Per
                         Or Dinh, he agrees with Cristin.'s assessment
                         and treatment
                         plan. Patient is to remain off work until
                         therapy completed and is seen in office on
                         8-4-06. Or Dinh wants patient to have
                         interdiscal blocks for further diagnosis.
                         Patient notified and agrees with plan.

                         7/31/06
                         RECVD FAX 7/28/06 DOC ID 1870363 FRM DR CHIEN
                         OPERATIVE REPORT 7/24/06
                         DIAGNOIS: L4-L5 INTRADISKAL PAIN
                         OPERATION: L4-L5 INTRADISKAL BLOCK AND
                         DISKOGRAPHY
                         F\UP WITH DR DINH 2 WKS
                         DDG: 354.2/sed/Without surgery, regular work:
                         14 days. Medical supports extension of 7 days
                         beyond ddg entered on 7/17/06.

                         8/14/06
                         recvd fax 8/10/06 doc id 1950926 from dr dihn

                         08/04/2006
                         Dear Dr. MILLER:
                         I had the pleasure of seeing MELISSA GARDNER
                         for follow up today
                         regarding her chronic back pain. Her pain is
                         constant and rated 9/10 with some improvement

R-0643

```
Date: 02/28/2008  2:42pm          User: aarcher                Page:    17
==========================================================================
Claim Number : A625027340-0001-01                      Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==========================================================================


------------------------- NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ --------- -- -------------------------------------------
```

while in the water. The pain returns after 30 minutes of being
out of the pool therapy. Currently she is
taking Vicodin ES, Relafen, Lyrica and
Iramadol.
She had an intradiscal block by Dr. Chien on
July 24 with pain relief for 15 minutes after
L4-5 block.
At this point it appears that her pain may be
coming from the L4-5 disc space however her
insurance company will not approve artificial
disc replacement surgery at this point. We are
a clinical trial center for Aesculap
lumbarartificial disc trial starting next year.
In the meantime I will contact Dr. Chien to see
if he can provide her some interim pain
management with either a DCS trial or
intrathecal pain pump.I greatly appreciate the
opportunity to be involved in the care of this
patient. If I can be of any further assistance,
please let me know.

8/28/06
Received DocID:  2034124  on 8/25/06.  FAX
includes cover letter and summary report from
Bruce Chien, MD on 8/24/06.

Medical Summary:

Melissa Gardner was in the office for a
re-evaluation. Her situation is unchanged: she
has a known freely ruptured L4 disc noted at
L45 discogram 4/230/06, and noted by myself
fluoroscopically on diagnostic L5 and then L4
disc injection. She hasn't improved much at
all.  Walking is limited to about 100 feet
(from the car to the parking lot). She sleeps
on her side,
drives about 15 minutes and at that point has
pain paraspinally on the left at about the
iliac crest.
Medications: Vicodin 7.51500 twice per day
Allergies: Demerol, ASA, Compazine.
SH: wants to smoke
FH: Everyone in the family has back pain.
ROS: Otherwise negative.
Physical Exam: Her gait is antalgic. She
minimizes left sided weight bearing time. BP is

R-0644

Date: 02/28/2008  2:42pm          User: aarcher                    Page:    18
=================================================================================
Claim Number : A625027340-0001-01                          Date Loss : 03/12/2006
Client       : 1632        - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=================================================================================

------------------------------- NOTES -------------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
-----------------   --------  -- ------------------------------------------------

                    130/68,
                    HR 70 RR 16. She's 68 and 215 pounds. PERRLA Fs
                    are afull, fundi are benign. Chest is clear,
                    Cv is unremarkable. Liver is 8 cms, Spleen is
                    nonpalpable. SI jiotns are benign. SLR is
                    positive
                    on the left at 45 degrees with left paraspinal
                    pain at the level of the iliac crest. The right
                    side at 45
                    degres provokes pain in the left buttock.
                    Sensation is normal. DTRs are 2+
                    Impression: Unchanged. She's disabled L4
                    discogenic pain (left paraspinal) L5 discogenic
                    pain
                    (left buttock).
                    I've spent a good bit of time discussing why we
                    don't' want to do a spinal pump implant as a
                    "temporary" maneuver, and that the DCS is not
                    appropriate for her distribution of pain.
                    Chronic maintenance narcotics only will lead to
                    escalation. She understands this and is
                    complying with two Vicodins per day. awaiting
                    the clinical realease of the Charite disc.

                    9/7/06
                    recv fax 9/7/06 doc id 2097524 from dr chein
                    Melissa Gardner is disabled from work. She has
                    an open L45 disc demonstrated at 4/25/06
                    discogram and has concordant history and
                    symptoms.
                    She should NOT work until she has found
                    surgical intervention. Our local surgical
                    community, now having experienced Phase II
                    clinical trials of the Charite disc. Feels
                    strongly that she should wait for the release
                    of this product. The distribution of her pain
                    is not conducive to Dorsal Column Stimulator
                    suppression. Although she could be fused, I
                    have to defer to our surgical opinion.
                    She cannot sit or stand for any period of more
                    than about 3 minutes, which is hardly
                    compatible with the workplace.
                    [Time Note Created : 2:24 PM ]
----------------------------------------------------------------------------------
A625027340-0001-01 11/20/2006 MD JRINGO
                    PA Result copied from SD file.

                    9/5/06

Date: 02/28/2008  2:42pm              User: aarcher                Page:    19
===============================================================================
Claim Number : A625027340-0001-01                        Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===============================================================================

------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ ---------- -- --------------------------------------------

Physician Advisor Referral

Date file reviewed:     9/1/06 3:00 CDT

Treatment Provider name(s):      Dr. Dinh

Date & time calls made to TP(s):  On 9/1/06 at
3:00 CDT and spoke with Margie who reported
that the Dr. was not available and a message
was left about this file review with a call
back number provided.

Was TP contact successful?       No

If yes, name of contact:  N/A

Summary of TP medical documentation:

S:      The patient is a 33 year-old female
marketing support specialist involved with
sedentary work activity and has history of some
low back pain issues.

O:      Per clinic note in Juris on 8/24/06,
discogram in April of this year reportedly
revealed an L4 disc rupture.  The patient is on
medication management for pain. Blood pressure
130/68, HR 70, R 16, and weight 215 pounds.
Gait was antalgic. SLR is positive on the left
at 45 degrees with left paraspinal pain at the
level of the iliac crest. The right side at 45
degrees provokes pain in the left buttock, and
otherwise physical exam was unremarkable and no
other detailed positive objective findings were
listed.

A:      L4-5 discogenic pain

Complications/co-morbidities
impacting recovery/functionality: None.

P:                              Per clinic note in Juris on 8/24
/06, we
don't' want to do a spinal pump implant as a
"temporary" maneuver, and that the DCS is not
appropriate for her distribution of pain.
Chronic maintenance narcotics only will lead to
escalation. She understands this and is
complying with two Vicodin per day, and

```
Date: 02/28/2008  2:42pm          User: aarcher                    Page:    20
===============================================================================
Claim Number : A625027340-0001-01                       Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===============================================================================
```

```
-------------------------------- NOTES -----------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ --------- -- -------------------------------------------------
```

awaiting the clinical release of the Charite disc.

TP ERTW Date:     None listed

Physician Advisor Review:

Assessment of functionality:     Based on the available medical documentation/information, the patient should have returned back to her sedentary work activity as of 9/6/06.

Reasonable and specific restrictions, including duration and anticipated medical milestones:   None.

PA's ERTW
(full-duty/restricted as appropriate): 9/6/06 full-duty

PA rationale:                     While the patient may have had some problems with chronic low back pain/discogenic pain, there is no indication from the available clinical documentation/information of any significant or severe positive objective findings or significant/severe functional limitations occurring that would have prevented a return back to her sedentary work activity by 9/6/06. There is also no mention as to why continued time off from work was still required, and there is also no clearly detailed treatment plan.  Subjective pain without significant positive objective findings does not justify continued time off from work.  She could have still received her medical treatment/follow-up for her condition as an outpatient without requiring continued time off from work as well. She should also be proactive/compliant in doing her own home exercise program daily for long term maintenance and conditioning as well.  As a result, based on the available medical documentation/information, the patient should have returned back to her sedentary work activity without restrictions as of 9/6/06.

Answers to CM questions:

```
Date: 02/28/2008  2:42pm           User: aarcher              Page:    21
========================================================================
Claim Number : A625027340-0001-01                    Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
========================================================================

------------------------- NOTES -------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
-----------------  ---------- -- -----------------------------------
```

                        1.        Please review file and discuss with Dr. Dihn
                        if employee has capacity to return to her
                        sedentary job duties with or without
                        restrictions?

                        No r/l's are required.

                        2.        What would be the duration of said
                        restrictions and limitations?

                        N/A.  Dept can accommodate gradual hours,
                        frequent sit\stand\change positions, order an
                        ergo evaluation upon return to work.

                        3.        What would be MMI for employee at this point
                        without surgery?

                        Unknown based on the available
                        documentation/information.

                        4.        What is going to be the ongoing treatment
                        plan without surgery?

                        Unknown based on the available
                        documentation/information.

                        5.        Is employee totally disabled from 8/30 thru
                        present?

                        No.

                        6.        Possible IME?

                        No.

                        [Time Note Created : 2:32 PM ]
```
---------------------------------------------------------------------
A625027340-0001-01 11/20/2006 AP JRINGO
                        open/pending
                        2nd IC 3-5 days
                        no contact snd call me ltr
                        monitor SD claim for status
                        make ltd decision
                        [Time Note Created : 2:33 PM ]
---------------------------------------------------------------------
A625027340-0001-01 11/28/2006 CM JRINGO
                        Initial call - AIT bargained
```

===============================================================================
Claim Number : A625027340-0001-01                          Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
===============================================================================

------------------------------- NOTES ------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
-----------------  -------- -- ------------------------------------------------

                        Name:  Melissa Gardner
                        SD End Date:  3/18/2007
                        Occupation: Marketing Suppot Specialist
                        YOS: 5

                        Gross Monthly Benefit: $2,245.69

                        Left vm for rtc.

                        Call me ltr sent.

                        I introduced myself to the claimant and advised
                        that I will be his/her case manager for LTD.
                        As the employee will expire SD on 3/18/07, we
                        will begin consideration for Long Term
                        Disability.

                        We are not dismissing the possibility that you
                        may return to work prior to the EOB.  If you
                        feel that you may RTW, you should provide the
                        appropriate medical information to your SD Case
                        Manager.  Currently, SD benefits are approved
                        through 11/30/06

                        If you are unable to RTW by the date your SD
                        benefits expire, your employment may terminate.


                        This claim is being considered under the
                        Ameritech Long Term Disability Plan. In order
                        to receive payments under this plan, you must
                        complete the forms in the LTD packet and return
                        them to us as soon as possible in the postage
                        paid envelope.  If you have not yet completed
                        the paperwork, please sign and date the Medical
                        Records release and return it now, then
                        complete the remainder of the packet ASAP.
                        Failure to provide this information in a timely
                        manner could result in denial of your Long Term
                        Disability benefits.

                        Returning your LTD paperwork will assist us in
                        making a timely decision, but it will in no way
                        limit any return to work options available to
                        you, should your condition improve.

                        In order be considered disabled under the LTD

```
Date: 02/28/2008  2:42pm          User: aarcher              Page:    23
=============================================================================
Claim Number : A625027340-0001-01                    Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=============================================================================

-------------------------------- NOTES --------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------- --------- -- -------------------------------------------
```

                Plan, you must complete the Waiting period,
which is 52 weeks of approved SD benefits.

The definition of disability for that Plan is:
any occ, 50% gainful.

Because the STD definition of disability is
different than the definition in the LTD Plan,
we will not be able to complete the vocational
portion of our decision without the forms in
the packet.

The benefit payment if you meet the definition
of disability is 50% of your base pay as
reported by the company, as of your last day
worked.

Minus the following offsets: SSDI, SSR, W/C,
Disability or Service Pension and
State Dis.

If LTD is approved, LTD is paid once a month,
at the end of the month.

For California only:  Are you currently
receiving State Disability?  Have you received
any paperwork regarding the end date of the
State Disability?  We will need a copy of that
in order to stop the state disability offset
from your LTD payment.

Approximately one month prior to your SD
expiration of benefits, we advise the pension
dept of the date employment would end.  The
pension retirement department will contact you
by mail as to what you may be entitled to under
the pension plan.  If you would like to speak
to them by phone you can reach them at
800/557-3640.

If you are entitled to receive pension, the
Pension Retirement Department will also forward
figures to us.  We will use the Single Life
Annuity Amount as an offset to your LTD Benefit
if you are found disabled for LTD, whether or
not you take a monthly annuity or a lump sum
pension benefit. This pension figure is offset

R-0650

```
Date: 02/28/2008  2:42pm          User: aarcher               Page:    24
=============================================================================
Claim Number : A625027340-0001-01                      Date Loss : 03/12/2006
Client       : 1632       - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
=============================================================================


------------------------------- NOTES ---------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ --------- -- ---------------------------------------------
```

even if you choose not to elect your pension at
the end of your SD benefits.

The original pension figure which is
transmitted to us is an estimate and if the SLA
amount changes after you return their pension
papers, we will use the new corrected number
and there may be an overpayment or underpayment
on your claim.

Have you filed for SSDI?   If so, status?

Explained SSDI application process, requirement
to file under the LTD plan, appeal process.  If
you are not with an attorney, that service is
free and we will make the referral at this
time.

What is your diagnosis and symptoms?

What is your current height and weight?

Doctors (specialties, how often seen):

Do you think you may be able to RTW?   What is
it about your condition that prevents you from
being able to work?  Are you getting
better/worse

If you are able to RTW and accommodations are
needed, the STD case manager will need specific
restrictions, duration, and supporting medical
information.

Current meds:

Daily activities:

Driving:

If you have questions about what happens to
your health insurance, the phone number for
health insurance questions (SBC Connect):
877-722-0020

Is there anything else I can help you with
today?
[Time Note Created : 2:32 PM ]
-----------------------------------------------------------------------------

R-0651

A625027340-0001-01 11/28/2006 ST JRINGO
                         Call me ltr sent to claimant
                         [Time Note Created : 2:45 PM ]
--------------------------------------------------------------
A625027340-0001-01 11/28/2006 AP JRINGO
                         open/pending
                         call me ltr to claimant
                         f/u every 15 days
                         monitor SD claim for status
                         Make LTD decision
                         [Time Note Created : 2:46 PM ]
--------------------------------------------------------------
A625027340-0001-01 12/13/2006 CM JRINGO
                         Initial call - AIT bargained

                         Name:  Melissa Gardner
                         SD End Date:  3/18/2007
                         Occupation: Marketing Suppot Specialist
                         YOS: 5

                         Gross Monthly Benefit: $2,245.69

                         Spoke with claimant asked if this was a good
                         time to talk.  she stated she was getting ready
                         to take both of her children to the doctor as
                         they both had the flu.  Asked a good time to
                         call tomorrow and she stated any time.

                         Call me ltr sent.

                         I introduced myself to the claimant and advised
                         that I will be his/her case manager for LTD.
                         As the employee will expire SD on 3/18/07, we
                         will begin consideration for Long Term
                         Disability.

                         We are not dismissing the possibility that you
                         may return to work prior to the EOB.  If you
                         feel that you may RTW, you should provide the
                         appropriate medical information to your SD Case
                         Manager.  Currently, SD benefits are approved
                         through 12/31/06

                         If you are unable to RTW by the date your SD
                         benefits expire, your employment may terminate.


                         This claim is being considered under the
                         Ameritech Long Term Disability Plan. In order
                         to receive payments under this plan, you must
                         complete the forms in the LTD packet and return
                         them to us as soon as possible in the postage
                         paid envelope.  If you have not yet completed
                         the paperwork, please sign and date the Medical
                         Records release and return it now, then
                         complete the remainder of the packet ASAP.
                         Failure to provide this information in a timely
                         manner could result in denial of your Long Term
                         Disability benefits.

                         Returning your LTD paperwork will assist us in
                         making a timely decision, but it will in no way

R-0652

```
Date: 02/28/2008  2:42pm          User: aarcher                    Page:    26
===============================================================================
Claim Number : A625027340-0001-01                        Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===============================================================================


------------------------------- NOTES -----------------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
------------------ ---------- -- -----------------------------------------------
                              limit any return to work options available to
                              you, should your condition improve.

                              In order be considered disabled under the LTD
                              Plan, you must complete the Waiting period,
                              which is 52 weeks of approved SD benefits.

                              The definition of disability for that Plan is:
                              any occ, 50% gainful.

                              Because the STD definition of disability is
                              different than the definition in the LTD Plan,
                              we will not be able to complete the vocational
                              portion of our decision without the forms in
                              the packet.

                              The benefit payment if you meet the definition
                              of disability is 50% of your base pay as
                              reported by the company, as of your last day
                              worked.

                              Minus the following offsets: SSDI, SSR, W/C,
                              Disability or Service Pension and
                              State Dis.

                              If LTD is approved, LTD is paid once a month,
                              at the end of the month.

                              For California only:  Are you currently
                              receiving State Disability?  Have you received
                              any paperwork regarding the end date of the
                              State Disability?  We will need a copy of that
                              in order to stop the state disability offset
                              from your LTD payment.


                              Approximately one month prior to your SD
                              expiration of benefits, we advise the pension
                              dept of the date employment would end.   The
                              pension retirement department will contact you
                              by mail as to what you may be entitled to under
                              the pension plan.  If you would like to speak
                              to them by phone you can reach them at
                              800/557-3640.

                              If you are entitled to receive pension, the
                              Pension Retirement Department will also forward
                              figures to us.  We will use the Single Life
```

R-0653

```
Date: 02/28/2008  2:42pm          User: aarcher              Page:    27
==============================================================================
Claim Number : A625027340-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==============================================================================

------------------------------ NOTES ------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------  --------  --  ----------------------------------------
```

                         Annuity Amount as an offset to your LTD Benefit
                         if you are found disabled for LTD, whether or
                         not you take a monthly annuity or a lump sum
                         pension benefit. This pension figure is offset
                         even if you choose not to elect your pension at
                         the end of your SD benefits.

                         The original pension figure which is
                         transmitted to us is an estimate and if the SLA
                         amount changes after you return their pension
                         papers, we will use the new corrected number
                         and there may be an overpayment or underpayment
                         on your claim.

                         Have you filed for SSDI?   If so, status?

                         Explained SSDI application process, requirement
                         to file under the LTD plan, appeal process.  If
                         you are not with an attorney, that service is
                         free and we will make the referral at this
                         time.

                         What is your diagnosis and symptoms?

                         What is your current height and weight?

                         Doctors (specialties, how often seen):

                         Do you think you may be able to RTW?   What is
                         it about your condition that prevents you from
                         being able to work?  Are you getting
                         better/worse

                         If you are able to RTW and accommodations are
                         needed, the STD case manager will need specific
                         restrictions, duration, and supporting medical
                         information.

                         Current meds:

                         Daily activities:

                         Driving:

                         If you have questions about what happens to
                         your health insurance, the phone number for
                         health insurance questions (SBC Connect):
                         877-722-0020

R-0654

```
Date: 02/28/2008  2:42pm          User: aarcher               Page:    28
==============================================================================
Claim Number : A625027340-0001-01                        Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
==============================================================================
--------------------------- NOTES --------------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
------------------ -------- -- ------------------------------------------------


                   Is there anything else I can help you with
                   today?
                   [Time Note Created : 1:01 PM ]
------------------------------------------------------------------------------
A625027340-0001-01 12/13/2006 AP JRINGO
                   claim; open/pending
                   f/u for results of IME
                   monitor SD claim
                   make LTD decision
                   contact claimant for IC
                   [Time Note Created : 1:06 PM ]
------------------------------------------------------------------------------
A625027340-0001-01 12/14/2006 CM JRINGO
                   Initial call - AIT bargained

                   Name:  Melissa Gardner
                   SD End Date:  3/18/2007
                   Occupation: Marketing Support Specialist
                   YOS: 5

                   Gross Monthly Benefit: $2,245.69

                   Claimant needs to have a surgery with disc
                   replacement but it has not yet been approved by
                   the FDA.  States per her md it could take 3
                   months, 6 months or even a year.  they are not
                   sure.  Claimant scheduled for IME 1/8/07.

                   I introduced myself to the claimant and advised
                   that I will be his/her case manager for LTD.
                   As the employee will expire SD on 3/18/07, we
                   will begin consideration for Long Term
                   Disability.

                   We are not dismissing the possibility that you
                   may return to work prior to the EOB.  If you
                   feel that you may RTW, you should provide the
                   appropriate medical information to your SD Case
                   Manager.  Currently, SD benefits are approved
                   through 12/31/06

                   If you are unable to RTW by the date your SD
                   benefits expire, your employment may terminate.


                   This claim is being considered under the
                   Ameritech Long Term Disability Plan. In order
```

R-0655

```
Date: 02/28/2008  2:42pm          User: aarcher              Page:    29
==============================================================================
Claim Number : A625027340-0001-01               Date Loss : 03/12/2006
Client      : 1632      - AT&T Inc.
Account     : 16320730  - TC - Ameritech Services, Inc
Unit        : TC065     - INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
==============================================================================


------------------------------- NOTES ----------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
-------------------- ---------- -- -------------------------------------------
```

to receive payments under this plan, you must
complete the forms in the LTD packet and return
them to us as soon as possible in the postage
paid envelope.  If you have not yet completed
the paperwork, please sign and date the Medical
Records release and return it now, then
complete the remainder of the packet ASAP.
Failure to provide this information in a timely
manner could result in denial of your Long Term
Disability benefits.

Returning your LTD paperwork will assist us in
making a timely decision, but it will in no way
limit any return to work options available to
you, should your condition improve.

In order be considered disabled under the LTD
Plan, you must complete the Waiting period,
which is 52 weeks of approved SD benefits.

The definition of disability for that Plan is:
any occ, 50% gainful.

Because the STD definition of disability is
different than the definition in the LTD Plan,
we will not be able to complete the vocational
portion of our decision without the forms in
the packet.

The benefit payment if you meet the definition
of disability is 50% of your base pay as
reported by the company, as of your last day
worked.

Minus the following offsets: SSDI, SSR, W/C,
Disability or Service Pension and State Dis.

If LTD is approved, LTD is paid once a month,
at the end of the month.

For California only:  Are you currently
receiving State Disability?  Have you received
any paperwork regarding the end date of the
State Disability?  We will need a copy of that
in order to stop the state disability offset
from your LTD payment.

R-0656

```
Date: 02/28/2008  2:42pm          User: aarcher          Page:    30
===========================================================================
Claim Number : A625027340-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===========================================================================


--------------------------------- NOTES -----------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
-----------------  --------- -- --------------------------------------------
```

Approximately one month prior to your SD
expiration of benefits, we advise the pension
dept of the date employment would end.  The
pension retirement department will contact you
by mail as to what you may be entitled to under
the pension plan.  If you would like to speak
to them by phone you can reach them at
800/557-3640.

If you are entitled to receive pension, the
Pension Retirement Department will also forward
figures to us.  We will use the Single Life
Annuity Amount as an offset to your LTD Benefit
if you are found disabled for LTD, whether or
not you take a monthly annuity or a lump sum
pension benefit. This pension figure is offset
even if you choose not to elect your pension at
the end of your SD benefits.

The original pension figure which is
transmitted to us is an estimate and if the SLA
amount changes after you return their pension
papers, we will use the new corrected number
and there may be an overpayment or underpayment
on your claim.

Have you filed for SSDI? no, will refer  If so,
status?

Explained SSDI application process, requirement
to file under the LTD plan, appeal process.  If
you are not with an attorney, that service is
free and we will make the referral at this
time.

What is your diagnosis; multiple ruptured
discs, and severe disc generation in spine
and symptoms? constant agony, toes hurt,
everything, when it's worse she can't move her
legs, can only sleep for 1-2 hours if she takes
her meds.

What is your current height; 5'10"
and weight? unsure has gained weight due to her
inability to move.

Doctors (specialties, how often seen):

R-0657

```
Date: 02/28/2008  2:42pm          User: aarcher                Page:    31
===============================================================================
Claim Number : A625027340-0001-01                     Date Loss : 03/12/2006
Client       : 1632      -- AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     -- INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===============================================================================


------------------------------ NOTES -----------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ ---------- -- -------------------------------------------
                             Do you think you may be able to RTW? no rtw at
                             this time.  What is it about your condition
                             that prevents you from being able to work?
                             unable to sit, stand, lay down for any amount
                             of time.  Difficulty sleeping.  Are you getting
                             better/worse, worese as she is awaiting FDA to
                             approve surgery that she can have.  Some type
                             of disc replacement.

                             If you are able to RTW and accommodations are
                             needed, the STD case manager will need specific
                             restrictions, duration, and supporting medical
                             information.

                             Current meds: hydrocodone, lyrica, tormadol,
                             imitrex injections for migraines, spinal
                             injections every so often.

                             Daily activities: 12 year old that helps a lot,
                             sometimes she can bathe herself depending on
                             how many meds she takes, she can also do
                             grocery shopping.

                             Driving: a little bit around town if she drugs
                             herself up.  but only very limited due to the
                             effects of the drugs.

                             If you have questions about what happens to
                             your health insurance, the phone number for
                             health insurance questions (SBC Connect):
                             877-722-0020

                             Is there anything else I can help you with
                             today?
                             [Time Note Created : 1:22 PM ]
-------------------------------------------------------------------------------
A625027340-0001-01 12/14/2006 SS JRINGO
                             Claimant referred to Allsup


                             Referral Form Confirmation

                              The following referral was received at:
                             12/14/2006 1:49:41 PM - CST
                             [Time Note Created : 1:50 PM ]
-------------------------------------------------------------------------------
A625027340-0001-01 12/14/2006 AP JRINGO
                             claim; open/pending
```

R-0658

Date: 02/28/2008  2:42pm            User: aarcher                    Page:    32
========================================================================
Claim Number : A625027340-0001-01                        Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
========================================================================


------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim   Date        Tp Examiner
-------------------------------------------------------------------------

                                f/u for 1/8/07 IME results
                                monitor SD claim
                                make ltd benefits decision
                                f/u for LTD forms every 21 days
                                f/u for SS status every 60 days
                                [Time Note Created : 1:51 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 01/04/2007 CM JRINGO
                                called ee, left vm for rtc.

                                Need to verify status of LTD paperwork and to
                                see if she had any questions.  Cm will follow
                                up again for status of LTD paperwork.
                                [Time Note Created : 1:41 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 01/04/2007 AP JRINGO
                                claim; open/pending
                                f/u for 1/8/07 IME results
                                monitor SD claim
                                make ltd benefits decision
                                f/u for LTD forms every 21 days
                                f/u for SS status every 60 days
                                [Time Note Created : 1:42 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 01/10/2007 CM CRAIGH
                                EE CALLED TO ASK WHO IS CM INFORMED HER OF CM.
                                [Time Note Created : 4:15 PM ]
-------------------------------------------------------------------------
A625027340-0001-01 01/19/2007 IM JRINGO
                                1/18/07 IME results copied from SD file.

                                IME Report

                                DOS 01/08/07- Doc# 2678279
                                **********************************************
                                ******
                                DIAGNOSTIC REVIEW:
                                I reviewed several diagnostic films. The first
                                was a lumbar MRI dated March 14, 2006, which
                                showed an annular tear at L4-5. This was seen
                                only on the sagittal views.

                                I also reviewed a cervical MRI, which simply
                                showed mild degenerative disc disease.
                                Next, I reviewed a lumbar CT scan dated April
                                20, 2006. That CT scan showed an annular tear
                                at L4-5, which was midline.

R-0659

Claim Number : A625027340-0001-01                    Date Loss : 03/12/2006
Client       : 1632        - AT&T Inc.
Account      : 16320730   - TC - Ameritech Services, Inc
Unit         : TC065      - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA

------------------------------------ NOTES ------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------ --------- -- ------------------------------------------------

Finally, I reviewed a discogram, which was a
one level procedure performed on April 20, 2006
at the L4-5 level. The discogram showed chronic
degenerative disc disease.

NEUROLOGIC EXAMINATION:
Ms. Gardner appeared to be uncomfortable while
sitting through the interview process. During
the examination, she limits movement of her
back, but she has a normal lumbar lordosis. Her
straight leg-raising test is negative in a
sitting position to 90°. Deep tendon reflexes
are equal, symmetrical, and normal at the knees
and ankles. She has normal strength, a normal
gait, and she can walk on her heels and toes
without difficulty.

IMPRESSION:
After obtaining a narrative history, performing
a neurologic exam, and reviewing medical
records and several diagnostic studies, it is
my opinion that Ms. Gardner has degenerative
disc disease of her lumbar spine. This opinion
is supported by the findings on her diagnostic
studies, which revealed an annular tear at the
L4-5 level that is midline in location.

CONCLUSION:
Ms. Gardner's history is significant for prior
episodes of back pain that lasted anywhere up
to a week and then cleared. In my opinion, the
changes seen on Ms. Gardner's diagnostic
studies appear to be degenerative in nature.
Furthermore, Ms. Gardner did not experience any
injury per se at the time of her acute onset of
pain, but rather she merely experienced pain
when she rose from a chair, and then this back
pain gradually worsened. When Ms. Gardner stood
up from a seated position at work, she was not
lifting, twisting, or bending. Therefore, it is
my opinion that Ms. Gardner's acute onset of
pain in March 2006 is related to her
degenerative disc disease and is not an
occupational injury.

RECOMMENDATIONS:
In regards to Charite disc replacement, the
chances of improvement are reported to be 57%,

R-0660

```
Date: 02/28/2008  2:42pm           User: aarcher              Page:    34
==============================================================================
Claim Number : A625027340-0001-01                     Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
==============================================================================


------------------------------- NOTES ----------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
-----------------  -------- -- -----------------------------------------------
```

which is no better than the natural history of
the disease itself. Another approach would be
to consider an anterior lumbar fusion or
possibly a posterior hemilaminotomy.
Irrespective of what type of treatment Ms.
Gardner elects to proceed with, it is my
opinion that any medical and/or surgical
treatment is for her underlying degenerative
disc disease and is not related to her
employment at SBC Communications.

SPECIFIC INTERROGATORIES:
1. What is your evaluation of Ms. Gardner's
medical condition?

Response: After obtaining a narrative history,
performing a neurologic exam, and reviewing
medical records and several diagnostic studies,
it is my opinion that Ms. Gardner has
degenerative disc disease of her lumbar spine.
This opinion is supported by the findings on
her diagnostic studies, which revealed an
annular tear at the L4-5 level that is midline
in location.

2. What is her prognosis?

Response: Ms. Gardner's prognosis is guarded
based on her repeated episodes of low back pain
and multilevel involvement of the lumbar discs.
In the past, her episodes of back pain have
cleared; however, this current episode has
remained refractory to significant attempts at
conservative management. Although Ms. Gardner
has failed to respond to conservative
treatment, I am reluctant to recommend any type
of surgical intervention given the nature of
the changes on her MRI.

3. Does her treatment plan seem reasonable to
date?

Response: After reviewing the medical reports,
it is my opinion that Ms. Gardner's treatment
and workup has been reasonable; however, I
consider her treatment to be related to a
pre-existing condition and not related to her
occupation. In regards to Charite disc

R-0661

```
Date: 02/28/2008  2:42pm            User: aarcher                 Page:    35
===============================================================================
Claim Number : A625027340-0001-01                      Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
===============================================================================


------------------------------ NOTES -----------------------------------------

Event/Clmnt/Claim  Date       Tp Examiner
-----------------  ---------- -- ---------------------------------------------
```

replacement, the chances of improvement are
reported to be 57%, which is no better than the
natural history of the disease itself.

Another approach would be to consider an
anterior lumbar fusion or possibly a posterior
hemilaminotomy.

4. Please comment on Ms. Gardner's activities
of daily living.

Response: Ms. Gardner indicated that standing
and walking aggravates the pain but the pain
will improve if she lies down. She reports that
overall her back pain is worse than the leg
pain. Ms. Gardner is also on a combination of
Lyrica, Tramadol, Nabumetone, and Hydrocodone
to control her pain. Without these medications,
she rates the pain at "10 to 15" on a scale of
0 (no pain) to 10 (the worst imaginable pain),
but with the medication the pain will decrease
to 5 or
6/10

6. How does Ms. Gardner's medical condition
interfere with her ability to perform the
essential functions of the Marketing Support
Specialist?

Response: In my opinion, Ms. Gardner's medical
condition should not prevent her from working
given the sedentary nature of her job; however,
the following factors could indirectly
interfere:

1. By history, the prolonged drive to and from
work everyday (East
Peoria, IL to Springfield, IL/Springfield to
East Peoria).
2. The fact that standing and walking
exacerbate the pain.
4. The only alleviating factor by history is
when Ms. Gardner lies down.
5. Her current regimen of pain medications.

7. Please comment on Ms. Gardner's functional
abilities.

R-0662

```
Date: 02/28/2008  2:42pm          User: aarcher               Page:    36
==============================================================================
Claim Number : A625027340-0001-01              Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730 - TC - Ameritech Services, Inc
Unit       : TC065    - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
==============================================================================

-------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim  Date      Tp Examiner
------------------- --------- -- --------------------------------------------
```

Response: Ms. Gardner's job as a marketing specialist is a sedentary position and requires no physical modification in her work duties other than possibly changing positions as needed for comfort measures.

8. Do Ms. Gardner's symptoms match her functionality and your understanding of her medical condition?

Response: During the examination, Ms. Gardner appeared to be uncomfortable and she limited any movement of her back. In my opinion, Ms. Gardner's current symptoms are consistent with the diagnostic findings.

9. Is Ms. Gardner able to return to her full duty position as a Marketing Support Specialist?

Response: Ms. Gardner's job as a marketing specialist is a sedentary position and requires no physical modification in her work duties other than possibly changing positions as needed for comfort measures.

10. If no, please state specific work restrictions and the duration.

Response: None.

11. Please specify any accommodations, which may be needed regarding her medical condition.

Response: One might consider possibly accommodating Ms. Gardner in terms of allowing her to change positions as needed for comfort measures.

12. Has the claimant reached maximum medical improvement?

Response: In this case, maximal medical improvement does not apply, as I do not consider the acute onset of pain to be related to an occupational injury.

13. In your opinion is it appropriate to await

========================================================================
Claim Number : A625027340-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
========================================================================


------------------------------- NOTES -------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
------------------- ---------- -- -------------------------------------

                    the approval of the Charite procedure? Is this
                    her best option for optimal improvement?

                    Response: In regards to Charite disc
                    replacement, the chances of improvement are
                    reported to be 57%, which is no better than the
                    natural history of the disease itself.

                    Another approach would be to consider an
                    anterior lumbar fusion or possibly a posterior
                    hemilaminotomy.

                    Irrespective of what type of treatment Ms.
                    Gardner elects to proceed with, it is my
                    opinion that any medical and/or surgical
                    treatment for this acute onset of pain is
                    related to the underlying degenerative disc
                    disease and is not related to her
                    employment at SBC Communications.
                    [Time Note Created :11:15 AM ]
-----------------------------------------------------------------------
A625027340-0001-01 01/19/2007 DN JRINGO
                    BU 3/19/07 and beyond

                    Claimant did not meet the 52 wk wp.  SD denied.
                    [Time Note Created :11:30 AM ]
-----------------------------------------------------------------------
A625027340-0001-01 01/19/2007 AP JRINGO
                    claim; open/denied
                    complete wp denial
                    f/u w/claimant re denial
                    30 day closure if no appeal
                    [Time Note Created :11:33 AM ]
-----------------------------------------------------------------------
A625027340-0001-01 01/22/2007 ST JRINGO
                    Per SD claim, benefits denied 1/19/07 as
                    medical does not support based on IME and ee
                    did nto rtw.
                    [Time Note Created : 3:18 PM ]
-----------------------------------------------------------------------
A625027340-0001-01 01/22/2007 DN JRINGO
                    BU 3/19/07 and beyond

                    EE did not satisfy 52 wk wp.
                    [Time Note Created : 3:18 PM ]
-----------------------------------------------------------------------
A625027340-0001-01 01/22/2007 EX JRINGO
                    Form Letters Merged

R-0664

```
Date: 02/28/2008  2:42pm          User: aarcher              Page:    38
================================================================================
Claim Number : A625027340-0001-01                     Date Loss : 03/12/2006
Client    : 1632      - AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
================================================================================


-------------------------------- NOTES -----------------------------------------

Event/Clmnt/Claim   Date      Tp Examiner
-----------------   -------   -- --------------------------------------------
```

                            Form Letter(s): LTD AIT not meet waiting period
                            Created On: 01/22/07

                            [Time Note Created : 3:19 PM ]
```
--------------------------------------------------------------------------------
A625027340-0001-01 01/22/2007 ST JRINGO
                            Denial ltr sent w/180 day appeals packet
                            regular & certified mail
                            [Time Note Created : 3:28 PM ]
--------------------------------------------------------------------------------
A625027340-0001-01 01/23/2007 CM JRINGO
                            called ee, advised LTD being denied due to her
                            not satisfying the 52 wk wp.  Advised that she
                            has the right to appeal and she has 180 days to
                            do so.  EE stated the SD claim is going to be
                            approved she has to get addt'l medical.  Stated
                            she is going for another MRI tomorrow 1/24/07.
                            Advised that was fine but this cm has placed a
                            denial ltr in the mail and a note to the SD
                            file to advise if the denial is reversed.
                            [Time Note Created :11:30 AM ]
--------------------------------------------------------------------------------
A625027340-0001-01 01/23/2007 AP JRINGO
                            claim; open/denied
                            denial ltr sent 1/22/07 req & certified mail
                            w/180 day --appeals packet
                            30 day closure if no appeal
                            [Time Note Created :11:31 AM ]
--------------------------------------------------------------------------------
A625027340-0001-01 02/22/2007 ST JRINGO
                            SD claim remains denied.
                            [Time Note Created :11:05 AM ]
--------------------------------------------------------------------------------
A625027340-0001-01 02/22/2007 AP JRINGO
                            closing file no appeal
                            [Time Note Created :11:05 AM ]
--------------------------------------------------------------------------------
A625027340-0001-01 02/23/2007 SR CORINNEM
                            30 Day SR Diary.

                            SD claim is currently denied due to medical not
                            supporting.
                            Note has been placed in the SD Alert button to
                            let the LTD CM know if the benefits are
                            reinstated.
                            [Time Note Created : 9:18 AM ]
--------------------------------------------------------------------------------
A625027340-0001-01 07/03/2007 ST JRINGO
```

R-0665

Received 6/27/07, ERISA Law Group -
DCN 4220070627479003

Requesting copy of the LTD file.

Forwarded req to Office Admin.
[Time Note Created : 9:48 AM ]

------------------------------------------------------------
A625027340-0001-01 07/06/2007 ST JRINGO
Received 7/2/07 - DCN 41070702990203
ERISA Law Group

Requesting copy of clmt's file for ltd to
appeal.  Previously forwarded to office
services on 7/3/07.
[Time Note Created : 2:05 PM ]

------------------------------------------------------------
A625027340-0001-01 07/09/2007 ST AARCHER
LATE ENTRY - Rec'd ee's atty file copy request,
doc. #4220070627479003 on June 27, 2007 and
doc. #41070702990203 on July 2, 2007.  Ack ltr
mailed to atty on July 9, 2007.  Fwd to BUM for
review.
[Time Note Created :11:51 AM ]

------------------------------------------------------------
A625027340-0001-01 07/11/2007 SR CORINNEM
Reviewed copy of Juris notes and the electronic
file.
Records were given back to office services for
mailing.
[Time Note Created :10:47 AM ]

------------------------------------------------------------
A625027340-0001-01 07/12/2007 ST AARCHER
Copy of file and juris notes to ee's atty
(Robert J. Rosati) per written request, mailed
FEDEX on July 12, 2007, tracking number 7982
1703 9661.
[Time Note Created :11:43 AM ]

------------------------------------------------------------
A625027340-0001-01 07/16/2007 ST JRINGO
Received 7/9/07 - DCN 4220070709458803

Duplicate reques from ERISA LAW Group
requesting copy of file
[Time Note Created :12:34 PM ]

------------------------------------------------------------
A625027340-0001-01 07/20/2007 ER JPEREZ
Appeal rqst rcvd w/meds from attorney on
07/19/07. doc 4220070720001321
[Time Note Created :10:03 AM ]

------------------------------------------------------------
A625027340-0001-01 07/20/2007 SR DANM
Appeal Triage:

Appeal request received from EE's attorney for
LTD denial and STD denial (A625007022-0001-01).

Dx: in STD claim - annular tear @ L4- L5,
chronic degenerative disc disease

LTD was denied because EE did not meet waiting

R-0666

```
Date: 02/28/2008  2:42pm          User: aarcher              Page:    40
================================================================================
Claim Number : A625027340-0001-01                    Date Loss : 03/12/2006
Client       : 1632        - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
================================================================================


---------------------------- NOTES -------------------------------------

Event/Clmnt/Claim   Date       Tp Examiner
-----------------   ---------- -- ------------------------------------------


                    period.

                    Appeal request assigned to Appeal Specialist
                    for both the STD and LTD claim.
                    [Time Note Created :12:27 PM ]
--------------------------------------------------------------------------------
A625027340-0001-01 07/20/2007 CI DANM
                    Examiner change: From: jringo  To:   stkane
                    **** NOTE CREATED BY: SYS ****
                    [Time Note Created :12:32 PM ]
--------------------------------------------------------------------------------
A625027340-0001-01 07/20/2007 AP STKANE
                    APPEALS ACTION PLAN:
                    1. Review EE file & appeal letter for appeal
                    review
                    2. Call EE for initial contact & explain appeal
                    review
                    3. Determine if add'l med is needed to perfect
                    claim.
                    4. F/u with EE as needed.
                    5. Consider IPA Review.
                    6. Make final appeal determination.
                    7. Notify EE/dept/payroll & render decision in
                    JURIS
                    -**AS will also confirm that the original
                    denial letter was sent to EE by DS.
                    [Time Note Created : 1:45 PM ]
--------------------------------------------------------------------------------
A625027340-0001-01 07/20/2007 EX JPEREZ
                    Form Letter(s): IDSC AIT Acknowledgement
                    Created On: 07/20/07

                    [Time Note Created : 4:03 PM ]
--------------------------------------------------------------------------------
A625027340-0001-01 07/25/2007 LG STKANE
                    Letter from Atty/Robert J. Rosati w/ ERISA Law
                    Group LLP dated 07/17/07 rec'd 07/21/07 stating
                    representing ee for LTD & STD claims.
                    410707211138003
                    [Time Note Created :11:11 AM ]
--------------------------------------------------------------------------------
A625027340-0001-01 07/25/2007 LG STKANE
                    INITIAL CALL TO ATTORNEY from Appeal
                    Specialist-
                    TCT Atty/Robt J. Rosati at 559-256-9800.
                    AS called Atty to discuss appeal review.
                    [Time Note Created : 5:28 PM ]
--------------------------------------------------------------------------------
A625027340-0001-01 07/25/2007 LG HARALSON
```

R-0667

Atty/Robert J. Rosati rtn as call. ttc to as.
[Time Note Created : 5:39 PM ]

------------------------------------------------------------

A625027340-0001-01 07/25/2007 ER STKANE
Rec'd file and appeal ltr.  No add'l med
submitted with appeal ltr.

EE denied due to not meeting the waiting period
for LD benefits.
[Time Note Created : 7:24 PM ]

------------------------------------------------------------

A625027340-0001-01 07/25/2007 LG STKANE
RCF Atty/Robt J. Rosati.
AS noting claim denied due to not meeting
waiting period for LD. Advised claim likely to
be admin upheld while SD claim is being
reviewed for appeal; if SD benefits are
reinstated thru EOB, claim will be reassessed
by LD. Atty vu.
[Time Note Created : 7:25 PM ]

------------------------------------------------------------

A625027340-0001-01 07/25/2007 ER STKANE
uphold denial.

Rationale: EE did not exhaust 52 weeks of SD
benefits, therefore did not meet the waiting
period for LD benefits.
[Time Note Created : 7:27 PM ]

------------------------------------------------------------

A625027340-0001-01 07/25/2007 AP STKANE
* Complete uphold ltr and forward to QRU BUM
for review.
* Send uphold ltr to Atty.
* Inform Atty of determination.
* close claim.
[Time Note Created : 7:30 PM ]

------------------------------------------------------------

A625027340-0001-01 07/25/2007 ER STKANE
Forwarded uphold ltr to QRU BUM for review.
[Time Note Created : 7:30 PM ]

------------------------------------------------------------

A625027340-0001-01 07/25/2007 SR DANM
Claim reviewed.  EE's attorney submitted
request for appeal. EE authorized attorney to
represent her in appeal. Appeal Specialist
contacted EE's attorney explained appeal
process and reviewed file. Claim denied because
did not satisfy the waiting period as defined
in the AIT LTD Plan.  The appeal determination
letter was reviewed and approved. Routed for
mailing.  The decision to uphold the denial of
LTD benefits is appropriate. The Appeal
Specialist will notify the EE's attorney of the
determination, update the ERISA screen and
close the claim.   (This determination does not
effect the STD appeal that remains pending.)


[Time Note Created : 8:00 PM ]

------------------------------------------------------------

A625027340-0001-01 07/26/2007 ER STKANE
July 26, 2007

R-0668

```
Date: 02/28/2008  2:42pm          User: aarcher                    Page:     42
=============================================================================
Claim Number : A625027340-0001-01                    Date Loss : 03/12/2006
Client    : 1632       -- AT&T Inc.
Account   : 16320730  - TC - Ameritech Services, Inc
Unit      : TC065     - INDUSTRY MARKETS
Claimant  : GARDNER, MELISSA
=============================================================================


------------------------------ NOTES -----------------------------------


Event/Clmnt/Claim  Date    Tp Examiner
------------------  ----------  --  -----------------------------------------
```

ROBERT J. ROSATI
ERISA LAW GROUP, LLP
2055 SAN JOAQUIN STREET
FRESNO, CA 93721

Re:      Ameritech Long Term Disability Plan
  Claim Number: A625027340-0001-01
  Your Client: Melissa Gardner

Dear Mr. Rosati:

Your client's claim appealing the denial of
benefits under the Ameritech Long Term
Disability Plan was reviewed by the AT&T
Integrated Disability Service Center (IDSC)
Quality Review Unit.

The AT&T Integrated Disability Service Center
(IDSC) Quality Review Unit reviewed all
submitted material and information regarding
the denial of long term disability (LTD)
benefits by the AT&T Integrated Disability
Service Center for your client's claim with a
first date of absence of March 16, 2006.  After
this review, the Unit determined to uphold the
denial of benefits based on the following:

Section 2.11 of the Ameritech Long Term
Disability Plan (the "Plan") defines the
Waiting Period as:

"Waiting Period" shall mean the 26 week or 52
week period for which Sickness Disability
Benefits under the Ameritech Sickness and
Accident Disability Benefit Plan are payable
and for which no benefits are payable under
this Plan."

After review of the claim, the determination
has been made by the Unit to uphold the denial
as your clien was not eligible for LTD benefits
under the Plan.  Your client's claim for short
term disability (STD) was denied and terminated
effective January 19, 2007.  This was prior to
the completion of the fifty-two week waiting

R-0669

```
Date: 02/28/2008  2:42pm            User: aarcher                  Page:    43
===============================================================================
Claim Number : A625027340-0001-01                       Date Loss : 03/12/2006
Client     : 1632      - AT&T Inc.
Account    : 16320730  - TC - Ameritech Services, Inc
Unit       : TC065     - INDUSTRY MARKETS
Claimant   : GARDNER, MELISSA
===============================================================================

----------------------------- NOTES -----------------------------------
```

```
Event/Clmnt/Claim   Date     Tp Examiner
------------------- ---------- -- ---------------------------------------
```

period as required under the Plan which
indicated that your client was not eligible for
LTD benefits.  If at a later date, however, the
full fifty-two week period for short term
disability benefits are payable under the
Ameritech Sickness and Accident Disability
Benefit Plan, then your client's claim would be
reviewed for eligibility for long term
disability benefits under the Ameritech Long
Term Disability Plan.

Under the terms of the Ameritech Long Term
Disability Plan, the decision of the Unit is
final.

Your client shall be provided, upon written
request and free of charge, reasonable access
to, and copies of, all documents, records, and
other information relevant to your client's
claim benefits.

Your client has the right to bring suit under
Section 502(a) of the Employee Retirement
Income Security Act of 1974 after there has
been full exhaustion of your client's appeal
rights as enumerated in the plan's claim
procedures and those rights have been exercised
and the Plan benefit's requested by said
claimant in such appeal have been denied in
whole or in part by your client's employer.

Sincerely,

Stephen Kane, LCSW
Appeal Specialist
AT&T Integrated Disability Service Center
(IDSC) Quality Review Unit

cc: Melissa Gardner
[Time Note Created :11:36 AM ]

```
-------------------------------------------------------------------------
A625027340-0001-01 07/26/2007 LG STKANE
```

TCT Atty/Robt J. Rosati at 559-256-9800. LVMTCB
noting appeal determination has been made on LD
claim to uphold denial due to failure to meet
52 wk waiting period. Noting if SD appeal

R-0670

```
Date: 02/28/2008  2:42pm         User: aarcher              Page:    44
================================================================================
Claim Number : A625027340-0001-01                    Date Loss : 03/12/2006
Client       : 1632      - AT&T Inc.
Account      : 16320730  - TC - Ameritech Services, Inc
Unit         : TC065     - INDUSTRY MARKETS
Claimant     : GARDNER, MELISSA
================================================================================

----------------------------------- NOTES --------------------------------------

Event/Clmnt/Claim  Date        Tp Examiner
-----------------  ----------  -- --------
                               results in reinstatement thru EOB, LD claim
                               will be reassessed by LD team. Noting letter is
                               being sent to Atty & cc: to ee via regular &
                               cert mail with details regarding our decision.
                               [Time Note Created :11:39 AM ]
--------------------------------------------------------------------------------
A625027340-0001-01 07/26/2007 AP STKANE
                               * Appeal complete
                               * Close claim
                               [Time Note Created :11:40 AM ]
--------------------------------------------------------------------------------
A625027340-0001-01 07/26/2007 ER JPEREZ
                               Uphold ltr sent to ee via regular and certified
                               mail, 7004 2510 0003 5770 7790

                               Uphold ltr sent to ee's attorney via regular
                               and certified mail, 7004 2510 0003 5770 7790
                               [Time Note Created : 4:57 PM ]
--------------------------------------------------------------------------------
A625027340-0001-01 07/28/2007 EX JPEREZ
                               Form Letter(s): IDSC Appeal No Recon
                               Created On: 07/28/07

                               [Time Note Created :12:21 PM ]
--------------------------------------------------------------------------------
A625027340-0001-01 07/28/2007 ER JPEREZ
                               Documentation rcvd to be returned to ee's
                               attorney w/ltr informing decision made was
                               final.Ltr written and fwded to QRU BUM for
                               review. Document rcvd 07/27/07 doc
                               4107072700199721.

                               [Time Note Created :12:39 PM ]
--------------------------------------------------------------------------------
A625027340-0001-01 07/30/2007 SR DANM
                               Reviewed letter to EE's attorney that was
                               prepared as a result of appeal request received
                               on 7/27/07.  The document is a duplicate of the
                               LTD appeal request FAXed on 7/19/07.   Did not
                               approve letter to EE's attorney that the
                               decision is final.  The appeal determination
                               letter was sent to the EE's attorney with a
                               copy to the EE on 7/26/07.  The document
                               4107072700199721 is a duplicate request and the
                               appeal decision was from the FAX copy of the
                               document and the decision was made prior to the
                               letter being received in the mail.
                               [Time Note Created : 7:30 AM ]
--------------------------------------------------------------------------------
```

R-0671

```
A625027340-0001-01 08/02/2007 LG STKANE
                    Letter dated 07/30/07 by Atty/Robt J. Rosati
                    rec'd via fax 07/30/07.
                    422007073000902821

                    This is in response to Mr. Stephan Kane's
                    letter of July 26, 2007. Ms. Gardner appealed
                    both the STD and LTD by letter dated July
                    19,2007. This serves to confirm that if Ms.
                    Gardner's STD benefits are reinstated, that her
                    LTD claim will be reviewed at the exhaustion of
                    her STD benefit period.
                    [Time Note Created : 4:19 PM ]
-----------------------------------------------------------------
A625027340-0001-01 08/02/2007 LG STKANE
                    While leaving vm for ee's atty regarding
                    process of SD appeal, AS incl vm verified if SD
                    benefits are reinstated thru SD EOB 52 wk
                    period, ee's LD claim will be re-evaluated by
                    LD team.
                    [Time Note Created : 4:20 PM ]
-----------------------------------------------------------------
A625027340-0001-01 08/03/2007 LG STKANE
                    Letter dated 07/30/07 by Atty/Robt J. Rosati
                    rec'd via mail 08/03/07.
                    4107080300312621

                    Duplicate letter as rec'd via fax 07/30/07 &
                    documented in LG note below dated 08/02/07.
                    [Time Note Created : 2:55 PM ]
-----------------------------------------------------------------
A625027340-0001-01 01/11/2008 LG STKANE
                    TCF Jill w/ERISA Law Group to determine at what
                    address they can physically serve law suit
                    against AT&T & benefit plan. AS trans caller to
                    IDM to discuss.
                    [Time Note Created :12:14 PM ]
-----------------------------------------------------------------
A625027340-0001-01 01/11/2008 LG DANM
                    Spoke with Jill (ERISA Law Group) at 12:11 PM
                    CT and advised that law suit could be directed
                    to PO Box as provided.  Unable to provide
                    street address.
                    [Time Note Created :12:16 PM ]
-----------------------------------------------------------------
A625027340-0001-01 01/11/2008 LG EMILYO
                    tpc from jill, attorney ofc, req AS. n/a vm
                    accepted and xfer complete.
                    [Time Note Created : 1:16 PM ]
-----------------------------------------------------------------
A625027340-0001-01 01/11/2008 LG STKANE
                    VM from RCT Jill w/ ERISA Law Group stating AS
                    had informed her AS has address to where she
                    can serve the lawsuit.

                    RCT Jill at 559-256-9800 ext 28. LVMTCB noting
                    the only address AS has is the address where
                    requests for copies of plan documents can be
                    obtained:
                    AT&T Services, Inc.
                    P.O. Box 29690
                    San Antonio, TX 78205
```

R-0672

```
Date: 02/28/2008  2:42pm           User: aarcher              Page:    46
==========================================================================
Claim Number : A625027340-0001-01                    Date Loss : 03/12/2006
Client      : 1632        -- AT&T Inc.
Account     : 16320730    -- TC - Ameritech Services, Inc
Unit        : TC065       -- INDUSTRY MARKETS
Claimant    : GARDNER, MELISSA
==========================================================================


---------------------------- NOTES ---------------------------------------

Event/Clmnt/Claim  Date     Tp Examiner
------------------  --------  --  -----------------------------------------

                    [Time Note Created : 1:35 PM ]
--------------------------------------------------------------------------
```

R-0673

(Page 1 of 194)

Date Recv'r: 11/08/2006

## AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406; Telephone 866-276-2278; Facsimile 866-224-4627

November 8, 2006

MELISSA GARDNER
124 PUTNAM STREET
E PEORIA, IL  61611

Re: Long Term Disability

Dear Ms. GARDNER:

According to our records, your Short Term Disability benefits expire 3/18/2007.  Under the provisions of the plan, your employment with AT&T may also end on that date.

In reviewing your case, we believe you may be eligible for long term disability benefits under your disability plan as of 3/19/2007.

In order to further evaluate your eligibility to receive long term disability (LTD) benefits, we ask that you sign and return the enclosed forms as soon as possible.

- Statement of claim - provides information needed in order to evaluate your claim for benefits including your current address, telephone number, date of birth and any other income you may be receiving.

- Medical Records Release - gives medical providers your permission to release medical information to the IDSC staff.  To be eligible for LTD benefits, medical information which supports your inability to work should be supplied by a physician.

- Agreement Concerning Long Term Disability Benefits - confirms that you understand that the LTD benefit is reduced by any amounts payable to you under Social Security Disability or Retirement, Pension and Workers' Compensation and that you are responsible for any overpayment made to you under the LTD Plan.

- Training, Education & Experience Statement - gives the IDSC background information about your education and work experience.  To be eligible for LTD benefits, you must be totally disabled as defined by your Long Term Disability plan.

- Authorization to Secure Award or Disallowance Information - gives the Social Security Administration your permission to release information about any award or denial to the IDSC

- W-4 Form - since disability benefits are subject to federal income tax, you will need to complete and return the W-4 form to the IDSC.

**R-0674**

Date Recv: 11/08/2006

- Electronic Funds Transfer Form – If your LTD claim is approved and if you have any payable benefits after the offsets to your benefits, this form affords you the opportunity to establish direct deposit of your monthly LTD check into your bank account.

We will continue to process your claim for LTD benefits pending the receipt of these completed and signed forms. To expedite our handling, you may sign and date the Medical Records Release and return it immediately in one of the enclosed envelopes, then take some additional time to complete the remaining forms. It is important that we receive your completed and signed forms within 14 days of this letter. Failure to provide this information in a timely manner could result in a delay of your long term disability claim determination. While returning this information will assist us in making a timely decision, it will in no way limit any return to work options available to you, should your condition improve. Two postage paid envelopes are enclosed for returning your signed forms.

After reviewing these forms, the AT&T Integrated Disability Service Center (IDSC), the LTD plan administrator, may request additional information and documentation to determine your eligibility for benefits. Your prompt attention to any correspondence from the center will help expedite the decision on your claim.

The disability plan under which you are covered requires that you provide to IDSC:

- Proof that you have applied for Social Security Disability benefits, such as a copy of the Receipt of Claim Form provided by the Social Security Administration.

- Information relative to the claim determination made by the Social Security Administration, such as a copy of the notification, award or check you receive.

You must apply for Social Security Disability benefits within 3 months of your LTD start date. If at that point, we have not received your proof of application, award, or denial, your LTD benefit will be reduced by an estimated amount of Social Security Disability benefits. If we have received your proof of application, your LTD benefit amount will not be impacted while you continue to qualify for Long Term Disability benefits under the Plan.

If you are approved for long term disability benefits, you will receive your payments monthly. Checks are payable on the last day of the month.

You may be entitled to other benefits, such as health, vision, dental, and life insurance benefits, based on your years of service and/or your long term disability status. If you need additional information, please contact AT&T Health Benefits Enrollment Center at 1-877-722-0020.

If you have questions regarding possible pension benefits please contact your Pension Administrator at 1-800-416-2363.

If you have any other questions about Long Term Disability, please call the AT&T Integrated

LTD Initial Packet

R-0675

Date Recv: 11/08/2006

Disability Service Center (IDSC) at 1-866-276-2278 between 8 a.m. and 5 p.m., Central Standard Time, Monday through Friday.

Sincerely,


Ratna Bagwe
AT&T Integrated Disability Service Center (IDSC)

LTD Initial Packet

(Page 4 of 194)

Date Recv: 11/08/2006

Long Term Disability Benefits

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Statement of Employee   This statement must be completed by the Employee

1.   Name (first, middle initial, last)

2.   Telephone Number                                    Social Security Number

(_____) _____ - _____      _____ Male _____ Female      _____ - _____ - _____
area code

3.   Residence Address

Street _____ City _____ State _____ Zip _____

4.   Current Address (if different from above)

5.   Date of Birth: _____   Height_____   Weight_____   Spouse's Date of Birth _____

Birth Date of all dependent Children:_____
(Dependent children are all unmarried children, (1) under age 18, (2) under age 19 if in elementary school, (3)
Handicapped children regardless of age if the disability began prior to age 22.)

6.   Occupation prior to onset of disability (Provide a brief description of the job activities, environment, unusual conditions, etc.)

7.   Date you were first disabled                    Are you now able to return to your job: _____ Yes _____ No
                                                      If yes, date you could return: _____

8.   If you are unable to return to your job are you able to perform some other job?
        _____ Yes _____ No      If yes, what type of job?_____

9.   Have you performed any type of work (either for another employer or through self-employment) since your disability began?
        _____ Yes _____ No
     If yes, provide the name and address of employer, type of work, when employment began, and numbers of hours worked per
     week._____

10.  Was an accident involved resulting in your disability? _____ Yes _____ No  If yes, provide the following information:

     Where and when did the accident occur? _____

     Have you filed for Workers' Compensation? _____ No Fault Auto Benefits? _____

11.  Name all physicians who have treated you since the beginning of this disability.
     Name of physician          Address of Physician (Include City, State, Zip)     Phone Number     Dates of
     Treatment

     _____   _____   _____   _____ to _____

     _____   _____   _____   _____ to _____

     _____   _____   _____   _____ to _____

12.  Were you hospital confined? _____Yes _____ No   If yes, provide the following information:
     Name of Hospital          Address of Hospital          Dates of Confinement

     _____   _____   _____ to _____

     _____   _____   _____ to _____

                                                      _____ to _____

13.  Describe any other income you are receiving or eligible to receive as a result of your disability.
     (Example: Social Security, Workers' Compensation, State Disability, Pensions)
     Source               Amount          Date Income Began     Date Income Ended

     _____   _____   _____   _____

     _____   _____   _____   _____

LTD Initial Packet

**R-0677**

Date Recv: 11/08/2006

## TRAINING, EDUCATION AND EXPERIENCE STATEMENT

Claimant's Name _____     Claim #: _____

In order to continue the evaluation of your claim, we need some additional information. Please complete this form to the best of your ability and return it to us in the enclosed envelope. Feel free to use an additional sheet of paper if you need more space. If you have questions, please do not hesitate to contact us.

### EDUCATIONAL BACKGROUND

Circle highest grade completed:

1   2   3   4   5   6   7   8          9   10   11   12          13   14   15   16

Circle highest degree earned:

High School

College

Graduate School

Degrees received/dates: _____

College majors: 1. _____  2. _____

List any other vocational or business courses completed with date of completion.

_____

_____

Were you in the Armed Forces:   YES   NO   Training in Armed Forces?_____

If yes, please provide dates: From _____ to _____

Branch of Service _____ Highest Rank_____ Specialty_____

### WORK EXPERIENCE

List chronologically all the jobs you have had over the past 15 years making sure to indicate:
1.   Type of work (Please be specific such as auto sales, accountant, clerk, laborer, etc.)
2.   Physical requirements (Lifting heavy boxes, standing, sitting, etc.)
3.   Supervisory experience

| Dates | Job Title | Tasks and Duties | Supervisory Experience |
|-------|-----------|------------------|------------------------|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

Do you speak a second language? If so, what language? _____

LTD Initial Packet

**R-0678**

Date Recv: 11/08/2006

1.       List computer courses you have taken: _____

          _____

2.       Computer software you are proficient with: _____

          _____

3.       Do you use the internet? _____

Please list additional office skills:

Typing             Yes _____      No _____          Words per minute _____

Dictaphone Transcription       Yes_____       No _____

Hobbies or additional skills:

_____

_____

Date _____          Signature _____

LTD Initial Packet

R-0679

Date Recv: 11/08/2006

## AUTHORIZATION FOR RELEASE OF PROTECTED HEALTH INFORMATION
### (DISABILITY BENEFITS/JOB ACCOMMODATION)

I, the undersigned, hereby authorize any person or facility that attends, treats or examines me to release all health information related to my request for reasonable job accommodation and/or my claim for short-term (including sickness and/or accident), long-term disability benefits and/or vocational rehabilitation benefits under my participating company's disability benefits plan.

This health information consists of medical, psychological and/or psychiatric information, records and reports (including HIV/AIDS) and may include, but is not limited to, medical history, chart notes, consultation, prescriptions or treatment, diagnostic test results, x-ray reports, copies of all hospital or medical summaries or reports and records that pertain to the payment of claims.

My health information is to be made available, upon request, to the AT&T Integrated Disability Service Center or its representative. The AT&T Integrated Disability Service Center may release my health information to any person or facility that attends, treats, examines me or impacts determination of my eligibility for reasonable job accommodation, workers' compensation and/or disability benefits, or coordinates my health insurance benefits, or to the Social Security Administration or to a social security, vocational rehabilitation vendor, or to compliance investigatory personnel to the extent all or any of such health information is considered by AT&T Integrated Disability Service Center or its representative to be relevant to the determination of my claim. I understand that after this information is disclosed, federal law might not protect it and the recipient might disclose this information.

I understand and agree that the signing of this authorization is a pre-condition to my receiving a reasonable job accommodation and/or disability benefits and that this authorization relates to my request for such reasonable job accommodation and/or disability benefits.

I further understand that I have the right to revoke this authorization at any time by submitting a revocation request in writing to the attention of the Office Services Manager, AT&T Integrated Disability Service Center, P.O. Box 61569, King Of Prussia, PA 19406, Fax number 1-866-224-4627. This revocation will be effective after receipt, review and processing on a prospective basis only. I understand that my revocation of this authorization shall terminate my right to receive prospectively additional disability benefits, but shall not affect my right to disability benefits to which I was entitled during the period this authorization was in effect. Moreover, I understand that the revocation of this authorization may result in denial of any pending request for a reasonable job accommodation, and/or discontinuance of a job accommodation that is already in place.

Absent my revocation, this authorization shall remain valid for the duration of my claim for a reasonable job accommodation and/or short-term disability benefits and/or vocational rehabilitation benefits. If my claim is for long-term disability benefits, then, absent my revocation, this authorization shall remain valid for one year from the date I sign this authorization.

I understand that I have a right to request and receive a copy of this authorization. A photocopy of this authorization shall be valid and is to be accepted with the same effect as the original.

Printed Name of Employee: _____

Social Security Number of Employee: _____

Signature of Employee or Personal
Representative: _____   Date: _____

If a personal representative executes this form, that representative warrants that he or she has the authority to act on behalf of the employee in signing this form and that the basis for this authority is as follows: _____

(Attach documentation that evidences the authority to act as a personal representative.)

LTD Initial Packet

**R-0680**

(Page 8 of 194)

Date Recv'r: 11/08/2006

## AGREEMENT CONCERNING LONG TERM DISABILITY INCOME BENEFITS

I, _____ acknowledge that if my disability claim is or has been approved, under my long term disability insurance coverage, the AT&T Integrated Disability Service Center (IDSC) is authorized to reduce the benefits otherwise payable to me by certain amounts paid or payable to me under disability or retirement provisions of the Social Security Act under a Worker's Compensation or any Occupational Disease Act or Law, and under any State Compulsory Disability Benefit Law, or any other act or law of like intent.

I understand that, if my disability claim is or has been approved, the IDSC is willing to make advance monthly disability payments to me, which because of amounts paid or payable under the laws described above may be in excess of the benefits actually due to me. However, I also understand and accept that the IDSC will make these payments only if I make certain statements which I represent and warrant to be true and only if I agree as follows:

1.  I have not received and am not receiving any payments under the laws described above, whether in the form of benefit payments or a compromise settlement.

2.  If I have not already applied for Social Security benefits, then I agree to do so in ninety (90) days after I have received my first monthly benefit check from the IDSC. As proof of this, I agree to send to the IDSC a copy of the Receipt of Claim Form given to me by the Social Security Administration at the time of my application.

3.  I agree to appeal any denials of SSDI benefits by the Social Security Administration until I receive a decision from an Administrative Law Judge.

4.  I understand that Disability Benefits under the LTD Plan will be reduced by the amount payable for any period of time for which I am eligible for or receive primary Disability Benefits under the Social Security Act on my own account.

5.  Pending adjudication of my claim for Social Security Disability Insurance Benefits, I hereby request the IDSC to postpone deducting from my Long Term Disability Monthly Benefits the monthly amount of such primary Social Security Disability Insurance Benefits for which I am or may be eligible or entitled.

6.  When I receive any disability or retirement payments under the laws described above resulting from my disability, I agree to notify the IDSC immediately by sending a copy of the award, notification or check to the IDSC.

7.  After the IDSC has recalculated my monthly benefit payment and has determined the amount of the overpayment, I agree to repay the IDSC in full any and all such amounts which the IDSC has advanced to me in reliance upon this Agreement within thirty days.

8.  I agree that if the aforementioned request is granted, I will reimburse the IDSC in full for any postponed deductions immediately upon receipt from the Social Security Administration of any retroactive primary Disability Insurance Benefits to the full amount thereof.

9.  I understand and agree that in the event of my failure to reimburse the IDSC in full per this Agreement, the IDSC may recoup the amount of the overpayment by withholding or reducing future benefit payments.

I understand that the IDSC is not required to make these advances, but when it issues an advance, the IDSC is relying on my statements and agreements herein. My acceptance of an advance, along with my signature below, is my acceptance of terms of this Agreement.

_____          _____          _____          _____
Witness' Signature                         Date                        Claimant's Signature                         Date

Claimant's Name _____

Claimant's Address _____

_____

LTD Initial Packet

R-0681

Date Recv: 11/08/2006

## AT&T Integrated Disability Service Center (IDSC)
### ATTN: LTD
### P.O. Box 61569
### King of Prussia, PA 19406

### AUTHORIZATION FORM FOR ELECTRONIC
### FUNDS TRANSFER OF DISABILITY PAYMENTS

Employee:_____

Social Security #:_____

I authorize Sedgwick to send my disability payments to the bank designated below for electronic deposit in my account. I understand that I may terminate this arrangement by notifying AT&T Integrated Disability Service Center (IDSC) by writing to the address shown above.

If any overpayment of such disability payments is credited to my account in error, I authorize and direct the bank to charge my account and to refund such payment directly to IDSC.

Please complete the following:

Type of Account:    Checking_____    Savings_____
Account Number: _____

Name of Bank: _____
Address of Bank: _____
_____
_____
Bank Telephone: _____
Bank Routing Number: _____


_____    _____
Date         Signature

Please Attach a Voided Check

## Thank You

LTD Initial Packet

**R-0682**

MELISSA GARDNER-Claim-A625027340000101                                Page 1 of 1

## MedManager

**From:**     Winters, Sandra [SWinters@sedgwickcms.com]
**Sent:**     Wednesday, November 08, 2006 2:01 PM
**To:**       outbound.IDSC
**Subject:** MELISSA GARDNER-Claim-A625027340000101

Please mail LTD application 1 regular mail and 1 certified mail with return receipt.  Also, please include 2 return envelopes along with the Social Security Disability Assistance Program brochure.  Thanks.

Sandra Winters
Claims Assistant
Sedgwick Claims Management Services, Inc.
Phone: 312-356-1838
E-mail: swinters@sedgwickcms.com

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

11/8/2006

Date Recv: 11/08/2006

**U.S. Postal Service** (TM)
**CERTIFIED MAIL** (TM) **RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

11/8/06

Sent To: Melissa Gardner
Street, Apt. No.; or PO Box No.
City, State, ZIP+4  240822A

7006 2150 0003 0145 4794

Date Recv: 11/08/2006

R-0684

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Melissa Gardner
124 Putnam St
E Peoria IL 61611

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Melissa Gardner_    ☐ Agent    ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery
Melissa Gardner    11-13-06

D. Is delivery address different from item 1?    ☐ Yes
   If YES, enter delivery address below:    ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7006 2150 0003 0145 4794

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

Date Recv: 11/08/2006

R-0685

# AT&T Integrated Disability Service Center
*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406; Telephone 866-276-2278; Facsimile 866-224-4627

November 28, 2006

Melissa Gardner
124 Putnam Street
E Peoria, IL  61611

RE:    Long Term Disability
       Claim #: A625027340-0001-01

Dear Ms. Gardner:

I attempted to call you on several occasions, but was unable to reach you.

I am your new case manager for your Long Term Disability claim. I would like to speak to you to provide you with some additional information and to ask some questions.

Please call me as soon as possible at 1-866-276-2278, between 7:30 a.m. and 3:30 p.m., Central Time, Monday through Friday.

Sincerely,

Jennie Ringo
LTD Case Manager
AT&T Integrated Disability Service Center (IDSC)

Date Recv: 11/28/2006

R-0686

Melissa Gardner - A625027340-0001-01                                    Page 1 of 1

## MedManager

| | |
|---|---|
| **From:** | Ringo, Jennie [jringo@sedgwickcms.com] |
| **Sent:** | Tuesday, November 28, 2006 3:46 PM |
| **To:** | outbound.IDSC |
| **Subject:** | Melissa Gardner - A625027340-0001-01 |

<<callmeltr ltd.doc>>
Thanks.

Jennie Ringo
LTD Case Manager
AT&T Integrated Disability Service Center
As Administered by Sedgwick, CMS
jringo@sedgwickcms.com
312-356-0035

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

11/28/2006

R-0687

Date Recv: 11/28/2006

**AT&T Integrated Disability Service Center**

*As Administered by Sedgwick CMS*

P.O. Box 61569; King of Prussia, PA; 19406; Telephone 866-276-2278; Facsimile 866-224-4627

January 22, 2007

Melissa Gardner
124 Putnam Street
E Peoria, IL 61611

Re:   Ameritech Long Term Disability Plan
      Long Term Disability Claim #: A625027340-0001-01

Dear Ms. Gardner:

Please be advised that after a careful and thorough review of your request for payment of long term disability (LTD) benefits, it has been determined that your claim does not qualify for payment under the Ameritech Long Term Disability Plan (the "Plan"). As a result, LTD benefits are denied effective March 19, 2007.

Section 2.11 of the Ameritech Long Term Disability Plan (the "Plan") defines the Waiting Period as:

> "Waiting Period" shall mean the 26 week or 52 week period for which Sickness Disability Benefits under the Ameritech Sickness and Accident Disability Benefit Plan are payable and for which no benefits are payable under this Plan.

Your claim for sickness disability benefits under the Ameritech Sickness and Accident Disability Benefits Plan (the SADBP) was terminated effective January 19, 2007 due to the denial of your sickness benefits. This was prior to completion of the 52 week waiting period. Since you did not complete the full 52 week period for which sickness disability benefits were payable under the SADBP, you do not meet the Plan provision and your claim for LTD benefits has been denied.

If you disagree with our determination, you or your authorized representative may appeal the determination by submitting a written appeal within 180 days after you receive this denial notice. Enclosed is a copy of the appeal procedure and the appeal form. In your appeal, please state the reason(s) you believe your claim should not be denied. You may also submit additional medical or vocational information, and any facts, data, questions or comments you deem appropriate for us to give your appeal proper consideration. Your appeal and supporting documentation should be submitted to:

<div align="center">

AT&T IDSC Quality Review Unit
P.O. Box 61568
King Of Prussia, PA 19406
Fax: 1-866-856-5065

</div>

You shall be provided, upon written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your claim for benefits.

07-A-27 AIT LTD Not meet waiting period

«EE_Name»
January 22, 2007

"Please note that your file may be supplemented after we respond to your request for relevant documents and such further information will be provided to you upon your future request(s)."

You have a right to bring a lawsuit against the Plan under Section 502(a) of the Employee Retirement Income Security Act of 1974 (ERISA) for denied benefits you believe are due to you, but only after you complete the appeal process as enumerated in the enclosed appeal procedures and in the Plan's claim procedures, and your appeal has been denied.

Questions regarding your appeal may be referred to the AT&T Integrated Disability Service Center (IDSC) Quality Review Unit at 1-866-276-2278.

If you have any questions regarding your health coverage, please contact AT&T Health Benefits Enrollment Center at 1-877-722-0020.

If you have any questions regarding your claim, please contact me at 1-866-276-2278.

Sincerely,

Jennie Ringo
LTD Case Manager
AT&T Integrated Disability Service Center (IDSC)

cc: File

Date Recv: 01/22/2007

07-A-27 AIT LTD Not meet waiting period

R-0689

Denial - Melissa Gardner - A625027340-0001-01                          Page 1 of 1

Date Recv: 01/22/2007

## MedManager

| | |
|---|---|
| **From:** | Ringo, Jennie [Jennie.Ringo@sedgwickcms.com] |
| **Sent:** | Monday, January 22, 2007 4:27 PM |
| **To:** | outbound.IDSC |
| **Subject:** | Denial - Melissa Gardner - A625027340-0001-01 |

Please enclose 180 day appeals packet.
Send regular & certified mail.

<<melis gardner.doc>>

Thanks.


Jennie Ringo
LTD Case Manager
AT&T Integrated Disability Service Center
As Administered by Sedgwick, CMS
jringo@sedgwickcms.com
312-356-0035

The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

1/22/2007



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Melissa Gardner_      ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

_Melissa Gardner_

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

1. Article Addressed to:

Melissa Gardner
124 Putnam Street
E. Peoria, IL 61611

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7006 2760 0003 9947 6570

Domestic Return Receipt

Date Recv: 01/22/2007

(Page 20 of 194)

Jun 27 2007 10:04AM    HP LASERJET FAX                                    p.1



**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (888) 883-7472
Facsimile: (559) 256-9795

June 27, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes – Administrator

AT & T Integrated Disability Service Center        *VIA TELEFAX (866)224-4627*
PO Box 14627                                       *AND U.S. MAIL*
Lexington, KY 40512

Claimant:        Melissa Gardner
Employer:        AT & T

To whom it May Concern:

I represent Ms. Melissa Gardner ("Claimant") in the above referenced matter. By letter dated January 19, 2007, Ms. Gardner's Long Term Disability benefits were denied.

In your January 19, 2007 letter you wrote that Claimant has a 180 day appeal period. At this time I am requesting a copy of your records so that I can file an appeal of the denial, which I calculate is due on July 17, 2007. Please advise if you disagree with my calculations.

Pursuant to 29 CFR Section 2560.503-1 I am requesting that you provide to me, free of charge, copies of all documents, records and other information relevant to Claimant's claim for benefits. As you know, a document, record or other information is relevant to a claimant's claim if such document, record or other information was relied upon in the making of the benefits termination; was submitted, considered, or generated in the course of making the benefit determination, without regard to whether it was relied in making the benefit determination; demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of Section 2560.503-1; or constitutes a statement of policy or guidance with respect to the plan concerning the benefit without regard to whether such advise or statement was relied upon in making the benefit determination. I also request free of charge a copy any internal rule, guideline, protocol, or other similar criterion that was relied upon in making the adverse determination. Finally, you are required to have claims procedures that contain administrative processes and safeguards designed to insure and to verify that benefit claims determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. Please provide all applicable and relevant claims procedures regarding this claim.

In accordance with the foregoing legal standards, my request for copies of documents includes, but is not limited to:

4220070627479003                    A525017562000101                    06/27/2007

R-0693

AT & T Integrated Disability Service Center
June 27, 2007
Page 2

1.    All documents obtained by you from any source at any time in evaluating Claimant's claim for benefits.

2.    Claimant's claim for benefits.

3.    All documents requesting authorizations to obtain Claimant's medical records.

4.    All documents showing efforts to obtain Claimant's medical records.

5.    All medical records obtained regarding the Claimant.

6.    All documents setting forth any reviews or analysis of Claimant's medical records.

7.    All documents setting forth Claimant's job descriptions, job duties, and/or any other efforts to determine exactly what the claimant did.

8.    All communications between you and Claimant's employer.

9.    All records of all communications between you and Claimant.

10.    All documents demonstrating or setting forth any all efforts to determine Claimant's ability to perform Claimants job or any other job for which Claimant is reasonably fitted by education, training, or experience.

11.    The plan, with all amendments.

12.    To the extent not otherwise provided, a copy of your entire file and all other files regarding or referencing claims by this Claimant.

Enclosed please find a copy of the claimant's authorization for me to handle her insurance claim.

Very truly yours,

Robert J. Rosati

RJR/caf

cc:   Melissa Gardner

4220070627479003                    A525017562000101                    06/27/2007

R-0694

Jun 27 2007 10:04AM  HP LASERJET FAX                          p.3

### CLIENT DESIGNATION OF ATTORNEY
### TO HANDLE INSURANCE CLAIM

April 4, 2007

To:    Sedgwick Claims Management Services, Inc.

Attention:          Disability Claims Manager

Claimant:           Ms. Melissa Gardner
Policy Number:

Pursuant to Title 10, Section 2695.2(e) of the California Code of Regulations, I authorize my attorneys, Thornton Davidson and Robert J. Rosati to handle the claim of Ms. Melissa Gardner, under the above-captioned loss, and to obtain a copy of her records from the insurance company.

This authorization shall be valid for only one (1) year from the date below unless renewed or revoked by the undersigned. Any and all prior authorizations are hereby revoked by the undersigned as of the date of this authorization.

DATED: _April 5, 2007_                    _Melissa Gardner_
                                          MELISSA GARDNER

Address and Telephone Number of Insured:

124 Putnam Street
East Peoria, IL 61611

(309) 256-9393



**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721



FRESNO CA 937

27 JUN 2007  PM 2 T

AT & T Integrated Disability Service Center
PO Box 14627
Lexington, KY 40512

40512+4627

4107070299 0203

07/02/2007

R-0696



## ERISA LAW GROUP LLP
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:     (888) 883-7472
Facsimile: (559) 256-9795

June 27, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes • Administrator

AT & T Integrated Disability Service Center
PO Box 14627
Lexington, KY 40512

*VIA TELEFAX (866)224-4627*
*AND U.S. MAIL*

Claimant:      Melissa Gardner
Employer:      AT & T

To whom it May Concern:

I represent Ms. Melissa Gardner ("Claimant") in the above referenced matter. By letter dated January 19, 2007, Ms. Gardner's Long Term Disability benefits were denied.

In your January 19, 2007 letter you wrote that Claimant has a 180 day appeal period. At this time I am requesting a copy of your records so that I can file an appeal of the denial, which I calculate is due on July 17, 2007. Please advise if you disagree with my calculations.

Pursuant to 29 CFR Section 2560.503-1 I am requesting that you provide to me, free of charge, copies of all documents, records and other information relevant to Claimant's claim for benefits. As you know, a document, record or other information is relevant to a claimant's claim if such document, record or other information was relied upon in the making of the benefits termination; was submitted, considered, or generated in the course of making the benefit determination, without regard to whether it was relied in making the benefit determination; demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of Section 2560.503-1; or constitutes a statement of policy or guidance with respect to the plan concerning the benefit without regard to whether such advise or statement was relied upon in making the benefit determination. I also request free of charge a copy any internal rule, guideline, protocol, or other similar criterion that was relied upon in making the adverse determination. Finally, you are required to have claims procedures that contain administrative processes and safeguards designed to insure and to verify that benefit claims determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. Please provide all applicable and relevant claims procedures regarding this claim.

In accordance with the foregoing legal standards, my request for copies of documents includes, but is not limited to:

41070702990203

07/02/2007

R-0697

AT & T Integrated Disability Service Center
June 27, 2007
Page 2

1.  All documents obtained by you from any source at any time in evaluating Claimant's claim for benefits.

2.  Claimant's claim for benefits.

3.  All documents requesting authorizations to obtain Claimant's medical records.

4.  All documents showing efforts to obtain Claimant's medical records.

5.  All medical records obtained regarding the Claimant.

6.  All documents setting forth any reviews or analysis of Claimant's medical records.

7.  All documents setting forth Claimant's job descriptions, job duties, and/or any other efforts to determine exactly what the claimant did.

8.  All communications between you and Claimant's employer.

9.  All records of all communications between you and Claimant.

10. All documents demonstrating or setting forth any all efforts to determine Claimant's ability to perform Claimants job or any other job for which Claimant is reasonably fitted by education, training, or experience.

11. The plan, with all amendments.

12. To the extent not otherwise provided, a copy of your entire file and all other files regarding or referencing claims by this Claimant.

Enclosed please find a copy of the claimant's authorization for me to handle her insurance claim.

Very truly yours,

Robert J. Rosati

RJR/caf

cc:   Melissa Gardner

CLIENT DESIGNATION OF ATTORNEY
TO HANDLE INSURANCE CLAIM

April 4, 2007

To:   Sedgwick Claims Management Services, Inc.

Attention:          Disability Claims Manager

Claimant:           Ms. Melissa Gardner
Policy Number:

Pursuant to Title 10, Section 2695.2(e) of the California Code of Regulations, I authorize my attorneys, Thornton Davidson and Robert J. Rosati to handle the claim of Ms. Melissa Gardner, under the above-captioned loss, and to obtain a copy of her records from the insurance company.

This authorization shall be valid for only one (1) year from the date below unless renewed or revoked by the undersigned. Any and all prior authorizations are hereby revoked by the undersigned as of the date of this authorization.

DATED: _April 5, 2007_            _Melissa Gardner_
                                   MELISSA GARDNER

Address and Telephone Number of Insured:

124 Putnam Street
East Peoria, IL 61611

(309) 256-9393

R-0699

(Page 27 of 194)

Jul 09 2007 10:24AM  HP LASERJET FAX                              p.1



## ERISA LAW GROUP LLP
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (888) 683-7472
Facsimile: (559) 256-9795

July 9, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

AT & T Integrated Disability Service Center          *VIA TELEFAX (866)224-4627*
PO Box 14627                                         *AND U.S. MAIL*
Lexington, KY 40512

| | |
|---|---|
| Claimant: | Melissa Gardner |
| Employer: | AT & T |
| RE: | Short Term Disability (STD) and Long Term Disability (LTD) |

To whom it May Concern:

I represent Ms. Melissa Gardner ("Claimant") in the above referenced matter. By letter dated January 22, 2007, Ms. Gardner's Long Term Disability benefits were denied effective March 19, 2007.

In your January 22, 2007 letter you wrote that Claimant has a 180 day appeal period. At this time I am requesting a copy of your records so that I can file an appeal of the denial, which I calculate is due on July 21, 2007. Please advise if you disagree with my calculations.

Pursuant to 29 CFR Section 2560.503-1 I am requesting that you provide to me, free of charge, copies of all documents, records and other information relevant to Claimant's claim for benefits. As you know, a document, record or other information is relevant to a claimant's claim if such document, record or other information was relied upon in the making of the benefits termination; was submitted, considered, or generated in the course of making the benefit determination, without regard to whether it was relied in making the benefit determination; demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of Section 2560.503-1; or constitutes a statement of policy or guidance with respect to the plan concerning the benefit without regard to whether such advise or statement was relied upon in making the benefit determination. I also request free of charge a copy any internal rule, guideline, protocol, or other similar criterion that was relied upon in making the adverse determination. Finally, you are required to have claims procedures that contain administrative processes and safeguards designed to insure and to verify that benefit claims determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. Please provide all applicable and relevant claims procedures regarding this claim.

R-0700

Jul 09 2007 10:24AM    HP LASERJET FAX                         P.2

AT & T Integrated Disability Service Center
July 9, 2007
Page 2

    In accordance with the foregoing legal standards, my request for copies of documents includes, but is not limited to:

1.    All documents obtained by you from any source at any time in evaluating Claimant's claim for benefits.

2.    Claimant's claim for benefits.

3.    All documents requesting authorizations to obtain Claimant's medical records.

4.    All documents showing efforts to obtain Claimant's medical records.

5.    All medical records obtained regarding the Claimant.

6.    All documents setting forth any reviews or analysis of Claimant's medical records.

7.    All documents setting forth Claimant's job descriptions, job duties, and/or any other efforts to determine exactly what the claimant did.

8.    All communications between you and Claimant's employer.

9.    All records of all communications between you and Claimant.

10.   All documents demonstrating or setting forth any all efforts to determine Claimant's ability to perform Claimants job or any other job for which Claimant is reasonably fitted by education, training, or experience.

11.   The plan, with all amendments.

12.   To the extent not otherwise provided, a copy of your entire file and all other files regarding or referencing claims by this Claimant.

    Enclosed please find a copy of the claimant's authorization for me to handle her insurance claim.

                    Very truly yours,

                    Robert J. Rosati

RJR/caf

cc:   Melissa Gardner

Jul 09 2007 10:24AM    HP LASERJET FAX                          p.3

CLIENT DESIGNATION OF ATTORNEY
TO HANDLE INSURANCE CLAIM

April 4, 2007

To:    Sedgwick Claims Management Services, Inc.

Attention:         Disability Claims Manager

Claimant:          Ms. Melissa Gardner
Policy Number:

Pursuant to Title 10, Section 2695.2(c) of the California Code of Regulations, I authorize my attorneys, Thornton Davidson and Robert J. Rosati to handle the claim of Ms. Melissa Gardner, under the above-captioned loss, and to obtain a copy of her records from the insurance company.

This authorization shall be valid for only one (1) year from the date below unless renewed or revoked by the undersigned. Any and all prior authorizations are hereby revoked by the undersigned as of the date of this authorization.

DATED: April 5, 2007

MELISSA GARDNER

Address and Telephone Number of Insured:

4220070709458804 Putnam Street                              07/09/2007

R-0702

ERISA LAW GROUP LLP

ROBERT J. ROSATI, ESQ.

2055 SAN JOAQUIN STREET

FRESNO, CA 93721


RE: MELISSA GARDNER

CLAIM NUMBER: A625027340-0001-01


DEAR MR. ROSATI:


This letter serves to acknowledge receipt of your written request for information relevant to claim number A625027340-0001-01. Your request was received at the AT&T Integrated Disability Service Center on JUNE 27, 2007.


Within 14 calendar days, we will forward to you a packet containing copies of all relevant file documents.


If you have any questions regarding this matter, please contact the AT&T Integrated Disability Service Center at 1-866-276-2278.


Sincerely,

Administrative Services

AT&T Integrated Disability Service Center

07/09/2007 12:02:24 PM −0500 SEDGWICK CMS                    PAGE 1    OF 3

Sedgwick Claims Management Services, Inc.

To:            idsc-sir
Fax Number:    8598256888

From:          Archer, Audrey X.
Fax Number:

Date:          July 09, 2007
Subject:       Melissa Gardner - A625027340-0001-01

Memo:

July 9, 2007

***CONFIDENTIALITY NOTE***

The information contained in this facsimile message may be legally privileged
and confidential information intended only for the use of the individual or
entity named above. If the reader of this message is not the intended recipient,
you are hereby notified that any dissemination, distribution, or copying of this
telecopy is strictly prohibited. If you have received this telecopy in error,
please notify us immediately by calling the number listed above and return the
original message to us at the address above by the United States Postal Service.

4220070709430606              A625027340000101                    07/09/2007

R-0705

07/12/2007 11:44:55 AM          SEDGWICK CMS                    PAGE 1    OF 3

Sedgwick Claims Management Services, Inc.

To:              idsc-sir
Fax Number:      8598256888

From:            Archer, Audrey X.
Fax Number:

Date:            July 12, 2007
Subject:         Melissa Gardner - A625027340-0001-01

Memo:

July 12, 2007

***CONFIDENTIALITY NOTE***

The information contained in this facsimile message may be legally privileged
and confidential information intended only for the use of the individual or
entity named above. If the reader of this message is not the intended recipient,
you are hereby notified that any dissemination, distribution, or copying of this
telecopy is strictly prohibited. If you have received this telecopy in error,
please notify us immediately by calling the number listed above and return the
original message to us at the address above by the United States Postal Service.

4220070712440906              A625027340000101                    07/12/2007

R-0706

(Page 34 of 194)

07/12/2007 11:44:55 AM        SEDGWICK CMS                PAGE 2    OF 3

ERISA LAW GROUP LLP

ROBERT J. ROSATI, ESQ.

2055 SAN JOAQUIN STREET

FRESNO, CA  93721

RE:    MELISSA GARDNER

CLAIM NUMBER:  A625027340-0001-01

DEAR MR. ROSATI:

This letter, along with the enclosures, serves as our response to your
written request for information relevant to claim number
A625027340-0001-01.   Your request was received at AT&T IDSC on JUNE 27,
2007.

You will find that the attached packet contains a copy of your file per
your request.  If you have any questions regarding this matter, please
contact AT&T IDSC at 1-866-276-2278.

        Requests for copies of the plan and/or SPD should be made in
writing to:

4220070712440906   AT&T Services, Inc.        A625027340000101                07/12/2007

R-0707

07/12/2007 11:44:55 AM          SEDGWICK CMS                PAGE 3    OF 3

P. O. Box 29690

San Antonio, Texas 78229

Sincerely,

Administrative Services

AT&T Integrated Disability Service Center as Administered by Sedgwick
CMS

4220070712440906                   A625027340000101                   07/12/2007

R-0708



## ERISA LAW GROUP LLP
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (559) 256-9800
Facsimile: (559) 256-9795

July 19, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 691568
King Of Prussia, PA 19406

*VIA FACSIMILE: 866-856-5065
AND U. S. MAIL*

Re:   *Melissa Gardner*
Claim No.:   A625027340-0001-01

To Whom it May Concern:

### A.   Introduction

This is the appeal of the termination of Ms. Gardner's sickness disability benefits under the Ameritech Sickness and Accident Disability Benefits Plan and the denial of her application to apply for long term disability benefits through the Ameritech Long Term Disability Plan (collectively "the Plans"). Ms. Gardner's sickness disability benefits were terminated effective January 19, 2007, and consequently, her long term disability benefits claim was denied.

Ms. Gardner suffers from multiple back problems, including degenerative disc disease, crushed discs, ruptured, bulging discs and annular tears. She ceased working in March, 2006. She received sickness benefits through January 19, 2007.

### B.   Policy Definitions

The Plans have the following pertinent definitions:

Section 2.11 of the long term disability plan defines the waiting period as:

"'Waiting Period' shall mean the 26 weeks or 52 week period for which Sickness Disability Benefits under the Ameritech Sickness and Accident Disability Benefit Plan are payable and for which no benefits are payable under this Plan."

Section 2, paragraph 2.4 of the Sickness and Accident plan defines disability as:

Jul 19 2007 2:50PM    HP LASERJET FAX                          p.3

Review Unit
July 19, 2007
Page 2

      "'Disability' or 'Disabled' during the period of 52 weeks immediately following the Waiting Period following the Waiting Period shall mean a sickness or injury or injury, supported by objective medical documentation, that prevents the Eligible Employee from performing the duties of his/her last Company or Participating Company-assigned job with or without reasonable accommodation (as determined by the Company or its delegate) or any other job assigned by the Company or Participating Company for which the Eligible Employee is qualified with or without reasonable accommodation (as determined by the Company or its delegate). For the purposes of this Plan, disabilities associated with pregnancy shall be considered disabilities due to sickness."

**C.**    **Basis for Appeal**

1.    The Plans's conclusion that Ms. Gardner is no longer disabled is based on clearly erroneous findings of fact: there is simply no supporting evidence for that conclusion. The evidence clearly establishes that Ms. Gardner is totally disabled and is entitled to benefits.

2.    The Plans failed to address the multiple medications Ms. Gardner is on and the effects those medications have on her ability to function, much less work.

3.    The Plans failed to consider pain as a disabling condition.

4.    The entire review of Ms. Gardner's claim was inherently unfair. AT&T hired MCN – a biased service – to obtain a "independent" medical review; MCN, in turn, hired Dr. Steven Delheimer – also a biased evaluator – to perform an IME. Delheimer was asked the "wrong questions" and therefore did not address the issues presented, although it is clear from Delheimer's <u>objective</u> findings that Ms. Gardner is totally disabled.

5.    The Plans failed to provide the documents requested, and required to be provided to me in order to comply with regulatory requirements regarding fair claims and appeal practices.

Each of these grounds will be addressed.

4220070720001321        A625027340000101        07/20/2007

R-0710

Review Unit
July 19, 2007
Page 3

**D.**   <u>**Ms. Gardner's Evidence**</u>

1.   <u>Ms. Gardner's Medical Evidence</u>

3/13/06:   ER. Intractable back pain. More comfortable when she is in the left lateral decubitus position with her knees drawn to her chest. Increasing pain with both sitting as wells as leaving her legs supine.

3/14/06:   MRI. Degenerative disc disease evident by mild degenerative dehydration and loss of disc space height of the L3-L4, L4-L5, and L5-S1 discs. This is associated with posterior central annular tears of the L3-L4, and L5-L5 discs.

4/16/06:   CT. Evidence fo disruption of the L4-L5 disc annulus posteriorly with extesion of contrast to the posterior annulus near the midline into the epidural space and also to the left along the left.

4/20/06:   L4-L5 Diskogram. Concordant 7 out of 10 pain demonstrated with injection of the L4-5 disc space. There is also significant diminished disc turgor at this level and evidence of penetration of contrast at least into, if not through, the annular region posteriorly.

4/17/06:   Chien. Midline epidural steroid injection.

5/3/06:   Chien: Ruptured L4 disc and bilateral lumbar radiculopathy. She cannot stand or sit for any period more than three minutes. She is completely disabled from all work at the current time. Waiting for consult re: L4 disc replacement v. fusion.

6/16/06:   Miller: MRI of March 14, 2006 revealed an L4-5 annular tear. After prolonged walking she develops burning in her back. She has numbness in the fingers of both. EMG revealed mild to moderate denervation of ulnar nerve of the bilateral elbows distally. Mild bilateral L4 radiculopathies in the lower extremities. Continue pain regimen.

7/24/06:   L4-5 intradiscal block and diskography.

8/4/06:   Dr. Dinh: Melissa Gardner's pain is constant and rated at 9/10 with some improvement while in the water. Pain returns after 30 minutes. She had an intradiscal block by Dr. Chien with pain relief for 15 minutes after L4-5 block.

8/9/06:   Chien: Ms. Gardner's disability centers on the need for disc replacement. The underlying condition will not change in a year, a month, or a week.

Jul 19 2007 2:50PM    HP LASERJET FAX                                    p.5

Review Unit
July 19, 2007
Page 4

1/30/07:    Chien: "Ms. Gardner is still disabled from work. She has an open L4-5 disc
            demonstrated at 4/25/06 discogram and has concordant history and symptoms.
            On exam today her straight leg raising is positive on the right at 10 degrees and on
            the left 30 degrees. She is unable to arise even from a chair without a 25 pound
            hand assist. She has to roll to erect from bed. She should NOT work until she has
            found surgical intervention. Our local surgical community, now have experienced
            Phase II clinical trial of the Charite disc, feels strongly that she should wait for the
            release of this product. The distribution of her pain is not conducive to Dorsal
            Column Stimulator suppression. Although she could be fused, I have to defer to
            our surgical opinion. She still cannot sit or stand for any period of more than 3
            minutes, which is hardly compatible with the workplace."

    2.    <u>Ms. Gardner's Condition</u>

        Ms. Gardner's condition has severely limited her daily activities. She wakes up in pain,
    gets out of bed, goes to kitchen, takes medication, lies down in a recliner in living room with
    bowl of cereal, where she lies still for at least a couple of hours until the medicine has time to
    ease some of her pain. She continue to stay in the recliner until lunch. She will go back to
    kitchen and get something for lunch and return to her recliner until dinner time. She sits at their
    kitchen table long enough to eat dinner with her family and then return to the recliner until bed
    time. She will take a shower or bath, take her medication and go to bed with heating pad for her
    back pain.

        Ms. Gardner's pain and discomfort are present almost 100% of the day and night. It
    would not, and does not allow her to function normally. The medication she takes to help control
    the excruciating pain renders her unable to drive, work or function on her own. She depends on
    her two children (ages 7 & 13 years) to help on a day to day basis, because she is unable to do for
    herself. Other than doctors appointments, and occasionally going somewhere with her family she
    rarely leaves her home.

    3.    <u>Ms. Gardner's Medications</u>

| <u>Medication</u> | <u>Dosage</u> | <u>Side-Effects</u> |
|---|---|---|
| Lyrica | 75 mg | Confusion, loss of coordination, muscle aches, pain, muscle aches, tenderness, weakness |
| Nabumetone | 500 mg | Confusion, numbness in arms or legs, selling in hands, legs or feet, persistent stomach pain, unusual joint or muscle pain, unusual tiredness or weakness, loss of appetite |

Review Unit
July 19, 2007
Page 5

| Tramadol | 50 mg | Constipation, diarrhea, drowsiness, nausea, loss of appetite |
| Hydrocodone | 7.50/500 mg | Anxiety, dizziness, headache, stomach pain, trouble sleeping, weakness, loss of appetite |
| Ambien | 10 mg | Drowsiness, dizziness |
| Imitrex injection | 6 mg q 2hrs | Drowsiness, dizziness, nausea |

E.    **The Plan' Medical Evidence**

1.    **Ms. Heather Vasquez**

By letter dated January 19, 2007, Medical Consultants Network ("MCN")'s Heather Vasquez, Customer Service Representative, Report Review Department wrote to Sedgwick Claims stating, "I have reviewed the Neurological Surgery Independent Medical Evaluation report regarding the above named claimant [Gardner] completed by Steven Delheimer, M.D. I trust you will find this information helpful. . . . Thank you for the referral. I look forward to working with you again in the future." It is unclear to me what review she needed to perform on a medical doctor's report. The signature is electronically signed, so it is unclear if there were Ms. Vasquez made changes to the original report from Dr. Delheimer.

2.    **Dr. Steven C. Delheimer**

Dr. Delheimer performed an IME on Ms. Gardner of January 8, 2007. Dr. Delheimer's "impression" was:

> "After obtaining a narrative history, performing a neurologic exam, and reviewing medical records and several diagnostic studies, it is my opinion that Ms. Gardner has degenerative disc disease of her lumbar spine. This opinion is supported by the findings on her diagnostic studies, which revealed an annular tear at L4-5 level that is midline in location."

Dr. Delheimer was asked how Ms. Gardner's condition would interfere with her ability to perform the essential duties as a Marketing Support Specialist. He stated,

> "In my opinion, Ms. Gardner's medical condition should not prevent her from working given the sedentary nature of her job; however, the following factor could indirectly interfere:

Review Unit
July 19, 2007
Page 6

1.  By history, the prolonged drive to and from work everyday.
2.  The fact that standing and walking exacerbate pain.
3.  The only alleviating factor by history is when Ms. Garner
    lies down.
4.  Her current regimen of medications."

The above statement was the extent of Dr. Delheimer's evaluation of Ms. Gardner's medications.

Dr. Delheimer's <u>objective</u> findings clearly demonstrate that Ms. Gardner is totally disabled:

*   Degenerative disc disease of her lumbar spine.
*   Prognosis is guarded based on repeated episodes of low back pain and multilevel involvement of the l lumbar discs.
*   Treatment and work-up has been reasonable.
*   Only high levels of narcotic pain medications controls pain.

**F.    Failure to Consider Side-Effects of Pain Medication**

One question that Dr. Delheimer did not answer – in part because he was not asked – is whether Ms. Gardner's medication regimen disables her from work. As summarized above, Ms. Gardner takes a large number of medications, which cause confusion, drowsiness, tiredness, and dizziness. The side-effects of her medications, alone, disable Ms. Gardner. Dr. Delheimer did not address the side-effects of her medications. He had full knowledge of her medications. He should have known or could have researched the powerful effects that Ms. Gardner's narcotic medications had, and have, on her ability to function, think clearly, or even ambulate. Ms. Gardner often cannot finish complete thoughts due to this effects of the medication. She cannot remember what she was just saying, or what was told to her just minutes before. There is no way that Ms. Gardner can perform in a work environment in that condition – independent of her physical disability. There is not an employer in existence who would hire a person in Ms. Gardner's current mental and physical condition.

Courts have held that an administrator abuses its discretion when if fails to consider the effect of the claimant's medication. In *Adams v. Prudential Ins. Co. Am.*, 280 F. Supp. 2d 731, 740-741 (N.D. Ohio 2003), the court held that the plan administrator abused its discretion by failing to consider Adams's narcotic regimen, which included Oxycontin, Demerol, Zoloft, Cardizen, and Neurontin. In *Dirberger v. Unum Life Ins. Co. of Am.* 246 F. Supp. 2d 927, 935 (W.D. Tenn. 2002) the court concluded that the plan administrator erred in failing to consider plaintiff's medications.

Review Unit
July 19, 2007
Page 7

Here, the side effects of Ms. Gardner's medications, standing alone, disable her. Furthermore, "[t]he fact that Plaintiff is on many strong medications is objective evidence that she is indeed chronically disabled." *Flanigan v. Liberty Life Assurance Co. of Boston*, 277 F. Supp. 2d 840 (S.D. Ohio 2003).

### G.    Pain is a Disabling Condition

Dr. Delheimer also was not asked and did not consider whether pain is a disabling condition and, of course, the Plans did not address Ms. Gardner's disabling condition: chronic, intractable pain.

Pain is a critical issue here. Severe pain can be so disabling as to preclude a person from performing any job for which he is reasonably qualified. *Morris v. Citibank, N. A. Disability Plan (501)*, 308 F. 3d 880, 882-885 (8th Cir. 2002): employee suffering from severe back pain as a result of herniated disc entitled to LTD benefits under the "any occupation" standard; *Spangler v. Lockheed Martin Energy Systems, Inc., supra*, 313 F. at p. 362: auditor suffering from spondylolisthesis, found to be totally disabled under the any occupation criteria.

"Medical science confirms that pain can be severe and disabling even in the absence of 'objective' medical findings; that is, test results that demonstrate a physical condition that normally causes pain of the severity claimed by the applicant." *Carradine v. Barnhart*, 360 F. 3d 751, 753 (7th Cir. 2004): Social Security case.

Here, Ms. Gardner has a well-documented medical condition which results in substantial pain. Yet, the Plans and Dr. Delheimer treat pain almost as if it is a non-issue. As Judge Posner explains in *Carradine v. Barnhart, supra*, 360 F. 3d at p. 754:

> "Pain is always subjective in the sense of being experienced in the brain. The question whether the experience is more acute because of a psychiatric condition is different from the question of whether the applicant is pretending to experience pain or more pain than she actually feels. The pain is genuine in the first, the psychiatric case, though fabricated in the second. The cases involving somatization recognize this distinction."

Judge Posner also explained that the conclusion that the applicant's testimony of disabling pain has been inconsistent with activities that she acknowledged engaging, such as performing household chores and taking walks as long as two miles was not logically substantiated because the alleged contradiction "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day, five consecutive days of the week." *Id* . at p 755. In *Carradine* "the applicant did

Review Unit
July 19, 2007
Page 8

not claim to be 'in racking pain' every minute of the day. When she feels better for a little while, she can drive, shop, do housework. It does not follow that she can maintain concentration and effort over the full course of the work week. (¶)  In addition, activities such as walking in the mall and swimming are not necessarily transferrable to the work setting with regard to the impact of pain.  A patient may do these activities _despite_ pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Carradine* at p. 756.

The same types of analyses apply here.

That a person has a sedentary job does not mean that he or she cannot be disabled by pain. In *Sabatino v. Liberty Life Assurance Co. of Boston*, 286 F. Supp. 2d 1222, 1231 (N.D. Cal. 2003) the court explained that the defendant's medical opinion was "suspect" because it:

> "ignored the principal basis of the Plaintiff's claim for benefits
> and mischaracterized the facts from the Plaintiff's medical history.
> The crux of Plaintiff's claim for disability benefits is severe and
> chronic pain and the cognitive impairments caused by the pain
> medication she must take to manage this pain.  Plaintiff was
> employed as an engineer, which may be a sedentary occupation,
> but one which requires careful thought and concentration.  Simply
> being able to perform sedentary work does not necessarily enable
> one to work as an engineer."

Similarly, in *Krizek v. Cigna Group Insurance*, 345 F. 3d 91 (2d Cir. 2003), the plaintiff suffered from severe pain, fatigue and other problems. *Id.* at p. 94. *Krizek* rejected the district court's decision not to credit pain complaints; that decision was based in part on volunteer work with the Special Olympics. *Krizek* held that the record was simply void of any basis for the district court's decision that volunteer work with the Special Olympics undermined the credibility of plaintiff's pain complaints and found that the district court's conclusions were clearly erroneous. *Id.* at pp. 100-101. "There was no evidence showing that her duties with the Special Olympics were at all tantamount to performing all the essential duties of any occupation for which Krizek is or may reasonably become qualified, within the meaning of the plan's definition of total disability. Nor was there any evidence showing Krizek was able to perform these duties without the aid of pain medication." *Krizek*, at p. 100. (Internal quotations and parenthesis omitted.)

Here, acute and chronic intractable pain disables Ms. Gardner from her own or any job. The Plans and Dr. Delheimer simply ignored this issue.

Jul 19 2007 2:53PM     HP LASERJET FAX                              p.10

Review Unit
July 19, 2007
Page 9

**H.     Dr. Delheimer is Biased and The Plans Investigation was Unfair**

The failure of the Plans and of Dr. Delheimer to address the obvious issues of this case –
pain and the side effects medication prescribed to control pain – begs the question: why didn't
you consider the real issues of the case? The answer is apparent: the Plans chose to conduct an
unfair investigation and chose to use a biased doctor to effectuate its unfair investigation. Dr.
Delheimer has a business of providing medical reviews. A print out of his website for
"Innovative Medical Evaluations" is enclosed. For this particular review, Dr. Delheimer was
provided by Medical Consultants Network ("MCN"), a biased service; a print out of its website
is also enclosed. Dr. Delheimer and MCN understand that they get all their business from
insurance companies and self-insured employers; therefore, they have a built-in bias and
incentive to provide opinions consistent with these entities requirements and interests. Their
opinions are inherently suspect, as such.

**I.     Dr. Delheimer's Opinion is Inherently Unreasonable**

Dr. Delheimer's prognosis stated that Ms. Gardner's prognosis was "'guarded'" based on
her repeated episodes of low back pain and multilevel involvement of the lumbar discs."

Dr. Delheimer acknowledged that Ms. Gardner "appeared uncomfortable and limited any
movement of her back." He opined that her symptoms are consistent with the diagnostic findings.
Dr. Delheimer reported that Ms. Gardner's pain is aggravated by standing and walking, but the
pain improves if she lies down. He then listed the pain medication she takes, which decreases
the pain from a 10 to a 5 or 6/10. He then opined that other than changing positions as needed
for comfort measures, there would be no need for physical modifications for her to perform her
job.

That conclusion is nonsensical especially given Dr. Delheimer's own notations. Ms.
Gardner is unable to get comfortable unless she lies down. Dr. Delheimer recognizes and agrees
with this. He states that, "One might consider possibly accommodating Ms. Gardner in terms of
allowing her to change position as needed for comfort measures. "Changing positions" is not the
issue. The issue is that Ms. Gardner must lie down in order to gain relief from her pain.

A sedentary occupation does not allow for lying down any percentage of the time while at
work. Lying down on the job is <u>not</u> reasonable. Therefore, even if Ms. Gardner's only duty was
to sit in a chair, and nothing else, she could still not perform the duties of a sedentary level
occupation, based on Dr. Delheimer's own analysis.

There is no indication that Dr. Delheimer was given Ms. Gardner's specific job duties.
He states that she can perform her job because it is sedentary in nature. In reality, her job
required, in part:

Review Unit
July 19, 2007
Page 10

- \*    Accessing multiple mechanized systems while speaking with customers.
- \*    Coordinating installation and maintenance for accurate on-time service.
- \*    Prioritizing routing statusing.
- \*    Discusses, investigates and resolves local service and long distance billing inquiries.
- \*    Works to meet sales goals.
- \*    Prepares self-composed letters.
- \*    Follows established safety practices and procedures.

Given her condition, Ms. Gardner could not perform her own occupation or any other occupation, because she needs her full mental faculties to be able to perform her own duties and she needs to be able to sit up, at least, in order to perform them.

Dr. Delheimer repeatedly refers to Ms. Gardner's disability not being job related and spends very little time explaining how her limitations would or would not affect her ability to work at her own occupation or any other occupation.

In conclusion, the conclusions set forth in Dr. Delheimer's opinion do not provide any reasonable basis to deny benefits to Ms. Gardner:

- \*    He does not address or consider the side effects of pain medications as a disabling condition.

- \*    He does not address or consider pain as a disabling condition.

- \*    He spends most of his analysis addressing issues relevant only to a workers compensation claim, but not relevant to this claim.

- \*    His objective findings are wholly consistent that Ms. Gardner is totally disabled.

- \*    His opinion that Ms. Gardner can work with accommodations – the accommodation being the ability, in effect, to lie down – is wholly inconsistent with reality. Even if AT&T were willing to provide Ms. Gardner with a bed at her work site so that she could lie down, I do not know how she could actually do her job lying down. Furthermore, Dr. Delheimer simply ignored the mental clouding side effects of Ms. Gardner's medications.

Thus, quite obviously, Dr. Delheimer's opinion reflects bias, not reality. AT&T should never have relied upon it.

Review Unit
July 19, 2007
Page 11

In conclusion, there is no evidence supporting the Plan's action because Dr. Delheimer's opinion ignores relevant issues and is inherently unreasonable.

### J.    Ms. Gardner is Totally Disabled Under the Policy

The objective medical evidence demonstrates that Ms. Gardner cannot:

1.    Work a full day. She lacks both the physical capacity to do so.

2.    Work a full week. Again, she lacks the physical capacity to do so on a regular basis.

3.    Work at the level required by her job, or any other job for which she is reasonably qualified.

### K.    The Plan's Claims Procedures Are Unfair

There are also procedural issues presented by this appeal. As the Plans undoubtedly know, the applicable regulations, set forth at 29 C.F.R. §2560.503-1, require, in pertinent part, that every employee benefit plan establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (collectively referred to as claims procedures). The regulations further explain that claim procedures are reasonable only if they comply with the specifications of the regulations, which include, as pertinent here:

\*    "The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. Written notice of adverse benefit determinations shall include the specific reason or reasons for the adverse determination, reference to the specific plan provisions on which the determination is based, a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the plan's review procedures and the time limits applicable to such procedures; if an internal rule, guideline, protocol, or other similar criterion was relied upon making the adverse determination, either the specific rule, guideline, protocol or other similar criterion must be provided or none was relied upon."

\*    "The claimant is entitled to full and fair review regarding any appeal. Such full and fair review includes timely notice, the opportunity to submit written

4220070720001321                    A625027340000101                    07/20/2007

Jul 19 2007 2:54PM    HP LASERJET FAX                                    p.13

Review Unit
July 19, 2007
Page 12

comments and documents, the right to be provided upon request and free of charge "all documents, records and other information relevant to the claimant's claim for benefits." "A document, record, or other information shall be considered relevant to a claimant's claim for benefits if such document, record or other information was relied upon in making the benefit determination; was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, other information was relied upon in making the benefit determination; demonstrates compliance with the administrative processes and safeguards required pursuant to the rule; constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit without regard to whether such advice or statement was relied in making the benefit determination."

* Any adverse benefit determination that is based in whole or in part on a medical judgment requires that the appropriate named fiduciary consult with a healthcare professional who has appropriate training and experience in the field in medicine involved in the medical judgment. Furthermore, the medical or vocational expert's who advice was obtained on behalf of the plan in connection with the claimant's adverse benefit determination must be identified without regard to whether the advice was relied upon in making the benefit determination.

Here, the Plans' appeal practices do not conform to the minimum standards required under the regulations. Its procedural violations clearly have impacted your substantive conclusions. Specifically:

* The initial adverse determination did not provide notice of the materials and information needed to perfect the appeal.

* Despite my request, you have provided no documents which demonstrate compliance with the administrative processes and safeguards required under the regulations. I treat this as an admission that you, as a matter of standard practice and procedure, do not comply with the requirements of the regulations. Absent identification and production of such records and the opportunity to supplement this appeal, it is my opinion that your failure to provide such records at this time constitutes a binding admission that you have failed to implement fair appeal processes and that you do not comply with regulatory minimum standards.

* As the enclosed materials from MCN's website indicate, Dr. Delheimer was required to sign a consultant agreement, submit a consultant application, provide a copy of his current CV/resume', provide documentation of Board Certification, and provide a copy of his current malpractice insurance. The form consultant

4220070720001321                    A625027340000101                    07/20/2007

R-0720

Review Unit
July 19, 2007
Page 13

agreement indicates that the consultant "agrees that he or she has reviewed the 'Consultant's Manual' and further agrees that he or she shall comply with the protocols contained therein when providing consultation services for this agreement." (Paragraph 9.) All of these documents are documents which should have been provided to Ms. Gardner for appeal under the authority cited above. None, of course, were provided.

Therefore, Ms. Gardner is not being given a fair appeals process.

**K.    Records Submitted**

*    All medical records referenced above.

*    Ms. Gardner's Declaration.

*    Medication information found at www.drugs.com.

*    MCN/Delheimer information.

**L.    Conclusion**

The termination of benefits to Ms. Gardner violated the terms of the Plans. Therefore, this appeal should be granted, benefits should be paid retroactively to her under both the Sickness Plan and the LTD Plan, with interest, and future benefits should be paid to her until and unless she is no longer eligible for benefits under the terms of the Plan.

In the course of reviewing this appeal, if further medical vocational opinions generated, please provide them to me for evaluation and comment prior to your final determination.

Very truly yours,

Robert J. Rosati

RJR/jaf

cc:    Melissa Gardner

(Page 50 of 194)

Jul 19 2007 2:55PM    HP LASERJET FAX                                    p.15

## DECLARATION OF MELISSA GARDNER

I, Melissa Gardner, declare and state as follows:

1.    I make this declaration in support of my appeal of the denial/termination of my
      Short and Long Term Disability benefits.

2.    My education is as follows:
      Associate Degree in Business Administration

3.    My work experience is as follows:
      I did Home Health Care for the elderly, and worked as a cashier at various local
      businesses until college.  Three years after I graduated from college I was hired at
      AT&T (SBC Comm.) where I continued to work until the time of my injury.

4.    I have not worked since March 2006.

5.    I am suffering from moderate to severe degenerative disc disease, crushed discs
      and ruptured and bulging discs. (L4 & L5 are ruptured and crushed, L3 & S1 are
      bulging and showing early signs of rupturing, and at least 2 other discs in my neck
      are also bulging and showing early signs of rupturing.)

6.    I have the following symptoms:
      I have constant pain in my middle and lower back, radiating down my entire left
      hip, leg, calf and foot. Where I suffer numbness in the toes of my left foot.  I have
      almost constant headaches and returning migraines from the pain in my neck and
      shoulder area. I have experienced a loss in my appetite from the pain and
      medications. I'm almost always tired and moody.  I also suffer from short term
      memory loss due to the amount of medication I am on.

7.    I take the following medications and experience the following side-effects:

| Medication | Dosage | Side-effect |
| --- | --- | --- |
| NABUMETONE | 1 - 500mg tab twice daily | Drowsiness & Dizziness |
| CARISOPRODOL | 1 – 350mg tab 4 times daily | Drowsiness & Dizziness |
| TRAMADOL | 1 – 50mg tab 4 times daily | Drowsiness & Dizziness |
| HYDROCODONE | 1 – 7.5/500mg tab every 6hrs. | Drowsiness & Dizziness |
| AMBIEN | 1 – 10mg tab @ bedtime | Drowsiness & Dizziness |
| IMITREX injections | 1 – 6mg inject. every 2 hrs. as needed | Drowsiness & Dizziness |
| | Not to exceed 2 doses in 24 hrs. | Nausea |

9.    In a typical day this is what I do:
      Wake up in pain, get out of bed, go to kitchen (next room) take medication, go lay
      down in recliner in living room (next room) with bowl of cereal, where I lay still
      for at least a couple of hours until the medicine has time to ease some of my pain.
      I continue to stay in the recliner until lunch, where I then go back to kitchen and
      get something for lunch, maybe help my boys with theirs if they need it, and
      return to my recliner until dinner time. Then I sit at our kitchen table long enough
      to eat dinner with my family and then return to the recliner until bed time. I then
      either, take a shower or bath, and then take my medication and go to bed with
      heating pad around my back.

4220070720001321              A625027340000101                    07/20/2007

                                                                      R-0722

10.   I cannot work because:
      The pain and discomfort I have almost 100% of the day and night would not, and
      does not allow me to function normally. The medication I have to take in order to
      not be in excruciating pain makes me unable to drive, work and function on my
      own. I greatly depend on my two children (ages 7 & 13 years) to help on a day to
      day basis, because I am unable to do for myself. Other than doctors appointments,
      and occasionally going somewhere with my family I rarely leave my home.

I declare under penalty of perjury that the foregoing is true and correct and if called as a
witness I could testify competently thereto.

Executed at 5:27pm on July 18, 2007.


Melissa A.

Gardner

Melissa Gardner

Jul 19 2007 2:50PM    HP LASERJET FAX                              p.1

# FACSIMILE COVER SHEET

DATE:                July 19, 2007 _____        File No.:

TO:                  Quality Review Unit

RE:                  *Melissa Gardner*

FACSIMILE NO.:       866-856-5065

From:  Jill A. Fulkes *for* The ERISA Law Group

| DOCUMENTS | | NUMBER OF PAGES INCLUDING COVER SHEET |
|---|---|---|
| Appeal Letter & Declaration | | 15 |

If you do not receive **all** pages, please telephone us immediately at 559-256-9800 ext. 28.

Message:  **Supporting and referenced documents accompanying original via U.S. Mail.**

CONFIDENTIAL NOTICE: This message is intended only for the use of the individual or entry to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to the above address via the U.S. Postal Service. Postage will be reimbursed. Thank you.

4220070720001321.            A625027340000101                  07/20/2007

R-0724

07/20/2007 4:12:56 PM          SEDGWICK CMS                    PAGE 2    OF 2

## AT&T Integrated Disability Service Center
### Quality Review Unit
*As Administered by Sedgwick CMS*

P.O. Box 14626; Lexington, KY 40512; Telephone 866-276-2278; Facsimile 866-856-5065

July 20, 2007

MELISSA GARDNER
124 PUTNAM STREET,
E PEORIA, IL 61611

Re:    AT&T Sickness and Accident Disability Benefit Plan for Long Term Disability
       Claim Number: A625027340-0001-01

Dear Ms. Gardner:

This letter serves to acknowledge receipt of your request for appeal of benefits denied under the
AT&T Sickness and Accident Disability Benefit Plan for Long Term Disability. Your request for
appeal was received in the AT&T Integrated Disability Service Center on 07/19/2007.

Your request for appeal of benefits denied will be reviewed by the AT&T Integrated Disability
Service Center (IDSC) Quality Review Unit and you will receive a written response by
09/02/2007.

"Disability" or "Disabled" during the period of one year immediately following the Waiting
Period shall mean an illness or injury, other than accidental injury arising out of and in the course
of employment by the Company or a Participating Company, supported by objective medical
documentation, that prevents the Eligible Employee from performing the duties of his/her last
Company or Participating Company-assigned job, with reasonable accommodations (as
determined by the Company or it's delegate). "Disability" after the one year period immediately
following the Waiting Period shall mean that the Eligible Employee is prevented by reason of
such illness of injury, supported by medical documentation, from either (1) working at a job for
which the Eligible Employee is either qualified or may reasonably become qualified based on
training, education and experience or (2) working at a job that pays at least 50% of the Eligible
Employee's Base Pay at the time the Disability occurred."

If you have any questions regarding the information contained in this letter, you may contact the
AT&T Integrated Disability Service Center (IDSC) Quality Review Unit at 1-866-276-2278.

Sincerely,

Jose Perez
ERISA Specialist
AT&T Integrated Disability Service Center

4220070720731821                  A625027340000101                       07/20/2007

1:08-cv-01007-JBM-BGC   # 17-7   Page 1 of 142

(Page 52 of 194)

07/20/2007 4:12:56 PM        SEDGWICK CMS

E-FILED
Wednesday, 23 July, 2008  04:16:05 PM
Clerk, U.S. District Court, ILCD
PAGE 1   OF 2

### Sedgwick Claims Management Services, Inc.

To:              ACS
Fax Number:      8598256886

From:            Perez, Jose
Fax Number:

Date:            July 20, 2007
Subject:         GARDNER, MELISSA A625027340-0001-01.doc

Memo:

***CONFIDENTIALITY NOTE***

The information contained in this facsimile message may be legally privileged
and confidential information intended only for the use of the individual or
entity named above. If the reader of this message is not the intended recipient,
you are hereby notified that any dissemination, distribution, or copying of this
telecopy is strictly prohibited. If you have received this telecopy in error,
please notify us immediately by calling the number listed above and return the
original message to us at the address above by the United States Postal Service.

4220070720731821              A625027340000101                    07/20/2007

R-0726

(Page 54 of 194)



**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:      (888) 883-7472
Facsimile: (559) 256-9795

Sharon L. Thornton-Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

July 17, 2007

AT & T Integrated Disability Service Center
PO Box 14627
Lexington, KY 40512

*VIA TELEFAX (866)224-4627*
*AND U.S. MAIL*

| | |
|---|---|
| Claimant: | Melissa Gardner |
| Employer: | AT & T |
| RE: | Short Term Disability (STD) and Long Term Disability (LTD) |

To Whom it May Concern:

This is to clarify that we represent Ms. Melissa Gardner in the above referenced matter for both her short and long term disability.

Very truly yours,

Robert J. Rosati

RJR/caf

cc:   Melissa Gardner

410707211138003

07/21/2007

**R-0727**

ERISA LAW GROUP LLP
2055 San Joaquin Street
Fresno, CA 93721



FRESNO CA 937
17 JUL 2007 PM 1 T

4051274627

AT & T Integrated Disability Service Center
PO Box 14627
Lexington, KY 40512



### ERISA LAW GROUP LLP
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (559) 256-9800
Facsimile: (559) 256-9795

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

July 19, 2007

AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 691568
King Of Prussia, PA 19406

*VIA FACSIMILE: 866-856-5065
AND U. S. MAIL*

Re:    *Melissa Gardner*
Claim No.:    A625027340-0001-01

To Whom it May Concern:

#### A.    Introduction

This is the appeal of the termination of Ms. Gardner's sickness disability benefits under the Ameritech Sickness and Accident Disability Benefits Plan and the denial of her application to apply for long term disability benefits through the Ameritech Long Term Disability Plan (collectively "the Plans"). Ms. Gardner's sickness disability benefits were terminated effective January 19, 2007, and consequently, her long term disability benefits claim was denied.

Ms. Gardner suffers from multiple back problems, including degenerative disc disease, crushed discs, ruptured, bulging discs and annular tears. She ceased working in March, 2006. She received sickness benefits through January 19, 2007.

#### B.    Policy Definitions

The Plans have the following pertinent definitions:

Section 2.11 of the long term disability plan defines the waiting period as:

 "'Waiting Period' shall mean the 26 weeks or 52 week period for which Sickness Disability Benefits under the Ameritech Sickness and Accident Disability Benefit Plan are payable and for which no benefits are payable under this Plan."

Section 2, paragraph 2.4 of the Sickness and Accident plan defines disability as:

0777001597

Review Unit
July 19, 2007
Page 2

"'Disability' or 'Disabled' during the period of 52 weeks
immediately following the Waiting Period following the Waiting
Period shall mean a sickness or injury or injury, supported by
objective medical documentation, that prevents the Eligible
Employee from performing the duties of his/her last Company or
Participating Company-assigned job with or without reasonable
accommodation (as determined by the Company or its delegate) or
any other job assigned by the Company or Participating Company
for which the Eligible Employee is qualified with or without
reasonable accommodation (as determined by the Company or its
delegate). For the purposes of this Plan, disabilities associated
with pregnancy shall be considered disabilities due to sickness."

C.    **Basis for Appeal**

1.    The Plans's conclusion that Ms. Gardner is no longer disabled is based on clearly
      erroneous findings of fact: there is simply no supporting evidence for that
      conclusion. The evidence clearly establishes that Ms. Gardner is totally disabled
      and is entitled to benefits.

2.    The Plans failed to address the multiple medications Ms. Gardner is on and the
      effects those medications have on her ability to function, much less work.

3.    The Plans failed to consider pain as a disabling condition.

4.    The entire review of Ms. Gardner's claim was inherently unfair. AT&T hired
      MCN – a biased service – to obtain a "independent" medical review; MCN, in
      turn, hired Dr. Steven Delheimer – also a biased evaluator – to perform an IME.
      Delheimer was asked the "wrong questions" and therefore did not address the
      issues presented, although it is clear from Delheimer's objective findings that Ms.
      Gardner is totally disabled.

5.    The Plans failed to provide the documents requested, and required to be provided
      to me in order to comply with regulatory requirements regarding fair claims and
      appeal practices.

Each of these grounds will be addressed.

Review Unit
July 19, 2007
Page 3

**D.**   **Ms. Gardner's Evidence**

    1.   Ms. Gardner's Medical Evidence

3/13/06:   ER. Intractable back pain. More comfortable when she is in the left lateral decubitus position with her knees drawn to her chest. Increasing pain with both sitting as wells as leaving her legs supine.

3/14/06:   MRI. Degenerative disc disease evident by mild degenerative dehydration and loss of disc space height of the L3-L4, L4-L5, and L5-S1 discs. This is associated with posterior central annular tears of the L3-L4, and L5-L5 discs.

4/16/06:   CT. Evidence fo disruption of the L4-L5 disc annulus posteriorly with extesion of contrast to the posterior annulus near the midline into the epidural space and also to the left along the left.

4/20/06:   L4-L5 Diskogram. Concordant 7 out of 10 pain demonstrated with injection of the L4-5 disc space. There is also significant diminished disc turgor at this level and evidence of penetration of contrast at least into, if not through, the annular region posteriorly.

4/17/06:   Chien. Midline epidural steroid injection.

5/3/06:   Chien: Ruptured L4 disc and bilateral lumbar radiculopathy. She cannot stand or sit for any period more than three minutes. She is completely disabled from all work at the current time. Waiting for consult re: L4 disc replacement v. fusion.

6/16/06:   Miller: MRI of March 14, 2006 revealed an L4-5 annular tear. After prolonged walking she develops burning in her back. She has numbness in the fingers of both. EMG revealed mild to moderate denervation of ulnar nerve of the bilateral elbows distally. Mild bilateral L4 radiculopathies in the lower extremities. Continue pain regimen.

7/24/06:   L4-5 intradiscal block and diskography.

8/4/06:   Dr. Dinh: Melissa Gardner's pain is constant and rated at 9/10 with some improvement while in the water. Pain returns after 30 minutes. She had an intradiscal block by Dr. Chien with pain relief for 15 minutes after L4-5 block.

8/9/06:   Chien: Ms. Gardner's disability centers on the need for disc replacement. The underlying condition will not change in a year, a month, or a week.

Review Unit
July 19, 2007
Page 4

1/30/07:    Chien: "Ms. Gardner is still disabled from work. She has an open L4-5 disc
demonstrated at 4/25/06 discogram and has concordant history and symptoms.
On exam today her straight leg raising is positive on the right at 10 degrees and on
the left 30 degrees. She is unable to arise even from a chair without a 25 pound
hand assist. She has to roll to erect from bed. She should NOT work until she has
found surgical intervention. Our local surgical community, now have experienced
Phase II clinical trial of the Charite disc, feels strongly that she should wait for the
release of this product. The distribution of her pain is not conducive to Dorsal
Column Stimulator suppression. Although she could be fused, I have to defer to
our surgical opinion. She still cannot sit or stand for any period of more than 3
minutes, which is hardly compatible with the workplace."

    2.    <u>Ms. Gardner's Condition</u>

Ms. Gardner's condition has severely limited her daily activities. She wakes up in pain,
gets out of bed, goes to kitchen, takes medication, lies down in a recliner in living room with
bowl of cereal, where she lies still for at least a couple of hours until the medicine has time to
ease some of her pain. She continue to stay in the recliner until lunch. She will go back to
kitchen and get something for lunch and return to her recliner until dinner time. She sits at their
kitchen table long enough to eat dinner with her family and then return to the recliner until bed
time. She will take a shower or bath, take her medication and go to bed with heating pad for her
back pain.

Ms. Gardner's pain and discomfort are present almost 100% of the day and night. It
would not, and does not allow her to function normally. The medication she takes to help control
the excruciating pain renders her unable to drive, work or function on her own. She depends on
her two children (ages 7 & 13 years) to help on a day to day basis, because she is unable to do for
herself. Other than doctors appointments, and occasionally going somewhere with her family she
rarely leaves her home.

    3.    <u>Ms. Gardner's Medications</u>

| <u>Medication</u> | <u>Dosage</u> | <u>Side-Effects</u> |
|---|---|---|
| Lyrica | 75 mg | Confusion, loss of coordination, muscle aches, pain, muscle aches, tenderness, weakness |
| Nabumetone | 500 mg | Confusion, numbness in arms or legs, selling in hands, legs or feet, persistent stomach pain, unusual joint or muscle pain, unusual tiredness or weakness, loss of appetite |

Review Unit
July 19, 2007
Page 5

| Tramadol | 50 mg | Constipation, diarrhea, drowsiness, nausea, loss of appetite |
| Hydrocodone | 7.50/500 mg | Anxiety, dizziness, headache, stomach pain, trouble sleeping, weakness, loss of appetite |
| Ambien | 10 mg | Drowsiness, dizziness |
| Imitrex injection | 6 mg q 2hrs | Drowsiness, dizziness, nausea |

### E.    The Plan' Medical Evidence

#### 1.    Ms. Heather Vasquez

By letter dated January 19, 2007, Medical Consultants Network ("MCN")'s Heather Vasquez, Customer Service Representative, Report Review Department wrote to Sedgwick Claims stating, "I have reviewed the Neurological Surgery Independent Medical Evaluation report regarding the above named claimant [Gardner] completed by Steven Delheimer, M.D. I trust you will find this information helpful. . . . Thank you for the referral. I look forward to working with you again in the future." It is unclear to me what review she needed to perform on a medical doctor's report. The signature is electronically signed, so it is unclear if there were Ms. Vasquez made changes to the original report from Dr. Delheimer.

#### 2.    Dr. Steven C. Delheimer

Dr. Delheimer performed an IME on Ms. Gardner of January 8, 2007. Dr. Delheimer's "impression" was:

> "After obtaining a narrative history, performing a neurologic exam, and reviewing medical records and several diagnostic studies, it is my opinion that Ms. Gardner has degenerative disc disease of her lumbar spine. This opinion is supported by the findings on her diagnostic studies, which revealed an annular tear at L4-5 level that is midline in location."

Dr. Delheimer was asked how Ms. Gardner's condition would interfere with her ability to perform the essential duties as a Marketing Support Specialist. He stated,

> "In my opinion, Ms. Gardner's medical condition should not prevent her from working given the sedentary nature of her job; however, the following factor could indirectly interfere:

Review Unit
July 19, 2007
Page 6

1.    By history, the prolonged drive to and from work everyday.
2.    The fact that standing and walking exacerbate pain.
3.    The only alleviating factor by history is when Ms. Garner
      lies down.
4.    Her current regimen of medications."

The above statement was the extent of Dr. Delheimer's evaluation of Ms. Gardner's medications.

Dr. Delheimer's objective findings clearly demonstrate that Ms. Gardner is totally disabled:

*    Degenerative disc disease of her lumbar spine.
*    Prognosis is guarded based on repeated episodes of low back pain and multilevel involvement of the 1 lumbar discs.
*    Treatment and work-up has been reasonable.
*    Only high levels of narcotic pain medications controls pain.

F.    **Failure to Consider Side-Effects of Pain Medication**

One question that Dr. Delheimer did not answer – in part because he was not asked – is whether Ms. Gardner's medication regimen disables her from work. As summarized above, Ms. Gardner takes a large number of medications, which cause confusion, drowsiness, tiredness, and dizziness. The side-effects of her medications, alone, disable Ms. Gardner. Dr. Delheimer did not address the side-effects of her medications. He had full knowledge of her medications. He should have known or could have researched the powerful effects that Ms. Gardner's narcotic medications had, and have, on her ability to function, think clearly, or even ambulate. Ms. Gardner often cannot finish complete thoughts due to this effects of the medication. She cannot remember what she was just saying, or what was told to her just minutes before. There is no way that Ms. Gardner can perform in a work environment in that condition – independent of her physical disability. There is not an employer in existence who would hire a person in Ms. Gardner's current mental and physical condition.

Courts have held that an administrator abuses its discretion when if fails to consider the effect of the claimant's medication. In *Adams v. Prudential Ins. Co. Am.*, 280 F. Supp. 2d 731, 740-741 (N.D. Ohio 2003), the court held that the plan administrator abused its discretion by failing to consider Adams's narcotic regimen, which included Oxycontin, Demerol, Zoloft, Cardizen, and Neurontin. In *Dirberger v. Unum Life Ins. Co. of Am.* 246 F. Supp. 2d 927, 935 (W.D. Tenn. 2002) the court concluded that the plan administrator erred in failing to consider plaintiff's medications.

(Page 62 of 194)

Review Unit
July 19, 2007
Page 7

Here, the side effects of Ms. Gardner's medications, standing alone, disable her. Furthermore, "[t]he fact that Plaintiff is on many strong medications is objective evidence that she is indeed chronically disabled." *Flanigan v. Liberty Life Assurance Co. of Boston*, 277 F. Supp. 2d 840 (S.D. Ohio 2003).

## G.    Pain is a Disabling Condition

Dr. Delheimer also was not asked and did not consider whether pain is a disabling condition and, of course, the Plans did not address Ms. Gardner's disabling condition: chronic, intractable pain.

Pain is a critical issue here. Severe pain can be so disabling as to preclude a person from performing any job for which he is reasonably qualified. *Morris v. Citibank, N. A. Disability Plan (501)*, 308 F. 3d 880, 882-885 (8th Cir. 2002): employee suffering from severe back pain as a result of herniated disc entitled to LTD benefits under the "any occupation" standard; *Spangler v. Lockheed Martin Energy Systems, Inc., supra*, 313 F. at p. 362: auditor suffering from spondylolisthesis, found to be totally disabled under the any occupation criteria.

"Medical science confirms that pain can be severe and disabling even in the absence of 'objective' medical findings, that is, test results that demonstrate a physical condition that normally causes pain of the severity claimed by the applicant." *Carradine v. Barnhart*, 360 F. 3d 751, 753 (7th Cir. 2004): Social Security case.

Here, Ms. Gardner has a well-documented medical condition which results in substantial pain. Yet, the Plans and Dr. Delheimer treat pain almost as if it is a non-issue. As Judge Posner explains in *Carradine v. Barnhart, supra*, 360 F. 3d at p. 754:

> "Pain is always subjective in the sense of being experienced in the brain. The question whether the experience is more acute because of a psychiatric condition is different from the question of whether the applicant is pretending to experience pain or more pain than she actually feels. The pain is genuine in the first, the psychiatric case, though fabricated in the second. The cases involving somatization recognize this distinction."

Judge Posner also explained that the conclusion that the applicant's testimony of disabling pain has been inconsistent with activities that she acknowledged engaging, such as performing household chores and taking walks as long as two miles was not logically substantiated because the alleged contradiction "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day, five consecutive days of the week." *Id* . at p 755. In *Carradine* "the applicant did

Review Unit
July 19, 2007
Page 8

not claim to be 'in racking pain' every minute of the day. When she feels better for a little while, she can drive, shop, do housework. It does not follow that she can maintain concentration and effort over the full course of the work week. (¶) In addition, activities such as walking in the mall and swimming are not necessarily transferrable to the work setting with regard to the impact of pain. A patient may do these activities <u>despite</u> pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Carradine* at p. 756.

The same types of analyses apply here.

That a person has a sedentary job does not mean that he or she cannot be disabled by pain. In *Sabatino v. Liberty Life Assurance Co. of Boston*, 286 F. Supp. 2d 1222, 1231 (N.D. Cal. 2003) the court explained that the defendant's medical opinion was "suspect" because it:

> "ignored the principal basis of the Plaintiff's claim for benefits and mischaracterized the facts from the Plaintiff's medical history. The crux of Plaintiff's claim for disability benefits is severe and chronic pain and the cognitive impairments caused by the pain medication she must take to manage this pain. Plaintiff was employed as an engineer, which may be a sedentary occupation, but one which requires careful thought and concentration. Simply being able to perform sedentary work does not necessarily enable one to work as an engineer."

Similarly, in *Krizek v. Cigna Group Insurance*, 345 F. 3d 91 (2d Cir. 2003), the plaintiff suffered from severe pain, fatigue and other problems. *Id.* at p. 94. *Krizek* rejected the district court's decision not to credit pain complaints; that decision was based in part on volunteer work with the Special Olympics. *Krizek* held that the record was simply void of any basis for the district court's decision that volunteer work with the Special Olympics undermined the credibility of plaintiff's pain complaints and found that the district court's conclusions were clearly erroneous. *Id.* at pp. 100-101. "There was no evidence showing that her duties with the Special Olympics were at all tantamount to performing all the essential duties of any occupation for which Krizek is or may reasonably become qualified, within the meaning of the plan's definition of total disability. Nor was there any evidence showing Krizek was able to perform these duties without the aid of pain medication." *Krizek*, at p. 100. (Internal quotations and parenthesis omitted.)

Here, acute and chronic intractable pain disables Ms. Gardner from her own or any job. The Plans and Dr. Delheimer simply ignored this issue.

Review Unit
July 19, 2007
Page 9

**H.**     <u>Dr. Delheimer is Biased and The Plans Investigation was Unfair</u>

The failure of the Plans and of Dr. Delheimer to address the obvious issues of this case –
pain and the side effects medication prescribed to control pain – begs the question: why didn't
you consider the real issues of the case? The answer is apparent: the Plans chose to conduct an
unfair investigation and chose to use a biased doctor to effectuate its unfair investigation. Dr.
Delheimer has a business of providing medical reviews. A print out of his website for
"Innovative Medical Evaluations" is enclosed. For this particular review, Dr. Delheimer was
provided by Medical Consultants Network ("MCN"), a biased service; a print out of its website
is also enclosed. Dr. Delheimer and MCN understand that they get all their business from
insurance companies and self-insured employers; therefore, they have a built-in bias and
incentive to provide opinions consistent with these entities requirements and interests. Their
opinions are inherently suspect, as such.

**I.**     <u>Dr. Delheimer's Opinion is Inherently Unreasonable</u>

Dr. Delheimer's prognosis stated that Ms. Gardner's prognosis was "'guarded'" based on
her repeated episodes of low back pain and multilevel involvement of the lumbar discs."

Dr. Delheimer acknowledged that Ms. Gardner "appeared uncomfortable and limited any
movement of her back." He opined that her symptoms are consistent with the diagnostic findings.
Dr. Delheimer reported that Ms. Gardner's pain is aggravated by standing and walking, but the
pain improves if she lies down. He then listed the pain medication she takes, which decreases
the pain from a 10 to a 5 or 6/10. He then opined that other than changing positions as needed
for comfort measures, there would be no need for physical modifications for her to perform her
job.

That conclusion is nonsensical especially given Dr. Delheimer's own notations. Ms.
Gardner is unable to get comfortable unless she lies down. Dr. Delheimer recognizes and agrees
with this. He states that, "One might consider possibly accommodating Ms. Gardner in terms of
allowing her to change position as needed for comfort measures. "Changing positions" is not the
issue. The issue is that Ms. Gardner must lie down in order to gain relief from her pain.

A sedentary occupation does not allow for lying down any percentage of the time while at
work. Lying down on the job is <u>not</u> reasonable. Therefore, even if Ms. Gardner's only duty was
to sit in a chair, and nothing else, she could still not perform the duties of a sedentary level
occupation, based on Dr. Delheimer's own analysis.

There is no indication that Dr. Delheimer was given Ms. Gardner's specific job duties.
He states that she can perform her job because it is sedentary in nature. In reality, her job
required, in part:

Review Unit
July 19, 2007
Page 10

* Accessing multiple mechanized systems while speaking with customers.
* Coordinating installation and maintenance for accurate on-time service.
* Prioritizing routing statusing.
* Discusses, investigates and resolves local service and long distance billing inquiries.
* Works to meet sales goals.
* Prepares self-composed letters.
* Follows established safety practices and procedures.

Given her condition, Ms. Gardner could not perform her own occupation or any other occupation, because she needs her full mental faculties to be able to perform her own duties and she needs to be able to sit up, at least, in order to perform them.

Dr. Delheimer repeatedly refers to Ms. Gardner's disability not being job related and spends very little time explaining how her limitations would or would not affect her ability to work at her own occupation or any other occupation.

In conclusion, the conclusions set forth in Dr. Delheimer's opinion do not provide any reasonable basis to deny benefits to Ms. Gardner:

* He does not address or consider the side effects of pain medications as a disabling condition.

* He does not address or consider pain as a disabling condition.

* He spends most of his analysis addressing issues relevant only to a workers compensation claim, but not relevant to this claim.

* His objective findings are wholly consistent that Ms. Gardner is totally disabled.

* His opinion that Ms. Gardner can work with accommodations – the accommodation being the ability , in effect, to lie down – is wholly inconsistent with reality. Even if AT&T were willing to provide Ms. Gardner with a bed at her work site so that she could lie down, I do not know how she could actually do her job lying down. Furthermore, Dr. Delheimer simply ignored the mental clouding side effects of Ms. Gardner's medications.

Thus, quite obviously, Dr. Delheimer's opinion reflects bias, not reality. AT&T should never have relied upon it.

Review Unit
July 19, 2007
Page 11

In conclusion, there is no evidence supporting the Plan's action because Dr. Delheimer's opinion ignores relevant issues and is inherently unreasonable.

**J.    Ms. Gardner is Totally Disabled Under the Policy**

The objective medical evidence demonstrates that Ms. Gardner cannot:

1.    Work a full day.  She lacks both the physical capacity to do so.

2.    Work a full week.  Again, she lacks the physical capacity to do so on a regular basis.

3.    Work at the level required by her job, or any other job for which she is reasonably qualified.

**K.    The Plan's Claims Procedures Are Unfair**

There are also procedural issues presented by this appeal.  As the Plans undoubtedly know, the applicable regulations, set forth at 29 C.F.R. §2560.503-1, require, in pertinent part, that every employee benefit plan establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (collectively referred to as claims procedures).  The regulations further explain that claim procedures are reasonable only if they comply with the specifications of the regulations, which include, as pertinent here:

\*    "The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. Written notice of adverse benefit determinations shall include the specific reason or reasons for the adverse determination, reference to the specific plan provisions on which the determination is based, a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the plan's review procedures and the time limits applicable to such procedures; if an internal rule, guideline, protocol, or other similar criterion was relied upon making the adverse determination, either the specific rule, guideline, protocol or other similar criterion must be provided or none was relied upon."

\*    "The claimant is entitled to full and fair review regarding any appeal.  Such full and fair review includes timely notice, the opportunity to submit written

Review Unit
July 19, 2007
Page 12

comments and documents, the right to be provided upon request and free of charge "all documents, records and other information relevant to the claimant's claim for benefits." "A document, record, or other information shall be considered relevant to a claimant's claim for benefits if such document, record or other information was relied upon in making the benefit determination; was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, other information was relied upon in making the benefit determination; demonstrates compliance with the administrative processes and safeguards required pursuant to the rule; constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit without regard to whether such advice or statement was relied in making the benefit determination."

*   Any adverse benefit determination that is based in whole or in part on a medical judgment requires that the appropriate named fiduciary consult with a healthcare professional who has appropriate training and experience in the field in medicine involved in the medical judgment. Furthermore, the medical or vocational expert's who advice was obtained on behalf of the plan in connection with the claimant's adverse benefit determination must be identified without regard to whether the advice was relied upon in making the benefit determination.

Here, the Plans' appeal practices do not conform to the minimum standards required under the regulations. Its procedural violations clearly have impacted your substantive conclusions. Specifically:

*   The initial adverse determination did not provide notice of the materials and information needed to perfect the appeal.

*   Despite my request, you have provided no documents which demonstrate compliance with the administrative processes and safeguards required under the regulations. I treat this as an admission that you, as a matter of standard practice and procedure, do not comply with the requirements of the regulations. Absent identification and production of such records and the opportunity to supplement this appeal, it is my opinion that your failure to provide such records at this time constitutes a binding admission that you have failed to implement fair appeal processes and that you do not comply with regulatory minimum standards.

*   As the enclosed materials from MCN's website indicate, Dr. Delheimer was required to sign a consultant agreement, submit a consultant application, provide a copy of his current CV/resume', provide documentation of Board Certification, and provide a copy of his current malpractice insurance. The form consultant

Review Unit
July 19, 2007
Page 13

agreement indicates that the consultant "agrees that he or she has reviewed the 'Consultant's Manual' and further agrees that he or she shall comply with the protocols contained therein when providing consultation services for this agreement." (Paragraph 9.) All of these documents are documents which should have been provided to Ms. Gardner for appeal under the authority cited above. None, of course, were provided.

Therefore, Ms. Gardner is not being given a fair appeals process.

**K.    Records Submitted**

*    All medical records referenced above.

*    Ms. Gardner's Declaration.

*    Medication information found at www.drugs.com.

*    MCN/Delheimer information.

**L.    Conclusion**

The termination of benefits to Ms. Gardner violated the terms of the Plans. Therefore, this appeal should be granted, benefits should be paid retroactively to her under both the Sickness Plan and the LTD Plan, with interest, and future benefits should be paid to her until and unless she is no longer eligible for benefits under the terms of the Plan.

In the course of reviewing this appeal, if further medical vocational opinions generated, please provide them to me for evaluation and comment prior to your final determination.

Very truly yours,

Robert J. Rosati

RJR/jaf

cc:    Melissa Gardner

4107072700199721                A625027340000101                07/27/2007

R-0741

 

**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (559) 256-9800
Facsimile: (559) 256-9795

July 19, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

AT&T Integrated Disability Service Center          *VIA FACSIMILE: 866-856-5065*
Quality Review Unit                                *AND U. S. MAIL*
PO Box 691568
King Of Prussia, PA 19406

*~~new address~~*

Re:   *Melissa Gardner*                  *P.O Box 14626*
Claim No.:   A625027340-0001-01

To Whom it May Concern:   *STD Claim        Lexington Ky*
                          *A625007602~~2~~-0001-81  40512*

   A.    <u>Introduction</u>

    This is the appeal of the termination of Ms. Gardner's sickness disability benefits under
the Ameritech Sickness and Accident Disability Benefits Plan and the denial of her application to
apply for long term disability benefits through the Ameritech Long Term Disability Plan
(collectively "the Plans"). Ms. Gardner's sickness disability benefits were terminated effective
January 19, 2007, and consequently, her long term disability benefits claim was denied.

    Ms. Gardner suffers from multiple back problems, including degenerative disc disease,
crushed discs, ruptured, bulging discs and annular tears. She ceased working in March, 2006.
She received sickness benefits through January 19, 2007.

   B.    <u>Policy Definitions</u>

The Plans have the following pertinent definitions:

Section 2.11 of the long term disability plan defines the waiting period as:

    "'Waiting Period' shall mean the 26 weeks or 52 week period for
    which Sickness Disability Benefits under the Ameritech Sickness
    and Accident Disability Benefit Plan are payable and for which no
    benefits are payable under this Plan."

Section 2, paragraph 2.4 of the Sickness and Accident plan defines disability as:

G.T.O. Review Unit S.S.2.
July 19, 2007
Page 2

"'Disability' or 'Disabled' during the period of 52 weeks immediately following the Waiting Period following the Waiting Period shall mean a sickness or injury or injury, supported by objective medical documentation, that prevents the Eligible Employee from performing the duties of his/her last Company or Participating Company-assigned job with or without reasonable accommodation (as determined by the Company or its delegate) or any other job assigned by the Company or Participating Company for which the Eligible Employee is qualified with or without reasonable accommodation (as determined by the Company or its delegate). For the purposes of this Plan, disabilities associated with pregnancy shall be considered disabilities due to sickness."

**C.    Basis for Appeal**

1.    The Plans's conclusion that Ms. Gardner is no longer disabled is based on clearly erroneous findings of fact: there is simply no supporting evidence for that conclusion. The evidence clearly establishes that Ms. Gardner is totally disabled and is entitled to benefits.

2.    The Plans failed to address the multiple medications Ms. Gardner is on and the effects those medications have on her ability to function, much less work.

3.    The Plans failed to consider pain as a disabling condition.

4.    The entire review of Ms. Gardner's claim was inherently unfair. AT&T hired MCN – a biased service – to obtain a "independent" medical review; MCN, in turn, hired Dr. Steven Delheimer – also a biased evaluator – to perform an IME. Delheimer was asked the "wrong questions" and therefore did not address the issues presented, although it is clear from Delheimer's <u>objective</u> findings that Ms. Gardner is totally disabled.

5.    The Plans failed to provide the documents requested, and required to be provided to me in order to comply with regulatory requirements regarding fair claims and appeal practices.

Each of these grounds will be addressed.

Review Unit
July 19, 2007
Page 3

**D.**    **Ms. Gardner's Evidence**

1.    **Ms. Gardner's Medical Evidence**

3/13/06:    ER. Intractable back pain. More comfortable when she is in the left lateral decubitus position with her knees drawn to her chest. Increasing pain with both sitting as wells as leaving her legs supine.

3/14/06:    MRI. Degenerative disc disease evident by mild degenerative dehydration and loss of disc space height of the L3-L4, L4-L5, and L5-S1 discs. This is associated with posterior central annular tears of the L3-L4, and L5-L5 discs.

4/16/06:    CT. Evidence fo disruption of the L4-L5 disc annulus posteriorly with extesion of contrast to the posterior annulus near the midline into the epidural space and also to the left along the left.

4/20/06:    L4-L5 Diskogram. Concordant 7 out of 10 pain demonstrated with injection of the L4-5 disc space. There is also significant diminished disc turgor at this level and evidence of penetration of contrast at least into, if not through, the annular region posteriorly.

4/17/06:    Chien. Midline epidural steroid injection.

5/3/06:    Chien: Ruptured L4 disc and bilateral lumbar radiculopathy. She cannot stand or sit for any period more than three minutes. She is completely disabled from all work at the current time. Waiting for consult re: L4 disc replacement v. fusion.

6/16/06:    Miller: MRI of March 14, 2006 revealed an L4-5 annular tear. After prolonged walking she develops burning in her back. She has numbness in the fingers of both. EMG revealed mild to moderate denervation of ulnar nerve of the bilateral elbows distally. Mild bilateral L4 radiculopathies in the lower extremities. Continue pain regimen.

7/24/06:    L4-5 intradiscal block and diskography.

8/4/06:    Dr. Dinh: Melissa Gardner's pain is constant and rated at 9/10 with some improvement while in the water. Pain returns after 30 minutes. She had an intradiscal block by Dr. Chien with pain relief for 15 minutes after L4-5 block.

8/9/06:    Chien: Ms. Gardner's disability centers on the need for disc replacement. The underlying condition will not change in a year, a month, or a week.

1/30/07:     Chien: "Ms. Gardner is still disabled from work. She has an open L4-5 disc demonstrated at 4/25/06 discogram and has concordant history and symptoms. On exam today her straight leg raising is positive on the right at 10 degrees and on the left 30 degrees. She is unable to arise even from a chair without a 25 pound hand assist. She has to roll to erect from bed. She should NOT work until she has found surgical intervention. Our local surgical community, now have experienced Phase II clinical trial of the Charite disc, feels strongly that she should wait for the release of this product. The distribution of her pain is not conducive to Dorsal Column Stimulator suppression. Although she could be fused, I have to defer to our surgical opinion. She still cannot sit or stand for any period of more than 3 minutes, which is hardly compatible with the workplace."

2.     Ms. Gardner's Condition

Ms. Gardner's condition has severely limited her daily activities. She wakes up in pain, gets out of bed, goes to kitchen, takes medication, lies down in a recliner in living room with bowl of cereal, where she lies still for at least a couple of hours until the medicine has time to ease some of her pain. She continue to stay in the recliner until lunch. She will go back to kitchen and get something for lunch and return to her recliner until dinner time. She sits at their kitchen table long enough to eat dinner with her family and then return to the recliner until bed time. She will take a shower or bath, take her medication and go to bed with heating pad for her back pain.

Ms. Gardner's pain and discomfort are present almost 100% of the day and night. It would not, and does not allow her to function normally. The medication she takes to help control the excruciating pain renders her unable to drive, work or function on her own. She depends on her two children (ages 7 & 13 years) to help on a day to day basis, because she is unable to do for herself. Other than doctors appointments, and occasionally going somewhere with her family she rarely leaves her home.

3.     Ms. Gardner's Medications

| Medication | Dosage | Side-Effects |
|---|---|---|
| Lyrica | 75 mg | Confusion, loss of coordination, muscle aches, pain, muscle aches, tenderness, weakness |
| Nabumetone | 500 mg | Confusion, numbness in arms or legs, selling in hands, legs or feet, persistent stomach pain, unusual joint or muscle pain, unusual tiredness or weakness, loss of appetite |

R-0745

Review Unit
July 19, 2007
Page 5

| Tramadol | 50 mg | Constipation, diarrhea, drowsiness, nausea, loss of appetite |
| Hydrocodone | 7.50/500 mg | Anxiety, dizziness, headache, stomach pain, trouble sleeping, weakness, loss of appetite |
| Ambien | 10 mg | Drowsiness, dizziness |
| Imitrex injection | 6 mg q 2hrs | Drowsiness, dizziness, nausea |

E.    **The Plan' Medical Evidence**

1.    Ms. Heather Vasquez

By letter dated January 19, 2007, Medical Consultants Network ("MCN")'s Heather Vasquez, Customer Service Representative, Report Review Department wrote to Sedgwick Claims stating, "I have reviewed the Neurological Surgery Independent Medical Evaluation report regarding the above named claimant [Gardner] completed by Steven Delheimer, M.D. I trust you will find this information helpful. . . . Thank you for the referral. I look forward to working with you again in the future." It is unclear to me what review she needed to perform on a medical doctor's report. The signature is electronically signed, so it is unclear if there were Ms. Vasquez made changes to the original report from Dr. Delheimer.

2.    Dr. Steven C. Delheimer

Dr. Delheimer performed an IME on Ms. Gardner of January 8, 2007. Dr. Delheimer's "impression" was:

> "After obtaining a narrative history, performing a neurologic exam, and reviewing medical records and several diagnostic studies, it is my opinion that Ms. Gardner has degenerative disc disease of her lumbar spine. This opinion is supported by the findings on her diagnostic studies, which revealed an annular tear at L4-5 level that is midline in location."

Dr. Delheimer was asked how Ms. Gardner's condition would interfere with her ability to perform the essential duties as a Marketing Support Specialist. He stated,

> "In my opinion, Ms. Gardner's medical condition should not prevent her from working given the sedentary nature of her job; however, the following factor could indirectly interfere:

Review Unit
July 19, 2007
Page 6

1. By history, the prolonged drive to and from work everyday.
2. The fact that standing and walking exacerbate pain.
3. The only alleviating factor by history is when Ms. Garner lies down.
4. Her current regimen of medications."

The above statement was the extent of Dr. Delheimer's evaluation of Ms. Gardner's medications.

Dr. Delheimer's <u>objective</u> findings clearly demonstrate that Ms. Gardner is totally disabled:

* Degenerative disc disease of her lumbar spine.
* Prognosis is guarded based on repeated episodes of low back pain and multilevel involvement of the l lumbar discs.
* Treatment and work-up has been reasonable.
* Only high levels of narcotic pain medications controls pain.

**F.    Failure to Consider Side-Effects of Pain Medication**

One question that Dr. Delheimer did not answer – in part because he was not asked – is whether Ms. Gardner's medication regimen disables her from work. As summarized above, Ms. Gardner takes a large number of medications, which cause confusion, drowsiness, tiredness, and dizziness. The side-effects of her medications, alone, disable Ms. Gardner. Dr. Delheimer did not address the side-effects of her medications. He had full knowledge of her medications. He should have known or could have researched the powerful effects that Ms. Gardner's narcotic medications had, and have, on her ability to function, think clearly, or even ambulate. Ms. Gardner often cannot finish complete thoughts due to this effects of the medication. She cannot remember what she was just saying, or what was told to her just minutes before. There is no way that Ms. Gardner can perform in a work environment in that condition – independent of her physical disability. There is not an employer in existence who would hire a person in Ms. Gardner's current mental and physical condition.

Courts have held that an administrator abuses its discretion when if fails to consider the effect of the claimant's medication. In *Adams v. Prudential Ins. Co. Am.*, 280 F. Supp. 2d 731, 740-741 (N.D. Ohio 2003), the court held that the plan administrator abused its discretion by failing to consider Adams's narcotic regimen, which included Oxycontin, Demerol, Zoloft, Cardizen, and Neurontin. In *Dirberger v. Unum Life Ins. Co. of Am.* 246 F. Supp. 2d 927, 935 (W.D. Tenn. 2002) the court concluded that the plan administrator erred in failing to consider plaintiff's medications.

4107073000389221                    A625027340000101                    07/30/2007

R-0747

0707300053692 Review Unit
July 19, 2007
Page 7

Here, the side effects of Ms. Gardner's medications, standing alone, disable her. Furthermore, "[t]he fact that Plaintiff is on many strong medications is objective evidence that she is indeed chronically disabled." *Flanigan v. Liberty Life Assurance Co. of Boston*, 277 F. Supp. 2d 840 (S.D. Ohio 2003).

### G.    Pain is a Disabling Condition

Dr. Delheimer also was not asked and did not consider whether pain is a disabling condition and, of course, the Plans did not address Ms. Gardner's disabling condition: chronic, intractable pain.

Pain is a critical issue here. Severe pain can be so disabling as to preclude a person from performing any job for which he is reasonably qualified. *Morris v. Citibank, N. A. Disability Plan (501)*, 308 F. 3d 880, 882-885 (8th Cir. 2002): employee suffering from severe back pain as a result of herniated disc entitled to LTD benefits under the "any occupation" standard; *Spangler v. Lockheed Martin Energy Systems, Inc., supra*, 313 F. at p. 362: auditor suffering from spondylolisthesis, found to be totally disabled under the any occupation criteria.

"Medical science confirms that pain can be severe and disabling even in the absence of 'objective' medical findings, that is, test results that demonstrate a physical condition that normally causes pain of the severity claimed by the applicant." *Carradine v. Barnhart*, 360 F. 3d 751, 753 (7th Cir. 2004): Social Security case.

Here, Ms. Gardner has a well-documented medical condition which results in substantial pain. Yet, the Plans and Dr. Delheimer treat pain almost as if it is a non-issue. As Judge Posner explains in *Carradine v. Barnhart, supra*, 360 F. 3d at p. 754:

> "Pain is always subjective in the sense of being experienced in the brain. The question whether the experience is more acute because of a psychiatric condition is different from the question of whether the applicant is pretending to experience pain or more pain than she actually feels. The pain is genuine in the first, the psychiatric case, though fabricated in the second. The cases involving somatization recognize this distinction."

Judge Posner also explained that the conclusion that the applicant's testimony of disabling pain has been inconsistent with activities that she acknowledged engaging, such as performing household chores and taking walks as two miles was not logically substantiated because the alleged contradiction "failed to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day, five consecutive days of the week." *Id*. at p 755. In *Carradine* "the applicant did

G.T.G. Review Unit 8 9 2
July 19, 2007
Page 8

not claim to be 'in racking pain' every minute of the day. When she feels better for a little while, she can drive, shop, do housework. It does not follow that she can maintain concentration and effort over the full course of the work week. (¶) In addition, activities such as walking in the mall and swimming are not necessarily transferrable to the work setting with regard to the impact of pain. A patient may do these activities <u>despite</u> pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Carradine* at p. 756.

    The same types of analyses apply here.

    That a person has a sedentary job does not mean that he or she cannot be disabled by pain. In *Sabatino v. Liberty Life Assurance Co. of Boston*, 286 F. Supp. 2d 1222, 1231 (N.D. Cal. 2003) the court explained that the defendant's medical opinion was "suspect" because it:

> "ignored the principal basis of the Plaintiff's claim for benefits
> and mischaracterized the facts from the Plaintiff's medical history.
> The crux of Plaintiff's claim for disability benefits is severe and
> chronic pain and the cognitive impairments caused by the pain
> medication she must take to manage this pain. Plaintiff was
> employed as an engineer, which may be a sedentary occupation,
> but one which requires careful thought and concentration. Simply
> being able to perform sedentary work does not necessarily enable
> one to work as an engineer."

    Similarly, in *Krizek v. Cigna Group Insurance*, 345 F. 3d 91 (2d Cir. 2003), the plaintiff suffered from severe pain, fatigue and other problems. *Id.* at p. 94. *Krizek* rejected the district court's decision not to credit pain complaints; that decision was based in part on volunteer work with the Special Olympics. *Krizek* held that the record was simply void of any basis for the district court's decision that volunteer work with the Special Olympics undermined the credibility of plaintiff's pain complaints and found that the district court's conclusions were clearly erroneous. *Id.* at pp. 100-101. "There was no evidence showing that her duties with the Special Olympics were at all tantamount to performing all the essential duties of any occupation for which Krizek is or may reasonably become qualified, within the meaning of the plan's definition of total disability. Nor was there any evidence showing Krizek was able to perform these duties without the aid of pain medication." *Krizek*, at p. 100. (Internal quotations and parenthesis omitted.)

    Here, acute and chronic intractable pain disables Ms. Gardner from her own or any job. The Plans and Dr. Delheimer simply ignored this issue.

0 7 0 7 3 0 0 3 8 9 2

Review Unit
July 19, 2007
Page 9

**H.     Dr. Delheimer is Biased and The Plans Investigation was Unfair**

The failure of the Plans and of Dr. Delheimer to address the obvious issues of this case – pain and the side effects medication prescribed to control pain – begs the question: why didn't you consider the real issues of the case? The answer is apparent: the Plans chose to conduct an unfair investigation and chose to use a biased doctor to effectuate its unfair investigation. Dr. Delheimer has a business of providing medical reviews. A print out of his website for "Innovative Medical Evaluations" is enclosed. For this particular review, Dr. Delheimer was provided by Medical Consultants Network ("MCN"), a biased service; a print out of its website is also enclosed. Dr. Delheimer and MCN understand that they get all their business from insurance companies and self-insured employers; therefore, they have a built-in bias and incentive to provide opinions consistent with these entities requirements and interests. Their opinions are inherently suspect, as such.

**I.     Dr. Delheimer's Opinion is Inherently Unreasonable**

Dr. Delheimer's prognosis stated that Ms. Gardner's prognosis was "'guarded'" based on her repeated episodes of low back pain and multilevel involvement of the lumbar discs."

Dr. Delheimer acknowledged that Ms. Gardner "appeared uncomfortable and limited any movement of her back." He opined that her symptoms are consistent with the diagnostic findings. Dr. Delheimer reported that Ms. Gardner's pain is aggravated by standing and walking, but the pain improves if she lies down. He then listed the pain medication she takes, which decreases the pain from a 10 to a 5 or 6/10. He then opined that other than changing positions as needed for comfort measures, there would be no need for physical modifications for her to perform her job.

That conclusion is nonsensical especially given Dr. Delheimer's own notations. Ms. Gardner is unable to get comfortable unless she lies down. Dr. Delheimer recognizes and agrees with this. He states that, "One might consider possibly accommodating Ms. Gardner in terms of allowing her to change position as needed for comfort measures. "Changing positions" is not the issue. The issue is that Ms. Gardner must lie down in order to gain relief from her pain.

A sedentary occupation does not allow for lying down any percentage of the time while at work. Lying down on the job is not reasonable. Therefore, even if Ms. Gardner's only duty was to sit in a chair, and nothing else, she could still not perform the duties of a sedentary level occupation, based on Dr. Delheimer's own analysis.

There is no indication that Dr. Delheimer was given Ms. Gardner's specific job duties. He states that she can perform her job because it is sedentary in nature. In reality, her job required, in part:

0 7 0 7 3 0 0 0 3 8 9 2
Review Unit
July 19, 2007
Page 10

* Accessing multiple mechanized systems while speaking with customers.
* Coordinating installation and maintenance for accurate on-time service.
* Prioritizing routing statusing.
* Discusses, investigates and resolves local service and long distance billing inquiries.
* Works to meet sales goals.
* Prepares self-composed letters.
* Follows established safety practices and procedures.

Given her condition, Ms. Gardner could not perform her own occupation or any other occupation, because she needs her full mental faculties to be able to perform her own duties and she needs to be able to sit up, at least, in order to perform them.

Dr. Delheimer repeatedly refers to Ms. Gardner's disability not being job related and spends very little time explaining how her limitations would or would not affect her ability to work at her own occupation or any other occupation.

In conclusion, the conclusions set forth in Dr. Delheimer's opinion do not provide any reasonable basis to deny benefits to Ms. Gardner:

* He does not address or consider the side effects of pain medications as a disabling condition.

* He does not address or consider pain as a disabling condition.

* He spends most of his analysis addressing issues relevant only to a workers compensation claim, but not relevant to this claim.

* His objective findings are wholly consistent that Ms. Gardner is totally disabled.

* His opinion that Ms. Gardner can work with accommodations – the accommodation being the ability , in effect, to lie down – is wholly inconsistent with reality.  Even if AT&T were willing to provide Ms. Gardner with a bed at her work site so that she could lie down, I do not know how she could actually do her job lying down.  Furthermore, Dr. Delheimer simply ignored the mental clouding side effects of Ms. Gardner's medications.

Thus, quite obviously, Dr. Delheimer's opinion reflects bias, not reality.  AT&T should never have relied upon it.

070731500200 9-2
Review Unit
July 19, 2007
Page 11

In conclusion, there is no evidence supporting the Plan's action because Dr. Delheimer's opinion ignores relevant issues and is inherently unreasonable.

**J.    Ms. Gardner is Totally Disabled Under the Policy**

The objective medical evidence demonstrates that Ms. Gardner cannot:

1.    Work a full day. She lacks both the physical capacity to do so.

2.    Work a full week. Again, she lacks the physical capacity to do so on a regular basis.

3.    Work at the level required by her job, or any other job for which she is reasonably qualified.

**K.    The Plan's Claims Procedures Are Unfair**

There are also procedural issues presented by this appeal. As the Plans undoubtedly know, the applicable regulations, set forth at 29 C.F.R. §2560.503-1, require, in pertinent part, that every employee benefit plan establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (collectively referred to as claims procedures). The regulations further explain that claim procedures are reasonable only if they comply with the specifications of the regulations, which include, as pertinent here:

* "The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants. Written notice of adverse benefit determinations shall include the specific reason or reasons for the adverse determination, reference to the specific plan provisions on which the determination is based, a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the plan's review procedures and the time limits applicable to such procedures; if an internal rule, guideline, protocol, or other similar criterion was relied upon making the adverse determination, either the specific rule, guideline, protocol or other similar criterion must be provided or none was relied upon."

* "The claimant is entitled to full and fair review regarding any appeal. Such full and fair review includes timely notice, the opportunity to submit written

G T O Reviewing C S Z
July 19, 2007
Page 12

comments and documents, the right to be provided upon request and free of charge "all documents, records and other information relevant to the claimant's claim for benefits." "A document, record, or other information shall be considered relevant to a claimant's claim for benefits if such document, record or other information was relied upon in making the benefit determination; was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, other information was relied upon in making the benefit determination; demonstrates compliance with the administrative processes and safeguards required pursuant to the rule; constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit without regard to whether such advice or statement was relied in making the benefit determination."

\* Any adverse benefit determination that is based in whole or in part on a medical judgment requires that the appropriate named fiduciary consult with a healthcare professional who has appropriate training and experience in the field in medicine involved in the medical judgment. Furthermore, the medical or vocational expert's who advice was obtained on behalf of the plan in connection with the claimant's adverse benefit determination must be identified without regard to whether the advice was relied upon in making the benefit determination.

Here, the Plans' appeal practices do not conform to the minimum standards required under the regulations. Its procedural violations clearly have impacted your substantive conclusions. Specifically:

\* The initial adverse determination did not provide notice of the materials and information needed to perfect the appeal.

\* Despite my request, you have provided no documents which demonstrate compliance with the administrative processes and safeguards required under the regulations. I treat this as an admission that you, as a matter of standard practice and procedure, do not comply with the requirements of the regulations. Absent identification and production of such records and the opportunity to supplement this appeal, it is my opinion that your failure to provide such records at this time constitutes a binding admission that you have failed to implement fair appeal processes and that you do not comply with regulatory minimum standards.

\* As the enclosed materials from MCN's website indicate, Dr. Delheimer was required to sign a consultant agreement, submit a consultant application, provide a copy of his current CV/resume', provide documentation of Board Certification, and provide a copy of his current malpractice insurance. The form consultant

G·7·07·3·0·0·0·5·8·9·2·
Review Unit
July 19, 2007
Page 13

agreement indicates that the consultant "agrees that he or she has reviewed the 'Consultant's Manual' and further agrees that he or she shall comply with the protocols contained therein when providing consultation services for this agreement." (Paragraph 9.) All of these documents are documents which should have been provided to Ms. Gardner for appeal under the authority cited above. None, of course, were provided.

Therefore, Ms. Gardner is not being given a fair appeals process.

**K.    Records Submitted**

\*    All medical records referenced above.

\*    Ms. Gardner's Declaration.

\*    Medication information found at www.drugs.com.

\*    MCN/Delheimer information.

**L.    Conclusion**

The termination of benefits to Ms. Gardner violated the terms of the Plans. Therefore, this appeal should be granted, benefits should be paid retroactively to her under both the Sickness Plan <u>and</u> the LTD Plan, with interest, and future benefits should be paid to her until and unless she is no longer eligible for benefits under the terms of the Plan.

In the course of reviewing this appeal, if further medical vocational opinions generated, please provide them to me for evaluation and comment prior to your final determination.

Very truly yours,

Robert J. Rosati

RJR/jaf

cc:    Melissa Gardner

(Page 82 of 194)

0707 3000 3392 PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

DATE OF ADMISSION:  03/13/2006

PRIMARY CARE PHYSICIAN:  John K. Miller, MD

CODE STATUS:  Full code.

IDENTIFYING DATA:  Husband's name is Gregory Gardner.  Cell phone number
58-0096.

CHIEF COMPLAINT:  Intractable back pain.

HISTORY OF PRESENT ILLNESS:  This 32-year-old right-handed female with no
significant history of low back pain who was in Springfield, Illinois, on
Thursday, March 9, 2006, in a seminar course working with computers and
started noticing waistline low back pain.  She was able to complete her tasks
that day, but the pain was becoming more intense.  She decided to stop at the
OSF Prompt Care on that Thursday and was given Vicodin and Skelaxin.  She was
able to return to her training job in Springfield for AT and T on Friday but
with increasing back pain.  At first, the pain became progressively worse
over the weekend.  She had no fevers, chills, nausea, or vomiting.  She had
no back trauma.  No history of herpes zoster.  She had no signs or symptoms
of cauda equina.  Pain became more intense, rating it as close to 9/10 to the
point where she went to the emergency room last evening at Methodist and had
a x-ray performed that revealed some mild DJD and partial sacralization of
degenerative changes at L4-L5 and L5-S1 as read at the emergency room at
Methodist on March 12, 2006.  She received 4 mg of morphine, Percocet, and
muscle relaxants and was sent home.

She had increasing pain today to the point where she woke about 4 o'clock
this morning and took her second Percocet.  She contacted her office but had
increasing pain and was sent to the emergency room for evaluation.

In the emergency room, she received 60 mg of IM Norflex and Nubain 20 mg x2.
Her pain initially was rated as a 7/10.  She states it is down about a 6/10
without much in the way of pain release with the above medications.

She denies any footdrop.  No signs or symptoms of cauda equina.  No
paresthesias or dysesthesias.  No radiculopathy symptoms with it.  No change
of bowel or bladder habits.  She was able to urinate in the emergency room
and thinks she had a bowel movement yesterday.  She does recognize that she
has increasing pain with cough.  She feels more comfortable when she is in
the left lateral decubitus position with her knees drawn to her chest.  She
has increasing pain with both sitting as well as leaving her legs supine.

She denies ever having a significant back problem like this before.  She has
been hospitalized for other reasons but never because of back pain.  She
denies any history of diskitis or back trauma that she can recall.

GARDNER, MELISSA A        32Y F
M0011391    DOB:
V#:6016433    451          REDACTED                      DT:HPIMP

                              HISTORY & PHYSICAL

                                                      PAGE  1

0707 5000 5 8 9 2 PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL 61614

secondary to her above back pain, she was admitted to the hospital for pain management and evaluation.

PAST MEDICAL HISTORY: History of migraines. She has had this for a number of years. She has been hospitalized, she estimates around 6 times. She had been seeing initially Dr. Ni and now recently Dr. Richard Lee. She thinks she had a significant migraine about 2 weeks ago but not previously. She has had a history of what sounds like a cubital tunnel release on the left, history of a D and C, history of ectopic pregnancy, status post T and A, and history of cholecystectomy. No significant history of osteoarthritis.

SOCIAL HISTORY: She is married. Her husband's name is Gregory. She has 2 children, 11 and 5. She smokes half pack a day. As a matter of fact, she had a cigarette in the wheelchair on the way up here to the ortho-neuro floor. She works currently for AT and T/SBC, she is going through a training course down in Springfield, Illinois.

FAMILY HISTORY: Mother has a history of hyperlipidemia and a questionable history of having what sounds like congenital narrowed spinal canal. Her father's family history is unknown. She has no siblings.

REVIEW OF SYSTEMS:
CARDIOVASCULAR: She denies any chest pressure or chest pain. No syncope or presyncope. No angina symptoms. No palpitations.
GASTROINTESTINAL: No hematochezia or melena. Significant for dyspepsia.
GENITOURINARY: She denies any hematuria. No history of kidney stones. No UTI symptoms.
NEUROLOGIC: Positive pain without radiculopathy. No paresthesias or dysesthesias. No signs or symptoms of cauda equina.
ORTHOPEDIC: No history of significant orthopedic problems in the past other than some low-grade DJD.
ENDOCRINE: Her last menstrual period is due this week, it was about 25 days ago. No history of hyperlipidemia or diabetes.
UROLOGIC: No footdrop. No radiculopathy. No signs or symptoms of cauda equina. No paresthesias or dysesthesias. No motor weakness, other than just increasing pain with either supine or walking.

MEDICATIONS: Depakote ER 500 mg PO q.a.m. for migraine prophylaxis. Her pharmacy is Walgreens at East Peoria. Maxalt 10 mg and Ultram. She does not feel this is very effective. She is not using anything OCPs at this time.

ALLERGIES: Significant for DEMEROL causing blisters. She had an IM injection, it sounds like, and she had quite a bit of blisters on her gluteal area; nausea and vomiting that is significant with ASPIRIN; and COMPAZINE caused anxiety and mental status changes. She has never had any history of any problems with morphine, although it is mentioned as possible allergy on

GARDNER, MELISSA A    32Y F
#0011391    DOB:
#:6016433    451 REDACTED            DT:HPIMP

HISTORY & PHYSICAL

PAGE   2

0 7 0 7 3 0 0 0 3 8 8 2   PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL 61614

ler emergency room sheet; this, she tells me is inaccurate.

PHYSICAL EXAMINATION:
VITAL SIGNS: Blood pressure 157/87 with pulse of 70, respirations of 20, and temperature of 98.8. Saturating 98% on room air without any labored respirations.
GENERAL: Positive discomfort, she rates as a 6/10 lying in left lateral decubitus position with increasing pain with legs supine. She was able to get out of wheelchair in order to have a cigarette outside the emergency room earlier. Here with her mother.
HEENT: Oropharynx pink and moist. Uvula midline.
NECK: No thyromegaly. No carotid bruits.
CARDIOVASCULAR: Regular rate and rhythm without murmur. S1 and S2. No S3.
RESPIRATORY: Clear to auscultation without wheezes or crackles.
ABDOMEN: Soft, obese, and nontender. Bowel sounds are positive. No masses.
GENITOURINARY: Deferred.
RECTAL: Deferred.
BREASTS: Deferred.
EXTREMITIES: She has normal motor skills 5/5 on her lower extremities. She has no paresthesias or dysesthesias. No radiculopathy. She has no tenderness over her SI joints bilaterally. I did not check a straight leg raise because of muscle spasm and the patient's discomfort. She is able to move on her own power, rolling from side to side in the bed as well as straight her legs, preferring do this in a decubitus position. She has normal ankle reflexes, dorsiflexion as well as patellar reflexes with good sensation and distal pulses. Negative cords. Negative Homans. No lower extremity edema.
BACK: She has no real tenderness over the entire length of the supraspinous processes. She has some positive tenderness over the T12 all the way through L4 region, paraspinous muscles with no obvious spasm with exam, although there is some tenderness to the skin. There is no obvious herpes zoster. No angles. No erythema. No bullae or blisters.

ASSESSMENT:
1. A 32-year-old female, right handed, with intractable back pain.
2. Musculoskeletal nature. I do not believe she has any significant radiculopathy at this time. 3. Family history of having some kind of congenital stenosis in the spinal canal in the mother from what she can recall. 4. Drug allergies as above.

PLAN:
1. Admit for back pain with morphine sulfate for pain management.
2. We will use Zofran as an antiemetic.
3. We will use Norflex 60 mg IM q.12 h. for muscle spasm.
4. We will use Aqua pad heat for the patient's comfort.
5. We will continue on her Depakote for migraine prophylaxis.

GARDNER, MELISSA A      32Y F
#0011391    DOB: **REDACTED**
#:6016433   451                              DT:HPIMP
                HISTORY & PHYSICAL            PAGE   3

Date Recv: 04/11/2006
DoB: 12/02/1975
Claim#: A625027342000101

070730003892    PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

.  We will check a urine pregnancy test.
.  We will consult Dr. Bruce Chien, pain management specialist, secondary to
intractable back pain and see if she needs to proceed with MRA imaging of her
low back.
.  Any signs and symptoms of cauda equina which have discussed with the
patient as well as nursing staff to contact me immediately or urinary
retention with good comprehension.
.  The patient will be followed by Dr. Miller throughout her hospital course
with whom I will discuss her care.  He is aware of her admission.


ROBERT B. ADAMS, MD/hs/lr
D:   03/13/2006 20:29
T:   03/14/2006 12:00
081136/32755/32446

Date Recv: 04/11/2006

GARDNER, MELISSA A        32Y F
250011391    DOB: REDACTED
R#:6016433    451

DT:HPIMP

HISTORY & PHYSICAL                    PAGE   4

Claim#: A625007022000101    Doc#: 1250075

4107073000389221          A625027340000101          07/30/2007

R-0758

Apr 05 06 10:36a   DR CHIEN   309 938   P.7

0707 30003892

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL 61614

DATE OF OPERATION:       03/15/2006

SURGEON:                 BRUCE B. CHIEN, MD

PREOPERATIVE DIAGNOSIS:  HERNIATED L4 NUCLEUS PULPOSUS.

POSTOPERATIVE DIAGNOSIS: HERNIATED L4 NUCLEUS PULPOSUS.

OPERATION:               MIDLINE L4 EPIDURAL STEROID INJECTION

INDICATION: Melissa Gardner is ready for her midline L4 epidural steroid
injection.

PROCEDURE: After written and informed consent, the patient was placed in a
seated position over an over-bed tray table and the midline prepped at the
level of the L4-L5. A #18-gauge Tuohy needle was passed to a depth of 8 cm
in the midline with the patient's stereotactic guidance to loss of resistance
were upon 10 mL containing triamcinolone 80 mg, lidocaine 0.5% were injected.
This was well tolerated. The needle was withdrawn and the patient actually
felt sufficiently better that she wanted to go to the bathroom to empty her
bladder which she did in the accompaniment of the staff nurse. She was given
instruction not to arise from the toilet unless our staff was there to assist
her. The patient tolerated this well.

BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
D:   03/15/2006 06:44
T:   03/15/2006 19:12
P:   03/16/2006 15:35
116797/34653/32446

Fax Rcvd: 4/5/2006 11:27:01 AM

GARDNER, MELISSA A      32Y F
860011391     DOB:
AC#:6016433   45      REDACTED              DT:ORRPTIM

OPERATIVE REPORT                            PAGE   1

ClaimP: A625007002000101   DocID: 1258262

4107073000389221          A625027340000101          07/30/2007

R-0759

Apr 05 06 10:36a     DR CHIEN          309 938          p.8

07 07 300 03 892

✠ **PROCTOR**
H O S P I T A L
5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071

**TRI-COUNTY RADIOLOGISTS LTD.**

3/24/06
9:32:26:                                                          PAGE    1

PATIENT NAME: GARDNER, MELISSA
ORDERING DR: CHIEN, BRUCE A              M/R NUMBER:        A60011591
BIRTH DATE:     REDACTED                 TRANSCRIBE DATE:   3/24/06
OUTPATIENT: MR                           ORDER NUMBER:      0841158
                                         ACCT. NUMBER:      5016288

EXAMINATION: MRI CERVICAL SPINE WITHOUT CONTRAST
DATE OF EXAM: 3-23-06
CLINICAL HISTORY:  R C6 RADICULOPATHY  NUMBNESS R HAND  WEAKNESS L HAND

No abnormal signal identified within the cervical portion of the cord.  No
abnormal signal identified within the marrow-containing portion of the cervical
vertebral bodies.

There are mild annular bulges of the C3-C4, C4-C5, and C5-C6 discs with mild
mass effect upon the anterior aspect of the thecal sac and anterior subarachnoid
space.  No significant central spinal stenosis or foraminal stenosis identified.

IMPRESSION:

1.  NEGATIVE MRI EXAMINATION OF THE CERVICAL SPINE FOR FRANK DISC HERNIATIONS OR
SPINAL STENOSIS.

2.  NO ABNORMAL SIGNAL IDENTIFIED WITHIN THE CERVICAL PORTION OF THE CORD OR THE
MARROW-CONTAINING PORTION OF THE CERVICAL VERTEBRAL BODIES.

D:  3-23-06
T:  3-24-06

COPY TO:  DR. DINH

PHYSICIAN COPY          GEORGE A. GENTRY, M.D.

**DIAGNOSTIC IMAGING CONSULTATION REPORT**
Page 226 of 234

Apr 05 06 11:57a     DR ● CHIEN          309● ●938          p.2
07 07 3000 3832

## CIRA                                                        CIRA

## CENTRAL ILLINOIS REHABILITATION ASSOCIATES, S.C.

Telephone: 309-692-4588
Fax: 309-692-4483

Richard A. Flores, M.D.

### CIRA EVALUATION & MANAGEMENT FORM

Appointment Date: Underlined April 3, 2006                          Page 1

Bruce B. Chien, M.D.
Internal Medicine & Pain Medicine
5401 N. Knoxville Avenue
Suite #212
Peoria, Illinois 61614

Name: Melissa Gardner #6771          Age: 32

This now 32-year old female presents with the following history. She had significant low back pain with lumbar radicular pain on 3/9/06. Within the next few days she developed numbness and tingling of her upper and lower extremities. Although, she has had a history of cervical pain she was vague as to what the radicular pattern was. She had a previous left cubital tunnel syndrome, decompression and transposition of the ulnar nerve a number of years ago but predominance of her numbness and tingling is in the ulnar distribution of her hand and she has lost strength. She has lost fine motor control in her hands.

On March 29, 2006, Dr. Bruce Chien referred this patient for EMG & Neurosensory Testing for C6 radiculopathy. Her hands and toes are numb.

She has slowly progressing signs and symptoms of numbness, tingling, and weakness in the hands bilaterally. She has numbness and tingling in the feet bilaterally. She has neck pain. She has low back pain. She does not have increased pain with Valsalva maneuvers. She has always had irregular bowel function. She has not had any excess exposure to chemicals. She rarely drinks alcohol.

Review of Systems: She is not diabetic and she does not have any thyroid problems.
Allergies: ASA, Compazine, and Demerol.

Past History:
Illnesses: She has had strep throat, tonsillitis, and severe migraines. She was hospitalized with a lymph infection recently.
Injuries: She broke her left leg two times as a child, she has broken some toes, she had a concussion, contusion, torn knee muscles and tendons, and she has dislocated her kneecap.
Operations: DNC, ectopic P.G. removal, cholecystectomy, tonsilloadenoidectomy, and cubital tunnel syndrome decompression.
Treatments: She will be starting aqua P.T. soon, medications, walker p.r.n., and a TENS unit.
Social History: She is married and has 2 children.
Family History: Her mother is living; she has a small spinal column, stomach problems and hypertension.
Daily Medication: Depakote, Gabapentin, Nabumetone, and Tramadol.

PHYSICAL EXAMINATION:

6339-A N. Big Hollow Rd.     Peoria, IL 61615

Claim#: A625027022000101   DocID: 1258956
Fax Rcvd: 4/5/2006 12:49:31 PM

4107073000389221          A625027340000101          07/30/2007

R-0761

Name: Melissa Gardner #6771          Date: April 3, 2006              Page 2
Height: 5'10 ½" Weight: 244 lbs  Dominant hand: right. BP: 126/78 Pulse: 84 Resp: 16 .

She has tenderness and tenseness of the C2-S5 paraspinals and hands.

She has decreased cervical range of motion at 15/30 degrees forward flexion and extension, and 20/40 degrees right and left lateral flexion. She has decreased thoracolumbar range of motion at 70/90 degrees forward flexion, 10/30 degrees extension, and 10/20 degrees right and left lateral flexion. She has decreased strength in the hands bilaterally. She has decreased deep tendon reflexes at all sites bilaterally. She has decreased pinprick sensation in the upper and lower extremities bilaterally. She has normal proprioception in the upper and lower extremities bilaterally. She has decreased vibratory sensation in the hands bilaterally. She has equivocal Tinel's for C.T.S and cubital tunnel syndrome in the upper extremities bilaterally and tarsal tunnel syndrome in the lower extremities bilaterally.

SKIN: She has no lesions, ulcers, or rashes.
PERIPHERAL VASCULAR SYSTEM: She has normal pulses and temperature.
GAIT AND STATION: Antalgic.
PSYCHIATRIC/MENTAL STATUS: She is oriented to person, place, and time and has normal mood and affect.

ASSESSMENT OF MEDICAL DECISION MAKING

A. DIFFERENTIAL DIAGNOSIS: status post 3/9/06 (Date) onset of signs and symptoms of:
1. 353.4 Lumbar nerve root lesion
2. 354.2 Cubital tunnel syndrome
3. 356.4 Peripheral neuropathy

B. Coordinate case management with: (referring physician):  Dr. Bruce Chien

C. Plan of management:
    1. Do PSSD Testing – reader of this report is referred to that report for the details
    2. Do EMG Testing – reader of this report is referred to that report for the details
    3. Other interventions:

D. Summary of Test Results: Please see dictated reports.

Reviewed by Flores ....
Richard A. Flores, M.D.
RAF: lb                          Records left OPEN

cc:    Dr. John K. Miller

Fax Rcvd: 4/5/2006 12:49:31 PM

Claim#:4625007002000101  DocID: 1238968

Apr 05 06 11:57a     DR CHIEN     309 930     p.4

07073000389 2

## CIRA                                                                    CIRA

## CENTRAL ILLINOIS REHABILITATION ASSOCIATES, S.C.

Telephone: 309-692-4588
Fax: 309-692-4483

### Richard A. Flores, M.D.

### NEUROSENSORY TESTING

Appointment Date:  April 3, 2006                                    Page 1

Bruce B. Chien, M.D.
Internal Medicine & Pain Medicine
5401 N. Knoxville Avenue
Suite #212
Peoria, Illinois 61614

Name:  Melissa Gardner #6771          Age: 32

Neurosensory Testing and EMG of the upper and lower extremities was performed on 4/3/06, on Mrs. Melissa Gardner, a 32-year old female who had significant low back pain with lumbar radicular pain on 3/9/06. Within the next few days she developed numbness and tingling of her upper and lower extremities. Although, she has had a history of cervical pain she was vague as to what the radicular pattern was. She had a previous left cubital tunnel syndrome, decompression and transposition of the ulnar nerve a number of years ago but predominance of her numbness and tingling is in the ulnar distribution of her hand and she has lost strength. She has lost fine motor control in her hands.

Neurosensory Testing was done of the ulnar, median, and radial nerve of the upper extremities as well as grip and pinch strength in the hands. In the lower extremity, we tested the medial plantar branch of the posterior tibial nerve, the calcaneal nerve, and the deep peroneal nerve.

Universally throughout, the cutaneous pressure thresholds for 2-point discrimination (2PT) were abnormally elevated bilaterally at all test sites. The 2-point discrimination (2PT) was present at some test sites but not at all. The areas where it was not present included the right radial nerve in the upper extremities and the right medial plantar branch of the posterior tibial nerve as well as the calcaneal nerve and deep peroneal nerves bilaterally. The grip strength in the dominant right hand was at 56% of anticipated normal, but only 34% of anticipated normal in the left. The ratio of median to ulnar grip was such that the median nerve innervated portion was at a ratio of 1.3 on the left and 1.4 on the right. Coefficient of variation was within normal limits. Pinch strength was reduced at maximum to 20% on the left and 51% on the left.

The results of Neurosensory Testing and motor testing for grip are consistent with moderate to severe bilateral polyneuropathy with beginning axonal loss in many of the lower extremity nerves and the right radial nerve. There is a marked reduction of grip strength bilaterally in the hands, more so from the ulnar innervated muscle component than the median.

EMG of the muscles of the upper and lower extremities was tested bilaterally. The reader of this report is referred to that report for the details. EMG showed evidence consistent with:

1. Bilateral mild to moderate denervation in the ulnar nerve distribution from the elbow distally.
2. EMG of the lower extremities was consistent with mild bilateral L4 radiculopathies.

### 6339-A N. Big Hollow Rd.     Peoria, IL 61615

Fax Rcvd: 4/5/2006 12:49:31 PM

Client#: A625027022000101    DocID: 1258966

4107073000389221          A625027340000101          07/30/2007

R-0763

Apr 05 06 11:58a    DR  CHIEN                3096 8938              p.5

0707300038 92

Name: Melissa Gardner #6771            Date: April 3, 2006              Page 2
SUMMARY OF DIAGNOSTIC TESTING IS AS FOLLOWS:

1. Neurosensory Testing of the upper and lower extremities is consistent with moderate to severe bilateral sensory polyneuropathy with beginning axonal loss, especially in the lower extremities.

2. Grip and pinch testing shows marked reduction of grip strength to 56% of expected normal in the right hand and 34% of expected normal on the left hand, with the predominance of the loss in the ulnar nerve innervated muscles rather than the median nerve innervated muscles.

3. EMG of the upper and lower extremities is consistent with:
   a. Bilateral mild to moderate denervation in the ulnar nerve distribution from the elbows distally bilaterally.
   b. Mild bilateral L4 radiculopathies.

Thank you very much.
Sincerely,

Richard A. Flores, M.D.
RAF: lb

cc:    Dr. John K. Miller

Fax Rcvd: 4/5/2006 12:49:31 PM

Client: A625027022000101  DocID: 1255866

Page 212 of 236

4107073000389221              A625027340000101                07/30/2007

R-0764

Apr 05 06 11:58a    DR CHIEN    309E 938    p.6

0707 30003892

# CIRA                                                    CIRA

## CENTRAL ILLINOIS REHABILITATION ASSOCIATES, S.C.

Telephone: 309-692-4588
Fax: 309-692-4483

**Richard A. Flores, M.D.**

### ELECTRONEUROMYOGRAPHY

Appointment Date: April 3, 2006                          Page 1

Bruce B. Chien, M.D.
Internal Medicine & Pain Medicine
5401 N. Knoxville Avenue
Suite #212
Peoria, Illinois 61614

Name: Melissa Gardner #6771          Age: 32

EMG Study of the muscles of the upper extremities was tested bilaterally using muscles representing myotomes C5-T1. The lower extremity musculature was tested using muscles representing myotomes L2-S2. In the upper extremities, in the ulnar nerve innervated muscles from the elbow distally including the flexor carpi ulnaris, flexor digitorum profundus for digits 4 and 5, first dorsi interossei, and abductor digiti quinti, there was increased insertional activity, 1+ fibrillations, and 2+ positive waves. The activated motor unit potential showed normal amplitude and duration with increased polyphasicity and a mild to moderate decrease in number of motor units. In the lower extremities, in the predominantly L4 innervated muscles included the quadriceps femoris, adductor longus, and tibialis anterior, there was increased insertional activity, 2+ fibrillations, and 2+ positive waves. The activated motor unit potential showed normal amplitude and duration with increased polyphasicity and a mild but definite decrease in number of motor units. All the other muscles of the upper and lower extremities showed normal insertional activity with no fibrillations or positive waves. The activated motor unit potential showed normal amplitude, duration, degree of polyphasicity, and number of motor units.

**IMPRESSION OF EMG OF THE UPPER AND LOWER EXTREMITIES SHOWS ELECTRICAL EVIDENCE OF:**

1.  Bilateral mild to moderate denervation in the distribution of the ulnar nerve from the elbow distally.
2.  Mild bilateral L4 radiculopathies.

Thank you very much.
Sincerely,

*Richard A. Flores*
Richard A. Flores, M.D.
RAF: lb

cc:    Dr. John K. Miller

Fax Rcvd: 4/5/2006 12:49:31 PM

Client: A625027002000101    DocID: 1255968



Fax Rcvd: 4/5/2006 12:49:31 PM

Claim#: A625007022000101    DocID: 1258866

4107073000389221          A625027340000101          07/30/2007

R-0766



Apr 05 06 11:59a     DR CHIEN     3096 0938     p.8

0 7 0 7 3 0 0 0 3 6 9 2

Central Illinois Rehabilitation Associates, S.C.     Summary Pinch Report Page 1

Patient Name: GARDNER, MELISSA     Involved Side: B

Patient ID: 6771     Visit Date: 04/03/2006     Visit No: 1     Date of Birth: REDACTED



| Sustained Key | Trials 1 | | 2 | | 3 | | AVG | | |
|---|---|---|---|---|---|---|---|---|---|
| | Left | Right | Left | Right | Left | Right | Left | Right | |
| Peak | 2.3 | 5.5 | 2.0 | 6.3 | 1.7 | 4.6 | 2.0 | 5.1 | KG |
| Average | 1.7 | 5.0 | 1.5 | 4.0 | 1.1 | 3.8 | 1.5 | 4.2 | KG |
| Reaction Time | 0.2 | 0.2 | 0.2 | 0.3 | 0.3 | 0.6 | 0.2 | 0.4 | SEC |
| Rise Time | 0.1 | 0.1 | 0.1 | 0.5 | 0.5 | 0.4 | 0.3 | 0.3 | SEC |
| % Fatigue | 33.0 | 16.3 | 54.5 | 39.8 | 44.2 | 37.6 | 43.9 | 31.2 | |
| Squeeze Time | 2.7 | 1.2 | 2.4 | 1.9 | 2.0 | 1.8 | 2.4 | 1.6 | SEC |
| Fatigue Rate | 0.3 | 0.7 | 0.5 | 1.1 | 0.4 | 0.9 | 0.4 | 0.9 | KG/SEC |
| Capacity | 5.5 | 15.5 | 4.6 | 12.1 | 3.6 | 9.5 | 4.6 | 12.4 | KG*SEC |

I/UI
C.V.     14.50  8.49

Peak:  Average peak strength for all trials

Average:  Average of all data from peak to end of test

Reaction Time:  Time from start beep to 10% of peak

Rise Time:  Time from 10% of peak to 90% of peak

% Fatigue:  100*(Peak-Reading at end beep)/Peak

Squeeze Time:  Time from peak to end beep

Fatigue Rate:  (Peak-Reading at end beep)/Squeeze Time

Capacity:  Area under the curve

Fax Rcvd: 4/5/2006 12:49:31 PM

Claim#: A625027022000101   DocID: 1255966

Apr 05 06 11:59a    DR  CHIEN             3096  8938            p.9

0 7 0 7 3 0 0 0 3 6 9 2

Central Illinois Rehabilitation Associates, S.C.          PSSD Report Page 1

Patient Name: GARDNER, MELISSA
Patient ID:  6771          Visit Date: 04/03/2006          Visit No:  1          Date of Birth: **REDACTED**
NOTE:  Underline indicates abnormal Pressure Threshold          * Indicates abnormal spacing

### Dorsal Web Space 1/2

| | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 18.3 | | 5.3 | |
| 2 Pt Static | 60.0 | 15.0 * | 72.0 | 15.0 * |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |



| | 1 Pt Static | 2 Pt Static | 1 Pt Moving | 2 Pt Moving |
|---|---|---|---|---|
| Gm/mm² | 1.0 | 8.1 | 1.0 | 9.9 |
| mm | | 6.2 | | 3.7 |

—Line indicates 99% normal confidence level

### Great Toe Pulp

| | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 46.8 | | 38.9 | |
| 2 Pt Static | 79.1 | 4.5 | 85.8 | 15.0 * |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |



| | 1 Pt Static | 2 Pt Static | 1 Pt Moving | 2 Pt Moving |
|---|---|---|---|---|
| Gm/mm² | 1.0 | 8.7 | 1.0 | 4.7 |
| mm | | 4.5 | | 3.6 |

—Line indicates 99% normal confidence level

Fax Rcvd: 4/5/2006 12:49:31 PM

Claim#: A625007020000101    DocID: 1258968

Page 235 of 236

R-0768

Apr 05 06 11:59a     DR. CHIEN          3096 ●938          p.10

0707300038 92

Central Illinois Rehabilitation Associates, S.C.          PSSD Report Page 2

Patient Name: GARDNER, MELISSA

Patient ID: 6771          Visit Date: 04/03/2006          Visit No: 1          Date of Birth: REDACTED

NOTE: Underline indicates abnormal Pressure Threshold     * Indicates abnormal spacing

**Heel (Medial)**

| | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 20.5 | | 12.6 | |
| 2 Pt Static | 88.2 | 20.1* | 97.4 | 20.1* |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |



|  | 1 Pt Static | 2 Pt Static | 1 Pt Moving | 2 Pt Moving |
|---|---|---|---|---|
| Gm/mm² | 1.1 | 13.7 | 1.0 | 5.6 |
| mm | | 5.3 | | 3.7 |

**Radial Hand Dorsum**

| | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 6.9 | | 19.8 | |
| 2 Pt Static | 56.6 | 3.0 | 83.6 | 10.0* |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |



|  | 1 Pt Static | 2 Pt Static | 1 Pt Moving | 2 Pt Moving |
|---|---|---|---|---|
| Gm/mm² | 1.0 | | 1.0 | 1.0 |
| mm | | 3.0 | | 3.0 |

Fax Rcvd: 4/5/2006 12:49:31 PM

Claim#: A625007t22000101     DocID: 1258966

4107073000389221          A625027340000101          07/30/2007

R-0769



0707 30005392

Central Illinois Rehabilitation Associates, S.C.

PSSD Report Page 3

Patient Name: GARDNER, MELISSA

Patient ID: 6771     Visit Date: 04/03/2006     Visit No: 1     Date of Birth: REDACTED

NOTE: Underline indicates abnormal Pressure Threshold     * indicates abnormal spacing

**Thenar Eminence**

| | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 2.2 | * | 2.0 | |
| 2 Pt Static | 94.3 | 6.1 | 71.6 | 6.0 |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |

Left    Right

Gm/mm²

1 Pt Static   2 Pt Static   1 Pt Moving   2 Pt Moving

--Line indicates 99% normal confidence level

Gm/mm²   1.2   6.0   1.2   6.0
mm              6.0         6.0

**Ulnar Hand Dorsum**

| | Left Gm/mm² | Spacing mm | Right Gm/mm² | Spacing mm |
|---|---|---|---|---|
| 1 Pt Static | 4.5 | | 2.0 | |
| 2 Pt Static | 82.2 | 3.0 | 102.4 | 3.0 |
| 1 Pt Moving | | | | |
| 2 Pt Moving | | | | |

Left    Right

Gm/mm²

1 Pt Static   2 Pt Static   1 Pt Moving   2 Pt Moving

--Line indicates 99% normal confidence level

Gm/mm²   1.0   1.0   1.0   1.0
mm              3.0         4.0

Fax Rcvd: 4/5/2006 12:49:31 PM

Claim#: A82500702200101   DocID: 1288666

Page 218 of 236

Apr 05 06 10:35a    DR  CHIEN              3096  8938              P.1
8707 30003892

## PHYSICIAN'S SUBMISSION OF MEDICAL RECORDS

## INSTRUCTIONS TO THE PHYSICIAN

1.  Your patient has filed a disability claim requesting wage replacement benefits for a current absence commencing March 14, 2006. In order to make a determination on the patient's eligibility for these benefits you are requested to submit to the AT&T Integrated Disability Service Center (AT&T IDSC) by: April 5, 2006.

    A.  All medical records relevant to the above-referenced accommodation, including chart notes, treatment plan, diagnostic test results, Specialist reports, etc., plus

    B.  The "Submission of Medical Records" form at the bottom of this sheet, attached to the front of the records being submitted.

2.  Failure to provide the requested relevant medical records will adversely impact your patient's request for accommodation.

3.  Any charges for the requested records are the responsibility of your patient.

4.  Once you have submitted all the requested medical information to AT&T Integrated Disability Service Center, the Job Accommodation Specialist may make a request for a physician peer-to-peer discussion with you regarding the medical condition.

5.  If the accommodation is of an extended duration, periodic requests will be made for updated medical records.

---

### SUBMISSION OF MEDICAL RECORDS

Employee Name:  Melissa Gardner        SS          REDACTED        Claim         er:  A625007022-0001-01

Print Physician's Name:  BRUCE B. CHIEN, MD SC

Physician's Signature:  Bruce B Chien

Address:  5441 N. KNOXVILLE, STE 212  Telephone #:  (309) 691-8473
PEORIA, IL 61614        Date Rec'd::

(To be completed by AT&T IDSC)

**AT&T Integrated Disability Service Center
PO Box 61569, King of Prussia, PA 19406
Fax: 1 (866) 224-4627**

Fax Rcvd: 4/5/2006 11:27:01 AM

Claim#:A625007022000101  DocID:1256262

Apr 05 06 10:35a    DR CHIEN                    3096 8938              p.2

07073000369-2

Bruce B. Chien M.D.
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
(309) 691-8973  Fax (309) 691-8938

Date: April 4, 2006

Name: Melissa Gardner

Address: 124 Putnam, E Peo.

RX: OK to Travel by Train but must be able
To change position frequently & no prolonged
single position

May Substitute: _____        Signature: Bruce Chien
Do Not Substitute: _____     Fed. DEA: AC8777433
Non Repeteur: _____          IL License: 036-063979

Fax Rcvd: 4/5/2006 11:27:01 AM

Client#: A625007022000101   DocID: 1258252

4107073000389221              A625027340000101              07/30/2007

R-0772

Apr 05 06 10:36a    DR  CHIEN           3096  8938           p.3

0707300053892

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

March 14, 2006

Melissa Gardner is a 32 y.o. w. female with the acute onset of back pain, midline, lumbar, on Thursday while at work (desk work). Her drive home from Springfield uncomfortable, with her noticing it to be painful to lift her leg to the brake pedal. It did not remit at home in the standing or recumbent position and she went to OSF Prompt Care in Morton, where she was given Vicodin and skelaxin. Friday she went to work, was miserable. Went on Sunday to the ED at MMCI- no MRI, Xrays→percocet. Awoke 0400, called office, went to ED.

PMH: Migraine, about three years., Looked after by Dr Richard Lee. Due for a menstrual period.
FH: Everyone I her family has back pain.
SH: Smoker, WANTS to smoke, doesn't want a patch.
Allergies: Demerol→blisters, ASA→NV, Compazine →anxiety. Wants MS.
Surgical: Chole, DC, T&A, Ectopic. Cubital tunnel on the left.
ROS: Otherwise negative. She REALLY wants to smoke.

Physical Exam: VS are unremarkable. PERRLA VFs are full, fundi are benign. Chest: clear per Dr. Dunaway. CV: s S3, S4. mumur gallop. Abd: No organomegaly. Spine: Tender at L4 in the midline. SLR is positive on both sides, Right >Left at 30 and 45 degrees respectively. There is paraspinous sapsm but no radiation. Motor and sensory are normal. DTRs are 2+. She can stand at the bedside but with much axial pain. SI joints are benign.

Impression: Probably an L4 disc syndrome. I've explained in detail the interventional algorithm- but as she's never been scanned at three hospitals, we'll accomplish that today. She is aware that Lumbar ESI has about a 60% yield over 6-12 months when approached in three 2 week increments; that there are steroid limitations and we are careful to not broach maximum dose limits. Narcotic is unlikely to be of any long term use; Surgical evaluation clearly has to pend on the MRI. Implanted devices are unlikely to be of much use as her distribution is axial still at this time. Intradiscal procedures- though I do them, are reserved for "last chance" as the risk of discitis is irreducible at 0.5%.

We'll await the MRI this afternoon.

Regards,

Bruce B. Chien, M.D>

Fax Rcvd: 4/5/2006 11:27:01 AM

Claim#: A625007022000101  DocID: 1258262

4107073000389221           A625027340000101           07/30/2007

R-0773

Apr 05 06 10:36a  DR B CHIEN  309P  8938  p.4

0707300033892

⬦ **PROCTOR**
 H O S P I T A L   5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071   TRI-COUNTY RADIOLOGISTS LTD.

3/14/06
17:34:55   PAGE   1

PATIENT NAME: GARDNER, MELISSA
ORDERING DR: CHIEN, BRUCE P
BIRTH DATE:  **REDACTED**
INPATIENT - NC  1/ 1

M/R NUMBER:    860011391
TRANSCRIBE DATE:  3/14/06
ORDER NUMBER:   0830583
ACCT. NUMBER:   6016433

EXAMINATION:  MRI LUMBAR SPINE WITHOUT & WITH CONTRAST
DATE OF EXAM:  3/14/06
CLINICAL HISTORY:  INTRACTABLE LOW BACK PAIN

MRI of the lumbar spine was performed with and without the aid of intravenous contrast.

The conus medullaris of the cord ends at the appropriate level with no abnormal enhancement or mass lesions identified.

No abnormal bone marrow edema or enhancement of the marrow-containing portion of the lumbar vertebral bodies.

The L4-L5 Disc Space Level:  There is a broad-based disc bulge of the L4-L5 disc associated with a posterior and central annular tear.  There is bilateral mild to moderate narrowing of the neural canal and neural foramina at this disc space level.

The L3-L4 Disc Space Level:  There is a broad-based annular bulge with an 8 mm area of annular tear involving the posterior central aspect of the annulus.  No significant narrowing of the neural canal and neural foramina.

The remainder of the lumbar disc spaces appear to be unremarkable for frank disc herniations or spinal stenosis.

IMPRESSION:

DEGENERATIVE DISC DISEASE EVIDENT BY MILD DEGENERATIVE DEHYDRATION AND LOSS OF DISC SPACE HEIGHT OF THE L3-L4, L4-L5 AND L5-S1 DISCS.  THIS IS ASSOCIATED WITH AGE-INDETERMINATE POSTERIOR CENTRAL ANNULAR TEARS OF THE L3-L4 AND L4-L5 DISCS.

D:  3/14/06
T:  3/14/06

CC:jr

PHYSICIAN COPY   GEORGE A. GENTRY, M.D.

**DIAGNOSTIC IMAGING CONSULTATION REPORT**

4107073000389221   A625027340000101   07/30/2007

R-0774

Apr 05 06 10:36a    DR  CHIEN          3096  8938          p.5

070730003892

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL  61614

DATE OF ADMISSION:  03/13/2006

CONSULTATION DATE:  03/14/2006

ATTENDING PHYSICIAN:  John K Miller, MD

CONSULTING PHYSICIAN:  BRUCE B CHIEN, MD

Consultation is in regard to acute-onset mid lumbar back pain.

Melissa Gardner is a 32-year-old female with acute onset of back pain,
midline, lumbar on Thursday while at work.  She sits at a desk at Ameritech
in Springfield.  Her drive home to East Peoria from Springfield was
uncomfortable with her noticing that it was painful to lift her leg to the
brake pedal.  This did not remit at home in a standing or recumbent position
and she went to OSF Prompt Care in Morton where she was given Vicodin and
Skelaxin.  She went to work on Friday, was miserable.  On Sunday, she went to
the emergency department at MMCI, no MRI was performed.  She had x-rays done
and was given Percocet.  She awoke at 0400 on Monday, called Dr. Miller's
office, went to the emergency room.

PAST MEDICAL HISTORY:  Migraine for about 3 years, looked after by Dr.
Richard Lee.  She is due for her menstrual period.

FAMILY HISTORY:  Everyone in her family has back pain.

SOCIAL HISTORY:  She wants to smoke, does not want a patch.

ALLERGIES:  DEMEROL LEADS TO BLISTERS, ASA LEADS TO NAUSEA AND VOMITING,
COMPAZINE LEADS TO ANXIETY.  She wants morphine.

SURGICAL HISTORY:  Cholecystectomy, D and C, T and A, ectopic, and cubital
tunnel on the left.

REVIEW OF SYSTEMS:  Otherwise negative.  She really wants to smoke.

PHYSICAL EXAMINATION:
GENERAL:  She is approximately 200 pounds, looks to be about 5 feet 7 inches.
VITAL SIGNS:  Unremarkable.
HEENT:  Pupils are equal, round, and reactive to light and accommodation.
Visual fields are full.  Fundi are benign.
CHEST:  Clear per Dr. Dunaway.
CARDIOVASCULAR:  Without S3, S4, murmur, or gallop.
ABDOMEN:  Without organomegaly.
SPINE:  Tender at L4 in the midline.
EXTREMITIES:  Straight leg raising is positive on all sides, right greater
than left at 30 and 45 degrees respectively.  There is paraspinous spasm but
no radiation.  Motor and sensory are normal.  Deep tendon reflexes are 2+.

GARDNER, MELISSA A     32Y F
860011391    DOB:
AC#:6016433    451          **REDACTED**                    DT:CONSHPIM

CONSULTATION REPORT

PAGE  1

Fax Rcvd:  4/5/2006 11:27:01 AM

DocID: 1258262

Client: A625007072000101

Apr 05 06 10:36a     DR CHIEN          3096 ●938          p.6

0 7 0 7 3 0 0 0 3 8 9 2

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL  61614

She can stand at the bedside but with much axial pain.  SI joints are benign.

IMPRESSION:  This is probably an L4 disk syndrome particularly given the fact
that being seated in the automobile is uncomfortable.  I have explained in
detail the intervention, outcome, and that she has never been scanned at any
of the 3 hospitals and we need to accomplish that today.  She is aware that
lumbar ESI is about a 60% yield over 6 to 12 months when approached in three
2-week increments; and that there are steroid limitations which we are
careful not to broach or approach the maximum dose limits.  Narcotics are
unlikely to be of long-term use.  Surgical evaluation clearly has to depend
on the MRI.  Implanted devices are unlikely to be of much use as her
distribution is axial still at this time.  As for intradiskal procedures, I
do do them but these are reserved for a last chance as the risk of diskitis
is irreducible at 0.5% and is a patient care disaster.  We will await the MRI
this afternoon.

Best regards,

BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
D:    03/14/2006 09:57
T:    03/15/2006 01:43
P:    03/15/2006 15:23
990810/31201/32446

Fax Rcvd: 4/5/2006 11:27:01 AM

GARDNER, MELISSA A          32Y F
860011391      DOB
AC#:6016433    4

REDACTED

CONSULTATION REPORT

DT:CONSHPIM

PAGE  2

Claim#:A625007/02000101   DocID:1268282

4107073000389221          A625027340000101          07/30/2007

R-0776



**PROCTOR**
H O S P I T A L

5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071

TRI-COUNTY RADIOLOGISTS LTD.

3/24/06
9:32:26

PAGE    1

PATIENT NAME: GARDNER, MELISSA
ORDERING DR:  CHEW, BRUCE B        **REDACTED**
BIRTH DATE:
OUTPATIENT: MR

M/R NUMBER:     860011391
TRANSCRIBE DATE:   3/24/06
ORDER NUMBER:   0841198
ACCT. NUMBER:   6018288

EXAMINATION:  MRI CERVICAL SPINE WITHOUT CONTRAST
DATE OF EXAM: 3-23-06
CLINICAL HISTORY:  R C6 RADICULOPATHY  NUMBNESS R HAND  WEAKNESS L HAND

No abnormal signal identified within the cervical portion of the cord.  No
abnormal signal identified within the marrow-containing portion of the cervical
vertebral bodies.

There are mild annular bulges of the C3-C4, C4-C5, and C5-C6 discs with mild
mass effect upon the anterior aspect of the thecal sac and anterior subarachnoid
space.  No significant central spinal stenosis or foraminal stenosis identified.

IMPRESSION:

1.  NEGATIVE MRI EXAMINATION OF THE CERVICAL SPINE FOR FRANK DISC HERNIATIONS OR
SPINAL STENOSIS.

2.  NO ABNORMAL SIGNAL IDENTIFIED WITHIN THE CERVICAL PORTION OF THE CORD OR THE
MARROW-CONTAINING PORTION OF THE CERVICAL VERTEBRAL BODIES.

D:  3-23-06
T:  3-24-06

GG/macc

COPY TO:  DR. DINH

Date Recv: 04/11/2006

CHART COPY

GEORGE A. GENTRY, M.D.

**DIAGNOSTIC IMAGING CONSULTATION REPORT**

Page 192 of 230

4107073000389221                    A625027340000101                    07/30/2007

R-0777

0 7 0 7 3 0 0 0 3 8 9 2    PROCTOR HOSPITAL

5409 N. KNOXVILLE, PEORIA, IL  61614

ATE OF OPERATION:        03/15/2006

URGEON:                  BRUCE B. CHIEN, MD

REOPERATIVE DIAGNOSIS:   HERNIATED L4 NUCLEUS PULPOSUS.

OSTOPERATIVE DIAGNOSIS:  HERNIATED L4 NUCLEUS PULPOSUS.

PERATION:                MIDLINE L4 EPIDURAL STEROID INJECTION

NDICATION:  Melissa Gardner is ready for her midline L4 epidural steroid
njection.

ROCEDURE:  After written and informed consent, the patient was placed in a
eated position over an over-bed tray table and the midline prepped at the
evel of the L4-L5.  A #18-gauge Tuohy needle was passed to a depth of 8 cm
n the midline with the patient's stereotactic guidance to loss of resistance
ere upon 10 mL containing triamcinolone 80 mg, lidocaine 0.5% were injected.
This was well tolerated.  The needle was withdrawn and the patient actually
elt sufficiently better that she wanted to go to the bathroom to empty her
ladder which she did in the accompaniment of the staff nurse.  She was given
nstruction not to arise from the toilet unless our staff was there to assist
r.  The patient tolerated this well.

UCE B CHIEN, MD/hs/lr
GNATURE ELECTRONICALLY AFFIXED
   03/15/2006 06:44
   03/15/2006 19:12
6797/34653/32446

Date Recv: 04/11/2006

ARDNER, MELISSA A        32Y F
60011391    DOB:    REDACTED
C#:6016433   451                              DT:ORRPTIM

                  OPERATIVE REPORT
                                                PAGE  1

G·7·0·7·3·0·0·0·3·0·2

:e:  4-04-06              PROCTOR HOSPITAL                    PRELIMINARY
ne: 11:14:54            Transcription Report

:ient Account: 6016433 I  2 GARDNER, MELISSA
-------------------------- Result Data ------------------------------------*

AMINATION:  MRI LUMBAR SPINE WITHOUT & WITH CONTRAST
TE OF EXAM:  3/14/06
INICAL HISTORY:  INTRACTABLE LOW BACK PAIN

I of the lumbar spine was performed with and without the aid of intravenous
ntrast.

e conus medullaris of the cord ends at the appropriate level with no abnormal
hancement or mass lesions identified.

· abnormal bone marrow edema or enhancement of the marrow-containing portion o
e lumbar vertebral bodies.

e L4-L5 Disc Space Level:  There is a broad-based disc bulge of the L4-L5 dis
sociated with a posterior and central annular tear.  There is bilateral mild
 moderate narrowing of the neural canal and neural foramina at this disc spac
el.

L3-L4 Disc Space Level:  There is a broad-based annular bulge with an 8 mm
 a of annular tear involving the posterior central aspect of the annulus.  No
nificant narrowing of the neural canal and neural foramina.

e remainder of the lumbar disc spaces appear to be unremarkable for frank dis
rniations or spinal stenosis.

IPRESSION:

GENERATIVE DISC DISEASE EVIDENT BY MILD DEGENERATIVE DEHYDRATION AND LOSS OF
ISC SPACE HEIGHT OF THE L3-L4, L4-L5 AND L5-S1 DISCS.  THIS IS ASSOCIATED WITH
 E-INDETERMINATE POSTERIOR CENTRAL ANNULAR TEARS OF THE L3-L4 AND L4-L5 DISCS.

 3/14/06
 3/14/06

 :jr

4107073000389221              A625027340000101              07/30/2007

R-0779

May 03 06 02:51p    DR ●HIEN    309● ●030    p.5

8707300●389 2

△▷ **PROCTOR**
◁▽ H O S P I T A L    5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071    **TRI-COUNTY RADIOLOGISTS**

4/26/06
9:09:18    PAGE    1

PATIENT NAME: GARDNER, MELISSA
ORDERING DR: ~~CHIEN, BRUCE~~    M/R NUMBER:      860011391
BIRTH DATE: ~~REDACTED~~    TRANSCRIBE DATE:    4/25/06
OUTPATIENT: CT COMPUTER TOMOGRAPHY    ORDER NUMBER:      0873983
    ACCT. NUMBER:      6025115

EXAMINATION:    L4-L5 DISKOGRAM
DATE OF EXAM:    4/20/06

Reason For Examination: Patient has history of severe low back pain, primarily
in the midline at the L4 level. Patient now states it is also extending
inferiorly into the left buttock. L4 radiculopathy is suspect. Request is for
L4-L5 diskogram and subsequent CT examination at L4-L5 level after the disc is
injected with contrast.

The nature, benefits, alternatives, and risks of the diskogram were explained to
the patient prior to the procedure. All questions were answered to her
satisfaction. Ms. Gardner stated she understood and gave her consent.

The patient was then placed in the prone position on the Angiographic C-arm
table. The L4-L5 disc level was examined with fluoroscopy in varying degrees of
obliquity. The left transverse process at L5 is seen to be hypertrophied with
partial sacralization of the L5 vertebral body. Pseudarthrosis of the
hypertrophied left L5 transverse process with the sacrum is seen. For this
reason, it was elected to approach the L4-L5 disc from the right posterolateral
approach. Using 27 degrees of cranial and 46 degrees of right posterior
angulation, the L4-L5 disc space is best visualized. Skin and subcutaneous
tissues to the level of the spine were infiltrated with 1 percent Xylocaine for
local anesthesia. Initial attempts were made to enter the L4-L5 disc space with
a 15 cm long, 22-gauge Chiba needle, but the 22-gauge Chiba needle was too
flexible to accurately control to get the needle well positioned within the L4-
L5 disc space. Repeat attempts were made with a 20-gauge, 15 cm long Chiba
needle, which was successfully placed directly into the L4-L5 disc space. Good
position of the needle tip within the disc was documented with digital
radiographs obtained in AP, oblique, and cross-table lateral projections. At
this point, 2.5 ml of Omnipaque 350 were slowly injected into the L4-L5 disc
space. Disc turgor was definitely diminished. The patient also experienced
reproduction of the same midline low back pain with the injection of the disc.
The patient estimated the pain at 7 of 10 with the disc injection even with IV
sedation with Versed and Fentanyl that was administered with monitoring of vital
signs in order to allow the patient to lie in a prone position on the
Angiographic table. Digital radiographs were obtained of the disc in lateral,
AP, oblique and AP with 47 degree cranial angulation. Most of the contrast
appears to be contained within the expected central nuclear region. However,
there does appear to be some contrast extension into and through the posterior
annular region and somewhat to the left as well. The needle was then removed
and the patient transferred to the CT suite for further CT examination of the
L4-L5 disc.

--CONTINUED ON PAGE 2--    TMB

DIAGNOSTIC IMAGING CONSULTATION REPORT

Page 146 of 236

May 03 06 02:51p    DR. CHIEN                3098 938              p.6
0707 3000 3852

DOCTOR                                      TRI-COUNTY RADIOLOGISTS
H O S P I T A L      5409 N. Knoxville / Peoria, IL 61614 / Phone 309-691-1071

4/26/06
9:09:18

                                                        PAGE      2

PATIENT NAME: GARDNER, MELISSA              M/R NUMBER:        860011391
ORDERING DR: CHIEN, ABNER B                 TRANSCRIBE DATE:   4/25/06
BIRTH DATE: **REDACTED**                    ORDER NUMBER:      0873983
OUTPATIENT: CT COMPUTER TOMOGRAPHY          ACCT. NUMBER:      6025115

CONTINUED FROM PAGE 1

CONCLUSION:

CONCORDANT 7 OUT OF 10 PAIN DEMONSTRATED WITH INJECTION OF THE L4-L5 DISC SPACE.
THERE IS ALSO SIGNIFICANTLY DIMINISHED DISC TURGOR AT THIS LEVEL AND EVIDENCE OF
PENETRATION OF CONTRAST AT LEAST INTO, IF NOT THROUGH, THE ANNULAR REGION
POSTERIORLY.

tr  bc

D: 4/25/06
T: 4/25/06

TMB:jr

COPY TO:  DR. TERRANCE M. BRADY

                                        TERRANCE M. BRADY, M.D.

DIAGNOSTIC IMAGING CONSULTATION REPORT
                    Page 147 of 256

4107073000389221              A625027340000101              07/30/2007

                                                              R-0781

Apr 20 06 08:48a    DR ●HIEN              3096 ●938              p.3

0707 3000389221    4/18/2006 9:16 PM  MENON WEB REPORTS -> 6CIA - OFFICE OF DR BRUCE B CHIEN    Page 1 of 3

```
########## ROUTE TO PROV [6CIA]: 18390, Chien, Bruce B
PAGE 1
                        OPERATIVE REPORT
                   SAINT FRANCIS MEDICAL CENTER
                        Peoria    ,IL  61637
                          (309)6552000

Facility: SFMC                                    Label ID: OP

Pat**: **ARNER, Melissa A          Adm Date:17Apr06   Location:CFHS-31
DOB:**                              Dis Date:17Apr06   Pt. Type:AS
MRN:**                              Acct #:002584873
Attending Phys: CHIEN, BRUCE
Primary Care Prov: MILLER, JOHN
Legal Signing Prov #:  18390
                              COPY
------------------------------------------------------------------

MR: 1145497 Acct: 2584873
Admit: 04/17/2006 Disch: 04/17/2006
DocID: D1061459

Dictating: 18390 BRUCE B CHIEN
ccdr1:
ccdr2:
ccdr3:
ccdr4:

D.04/17/2006 13:35:00
T.04/18/2006 17:29:58

REPORT OF OPERATION

DATE OF SURGERY:   04/17/2006

PREOPERATIVE DIAGNOSIS:
Bilateral L4 radiculopathy, left C7 radiculopathy.
POSTOPERATIVE DIAGNOSIS:
Same
SURGEON: Bruce B. Chien, M.D.

OPERATION:
MIDLINE L4 EPIDURAL STEROID INJECTION.
Melissa Gardner is a 42-year-old white female who had the acute onset of
back pain, midline, lumbar on Thursday while at work.  She sits at a desk
at Ameritech in Springfield.  The drive home from Springfield to East
Peoria was uncomfortable, noticing that it was painful to lift her leg to
the brake pedal.  It did not remit at home in the seated, standing or
recumbent position.  She went to the OSF Saint Francis Prompt Care and she
was given Vicodin and Skelaxin.  She went to work on the following Friday
and was miserable preceding the 14th of March.  On Sunday she went to the
emergency department at MMCI, no MR was performed.  She did have x-rays
done and was given Percocet.  She awoke at 0400 Monday and called Dr.
Miller's office and went to the emergency room.  She has now had two
midline L4 epidural steroid injections.
```

REDACTED

4107073000389221              Page 181 of 238            A625027340000101              07/30/2007

R-0782

Apr 20 06 08:49a     DR ●HIEN                3096 ●938              p.4

07.07 3000329341    4/19/2006 9:15 PM   MENON WEB REPORTS → 6CIA - OFFICE OF DR BRUCE B CHIEN      Page 2 of 3

PAGE 2

OPERATIVE REPORT
SAINT FRANCIS MEDICAL CENTER
Peoria    ,IL  61637
(309)6552000

Facility: SFMC                                         Label ID: OP

Pa██████████████ga A              Adm Date:17Apr06    Location:CFHS-31
DOB:█████████                     Dis Date:17Apr06    Pt. Type:AS
MRN:01145497                      Acct #:002584873
Attending Phys: CHIEN, BRUCE
Primary Care Prov: MILLER, JOHN
Legal Signing Prov #:   18390

                           COPY
-------------------------------------------------------------------

PAST MEDICAL HISTORY: Migraines for the past three years, looked after by
Dr. Richard Lee.  She is having normal menstrual periods.

FAMILY HISTORY: Everyone in the family has back pain.

SOCIAL HISTORY: She wants to smoke.

ALLERGIES: Demerol leads to blisters, ASA leads to nausea and vomiting.
Compazine leads to anxiety.

SURGICAL HISTORY: Cholecystectomy, dilatation and curettage, tonsillectomy
and adenoidectomy, ectopic cubital tunnel on the left.

REVIEW OF SYSTEMS: Her left C7 radicular discomfort from her neck, triceps,
elbow and medial compartment of the forearm into the 5th and 4th fingers is
bothering her pretty much 14/7.

On physical examination she is about 200 pounds, 5'0"; vital signs are
unremarkable.  Pupils are equal, round, reactive to light and
accommodation.  Visual fields are full; fundi are benign.  Chest is clear.
Cardiovascular is unremarkable.  Liver is 8 cm; spleen is nontender.  Motor
in upper extremities and sensory in the left upper extremity in particular
is normal.  Straight leg raising is positive on both sides at 60 and 75
degrees on the right and left sides respectively.  Paraspinous spasm is
present.  There is no radiation.  Motor and sensory are normal.  Deep
tendon reflexes are 2+.  She is able to lie on her abdomen.

PROCEDURE: After written and informed consent the patient was brought to
the operating room and placed prone on five pillows.  The lumbar spine was
prepped with Betadine.  1% Lidocaine was infiltrated into the L4-5
interspace.  #18-gauge Tuohy needle was passed to a depth of 7 cm where
loss of resistance was obtained.  10 mL containing Triamcinolone 80 mg.
Lidocaine 50 mg, three parts in ten Isovue 200 were mixed and injected.
The patient had a sense of aching down both buttocks and both thighs.  PA
and lateral views were saved.  The needle was withdrawn.  The patient's
back was washed.  She was taken to the ASU.

It is pretty plain that she likely has intradiskal disease with her pain
pattern and failure to respond.  In addition she has an L4 EMG, which

Fax Rcvd: 4/20/2006 9:39:22 AM
Claim#: AE250017022000101   DocID: 7040326

4107073000389221                A625027340000101                07/30/2007

R-0783

Apr 20 06 08:49a    DR ●HIEN    309● ●830    p.5

0-7 07 3000 3221.    4/18/2006 9:15 PM    MENON WEB REPORTS → SCIA · OFFICE OF DR BRUCE R CHIEN    Page 3 of 3

PAGE 3
OPERATIVE REPORT
SAINT FRANCIS MEDICAL CENTER
Peoria    ,IL 61637
(309)6552000

Facility: SFMC                                          Label ID: OP

Patient: GARDNER, Melissa A        Adm Date:17Apr06    Location:CFHS-31
DOB:                               Dis Date:17Apr06    Pt. Type:AS
MRN:                               Acct #:002584873
Attending Phys: CHIEN, BRUCE
Primary Care Prov: MILLER, JOHN
Legal Signing Prov #:   18390
                                   COPY
------------------------------------------------------------------------
showed a pattern compatible with radiculopathy.  Will refer her downtown to
OSF Imaging and Radiology Department for an L4 discogram.  I spend a
considerable amount of counseling her as to how uncomfortable this
procedure is and there is discrete risk.  At the current time there is not
much on her MRI to need a neurosurgeon to intervene.  Thanks for this
opportunity to participate in the patient's care.

SHC/STS

Job #3033547
st

Version Date: 04/18/2006 21:00:29 ljw

BRUCE B CHIEN, Admitting Physician
JOHN K MILLER, Referring Physician 1


PRELIM SIGNING PROV:BRUCE CHIEN              MD        Date:
LEGAL SIGNING PROV:BRUCE CHIEN               MD        Date:
          PRINTED: 04/18/2006   9:14pm
          PRINTED BY: INTERFACE, T.

Fax Rcvd: 4/20/2006 9:39:22 AM

4107073000389221    A625027340000101    07/30/2007

R-0784

May 03 06 02:51p     DR ●HIEN                    309● ●938                    p.2
0.707 3000 3092

Bruce B. Chien M.D.
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

May 3, 2006

Lou'litha Walls
AT&T Disability Center

In R,E> Melissa Gardner **REDACTED**

Ms. Gardner has a ruptured L4 disc by discography and bilateral lumbar radiculopathy (L4). At the current time she cannot stand or sit for any period more than about 3 minutes. She is completely disbled from all work at the current time.

She is waiting to see Dr Dzung Dinh, who is our L4 disc replacement vs. fusion Neurosurgeon.

Regards,

Bruce B. Chien, M.D.

Fax to: 866-204-4627

Jun. 28. 2006  5:39PM    AS⬤  UNIVERSITY NEUROSURGEONS    ⬤  No. 5818  P. 2/3
0.7.0.7.3.0.0.0.3.8.9.2.

06/16/2006


JOHN K. MILLER, MD
7725 N KNOXVILLE AVENUE
PEORIA, IL 61614

RE: MELISSA GARDNER
DOB: REDACTED

Dear Dr. MILLER:

MELISSA GARDNER was seen as a hospital follow up today with a chief
complaint of low back pain. She is a 32 y/o female who was seen by us at
Proctor Hospital in March 2006 for low back pain. She had an MRI on
March 14, 2006, which revealed an L4-5 annular tear. She states that after
prolonged walking she develops burning in her back. She has since been
through physical therapy as well as other modalities, neuromuscular
stimulator, and pain medication. She has been treated by Dr. Bruce Chien
who performed a series of epidural steroid injections. She had a
discogram, which was positive at the L4-5 level.

Past medical history included hypertension during pregnancy. Review of
systems is negative other than stated above. Current medications include
Lyrica, Nabumetone bid, Tramadol qid, and hydrocodone bid. She is
allergic to aspirin, which causes vomiting. Demerol causes hives and
blister at the injection site. Compazine causes severe nervousness. She has
had a cholecystectomy, a T&A, a D&C for ectopic pregnancy, and cubital
tunnel surgery in 2001.

Family history is positive for degenerative spine disease in her mother. She
is married with children and lives with her family. She works as an MSS at
ATT. She is a college graduate. She has no history of substance abuse. She
smokes ½ pack of cigarettes a day for about 16 years. She averages 2-3
alcoholic beverages per year and 2-3 caffeinated beverages per day.

On physical examination, HEENT are within normal limits. Neck is
supple with no thyromegaly or bruit. Lungs are clear in all lobes. Heart

Fax Rcvd: 6/28/2006 6:34:30 PM

ClaimI: A625027022000101  DocID: 1716830

4107073000389221                    A625027340000101                    07/30/2007

R-0786

Jun. 28. 2006  5:39PM    AS' UNIVERSITY NEUROSURGEONS         No. 5818    P. 3/3
0·7·07 3·0·0·0·3·8·9·2·

Page 2
6/16/06
Re: Melissa Gardner

sounds are regular with regular rate and rhythm. Abdomen is soft and nontender. She denies any
urinary incontinence, bowel incontinence, blood in the urine or the stool. On neurological exam,
cranial nerves II-XII are grossly intact. She has numbness in the fingers of both hands. She has a
recent EMG of the upper and lower extremities. This revealed bilateral mild to moderate
denervation of the ulnar nerve of the bilateral elbows distally bilaterally. She also had mild
bilateral L4 radiculopathics in the lower extremities. In the upper extremities her strength is +5/5.
Sensation is intact to light touch and deep tendon reflexes are +2 in bilateral biceps, triceps and
brachioradialis. In the lower extremities, she has +1 reflexes in bilateral patellas and Achilles.
Sensation is intact. Strength is 5/5 in the lower extremities. She had increased pain with
hyperextension as well as increased pain with side bending to the left.

We recommend she continue with her pain regimen as prescribed by Dr. Chien. We recommend
a course of water therapy. We will see her back in 4-6 weeks for reevaluation.

Thank you for allowing us to participate in the patient's care. If we can be of any further
assistance, please let us know.

Sincerely,


Cristin Rassi, A.P.N., C.N.S./Dzung H. Dinh, M.D.

CR:dsh

Fax Rcvd: 6/28/2006 6:54:30 PM

Client: A625A/V/622A5101   Loc#: 1/19e3U

4107073000389221         A625027340000101                  07/30/2007

R-0787

Jul 28 06 08:41a    DR ●HIEN    3096 ●838    p.2
07073000389221

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL  61614

DATE OF OPERATION:        07/24/2006

SURGEON:                  BRUCE B. CHIEN, MD

DIAGNOSIS:                L4 AND L5 INTRADISKAL PAIN.

OPERATION:                L4 AND L5 INTRADISKAL BLOCK AND DISKOGRAPHY.

INDICATION: Melissa Gardner was seen on July 18, 2006, again at the request of Dr. Dinh.  She has a known freely ruptured L4 disk noted on L4-5 diskogram on April 20, 2006, she had not improved much at all.  Walking is pretty much limited to 200 feet.  She sleeps on her side, can drive for about 15 minutes before she has pain in the left buttock.  She does continue to work at a phone company but only half-time.

MEDICATIONS: Vicodin 7.5/500.

ALLERGIES: DEMEROL leads to blisters, ASA leads to nausea and vomiting, and COMPAZINE leads to anxiety.

SOCIAL HISTORY: Wants to smoke.

FAMILY HISTORY: Everyone in the family has back pain.

REVIEW OF SYSTEMS: Otherwise negative.

PHYSICAL EXAMINATION:
VITAL SIGNS: Unremarkable.  She is 5 feet 8 inches and 210 pounds.
HEENT: Pupils equal, round, and reactive to light and accommodation.  Visual fields are full.  Fundi are benign.
CHEST: Clear.
CARDIOVASCULAR: Unremarkable.
ABDOMEN: Liver is 8 cm.  Spleen is not palpable.
PELVIC: SIs are very tender on the left, somewhat tender on the right.  Straight leg raising is positive on the left with pain in the midline and paraspinal flank area just above the pelvic crest on the left and with prolonged sitting and straight leg raising at 60 degrees on the left and right.  She has discomfort in the left buttock and left posterior thigh.  Sensation is normal.  Deep tendon reflexes are 2+.

PROCEDURE: Ancef 1 g IV was given.  The patient was taken to the operating room and prepped in the prone position on 5 pillows.  The lower back was draped and after insertion of a through the skin introducer needle, a #22 gauge 5-inch needle was passed en fasse in a 30-degree paracoronal oblique view into the center one-third zone of the L4 disk.  Then 2 mL containing 120 mcg/mL of Ancef and 0.25% bupivacaine, 30% Omnipaque 180 were mixed and injected.  A good discal outline was seen with very minimal extravasation

GARDNER, MELISSA A    33Y F
860011391    DOB:
AC#:6044749    000   REDACTED                   DT:ORRPTIM

OPERATIVE REPORT

PAGE  1

Fax Rcvd: 7/28/2006 9:26:49 AM

Claim#: A625007022000101  DocID:187D383

Jul 28 06 08:41a    DR  HIEN              3096  938                p.3
0707300038982

PROCTOR HOSPITAL
5409 N. KNOXVILLE, PEORIA, IL  61614

into the epidural space on the initial view of the patient.  The needle was
withdrawn.  The patient was asked to stand and walk, and in the course of a
1-minute walk, the patient noted that her discomfort in the midline and just
in the left flank was much much reduced.  By the time the patient climbed
back onto the operating bed, her discomfort was gone and she moved much more
easily.  The L5 was then prepared in an identical fashion and approached from
the right side.  An additional 2 identical milliliters was injected, this
with a fresh introducer and fresh 22-gauge 5-inch needle.  The needle was
withdrawn.  The patient asked to ambulate again and during this 1-minute
ambulation, the left buttock and the posterior thigh discomfort remitted.  PA
and lateral views of course had been saved.  The patient was returned again
for the L3 which was performed from the left side in an identical fashion.
The patient after a 2-minute wait, was then walked once again and she noted
that her discomfort had not changed.  Anyway the image of the L3 disk was of
good turgor and without extra discal leak.  The patient was taken to the ASU
in good condition, and given Ancef to take for the balance of the week at 500
mg q.i.d. x7 days.

She will return to see Dr. Dinh in approximately 2 weeks' time.

Thanks for this opportunity to participate in the patient's care.

BRUCE B CHIEN, MD/hs/lr
SIGNATURE ELECTRONICALLY AFFIXED
D:    07/24/2006 09:19
T:    07/25/2006 00:01
P:    07/27/2006 13:56
540014/31201/32446
cc:  JOHN K MILLER, MD
cc:  DZUNG H DINH, MD

Fax Rcvd: 7/28/2006 9:26:49 AM

GARDNER, MELISSA A        31Y F
860011391   DOB:
AC#:6044749   000 **REDACTED**                      DT:ORRPTIM

OPERATIVE REPORT

PAGE   2

Aug. 10. 2006  2:34PM   AS○ UNIVERSITY NEUROSURGEONS       ● No. 7590  P. 2/2

08/04/2006


JOHN K. MILLER, MD
7725 N KNOXVILLE AVENUE
PEORIA, IL 61614

RE: MELISSA GARDNER
DOB: **REDACTED**

Dear Dr. MILLER:

I had the pleasure of seeing MELISSA GARDNER for follow up today regarding her chronic back pain. Her pain is constant and rated 9/10 with some improvement while in the water. The pain returns after 30 minutes of being out of the pool therapy. Currently she is taking Vicodin ES, Relafen, Lyrica and Tramadol.

She had an intradiscal block by Dr. Chien on July 24 with pain relief for 15 minutes after L4-5 block.

At this point it appears that her pain may be coming from the L4-5 disc space however her insurance company will not approve artificial disc replacement surgery at this point. We are a clinical trial center for Aesculap lumbar artificial disc trial starting next year. In the meantime I will contact Dr. Chien to see if he can provide her some interim pain management with either a DCS trial or intrathecal pain pump.

I greatly appreciate the opportunity to be involved in the care of this patient. If I can be of any further assistance, please let me know.

Sincerely,



Dzung H. Dinh, M.D., M.B.A.

DHD:dsh

4107073000389221          A625027340000101                  07/30/2007

R-0790

 COPY

0707300036 92

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

August 9, 2006

Robin Hamilton
AT&T Disability Center
P.O. Box 61569 King of Prussia, PA 19406

In r.e: Melissa Gardner

**REDACTED**

Robin,

My understanding of Melissa Gardner's disability centers on the need for disc replacement. The underlying condition will NOT change in a year, a month or a week. Two week visits are completely abusive and unnecessary to confirm disability.

I understand that you will do what AT&T policy requires you to do. Just beware that this could be construed as abusive.

Regards,

Bruce B. Chien, M.D.

By fax to 866-224-4627

0 7 0 7 5 0 0 0 3 8 2

**Bruce B. Chien M.D.**
Diplomate, American Boards of Anesthesiology,
Internal Medicine and Pain Medicine
5401 N. Knoxville, #212
Peoria, IL 61614
309-691-8973 fax 309-691-8938

January 30, 2007

Tan Payton
AT&T Disability Center

Dear Ms. Payton,

Melissa Gardner is still disabled from work. She has an open L45 disc demonstrated at 4/25/06 discogram and has concordant history and symptoms. On exam today her Straight leg raising is positive on the right at 10 degrees and on the left at 30 degrees. She is unable to arise even from a chair without a 25 pound hand assist. She has to roll to erect from bed.

She should NOT work until she has found surgical intervention. Our local surgical community, now having experienced Phase II clinical trials of the Charite disc. Feels strongly that she should wait for the release of this product. The distribution of her pain is not conducive to Dorsal Column Stimulator suppression. Although she could be fused, I have to defer to our surgical opinion.

She still cannot sit or stand for any period of more than about 3 minutes, which is hardly compatible with the workplace.

Bruce B. Chien, M.D.

By fax to 866-224-4627

G-7-0-7-3-0-0-0-3-8-9-2-

Close  Print this page



**Drugs.com**
Drug Information Online

# Hydrocodone/Ibuprofen

**Generic Name:** Hydrocodone/Ibuprofen (hye-droe-KOE-done/eye-bue-PROE-fen)
**Brand Name:** Examples include Reprexain and Vicoprofen

## Hydrocodone/Ibuprofen is used for:

Short-term treatment of pain.

Hydrocodone/Ibuprofen is an opioid analgesic and NSAID combination. Exactly how it works is not known. Ibuprofen may block certain substances in the body that cause inflammation. Hydrocodone may affect opiate receptors in the brain to decrease pain.

## Do NOT use Hydrocodone/Ibuprofen if:

- you are allergic to any ingredient in Hydrocodone/Ibuprofen or any other codeine- or morphine-related medicine (eg, codeine)
- you have had a severe allergic reaction (eg, severe rash, hives, trouble breathing, growths in the nose, dizziness) to aspirin or an NSAID (eg, ibuprofen, celecoxib)
- you have severe kidney problems or you have severe diarrhea or other bowel problems caused by antibiotics or food poisoning
- you have recently had or will be having bypass heart surgery
- you are in the last 3 months of pregnancy
- you take sodium oxybate (GHB) or you have taken a monoamine oxidase inhibitor (MAOI) (eg, phenelzine) within the past 14 days

Contact your doctor or health care provider right away if any of these apply to you.

## Before using Hydrocodone/Ibuprofen :

Some medical conditions may interact with Hydrocodone/Ibuprofen . Tell your doctor or pharmacist if you have any medical conditions, especially if any of the following apply to you:

- if you are pregnant, planning to become pregnant, or are breast-feeding
- if you are taking any prescription or nonprescription medicine, herbal preparation, or dietary supplement
- if you have allergies to medicines, foods, or other substances
- if you or a family member has a history of mental or mood problems, suicidal thoughts or attempts, or alcohol or substance abuse, or if you drink alcohol
- if you have a history of kidney, liver, or lung problems, diabetes, or stomach or bowel problems (eg, bleeding, perforation, ulcers)
- if you have a history of swelling or fluid buildup, lupus, asthma, growths in the nose (nasal polyps), or mouth inflammation
- if you have high blood pressure, blood disorders, bleeding or clotting problems, heart problems (eg, heart failure), or blood vessel problems, or if you are at risk for any of these problems
- if you have Addison disease, thyroid problems, an enlarged prostate, or trouble urinating
- if you have asthma or breathing problems, seizures, growths in the brain, a recent head injury, or if you have had recent surgery
- if you have poor health, dehydration or low fluid volume, or low blood sodium levels

Some MEDICINES MAY INTERACT with Hydrocodone/Ibuprofen . Tell your health care provider if you are taking any other medicines, especially any of the following:

4107073000389221                          A625027340000101

7/18/2007
07/30/2007

R-0793

Page 2 of 4

0 7 0 7 3 0 0 0 3 8 9 2

- Anticoagulants (eg, warfarin), corticosteroids (eg, prednisone), heparin, salicylates (eg, aspirin), or selective serotonin reuptake inhibitors (SSRIs) (eg, fluoxetine) because the risk of bleeding, including stomach bleeding, may be increased
- Antihistamines (eg, diphenhydramine), barbiturates (eg, phenobarbital), cimetidine, narcotic pain medicine (eg, codeine), or sodium oxybate (GHB) because the risk of excessive drowsiness or severe breathing problems may be increased
- Anticholinergics (eg, benztropine), MAOIs (eg, phenelzine), probenecid, or tricyclic antidepressants (eg, amitriptyline) because they may increase the risk of Hydrocodone/Ibuprofen 's side effects
- Naltrexone or rifampin because they may decrease Hydrocodone/Ibuprofen 's effectiveness
- Cyclosporine, lithium, methotrexate, or quinolones (eg, ciprofloxacin) because the risk of their side effects may be increased by Hydrocodone/Ibuprofen
- Angiotensin-converting enzyme (ACE) inhibitors (eg, enalapril) or diuretics (eg, furosemide, hydrochlorothiazide) because their effectiveness may be decreased by Hydrocodone/Ibuprofen

This may not be a complete list of all interactions that may occur. Ask your health care provider if Hydrocodone/Ibuprofen may interact with other medicines that you take. Check with your health care provider before you start, stop, or change the dose of any medicine.

# How to use Hydrocodone/Ibuprofen :

Use Hydrocodone/Ibuprofen as directed by your doctor. Check the label on the medicine for exact dosing instructions.

- Hydrocodone/Ibuprofen comes with an extra patient information sheet called a Medication Guide. Read it carefully. Read it again each time you get Hydrocodone/Ibuprofen refilled.
- Take Hydrocodone/Ibuprofen by mouth with or without food. If stomach upset occurs, take with food to reduce stomach irritation.
- If you miss a dose of Hydrocodone/Ibuprofen and you are taking it regularly, take it as soon as possible. If several hours have passed or if it is nearing time for the next dose, do not double the dose to catch up, unless advised by your health care provider. Do not take 2 doses at once.

Ask your health care provider any questions you may have about how to use Hydrocodone/Ibuprofen .

# Important safety information:

- Hydrocodone/Ibuprofen may cause dizziness or drowsiness. These effects may be worse if you take it with alcohol or certain medicines. Use Hydrocodone/Ibuprofen with caution. Do not drive or perform other possibly unsafe tasks until you know how you react to it.
- Do not drink alcohol or use medicines that may cause drowsiness (eg, sleep aids, muscle relaxers) while you are using Hydrocodone/Ibuprofen ; it may add to their effects. Ask your pharmacist if you have questions about which medicines may cause drowsiness.
- Serious stomach ulcers or bleeding can occur with the use of Hydrocodone/Ibuprofen . Taking it in high doses or for a long time, smoking, or drinking alcohol increases the risk of these side effects. Taking Hydrocodone/Ibuprofen with food will NOT reduce the risk of these effects. Contact your doctor or emergency room at once if you develop severe stomach or back pain; black, tarry stools; vomit that looks like blood or coffee grounds; or unusual weight gain or swelling.
- Do NOT take more than the recommended dose or use for longer than prescribed without checking with your doctor.
- Hydrocodone/Ibuprofen has Ibuprofen in it. Before you start any new medicine, check the label to see if it has Ibuprofen in it too. If it does or you are not sure, check with your doctor or pharmacist.
- Do not take aspirin while you take Hydrocodone/Ibuprofen unless your doctor tells you to. If you already take aspirin for a heart or other condition, talk with your doctor about whether or not you should continue to take it with Hydrocodone/Ibuprofen .
- Lab tests, including liver function, kidney function, complete blood cell counts, and blood pressure, may be performed while you use Hydrocodone/Ibuprofen . These tests may be used to monitor your condition or check for side effects. Be sure to keep all doctor and lab appointments.
- Use Hydrocodone/Ibuprofen with caution in the ELDERLY; they may be more sensitive to its effects, especially stomach bleeding.
- Hydrocodone/Ibuprofen should be used with extreme caution in CHILDREN younger than 16 years old; safety and effectiveness in these children have not been confirmed.
- PREGNANCY and BREAST-FEEDING: Hydrocodone/Ibuprofen may cause harm to the fetus. Do not take it during the last 3 months of pregnancy. If you think you may be pregnant, contact your doctor. You will need to discuss the benefits and risks of using Hydrocodone/Ibuprofen while you are pregnant. It is not known if Hydrocodone/Ibuprofen is found in breast milk. Do not breast-feed while taking Hydrocodone/Ibuprofen .



Page 3 of 4

0707 3000 3092

When used for long periods of time or at high doses, Hydrocodone/Ibuprofen may not work as well and may require higher doses to obtain the same effect as when originally taken. This is known as TOLERANCE. Talk with your doctor if Hydrocodone/Ibuprofen stops working well. Do not take more than prescribed.

Some people who use Hydrocodone/Ibuprofen for a long time may develop a need to continue taking it. People who take high doses are also at risk. This is known as DEPENDENCE or addiction.

If you suddenly stop taking Hydrocodone/Ibuprofen , you may experience WITHDRAWAL symptoms, including anxiety; diarrhea; fever, runny nose, or sneezing; goose bumps and abnormal skin sensations; nausea; vomiting; pain; rigid muscles; rapid heartbeat; seeing, hearing or feeling things that are not there; shivering or tremors; sweating; and trouble sleeping.

# Possible side effects of Hydrocodone/Ibuprofen :

All medicines may cause side effects, but many people have no, or minor, side effects. Check with your doctor if any of these most COMMON side effects persist or become bothersome:

> Anxiety; constipation; diarrhea; dizziness; dry mouth; gas; headache; heartburn; increased sweating; loss of appetite; nausea; nervousness; stomach pain or upset; trouble sleeping; vomiting; weakness.

Seek medical attention right away if any of these SEVERE side effects occur:

> Severe allergic reactions (rash; hives; itching; difficulty breathing; tightness in the chest; swelling of the mouth, face, lips, or tongue); bloody, black, or tarry stools; blurred vision; change in the amount of urine produced; chest pain; confusion; dark urine; depression; fainting; fast or irregular heartbeat; fever, chills, or persistent sore throat; mental or mood changes; numbness of an arm or leg; one-sided weakness; red, swollen, blistered, or peeling skin; ringing in the ears; seizures; severe headache or dizziness; severe or persistent stomach pain or nausea; severe vomiting; shortness of breath; slow or shallow breathing; stiff neck; sudden or unexplained weight gain; swelling of hands, legs, or feet; unusual bruising or bleeding; unusual joint or muscle pain; unusual tiredness or weakness; vision or speech changes; vomit that looks like coffee grounds; yellowing of the skin or eyes.

This is not a complete list of all side effects that may occur. If you have questions or need medical advice about side effects, contact your doctor or health care provider. You may report side effects to the FDA at 1-800-FDA-1088 (1-800-332-1088) or at http://www.fda.gov/medwatch.

# If OVERDOSE is suspected:

Contact 1-800-222-1222 (the American Association of Poison Control Centers), your local poison control center (http://www.aapcc.org/findyour.htm), or emergency room immediately. Symptoms may include blurred vision; cold and clammy skin; coma; confusion; decreased urination; loss of consciousness; ringing in the ears; severe dizziness or drowsiness; severe muscle weakness; severe nausea or stomach pain; slow or troubled breathing; unusual bleeding or bruising; vomit that looks like coffee grounds.

Proper storage of Hydrocodone/Ibuprofen :

Store Hydrocodone/Ibuprofen at 77 degrees F (25 degrees C). Brief storage at temperatures between 59 and 86 degrees F (15 and 30 degrees C) is permitted. Store away from heat, moisture, and light. Do not store in the bathroom. Keep Hydrocodone/Ibuprofen out of the reach of children and away from pets.

# General information:

- If you have any questions about Hydrocodone/Ibuprofen , please talk with your doctor, pharmacist, or other health care provider.
- Hydrocodone/Ibuprofen is to be used only by the patient for whom it is prescribed. Do not share it with other people.
- If your symptoms do not improve or if they become worse, check with your doctor.

This information is a summary only. It does not contain all information about Hydrocodone/Ibuprofen . If you have questions about the medicine you are taking or would like more information, check with your doctor, pharmacist, or other health care

Page 4 of 4

070730003892
provider.

Issue Date: November 1, 2006
Database Edition 06.4.1.002
Copyright © 2006 Wolters Kluwer Health, Inc.

R-0796

Page 1 of 3

Close  Print this page

0 7 0 7 3 0 0 0 3 8 9 2



# Tramadol

**Generic Name:** Tramadol Tablets (TRA-ma-dole)
**Brand Name:** Ultram

## Tramadol is used for:

Treating moderate to moderately severe pain.

Tramadol is an analgesic. It works in certain areas of the brain and nervous system to decrease pain.

## Do NOT use Tramadol if:

- you are allergic to any ingredient in Tramadol
- you have severe diarrhea due to taking an antibiotic
- you are intoxicated with alcohol, other opioids or narcotics (eg, morphine, codeine), sedatives or sleeping medicines (eg, temazepam, zolpidem), or other medicines
- you are taking nefazodone, carbamazepine, or sodium oxybate (GHB)

Contact your doctor or health care provider right away if any of these apply to you.

## Before using Tramadol :

Some medical conditions may interact with Tramadol . Tell your doctor or pharmacist if you have any medical conditions, especially if any of the following apply to you:

- if you are pregnant, planning to become pregnant, or are breast-feeding
- if you are taking any prescription (especially depression medicines) or nonprescription medicine, herbal preparation, or dietary supplement
- if you have allergies to medicines, foods, or other substances
- if you are allergic to codeine, a codeine-related medicine (eg, hydrocodone, dihydrocodeine, oxycodone), morphine, or a morphine-related medicine (eg, hydromorphone)
- if you have a history of alcohol abuse, substance abuse, or suicidal thoughts or behaviors
- if you have or recently have had any head injury, brain injury or tumor, increased pressure in the brain, or infection of the brain or nervous system
- if you have a history of stomach or intestinal problems, asthma or other lung or breathing problems, epilepsy, seizures, or chronic inflammation or ulceration of the bowels
- if you have had recent abdominal surgery
- if you have heart problems, liver problems (eg, hepatitis), kidney problems, thyroid problems, enlargement of the prostate gland, or urinary problems

Some MEDICINES MAY INTERACT with Tramadol . Tell your health care provider if you are taking any other medicines, especially any of the following:

- Carbamazepine because it may decrease Tramadol 's effectiveness and increase the risk of seizures
- Certain medicines for mental or mood disorders (eg, olanzapine, haloperidol), cyclobenzaprine, isoniazid, other opioid pain medicine (eg, codeine, hydrocodone), phenothiazines (eg, promethazine), sleeping medicines (eg, zolpidem), sodium oxybate (GHB), tricyclic antidepressants (amitriptyline), or weight loss medicines (eg, phentermine) because side effects, including excessive drowsiness, trouble breathing, liver problems, or seizures, may be increased
- Furazolidone, monoamine oxidase (MAO) inhibitors (eg, phenelzine), nefazodone, selegiline, or selective serotonin reuptake inhibitors (SSRIs) (eg, fluoxetine) because they may cause serious and sometimes fatal reactions, including restlessness, fever, excessive sweating, confusion, twitching, and seizures

Page 2 of 3

0 7 0 7   3 0 0 0 3 8 9 2

- Oral anticoagulants (eg, warfarin) because its side effects, including bleeding, may be increased by Tramadol
- Digoxin because the risk of side effects, including nausea, vomiting, or slow heartbeat, may be increased by Tramadol

This may not be a complete list of all interactions that may occur. Ask your health care provider if Tramadol may interact with other medicines that you take. Check with your health care provider before you start, stop, or change the dose of any medicine.

# How to use Tramadol :

Use Tramadol as directed by your doctor. Check the label on the medicine for exact dosing instructions.

- Take Tramadol by mouth with or without food.
- If you miss a dose of Tramadol , take it as soon as possible. If it is almost time for your next dose, skip the missed dose and go back to your regular dosing schedule. Do not take 2 doses at once.

Ask your health care provider any questions you may have about how to use Tramadol .

# Important safety information:

- Tramadol may cause drowsiness and dizziness. These effects may be worse if you take it with alcohol or certain medicines. Use Tramadol with caution. Do not drive or perform other possibly unsafe tasks until you know how you react to it.
- Do not drink alcohol or use medicines that may cause drowsiness (eg, sleep aids, muscle relaxers) while you are using Tramadol ; it may add to their effects. Ask your pharmacist if you have questions about which medicines may cause drowsiness.
- Tramadol may cause dizziness; alcohol, hot weather, exercise, or fever may increase this effect. To prevent it, sit up or stand slowly, especially in the morning. Sit or lie down at the first sign of this effect.
- Tell your doctor or dentist that you take Tramadol before you receive any medical or dental care, emergency care, or surgery.
- Use Tramadol with caution in the ELDERLY; they may be more sensitive to its effects.
- Tramadol should not be used in CHILDREN younger than 16 years old; safety and effectiveness in these children have not been confirmed.
- PREGNANCY and BREAST-FEEDING: Tramadol has been shown to cause harm to the fetus. If you think you may be pregnant, contact your doctor. You will need to discuss the benefits and risks of using Tramadol while you are pregnant. Tramadol is found in breast milk. Do not breast-feed while taking Tramadol .

When used for long periods of time or at high doses, Tramadol may not work as well and may require higher doses to obtain the same effect as when originally taken. This is known as TOLERANCE. Talk with your doctor if Tramadol stops working well. Do not take more than prescribed.

Some people who use Tramadol for a long time without a break may develop a physical need to continue taking it. This is known as physical DEPENDENCE. If you suddenly stop taking Tramadol , you may experience WITHDRAWAL symptoms including anxiety; diarrhea; fever, runny nose, or sneezing; goose bumps and abnormal skin sensations; nausea; vomiting; pain; rigid muscles; rapid heartbeat; seeing, hearing or feeling things that are not there; shivering or tremors; sweating; and trouble sleeping.

# Possible side effects of Tramadol :

All medicines may cause side effects, but many people have no, or minor, side effects. Check with your doctor if any of these most COMMON side effects persist or become bothersome:

Constipation; diarrhea; dizziness; drowsiness; increased sweating; loss of appetite; nausea.

Seek medical attention right away if any of these SEVERE side effects occur:

Severe allergic reactions (rash; hives; itching; difficulty breathing; tightness in the chest; swelling of the mouth, face, lips, or tongue); agitation; fainting; fever; incoordination; muscle stiffness or tremor; seizures.

Page 3 of 3

0 7 0 7 3 0 0 0 3 8 9 2

This is not a complete list of all side effects that may occur. If you have questions or need medical advice about side effects, contact your doctor or health care provider. You may report side effects to the FDA at 1-800-FDA-1088 (1-800-332-1088) or at http://www.fda.gov/medwatch.

# If OVERDOSE is suspected:

Contact 1-800-222-1222 (the American Association of Poison Control Centers), your local poison control center (http://www.aapcc.org/findyour.htm), or emergency room immediately. Symptoms may include bluish; cold clammy skin; difficult or slow breathing; drowsiness leading to unresponsiveness or coma; excessive sweating; loss of function in the heart and lungs; nausea and vomiting; pinpoint pupils; seizures; stomach or intestinal pain.

**Proper storage of Tramadol :**

Store Tramadol at 77 degrees F (25 degrees C). Brief storage at temperatures between 59 and 86 degrees F (15 and 30 degrees C) is permitted. Store away from heat, moisture, and light. Do not store in the bathroom. Keep Tramadol out of the reach of children and away from pets.

# General information:

- If you have any questions about Tramadol , please talk with your doctor, pharmacist, or other health care provider.
- Tramadol is to be used only by the patient for whom it is prescribed. Do not share it with other people.
- If your symptoms do not improve or if they become worse, check with your doctor.

This information is a summary only. It does not contain all information about Tramadol . If you have questions about the medicine you are taking or would like more information, check with your doctor, pharmacist, or other health care provider.

Issue Date: November 1, 2006
Database Edition 06.4.1.002
Copyright © 2006 Wolters Kluwer Health, Inc.

Page 1 of 3

0-7-0-7 3-0-0-0 3-8-9-2

Close  Print this page


**Drugs.com**
Drug Information Online

# Nabumetone

**Generic Name:** Nabumetone (nab-UE-me-tone)
**Brand Name:** Relafen

---

Nabumetone is a nonsteroidal anti-inflammatory drug (NSAID). It may cause an increased risk of serious and sometimes fatal heart and blood vessel problems (eg, heart attack, stroke). The risk may be greater if you already have heart problems or if you take Nabumetone for a long time. Do not use Nabumetone right before or after bypass heart surgery.

Nabumetone may cause an increased risk of serious and sometimes fatal stomach ulcers and bleeding. Elderly patients may be at greater risk. This may occur without warning signs.

---

## Nabumetone is used for:

Treating rheumatoid arthritis or osteoarthritis. It may also be used for other conditions as determined by your doctor.

Nabumetone is an NSAID. Exactly how it works is not known. It may block certain substances in the body that are linked to inflammation. NSAIDs treat the symptoms of pain and inflammation. They do not treat the disease that causes those symptoms.

## Do NOT use Nabumetone if:

- you are allergic to any ingredient in Nabumetone
- you have had a severe allergic reaction (eg, severe rash, hives, trouble breathing, growths in the nose, dizziness) to aspirin or an NSAID (eg, ibuprofen, celecoxib)
- you have recently had or will be having bypass heart surgery
- you are in the last 3 months of pregnancy

Contact your doctor or health care provider right away if any of these apply to you.

## Before using Nabumetone :

Some medical conditions may interact with Nabumetone . Tell your doctor or pharmacist if you have any medical conditions, especially if any of the following apply to you:

- if you are pregnant, planning to become pregnant, or are breast-feeding
- if you are taking any prescription or nonprescription medicine, herbal preparation, or dietary supplement
- if you have allergies to medicines, foods, or other substances
- if you have a history of kidney or liver disease, diabetes, or stomach or bowel problems (eg, bleeding, perforation, ulcers)
- if you have a history of swelling or fluid buildup, asthma, growths in the nose (nasal polyps), or mouth inflammation
- if you have high blood pressure, a blood disorder, bleeding or clotting problems, heart problems (eg, heart failure), or blood vessel disease, or if you are at risk for any of these diseases
- if you have poor health, dehydration or low fluid volume, or low blood sodium levels, you drink alcohol, or you have a history of alcohol abuse

Some MEDICINES MAY INTERACT with Nabumetone . Tell your health care provider if you are taking any other medicines, especially any of the following:

4107073000389221                    A625027340000101                    07/30/2007

R-0800

Page 2 of 5

0707 3000 3892

- Anticoagulants (eg, warfarin), aspirin, corticosterolds (eg, prednisone), heparin, or selective serotonin reuptake inhibitors (SSRIs) (eg, fluoxetine) because the risk of stomach bleeding may be increased
- Probenecid because it may increase the risk of Nabumetone's side effects
- Cyclosporine, lithium, methotrexate, or quinolones (eg, ciprofloxacin) because the risk of their side effects may be increased by Nabumetone
- Angiotensin-converting enzyme (ACE) inhibitors (eg, enalapril) or diuretics (eg, furosemide, hydrochlorothiazide) because their effectiveness may be decreased by Nabumetone

This may not be a complete list of all interactions that may occur. Ask your health care provider if Nabumetone may interact with other medicines that you take. Check with your health care provider before you start, stop, or change the dose of any medicine.

# How to use Nabumetone :

Use Nabumetone as directed by your doctor. Check the label on the medicine for exact dosing instructions.

- Nabumetone comes with an extra patient information sheet called a Medication Guide. Read it carefully. Read it again each time you get Nabumetone refilled.
- Take Nabumetone by mouth. It may be taken with food if it upsets your stomach. This may not lower the risk of stomach or bowel problems (eg, bleeding, ulcers). Talk with your doctor if you have persistent stomach upset.
- Take Nabumetone with a full glass of water (8 oz/240 mL) as directed by your doctor.
- If you miss a dose of Nabumetone and you are taking it regularly, take it as soon as possible. If it is almost time for your next dose, skip the missed dose. Go back to your regular dosing schedule. Do not take 2 doses at once.

Ask your health care provider any questions you may have about how to use Nabumetone .

# Important safety information:

- Nabumetone may cause dizziness or drowsiness. These effects may be worse if you take it with alcohol or certain medicines. Use Nabumetone with caution. Do not drive or perform other possibly unsafe tasks until you know how you react to it.
- Serious stomach ulcers or bleeding can occur with the use of Nabumetone . Taking it in high doses or for a long time, smoking, or drinking alcohol increases the risk of these side effects. Taking Nabumetone with food will NOT reduce the risk of these effects. Contact your doctor or emergency room at once if you develop severe stomach or back pain; black, tarry stools; vomit that looks like blood or coffee grounds; or unusual weight gain or swelling.
- Do NOT take more than the recommended dose or use for longer than prescribed without checking with your doctor.
- Nabumetone is an NSAID. Before you start taking any new medicine, read the ingredients. If it also has an NSAID (eg, ibuprofen) in it, check with your doctor. If you are not sure, check with your doctor or pharmacist.
- Do not take aspirin while you are using Nabumetone unless your doctor tells you to.
- Nabumetone may cause you to become sunburned more easily. Avoid the sun, sunlamps, or tanning booths until you know how you react to Nabumetone . Use a sunscreen or wear protective clothing if you must be outside for any length of time.
- Lab tests, including kidney function, complete blood cell counts, and blood pressure, may be done to monitor your progress or to check for side effects. Be sure to keep all doctor and lab appointments.
- Use Nabumetone with caution in the ELDERLY; they may be more sensitive to its effects, including stomach bleeding and kidney problems.
- Nabumetone should be used with extreme caution in CHILDREN; safety and effectiveness in children have not been confirmed.
- PREGNANCY and BREAST-FEEDING: Nabumetone may harm the fetus. Do not use it during the last 3 months of pregnancy. If you think you may be pregnant, contact your doctor. You will need to discuss the benefits and risks of using Nabumetone while you are pregnant. It is not known if Nabumetone is found in breast milk. Do not breast-feed while you are taking Nabumetone .

# Possible side effects of Nabumetone :

All medicines may cause side effects, but many people have no, or minor, side effects. Check with your doctor if any of these most COMMON side effects persist or become bothersome:

Constipation; diarrhea; dizziness; drowsiness; gas; headache; heartburn; nausea; stomach upset.

R-0801

Page 3 of 3

0 7 0 7 3 0 0 0 3 8 9 2

Seek medical attention right away if any of these SEVERE side effects occur:

Severe allergic reactions (rash; hives; itching; trouble breathing; tightness in the chest; swelling of the mouth, face, lips, or tongue); bloody or black, tarry stools; change in the amount of urine produced; chest pain; confusion; dark urine; depression; fainting; fast or irregular heartbeat; fever, chills, or persistent sore throat; mental or mood changes; numbness of an arm or leg; one-sided weakness; red, swollen, blistered, or peeling skin; ringing in the ears; seizures; severe headache or dizziness; severe or persistent stomach pain or nausea; severe vomiting; shortness of breath; sudden or unexplained weight gain; swelling of hands, legs, or feet; unusual bruising or bleeding; unusual joint or muscle pain; unusual tiredness or weakness; vision or speech changes; vomit that looks like coffee grounds; yellowing of the skin or eyes.

This is not a complete list of all side effects that may occur. If you have questions or need medical advice about side effects, contact your doctor or health care provider. You may report side effects to the FDA at 1-800-FDA-1088 (1-800-332-1088) or at http://www.fda.gov/medwatch.

# If OVERDOSE is suspected:

Contact 1-800-222-1222 (the American Association of Poison Control Centers), your local poison control center (http://www.aapcc.org/findyour.htm), or emergency room immediately. Symptoms may include decreased urination; loss of consciousness; seizures; severe dizziness or drowsiness; severe nausea or stomach pain; slow or troubled breathing; unusual bleeding or bruising; vomit that looks like coffee grounds.

Proper storage of Nabumetone :

Store Nabumetone at 77 degrees F (25 degrees C). Brief storage at temperatures between 59 and 86 degrees F (15 and 30 degrees C) is permitted. Store away from heat, moisture, and light. Do not store in the bathroom. Keep Nabumetone out of the reach of children and away from pets.

# General information:

- If you have any questions about Nabumetone , please talk with your doctor, pharmacist, or other health care provider.
- Nabumetone is to be used only by the patient for whom it is prescribed. Do not share it with other people.
- If your symptoms do not improve or if they become worse, check with your doctor.

This information is summary only. It does not contain all information about Nabumetone . If you have questions about the medicine you are taking or would like more information, check with your doctor, pharmacist, or other health care provider.

Issue Date: November 1, 2006
Database Edition 06.4.1.002
Copyright © 2006 Wolters Kluwer Health, Inc.

Close  Print this page

0 7 0 7 3 0 0 0 3 8 9 2



Drug Information Online

# Lyrica

**Generic Name:** Pregabalin (pre-GAB-a-lin)
**Brand Name:** Lyrica

## Lyrica is used for:

Treating certain types of nerve pain. It is also used in combination with other medicines to treat certain types of seizures. It may also be used for other conditions as determined by your doctor.

Lyrica is an anticonvulsant and neuropathic pain agent. How Lyrica works is not fully understood. It is thought to bind to certain areas in the brain that help reduce seizures, nerve pain, and anxiety.

## Do NOT use Lyrica if:

- you are allergic to any ingredient in Lyrica

Contact your doctor or health care provider right away if any of these apply to you.

## Before using Lyrica :

Some medical conditions may interact with Lyrica . Tell your doctor or pharmacist if you have any medical conditions, especially if any of the following apply to you:

- if you are pregnant, planning to become pregnant, or are breast-feeding
- if you are taking any prescription or nonprescription medicine, herbal preparation, or dietary supplement
- if you have allergies to medicines, foods, or other substances
- if you have heart problems (eg, congestive heart failure, irregular heartbeat), elevated creatinine kinase, muscle problems, diabetes, bleeding problems, or a history of alcohol or substance abuse
- if you have kidney problems or are on dialysis

Some MEDICINES MAY INTERACT with Lyrica . However, no specific interactions with Lyrica are known at this time.

This may not be a complete list of all interactions that may occur. Ask your health care provider if Lyrica may interact with other medicines that you take. Check with your health care provider before you start, stop, or change the dose of any medicine.

## How to use Lyrica :

Use Lyrica as directed by your doctor. Check the label on the medicine for exact dosing instructions.

- Lyrica comes with an additional patient leaflet. Read it carefully and reread it each time you get Lyrica refilled.
- Lyrica may be taken with or without food.
- Take Lyrica regularly to receive the most benefit from it. Taking Lyrica at the same time each day will help you remember to take it.
- If you miss a dose of Lyrica , take it as soon as possible. If it is almost time for your next dose, skip the missed dose and go back to your regular dosing schedule. Do not take 2 doses at once.

Ask your health care provider any questions you may have about how to use Lyrica .

4107073000389221                    A625027340000101                                    07/30/2007

R-0803

(Page 131 of 194)

Page 2 of 5

0707 3000 3892

## Important safety information:

- Lyrica may cause drowsiness, dizziness, blurred vision, or lightheadedness. Do not drive, operate machinery, or do anything else that could be dangerous until you know how you react to Lyrica . Using Lyrica alone, with certain other medicines, or with alcohol may lessen your ability to drive or perform other potentially dangerous tasks.
- Avoid drinking alcohol or taking other medicines that cause drowsiness (eg, sedatives, tranquilizers) while taking Lyrica . Lyrica will add to the effects of alcohol and other depressants. Ask your pharmacist if you have questions about which medicines are depressants.
- Lyrica may reduce the number of clot-forming cells (platelets) in your blood. To prevent bleeding, avoid situations in which bruising or injury may occur. Report any unusual bleeding, bruising, blood in stools, or dark, tarry stools to your doctor.
- Before you have any medical or dental treatments, emergency care, or surgery, tell the doctor or dentist that you are using Lyrica .
- If you are planning to father a child, talk to your doctor about the benefits and risks of fathering a child while taking Lyrica .
- LAB TESTS, including blood cell counts, creatine kinase levels, or heart function, may be performed to monitor your progress or to check for side effects. Be sure to keep all doctor and lab appointments.
- Use Lyrica with caution in the ELDERLY because they may be more sensitive to its effects.
- Lyrica is not recommended for use in CHILDREN. Safety and effectiveness have not been confirmed.
- PREGNANCY and BREAST-FEEDING: If you become pregnant while taking Lyrica , discuss with your doctor the benefits and risks of using Lyrica during pregnancy. It is unknown if Lyrica is excreted in breast milk. Do not breast-feed while taking Lyrica .

If you suddenly stop taking Lyrica , you may experience WITHDRAWAL symptoms, including diarrhea, headache, nausea, or sleeplessness. If treatment with Lyrica is stopped, the dose should be reduced gradually.

## Possible side effects of Lyrica :

All medicines may cause side effects, but many people have no, or minor, side effects. Check with your doctor if any of these most COMMON side effects persist or become bothersome:

Changes in sexual function; constipation; dizziness; drowsiness; dry mouth; gas; headache; lightheadedness; stomach pain.

Seek medical attention right away if any of these SEVERE side effects occur:

Severe allergic reactions (rash; hives; itching; difficulty breathing; tightness in the chest; swelling of the mouth, face, lips, or tongue); bloating or swelling of the hands, feet, or ankles; changes in vision; confusion; fast or irregular heartbeat; fever; inability to control urination; loss of coordination; mental/mood changes; muscle aches, pain, tenderness, or weakness (especially if this occurs with a fever or general feeling or discomfort); speaking problems; sudden weight gain; unusual tiredness or weakness.

This is not a complete list of all side effects that may occur. If you have questions or need medical advice about side effects, contact your doctor or health care provider. You may report side effects to the FDA at 1-800-FDA-1088 (1-800-332-1088) or at http://www.fda.gov/medwatch.

## If OVERDOSE is suspected:

Contact 1-800-222-1222 (the American Association of Poison Control Centers), your local poison control center (http://www.aapcc.org/findyour.htm), or emergency room immediately.

**Proper storage of Lyrica :**

Store Lyrica at 77 degrees F (25 degrees C). Brief storage at temperatures between 59 and 86 degrees F (15 and 30 degrees C) is permitted. Store away from heat, moisture, and light. Do not store in the bathroom. Keep Lyrica out of the reach of children and away from pets.

## General information:

Page 5 of 5

0707 3000389221

- If you have any questions about Lyrica , please talk with your doctor, pharmacist, or other health care provider.
- Lyrica is to be used only by the patient for whom it is prescribed. Do not share it with other people.
- If your symptoms do not improve or if they become worse, check with your doctor.

This information is a summary only. It does not contain all information about Lyrica . If you have questions about the medicine you are taking or would like more information, check with your doctor, pharmacist, or other health care provider.

Issue Date: November 1, 2006
Database Edition 06.4.1.002
Copyright © 2006 Wolters Kluwer Health, Inc.

0707300038 92

No. 3-06-0365

Filed May 4, 2007.
IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| TERRY L. SIEKIERKA, | ) | Appeal from the Circuit Court |
| | ) | for the 13th Judicial Circuit, |
| Plaintiff-Appellant, | ) | LaSalle County, Illinois |
| | ) | |
| v. | ) | No. 02-L-182 |
| | ) | |
| UNITED STEEL DECK, INC., | ) | Honorable Eugene P. Daugherity |
| | ) | Judge, Presiding |
| Defendant-Appellee. | ) | |

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff Terry L. Siekierka filed a complaint against defendant United Steel Deck, Inc., alleging United Steel had wrongfully discharged Siekierka in retaliation for his assertion of his rights under the Illinois Workers' Compensation Act. 820 ILCS 305/1 *et seq.* (West 2002). United Steel filed a motion for summary judgment. Following discovery and a hearing on the motion, the trial court granted United Steel summary judgment and Siekierka follows with this appeal. We reverse the trial court.

FACTS

Plaintiff Terry L. Siekierka filed a complaint against defendant United Steel Deck, Inc., alleging United Steel wrongfully discharged Siekierka in retaliation for his assertion of his rights under the Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 2002)). In his complaint, Siekierka made the following allegations. Siekierka alleged that on May 11, 2001, he

0707 3000 3892

was injured while performing his duties as an employee of United Steel. Siekierka pursued his rights to compensation under the Act, including compensation for medical treatment and temporary total disability benefits (TTD). On August 31, 2001, while Siekierka was in the process of recuperating from the effect of his work-related injury, United Steel terminated Siekierka's employment. Siekierka alleged in his complaint that the termination was unreasonable, without just cause, and motivated in part because he had pursued his rights and remedies under the Act. Siekierka sought relief for compensatory and punitive damages. In response to Siekierka's complaint, United Steel answered as a defense that its action in terminating Siekierka was unrelated to his pursuit of workers' compensation rights and that Siekierka's failure to return to work within his authorized leave period was a legitimate reason for his discharge. United Steel moved for a summary judgment which the trial court granted.

The record *sub judice* consists of the following depositions, exhibits, affidavits and proceedings. The record contains a letter to Siekierka from Kristine Paul, a human resources manager with the United Steel plant in Peru, Illinois. In the letter, dated July 31, 2001, Paul informed Siekierka that he had been off work since May 14, 2001; that his 12 weeks of family leave would end on August 6, 2001, and that United Steel was willing to extend his leave for "one month," to the end of August. Paul further informed Siekierka that if he was unable to return to work by the end of August he would be terminated and offered "COBRA" coverage. Paul later informed Siekierka, by way of a letter dated August 31, 2001, that he was terminated and that his workers' compensation benefits would continue until he recovered. She also invited him to apply for re-employment with United Steel once he was released to work again.

Medical doctor Steven C. Delheimer testified by way of deposition. Delheimer attested he

4107073000389221                    A625027340000101                    07/30/2007

R-0807

0707 50005892

specializes in neurosurgery. Delheimer first examined Siekierka on May 21, 2001. As of May 24, 2001, Delheimer had documented Siekierka as "totally incapacitated." Delheimer recalled when he saw Siekierka on June 4, 2001, he scheduled him to undergo surgery on June 11, 2002. Delheimer was informed by "the insurance company" that surgery was not authorized. He did not see Siekierka again until August 6, 2001.

Delheimer stated when he saw Siekierka on August 6, 2001, his condition was no worse than on the June 4, 2001, visit. Delheimer acknowledged Siekierka's surgery took place on August 15, 2001, and it took three months, until November 15, 2001, for him to fully recover. Delheimer opined that had Siekierka undergone surgery as originally scheduled, he would have been back to work by August 31, 2001. Delheimer would have advised Siekierka to proceed with the surgery and would have sent Siekierka back to work a little earlier if he had known he was in danger of losing his employment. Delheimer opined there was nothing gained by Siekierka in delaying the surgery. The surgery was postponed solely because of the lack of authorization from the insurance company.

The record contains a letter from medical doctor David Shenker to Liberty Mutual Insurance, United Steel's insurer. In his letter, Shenker acknowledged that on July 11, 2001, he performed a neurological evaluation of Siekierka as a second opinion. Shenker noted Siekierka had been employed as a machine operator at United Steel for over 1 ½ years. Shenker stated Siekierka's injury occurred as a result of activity related to removing sheets of steel off of a conveyor. Shenker documented Siekierka symptoms and noted the severity of his pain had diminished since the injury. Shenker considered Siekierka's prognosis uncertain but opined he was improving. The doctor recommended Siekierka remain off of any heavy-duty work and take a wait-and-see approach for a month before considering whether to have surgery; he stated that any surgery would be related to

3

R-0808

G707 3000 3892

the May 11, 2001, incident. Shenker's letter is initialed at the bottom by Delheimer, following the

notation, "agree to waiting for a period of time." Delheimer acknowledged in his deposition that

he had reviewed Shenker's report.

Terry Siekierka was also deposed. Siekierka attested that on November 29, 1999, he had

signed a document indicating he had received training from United Steel with respect to the Family

and Medical Leave Act of 1993 (FMLA) (29 U.S.C. A. §2601 *et seq.* (2000)). He did not recall

whether he was informed that under the FMLA policy of the company, "[e]mployees who fail to

return to work after expiration of the requested leave, in the absence of any other approved form of

leave, will be deemed to have resigned their employment with the company." Siekierka did not

know the FMLA could apply to a work-related injury. Siekierka also attested to his signature on a

document that indicated he had received United Steel's employee handbook, which contains a

provision explaining the FMLA and which states that "excessive absenteeism" may result in

dismissal. Siekierka acknowledged other documentation reflecting conversations he had "on and

off" with United Steel personnel before he was terminated. Siekierka stated the documentation

accurately reflected the content of his conversations.

Siekierka testified he was under the impression until he was terminated that he was going to

be allowed to return to work after he recovered from his injury. He stated "everything was pretty

much kept on a positive note" when he was in contact with United Steel personnel. He was notified

by a letter dated July 31, 2001, that he had to be back to work by the end of August or he would be

terminated. Siekierka stated his surgery was rescheduled for August 15, 2006. Siekierka indicated

as obvious the impossibility of returning to work by the end of August when the surgical recovery

was estimated to be four to eight weeks. Siekierka referred to United Steel's insurer insisting he see

4

R-0809

0707300038892

a second physician after he had consulted with Delheimer. Siekierka attested it took a month to get in to see the second physician, Shenker, after which Shenker recommended he wait another month to heal. Siekierka stated that eight weeks were "shot right there." He opined that had he had the surgery as originally scheduled, he could have returned to work within the 12-week allotment.

Siekierka attested that after Delheimer gave him a full duty medical release to work on November 15, 2001, he contacted the company about reemployment and was told it was not hiring at the time. Siekierka agreed that as workers' compensation benefits, for the period of May 15, 2001, to November 19, 2001, he received $293.33 a week. His workers' compensation claim was settled for $27,355 as per a directive approved in February of 2003. Siekierka opined that United Steel did not look "too fondly on people that get hurt at work." He recalled that one employee who had experienced several job-related accidents was considered "accident prone" by company managers.

Paul, the human resources manager, also testified by way of deposition. Paul stated that when a worker is injured at United Steel she reports the injury to Liberty Mutual, the company's workers' compensation insurer. Thereafter, she does not monitor the claim or participate in further decision making with respect to the workers' compensation claim, however, she does receive updates on the claim from the insurer. Paul admitted the United Steel employee handbook does not contain a section explaining the workers' compensation policy.

Paul attested that the FMLA policy was established at United Steel in 1999. The FMLA is explained in the employee handbook, which indicates that the use of family medical leave "cannot result in the loss of employment benefits that accrued prior to the start of employee's leave." Paul stated the federal FMLA policy mandates up to 12 weeks of leave and she and Ron Grant, the plant manager, decide whether to extend the leave for a particular worker. The grant of an extension is

5

R-0810

0707300038 92

done on a case-by-case basis, and depends on factors including the nature of the injury or illness. Paul stated that before a decision is made to extend the leave, she looks at all the different company policies and laws, including, the FMLA, workers' compensation, short-term disability and the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. §12132 (2000)). Paul admitted that a person under leave through ADA would be granted more time to return to work because the law mandated it.

Paul acknowledged Siekierka was considered a good employee. Paul recalled no dispute over whether Siekierka's injury was work-related. When she received notice of Siekierka's injury she notified the insurance carrier. Paul admitted Siekierka did not request to be put on FMLA. Paul stated the FMLA may be initiated by the employee or the employer. Paul notified Siekierka on July 31, 2001, that the leave had been applied to him and that it was going to expire on August 6, 2001. United Steel gave Siekierka an extension of his leave from August 6 to August 31. At the time the extension was granted, Paul was aware of Shenker's report.

Paul recalled meeting with Grant and Siekierka on August 14, 2001, when Siekierka asked for a further extension of leave. Siekierka informed Paul and Grant he was to have surgery on August 15 and it would take four to eight weeks for him to recover. After Siekierka left, Grant and Paul discussed the possibility of extending Siekierka's leave. According to Paul, factors they considered included past practice; an employee with cancer, Jack Downey, had been given 3 ½ months of leave, including FMLA; he did not receive workers' compensation. Another employee who did file for workers' compensation was given a nine-day extension beyond FMLA. Paul stated that she and Grant considered an additional two-month extension would be excessive in light of company consistency and fairness to all the United Steel Peru plant employees. Paul stated she and

6

R-0811

0 7 0 7 3 0 0 0 3 8 9 2

Grant were concerned about setting a precedent regarding work-related injury leaves. She could not recall ever granting an extension of longer than a month. Ron Francisco of the New Jersey office concurred with their judgment. Siekierka was not given an additional extension. According to Paul, the decision to grant or deny an extension was not related to Siekierka's workers' compensation claim. She was aware that without a further extension, in light of his impending surgery, Siekierka would not be able to return to work.

Ron Grant, the plant manager for the United Steel facility in Peru, was also deposed. Grant stated to his knowledge the company had only one leave policy, the FMLA, and no separate policy that related to injured workers. Grant attested the FMLA policy allows for a 12-week period of leave, after which, if the company does not grant an extension, the employee is terminated. Grant stated he considered a four-week extension to be fair to the employee without detracting from the operation of the company.

Grant acknowledged Siekierka was a good employee. Grant stated the decision to extend additional time to Siekierka did not relate to his workers' compensation claim but was in keeping with the extension given to another employee, Jack Downey, who had been ill in a way unrelated to work. Grant admitted that by August 14, 2001, he and Paul had already decided they would not grant Siekierka an additional extension, although he told Siekierka he would take the matter up with the New Jersey office. When Grant spoke to the vice president of United Steel manufacturing, Kevin Gennarelli, Gennarelli endorsed the decision not to extend Siekierka's leave. Grant stated the only other policies that would allow an employee additional leave time would be related to some type of disability or a military necessity.

Grant acknowledged he recognized that in light of Siekierka's pending surgery, he was

7

R-0812

0707 3000 3892

unlikely to return to work without another extension. Grant admitted that under the company's operating policy, any worker who, like Siekierka, took longer than four months to recover from a work-related injury, would be terminated. Grant acknowledged an employee who previously filed workers' compensation claims was later terminated for insubordination. Grant also recalled another workers' compensation claimant employee who was terminated when he failed to appear for work after the expiration of his family leave, plus a few days' extension.

James Francisco was deposed by telephone. Francisco is the human resources director for United Steel, based in New Jersey. Francisco acknowledged he was instrumental in developing the employee handbook for United Steel. Francisco stated the handbook contains no information about an employee's rights under the Workers' Compensation Act. According to Francisco, workers' compensations claims are a routine matter handled through the company's workers' compensation insurer. He considers them an insurance matter.

Francisco knew of no employee, who, following a work-related injury, was allowed more than four months to return to work. Francisco stated that for the Peru facility, the leave granted to employee Downey, who was afflicted with cancer, was the benchmark used to determine a fair balance between the needs of the employee and the company's business needs. Francisco attested the company's leave policy has no relation to an employee's retention of workers' compensation benefits; he also stated Siekierka was not terminated because he filed a workers' compensation claim.

Kevin Gennarelli, was also deposed by telephone. Gennarelli is the vice president of United Steel based in New Jersey. Gennarelli stated he, Grant and Paul had agreed to accommodate Siekierka in the same manner they had accommodated Downey, giving him a one-month extension

8

R-0813

0707 3000389 2

of his family leave, the most they had ever given anyone. Gennarelli admitted that even if the only reason Siekierka could not return to work was because he was recuperating from the effects of a work related injury, Gennarelli would not have further extended Siekierka 's leave; he would not want to jeopardize the company's leave policy. Gennarelli acknowledged that an employee in need of more than four months recuperation from a work-related injury would not be able to keep a position at United Steel.

Following a hearing, the trial court granted United Steel's summary judgment motion. Siekierka follows with this appeal, in which he asserts the trial court erred in granting the summary judgment motion. Siekierka argues, in part, that there is a genuine issue of material fact as to whether there is a causal nexus between Siekierka's discharge and the exercise of his rights under the Act.

### ANALYSIS

Our review of a summary judgment ruling is *de novo*. Sheth v. Wunderlich 363 Ill. App. 3d 252, 254, 842 N.E.2d 1155, 1157 (2006). Summary judgment is proper when, viewed in a light most favorable to the nonmovant, the pleadings, affidavits, depositions, admissions, and exhibits on file reveal there is no issue as to any material fact and the movant is entitled to judgment as a matter of law. Sheth, 363 Ill. App. 3d at 254, 842 N.E.2d at 1157. In ruling on a motion for summary judgment, the trial court should construe the pleadings, affidavits, exhibits, and depositions most strictly against the moving part and most liberally in favor of the opponent. Bray v. Stan's Rental, Inc., 196 Ill. App. 3d 384, 386, 553 N.E.2d 791, 792 (1990). Furthermore, "summary judgment is not intended to be used as a means of weighing conflicting issues of fact." Bray, 196 Ill. App. 3d at 386, 553 N.E.2d at 792.

9

0707 3000389 2

Under section 4(h) of the Act, it is unlawful for "any employer, individually or through any insurance company or service or adjustment company, to discharge or threaten to discharge *** an employee because of the exercise of his or her rights or remedies granted to him or her by [the] Act." 820 ILCS 305/4(h) (2002). Because the workers' compensation law replaced common-law rights available to employees and employers, the court in Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 180-81, 384 N.E.2d 353, 356-57 (1978), carved out an exception to the general rule that an employer may fire an at-will employee for any reason or for no reason at all. The Kelsay court reasoned that the sound public policy underlying the Act dictated the recognition of an employee's cause of action for retaliatory discharge. Kelsay, 74 Ill. 2d at 181, 384 N.E.2d at 357. An underlying principle of the retaliatory discharge exception to the general rule of at-will employment is the recognition that an employer may not present the employee with a choice between his job and his legal entitlement to compensation. See Kelsay, 74 Ill. 2d at 182, 384 N.E.2d at 357 (stating that workers' compensation law would be seriously undermined if employers were permitted to abuse their power to terminate by threatening to discharge employees for seeking compensation under the Act). Kelsay prohibits an employer from utilizing an employee's job as leverage to condition his exercise of rights under the Act. Hartlein v. Illinois Power Co., 151 Ill. 2d 142, 166, 601 N.E.2d 720, 731 (1992)

Cases brought for retaliatory discharge predicated on an employee's filing of a workers' compensation claim are reviewed using traditional tort analysis. Clemons v. Mechanical Devices Co., 184 Ill. 2d 328, 339, 704 N.E.2d 403, 408 (1998). The burden rests with the plaintiff to prove the elements of the cause of action. Clemons, 184 Ill. 2d at 337, 704 N.E.2d at 407. To sustain a cause of action for the tort of retaliatory discharge based upon the filing of a workers' compensation claim, an employee must prove: (1) that he was an employee before the injury; (2) that he exercised

10

0707 3000 3892

a right granted by the Act; and (3) that he was discharged and that the discharge was causally related to his filing a claim under the Act. Clemons, 184 Ill. 2d at 335-36, 704 N.E.2d at 406.

The ultimate issue concerning the element of causation is the employer's motive in discharging the employee. Clemons, 184 Ill. 2d at 336, 704 N.E.2d at 406. "The element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee". Hartlein, 151 Ill. 2d at 160, 601 N.E.2d at 728. For instance, an employer may terminate an employee for excess absenteeism, even if the absenteeism is caused by a compensable injury. Hartlein, 151 Ill. 2d at 160, 601 N.E.2d at 728. The mere existence of a valid or sufficient reason, however, does not defeat a retaliatory discharge claim. "[I]f an employer chooses to come forward with a valid, nonpretextual basis for discharging its employees *and the trier of fact believes it*, the causation element required to be proven is not met." Clemons, 184 Ill. 2d at 336, 704 N.E.2d at 406. (Emphasis added). Furthermore, despite an ostensibly neutral absenteeism policy, where the actual purpose and effect of the scheme penalize employees for filing workers' compensation claims, the employer's action may in fact be retaliatory. See Hess v. Clarcor, Inc., 237 Ill. App. 3d 434, 450, 603 N.E.2d 1262, 1273 (1992) (upholding the trial court's denial of injunctive relief where the evidence of a facially neutral absenteeism policy, adopted for a legitimate business purpose and applied evenhandedly, did not support a finding of retaliatory intent on the part of the employer).

In the instant case, it is undisputed that Siekierka was a good employee of United Steel; that he exercised his rights under the Act; and that United Steel terminated his employment. The only issue is whether there is an issue of material fact as to whether there existed a causal connection between Siekierka's termination and the filing of his workers' compensation claim. United Steel has chosen to come forward with a valid nonpretextual basis for terminating Siekierka's

11

G707 3000 3892

employment: his failure to return from authorized leave. There is testimony from United Steel's employees to support this assertion.

On the other hand, the evidence also supports an inference that United Steel's insurer set in motion a process that made it impossible for Siekierka to return to work within the time granted to him by United Steel. Siekierka presented evidence that his doctor, Delheimer, recommended surgery as of June 11, 2002, and that United Steel's insurer refused to accommodate the surgery and forced him to seek the opinion of an insurer-provided doctor, Shenker. Shenker was unavailable for consultation for four weeks and his "wait and see" recommendation cost Siekierka an additional four weeks. Siekierka's condition remained unchanged and ultimately the surgery Delheimer had recommended for June 11, 2002, took place on August 15, 2002. Although it was three months after the surgery that Delheimer released Siekierka to work, there is evidence he could have been released to work earlier; Delheimer testified that had he known Siekierka was in danger of losing his job, he would have released him earlier, and just before his surgery, Siekierka told Paul and Grant he would need four to eight weeks of recovery time. If Siekierka's surgery had taken place on June 11, 2002, it is conceivable he could have returned to work 10 weeks later, by the end of August 2002.

Furthermore, Paul did not inform Siekierka until July 31, 2002, after he was three weeks into Shenker's "wait and see" approach, that he had already used up 11 weeks of family medical leave and would be terminated if he did not return to work by the end of August. By that time, it was obvious Siekierka could not undergo surgery and recover in time to return to work within the time alloted. The United Steel employees testified that once aware of Siekierka's need for surgery they knew he would not be able to return to work within the amount of leave United Steel had provided him. Siekierka, on the other hand, before he received Paul's letter, had no idea United Steel was

12

giving him a finite amount of leave only and labored under the apparently false impression, conveyed by the "pretty positive" tenor of his interaction with United Steel, that he would be able to return to work after he recuperated from his injury.

United Steel's actions served to delay Siekierka's surgery at the same time he was left uninformed that the delay had the potential to cost him his job. When Siekierka was finally made aware of the possible consequence of his continued absence from work, he was faced with the option of pursuing his worker's compensation right to have the surgery or attempting to return to work without it. This is the kind of choice prohibited under <u>Kelsay</u> and if United Steel's intent was to create this dilemma, its motive was retaliatory. For these reasons, viewing the depositions, affidavits and exhibits liberally in favor of Siekierka, and bearing in mind United Steel has chosen to argue a valid nonpretextual basis for terminating Siekierka's employment, we consider there is a genuine issue of material fact as to whether there exists a causal nexus between Siekierka's discharge and the exercise of his rights under the Act.

For the foregoing reasons, the judgment of the circuit court of LaSalle County is reversed.

Reversed.

LYTTON, P.J., and HOLDRIDGE, J., concur.

13

Wis.LIRC WC Decision: Poli - May 11, 1999 - ND § 5.24 - Functional Impairment rating... Page 1 of 5

07.07.30003892

## STATE OF WISCONSIN
### LABOR AND INDUSTRY REVIEW COMMISSION
P O BOX 8126, MADISON, WI 53708-8126 (608/266-9850)

MICHAEL POLI, Applicant

FOX MIDWEST TRANSPORT, Employer

LIBERTY MUTUAL FIRE INS CO, Insurer

### WORKER'S COMPENSATION DECISION
Claim No. 1997017248

An administrative law judge (ALJ) for the Worker's Compensation Division of the Department of Workforce Development issued a decision in this matter. A timely petition for review was filed.

The commission has considered the petition and the positions of the parties, and it has reviewed the evidence submitted to the ALJ. Based on its review, the commission agrees with the decision of the ALJ, and it adopts the findings and order in that decision as its own, except that it makes the following modifications:

> 1. Delete the last sentence of the fourth paragraph of the ALJ's Findings of Fact and substitute:

> > "After a review of the record and considering the applicant's surgery, treatment and residual symptoms in light of Wis. Admin. Code § DWD 80.32(11), the applicant reached a healing plateau from his cervical spine injury by May 7, 1998, with permanent partial disability from that condition at ten percent compared to permanent total disability."

> 2. In the second sentence of the seventh paragraph of the ALJ's Findings of Fact, delete "eight" and substitute "ten".

### ORDER

The findings and order of the administrative law judge, as modified, are affirmed.

Dated and mailed May 11, 1999
poliml.wmd : 101 : 5 ND § 5.24

/s/ David B. Falstad, Chairman

/s/ James A. Rutkowski, Commissioner

### MEMORANDUM OPINION

4107073000389221                    A625027340000101                    07/30/2007

R-0819

0707 5000389 2

The applicant sought compensation for disability to his right arm, right shoulder, and neck, following an accident at work when he fell while trying to disconnect a semi-tractor from a semi-trailer. The employer concedes the accident happened, and that it caused compensable disability to the right arm and shoulder. It denies liability for the claimed neck injury (cervical disc pathology treated by cervical discectomy and fusion.) At issue before the commission at this point, then, is whether the applicant injured his neck in the accident, and the extent of disability from any such injury.

The ALJ also found the cervical disc condition and resulting cervical discectomy/ fusion surgery were work-related. In this respect, he relied on the report of treating doctor Feely. The ALJ rated permanent partial disability at only eight percent, crediting the rating of the employer's IME for the cervical condition (Steven Delheimer, M.D.) over the ten percent rating of a doctor who performed a functional capacity evaluation for the applicant (James Leonard, D.O.)

The employer and insurer (collectively, the respondent) appeal. The respondent argues that the applicant did not hurt his neck when he fell on January 20, 1997, and that the opinion of IME Delheimer is more credible than that of Dr. Leonard. The respondent asserts it is simply not credible that the fall could have caused the cervical condition for two reasons: (1) the length of time between the fall (January 20, 1997) and the first instance of medical treatment (March 10, 1997); and (2) the fact that the applicant told his treating doctors (including Dr. Feely) that the neck pain started sometime after the fall.

Dr. Leonard, who did the functional capacity evaluation for the applicant, noted the onset of immediate right shoulder pain with the work injury. Dr. Leonard reported that the pain spread into the trapezius over the next couple of days; that over the next week or two the applicant starting having headaches; and that he had neck pain associated with the injuries. Dr. Leonard also noted left hand symptoms. See exhibit A.

Dr. Leonard opined that the work injury caused an acceleration of the applicant's pre-existing degenerative condition in his cervical spine beyond a normal progression. He related the neck symptoms to the work injury, noting the absence of neck pain or headaches before the injury. However, Dr. Leonard could only say it was possible, not probable, that the left hand problem was caused by the work injury as the left hand problem did not come on until a month after injury.

In his final opinion at exhibit 1, the independent medical examiner, Dr. Delheimer, opined that the applicant's cervical pathology was not caused by the work accident. He reports:

"I continue to believe that this is degenerative in nature, and that this condition was neither caused nor aggravated by the fall that he suffered in January 1997. Again there was no treatment of this condition for many weeks after the injury. There was no injury that could cause a cervical disc, and there was no evidence of cervical disc on his MRI, only degenerative disk disease, possibly causing a myelopathy."

Exhibit 1, page 4. Dr. Delheimer also found it significant that the applicant "changed his story" when he initially told the doctor he bruised his arm when he fell in June 1997, adding the detail that his arm was behind him on re- examination May 1998.

Like the ALJ, the commission regards Dr. Delheimer's opinion is less credible than Dr. Leonard's. First, as Dr. Feely reported in his March 27, 1997 note, the MRI report mentioned disc protrusion and disc encroachment, as well as osteophytic encroachment. The commission cannot reconcile this finding of disc encroachment and protrusion (which Dr. Delheimer himself notes in exhibit 3) with Delheimer's statements in exhibit 1 that the MRI only showed degenerative changes with spurring. Perhaps Dr.

4107073000389221                    A625027340000101                    07/30/2007

R-0820

0-7-0-7-3-0-0-0-3-8-9-2-

Delheimer means that the disc protrusion or encroachment was short of a frank herniation (Dr. Feely himself does not mention a herniation), but the fact remains that the MRI report refers to disc protrusion and disc encroachment as Dr. Feely said.

The commission also notes Dr. Delheimer's conclusion that the fall was not a competent mechanism to "cause a cervical disc." The commission assumes Dr. Delheimer meant that the fall could not cause a disc herniation (as opposed to a protrusion.) Again, Drs. Leonard and Feely did not base their diagnoses on a frank herniation. Further, the commission does not believe it is reasonable to rule out the fall as a mechanism for causing an aggravation beyond normal progression of the existing cervical pathology, when the alternative diagnosis seems to be that the degenerative condition simply worsened coincidentally with a fall which caused significant conceded shoulder and arm injuries.

The commission acknowledges that the applicant did not seek treatment until several weeks after the injury, and that the record is not entirely consistent about exactly when the neck pain started. It is also troubling that the applicant did not mention the work injury itself in his very first visit to Dr. Bishop on March 10, 1997.

Of course, the applicant did describe the incident to Dr. Jacobs only two days later on March 12, and has described it consistently since. In addition, IME Allan found that the fall caused the rotator cuff problem, despite the gap between the injury and the treatment. Further, the neck pain began shortly after the fall, not a full month later like the unrelated left arm symptoms which the treating doctors agree are unrelated to the work injury.

The commission therefore affirms the ALJ's findings regarding causation, and nature and extent of disability, with one exception. Under the 1994 revisions to Wis. Admin. Code § DWD 80.32(11), the minimum permanent disability rating for a cervical discectomy and fusion is ten percent. *Terry Manka v. Bill Wittman Builders*, WC case no. 940522401 (LIRC, November 25, 1997, as amended on December 11 and 23, 1997). There is also no basis for a "below- the-minimum" award. *See: Michael Moser v. Dorman Foods*, WC case no. 95009409 (LIRC, February 27, 1998). While the commission does not normally act unilaterally to an increase an award, it will do so to correct what is essentially an error in computation.

PAMELA I. ANDERSON, COMMISSIONER (Dissenting):

I am unable to agree with the result reached by the majority herein and I dissent. I found Dr. Delheimer to be more credible. Dr. Bishop reported, "This patient came in with arm symptoms, shoulder symptoms and neck discomfort. Felt that he probably is aggravated by driving or at least making it difficult for him to drive his semi." Also in the report "A cervical spine x-ray is done and showed a considerable amount of cervical arthritis and disc narrowing at C5, C6, and C6, C7 whispering at this level."

Dr. Nichols did an MRI on March 27, 1997 and found "1. There is degenerative interspace narrowing at C5-6. There is disk protrusion to the left of the midline along with posterior osteophytic encroachment upon the bony spinal canal. This results in narrowing of the bilateral canals and also in slight compression of the left half of the cord. 2. The vertebral body heights are maintained. There is normal marrow signal intensity. 3. Remaining interspaces are for the most part maintained. 4. The remaining sections of the cervical cord are unremarkable. IMP: Disk and osteophytic encroachment upon the bony canal, primarily to the left of center at C5-6. This results in bilateral neural canal narrowing and also in some compression of the left half of the cord at this level."

4107073000389221                        A625027340000101                        07/30/2007

R-0821

Wis.LIRC WC Decision: Poll - May 11, 1999 - IND § 5.24 - Functional Impairment rating... Page 4 of 5

07073000389221

Dr. Delheimer indicated "In regard to his cervical disk disease, I continue to believe that this is degenerative in nature, and that this condition was neither caused by nor aggravated by the fall that he suffered in January 1997. Again, there was no treatment for this condition for many weeks after the injury. There was no injury compatible that would cause a cervical disk, and there was no evidence of cervical disk on his MRI, only degenerative disk disease, possibly causing myelopathy."

Dr. Delheimer notes that the applicant did not have immediate pain in his neck after the work injury. Dr. Delheimer also noted "When observed both walking into the office and out of the examination room, there is no gait difficulty. When his gait is directly tested, there is marked discrepancy, in that, he had ataxia not so much on a regular gait but with tandem walking and also walking on both his heels and toes. It should be noted this ataxia developed not with his normal gait but only when he knows he is being specifically tested for this. When he falls, he falls randomly to the right or the left side but not consistently. He had no difficulty with turns, especially when he is not aware of being observed. His Romberg is rather bizarre, in that, he falls backwards but is able to catch himself. It should be noted that he has no ataxia with sitting, and that his finger to nose test and heel shin test are all normal. There is no Clonus of his lower extremities. His toes are downgoing, bilaterally. He had normal position sense. He had no difficulty taking off his boots and shoes. Especially when taking off his shoes, he is able to stand on one foot without difficulty. He also has fasciculations of his first dorsal interossei of his left hand but no atrophy."

Dr. Delheimer also wrote, " In regard to his neck problem, I believe that he has degenerative disk disease primarily at C5-6. I feel this is an underlying, ongoing problem unrelated to the injury of January 20, 1997. I would like to point out that his symptoms referable to his shoulder and his neck began, at least four weeks after the injury, and there are some significant discrepancies in his examination. For example, he does have difficulty with ataxia that seems to be magnified when he is aware of being observed and directly tested. This problem is not nearly as apparent during routine inspection such as when he walked into and out of the examination room and also at one point at the end of the examination when he turned to ask me a question. At that time, there was no ataxia present with this turn. I would also like to point out that this, if present, would be more likely due to a cerebellar problem than to a cervical myelopathy. Specifically, because there is no change in his position sense, no Clonus of his lower extremities, and absolutely no increase of his deep tendon reflexes in either his upper or lower extremities."

Dr. Feely reported in his July 1, 1997 note "He reports from the point of view of his balance, he is now doing very well. He has no further gait disturbance." The problem with this report is that Dr. Delheimer did not believe that he had a serious gait problem so the surgery could not fix it.

Overall, I found it most credible that the osteophytic problem that the employe had was the cause of the employe's neck problems and that developed after the work incident and got worse over time. The employe did not immediately report the work incident and did not even report it as a possible cause to the first treating doctor. I recognize that the employe is not a doctor but the fact that he did not mention the work injury does indicate he did not believe it was so serious an event.

For these reasons, I would reverse that portion of the decision that deals with the neck and dismiss that claim.

_____

Pamela I. Anderson, Commissioner

cc: ATTORNEY JAMES A PITTS

Wis.LIRC WC Decision: Poli - May 11, 1999 - ND § 5.24 - Functional Impairment rating...    Page 3 of 3

07·07·30003892·
SCHOONE FORTUNE LEUCK KELLEY & PITTS SC

ATTORNEY KURT VAN BUSKIRK
LAW OFFICE OF JEFFREY T O'CONNOR

---

[ Search Decisions ] - [ WC Legal Resources ] - [ LIRC Home Page ]

Iowa Workers' Compensation Commissioner Decisions - GERI V. EAGLE FOOD CENT... Page 1 of 4

0 7 0 7 3 0 0 0 3 8 9 2

# Iowa Workers' Compensation Commissioner Decisions

**Case Title:** SIEGFRIED, GERI V. EAGLE FOOD CENTER
**Date:** April 30, 2002

**File Number:** 1023934RR
**Decision Type:** Review-Reopen
Click here to open a PDF version of this decision.

Click here to search for all decisions related to file number 1023934RR.

---

### BEFORE THE IOWA WORKERS' COMPENSATION COMMISSIONER

---

|  |  |
|---|---|
| : | |
| GERI SIEGFRIED, : | |
| : | |
| Claimant, : | |
| : | |
| vs. : | |
| : File No. 1023934 | |
| EAGLE FOOD CENTER, : | |
| : REVIEW-REOPENING | |
| Employer, : | |
| : D E C I S I O N | |
| and : | |
| : | |
| CNA INSURANCE, : | |
| : | |
| Insurance Carrier, : | |
| Defendants. : Head Note No.: 1402.4 | |

---

### STATEMENT OF THE CASE

This is a review-reopening pursuant to Iowa Code section 86.14 in which the claimant asserts a change of condition requiring the payment of additional industrial disability benefits.

The case was heard and fully submitted at Davenport, Iowa on February 27, 2002. The record in the case consists of joint exhibits 1 through 10 as well as the testimony of the claimant.

4107073000389221                          A625027340000101
                                                    07/30/2007

R-0824

0 7 0 7 3 0 0 0 3 8 9 2

## ISSUE

The parties present the following issue for determination:

Whether the claimant has sustained a change of condition, which warrants the payment of additional permanent partial disability benefits pursuant to Iowa Code section 85.34(2)(u).

## FINDINGS OF FACT

Having heard the testimony of the witness and examined the evidence in the record the undersigned finds:

According to a review-reopening decision filed in this matter on February 25, 1998, the claimant sustained an injury when she tripped on a pallet and lunged forward hyperextending her right leg. (Joint Exhibit 3, page 2) Subsequently the claimant underwent a discectomy at L4-5 on September 2, 1992, by Richard J. Roski, M.D., who rated the claimant's impairment at eight percent of the body as whole. (Jt. Ex. 3, p. 2) The claimant was released to return to regular employment following the 1992 discectomy. (Jt. Ex. 3, p. 2)

The claimant subsequently developed severe back and leg pain in May 1995 on the left side. An MRI scan disclosed reherniation at the L4-5 level which Dr. Roski causally connected to the work injury. (Jt. Ex. 3, p. 3) On August 3, 1995, Dr. Roski performed another discectomy with good results but there were still residual symptoms, which were described in the review-reopening decision:

Siegfried has similar residual pain, but incidences are more frequent and feature increased pain levels. She "notices" her back condition more, and has occasionally missed work, although she is not receiving active treatment. She cannot work as long without developing pain, and notices that cold weather affects her. Although she apparently still has no formal activity restrictions in effect (in agency experience, this absence is very unusual in cases involving multiple back surgeries), she is increasingly self-limited. Dr. Roski the released Siegfried to return to her regular job effective February 5, 1996, although she began on a light duty basis a month earlier. Dr. Roski has also increased his impairment rating to 12 percent of the body as whole.

(Jt. Ex. 3, p. 3)

The claimant was awarded an additional 50 weeks of permanent partial disability benefits. She was initially awarded by an appeal decision filed June 22, 1994, a 15 percent industrial disability as a result of her May 24, 1992, injury. (Jt. Ex. 2, p. 6) Consequently, the claimant has so far been awarded a 25 percent industrial disability as a result of her work injury.

At the time of the review-reopening hearing in this matter on February 18, 1998, claimant was working for her employer performing bookkeeping, running a cash register and staffing the courtesy counter, and working essentially the same hours as she worked at the time for initial arbitration hearing in this matter. (Jt. Ex. 3, p. 3) On April 21, 1998, the claimant contacted Dr. Roski's office indicating that she was experiencing right leg pain with radiculopathy that extended down into both calves. (Jt. Ex. 5, p. 14) Claimant also reported to Dr. Roski's office at that time that she had reduced her hours since Easter and that she still had prolonged pain in the low back region as well as the right leg. (Jt. Ex. 5, p. 14) On April 23, 1998, Dr. Roski examined claimant. Dr. Roski gave claimant a medrol dosepak and scheduled the claimant for an MRI scan. (Jt. Ex. 5, p. 15) The MRI scan showed no evidence of recurrent disc herniation. Dr. Roski's office notes of May 11, 1998, note that the claimant's symptoms have gradually improved after the medrol. (Jt. Ex. 5, p. 15)

The claimant failed to make sufficient progress so Dr. Roski referred the claimant on September 14, 1998, to Dr. Mendel, who is in the same clinic with Dr. Roski, for further evaluation. (Jt. Ex. 5, p. 16)

Dr. Mendel wanted the claimant to undergo discography but the claimant wanted to exhaust all conservative measures before being subjected to a discogram so the claimant was prescribed physical therapy. (Jt. Ex. 5, p. 16)

On February 3, 1999, the claimant returned to see Dr. Mendel and at that time indicated that she was still having back pain. The physical therapy had not been beneficial for the claimant but the claimant wanted to continue with conservative measures since she could tolerate her pain when she was not at work. (Jt. Ex. 5, p. 17) At that time Dr. Mendel recommended the claimant have light duty for six weeks and then return. (Jt. Ex. 5, p. 17) When the claimant returned she reported that she had seen significant improvement with light duty work. (Jt. Ex. 5, p. 18) On December 27, 1999, the claimant was referred back to Dr. Roski after the claimant to been sent for a second opinion and that opinion indicated that the

4107073000389221    A625027340000101    07/30/2007

R-0825

Iowa Workers' Compensation Commissioner Decisions - GERI V. EAGLE FOOD CENT... Page 3 of 4

0707300053852

claimant was to return to work under the usual conditions. (Jt. Ex. 5, p. 18)

Dr. Roski then sent the claimant back to work on August 17, 2000, with restrictions of no prolonged standing and no lifting awkward weights over ten pounds. (Jt. Ex. 5, pp. 19-20)

Dr. Roski explains the August 17, 2000, visit in a letter to counsel dated May 8, 2001:

The patient was last seen by me in the office on 8/17/00. At that time she was continuing to have problems with back pain that was exacerbated by being up for prolonged periods of time or doing any kind of awkward lifting. If she was able to control the amount of lifting and her activity, she has been able to keep her pain under reasonable control. According to my office notes, I do not see that this is a major change from the problems she was having in 1998. The only change that I see in her restrictions since 1998 was that we lowered her weight limitation from 20 pounds to 10 pounds. She has not had any significant diagnostic studies to indicate any obvious changes to explain why her symptoms have not improved, but after this prolonged period of time, I do not anticipate that there will be significant change in her condition in the near future.

(Jt. Ex. 5, p. 21)

The other physician that the claimant had seen for evaluation was Steven C. Delheimer, M.D., a neurosurgeon. Dr. Delheimer concluded that the claimant had degenerative disc disease of her lumbar spine and that she currently only has periodic manifestations of her underlying degenerative disc disease. (Jt. Ex. 9, p. 16) Dr. Delheimer did not believe that the claimant's employment had caused or aggravated the claimant's underlying degenerative disc disease and that any restrictions placed upon her are attributable to that degenerative disc disease. (Jt. Ex. 9, p. 16) Dr. Delheimer increased the claimant's weight restriction to 30 pounds with no prolonged standing or lifting on the basis of her prior surgery and degenerative changes. (Jt. Ex. 9, p. 17)

Based upon Dr. Delheimer's restrictions the employer terminated the claimant's employment effective December 14, 2000. (Jt. Ex. 10)

When the claimant first began experiencing pain and problems following the first review-reopening proceeding she cut back on her hours to approximately 20 to 25 hours per week. She then took the second job at the religious supply center doing bookkeeping work. She has very flexible hours in this employment as of the time of this review-reopening proceeding. She currently works 20 to 25 hours per week, 5 days per week, and earns $10.50 per hour. She does not expect that her hours will change or increase. She has no plans to leave this employment at this time. She has not sought other employment and does not want to work at a position that would require her to work 40 hours per week in a sitting position.

REASONING AND CONCLUSISONS OF LAW

The issue in this case is whether the claimant has sustained a change of condition that warrants the payment of additional permanent partial disability benefits pursuant to Iowa Code section 85.34(2)(u).

Upon review-reopening, claimant has the burden to show a change in condition related to the original injury since the original award or settlement was made. The change may be either economic or physical. Blacksmith v. All-American, Inc., 290 N.W.2d 348 (Iowa 1980); Henderson v. Iles, 250 Iowa 787, 96 N.W.2d 321 (1959). A mere difference of opinion of experts as to the percentage of disability arising from an original injury is not sufficient to justify a different determination on a petition for review-reopening. Rather, claimant's condition must have worsened or deteriorated in a manner not contemplated at the time of the initial award or settlement before an award on review-reopening is appropriate. Bousfield v. Sisters of Mercy, 249 Iowa 64, 86 N.W.2d 109 (1957). A failure of a condition to improve to the extent anticipated originally may also constitute a change of condition. Meyers v. Holiday Inn of Cedar Falls, Iowa, Iowa App. 272 N.W.2d 24 (1978).

Defendants argue that any change in condition is due to a congenital degenerative disc disease and not related to the original work injury. Claimant contends that she has experienced an increase in her symptoms connected to her work injury which has resulted in work restrictions that disqualified her from performing employment that she held at the time of the prior review-reopening proceeding and thus the claimant's industrial disability has increased as a result of this change in the claimant's economic condition brought on by work restrictions.

The only opinion regarding the causation of the work restrictions, which resulted in the claimant's loss of employment, is from Dr. Delheimer. Dr. Delheimer does not relate the work restrictions to the

Iowa Workers' Compensation Commissioner Decisions - GERI V. EAGLE FOOD CENT... Page 4 of 4

0707300038892-

claimant's work injury. Dr. Roski imposes more limiting restrictions but offered no opinion as to the cause of those restrictions. There's no question the claimant has had a longstanding problem with degenerative disc disease so Dr. Delheimer's opinion is supported by the record.

At the time of the previous review-reopening proceeding the claimant had sustained a serious of reherniation at the same level that was medically causally connected to the original work injury. Such evidence supported the conclusion that the claimant had sustained a change of condition. Such evidence of causation is not present in this proceeding. Therefore, it is concluded that claimant has failed to meet her burden of proof with respect to a change of condition, which is necessary in a review-reopening proceeding.

ORDER

Claimant shall take nothing from this proceeding.

Costs shall be taxed to the claimant.

Signed and filed this _____30th_____ day of April, 2002.

[

Copies to:

Nick Avgerinos

Attorney at Law

30 N Lasalle Street Ste 1420

Chicago, IL 60602

Elliott McDonald Jr.

Attorney at Law

PO Box 2746

Davenport, IA 52809

FindLaw for Legal Professionals, Case Law, Federal and State Resources, Forms, and C...    Page 1 of 6

0707 30005892



FindLaw | For Legal Professionals | For Corporate Counsel | For Law Students
Register/login to My FindLaw
My current location: Fresno, CA | Change Location

| Home | Practice Areas | Jurisdictions | Cases & Codes | News | CLE | Market Center | Research a Lawyer |
| Federal Law | State Law | Case Summaries Search | U.S. Code | Newsletters |

Visit FindLaw's Market Center to find the services and products your law firm needs!

Legal Experts    Investigators    Consultants    Software    Hardware    FindLaw

FindLaw> State Resources> Illinois> Primary Materials> Illinois Court Opinions

No. 2--02--0829

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| KATHLEEN M. MARTIN, | ) | Appeal from the Circuit |
| | ) | Court of Winnebago County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 00--L--20 |
| | ) | |
| JOEL D. SALLY, | ) | Honorable |
| | ) | Janet Clark Holmgren, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Kathleen M. Martin, filed suit against defendant, Joel D. Sally, seeking to recover damages for personal injuries allegedly sustained from a motor vehicle accident. Defendant admitted negligence but denied that plaintiff's preexisting injury was aggravated from the accident and denied that plaintiff sustained any injuries by the accident. After hearing the evidence, the jury returned a verdict in favor of defendant. We affirm.

FACTS

Before trial began, both parties filed motions in limine. Plaintiff's motion requested that the trial court bar defendant from eliciting testimony from his expert engineering witness, Mark Strauss, that no human could be injured in this type of occurrence and that plaintiff could not have been injured in this occurrence. The trial court denied her motion.

Defendant's motion in limine requested that plaintiff be barred from presenting evidence that, following the collision, her son was crying, was claiming to have been injured in the accident, was taken by ambulance to the hospital, or was evaluated and treated. Plaintiff argued that the evidence was relevant because she would be testifying at trial that she was so concerned at the time of the accident that her son might be injured due to his recent appendectomy surgery that she focused her attention on her son's condition rather than her own, and she therefore did not complain of any injuries to the investigating police officer at the scene of the accident. The trial court granted defendant's motion.

Based on the trial court's ruling that defendant could present testimony from his engineer that no human body could have been injured in the accident, plaintiff filed a motion in limine in which she sought to be allowed to present in rebuttal the testimony that her son was crying, he claimed to have been injured, he was taken by ambulance to a hospital, and he received treatment at the hospital for possible injuries. The motion was denied.

The trial court, however, allowed plaintiff to make an offer of proof on the issues as to why she did not complain of her own injury at the scene of the accident and as to whether the impact was such that a person could have been injured in the accident. Plaintiff testified that her 11-year-old son, Cory, was a front seat passenger in the van at the time of the accident. At the moment of impact, she witnessed his body move back and forth. Immediately after the accident, she had a brief conversation with defendant, and when plaintiff finished speaking with him, she noticed Cory crying. She noticed that Cory's head was down and he was leaning forward. Cory told her that his back and neck hurt. Plaintiff "freaked out," wondering what to do, because Cory had just undergone an appendectomy weeks before. Plaintiff then called 911 and an ambulance took Cory to the hospital. Cory was evaluated and released that same day. Cory was "uncomfortable" but took a Tylenol but never required any further medical care.

0 7 0 7 3 0 0 0 3 8 5 2

The following facts were presented at trial. On July 10, 1998, plaintiff was driving a 1990 Dodge Caravan westbound on Halsted Street in Rockford and brought her van to a stop at a red light at the intersection of Huffman Boulevard. Cory was seated in the front passenger seat of the van. Defendant was driving a 1988 Chevrolet 1500 pick-up truck westbound on Halsted Street behind plaintiff. It had been raining and the pavement was wet. As defendant approached the red light at the intersection, he saw plaintiff's van in front of him. He applied the brakes, but his tires began skidding on the wet pavement and the front of his truck struck the rear of plaintiff's van. According to defendant, his truck was traveling between five and seven miles per hour when it "squarely" impacted the rear end of plaintiff's van.

Following the accident, both plaintiff and defendant left their vehicles and looked to see if there was any damage. Plaintiff's van was equipped with a trailer hitch at the time. Both parties agreed that there was no damage done to either vehicle, although defendant did see a small dimple in his license plate. Plaintiff admitted that she told defendant that she was all right and she did not complain of any symptoms at the time.

Prior to the accident, plaintiff twice had injured her back while working, once in 1997 and again in March 1998. Plaintiff injured her back on a third occasion in April 1998, while helping her family move. Following these injuries, plaintiff was treated by Drs. Robert Porter, Melinda Carter, and Charles Wright. An MRI of plaintiff's lumbar spine taken on May 6, 1998, showed a disc protrusion at the L4-L5 level. Because of the back injury in April, plaintiff had stopped working and she was not working at the time of the accident at issue. Plaintiff had been in physical therapy treatment and taking medication as prescribed by Dr. Wright due to her injury.

Plaintiff did not seek any medical attention on the day of the accident or within three days following the accident. She admitted telling the therapist on July 13, 1998, that she was feeling gradually improved. On July 14, 1998, four days after the accident, plaintiff attended a physical therapy appointment, which had been scheduled before the accident. She did not see Dr. Wright after the accident until August 6, 1998, and that appointment also had been scheduled before the accident. Plaintiff continued going to her regularly scheduled physical therapy appointments.

Plaintiff explained that her back and neck were sore from the accident but because she already was under a doctor's care and already was taking pain medication, she did not go to a doctor or hospital for extra care. Plaintiff noticed that her symptoms were getting progressively worse, more than she had ever experienced. Immediately before the accident, plaintiff had been improving to the point where she was feeling like returning to work on a part-time basis.

Dr. Carter, plaintiff's family practitioner, ordered a second MRI of the lumbar spine, which was taken on July 23, 1998. When she ordered the second MRI, Dr. Carter was not aware that plaintiff had been involved in the accident on July 10, 1998. On August 11, 1998, plaintiff's surgeon, Dr. Wright, performed a lumbar discectomy at the L4-L5 level.

At trial, Dr. Wright testified for plaintiff by way of an evidence deposition. He opined that the surgery he performed was causally related to the accident at issue. On cross-examination, however, Wright conceded that his initial clinical examination of plaintiff on May 15, 1998, did not correlate with the MRI of the lumbar spine that had been done on May 6, 1998, because he expected to see a greater degree of disc protrusion and more nerve root compression to the left side. Wright also conceded that any type of heavy physical exertion such as gardening can cause a disc protrusion to progress.

Wright further testified on cross-examination that when he initially gave his opinion that the accident aggravated plaintiff's injuries, as shown by the preaccident and postaccident MRIs, plaintiff had not given him any specific information about the accident. He did not know whether it was a front-end or a rear-end collision or the severity of the impact between the two vehicles. When questioned, Wright admitted that the greater the force of trauma, the greater the likelihood of having a disc protrusion progress and that the lighter the impact between the vehicles, the less likely it would be for a disc protrusion to progress. Wright observed that if, in fact, a patient experienced progression of a disc protrusion as a result of a single traumatic event, it is more common than not that the patient would notice increased symptoms immediately following the impact or quite shortly thereafter. After viewing the photographs of the vehicles, defense counsel asked whether it remained "very possible that [plaintiff's] disk was not injured or aggravated in any way as a result of the accident at issue?" Wright responded that, if he was going solely on the basis of the presence or absence of damage to the vehicles, that would be a "fair statement," although it ignored certain variables that could magnify or limit the effect of an impact, and that information was unavailable.

By way of a videotaped evidence deposition, defendant called Dr. Steven Delheimer. Delheimer believed that plaintiff had degenerative disc disease, which can produce herniated discs or disc bulges and which can progress or worsen with age. In comparing the preaccident and postaccident MRIs of plaintiff's lumbar spine, Delheimer believed that there was not a significant difference between them. He believed that the extruded disc fragment seen by Wright during the surgery performed on plaintiff was probably present in May 1998 before the accident at issue. He also believed that the surgery performed on plaintiff would have become necessary even if plaintiff had not been involved in a motor vehicle accident, because of the degenerative disc disease and the fact that the extruded disc fragment was probably present in May before the accident. Delheimer explained that symptoms of pain can "wax and wane on their own," and an example of this was in plaintiff's medical records, which revealed that on July 9, 1998, she reported to her physical therapist that she had increased symptoms of pain and wondered whether they were related to gardening. Delheimer also remarked that plaintiff was significantly overweight, which he believed was an ongoing material factor in her complaints of low back pain.

Based upon a review of the medical records, the two MRIs, and the photographs of the vehicles involved in the accident, Delheimer concluded that plaintiff's injury was due to an extruded disc fragment that was present prior to the accident. The symptoms from that disc fragment were waxing and waning, and if she had had surgery at the time of Wright's initial evaluation, an extruded disc fragment would have been found, even in the absence of the accident. He saw no damage to the vehicles and found it difficult to believe, based upon common sense, that the accident was a material factor in plaintiff's need for surgery or her further symptoms.

Defendant also called Mark Strauss by way of a videotaped evidence deposition. Strauss is an accident reconstructionist and biomechanicist. His training and professional experience involved the study of how humans may or may not be injured in

4107073000389221                    A625027340000101                    07/30/2007

R-0829

07073000538 92

different types of vehicular accidents. Strauss testified that he reviewed the police report, deposition transcripts, and photographs taken of both vehicles after the accident. He also researched measurements of an exemplar Dodge Caravan such as the one operated by plaintiff, and he testified about studies of whether the human body could be injured in low-speed, rear-end impacts.

Strauss was able to determine that the materials he reviewed supported defendant's estimation that his vehicle was traveling between five and seven miles per hour when it struck plaintiff's vehicle. He stated there was nothing in the photographs that would indicate that the contact between the two vehicles was anything other than a low-speed impact and that the "delta V" of plaintiff's vehicle (the maximum speed that plaintiff's vehicle achieved due to the impact) was approximately three to five miles per hour.

Strauss further testified as to the results of studies done in the field of biomedical engineering, which attempted to determine what injuries would result to humans in low-speed impacts. He testified that these studies and tests were all subjected to a peer review process, used methodology or techniques firmly established in the field of biomechanical engineering, and were scientifically performed. He also testified that the tests were performed not only by independent researchers, but also by university labs and by the government to establish the safety of vehicles. These tests, which were empirical, showed that in rear-end impacts involving speeds of 10 miles per hour from one vehicle into the back of another, the human volunteers showed either no symptoms or only muscle tension or slight damage to the tissues in the neck and the shoulder, and sometimes the volunteers experienced headaches. However, Strauss noted that in none of the human volunteers was there any injury or damage sustained to the lower back, even in volunteers who had abnormalities of disc degeneration in their lumbar spines according to pretesting MRIs. Strauss noted that, compared to the neck area, the back is a totally different structure, which is stronger than the neck and is supported by the vehicle's seat back and its foam. Based on his review of the materials and scientific research, Strauss was of the opinion that the impact or contact between the two vehicles in the accident at issue was not sufficient to aggravate any condition in plaintiff's back that existed prior to the accident, including her protruding disc at the L4-L5 level.

After hearing evidence, the jury returned a verdict in favor of defendant. Following the denial of her motion for a new trial, plaintiff timely appeals. She contends that the trial court erred by granting and denying certain motions in limine because it: (1) allowed defendant's expert witness to testify that no human could have been injured in the accident and that the impact was insufficient to aggravate any preexisting condition in plaintiff's back; and (2) barred plaintiff from presenting evidence that her son was crying or injured after the accident to rebut defendant's expert witness's testimony that no human could have been injured and to explain why she did not complain of her own injuries to the police officer at the scene of the accident.

ANALYSIS

At issue are several evidentiary rulings rendered by the trial court in its consideration of the motions in limine brought by the parties to this appeal. Motions in limine are designed to produce a trial without the introduction of prejudicial material. Konieczny v. Kamin Builders, Inc., 304 Ill. App. 3d 131, 136 (1999). On review, a trial court judge maintains broad discretion in the admission of evidence and in ruling upon a motion in limine. Green v. Union Pacific R.R. Co., 269 Ill. App. 3d 1075, 1082 (1995). A trial court's decision on a motion in limine will not be disturbed absent an abuse of discretion. Hallowell v. University of Chicago Hospital, 334 Ill. App. 3d 206, 210 (2002). In case of trial court error, a reversal is called for only if the evidence improperly admitted was sufficiently prejudicial to change the outcome of the trial. Cairns v. Hansen, 170 Ill. App. 3d 505, 511 (1988).

1. Testimony of Defendant's Expert Witness

In the first issue on appeal, plaintiff contends that the trial court erred in allowing Strauss to testify that the impact or contact between the two vehicles was not sufficient to injure any human or aggravate any condition in plaintiff's back that existed prior to the accident, including her protruding disc. Plaintiff asserts that Strauss should not have been allowed to testify on the subject because his testimony was irrelevant and based on speculation and matters of common knowledge.

Expert testimony is admissible at trial when the expert has knowledge or experience not common to a layperson and that knowledge or experience would aid the trier of fact in determining the facts at issue. In re Detention of Tittlebach, 324 Ill. App. 3d 6, 10 (2001); Augenstein v. Pulley, 191 Ill. App. 3d 664, 681 (1989). The critical issue is whether the expert's legal testimony aids the trier of fact by explaining a factual issue beyond its ordinary knowledge or whether the opinion merely recites a legal conclusion. Evchaner v. Gross, 321 Ill. App. 3d 759, 779 (2001). The admission of expert testimony is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. In re Detention of Tittlebach, 324 Ill. App. 3d at 10.

Strauss was qualified as an accident reconstructionist, biomechanicist, and biomedical engineer. Part of his professional experience as a biomedical engineer included the study of how humans may be injured in different types of vehicular traumas. Strauss opined that no human could have been injured in the accident. Strauss was also asked "whether the impact or contact between these vehicles would have been sufficient to aggravate any preexisting condition that the plaintiff had in her back such as a protruding disc at the L4-5 level." He believed that this could not have aggravated her preexisting condition because "this is a case where the back is cradled and cushioned by the seat back and the foam, and the delta V, that is, the speed of impact and the change in velocity of the [plaintiff's] van, is approximately in the range of a person walking briskly. This is not at all a high speed impact. This is very low."

We find that Strauss was improperly allowed to testify because he rendered an opinion as to individuals in general, which had no relevance to plaintiff. That other individuals might not suffer injuries in low-impact vehicular crashes has no bearing on whether this particular plaintiff might have suffered injury in this particular crash.

Moreover, the trial court erred in allowing Strauss to testify that plaintiff could not have been injured in the accident. The admission of an expert's testimony requires the proponent to lay an adequate foundation establishing that the information upon which the expert bases his opinion is reliable. Hiscott v. Peters, 324 Ill. App. 3d 114, 122 (2001). There is no indication

R-0830

0707300038 2

in the record that, in rendering his opinion, Strauss considered plaintiff's weight, height, and age, whether plaintiff wore a seat belt, how she was seated, or how extensive her preexisting injuries were at the time of the crash. In short, the focus of his opinion was based on generalities that were not tied to plaintiff specifically. Accordingly, we find that the trial court abused its discretion in allowing Strauss to testify that the low-speed impact of the crash could not have injured humans and erred in allowing Strauss to testify that the accident did not exacerbate plaintiff's preexisting injury or condition.

Although we find error, we do not find that a reversal is called for in this case because we determine that the error here was not prejudicial under the circumstances. We will not reverse an erroneous ruling unless the error was prejudicial or the result of the trial was materially affected. Stricklin v. Chapman, 197 Ill. App. 3d 385, 388 (1990). The burden is on the party seeking reversal to establish prejudice. Cairns, 170 Ill. App. 3d at 511.

Examination of the record discloses several facts from which we determine that the error was not prejudicial and did not affect the outcome of the trial. Dr. Detheimer, the neurosurgeon who examined plaintiff and reviewed her medical records and films on defendant's behalf, believed that the surgery performed by plaintiff's treating physician had no causal relationship to the accident. It was his belief that, prior to the accident, plaintiff had a degenerative disc disease of her lumbar spine and an extruded disc fragment present, which eventually led her to surgery. This belief was also based on the lack of damage to the vehicles, as shown by the photographs. He also believed that plaintiff's obesity was a major contributing factor to her ongoing problems. In addition, plaintiff's surgeon, Dr. Wright, testified that when he first gave his opinion he did not know any specific details of how the accident occurred and did not know the severity of the impact between the two vehicles. He admitted, after viewing the photographs of the vehicles taken after the accident, that it was very possible that plaintiff's disc was not injured or aggravated as a result of the accident at issue.

Furthermore, the jury was aware that, at the time of the accident, defendant's vehicle rear-ended plaintiff's vehicle at the speed of between five and seven miles per hour, the vehicles were not damaged, and plaintiff did not complain of any injuries at the time or for several days thereafter. Thus, given these facts and the testimony of the other expert witnesses, the jury's verdict would not have been different if Strauss had been barred from testifying.

### 2. Evidence of Crying or Injury to Plaintiff's Son

Plaintiff next argues that the trial court erred in barring her from presenting evidence to rebut Strauss's opinion that no human could have been injured in the accident. Plaintiff asserts that "if it was error to allow Defendant's engineer to testify that no human could have been injured in the accident, the error was compounded by the court's refusal to allow Plaintiff to present rebuttal evidence on that very point." Plaintiff alleges that her son was prepared to testify that he was injured in the accident.

The trial court gave plaintiff the opportunity to present evidence to rebut the testimony of defendant's expert witness. In submitting only her own self-serving and unqualified statements, plaintiff offered insufficient proof. On that basis, we find no error.

Plaintiff also asserts that the trial court erred by barring her from presenting evidence that her son was crying or injured after the accident to show her state of mind and to explain her reason for not complaining of her own injury to the police officer at the scene of the accident.

In her discovery deposition, plaintiff stated that, after she told defendant that she was not injured following the accident, she returned to her own vehicle and noticed that her son, who had recently undergone appendectomy surgery, was crying. She told defendant that she was going to call the police and an ambulance for her son as a precautionary measure. Based on this deposition testimony, defendant filed a motion in limine to bar any evidence at trial that plaintiff's son was "crying, claimed to have been injured and was taken by ambulance to a hospital and evaluated or received treatment at the hospital for possible injuries or as a precautionary measure" because plaintiff had not disclosed any opinion witness who believed that plaintiff's son was injured.

At the hearing on the motion, plaintiff explained that she was so concerned for her son's welfare that she paid no attention to her own condition. Plaintiff argued that such evidence was relevant to her case because it gave her a reason as to why she told the investigating police officer at the scene that she was not injured. In her offer of proof, plaintiff testified that Cory was crying and complained that his back and neck hurt, but she did not provide any medical documentation of his injury and stated that Cory never required any medical care other than a Tylenol.

The trial court granted defendant's motion, but only on the condition that defendant be barred from calling the investigating police officer to testify that plaintiff told him at the scene that she had not been injured. The trial court based its decision on the probative value of the evidence versus the prejudicial effect it could have on defendant's case. The court also based its decision on the fact that plaintiff never disclosed any opinion witnesses or documentation that Cory had sustained any injuries as a proximate result of the accident. The court stated, "I think that in balancing the equities and looking at the testimony and its probative value, and I was looking at it in the context that we looked at it yesterday in terms of showing [plaintiff's] state of mind and with the exclusion of the police officer being able to come in and say that she made no complaints, I think that balances the equities between the parties and allows the case to go forward in a fair fashion."

We agree with the trial court's determination. Here, Cory made no claim of any injuries in the case. There was no competent opinion testimony of injuries sustained or whether such injuries had any causal relationship to the accident. Generally, the details about the nature and severity of personal injuries to nonlitigants in automobile cases are not admissible. See Keil v. McCormick, 5 Ill. App. 3d 523, 526 (1972); Vujovich v. Chicago Transit Authority, 6 Ill. App. 2d 115, 118-19 (1955) (there is wide discretion to exclude evidence for reasons of trial expediency, as where the evidence is so remotely related that its probative value is inconsequential or leads to collateral issues). Whether Cory sustained any injuries as a proximate result of the accident was a collateral issue upon which no discovery had been conducted. However, it is clear that the court did find some probative value in the fact that Cory was crying after the accident, which is why the trial court granted the motion with the condition that defendant be barred from calling the police officer to testify that plaintiff denied sustaining injuries at the scene of the accident. Under these circumstances, we cannot say that the trial court abused its discretion in barring evidence

410707300088221                A625027340000101                07/30/2007

FindLaw for Legal Professionals - Case Law, Federal and State Resources, Forms, and C...    Page 5 of 6

0.7.0.7 3.0.0.0.3.8.9.2

of alleged crying or injuries.

CONCLUSION

For the foregoing reasons, we affirm the order of the circuit court of Winnebago County.

Affirmed.

GROMETER, J., concurs.

JUSTICE BOWMAN, concurring in part and dissenting in part:

I respectfully dissent in part.

I disagree with the majority's conclusion that the testimony of defendant's accident reconstruction expert, Mark Strauss, amounts to harmless error. The majority argues that the totality of the evidence in this matter excluding Strauss's testimony results in a conclusion that "the jury's verdict would not have been different if Strauss had been barred from testifying." Slip op. at 13. I believe the majority incorrectly assumes that, in the absence of Strauss's testimony, the outcome of the trial was certain to favor defendant.

The central issue in dispute is whether there exists a causal connection between the aggravation of plaintiff's injury, which required surgery, and the parties' car accident. In the absence of Strauss's testimony, the evidence pertinent here consists of the testimony of two expert physicians with conflicting opinions on the central issue in controversy.

Dr. Wright opined that, at the time of the May 6 MRI, plaintiff was not a surgical candidate. Then, after the accident, plaintiff reported a significant worsening of her symptoms. Upon reviewing the July 23 MRI, Wright noticed there was a dramatic worsening of the disc protrusion at the L4-L5 level.

Wright testified that there was a causal connection between the accident and the worsening of plaintiff's injury. He stated:

"[S]he was doing reasonably well and holding her own up until the time of this reported car accident. And it was only after the accident occurred that she reported the dramatic worsening of her symptomatology. That would seem to correlate well with what we saw in terms of changes in the MRI. And predicated on that history I would have to believe that it coincided with the accident."

Wright continued that, more likely than not, the worsening symptoms were a result of the car accident.

On cross-examination, as the majority notes, Wright stated that common sense would seem to dictate that a lower impact speed of the vehicles would correlate with a lower probability of injury occurring to the passengers. He also stated that based on the lack of perceivable damage to the vehicles the accident appeared to be a low-speed impact. However, Wright qualified his answer regarding the possible inferences that could be drawn from the lack of damage to the vehicle by stating that he did not know what kind of damage to expect from the accident. In addition, on redirect examination, plaintiff's counsel posed a hypothetical to Wright based on plaintiff's testimony that her car moved forward one-half to a full car length when she was hit from behind. The question asked: if plaintiff was unexpectedly thrust forward against her seat belt when the vehicle came to a rest, would that force cause the kind of trauma that was present in the July 23 MRI? Wright responded that such forward movement and then sudden snap back would probably be adequate to cause plaintiff's disc to herniate. Wright also opined that some patients who incur significant trauma may take days to experience a herniated disc.

Contrary to Wright's testimony, Dr. Delheimer testified that he believed that there was no significant difference between the May 6 MRI and the July 23 MRI. He opined that the condition of plaintiff's disc protrusion at the L4-L5 level on July 23 was basically the same as it was back in May. Based on his review of the damage to the vehicles, he found it hard to believe that the accident was a material factor in plaintiff's need for surgery or her worsening symptoms. However, on cross-examination, Delheimer admitted that he did not know what movement occurred with respect to plaintiff's body at the point of impact and immediately thereafter.

We will reverse a trial court's ruling regarding the admissibility of an expert's opinion when the error was prejudicial to the result of the trial was materially affected. See Turner v. Williams, 326 Ill. App. 3d 541, 553 (2001). In Hiscott v. Peters, 324 Ill. App. 3d 114, 123 (2001), we considered the testimony of an accident reconstruction expert. There, we held that there was no concrete factual basis to support the expert's opinion because there was insufficient physical evidence to provide him with the basic data needed to reconstruct an automobile accident. Hiscott, 324 Ill. App. 3d at 124. Thus, we held that the expert's opinion that hypothesized how the parties' automobile accident occurred amounted to pure speculation and could not assist the jury in understanding the evidence. Hiscott, 324 Ill. App. 3d at 124.

After we concluded that the court erred in admitting the opinion testimony of the reconstruction expert, we stated that the expert's testimony related directly to the central controversy of the case: how the collision took place, who was at fault, and the degree of fault assigned to the defendants. Hiscott, 324 Ill. App. 3d at 124. We then stated:

"Accordingly, the admission of [the expert's] testimony cannot be said to have had no effect on the outcome of the trial. We believe that this error may have tipped the scales with regard to the jury's assignment of liability between the defendants." Hiscott, 324 Ill. App. 3d at 124. Thus, we reversed and remanded the matter for a new trial. Hiscott, 324 Ill. App. 3d at 124.

I believe that Hiscott is controlling here. In a sweeping generalization, Strauss opined that, based on research in the field of biomedical engineering, a person cannot be injured in an accident in which the impacting vehicle is traveling at five to seven miles per hour. He further bolstered his conclusion by pointing to the "numerous studies and numerous tests" that supported it. Moreover, when defendant's counsel asked Strauss if the impact from the accident was "sufficient to aggravate any

4107073000389221    A625027340000101    07/30/2007

R-0832

0·7·0·7·3·0·0·0·3·8·9·2·

preexisting condition that the plaintiff had in her back," Strauss responded, "I do not believe that this can aggravate a preexisting condition." (Emphasis added.) Then, when defendant's counsel asked Strauss if the impact from the accident between the two vehicles here "would have been sufficient to cause any injury to the plaintiff in this case," in a similar manner Strauss responded, "there is no way the back is going to be injured in this type of accident." Thus, even Strauss's response to a specific question about plaintiff was laced with generality.

Strauss's testimony related directly to the central controversy in this matter: whether there exists a causal connection between the aggravation of plaintiff's injury and the accident. The evidence on this central controversy hinged on the jury's consideration of the conflicting opinions of two expert physicians and Strauss's powerful, but impermissible, testimony. The admission of Strauss's testimony cannot be said to have had no effect on the outcome of the trial. I believe that this error may have tipped the scales in defendant's favor. Thus, I cannot agree with the majority's conclusion that in the absence of the error the outcome in this matter was certain to be the same. Accordingly, I would remand this case for a new trial.

Sponsored Links

FirmFinance™: provides revolving and term loans of up to $25 million dollars, based on the collateral value of your firm's portfolio of active cases.
USLegalForms.com - Online Legal Documents - More than 50,000 state-specific legal documents for your business or private practice. All practice areas. Satisfaction guaranteed. Visit Today!
Amicus Attorney - The world's leading practice management software - get a FREE TRIAL now.
Online Legal Document Services: Let LegalZoom take care of your legal document preparation. Incorporations, LLCs, Trademark Searches, and more.
AbacusLaw: Complete law office software for time, billing, accounting, calendars, clients and cases. Quick to learn, easy to use. Free demo!
Tabs3 and PracticeMaster: Reliable billing and practice management software for solo to mid-sized firms. Support satisfaction is over 95%

Ads by Google

This Is Scary Accurate
Avoid This Site if You're Frightened Easily.
YourFortuneRevealed.com

Event Log Software
Free trial download! Collect and report on logs from any data source
www.netforensics.com

Learn How Leaders Log
Free Analyst Research, Info Kit White Papers, Case Studies...
www.toglogic.com

Sponsored Links

| Thomson Legal Record | Find a Lawyer | What Did He Really Say? | FindLaw Career Center | Lawyer Marketing |
| --- | --- | --- | --- | --- |
| View an attorney's litigation history on Westlaw next to the attorney's profile on FindLaw. | Our free service locates Bankruptcy, Criminal, DUI, Family, Immigration, Personal Injury, Real Estate, or Trademark lawyers in your area. | Read court testimony from any type of trial. | Legal job listings, legal discussion forums, salary information, and more. Visit today! | Web sites, attorney written custom content, visibility on FindLaw.com, search engine optimization. |



ready to win at all costs?
CLICK HERE
- you could be an instant winner

FindLaw Legal Technology Center

Help | Site Map | Contact Us | Media Kit | About Us | FindLaw Local | Disclaimer | Privacy Policy          Copyright © 1994-2007 FindLaw, a Thomson business

MCN - Medical Consultants Network, Inc. - Independent Medical Evaluations     Page 1 of 1

0707300053892





→ Search

Home | Company | Services | Provider Relations | Resources

Contact

**Services**

Independent Medical Evaluations
- Workers' Compensation
- Auto and No Fault
- Liability
- Short and Long-term Disability
- FMLA
- ERISA

Early Assessments
Disability Assessments
Peer Reviews
Cost Management
Online Services
Partners

Request Services →

## Independent Medical Evaluations

Medical assessments are MCN's core competency. They provide answers to questions about the medical nature, cause and treatment of injuries. MCN offers these services nationwide for insurance claims professionals, self-insured groups, regional and national government agencies and attorneys. The physician reviews all appropriate medical records, takes a detailed history, documents patient complaints and answers the requestor's questions based on objective medical evidence.

### Workers' Compensation

Workers' Compensation laws vary from state to state as do the specific state laws governing these claims. Adapting to particular state laws is a significant challenge for our clients.

Our understanding of regional jurisdictions is one of the unique strengths of MCN. Our medical network addresses Workers' Compensation claims in all 50 states.

### Auto and No Fault

Auto claims and injuries that may result from them place unique responsibilities on the insurer. These include supporting necessary treatment to claimants while ensuring that claimed injuries are supported by medical evidence and the treatment provided is appropriate. MCN's services help our clients meet their obligations to their customers. Our nationwide network of over 20,000 Board Certified medical specialists assesses the medical aspects of claims thoroughly, promoting integrity in the claims process.

### Liability

Medical liability issues can lead to significant financial concern for both the insurance carrier and the claimant. MCN provides independent medical experts to assist in the adjudication and settlement of liability claims. Our experienced consultants provide detailed and objective reports and will follow-up with deposition and testimony when required. Provider credentials and specialty are carefully considered in determining the appropriate specialist for the selected case.

### Short and Long-term Disability

Medical Consultants Network, Inc. (MCN) provides claims management services nationwide for insurance professionals, self-insured organizations, state-funds, workers' compensation programs and attorneys. For over 20 years, MCN has been an industry leader in providing disability evaluation services and file management solutions. MCN offers innovative approaches, advanced systems, national coverage and an experienced staff.

MCN also focuses on technology to increase efficiencies, reduce costs and provide the highest level of service consistency. This focus has resulted in an industry-leading company that is consistently first to market with important technological advances.

### FMLA

The Family Medical Leave Act (FMLA) has provided new challenges for human resource administrators when determining the ability of an employee to return to the workplace in their current or a different position. To maintain workplace productivity, supervisors needs may require assessments of employees taking family leave. By ordering appropriate medical assessments, management can confirm that a leave meets proper medical criteria on an evidence-basis, as well as determine appropriate length of leave and consider alternative return-to-work options.

### ERISA

Compensation and Pension managers have a difficult task on their hands defining the financial risk of employee disability on a post-employment basis. Through the use of medical assessments upon leaving the workforce, as well as post-retirement assessments, managers can better assess the financial exposure on any specific case. Differences of opinion between treating and assessing providers can be objectively resolved through this process leading to equitable agreements.

↑ top

Home | File Upload | Site Map | Privacy Policy          Phone: 1.800.626.4537

Copyright © 2007 Medical Consultants Network, Inc. - All rights reserved.

MCN - Medical Consultants Network, Inc. - Partnering with MCN                    Page 1 of 2

07073000589 2

# MCN.
MEDICAL CONSULTANTS NETWORK ®

MCN ONLINE SERVICES LOG IN  →

→ Search



**Provider Relations**

Partnering with MCN
eChannel Interface
Credentialing

Request Services  →

## Partnering with MCN

Medical Consultants Network arranges for its clients to receive independent and objective medical opinions for various purposes. These purposes include, but are not limited to, assessing the status of a medical condition or determining related levels of impairment attributed to an injury or disease incurred at work or another setting which may require some form of dispute resolution. Our clients include public and private industrial insurance companies, casualty claim insurance companies, and legal professionals. Opinions are rendered by experienced and qualified practitioners in varied specialties. Examinees are seen by either an individual consultant, a panel of consultants at the same time, or individually by multiple consultants depending on the particular needs of the client. In some cases only a paper review or *peer review* is required.

## Communication with MCN

To assist in the expeditious communication with MCN staff, MCN has developed a web portal called MCN eChannel. Once you have become an MCN Medical Judgment Network consultant, this interface will allow you to view medical records, review your schedule, check on payments, and review and execute reports. You will find more details below under MCN eChannel. To get started please read about the credentialing process below.

## eChannel Interface

Another advantage MCN provides to its provider partners is our web portal. The site facilitates transportation and review of medical records, correspondence, and reports in a HIPAA compliant environment. Providers receive e-mails when there is work for them to review and they may edit and sign off on their reports.

MCN will set up a web-accessible account which allows you fully encrypted access to your assignments and history. Consultant partners can upload voice files for transcription, review transcribed reports, electronically sign reviewed reports, update their credential materials and review payment status.

## MCN eChannel Features

- Fully encrypted HIPAA compliant environment
- Electronic delivery of medical records
- Cover letter questions and case related templates/forms
- Upload of digital transcription
- Review of transcribed reports
- Electronic signature capability
- Schedule of appointments and review assignments
- Payment history
- Updating of provider credentials and provider profile (verification by MCN)
- Download of literature and electronic forms

## Credentialing

Prior to working with MCN, we expect that all consultants complete a credentialing process. This includes providing copies of current state medical licensure, board certification (or residency completion for those who are "board eligible"), CV/resume, evidence of current malpractice coverage, a signed W-9, a signed electronic signature agreement, a completed and signed MCN physician/consultant agreement, and a completed and signed physician-consultant application. It is expected that consultants will maintain current status on licensure and malpractice coverage and forward documentation on an annual basis. It is also expected that MCN be notified immediately if there are any changes in the consultant's licensure status or malpractice coverage, or other changes that alter the responses previously provided in the credentialing process.

The following documents will be necessary to complete the business relationship:

**Consultant's Application Checklist**

**Consultant agreement**

MCN - Medical Consultants Network, Inc. - Partnering with MCN     Page 2 of 2

07-07-3000-389-2

Consultant application
Worker's Compensation Application (if applicable)
Office Locations (if applicable)
W-9 completed and signed
Scheduling and Payment Agreement
Electronic Signature Form
Copy of your current CV/resume
Copy of current state medical licenses
Copy of board certification and fellowship training
Copy of current malpractice insurance

MCN uses a master database for primary-source verification to confirm Board Certification, current state licensure, residency information, medical school graduation and other information. If the physician has had any reportable matters to a licensing board or NPDB (National Practitioner Database), we will access the NPDB and state databases for details and determine on a case-by-case basis if you are an appropriate candidate for this type of work and inclusion in MCN's physician network.

Credentialing Forms:

Click here to download the credentialing form

↑ top

Home | File Upload | Site Map | Privacy Policy     Phone: 1.888.626.4637

Copyright © 2007 Medical Consultants Network, Inc. - All rights reserved.

**MCN**® Medical Consultants Network®

Medical Consultants Network®
901 Buren Avenue, Suite 1400
Seattle, WA 98104-3529

(206) 622-8128
(800) 336-6269
Fax (206) 812-6420
mcn-seattle@mcn.com

Dear Doctor,

Before filling out an application, please contact us to determine need for your specialty in yuour location and to discuss other issues and requirements.

### A. Consultant's Application Checklist

_____ Consultant agreement

_____ Consultant application

_____ Worker's Compensation application or proof of worker's compensation certification

_____ Office Locations: If applicable.

_____ W-9 completed and signed

_____ Scheduling and Payment Agreement

_____ Electronic Signature Form

_____ Copy of your current CV/resume

_____ Copy of current state medical licenses

_____ Copy of board certification, letter from certifying board can be used in lieu of actual document.

_____ Copy of current malpractice insurance or signed authorization to be covered under MCN's umbrella policy

0 7 0 7 3 0 0 0 3 8 9 2

### B. Consultant Agreement

This Agreement is made this _____ day of _____, 2007 by and between Medical Consultants Network, Inc., (hereinafter "MCN") and _____ (hereinafter "Consultant"). The parties agree as follows:

1.  MCN is in the business of arranging medically related consultation services between third parties and experts in various medically related fields. Consultant is duly trained and licensed in the field of _____ and represents that he/she is authorized to practice ____ in the State of _____. MCN wishes from time to time to refer requests for consultation services from third parties to Consultant, and Consultant wishes to provide such consultation services to said third parties, pursuant to the terms and conditions set forth herein. Consultant agrees that if his or her said authorization to practice changes, he or she will immediately notify MCN and will not accept any referrals if not then currently authorized to practice in the state where the consultation is scheduled to take place.

2.  MCN is not obligated to refer to Consultant any requests for consultation services and Consultant may in his or her discretion reject any referral made by MCN. When Consultant accepts a referral for consultation services made by MCN, the parties agree, subject to the provisions of paragraph 8 below, that Consultant shall be paid at a rate consistent with MCN's current consultant fee schedule. The parties further agree that MCN shall not exert any control or influence over Consultant in regard to the substance of any opinion rendered by Consultant in response to a client's consultation request. Consultant agrees to cooperate with MCN to ensure that the form of any written reports or responses to a client comply with the requirements of MCN and the client. It is the intent of the parties that any consultation services provided by Consultant be independent and objective.

3.  Consultant understands that with regard to consultation services provided to a client, it may be necessary to provide sworn testimony concerning the subject matter of the consultation. Consultant agrees that with regard to any such consultation services provided, Consultant shall use reasonable efforts to cooperate in providing such testimony as may be requested by a client.

4.  Consultant agrees to maintain professional liability insurance, which would cover claims made against Consultant concerning the performance of any consultation services performed pursuant to this agreement with minimum liability limits of $1,000,000. Consultant understands that MCN is not obligated to provide any liability insurance coverage, which would include consultant as an insured. Further, the parties agree that should MCN and/or Consultant be named as parties in any litigation by a third party which concerns or arises from consultation services provided by Consultant, that neither party has a contractual obligation by virtue of the relationship created by this agreement to indemnify and/or hold harmless the other party in regard to any such claims. However, Consultant agrees to hold MCN, its employees, agents, officers, and directors harmless from and against any claims, liability, damage or cost Consultant may have arising out of a referral from MCN to provide consultation services to a client.

5.  MCN and Consultant agree that their relationship is not one of "employer/employee" and that nothing contained herein shall be construed to create an "employer/employee" relationship. MCN and Consultant further agree that this Agreement is not exclusive, meaning Consultant is free to perform similar consulting services for any other entity as he or she chooses. MCN and Consultant further agree that MCN is not responsible for any employment related taxes, including, but not limited to, federal income tax withholding, social security, state industrial insurance, state unemployment compensation, and B&O taxes (if any), concerning any services provided by Consultant under this Agreement.

6.  Consultant understands that he or she may gain access to information deemed confidential by MCN in the course of performing consultation services under this Agreement to include, but not limited to, finances, marketing, distribution, clients, pricing, vendors, business, and MCN's internal practices, protocols and procedures not generally known to the public. Consultant agrees that he or she is obligated to treat said information as confidential and proprietary and further agrees that he or she shall not disclose said information to anyone outside MCN nor shall he or she use said information to compete with or otherwise damage MCN's business. Consultant further agrees that he or she shall not solicit employees of MCN, or otherwise attempt to cause such employees, to obtain employment outside of MCN.

0707300038 82

7.  Consultant agrees that he or she shall fully comply with all relevant rules and regulations concerning the confidentiality of medical and health related information obtained while providing consultation services under this Agreement. Consultant further agrees that with regard to any consultation services provided hereunder that he or she shall not in any way solicit individuals examined or evaluated for the purpose of providing treatment or other related expert services.

8.  MCN will make every reasonable effort to collect fees for any consultation services provided by Consultant. However, if MCN is unable to collect the fee from a client for consultation services provided by Consultant, MCN is not obligated to pay Consultant for his or her services.

9.  Consultant agrees that he or she has reviewed the "Consultant's Manual" and further agrees that he or she shall comply with the protocols contained therein when providing consultation services per this Agreement.

10. Nothing contained in this Agreement shall be construed to give any rights or benefits to any entity that is not a party to this Agreement.

11. This agreement contains the entire Agreement, and supersedes all prior agreements and understanding, whether oral or written, between the parties hereto with respect to the subject matter hereof. This Agreement may only be waived, changed, amended, or modified by a further agreement in writing signed by both parties.

By:        _____
           Erica L. Seversen
           Medical Consultants Network, Inc.

Date:      _____


Consultant Name:  _____

Signature:        _____

Date:      _____

0707300038 92

## Consultant Application

| Name (Last/First/Middle Initial) | | | | Date of Application | |
|---|---|---|---|---|---|
| Social Security Number | | Tax ID Number | | Citizenship | |
| Place of Birth | | Age | Sex | Date of Birth | |
| Main Office Address | | | | Phone | |
| City/State/Zip | | | | Fax | |
| 2nd Office Address | | | | Phone | |
| City/State/Zip | | | | Fax | |
| State Medical License Number | | | | Expiration | |
| DEA Number | | Highest Schedule Approved | | Expiration | |
| Medical Malpractice Insurance Policy Number | | | | Dates of Coverage | |
| American Board Specialty Eligibility | | | | Date Eligible | |
| American Board Specialty Certificate | | | Date | Certificate # | |
| American Board Specialty Certificate | | | Date | Certificate # | |
| Most Recent American Board Recertification | | | Date | Certificate # | |
| Other Specialty Interest Certification | | | Date | Certificate # | |
| Other Specialty Interest Certification | | | Date | Certificate # | |
| Current Hospital Admitting Privileges | | Type | | Date Granted | |

| Please answer the following questions: | Check appropriate box | |
|---|---|---|
| | Yes | No |
| 1. Has your license to practice medicine ever been restricted, limited, revoked, suspended, or in any way changed by a state licensing or medical disciplinary board? | Yes | No |
| 2. Have you ever been denied initial hospital privileges, not had them renewed despite re-application, or had them terminated? | Yes | No |
| 3. Have you been refused a requested specialty medical or professional society membership? | Yes | No |
| 4. Have you ever been asked to resign or not renew a specialty, medical or professional society membership? | Yes | No |
| 5. Have you ever been refused medical malpractice insurance or been refused renewal of your medical malpractice insurance? | Yes | No |
| 6. In the previous 5 years, have you ever had an alleged medical malpractice action filed against you that resulted in an out-of-court settlement, court-ordered settlement, or judgment against you? | Yes | No |
| 7. Do you have any alleged medical malpractice actions filed against you pending or have suspicion of an imminent such action against you? | Yes | No |
| 8. Have you ever been convicted of a felony? | Yes | No |
| 9. Do you have any medical, psychiatric or substance abuse problem that might affect your ability to perform objective evaluations? | Yes | No |

0707 3000 389 2

| | | Yes | No |
|---|---|---|---|
| 10. | Have you been excluded, suspended from, or otherwise barred from participation in any federal reimbursement program including but not limited to Medicare, Medicaid, or any other federal or federally assisted program? | Yes | No |

If you answered "yes" to any of the questions above, please explain fully on a separate sheet of paper and staple it to the back of this form.

| | | Yes | No |
|---|---|---|---|
| 1. | A doctor is considered actively practicing if he has perform an average of eight hours of direct patient care over the last two years. Are you currently practicing an average of eight or more hours per week? | Yes | No |
| 2. | If not when did you retire from active practice? ___/___/___ | Yes | No |
| 3. | Have you performed IMEs in the past? If so, for how long? _____ | Yes | No |
| 4. | If your initial examination was set in your facility, would you be willing to perform IMEs in your own office? | Yes | No |
| 5. | If you will be scheduling in your office, do you have same-gender chaperones as needed based on physician/patient request? | Yes | No |
| 6. | Do you have a sample report (devoid of protected health information)? Is so, please attach it to this form. | Yes | No |
| 7. | Are you available for deposition? Fee for deposition    $ _____ | Yes | No |
| 8. | Do you speak a foreign language? Which one(s)? | Yes | No |

I, _____ , attest that the information reported in this application is true. I realize that any purposeful misreporting may be adequate reason to refuse or terminate my appointment to Medical Consultants Network, Inc. My signature below also constitutes an unencumbered release to any and all agencies, persons, institutions, boards, etc., listed in this application to provide information relevant to this application to Medical Consultants Network, Inc.

| Signature | Date |
|---|---|
| | |

G·7·G·7·3·G·G·5·3·9·2·

## C. OFFICE LOCATIONS

Please list all of your office locations below. Additionally, please indicate if the doctor has a set schedule for this office (i.e. works here every Thursday from 8am to 5pm). Note: All payments to the doctor will be sent to the address printed on the W-9 included in this package:

Location Name: _____

Street Address: _____

City, State, Zip: _____

Phone #: _____

Fax #: _____

Business Email: _____
Number to Call
When Scheduling
in this Office: _____

Scheduling Contact
For this Office: _____

Dr.'s Schedule for
This Office: _____


Location Name: _____

Street Address: _____

City, State, Zip: _____

Phone #: _____

Fax #: _____

Number to Call
When Scheduling
in this Office: _____

Scheduling Contact
For this Office: _____

0707 3000 5892

Dear Consultant:

We at Medical Consultants Network would like to introduce you to our Electronic Signature Program.

To take advantage of this service, please complete the enclosed signature form and return it by mail to MCN.

1.   The report is dictated in to MCN's 1-800-Dial-in Dictation Services within 48 hours of the examination.  For on-site work the report is dictated into a dictation machine and transcribed by our staff.

2.   The first draft of the report is faxed to your office within 48 hours in order for you to review the report you have dialed in.  On-site the report is either faxed or can be viewed on MCN.com (HIPAA secure website designed for that purpose).

3.   Any necessary changes are either dictated on dial-in faxed, or phoned into MCN, or changed via the web on MCN.com.

4.   The last details are incorporated into the report and MCN faxes the final draft with an authorization for electronic signature forms.

> **We will never attach your signature without having**
> **a signed authorization form.**

Please feel free to call our Client Service Specialists at **1-800-636-3926** if you have any questions or would like to find out more about our services.

Name (please print)_____

We ask for you to sign your name two times for purposes of a clear signature to be electronically scanned. Please sign below, slightly larger that you would normally, with a thick, black pen.

Please return to:  Client Services Department

1.

2.

IME First Independent Medical Exams and Record Reviews                    Page 1 of 1

0707 50003892

**IME, LLC IS COMMITTED TO PROVIDING QUALITY AND
TIMELY INDEPENDENT MEDICAL EXAMS AND RECORD REVIEWS**



**ENTER SITE**

**STEVEN C. DELHEIMER, M.D.
MEDICAL DIRECTOR**

**128 Bucklin Street, Suite B
LaSalle, IL 61301**

**Phone: 800.833.0913
Fax: 815.224.8009
Email: schedule@imefirst.com**

**We continue to expand our service area and physician list. If you are interested in
using a physician not listed on this website, please contact us.**

Copyright © 2006-2007 Innovative Medical Evaluations, LLC. All rights reserved.
**Home | Who We Are | Schedule Appointment | Preparation | After Appointment | Physicians by Location |
Physicians by Speciality**

IME specializes in neurological, neurosurgical, and orthopedic independent medical exam...   Page 1 of 1

070730003892



**128 Bucklin Street, Suite B**
**LaSalle, IL 61301**

**Phone: 800.833.0913**
**Fax: 815.224.8009**
**Email: schedule@imefirst.com**

Home
Who We Are
Schedule Appointment
Preparation
After Appointment
Physicians by Location
Physicians by Speciality

**WHO WE ARE**

**Innovative Medical Evaluations, LLC**, specializes in neurological, neurosurgical, and orthopedic independent medical examinations and record reviews. We provide timely and comprehensive reports to assist in the management of your claims.

**We continue to expand our service area and physician list. If you are interested in using a physician not listed on this website, please contact us.**

Copyright © 2006-2007 Innovative Medical Evaluations, LLC. All rights reserved.
Home | Who We Are | Schedule Appointment | Preparation | After Appointment | Physicians by Location |
Physicians by Speciality

0707300053892



**128 Bucklin Street, Suite B**
**LaSalle, IL 61301**

**Phone: 800.833.0913**
**Fax: 815.224.8009**
**Email: schedule@imefirst.com**

### Participating Physicians (By Specialty)

| |
|---|
| Home |
| Who We Are |
| Schedule Appointment |
| Preparation |
| After Appointment |
| Physicians by Location |
| Physicians by Speciality |

**General Surgeon:**
Joseph Kokoszka, M.D.

**Hand Surgeons:**
Stuart Baker, M.D.
John Ruder, M.D.
Michael Vender, M.D.

**Neurology:**
David Peeples, M.D.

**Neurosurgeons:**
Steven C. Delheimer, M.D.
Nicholas Manno, M.D.
Terrence Pencek, M.D.

**Occupational Medicine:**
David Fletcher, M.D.

**Orthopedic Surgeons:**
Paul Belich, M.D.
Mark Kelley, M.D.
James Foskett, M.D.
Edward Kolb, M.D.
David Field, M.D.
Michael Gernant, M.D.
Karolyn Senica, M.D.
James Williams, M.D.
David Anderson, M.D.

**Complex Spine Surgeons (Orthopedic):**
Timothy Van Fleet, M.D.
James Foskett, M.D.
Brett Taylor, M.D.

**Peripheral Nerve Specialist:**
John Oldershaw, M.D.
David Peeples, M.D.

R-0846

Participating Physicians by Specialty for IME                                    Page 2 of 2

0707 3000 3932

**Shoulder Surgeons:**
Prasant Atluri, M.D.
Scott Sagerman, M.D.
William Vitello, M.D.

**We continue to expand our service area and physician list. If you are interested in using a physician not listed on this website, please contact us.**

Copyright © 2006-2007 Innovative Medical Evaluations, LLC. All rights reserved.
Home | Who We Are | Schedule Appointment | Preparation | After Appointment | Physicians by Location | Physicians by Speciality

http://www.imefirst.com/physicians_by_speciality.htm

7/18/2007

4107073000389221                  A625027340000101                  07/30/2007

R-0847

Physicians by Locations for Independent Medical Evaluations                    Page 1 of 3

0707380003892



**128 Bucklin Street, Suite B**
**LaSalle, IL 61301**

**Phone: 800.833.0913**
**Fax: 815.224.8009**
**Email: schedule@imefirst.com**

| |
| --- |
| **Home**<br>**Who We Are**<br>**Schedule Appointment**<br>**Preparation**<br>**After Appointment**<br>**Physicians by Location**<br>**Physicians by Speciality** |

**Physicians and Specialties (By Location)**

**Bloomington/Normal, IL**
Steven C. Delheimer, M.D. (Neurosurgeon)
Edward Kolb, M.D. (Orthopedic Surgeon)

**Champaign, IL**
David Fletcher, M.D. (Occupational Medicine)

**Chesterfield, MO**
David Peeples, M.D. (Neurology, Peripheral Nerve
Specialist)
Brett Taylor, M.D. (Orthopedic Spine Surgeon)

**Chicago, IL**
Steven C. Delheimer, M.D. (Neurosurgeon)
John Oldershaw, M.D. (Neurosurgeon/Peripheral Nerve
Specialist)
Paul Belich, M.D. (Orthopedic Surgeon)
Michael Vender, M.D. (Hand Surgeon)
John Ruder, M.D. (Hand Surgeon)

**Chicago, IL**
Prasant Atluri, M.D. (Shoulder Surgeon)
Scott Sagerman, M.D. (Shoulder Surgeon)
William Vitello, M.D. (Shoulder Surgeon)

**Decatur, IL**
Stuart Baker, M.D. (Hand & Aesthetic Surgeon)
David Fletcher, M.D. (Occupational Medicine)

**Elk Grove, IL**
David Anderson, M.D. (Orthopedic Surgeon)

**Dubuque, IA**
David Field, M.D. (Orthopedic Surgeon)

**Galesburg, IL**
Michael Gernant, M.D. (Orthopedic Surgeon)

Physicians by Locations for Independent Medical Evaluations                    Page 2 of 5

6707 5000 3892

**Madison/Waukesha, WI**
Steven C. Delheimer, M.D. (Neurosurgeon)

**Ottawa, IL**
Joseph Kokoszka, M.D. (General Surgeon)

**Peoria, IL**
James Williams, M.D. (Orthopedic Surgeon)

**Peru, IL**
Steven C. Delheimer, M.D. (Neurosurgeon)
Mark Kelley, M.D. (Orthopedic Surgeon)

**Rockford, IL**
Nicholas Manno, M.D. (Neurosurgeon)
James Foskett, M.D. (Orthopedic & Complex Spine Surgeon)

**Springfield, IL**
Timothy Van Fleet, M.D. (Orthopedic Spine Surgeon)
Karolyn Senica, M.D. (Orthopedic Surgeon)
Terrence Pencek, M.D. (Neurosurgeon)

Physicians by Locations for Independent Medical Evaluations                    Page 3 of 3

0707 3000389 2

**We continue to expand our service area and physician list. If you are interested in using a physician not listed on this website, please contact us.**

Copyright © 2006-2007 Innovative Medical Evaluations, LLC. All rights reserved.
Home | Who We Are | Schedule Appointment | Preparation | After Appointment | Physicians by Location | Physicians by Speciality

4107073000389221                    A625027340000101                    07/30/2007

**R-0850**

Preparation for the IME or Record Review                                                Page 1 of 1

0-7-0-7-3000-389-2.



**128 Bucklin Street, Suite B**
**LaSalle, IL 61301**

Phone: 800.833.0913
Fax: 815.224.8009
Email: schedule@imefirst.com

| |
| --- |
| **Home** |
| **Who We Are** |
| **Schedule Appointment** |
| **Preparation** |
| **After Appointment** |
| **Physicians by Location** |
| **Physicians by Speciality** |

### IN PREPARATION FOR THE IME OR RECORD REVIEW

Please have the following information at hand when you contact us to schedule either an examination or record review.

- **Claimant**
  - Demographics
  - Date of injury
  - Complaints
- **Referral source**
  - Claim number
  - Adjuster name
  - Billing information

Please provide a cover letter and records for the independent medical examination **two to three** weeks prior to the appointment.

This will assist with the timely completion of your report.

---

**We continue to expand our service area and physician list. If you are interested in using a physician not listed on this website, please contact us.**

Copyright © 2006-2007 Innovative Medical Evaluations, LLC. All rights reserved.
Home | Who We Are | Schedule Appointment | Preparation | After Appointment | Physicians by Location |
Physicians by Speciality

0707300038892



**ERISA LAW GROUP** LLP
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (559) 256-9800
Facsimile: (559) 256-9795

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

July 26, 2007

AT&T Integrated Disability Service Center     *VIA FACSIMILE: 866-856-5065*
Quality Review Unit                           *AND U. S. MAIL*
PO Box 14626
Lexington, KY 40512

    STD Claim No.: A625007022-0001-01

To Whom it May Concern:

    I received a call from Steve Kane, Appeal Specialist. In the course of our conversation:

1.    He told me that the PO Box to which I had sent the hard copy of the appeal was an
      old PO Box. Therefore, I am resending the entire appeal to the new PO box.

2.    He requested that I reference the STD claim number above.

3.    In reference to my request for copies of any medical reviews and an opportunity to
      respond to them in advance of a final decision on appeal, he advised that it was
      not procedure to do so.

    In any event, enclosed please find an additional copy of the appeal and all supporting
documents. If I obtain any additional medical records before the deadline of August 7, 2007 I
will notify you and submit them promptly.

    Thank you for your cooperation in this matter.

                                              Very truly yours,

                                              Robert J. Rosati

RJR/jaf

cc:   Melissa Gardner



From **The ERISA Law Group LLP**
2055 San Joaquin Street
Fresno, CA 93721

**TO** AT&T Integrated Disability
Service Center
Quality Review Unit
PO Box 14626
Lexington, KY 40512

Label 228, February 2006

4107073000389221          A625027340000101          07/30/2007

R-0853

# AT&T Integrated Disability Service Center
## Quality Review Unit
*As Administered by Sedgwick CMS*

P.O. Box 14626; Lexington, KY 40512; Telephone 866-276-2278; Facsimile 866-856-5065

July 26, 2007

ROBERT J. ROSATI
ERISA LAW GROUP, LLP
2055 SAN JOAQUIN STREET
FRESNO, CA 93721

Re:    Ameritech Long Term Disability Plan
       Claim Number: A625027340-0001-01
       Your Client: Melissa Gardner

Dear Mr. Rosati:

Your client's claim appealing the denial of benefits under the Ameritech Long Term Disability Plan was reviewed by the AT&T Integrated Disability Service Center (IDSC) Quality Review Unit.

The AT&T Integrated Disability Service Center (IDSC) Quality Review Unit reviewed all submitted material and information regarding the denial of long term disability (LTD) benefits by the AT&T Integrated Disability Service Center for your client's claim with a first date of absence of March 16, 2006. After this review, the Unit determined to uphold the denial of benefits based on the following:

Section 2.11 of the Ameritech Long Term Disability Plan (the "Plan") defines the Waiting Period as:

> "Waiting Period" shall mean the 26 week or 52 week period for which Sickness Disability Benefits under the Ameritech Sickness and Accident Disability Benefit Plan are payable and for which no benefits are payable under this Plan."

After review of the claim, the determination has been made by the Unit to uphold the denial as your clien was not eligible for LTD benefits under the Plan. Your client's claim for short term disability (STD) was denied and terminated effective January 19, 2007. This was prior to the completion of the fifty-two week waiting period as required under the Plan which indicated that your client was not eligible for LTD benefits. If at a later date, however, the full fifty-two week period for short term disability benefits are payable under the Ameritech Sickness and Accident Disability Benefit Plan, then your client's claim would be reviewed for eligibility for long term disability benefits under the Ameritech Long Term Disability Plan.

Under the terms of the Ameritech Long Term Disability Plan, the decision of the Unit is final.

06-A-15 AIT upheld LTD denial to atty 01-06

Melissa Gardner
July 26, 2007
Page 2

Your client shall be provided, upon written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your client's claim benefits.

Your client has the right to bring suit under Section 502(a) of the Employee Retirement Income Security Act of 1974 after there has been full exhaustion of your client's appeal rights as enumerated in the plan's claim procedures and those rights have been exercised and the Plan benefit's requested by said claimant in such appeal have been denied in whole or in part by your client's employer.

Sincerely,


Stephen Kane, LCSW
Appeal Specialist
AT&T Integrated Disability Service Center (IDSC) Quality Review Unit

cc: Melissa Gardner

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com™

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To  *Melissa Gardner*
Street, Apt. No.; or PO Box No.  *cc copy*
City, State, ZIP+4

PS Form 3800, June 2002          See Reverse for Instructions

06-A-15 AIT upheld LTD denial to atty 01-06

# AT&T Integrated Disability Service Center
## Quality Review Unit
### *As Administered by Sedgwick CMS*

P.O. Box 14626; Lexington, KY 40512; Telephone 866-276-2278; Facsimile 866-856-5065

July 26, 2007

ROBERT J. ROSATI
ERISA LAW GROUP, LLP
2055 SAN JOAQUIN STREET
FRESNO, CA 93721

Re:    Ameritech Long Term Disability Plan
       Claim Number: A625027340-0001-01
       Your Client: Melissa Gardner

Dear Mr. Rosati:

Your client's claim appealing the denial of benefits under the Ameritech Long Term Disability Plan
was reviewed by the AT&T Integrated Disability Service Center (IDSC) Quality Review Unit.

The AT&T Integrated Disability Service Center (IDSC) Quality Review Unit reviewed all
submitted material and information regarding the denial of long term disability (LTD) benefits
by the AT&T Integrated Disability Service Center for your client's claim with a first date of
absence of March 16, 2006. After this review, the Unit determined to uphold the denial of
benefits based on the following:

Section 2.11 of the Ameritech Long Term Disability Plan (the "Plan") defines the Waiting
Period as:

> "Waiting Period" shall mean the 26 week or 52 week period for which Sickness
> Disability Benefits under the Ameritech Sickness and Accident Disability Benefit Plan
> are payable and for which no benefits are payable under this Plan."

After review of the claim, the determination has been made by the Unit to uphold the denial as
your clien was not eligible for LTD benefits under the Plan. Your client's claim for short term
disability (STD) was denied and terminated effective January 19, 2007. This was prior to the
completion of the fifty-two week waiting period as required under the Plan which indicated that
your client was not eligible for LTD benefits. If at a later date, however, the full fifty-two week
period for short term disability benefits are payable under the Ameritech Sickness and Accident
Disability Benefit Plan, then your client's claim would be reviewed for eligibility for long term
disability benefits under the Ameritech Long Term Disability Plan.

Under the terms of the Ameritech Long Term Disability Plan, the decision of the Unit is final.

06-A-15 AIT upheld LTD denial to atty 01-06

Melissa Gardner
July 26, 2007
Page 2

Your client shall be provided, upon written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to your client's claim benefits.

Your client has the right to bring suit under Section 502(a) of the Employee Retirement Income Security Act of 1974 after there has been full exhaustion of your client's appeal rights as enumerated in the plan's claim procedures and those rights have been exercised and the Plan benefit's requested by said claimant in such appeal have been denied in whole or in part by your client's employer.

Sincerely,


Stephen Kane, LCSW
Appeal Specialist
AT&T Integrated Disability Service Center (IDSC) Quality Review Unit

cc: Melissa Gardner

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To: Melissa Gardner
Street, Apt. No.; or PO Box No.: attorney copy
City, State, ZIP+4

7004 2510 0003 5770 7783

PS Form 3800, June 2002          See Reverse for Instructions

06-A-15 AIT upheld LTD denial to atty 01-06

4107080105148904          A625027340000101          08/01/2007

R-0857

08/02/2007 4:22:38 PM  SEDGWICK CMS  PAGE 1  OF 3

Sedgwick Claims Management Services, Inc.

To:  ERISA scan only
Fax Number:  +18598256886

From:  Stephen Kane, LCSW
Fax Number:  866-856-5065

Date:  August 02, 2007
Subject:  A625027340000101

Memo:
Please add/scan to claim A625027340000101

<<ViewONE_Pro_document_(2_pages).tif>>

***CONFIDENTIALITY NOTE***
_____

The information contained in this facsimile message may be legally privileged
and confidential information intended only for the use of the individual or
entity named above. If the reader of this message is not the intended recipient,
you are hereby notified that any dissemination, distribution, or copying of this
telecopy is strictly prohibited. If you have received this telecopy in error,
please notify us immediately by calling the number listed above and return the
original message to us at the address above by the United States Postal Service.

422007080200760321  A625027340000101  08/02/2007

R-0858

# FACSIMILE COVER SHEET

DATE:                  July 30, 2007_____   File No.:

TO:                    Quality Review Unit

RE:                    *Melissa Gardner*

FACSIMILE NO.:         866-856-5065

From:  Jill A. Fulkes *for* The ERISA Law Group

| DOCUMENT(S) | NUMBER OF PAGES (NOT INCLUDING COVER SHEET) |
|---|---|
| Correspondence | 1 |

If you do not receive <u>all</u> pages, please telephone us immediately at 559-256-9800 ext. 28.

Message:_____

CONFIDENTIAL NOTICE: This message is intended only for the use of the individual or entry to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to the above address via the U.S. Postal Service. Postage will be reimbursed. Thank you.

(Page 187 of 194)

08/02/2007 4:22:38 PM       SEDGWICK CMS                    PAGE 3    OF 3
(Page 2 of 2)

Jul 30 2007 3:07PM    HP LASERJET FAX                              p.2



## ERISA LAW GROUP LLP
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (559) 256-9800
Facsimile: (559) 256-9795

July 30, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 14626
Lexington, KY 40512

*VIA FACSIMILE: 866-856-5065
AND U. S. MAIL*

STD Claim No.: A625007022-0001-01
LTD Claim No.: A625027340-0001-01

To Whom it May Concern:

    This is in response to Mr. Stephan Kane's letter of July 26, 2007. Ms. Gardner appealed both the STD and LTD by letter dated July 19, 2007. This serves to confirm that if Ms. Gardner's STD benefits are reinstated, that her LTD claim will be reviewed at the exhaustion of her STD benefit period.

Very truly yours,

Robert J. Rosati

RJR/jaf

cc:   Melissa Gardner

42200707300090282 1
42200708020076032 1                A625007022000101
                                   A625027340000101                07/30/2007
                                                                   08/02/2007

R-0860

(Page 1 of 1)

Jul 17 2007 1:37PM    HP LASERJET FAX                                    p.1



## ERISA LAW GROUP LLP
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:    (888) 883-7472
Facsimile: (559) 256-9795

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

July 17, 2007                    *A625027340-0001-01*

AT & T Integrated Disability Service Center          *VIA TELEFAX (866)224-4627*
PO Box 14627                                         *AND U.S. MAIL*
Lexington, KY 40512.

    Claimant:          Melissa Gardner
    Employer:          AT & T
    RE:                Short Term Disability (STD) and Long Term Disability.
                 (LTD)

To Whom it May Concern:

    This is to clarify that we represent Ms. Melissa Gardner in the above referenced matter
for both her short and long term disability.

Very truly yours,

Robert J. Rosati

RJR/caf

cc:    Melissa Gardner

4220070717737103                                                07/17/2007

4107080112406803              A625027340000101                   08/01/2007

R-0861

08/03/2007 2:49:12 PM        SEDGWICK CMS                    PAGE 1    OF 3

Sedgwick Claims Management Services, Inc.

| | |
|---|---|
| To: | ERISA scan only |
| Fax Number: | +18598256886 |
| | |
| From: | Stephen Kane, LCSW |
| Fax Number: | 866-856-5065 |
| | |
| Date: | August 03, 2007 |
| Subject: | A625027340000101 |

Memo:
Please copy/scan to claim A625027340000101

<<ViewONE_Pro_document_(2_pages).tif>>

***CONFIDENTIALITY NOTE***

The information contained in this facsimile message may be legally privileged
and confidential information intended only for the use of the individual or
entity named above. If the reader of this message is not the intended recipient,
you are hereby notified that any dissemination, distribution, or copying of this
telecopy is strictly prohibited. If you have received this telecopy in error,
please notify us immediately by calling the number listed above and return the
original message to us at the address above by the United States Postal Service.

422007080300606221              A625027340000101                    08/03/2007

R-0862



**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:     (559) 256-9800
Facsimile: (559) 256-9795

July 30, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

AT&T Integrated Disability Service Center        *VIA FACSIMILE: 866-856-5065*
Quality Review Unit                              *AND U. S. MAIL*
PO Box 14626
Lexington, KY 40512

        STD Claim No.: A625007022-0001-01
        LTD Claim No.: A625027340-0001-01

To Whom it May Concern:

        This is in response to Mr. Stephan Kane's letter of July 26, 2007. Ms. Gardner appealed
both the STD and LTD by letter dated July 19, 2007. This serves to confirm that if Ms.
Gardner's STD benefits are reinstated, that her LTD claim will be reviewed at the exhaustion of
her STD benefit period.

                                                Very truly yours,

                                                Robert J. Rosati

RJR/jaf

cc:    Melissa Gardner



**ERISA LAW GROUP LLP**
2055 San Joaquin Street
Fresno, CA 93721



FRESNO CA 937
30 JUL 2007  PM 2 L
USA first-class

AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 14626
Lexington, KY 40512

40512+4626    [barcode]

6798960031216

4107080300312621              A625007022000101              08/03/2007

422007080300606221            A625027340000101              08/03/2007

R-0864

(Page 192 of 194)

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

ROBERT J. ROSATI
ERISA LAW GROUP, LLP
2055 SAN JOAQUIN STREET
FRESNO, CA 93721

Melissa Gardner  AR25027340-01

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Rita Penn_          ☐ Agent
                       ☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery
                                    7-30-07

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)
   7004 2510 0003 5770 7783

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

4107080401406221          A625027340000101          08/04/2007

R-0865

Jul 30 2007 3:07PM  HP LASERJET FAX

A625027340-
0001-01

p.1

# FACSIMILE COVER SHEET

DATE:                July 30, 2007_____        File No.:

TO:                  Quality Review Unit

RE:                  *Melissa Gardner*

FACSIMILE NO.:       866-856-5065

From: Jill A. Fulkes *for* The ERISA Law Group

| | NUMBER OF PAGES INCLUDING COVER SHEET |
|---|---|
| Correspondence | 1 |

If you do not receive <u>all</u> pages, please telephone us immediately at 559-256-9800 ext. 28.

Message:_____

0708070532953

CONFIDENTIAL NOTICE: This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to the above address via the U.S. Postal Service. Postage will be reimbursed. Thank you.

| | | |
|---|---|---|
| 422007073000902821 | A625007022000101 | 07/30/2007 |
| 4107080703295321 | A625027340000101 | 08/07/2007 |

R-0866

Jul 30 2007 3:07PM   HP LASERJET FAX                                    P.2



**ERISA LAW GROUP** LLP
2055 San Joaquin Street
Fresno, CA 93721
www.theerisalawgroup.com
law@theerisalawgroup.com

Office:   (559) 256-9800
Facsimile: (559) 256-9795

July 30, 2007

Thornton Davidson, Esq.
Robert J. Rosati, Esq.
Jill Fulkes - Administrator

*VIA FACSIMILE: 866-856-5065*
*AND U. S. MAIL*

AT&T Integrated Disability Service Center
Quality Review Unit
PO Box 14626
Lexington, KY 40512

STD Claim No.: A625007022-0001-01
LTD Claim No.: A625027340-0001-01

To Whom it May Concern:

This is in response to Mr. Stephan Kane's letter of July 26, 2007. Ms. Gardner appealed both the STD and LTD by letter dated July 19, 2007. This serves to confirm that if Ms. Gardner's STD benefits are reinstated, that her LTD claim will be reviewed at the exhaustion of her STD benefit period.

Very truly yours,

Robert J. Rosati

RJR/jaf

cc:   Melissa Gardner

07080703295353

422007073000902821          A625007022000101                07/30/2007

4107080703295321          A625027340000101                08/07/2007